**HALEY GUILIANO LLP**
JOSHUA V. VAN HOVEN (CSB No. 262815)
    E-Mail: joshua.vanhoven@hglaw.com
111 N Market Street, Suite 900
San Jose, California 95113
Telephone: 669.213.1061
Facsimile: 669.500.7375

RICHARD T. MCCAULLEY  (*pro hac vice*)
    E-Mail: richard.mccaulley@hglaw.com
116 W. Hubbard Street
Chicago, Illinois 60654
Telephone: 312.330.8105

*Attorneys for Defendants,*
PurLife Brands, Inc. d/b/a Smarty Pear,
and Chris Madeiras

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Automated Pet Care Products, LLC d/b/a Whisker, a Michigan corporation,<br><br>            Plaintiff,<br><br>    vs.<br><br>PurLife Brands, Inc. d/b/a Smarty Pear, a Delaware corporation, and Chris Madeiras, an individual,<br><br>           Defendants. | Case No. 5-22-cv-04261-VC<br><br>Honorable Vince Chhabria<br><br>**DEFENDANTS PURLIFE BRANDS, INC. AND CHRIS MADEIRAS' MOTION TO DISMISS**<br><br>Hearing: December 1, 2022<br>Time: 10:00 a.m.<br>Courtroom: 4 – 17th Floor (Zoom Hearing)<br>Judge: The Honorable Vince Chhabria<br>Complaint Filed: July 22, 2022 |

# **TABLE OF CONTENTS**

I.  Introduction – Issues To Be Decided ........................................................................ 1

II. Standard of Review ................................................................................................... 1

III. Whisker Has Not Plausibly Alleged That Smarty Pear Infringes U.S. Patent No. 9,433,185 (First Cause of Action) ............................................................................. 1

IV. Whisker Has Not Plausibly Alleged That Smarty Pear Infringes U.S. Patent No. 7,647,889 (Second Cause of Action) ........................................................................ 4

V.  Whisker Has Not Plausibly Alleged That Smarty Pear Infringes U.S. Patent No. 11,399,502 (Third Cause of Action) ......................................................................... 6

VI. Whisker Has Failed To Allege Infringement Of Any Protectable Trademark Rights (Fourth, Fifth, And Tenth Causes Of Action) ........................................................... 7

    A. *Whisker Has Not Alleged Infringement Of The Design Marks* ........................... 7

    B. *The Words "Litter Robot" Are Not Protectable As A Trademark* ...................... 8

    C. *The Only Other Alleged Infringing Acts – Using A Hashtag With The Words "Litter Robot" – Cannot Possibly Infringe A Protectable Trademark* ............................ 9

    D. *Whisker's Remaining Kitchen Sink Allegations Do Not Identify Any Protectable Rights (Such As Trade Dress), Let Alone Any Infringement* .................................... 10

VII. Whisker's False Advertising Allegations Are Based On Strained Interpretations Of Textbook Sales "Puffery" (Sixth And Seventh Causes Of Action) ........................... 11

    A. *"Design" And "Creation" Of Products* ......................................................... 11

    B. *"First-Ever App Connected Self-Cleaning Litter Box With Alexa And Google Voice Controls"* ..................................................................................................... 12

    C. *"UV Rays That Are 99.9% Effective At Eliminating Bacteria, Parasites And Viruses" To "Keep Your Kitty Safe" And "Reduce Odors"* ...................................... 13

    D. *"Smartest Self-Cleaning Litter Box"* ............................................................. 14

    E. *"Over Half A Million Cats And Their Owners" In "The Smarty Pear Family"* ........... 14

VIII. Whisker's Remaining Unfair Competition Claims (Eighth And Ninth Causes Of Action) Are Entirely Derivative Of Other Failed Claims ......................................... 15

IX. Whisker Has Not Alleged Any Basis To Bring Claims Against Chris Madeiras ........... 15

CONCLUSION ................................................................................................................. 15

DEFENDANTS'
MOTION TO DISMISS
Case No. 5-22-cv-04261-VC

## TABLE OF AUTHORITIES

### Cases

*Apple Hill Growers v. El Dorado Orchards*,
  No. 2:17-cv-02085, 2019 U.S. Dist. LEXIS 194185, (E.D. Cal. Nov. 6, 2019) ..................... 15

*Appliance Recycling Ctrs. of Am., Inc. v. JACO Envtl., Inc.*,
  378 F. App'x 652 (9th Cir. 2010)......................................................................................... 14

*Arcona, Inc. v. Farmacy Beauty, Ltd. Liab. Co.*,
  No. 2:17-cv-07058, 2018 U.S. Dist. LEXIS 47704, (C.D. Cal. Mar. 22, 2018) .................... 15

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)............................................................................................................... 1

*Atlas IP, LLC v. JEA*,
  2017 U.S. Dist. LEXIS 96577, No. 20-cv-20243 (N.D. Ill. June 21, 2017).............................. 4

*Bartonfalls LLC v. Turner Broad. Sys., Inc.*,
  2017 U.S. Dist. LEXIS 55068, No. 2:16-cv-1127 (E.D. Tex. Mar. 15, 2017) ......................... 3

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)............................................................................................................... 1

*Beyond Blond Prods. v. Heldman*,
  No. 20-cv-5581, 2022 U.S. Dist. LEXIS 48799, (C.D. Cal. Feb. 17, 2022) .......................... 15

*BMC Resources, Inc. v. Paymentech, L.P.*,
  498 F.3d 1373 (Fed. Cir. 2007)............................................................................................... 2

*Cleary v. News Corp.*, 30 F.3d 1255, (9th Cir.1994) .................................................................. 9

*Coastal Abstract Service v. First Amer. Title*,
  173 F.3d 725 (9th Cir. 1998) ................................................................................................ 12

*Cohen v. Porsche Cars N. Am., Inc.*,
  No. 2:19-cv-05530 AFM, 2019 U.S. Dist. LEXIS 212073, (C.D. Cal. Dec. 6, 2019)............. 14

*Cook, Perkiss Liehe v. N.C. Collection Serv*,
  911 F.2d 242 (9th Cir. 1990) ................................................................................................ 12

*Crystal Lagoons US Corp. v. Cloward H2O*,
  2020 U.S. Dist. LEXIS 250220, No. 2:19-cv-00796 (D. Utah May 11, 2020) .................... 5, 6

*Data Engine Techs. LLC v. Google LLC*,
  906 F.3d 999 (Fed. Cir. 2018) ................................................................................................ 2

*De La Vega v. Google LLC*,
  2020 U.S. Dist. LEXIS 116081, No. 19-cv-00617 (W.D. Tex. Feb. 7, 2020)...................... 5, 7

*Digital Landscape Inc. v. Maui Jim USA, Inc.*,
  2022 U.S. Dist. LEXIS 29791, No. 21-cv-1174 (C.D. Ill. Feb. 18, 2022) ............................... 4

*e.Digital Corp. v. iBaby Labs, Inc.*,
  No. 15-cv-05790-JST, 2016 U.S. Dist. LEXIS 111689, (N.D. Cal. Aug. 22, 2016)................. 2

DEFENDANTS'
MOTION TO DISMISS
Case No. 5-22-cv-04261-VC

*Eclectic Props. E., Ltd. Liab. Co. v. Marcus & Millichap Co.*,
  751 F.3d 990 (9th Cir. 2014) ................................................................ 1

*FC Online Mktg., Inc. v. Burke's Martial Arts, LLC*,
  No. 14-CV-3685, 2015 U.S. Dist. LEXIS 89415, (E.D.N.Y. July 8, 2015) ........................... 11

*Filipino Yellow Pgs. v. Asian Journal Pub*,
  198 F.3d 1143 (9th Cir. 1999) ................................................................ 10

*Gearsource Holdings, LLC v. Google LLC*,
  2020 U.S. Dist. LEXIS 119892, (N.D. Cal. July 8, 2020) .......................................... 9

*Hauschild GMBH & Co. KG v. FlackTek, Inc.*,
  No. 20-cv-02532, 2022 U.S. Dist. LEXIS 23385, (D. Colo. Feb. 9, 2022) ........................... 10

*Healthier Choices Mgmt. Corp. v. Philip Morris USA, Inc.*,
  2021 U.S. Dist. LEXIS 139224, No. 1:20-cv-4618 (N.D. Ga. July 23, 2021) .......................... 3

*Hicks v. PGA Tour, Inc.*,
  897 F.3d 1109 (9th Cir. 2018) ................................................................ 1

*Intellectual Ventures I LLC v. Motorola Mobility LLC*,
  870 F.3d 1320 (Fed. Cir. 2017) ................................................................ 4

*Maquet Cardiovascular LLC v. Saphena Med., Inc.*,
  No. C 16-cv-07213, 2017 U.S. Dist. LEXIS 81484, (N.D. Cal. May 26, 2017) ....................... 13

*McLaughlin v. Homelight, Inc.*,
  No. 2:21-cv-05379, 2021 U.S. Dist. LEXIS 177657, (C.D. Cal. Sep. 17, 2021) ......... 13, 14, 15

*Metamorfoza D.O.O. v. Big Funny, LLC*,
  2021 U.S. Dist. LEXIS 194472, No. 21-cv-2020 (C.D. Cal. July 27, 2021) ........................... 9

*Minnesota Min. Mfg. Co. v. Chemque, Inc.*,
  303 F.3d 1294 (Fed. Cir. 2002) ................................................................ 4

*Newcal Indus. v. Ikon Office Solution*,
  513 F.3d 1038 (9th Cir. 2008) ................................................................ 14

*PageMelding, Inc. v. ESPN, Inc.*,
  No. 11-cv-06263 WHA, 2012 WL 851574, (N.D. Cal. Mar. 13, 2012) .............................. 5

*Peloton Interactive v. Icon Heath & Fitness*,
  No. 20-cv-662, 2021 U.S. Dist. LEXIS 101436, (D. Del. May 28, 2021) ........................... 12

*People.AI, Inc. v. SetSail Techs.*,
  2021 U.S. Dist. LEXIS 108348, No. 20-cv-01948-WHA (N.D. Cal. June 8, 2021) .................. 5

*R & A Synergy LLC v. Spanx, Inc.*,
  No. 2:17-cv-09147, 2019 U.S. Dist. LEXIS 168266, (C.D. Cal. May 1, 2019) ...................... 12

*Robinson v. Hunger Free America, Inc.*,
  2018 U.S. Dist. LEXIS 93734, No. 1:18-cv-00042, (E.D. Cal. June 4, 2018) ........................ 8

*Smith v. Entrepreneur Media, Inc.*,

No. 2:12-cv-2184, 2013 U.S. Dist. LEXIS 74036, (E.D. Cal. May 23, 2013) .......................... 9

*Soar Tools, LLC v. Mesquite Oil Tools, Inc.*,
    2021 U.S. Dist. LEXIS 136233, No. 5:19-cv-243 (N.D. Tex. July 2, 2021)............................ 4

*Southgate v. Facebook, Inc.*,
    2017 U.S. Dist. LEXIS 217852, No. 1:17-cv-648 (E.D. Va. Nov. 14, 2017) .......................... 8

*Warner-Jenkinson Co., Inc. v. Hilton Davis Corp.*,
    520 U.S. 17, 117 S.Ct. 1040, L.Ed.2d 146 (1997)....................................................... 2

*Wolo Mfg. Corp. v. ABC Corp.*,
    349 F. Supp. 3d 176 (E.D.N.Y. 2018) .................................................................... 10

*Wright Medical Tech. v. Osteonics Corp.*,
    122 F.3d 1440 (Fed. Cir. 1997)............................................................................. 3

*Zaccagnino v. Nissan N. Am., Inc.*,
    2015 U.S. Dist. LEXIS 78441, (S.D.N.Y. June 16, 2015) ............................................ 13

**Statutes**

California Business and Professions Code § 17200 ................................................... 9, 15

**Other Authorities**

*McCarthy on Trademarks and Unfair Competition*................................................... 9, 10

PLEASE TAKE NOTICE that on December 1, 2022, at 10:00 a.m., Defendants PurLife Brands, Inc. (d/b/a "Smarty Pear") and Chris Madeiras, will and hereby move to dismiss the Amended Complaint (ECF No. 25) of Plaintiff Automated Pet Care Products (d/b/a "Whisker").

## I.      Introduction – Issues To Be Decided

Rather than competing with a disruptive new market entrant on technology, design, and price, Whisker has employed the legal equivalent of throwing "claims" against the wall in the hope that something will stick.  But none do.  Whisker's patents are so weak that it fails to plead infringement of key elements of each asserted independent claim.  Whisker's trademark claims boil down to an assertion that Smarty Pear is prohibited from using descriptive words – "Litter Robot" and "#litterrobot" – that Whisker has repeatedly and recently disclaimed at the Trademark Office.  And the false advertising claims are based on strained interpretations of standard-issue "puffery" and absurd attempts to demonstrate falsity, such as comparing the waste compartment of a litter box to the removal of the COVID-19 virus from a home or office.  Because none of Whisker's claims are plausible, the Amended Complaint should be dismissed in its entirety.

## II.     Standard of Review

In order to survive a motion to dismiss, a complaint "must include sufficient 'factual enhancement' to cross 'the line between possibility and plausibility.'" *Eclectic Props. E., Ltd. Liab. Co. v. Marcus & Millichap Co.*, 751 F.3d 990, 995 (9th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).  "[T]he factual allegations that are taken as true must plausibly suggest an entitlement to relief, **such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation**."  *Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011) (emphasis added).  "Applying this standard is a 'context-specific task' that requires drawing on 'judicial experience and common sense.'"  *Hicks v. PGA Tour, Inc.*, 897 F.3d 1109, 1117 (9th Cir. 2018) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

## III.    Whisker Has Not Plausibly Alleged That Smarty Pear Infringes U.S. Patent No. 9,433,185 (First Cause of Action)

Whisker's First Cause of Action accuses Smarty Pear of infringing U.S. Patent No. 9,433,185 ("the '185 Patent").  Dkt. 25 at ¶¶73-96.  The '185 Patent includes two independent

1    claims, Claims 1 and 13.  Ex. 1 at 29:36-32:20.[1]  Whisker alleges infringement of Claim 1 in its

2    Amended Complaint and an attached claim chart (Ex. 4), but does not allege infringement of Claim

3    13.  *See* Dkt. 25 at ¶¶74-90; Ex. 4 at pp. 1-25 (charting only claims 1, 3, 4, 6, 7, and 11).

4         It is axiomatic that "[d]irect infringement requires a party to perform or use each and every

5    step or element of a claimed method or product."  *BMC Resources, Inc. v. Paymentech, L.P.*, 498

6    F.3d 1373, 1378 (Fed. Cir. 2007) (citing *Warner-Jenkinson Co., Inc. v. Hilton Davis Corp.*, 520

7    U.S. 17, 117 S.Ct. 1040, 137 L.Ed.2d 146 (1997)).  In the context of a motion dismiss a patent

8    infringement claim, a plaintiff must "plausibly allege that the accused product practices each of the

9    limitations found in at least one asserted claim."  *e.Digital Corp. v. iBaby Labs, Inc.*, 2016 U.S.

10   Dist. LEXIS 111689, *8 (N.D. Cal. Aug. 22, 2016) (collecting cases).

11        Here, Whisker's Complaint and exhibits conclusively demonstrate that the accused

12   products do not include a "bonnet" as claimed.  Specifically, the claimed "bonnet . . . extends over

13   the portion of the chamber so that a . . . rear of the outside wall of the chamber remain[s] uncovered

14   by the bonnet[.]"  Ex. 1 at 29:58-62.  According to Whisker's Complaint and claim chart, the

15   "bonnet" of the accused products[2] is the upper-most housing portion, while the "chamber" of the

16   accused products is the oval-shaped component between the "bonnet" and the housing base.  *See*

17   Dkt. 25 at ¶82 (identifying the oval component as the "chamber"); Ex. 4 at p. 15 (identifying the

18   upper housing component as the purported "bonnet").  It is not plausible that the purported bonnet

19   "extends over the portion of the chamber so that a . . . rear of the outside wall of the chamber

20   **remain[s] uncovered by the bonnet**[.]"  That the rear of the outside wall of the purported chamber

21   is in fact **entirely covered** by the purported bonnet is conclusively demonstrated by a plethora of

22   images of the assembled Smarty Pear products depicted throughout Whisker's Complaint and

---

23   [1] References to Exhibits to the Amended Complaint (Dkt. 25) are to the Exhibit Number (*e.g.*,
24   Ex. 1, Ex. 2, etc.) within the exhibits to the Amended Complaint, which were filed as a single
     ECF filing under Dkt. 25-1.  References to the specifications of asserted patents (Ex. 1-3) are by
25   column number and line number.  As discussed in Smarty Pear's Request for Judicial Notice,
     exhibits to this motion – attached to the declaration of Josh Van Hoven and labeled as "JVH
26   Decl. DEx. #" – are documents referenced in the Complaint or public USPTO records.  *See Data
     Engine Techs. LLC v. Google LLC*, 906 F.3d 999, 1008 n.2 (Fed. Cir. 2018) (noting that a court
27   can decide a motion to dismiss based on documents from the complaint and USPTO records).

28   [2] Although two products – Leo's Loo and Leo's Loo Too – are accused of infringement, Whisker
     does not allege any material differences relevant to any of the patent issues in this motion.

1    claim chart.  *See* Dkt. 25 at ¶¶34, 45, 52, 73, 80, 84, 98, 100, 103 (similar); Ex. 4 at pp. 1, 2, 3, 4,

2    9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 21, 23, 24 (similar).  In view of these images, it is not plausible

3    to allege that the "rear of the outside wall of the chamber remain[s] uncovered by the bonnet" as

4    required for claim 1.  *See, e.g.*, *Healthier Choices Mgmt. Corp. v. Philip Morris USA, Inc.*,  2021

5    U.S. Dist. LEXIS 139224, *10 (N.D. Ga. July 23, 2021) (holding that "the exhibit controls" over

6    "more general allegations" where it "directly refutes these allegations"); *Bartonfalls LLC v. Turner*

7    *Broad. Sys., Inc.*,  2017 U.S. Dist. LEXIS 55068, *8 (E.D. Tex. Mar. 15, 2017) (*adopted* at 2017

8    U.S. Dist. LEXIS 54233) (concluding that "plaintiff's infringement allegations are implausible on

9    their face" in view of "plain and  ordinary meaning" of claim term).

10        Tellingly, the Amended Complaint merely recites to this claim element without support or

11   elaboration.  Dkt. 25 at ¶88.  Whisker's claim chart at least attempts to allege infringement,

12   apparently reasoning that when the accused product is disassembled to remove its upper housing

13   portion from the lower housing portion (accused "support base"), that upper housing portion no

14   longer "covers" the rear of the outside wall of the purported chamber (Ex. 4 at p. 16):




15

16

17

18

29

20        Burying this argument in a claim chart doesn't make it any less specious.  First, Whisker's

21   fictional, disassembled, non-functional accused products above still have the entirety of the

22   chambers covered by the upper housings.  Second, by requiring removal of a component of the

23   Smarty Pear device, Whisker "does not seek to interpret the claim terms, . . . but seeks to eviscerate

24   them."  *Wright Medical Tech. v. Osteonics Corp.*, 122 F.3d 1440, 1444 (Fed. Cir. 1997).  Third, in

25   addition to the "remain[s] uncovered by the bonnet" claim element, the claimed "bonnet . . . is

26   attached to the support base on two sides of the chamber[.]"  Ex. 1 at 29:58, 29:62:-63.  To the

27   extent that the accused product must be disassembled such that the purported "bonnet" levitates

28   above the purported "support base," the "bonnet" is no longer "attached" to the "support base" at

DEFENDANTS'
MOTION TO DISMISS
Case No. 5-22-cv-04261-VC

1    all, let alone "on two sides of the chamber" as required by Claim 1.[3]  *See Soar Tools, LLC v.*

2    *Mesquite Oil Tools, Inc.*, 2021 U.S. Dist. LEXIS 136233, *20 (N.D. Tex. July 2, 2021) (dismissing

3    where the patentee did not rely on "photos of the fully assembled allegedly infringing [device],

4    which is necessary for infringement because the claim elements require such a part").

5          Because Whisker's Amended Complaint and claim chart conclusively demonstrate that it

6    cannot prove infringement of a key element of any asserted independent claim, all claims related

7    to the '185 Patent must be dismissed.[4]  *See, e.g., Minnesota Min. Mfg. Co. v. Chemque, Inc.*, 303

8    F.3d 1294, 1300 (Fed. Cir. 2002) ("The law is clear that if an independent claim . . . is not infringed,

9    claims dependent on that independent claim . . . cannot be found to be infringed."); *Intellectual*

10   *Ventures I LLC v. Motorola Mobility LLC*, 870 F.3d 1320, 1331 (Fed. Cir. 2017) (noting that "a

11   finding of direct infringement is predicate to any finding of indirect infringement").

12   **IV.  Whisker Has Not Plausibly Alleged That Smarty Pear Infringes U.S. Patent No. 7,647,889 (Second Cause of Action)**

13         Whisker's Second Cause of Action accuses Smarty Pear of infringing U.S. Patent No.

14   7,647,889 ("the '889 Patent").   Dkt. 25 at ¶¶97-114.   The '889 Patent includes only one

15   independent claim, Claim 1.  Ex. 2 at 12:53-14:54.  Whisker explains its direct infringement

16   allegations for Claim 1 of the '889 Patent in its Amended Complaint and in a claim chart attached

17   as Exhibit 5 to its Complaint.  *See* Dkt. 25 at ¶¶99-110; Ex. 5 at pp. 1-16 (charting only claim 1).

18         Whisker has not alleged that all key elements of claim 1 are infringed.  Claim 1 requires

29   "means for altering the orientation of the first unit assembly relative to the second unit assembly

20   and the vector force of gravity, whereby alteration of the orientation of the first unit assembly

21   passes litter from the unenclosed compartment to the temporary compartment through the screen,

22   . . . and **wherein reversal of the orientation of the first unit assembly passes litter from the**

23   

24   ---
     [3] As is depicted in FIGS. 2, 3A, 3B, 4, and 7 of the '185 patent, the bonnet 80 of the '185 patent does not cover the rear of the chamber 20, whether it is levitating or attached to the base.  Ex. 1.

25   [4] Other than in boilerplate in the Amended Complaint, Whisker fails to identify any purported
26   equivalents.  *See* Dkt. 25 at ¶¶ 74, 98, 116; Ex. 4 (no equivalents for '185 Patent); Ex. 5 (no equivalents for '889 Patent); Ex. 8 (no equivalents for '502 Patent); *see Atlas IP, LLC v. JEA,*
27   2017 U.S. Dist. LEXIS 96577, *21 (N.D. Ill. June 21, 2017) (holding "there is no claim for infringement under the doctrine of equivalents" where, the patent owner "points to no equivalent that might satisfy any of the above described Limitations"); *Digital Landscape Inc. v. Maui Jim*
28   *USA, Inc.*,  2022 U.S. Dist. LEXIS 29791, *16 (C.D. Ill. Feb. 18, 2022) (similar holding).

1    **temporary compartment to the compartment**." Ex. 2 at 13:13-15, 13:19-21 (emphasis added).

2    Whisker's Complaint makes no attempt to show that these claim elements are infringed by the

3    accused products, instead merely reciting the claim language and citing, without elaboration, to

4    three videos of Smarty Pear products. Dkt. 25 at ¶110. The attached claim chart is similarly devoid

5    of elaboration as to the "alteration of orientation" and "reversal of orientation" that respectively

6    pass litter between the "unenclosed compartment" and "temporary compartment", instead

7    repeating the claim language verbatim and including annotations addressing only another claim

8    limitation. *See* Ex. 5 at pp. 14-15 (including green annotations purporting to show "waste material

9    being restrained by the screen and discharged under the force of gravity").

10    "Allegations of infringement 'without explanation as to the how or why these products

11    infringe . . . do[] not lead to any inference that plaintiff may be entitled to relief.'" *People.AI, Inc.*

12    *v. SetSail Techs.*, 2021 U.S. Dist. LEXIS 108348, *3 (N.D. Cal. June 8, 2021) (quoting

13    *PageMelding, Inc. v. ESPN, Inc.*, 2012 WL 851574, *2 (N.D. Cal. Mar. 13, 2012)). Here, the mere

14    citation of videos and attachment of images adjacent to claim language without elaboration does

15    not remedy this fatal flaw.[5] *See De La Vega v. Google LLC*, 2020 U.S. Dist. LEXIS 116081, *17

16    (W.D. Tex. Feb. 7, 2020) (dismissing allegations with unexplained screenshots); *Crystal Lagoons*

17    *US Corp. v. Cloward H2O*, 2020 U.S. Dist. LEXIS 250220, *4 (D. Utah May 11, 2020) (similar).

18    Indeed, the images and videos cited in the Amended Complaint and claim chart

29    conclusively demonstrate that there is no reversal for the filtration cycle, and thus no plausible

20    infringement. *See, e.g.*, Dkt. 25 at ¶110 (showing a single counterclockwise rotation for filtration

21    cycle); Ex. 5 at p. 15 (same); Dkt. 25 at ¶110, fn. 48-49 (referring to videos in fn. 22 and 23[6], which

22    show a single counterclockwise rotation); *Healthier Choices*, 2021 U.S. Dist. LEXIS 139224, *10

23    (holding "the exhibit controls" where it "directly refutes these allegations"). Because Whisker's

24    allegations are devoid of support and indeed contrary to reality, they fail. *Supra* at p. 4 and n. 4.

25

26    [5] The '889 Patent (Ex. 2) describes a "First Phase: Separation – first partial rotation (counter-
       clockwise)" in FIGS. 5A-5K and a "Second Phase: Litter Reintroduction – second partial
27    rotation (clockwise)" in FIGS. 6A-6L. *See also* Ex. 2 ("The motor reverses, and the filtered
       litter . . . is communicated back into the litter compartment"); 5:29-34 & 8:37-48 (similar).

28    [6]*E.g.*, https://cdn.shopify.com/s/files/1/0639/8921/9573/files/smarty-pear.mp4?v=1651821590

DEFENDANTS'
MOTION TO DISMISS
Case No. 5-22-cv-04261-VC

Haley ▪ Guiliano

**V.      Whisker Has Not Plausibly Alleged That Smarty Pear Infringes U.S. Patent No. 11,399,502 (Third Cause of Action)**

Whisker's Third Cause of Action accuses Smarty Pear of infringing U.S. Patent No. 11,399,502 ("the '502 Patent").  Dkt. 25 at ¶¶115-133.  The '502 Patent includes three independent claims: Claim 1, Claim 13, and Claim 16 (Ex. 3 at 36:47-39:47), but Whisker only alleges direct infringement of Claim 1.  *See* Dkt. 25 at ¶¶115-133; Ex. 8 at pp. 1-22 (charting only Claim 1).

Claim 1 of the '502 Patent requires "one or more sensors configured to detect one or more conditions of the device and transmit one or more signals related to the one or more conditions" and "a controller in communication with the one or more sensors and is adapted to receive the one or more signals, wherein the controller is **configured to determine one or more positions of the chamber** *based on the one or more signals received from the one or more sensors* and interpret the one or more signals as one or more status signals."  Ex. 3 at 36:53-62 (emphasis added).

For this claim element, Whisker's Amended Complaint rotely recites the language of Claim 1 alongside pictures of two sensors and a circuit board inside the Leo's Loo Too device.  Dkt. 25 at ¶¶122-125.  The claim chart merely recites the claim language above an image from the Smarty Pear user manual referencing a "Safety Mode" entered in response to a detection by the "anti-pinch sensor" and a picture of a circuit board contained inside the accused device.  Ex. 8 at pp. 12-13.

The images in Whisker's Amended Complaint and claim chart fail to provide any proof that the accused products have a "controller**… configured to determine one or more positions of the chamber** *based on the one or more signals received from the one or more sensors*" as required by Claim 1.  Nor do they even attempt to explain how the identified sensors of the accused devices – a radar sensor, an anti-pinch sensor, or a weight sensor – could be used by a controller to "determine one or more positions of the chamber."[7]  Once again, merely providing images of an accused product adjacent to conclusory recitations of the claim language fails to plausibly allege infringement.  *Crystal Lagoons,* 2020 U.S. Dist. LEXIS 250220 at *4.  Because Whisker's Amended Complaint "does not include even a short written description of how the accused

---

[7] In fact, the product manual says that the weight sensor measures a cat's weight, the radar "wall" is used to locate a cat's presence, and the anti-pinch sensor that is "located at the top of the waste drawer detects when foreign objects enter the waste chute."  *See* JVH Decl. DEx. 1 at p. 5.

DEFENDANTS'
MOTION TO DISMISS
Case No. 5-22-cv-04261-VC

Haley ▪ Guiliano

instrumentalities meet the… limitation" of the '502 Patent, it fails to state a claim upon which relief can be granted. *De La Vega v. Google LLC*, 2020 U.S. Dist. LEXIS 116081, *17 (W.D. Tex. Feb. 7, 2020); *see also People.AI, Inc. v. SetSail Techs.*, 2021 U.S. Dist. LEXIS 108348 *3 (N.D. Cal. June 8, 2021) (discussing allegations that are "without explanation as to the how or why these products infringe"); *see also supra* at p. 4 and n. 4.

## VI.    Whisker Has Failed To Allege Infringement Of Any Protectable Trademark Rights (Fourth, Fifth, And Tenth Causes Of Action)

Whisker alleges that it has "strong common law trademark rights in the Litter-Robot Marks with numerous federal trademark registrations" including "U.S. Trademark Reg. Nos. 4,674,124; 4,674,125; 5,259,515; 6,227,960; 6,570,005; 6,668,860; 6,734,934; 6,734,935; and 6,799,211." Dkt. 25 at ¶¶32, 135.  The Complaint includes 39 paragraphs of allegations that purport to support claims of "infringement" and "unfair competition." *Id.* at ¶¶33-72.  However, the only allegations that even arguably allege Smarty Pear's purported use of a Whisker mark are limited to use of the words "Litter Robot" or use of "#litterrobot" and permutations thereof.  Dkt. 25 at ¶44 (alleging use of "Better than a Litter Robot," "#LitterRobot," and "#litterrobot3"); ¶46 (alleging use of "#LitterRobot" and "#litterrobot3"); ¶47 (alleging hashtag use); ¶48 (similar); ¶49 (similar); ¶60 (similar).  Whisker is also clear that the primary purported mode of trademark infringement is social media usage: "Smarty Pear and Madeiras's use of the Litter-Robot Marks is likely to cause confusion, mistake, and deception by creating the false and misleading impression that Whisker has sponsored, endorsed, or approved ***Smarty Pear's social media posts*** touting the Leo's Loo and Leo's Loo Too." ¶138 (emphasis added).

### A.    *Whisker Has Not Alleged Infringement Of The Design Marks*

Three of these registrations – Nos. 4,674,124; 4,674,125; and 6,227,960 – are for design marks, with two depicting a cat and litter box image alongside stylized "litter•robot" text and one depicting stylized "litter•robot" text alone.  *See* JVH Decl. DEx. 2-4 (registrations from USPTO website[8]).  The Amended Complaint's mention of these design marks (without acknowledging that they are design marks) is in generalized allegations; nowhere does Whisker attempt to make any

---

[8] As discussed in Smarty Pear's Request for Judicial Notice, USPTO trademark records are available for consideration with the present motion as official records.

DEFENDANTS'
MOTION TO DISMISS
Case No. 5-22-cv-04261-VC

1    specific allegations as to how these design marks are potentially infringed.  Dkt. 25 at ¶¶32, 125.

2    And while the Amended Complaint generally references website layout features and social media

3    postings, nowhere does it allege that the website or social media postings include any features of

4    the design marks.  *E.g.*, Dkt. 25 at ¶¶46, 47, 48, 50, 60, 71.  The *sine qua non* of trademark

5    infringement is a likelihood of confusing an accused mark with the purported design mark.

6    *Robinson v. Hunger Free America, Inc.*, 2018 U.S. Dist. LEXIS 93734, *8, (E.D. Cal. June 4,

7    2018).  Because Whisker has not attempted to perform any such analysis, its claims related to the

8    design marks must be dismissed.  *See, e.g.*, *Southgate v. Facebook, Inc.*, 2017 U.S. Dist. LEXIS

9    217852, *2 (E.D. Va. Nov. 14, 2017) (dismissing Complaint where "Marks consist of a gold

10   encircled eight-point star, two red ellipses, and Sound Spark Studios in blue" and the accused

11   "logo, on the other hand, does not contain an eight pointed star, ellipses, or text").

12        B.    *The Words "Litter Robot" Are Not Protectable As A Trademark*

13        Five Whisker trademarks are word marks that include the term "Litter-Robot" – with a

14   *dash* between "Litter" and "Robot" – including No. 5,259,515 for "Litter-Robot," No. 6,570,005

15   for "Litter-Robot Pinch Detect," No. 6,668,860 for "Litter-Robot Open Air," No. 6,734,934 for

16   "Litter-Robot 3 Connect," and No. 6,734,935 for "Litter-Robot 3."  *See* JVH Decl. DEx. 5-9.  Prior

17   to seeking registration of "Litter-Robot" or any of its permutations, in 2007 Whisker sought

18   registration of a word mark for "Litter Robot."  *See* JVH Decl. DEx. 10 at p. 1.  Citing to Whisker's

29   products as "litter containers" and a dictionary definition of "Robot," the USPTO concluded that

20   the "Mark is Merely Descriptive" and "refused registration on the Principal Register[.]"  *Id.* at p.

21   5.  Whisker did not respond and the application was abandoned.  *Id.* at pp. 1, 3.

22        The first of the "Litter-Robot" (with a *dash*) applications was filed in 2016 for "Litter-

23   Robot".  *See* JVH Decl. DEx. 11 at pp. 66-68.  Registration was initially refused based on the word

24   "litter" in the description of goods and a dictionary definition of "robot."  *Id.* at pp. 51-52.  Whisker

25   responded that "Applicant's mark LITTER-ROBOT has obtained secondary meaning" and

26   submitted evidence of articles with the phrase "Litter-Robot" (with a *dash*) highlighted.  *Id.* at 34,

27   42-44.  The mark issued on the principal register based on this submission.  *Id.* at pp. 23-27.

28        In 2020-2021, Whisker filed applications for additional permutations of "Litter-Robot."

DEFENDANTS'
MOTION TO DISMISS
Case No. 5-22-cv-04261-VC

1   *See* JVH Decl. DEx. 6-9.  For "Litter-Robot 3" and "Litter-Robot 3 Connect," Whisker disclaimed

2   exclusive rights to "Litter Robot" in early 2022: "No claim is made to the exclusive right to use

3   LITTER ROBOT apart from the mark as shown."[9]  JVH Decl. DEx. 12 at p. 20;  DEx. 13 at p. 19.

4       "A disclaimer of a part of a composite is a concession that that part is descriptive."

5   *McCarthy on Trademarks and Unfair Competition*, § 19:65.  Any allegations of infringement[10]

6   based on the use of "Litter Robot" (*e.g.*, at ¶44) are foreclosed by Whisker's repeated (and recent)

7   disclaimer of "Litter Robot" and the USPTO's repeated finding of descriptiveness.  *See Smith v.*

8   *Entrepreneur Media, Inc.*, 2013 U.S. Dist. LEXIS 74036, *25 (E.D. Cal. May 23, 2013) ("Because

9   [the infringements] consist entirely of disclaimed portions of the composite mark, plaintiff cannot

10   reasonably believe that he will be damaged . . . .") (*adopted* at 2013 U.S. Dist. LEXIS 173589);

11   *Metamorfoza D.O.O. v. Big Funny, LLC*, 2021 U.S. Dist. LEXIS 194472, *11 (C.D. Cal. July 27,

12   2021) (similar); *see also McCarthy* at § 16:35 ( "If the law will not protect one's claim of right to

13   exclude others from using an alleged trademark, then he does not own a 'trademark'").

14       C.    *The Only Other Alleged Infringing Acts – Using A Hashtag With The Words "Litter*
            *Robot" – Cannot Possibly Infringe A Protectable Trademark*

15

16       As discussed *supra* at p. 7, the only accused infringement of Whisker's purported marks

17   other than literal use of the disclaimed "Litter Robot" is combining those disclaimed words with a

18   hashtag, *i.e.*, as #litterrobot, #LitterRobot, and #litterrobot3.  Dkt. 25 at ¶¶44, 46-49, and 60.  In

19   addition to its failed attempt to register "Litter Robot" and its myriad attempts to register "Litter-

20   Robot" and permutations thereof, Whisker also recently attempted to obtain federal registration

21   for "#LitterRobot" in an application filed on November 3, 2020.  JVH Decl. DEx. 15 at pp. 73-74.

22   In an April 6, 2021 Office Action, in addition to the now-common refrain that "litter" and "robot"

23   are descriptive, the Examiner explained that "[w]here a hashtag is used as part of an online social

24   ---

25   [9] "Litter-Robot Open Air" published to the Supplemental Register based on the Examiner's reasoning that Whisker previously "conceded that this [LITTER-ROBOT] wording was not inherently distinctive but was rather merely descriptive[.]"  JVH Decl. DEx. 14 at pp. 108-110.

26   [10] Whisker's § 1125 and California claims rise and fall with its federal trademark claims.
    *Gearsource Holdings, LLC v. Google LLC*, 2020 U.S. Dist. LEXIS 119892, *12 (N.D. Cal. July

27   8, 2020) (discussing common law and false designation of origin claims); *Cleary v. News Corp.*, 30 F.3d 1255, 1262–63 (9th Cir.1994) (discussing "state common law claims of unfair

28   competition and actions pursuant to California Business and Professions Code § 17200").

DEFENDANTS'
MOTION TO DISMISS
Case No. 5-22-cv-04261-VC

1    media search term, it generally serves no source-indicating function, because it merely facilitate[s]

2    categorization and searching within online social media.'" *Id* at p. 61 (quoting TMEP §1202.18).

3    On October 6, 2021, Whisker responded with a lengthy argument that #LitterRobot was

4    purportedly suggestive (*id.* at pp. 44-51), which the Examiner rejected. *Id.* at pp. 36-38. Whisker

5    responded on May 9, 2022 – *less than two months prior to filing the Complaint in this action* –

6    seeking registration on the supplemental register. *Id.* at pp. 33-34. Because actual use is required

7    for the supplemental register, Whisker also submitted an Allegation of Use with the USPTO,

8    *alleging a first use in commerce of April 9, 2022*. *Id.* at pp. 22-23; JVH Decl. DEx 16.

9    "A word, symbol or device on the Supplemental Register is not, strictly speaking, a 'mark.'

10    That is, it is not registrable on the Principal Register and is only 'capable' of someday becoming

11    a 'mark' upon the acquisition of secondary meaning." *McCarthy*, § 19:37 at 19-76; *Filipino Yellow*

12    *Pgs. v. Asian Journal Pub*, 198 F.3d 1143, 1151 (9th Cir. 1999) (similar). "[T]he better view is

13    that application for the Supplemental Register is an admission against interest that the term is not

14    inherently distinctive and does not yet have secondary meaning[.]" *McCarthy*, § 19:43 at 19-83.

15    Here, Whisker has not made any allegations that "#litterrobot" has obtained secondary

16    meaning, let alone in the five months since it admitted that "#litterrobot" is descriptive via

17    registration the supplemental register. *See* Dkt. 25 at ¶¶44-49, 60 (all allegations related to

18    #litterrobot, none of which allege secondary meaning or provide any evidence thereof). Under

29    these circumstances, Whisker has failed to plausibly allege any valid trademark rights in

20    #litterrobot or any permutations thereof.[11] *See, e.g.*, *Wolo Mfg. Corp. v. ABC Corp.*, 349 F. Supp.

21    3d 176, 206 (E.D.N.Y. 2018) (dismissing "complaint [that] is devoid of any factual allegations

22    from which a finding of secondary meaning may reasonably be inferred"); *Hauschild GMBH &*

23    *Co. KG v. FlackTek, Inc.*, 2022 U.S. Dist. LEXIS 23385, *23 (D. Colo. Feb. 9, 2022) (similar).

24    D.   *Whisker's Remaining Kitchen Sink Allegations Do Not Identify Any Protectable*
       *Rights (Such As Trade Dress), Let Alone Any Infringement*

25

26    Whisker also alleges that Smarty Pear's "website now mimics marketing assets, fonts,

27    ───────────────
       [11] Indeed, the cited examples of Smarty Pear's use of "#litterrobot" (most recent on January 22, 2022) precede Whisker's first use in commerce of April 9, 2022. Dkt. 25 at ¶¶ 44, 46-48, 60.

28

DEFENDANTS'
MOTION TO DISMISS
Case No. 5-22-cv-04261-VC

photos, email prompts, footer layouts, and overall webpage layouts—down to the rounded designs of the button edges" and that Smarty Pear "produced a 'How It Works' video for Leo's Loo that is nearly identical in script to Whisker's video for the LITTER-ROBOT product." Dkt. 25 at ¶¶50-51. Whisker's Complaint does not allege copyright infringement, trade dress, or any other intellectual property right that might cover website design or videos, and thus, does not plausibly support a cause of action. *Cf, e.g.*, *FC Online Mktg., Inc. v. Burke's Martial Arts, LLC*, 2015 U.S. Dist. LEXIS 89415, *21-*26 (E.D.N.Y. July 8, 2015) (dismissing claim related to website elements despite plaintiff attempting – unlike Whisker – to enumerate elements of trade dress).

## VII.    Whisker's False Advertising Allegations Are Based On Strained Interpretations Of Textbook Sales "Puffery" (Sixth And Seventh Causes Of Action)

Whisker's false advertising allegations are addressed in turn below.

### A.    *"Design" And "Creation" Of Products*

Whisker identifies a number of statements where Smarty Pear purportedly "represent[s] that they are the designer of Leo's Loo." *See* Dkt. 25 at ¶36 ("We designed Leo's Loo with kitty safety in mind[,]" "we've packed the Leo's Loo with features that make it one of the most convenient self-cleaning litter box [sic] available[,]" and Smarty Pear is a "California based technology company" that has a "team of innovators and pet lovers are actively working on several new products."); ¶54 ("We had a clear and ambitious goal when we designed Leo's Loo Too: To create a self-cleaning litter box that stands out from all the others with the very best user experience, most innovative technology and a design worthy of magazine covers" and "[w]hen I started Smarty Pear, my goal was to create products that injected even more magic into the special bond that exists between pet lovers and their fur babies."). According to Whisker, these statements were "intended to create the impression that Leo's Loo was designed by Smarty Pear and Madeiras in California, much like the LITTER-ROBOT product is designed by Whisker in the Midwest, and that Madeiras and Smarty Pear innovated the technology behind the product." Dkt. 25 at ¶36.

Whisker's manufactured "impression" is too "vague and subjective," and is "not a specific and measurable claim, capable of being proved false or of being reasonably interpreted as a statement of objective fact." *Coastal Abstract Service v. First Amer. Title*, 173 F.3d 725, 731 (9th

Cir. 1998).  Like the statements that a competitor is "too small" to handle certain business or that a lamp was "far brighter than any lamp ever before offered for home movies" considered in *Coastal*, there is no basis to quantify the degree of "design," "creation," or "innovation" that could render Smarty Pear's statement false.  *Id.; see also Peloton Interactive v. Icon Heath & Fitness*, 2021 U.S. Dist. LEXIS 101436, *16 (D. Del. May 28, 2021) ("Peloton's statements concerning its status as an 'innovator' and 'hardcore technology company' are non-actionable puffery."). Accordingly, these statements are not actionable as a matter of law.  *Coastal*, 173 F.3d at 731 (noting that puffery may be determined as a matter of law); *Cook, Perkiss Liehe v. N.C. Collection Serv*, 911 F.2d 242, 245 (9th Cir. 1990) (similar).

B.    *"First-Ever App Connected Self-Cleaning Litter Box With Alexa And Google Voice Controls"*

Whisker alleges that Smarty Pear "touted several new-features" with the launch of Leo's Loo Too, including that it was the "first-ever app connected self-cleaning litter box with Alexa and Google Voice controls[.]"  Dkt. 25 at ¶53.  According to Whisker, this statement is false because "LITTER-ROBOT 3 CONNECTED model predated Leo's Loo Too by years, and is capable of integrating with voice control systems such as Alexa and Google Assistant." *Id.* at ¶68. As an initial matter, the "first-ever" statement is nearly identical to the "far brighter than any lamp **ever before offered** for home movies" considered in *Coastal*.  173 F.3d at 731 (emphasis added); *see also Peloton,* 2021 U.S. Dist. LEXIS 101436, *17 ("Peloton's statement that its Bike is the 'first of its kind' is also non-actionable."); *R & A Synergy LLC v. Spanx, Inc.*, 2019 U.S. Dist. LEXIS 168266, *34 (C.D. Cal. May 1, 2019) ("[S]tatements made by Defendant's CEO representing that she 'invented' the Spanx sleeved undergarments or that the Spanx products filled a 'white space' in the market are puffery and non-actionable under the Lanham Act.").

Moreover, Whisker's Amended Complaint merely alleges that the LITTER-ROBOT 3 CONNECT "is capable of integrating with voice control systems such as Alexa and Google Assistant."  Dkt. 25 at ¶68.  Although this paragraph fails to elaborate on this "capability," elsewhere in the Amended Complaint Whisker acknowledges that this integration was only available via a third-party "automation platform" called "If This Then That." *Id.* at ¶14. Because

Whisker has not alleged that LITTER-ROBOT 3 CONNECT was itself an "app connected self-cleaning robot with Alexa and Google voice controls," there are no allegations from which Smarty Pear's statement might be deemed false. *Maquet Cardiovascular LLC v. Saphena Med., Inc.*, 2017 U.S. Dist. LEXIS 81484, *18 (N.D. Cal. May 26, 2017) (dismissing false advertising claim where "[n]othing in the foregoing contradicts [defendant's] statement" regarding product capabilities).

C.   *"UV Rays That Are 99.9% Effective At Eliminating Bacteria, Parasites And Viruses" To "Keep Your Kitty Safe" And "Reduce Odors"*

Another feature that Smarty Pear allegedly "touted" with the launch of Leo's Loo Too was "UV rays that eliminate 99.9% of bacteria." Dkt. 25 at ¶53; ¶55 (image of similar statements); ¶59 (similar); ¶60 (similar statement, including that "UV Sterilization" works to "[k]eep you and your kitty safe" and "reduc[e] odor"). According to Whisker, these statements are "false and misleading" (*id.* at ¶61) because "ultraviolet-C (a specific variation on UV rays)" was discussed in FDA guidance on removing the COVID-19 virus from rooms. *Id.* at ¶¶62-63. Whisker then selectively quotes from the FDA guidance to draw an analogy to an enclosed waste compartment of a litter box. *Id* at ¶¶63-64. These allegations fail to state a claim for two reasons. First, Whisker once again strains the language of the underlying 99.9% statements, which merely discuss UV rays generally, and for example, do not state that the UV kills *unexposed* bacteria within the litter box as would be required for falsity under Whisker's COVID-19 analogy. *See McLaughlin v. Homelight, Inc.,* 2021 U.S. Dist. LEXIS 177657, *13 (C.D. Cal. Sep. 17, 2021) (rejecting "strained interpretations of the phrase" to imply specific, unstated, implied statements); *Maquet*, 2017 U.S. Dist. LEXIS 81484, *18 (dismissing false advertising claim where allegations did not contradict statement). Second, regarding the litter compartment, Smarty Pear merely states that the UV "reduces odor" and "keeps your kitty safe," both of which are nonactionable puffery, and neither of which are addressed by FDA's COVID-19 guidance. Indeed, the whole purpose of an automated litter box is reduce odor while ensuring cat safety. *Zaccagnino v. Nissan N. Am., Inc.*, 2015 U.S. Dist. LEXIS 78441, at *8 (S.D.N.Y. June 16, 2015) ("Like speed and ease for internet service, safety and reliability are desirable qualities for a car. However, promoting a car as generally safe and reliable is too general a representation to be proven true or false."); *Cohen v.*

1    *Porsche Cars N. Am., Inc.*, 2019 U.S. Dist. LEXIS 212073, at *8 (C.D. Cal. Dec. 6, 2019) (similar).

2           D.      *"Smartest Self-Cleaning Litter Box"*

3           Smarty Pear has also advertised Leo's Loo products as being "The Smartest Self-Cleaning

4    Litter Box." Dkt. 25 at ¶69.   According to Whisker, "[i]n this context, the word 'smartest'

5    specifically refers to a subset of features" described in a video, including "(1) self-cleaning; (2)

6    voice controls; (3) app connection; (4) pet sensing; (5) post-exit cleaning." *Id.*  From this, Whisker

7    jumps to the conclusion that "[t]he necessary implication of 'smart*est*' is that other products in the

8    market lack those features." *Id.* at ¶70.  Because, according to Whisker, "each of those features is

9    present in the LITTER-ROBOT product[,]" Whisker alleges that the "smartest" claim "is false and

10   misleading." *Id.*  But of course the "smartest" statement itself does not identify any specific

11   features, let alone state that any such features are missing from other products.[12]   Because

12   "smartest" is a general, subjective claim without any mention of specific characteristics, it is

13   textbook non-actionable puffery.  *Appliance Recycling Ctrs. of Am., Inc. v. JACO Envtl., Inc.*, 378

14   F. App'x 652, 654 (9th Cir. 2010) ("The statement that Defendants' method for recycling

15   appliances is a 'unique' system with 'unprecedented' results is non-actionable puffery because it

16   is a 'general, subjective claim,' rather than a statement about 'specific or absolute characteristics.'"

17   (quoting *Newcal Indus. v. Ikon Office Solution*, 513 F.3d 1038, 1053 (9th Cir. 2008)); *see also*

18   *McLaughlin,* 2021 U.S. Dist. LEXIS 177657, *13 (C.D. Cal. Sep. 17, 2021) (similar).

29           E.      *"Over Half A Million Cats And Their Owners" In "The Smarty Pear Family"*

20           Finally, Whisker points to a website link to "Join the Smarty Pear Family" by entering an

21   "e-mail address" and pressing a "Subscribe" button, or clicking a button to "Follow Us on

22   Instagram." Dkt. 25 at ¶71.  This link includes the statement that "[o]ver half a million cats and

23   their owners have made the transition to a litter-free life with Pear Family." *Id.*  Whisker speculates

24   that "[t]he necessary implication of this statement is that over 500,000 'cats and their owners' are

25   using Leo's Loo or Leo's Loo Too devices . . . [which] conveys the impression that there have

26   been hundreds of thousands of sales of Leo's Loo and Leo's Loo Too[.]" *Id.*  This claim once

---

27   [12] Whisker's Amended Complaint actually supports Smarty Pear's claims of the "smartest self-
28   cleaning litter box." Dkt. 25 at ¶ 70 (explaining that in a head-to-head review, "the reviewer
     noted that 'the advanced and hi-tech stuff' in Leo's Loo Too weighed in its advantage").

again makes a strained interpretation of the language at issue, which in context is discussing joining

the "Smarty Pear Family" such as by hitting "Subscribe" or "Follow Us on Instagram" button, not

purchasing a Leo's Loo.  *See McLaughlin,* 2021 U.S. Dist. LEXIS 177657, *13 (rejecting "strained

interpretations" in favor of a "a more reasonable, obvious understanding of the phrase").

## VIII.  Whisker's Remaining Unfair Competition Claims (Eighth And Ninth Causes Of Action) Are Entirely Derivative Of Other Failed Claims

Whisker's claims under § 17200 and California Common Law are entirely derivative of

the other claims.  Dkt. 25 at ¶174; ¶¶181-82.  Because the underlying claims must be dismissed,

so too must these derivative claims.  *Cleary v. News Corp.,* 30 F.3d 1255 at 1262–63; *Beyond*

*Blond Prods. v. Heldman*, 2022 U.S. Dist. LEXIS 48799, *14 (C.D. Cal. Feb. 17, 2022).

## IX.  Whisker Has Not Alleged Any Basis To Bring Claims Against Chris Madeiras

Although the Amended Complaint says "Madeiras" 109 times, only two paragraphs

include allegations specific to Chris Madeiras.  Dkt. 25 at ¶¶33-34 (alleging that "Madeiras had a

relationship with Whisker" through which he "had access to Whisker's confidential information

and business plans for the LITTER-ROBOT product" and that in fall of 2019 "Madeiras met

privately with one of Whisker's executives").  Whisker does not allege that Madeiras actually

misappropriated any Whisker-confidential information via his "access" or "private" meeting, let

alone any protectable IP.  In other words, the sole basis for the claims against Madeiras is his

actions in his corporate role at Smarty Pear.  Dkt. 25, *passim* (referring to "Smarty Pear and

Madeiras" 86 times without elaboration).  Accordingly, Whisker has no basis to drag him into this

lawsuit in his personal capacity.  *See, e.g., Apple Hill Growers v. El Dorado Orchards*, 2019 U.S.

Dist. LEXIS 194185, *8 (E.D. Cal. Nov. 6, 2019) ("Beyond their corporate roles . . . , the

Complaint provides no facts about specific actions taken by [individual] Defendants . . . to

demonstrate their personal involvement in the infringing conduct."); *Arcona, Inc. v. Farmacy*

*Beauty, Ltd. Liab. Co.,* 2018 U.S. Dist. LEXIS 47704, *30 (C.D. Cal. Mar. 22, 2018) (similar).

## CONCLUSION

For the foregoing reasons, all of Whisker's claims should be dismissed.

DEFENDANTS'
MOTION TO DISMISS
Case No. 5-22-cv-04261-VC

Dated: October 12, 2022

HALEY GUILIANO LLP

By: _____
JOSHUA V. VAN HOVEN
joshua.vanhoven@hglaw.com
111 N. Market Street, Suite 900
San Jose, California 95113
Telephone: 669.213.1050
Facsimile: 669.500.7375

RICHARD T. MCCAULLEY (*pro hac vice*)
richard.mccaulley@hglaw.com
116 W. Hubbard Street
Chicago, Illinois 60654
Telephone: 312.330.8105

*Attorneys for Defendants,*
PurLife Brands, Inc. d/b/a Smarty Pear,
and Chris Madeiras

DEFENDANTS'
MOTION TO DISMISS
Case No. 5-22-cv-04261-VC