1  COOLEY LLP
   BOBBY GHAJAR (198719)
2  (bghajar@cooley.com)
   1333 2nd Street, Suite 400
3  Santa Monica, CA 90401
   Telephone:    (310) 883-6400
4  Facsimile:    (310) 883-6500

5  ERIK MILCH *[Pro hac vice]*
   (emilch@cooley.com)
6  11951 Freedom Drive, 14th Floor
   Reston, VA 20190
7  Telephone:    (703) 456-8573
   Facsimile:    (703) 456-8100

8  *[Full Listing on Signature Page]*

9  Attorneys for Plaintiff
   Automated Pet Care Products, LLC d/b/a Whisker

10

11              **UNITED STATES DISTRICT COURT**

12             **NORTHERN DISTRICT OF CALIFORNIA**

13  Automated Pet Care Products, LLC d/b/a          Case No. 3:22-cv-04261-VC
    Whisker, a Michigan corporation,
14                                                  **PLAINTIFF AUTOMATED PET CARE**
                        Plaintiff,                  **PRODUCTS, LLC D/B/A WHISKER'S**
15                                                  **OPPOSITION TO DEFENDANTS' MOTION TO**
               v.                                   **DISMISS**
16
    PurLife Brands, Inc. d/b/a Smarty Pear, a
17  Delaware corporation, and Chris Madeiras, an    Hearing Date:    December 1, 2022
    individual,                                     Judge:           Hon. Vince Chhabria
18                                                  Trial Date:      Not yet set
                        Defendants.
19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

I.    INTRODUCTION ............................................................................................... 1

II.   STATEMENT OF RELEVANT FACTS FROM THE FAC ............................. 2

III.  LEGAL STANDARD ON A MOTION TO DISMISS ..................................... 4

IV.   ARGUMENT ..................................................................................................... 4

      A.   The FAC Plausibly Alleges Claims for Patent Infringement................... 4

      B.   The FAC Plausibly Alleges a Claim for Trademark Infringement ......... 7

      C.   The FAC Plausibly States a Claim for False and Misleading Advertising ........... 10

      D.   The FAC Plausibly States a Claim against Mr. Madeiras................... 14

V.    CONCLUSION ................................................................................................ 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Align Tech., Inc. v. Strauss Diamond Instruments, Inc.*,
　2019 WL 1586776 (N.D. Cal. 2019)........................................................................ 10

*AlterG, Inc. v. Boost Treadmills LLC*,
　388 F. Supp. 3d 1133 (N.D. Cal. 2019) ................................................................... 4

*Aperture Net LLC v. Opengear, Inc.*,
　2020 WL 11401699 (N.D. Cal. Dec. 10, 2020) ........................................................ 6

*Appliance Recycling Ctrs. Of Am., Inc. v. JACO Env't, Inc.*,
　378 F. App'x 652 (9th Cir. 2010) ........................................................................... 13

*Applied Info. Scis. Corp. v. eBay, Inc.*,
　511 F.3d 966 (9th Cir. 2007) ................................................................................... 8

*Ariix, LLC v. NutriSearch Corp.*,
　985 F.3d 1107 (9th Cir. 2021)......................................................................... 11, 12

*Ashcroft v. Iqbal*,
　556 U.S. 662 (2009) ................................................................................................. 4

*Autodesk, Inc. v. Dassault Systemes SolidWorks Corp.*,
　685 F. Supp. 2d 1001 (N.D. Cal. 2019) ........................................................... 11, 13

*Avago Techs. Gen. IP (Singapore) PTE Ltd. v. Asustek Comput., Inc.*,
　2016 WL 1623920 (N.D. Cal. Apr. 25, 2016) ...................................................... 5, 6

*Balance Studio, Inc. v. Cybernet Entm't, LLC*,
　2016 WL 1559745 (N.D. Cal. Apr. 18, 2016) ........................................................ 10

*Battery Conservation Innovations, LLC v. Corsair Gaming, Inc.*,
　No. 4-21-cv-07322, D.I. 42 (N.D. Cal. Apr. 14, 2022)............................................ 7

*Bell Atl. Corp. v. Twombly*,
　550 U.S. 544 (2007)................................................................................................. 4

*Cleary v. News Corp.*,
　30 F.3d 1255 (9th Cir. 1994)................................................................................. 11

*Clorox Co. v. Reckitt Benckiser Grp. PLC*,
　398 F. Supp. 3d 623 (N.D. Cal. 2019) ............................................................. 11, 12

*In re Clorox Consumer Litig.*,
　894 F. Supp. 2d 1224 (N.D. Cal. 2012) ................................................................. 12

COOLEY LLP
ATTORNEYS AT LAW

*Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.,*
   173 F.3d 725(9th Cir. 1999)..................................................................... 13

*Cohen v. Porsche Cars N. Am., Inc.,*
   2019 WL 6700941 (C.D. Cal. Dec. 6, 2019) ........................................ 13

*Comm. for Idaho's High Desert, Inc. v. Yost,*
   92 F.3d 814 (9th Cir. 1996)..................................................................... 14

*Craigslist, Inc. v. DealerCMO, Inc.,*
   2017 WL 6334142 (N.D. Cal. Apr. 11, 2017) ...................................... 10

*Disc Disease Sols. Inc. v. VGH Sols., Inc.,*
   888 F.3d 1256 (Fed. Cir. 2018)................................................................ 6

*Fitbit, Inc. v. Laguna 2, LLC,*
   2017 WL 8294274 (N.D. Cal. Apr. 26, 2017) ...................................... 15

*Foman v. Davis,*
   371 U.S. 178 (1962) ................................................................................ 15

*Fujitsu Ltd. v. Belkin Int'l Inc.,*
   782 F. Supp. 2d 868 (N.D. Cal. 2011) ..................................................... 6

*Global Apogee v. Sugarfina, Inc.,*
   2021 WL 4819715 (C.D. Cal. Oct. 15, 2021) ...................................... 15

*Guardant Health, Inc. v. Natera, Inc.,*
   580 F. Supp. 3d 691 (N.D. Cal. 2022) ................................................... 11

*Hewlett-Packard Co. v. Repeat-O-Type Stencil Mfg. Corp.,*
   1995 WL 552168 (N.D. Cal. Aug. 30, 1995)........................................ 14

*Humboldt Wholesale, Inc. v. Humboldt Nation Distrib., LLC,*
   2011 WL 6119149 (N.D. Cal. Dec. 8, 2011) .......................................... 9

*L.A. Taxi Cooperative, Inc. v. Uber Techs., Inc.,*
   114 F. Supp. 3d 852 (N.D. Cal. 2015) ............................................ 11, 13

*Lifetime Indus., Inc. v. Trim-Lok, Inc.,*
   869 F.3d 1372 (Fed. Cir. 2017)........................................................... 4, 7

*LivePerson, Inc. v. [24]7.ai,*
   2018 WL 5849025 (N.D. Cal. Nov. 7, 2018)................................... 13, 14

*Locklin v. StriVectin Operating Co., Inc.,*
   2022 WL 867248 (N.D. Cal. Mar. 23, 2022)......................................... 12

*McLaughlin v. Homelight, Inc.*,
    2021 WL 5986913 (C.D. Cal. Sept. 17, 2021)........................................................... 14

*Metamorfoza D.O.O. v. Big Bunny, LLC*,
    2021 WL 4572039 (C.D. Cal. July 27, 2021).............................................................. 9

*Nalco Co. v. Chem-Mod, LLC*,
    883 F.3d 1337 (Fed. Cir. 2018)............................................................................ 6, 7

*Navarro v. Block*,
    250 F.3d 729 (9th Cir. 2001)..................................................................................... 4

*Newcal Indus., Inc. v. Ikon Office Sol.*,
    513 F.3d 1038 (9th Cir. 2008)................................................................................. 11

*Office Airline Guides, Inc. v. Goss*,
    856 F.2d 85 (9th Cir. 1988)....................................................................................... 9

*Peloton Interactive, Inc. v. Icon Health & Fitness, Inc.*
    2021 WL 2188219 (D. Del. May 28, 2021)........................................................ 12, 13

*Planet Drum Found. v. Hart*,
    2017 WL 4236932 (N.D. Cal. Sept. 24, 2017) .......................................................... 9

*Pom Wonderful LLC v. Hubbard*,
    775 F.3d 1118 (9th Cir. 2014)................................................................................... 8

*R and A Synergy LLC v. Spanx, Inc.*,
    2019 WL 4390564 (C.D. Cal. May 1, 2019) ........................................................... 12

*Rearden LLC v. Rearden Commerce, Inc.*,
    683 F.3d 1190 (9th Cir. 2012)................................................................................... 8

*In re S.C. Johnson & Son, Inc. Windex Non-Toxic Litig.*,
    2021 WL 3191733 (N.D. Cal. July 28, 2021).......................................................... 14

*Smith v. Entrepreneur Media, Inc.*,
    2013 WL 2296077 (E.D. Cal. May 24, 2013)............................................................ 9

*Solid 21, Inc. v. Breitling USA, Inc.*,
    512 F. App'x 685 (9th Cir. 2013) ............................................................................. 8

*Southland Sod Farms v. Stove Seed Co.*,
    108 F.3d 1134 (9th Cir. 1997)................................................................................. 11

*Steeped, Inc. v. Nuzee, Inc.*,
    2019 WL 6251255 (N.D. Cal. Nov. 22, 2019) ........................................................ 10

*Throop, LLC v. Google LLC,*
  2020 WL 4355302 (C.D. Cal. Apr. 9, 2020) ............................................................. 7

*In re Toyota Motor Corp.,*
  754 F. Supp. 2d 1145 (C.D. Cal. 2010) ................................................................. 13

*Transgo, Inc. v. Ajac Transmission Parts Corp.,*
  768 F.2d 1001 (9th Cir. 1985) ............................................................................ 14

*Uniloc USA, Inc. v. Apple Inc.,*
  2018 WL 2047553 (N.D. Cal. May 2, 2018) ........................................................... 6

*Usher v. Los Angeles,*
  828 F.2d 556 (9th Cir. 1987) ............................................................................... 4

*Vendavo, Inc. v. Price f(x) AG,*
  2018 WL 1456697 (N.D. Cal. Mar. 23, 2018) ......................................................... 5

*Williams v. Gerber Products Co.,*
  552 F.3d 934 (9th Cir. 2008) ....................................................................... 11, 14

*Windy City Innovations, LLC v. Microsoft Corp.,*
  193 F. Supp. 3d 1109 (N.D. Cal. 2016) .................................................................. 5

*Wood v. Apodaca,*
  375 F. Supp. 2d 942 (N.D. Cal. 2005) ................................................................... 8

*Zaccagnino v. Nissan N. Am., Inc.,*
  2015 WL 3929620 (S.D.N.Y. June 17, 2015) ........................................................ 13

*Zobmondo Entm't, LLC v. Falls Media, LLC,*
  602 F.3d 1108 (9th Cir. 2010) ............................................................................. 8

**Statutes**

15 U.S.C.
  § 1056(b) ......................................................................................................... 9
  § 1115(a) ......................................................................................................... 8

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(6) ....................................................... 4, 7, 8

McCarthy on Trademarks & Unfair Competition § 19:65 .................................... 9

Plaintiff Automated Pet Care Products, LLC d/b/a Whisker ("Plaintiff" or "Whisker") files the following Opposition to PurLife Brands, Inc. d/b/a/ Smarty Pear's ("Smarty Pear") and Chris Madeiras' ("Madeiras") (collectively, "Defendants") Motion to Dismiss the First Amended Complaint ("FAC") (Dkt. 29 (hereinafter "Mot." or "Motion")).

## I. INTRODUCTION[1]

Defendants' arguments amount to their factual disagreement or different interpretation of the well-pleaded allegations of the FAC. The FAC contains over 59 pages of detail and external citations explaining how Defendants willfully copied Whisker's innovative product, misused the LITTER-ROBOT® brand, and made various false and misleading statements, causing consumer confusion. As to patent infringement (Claims 1-3), Defendants admit that Whisker attached a detailed claim chart, showing precisely how Defendants' imported knockoffs infringe Whisker's patents. Defendants' patent arguments are inappropriate criticisms of the merits of Whisker's properly pleaded allegations and amount to no more than premature claim construction and non-infringement arguments. As to trademark infringement (Claims 4-5), Defendants admit that Whisker has alleged it owns strong trademark rights protected by numerous federal registrations, and that Defendants' use of Whisker's marks in connection with their social media promotion has created a likelihood of confusion. Nowhere do Defendants rebut the presumption of validity afforded to Whisker's marks or explain how their use of an identical mark on social media is not plausibly infringing. Whisker's false advertising claims (Claims 6-7) are based on multiple false and misleading statements, including that Defendants supposedly "designed" their products (they didn't), Defendants' UV rays are "99.9% effective" at disinfecting cat litter (they aren't), and so on. Each of these statements is objectively falsifiable and in fact false and misleading. Finally, the FAC explains how Chris Madeiras drove the infringement at issue and is personally liable for certain acts. Although Defendants would have the Court sort through hundreds of pages of exhibits and make early determinations of fact, that is inappropriate at the pleadings stage. The FAC plausibly states claims for patent infringement, trademark infringement, false advertising, and unfair competition. Defendants' Motion should be denied in its entirety.

---

[1] Citations to "¶_" are to the paragraphs of the FAC; internal quotations and citations are omitted.

**Patent Claims**. Whisker protects the technology underlying its industry-leading LITTER-ROBOT® product line with numerous patents, including U.S. Patent Nos. 9,433,185 for an improved litter device for use by animals that automatically removes animal waste from litter (the "'185 Patent"), 7,647,889 for an automated system for a litter device (the "'889 Patent"), and 11,399,502 related to a method of operating an automated litter device via a remote user interface ( the "'502 Patent") (the "Patents-In-Suit"). ¶¶22, 25, 28. The innovations captured by these patents cover many important aspects of an automated pet product. ¶¶23, 26, 29.

In or around April 2021, Defendants began to import and offer for sale an automated self-cleaning litter box branded as "Leo's Loo," which they followed up in October 2021 with "Leo's Loo Too" (collectively, the "Accused Products"). ¶¶35, 53. These devices are copycat products designed and manufactured in China, and then resold under Defendants' brand. ¶¶37, 55. Whisker's FAC and claim charts detail at length how the Accused Products infringe Whisker's patents in a variety of ways. ¶¶73–145; *see also* FAC Exs. 4, 5, 8.

**Trademark Claims**. Whisker has used its distinctive and well-known LITTER-ROBOT® trademarks ("the Litter-Robot Marks") in commerce consistently since April 2000. ¶¶11–15, 32. For the last 22 years, it has devoted substantial time, effort, and resources to the development and promotion of the Litter-Robot Marks. ¶¶11, 31. These efforts have led to numerous rave reviews from publishers including CNN, *The Daily Beast*, and *Good Housekeeping*, as well as from tens of thousands of customers. ¶¶19–20. All told, it has sold over 700,000 LITTER-ROBOT devices.[2] ¶20. The purchasing public identifies the Litter-Robot Marks with Whisker and its products. ¶31.

Bolstering these strong common law trademark rights, the USPTO has awarded Whisker numerous federal trademark registrations protecting the Litter-Robot Marks. ¶32; *see also* Dkt. 29-3–29-10 (attaching registrations). One covers the word mark LITTER-ROBOT (Reg. No. 5,259,515) and was registered on the Principal Register on a basis that the term has acquired secondary meaning in connection with "[a]utomated appliances, namely, litter boxes." ¶32; Dkt.

---

[2] As needed, Whisker could amend its pleading to highlight additional nationwide press (*Newsweek*, *Wired*, etc.), tens of millions in advertising, and further details regarding its sales success.

29-6 (registration); Dkt. 29-12, at 35–50 (evidence of acquired distinctiveness). As part of their scheme to trade off of Whisker's distinctive Litter-Robot Marks and goodwill, Defendants repeatedly tagged their own social media posts with "#litterrobot' and "#litterrobot3" last year. ¶¶44–49. It was obvious that Defendants were using the hashtag to refer to Whisker's products, *e.g.*, "litterrobot3" (a model designation) and capitalizing "LitterRobot." ¶46. As of the filing of the FAC, Defendants created at least 22 promotional posts using Whisker's trademark, ¶49, falsely associating Whisker's LITTER-ROBOT® product with Defendants' knockoff. ¶52.

**False Advertising**. Defendants also made false and misleading representations concerning their products to unfairly drive sales and interest. These statements included:

- **Representations that Defendants designed the infringing products.** Defendants' press release quoted Mr. Madeiras stating "we designed Leo's Loo Too," and their user manual quoted Mr. Madeiras misleadingly implying that he "create[d]" the infringing products. ¶¶36, 54; Dkt. 29-2 at 4 (user manual). On information and belief, however, Defendants did nothing more than relabel a product imported from China. *See* ¶¶37, 55 (showing the comparisons).

- **Representations that the infringing products sterilize waste litter.** Defendants stated repeatedly that Leo's Loo Too utilizes UV rays which "thoroughly sterilize[]" waste litter and are "99.9% effective at eliminating bacteria, parasites, and viruses." ¶¶53, 55, 59. In an Instagram post, Defendants touted this feature would "keep you and your kitty safe" and "reduce odor." ¶60. Yet FDA research indicates that UV rays cannot disinfect material "covered by dust or soil" or "embedded in porous surfaces." ¶63. Cat litter is such an environment, making any such feature ineffective. ¶64.

- **Representations that Leo's Loo Too was the "first ever app-connected self-cleaning litter box with Alexa and Google Voice controls."** Not only did Leo's Loo Too share all of its features with the imported product, but Whisker's LITTER-ROBOT 3 CONNECTED model was capable of integrating with the same voice control systems. ¶¶53, 55, 68.

- **Representations that Leo's Loo Too's features made it the "smartest self-cleaning litter box."** In a video on their website, Defendants specifically tied this representation to five features: (1) self-cleaning, (2) voice controls, (3) app connection, (4) pet sensing, and (5) post-

exit cleaning. ¶69. But each of these features was present in the LITTER-ROBOT product as well as the imported product *prior to* the launch of Leo's Loo Too. ¶70.

- **Representations that "over half a million cats and their owners have made the transition to a litter-free life with Smarty Pear Family."** This statement implies that over half a million devices have been sold, ¶71. This is highly misleading because, *as Defendants now admit*, they could not plausibly have sold that many devices in scarcely a year in business. ¶72.

All of these misleading statements of fact were material to consumers. ¶¶38, 65, 68, 70–71.

### III.    LEGAL STANDARD ON A MOTION TO DISMISS

A complaint must merely allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the complaint." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A claim is facially plausible when the plaintiff pleads facts that "allow [] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing a Rule 12(b)(6) motion to dismiss, the court must assume the plaintiff's allegations are true and must draw all reasonable inferences in plaintiff's favor. *Usher v. Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).

### IV.    ARGUMENT

#### A.    The FAC Plausibly Alleges Claims for Patent Infringement

Defendants' sole argument for dismissal of the patent infringement claims is a misdirected claim that the FAC does not meet the *Twombly/Iqbal* pleading standard. A patent claim "does not satisfy the standards of *Twombly* and *Iqbal* where it does not at least contain factual allegations that the accused product practices every element of at least one exemplary claim." *AlterG, Inc. v. Boost Treadmills LLC*, 388 F. Supp. 3d 1133, 1142–43 (N.D. Cal. 2019). Federal Circuit "precedent requires that a complaint place the alleged infringer 'on notice of what activity . . . is being accused of infringement.'" *Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1379 (Fed. Cir. 2017).

The FAC meets the pleading standard, however, and firmly places Defendants on notice of what activities are being accused of infringement. The majority of Whisker's infringement allegations are set forth in three claim charts totaling 63 pages, which are incorporated by reference

into its FAC and identify each element of the representative claims, making specific factual allegations regarding how each element is met by the Accused Products. ¶¶76, 100, 118 (citing Exs. 4, 5, 8). Each claim chart addresses the claim limitations with respect to each of the Accused Products and cites to evidence, including user and website guides and videos in support.

For each asserted patent, the FAC identifies: (1) the Accused Products, ¶¶74–90, 98–110, 116–129; (2) the infringing functionalities of the Accused Products, *e.g.*, "the same support base, chamber, entry opening, screen and/or septum, axis of rotation, track plane, and waste opening," "the same unenclosed compartment, temporary litter storage compartment, screen, base, waste receptacle, and orientation," and a "connect[ion] [to] the self-cleaning litter box," ¶¶40, 53; and (3) the ways in which those functionalities meet the limitations of the asserted claims, *e.g.*, an automatically rotating chamber, Ex. 4 at 7–9, a waste receptacle underneath the unit assembly, Ex. 5 at 9–10, and multiple configuration sensors, Ex. 8 at 7–12. *See, e.g., Windy City Innovations, LLC v. Microsoft Corp.*, 193 F. Supp. 3d 1109, 1115 (N.D. Cal. 2016) (plaintiff stated a claim for patent infringement by alleging "(i) the Accused Instrumentalities and the functionalities of those products which allegedly infringe on plaintiff's patents and (ii) the ways in which the Accused Instrumentalities meet claims of the [p]atents").

Defendants' argument that the FAC and claim charts merely parrot the language of the asserted claims misses the mark. This District accepts patent allegations that track the language of the claims. *See, e.g., Avago Techs. Gen. IP (Singapore) PTE Ltd. v. Asustek Comput., Inc.*, 2016 WL 1623920, at *4 (N.D. Cal. Apr. 25, 2016) (holding that "a patent infringement complaint that largely tracks the language of the claims [has] sufficient specificity"). Such allegations are construed as facts tied to each and every claim element. *See Vendavo, Inc. v. Price f(x) AG* 2018 WL 1456697, at *5 (N.D. Cal. Mar. 23, 2018) (recitation of claim language "represent factual assertions . . . that the accused products read on each and every claim element," alleging that products function "exactly in the manner described by the patent claims"). [3]

---

[3] Further, the case law Defendants cite directly contradicts their argument that the FAC recites the claim element without support or elaboration. Mot. at 3. Whisker provided the attached claim charts detailing its accusations. Exs. 4, 5, 8. Whisker need not duplicate its claim charts in the body of the FAC—that is the exact reason Whisker attached the claim chart.

COOLEY LLP
ATTORNEYS AT LAW

Ultimately, Defendants' arguments—largely supported by later-stage case law—amount to premature claim construction and non-infringement contentions. Yet claim construction is inappropriate on a motion to dismiss. *See Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1349 (Fed. Cir. 2018) (claim construction disputes are "not suitable for resolution on a motion to dismiss"); *Fujitsu Ltd. v. Belkin Int'l Inc.*, 782 F. Supp. 2d 868, 889–90 (N.D. Cal. 2011) (motion to dismiss is "not the proper time to initiate claim construction," in part because it "would be starting the process of evaluating the merits" of the case). So too are non-infringement contentions. *Aperture Net LLC v. Opengear, Inc.*, 2020 WL 11401699, at *3 (N.D. Cal. Dec. 10, 2020) (complaint is not the "appropriate time for the Court to evaluate the sufficiency of the proffered claim charts as infringement contentions in satisfaction of Patent Local Rule 3-1"); *Avago Techs.*, 2016 WL 1623920, at *4 ("[T]his District generally has not required detailed infringement theories until the time that infringement contentions are served, which is typically several months after a complaint has been filed."). All that is required to meet the plausibility standard at the pleading stage is fair notice of the infringement claims and the grounds on which they are brought. *See Disc Disease Sols. Inc. v. VGH Sols., Inc.*, 888 F.3d 1256, 1260 (Fed. Cir. 2018).

**'185 Patent**. Defendants dispute the meaning of the limitations in the '185 Patent that the outside wall "remain[s] uncovered by the bonnet" and that the bonnet is "attached to the support base on two sides of the chamber." Parsing the language of the patent, Defendants argue that "remains uncovered by the bonnet" necessarily means that the chamber must be fully exposed. Such an interpretation is at odds with the FAC and claim chart, and amounts to a premature claim construction argument.[4] *Uniloc USA, Inc. v. Apple Inc.*, 2018 WL 2047553, at *3–4 (N.D. Cal. May 2, 2018) (finding claim construction dispute precluded dismissal). Likewise, Defendants prematurely argue non-infringement by disputing Whisker's allegations that the Accused Products contain a bonnet attached to the support base. *See Aperture Net LLC*, 2020 WL 11401699, at *3.

**'889 Patent**. Defendants dispute that the Accused Products practice the "reversal of the orientation of the first unit assembly." Mot. at 4–5. But Whisker's FAC and the '889 Patent claim

---

[4] Whisker nowhere alleges that the Accused Products only infringe when *disassembled*. The images in the claim chart and FAC of the Accused Products with the bonnet attachment separated from the product are purely for context.

chart explicitly allege the Accused Products practice the reversal limitation. ¶110; Ex. 5 at 14–16. Whisker additionally cites to multiple videos, incorporating several screenshots of such videos with accompanying arrows and text for added clarification, thereby plausibly alleging that the Accused Products practice the reversal limitation. *See Battery Conservation Innovations, LLC v. Corsair Gaming, Inc.*, No. 4-21-cv-07322, D.I. 42 (N.D. Cal. Apr. 14, 2022) (screenshots from defendant's website sufficiently alleged that accused product included all limitations); *Throop, LLC v. Google LLC*, 2020 WL 4355302, at *3 (C.D. Cal. Apr. 9, 2020) (same).[5] That Defendants are able to respond to and disagree with Whisker's FAC and claim chart regarding the reversal limitation further evidences the pleading standard is met since Defendants are clearly on notice of what activity Whisker accuses of infringement. *Lifetime Indus.*, 869 F.3d at 1379.

**'502 Patent**. Defendants argue the Accused Products do not contain a controller "configured to determine one or more positions of the chamber based on the one or more signals received from the one or more sensors." The FAC and '502 Patent claim chart identify the existence of multiple sensor types and a controller (*i.e.*, the Leo's Loo Too circuit board) and cite to Defendants' user manual which supports the claimed communication between the controller and the sensors. Ex. 8 at 7–13. Defendants again demand heightened pleading, seeking details that are subject to further discovery and contending that Whisker is required to provide detailed contentions as to precisely how Leo's Loo Too operates and infringes.[6] This is not required on a motion to dismiss. *See Nalco*, 883 F.3d at 1349 (a plaintiff need not "prove its case at the pleading stage").

## B. The FAC Plausibly Alleges a Claim for Trademark Infringement

Defendants put the cart before the horse in seeking dismissal of Whisker's well-pleaded trademark infringement claim. Rather than focusing on the pleadings, as is required for a Rule 12(b)(6) motion, Defendants would have the Court make improper evidentiary findings as a matter of law—before discovery has even commenced. Indeed, both distinctiveness and likelihood of

---

[5] *People.AI, Inc. v. SetSail Technologies* is distinguishable. There, the plaintiff never alleged that the accused software met the limitation, instead merely citing to a single screenshot that showed that the accused software was consistent with the patent. 2021 WL 2333880, at *3 (N.D. Cal. June 8, 2021).

[6] The type of infringement analysis Defendants would have Whisker provide at the pleading stage would require a detailed understanding and analysis of Leo's Loo Too's app, source-code, software, hardware, etc. which is only achievable after discovery.

confusion are issues of fact. *Zobmondo Entm't, LLC v. Falls Media, LLC*, 602 F.3d 1108, 1113 (9th Cir. 2010) (distinctiveness a fact question); *Edwards Lifesciences Corp. v. Meril Life Scis. Pvt. Ltd.*, 2021 WL 1312748, at *2 (N.D. Cal. Apr. 8, 2021) (likelihood of confusion). Unsurprisingly, the Motion fails to cite any law supporting the premature and unprecedented relief sought here.

To state a claim for infringement of a registered or unregistered trademark under the Lanham Act, a plaintiff must simply allege (1) that it has a protectable ownership interest in the mark; and (2) that the defendant's use of the mark is likely to cause consumer confusion." *Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1202 (9th Cir. 2012).[7] The FAC includes *numerous* facts relevant to these factors. **First**, Whisker alleges that its LITTER-ROBOT® mark is distinctive and has strong recognition among consumers. ¶¶11, 30–31. As evidence of its strong common law rights and consumer recognition, Whisker pleads that it used LITTER-ROBOT in commerce for over 22 years, resulting in over 700,000 sales, rave reviews from publishers identifying the Litter-Robot Marks, and tens of thousands of favorable user reviews. ¶¶11, 13–16, 19–20. Whisker also alleges ownership of *multiple* federal registrations for the LITTER-ROBOT mark, conferring on Whisker the presumption of validity, ownership, and the right to use the mark. ¶32; 15 U.S.C. § 1115(a) (statutory presumption); *Applied Info. Scis. Corp. v. eBay, Inc.*, 511 F.3d 966, 970 (9th Cir. 2007) (registration established plaintiff's rights in "Smart Search"). One was registered on the Principal Register on the basis that the LITTER-ROBOT mark acquired distinctiveness, **without** any disclaimers required. ¶32 (referencing Reg. No. 5,259,515). These allegations are more than enough to establish a valid trademark at the pleading stage. *See Solid 21, Inc. v. Breitling USA, Inc.*, 512 F. App'x 685, 686–87 (9th Cir. 2013) (reversing dismissal where complaint alleged federal registration, stating "the inquiry under Rule 12(b)(6) is into the adequacy of the pleadings, not the adequacy of the evidence"). The FAC more than satisfies the first factor.

**Second**, the FAC alleges numerous facts that support a likelihood of confusion under the Ninth Circuit's *Sleekcraft* factors. *See Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1125 (9th Cir. 2014) (setting out factors). Whisker owns a strong mark, supported by its decades of sales and

---

[7] Whisker's common law trademark infringement claim mirrors the federal elements. *See Wood v. Apodaca*, 375 F. Supp. 2d 942, 947–48 (N.D. Cal. 2005).

COOLEY LLP
ATTORNEYS AT LAW

widespread publicity.  ¶¶11, 13–20, 31.  The parties and their products are in direct competition.

¶33.  Defendants uploaded at least 22 Instagram posts between October 2021 and July 2022 that used "LitterRobot" or "litterrobot3" in promotional hashtags to trade off Whisker's goodwill and create the impression that Leo's Loo Too was affiliated with LITTER-ROBOT®.  ¶¶44–49.[8]  This infringement is exacerbated by the appearance of Defendants' website layout and marketing materials, which mimicked Whisker's in style, color, scheme, and layout.  ¶¶50–51.  ***Defendants have caused actual confusion***, ¶52, which is powerful evidence of likelihood of confusion.  Thus, the FAC goes beyond simply alleging infringement and includes various facts precluding dismissal.

In response, Defendants raise factual disputes, nitpicking some of Whisker's registrations and essentially asking the Court to rule—without discovery, depositions, or contrary evidence—that the Litter-Robot Marks are merely descriptive, unprotectable, or otherwise not infringed.  This argument is in vain, especially at the 12(b)(6) stage.  For example, the Lanham Act forecloses Defendants' argument (Mot. at 8-10) that any disclaimers in Whisker's other registrations limit its rights in the LITTER-ROBOT mark.  *See* 15 U.S.C. § 1056(b) ("No disclaimer . . . shall prejudice or affect the applicant's or registrant's rights then existing or thereafter arising in the disclaimed matter[.]"); *see also* McCarthy § 19:65 ("A disclaimer does not preclude the registrant from later demonstrating in another case that the disclaimed matter has, with time and use, become distinctive through the acquisition of secondary meaning."); *Office Airline Guides, Inc. v. Goss*, 856 F.2d 85, 87 (9th Cir. 1988) (disclaimer "does not deprive [plaintiff] of any common law rights it may have in the disclaimed matter").[9]  Here, Whisker alleges that "LITTER-ROBOT" has acquired distinctiveness in the marketplace through years of use and consumer recognition (*e.g.*, ¶31), distinguishing the present case from the cases cited by Defendants.[10]  Moreover, the Motion altogether ignores that the USPTO also awarded Whisker a registration on the Principal Register

---

[8] *See Planet Drum Found. v. Hart*, 2017 WL 4236932, at *8 (N.D. Cal. Sept. 24, 2017) ("At the pleading stage of this case, it is enough that the mark used by Defendants is identical.")

[9] "[C]ourts have suggested that because the power of the USPTO to require a disclaimer is discretionary … and its disclaimers practice over the years inconsistent, it is inappropriate to afford the presence or absence of a disclaimer any legal significance."  *Humboldt Wholesale, Inc. v. Humboldt Nation Distrib., LLC*, 2011 WL 6119149, at *3 (N.D. Cal. Dec. 8, 2011).

[10] *See Metamorfoza D.O.O. v. Big Bunny, LLC*, 2021 WL 4572039, at *5 (C.D. Cal. July 27, 2021) (no allegations of common law rights in disclaimed material); *Smith v. Entrepreneur Media, Inc.*, 2013 WL 2296077, at *9 (E.D. Cal. May 24, 2013) (same, in context of cancellation petition).

COOLEY LLP
ATTORNEYS AT LAW

for the LITTER-ROBOT mark *without* a disclaimer. ¶32.  If Defendants wish to challenge Whisker's registrations and common law rights or to argue that the mark they *purposely* used to falsely create a connection to Whisker (*supra* 3:3-5) is "merely descriptive," they cannot do so at the pleading stage.  *See Steeped, Inc. v. Nuzee, Inc.*, 2019 WL 6251255, at *3 (N.D. Cal. Nov. 22, 2019) (denying motion to dismiss allegations that trademark "acquired extensive goodwill" and was "well-recognized in the coffee industry"); *Balance Studio, Inc. v. Cybernet Entm't, LLC*, 2016 WL 1559745, at *4 (N.D. Cal. Apr. 18, 2016) (denying motion to dismiss allegation that mark acquired secondary meaning).[11]

Moreover, the FAC plausibly alleges that Defendants infringe *all* of Whisker's registered marks (though it is enough to infringe one).  This includes Whisker's *stylized* versions of the LITTER-ROBOT mark, *see Balance Studio*, 2016 WL 1559745, at *4 (N.D. Cal. Apr. 18, 2016) (denying motion to dismiss allegation that use of word portion infringed composite mark), as well as the *plain text* marks, *see Align Tech., Inc. v. Strauss Diamond Instruments, Inc.*, 2019 WL 1586776, at *8 (N.D. Cal. 2019) (use of #invisalign and #itero hashtags likely to infringe registrations for ITERO and INVISALIGN).  Essentially, Defendants argue that because some, but not all, of Whisker's registrations include elements beyond the LITTER-ROBOT trademark, they are an improper basis for Whisker's claims.  There is no precedent for that argument.  Defendants cannot focus on certain registrations to the exclusion of others and Whisker's common law rights.

## C.      The FAC Plausibly States a Claim for False and Misleading Advertising

Defendants also misread Whisker's well-pleaded false advertising claims.  Alleging false advertising under the Lanham Act requires that "(1) the defendant made a false statement either about the plaintiff's or its own product; (2) the statement was made in a commercial advertisement or promotion; (3) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (4) the deception is material, in that it is likely to influence the purchasing decision; (5) the defendant caused its false statement to enter interstate commerce; and (6) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion

---

[11] To the extent Defendants are raising a fair use inquiry, which would ultimately fail, such a defense is "factually intensive" and poorly suited for a motion to dismiss.  *See Craigslist, Inc. v. DealerCMO, Inc.*, 2017 WL 6334142, at *3 (N.D. Cal. Apr. 11, 2017) (Chhabria, J.).

COOLEY LLP
ATTORNEYS AT LAW

of sales from itself to the defendant, or by lessening of goodwill associated with the plaintiff's product." *Guardant Health, Inc. v. Natera, Inc.*, 580 F. Supp. 3d 691, 700 (N.D. Cal. 2022). At this stage, Whisker need only "allege specific misleading statements and explain why they are misleading[.]" *Clorox Co. v. Reckitt Benckiser Grp. PLC*, 398 F. Supp. 3d 623, 636 (N.D. Cal. 2019). False advertising claims under California state law are evaluated under the "reasonable consumer" standard, and only a "rare situation" permits dismissal on the pleadings. *See Williams v. Gerber Products Co.*, 552 F.3d 934, 938–39 (9th Cir. 2008). Whisker's FAC plausibly alleges both claims. ¶¶36–37, 53–72 (detailing false advertisements in commerce); ¶¶39, 55, 64, 70–71 (tendency to deceive reasonable consumer); ¶¶38, 65, 70-71 (materiality); ¶¶43, 52 (injury).[12]

An actionable statement may be "literally false, either on its face or by necessary implication," or "literally true but likely to mislead consumers." *Southland Sod Farms v. Stove Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997). Defendants argue solely that Whisker did not allege any false or misleading statements: that the alleged statements are either puffery or true. Puffery is "exaggerated advertising, blustering, and boasting upon which no reasonable buyer would rely." *Id.* at 1145. "[T]he difference between a statement of fact and mere puffery rests in the specificity or generality of the claim." *Newcal Indus., Inc. v. Ikon Office Sol.*, 513 F.3d 1038, 1053 (9th Cir. 2008). An actionable statement "is a specific and measurable claim, capable of being proved false or of being reasonably interpreted as a statement of objective fact." *Ariix, LLC v. NutriSearch Corp.*, 985 F.3d 1107, 1121 (9th Cir. 2021). Even where a statement may not be "measurable in isolation," it may be actionable if "when viewed as a whole [it] can be viewed as referring to specific and testable characteristics." *See Autodesk, Inc. v. Dassault Systemes SolidWorks Corp.*, 685 F. Supp. 2d 1001, 1017–18 (N.D. Cal. 2019) (claim that product "works easily" was actionable in context); *L.A. Taxi Cooperative, Inc. v. Uber Techs., Inc.*, 114 F. Supp. 3d 852, 861 (N.D. Cal. 2015) ("strictest safety standards" was actionable in light of defendant's other statements).

The FAC alleges that Defendants made misleading, actionable statements of objective fact:

---

[12] Whisker's common law unfair competition claim is "substantially congruent" with its Lanham Act false advertising claims. *Cleary v. News Corp.*, 30 F.3d 1255, 1262–63 (9th Cir. 1994). Whisker's statutory unfair competition claim relates to the totality of the conduct alleged herein, ¶¶173–79, and the Motion should be denied as to those claims for the same reasons stated above.

COOLEY LLP
ATTORNEYS AT LAW

**Misleading Statements that Defendants "designed" Leo's Loo.**  The FAC alleges that these statements, taken together with others, are false and misleading, intended to trick consumers that they designed Leo's Loo in the U.S. and the halo effect that carries.  Although Defendants' attempt to characterize this claim as one of "degree," it is a binary issue: Defendants "designed" the infringing products, or they did not.  ¶¶36-37, 54-56.  It is therefore "capable of being proved false." *Ariix*, 985 F.3d at 1121–22 ("The claim that [defendants] are [independent] is a statement of fact that can be proven true or false.").  It is not akin to a vague statement that a defendant "invented" a product category or that the defendant was an "innovator."[13]  The statement that Smarty Pear is a "California based technology company" also misleadingly implies that this design activity occurred in California, rather than in China.  ¶36; *see Ariix*, 985 F.3d at 1122 ("implied statements" are actionable "as long as those statements are specific and deceptive").

**Misleading Statements that Leo's Loo Too's UV rays are "99.9% effective at eliminating bacteria, parasites and viruses," "reduce[] odor," and "keep[] your kitty safe."**  The FAC alleges that these statements are grossly misleading (*e.g.*, ¶¶59-66): Defendants' product does not kill "99.9%" of bacteria, parasites, and viruses in its litter box.  Focusing only on part of FAC's allegations, Defendants argue that the cited FDA research does not support the allegation that the statements are false and misleading because the FDA was not specifically investigating litter boxes.  As alleged, the FDA concluded that UV rays do not disinfect pathogens "covered by dust or soil [or] embedded in porous surface[s]."  ¶63.  It necessarily follows that this applies to *waste litter*, which consists of dirt, soil, and porous surfaces.[14]  *See Clorox*, 398 F. Supp. 3d at 644 (denying motion to dismiss allegations against claim that product "kills 99.9% of germs" where EPA guidelines contradicted claim); *see generally In re Clorox Consumer Litig.*, 894 F. Supp. 2d 1224, 1233 (N.D. Cal. 2012) (denying motion to dismiss allegations "that the competent scientific evidence shows that [defendant's] claims are objectively false"); *Locklin v. StriVectin Operating*

---

[13] *See e.g.*, *R and A Synergy LLC v. Spanx, Inc.*, 2019 WL 4390564, at *11 (C.D. Cal. May 1, 2019) (puffery where defendant "acknowledge[d] the existence of other sleeved undergarment products on the marketplace"); *Peloton Interactive, Inc. v. Icon Health & Fitness*, Inc., 2021 WL 2188219, at *6 (D. Del. May 28, 2021) ("innovator" was "not subject to objective measurement").

[14] Defendants argue that their statements "merely discuss UV rays generally," but they touted the UV feature specific to Leo's Loo Too.  ¶¶59–60.

*Co., Inc.*, 2022 WL 867248, at *4 (N.D. Cal. Mar. 23, 2022) (Chhabria, J.) (same). Defendants'

odor and safety claims specifically follow this false and misleading representation, and are therefore

misleading as well. ¶60 (odor and safety claims next to large text stating "UV sterilization kills

99.9% of bacteria"); *see L.A. Taxi Cooperative*, 114 F. Supp. 3d at 861; *In re Toyota Motor Corp.*,

754 F. Supp. 2d 1145, 1177 (C.D. Cal. 2010) (product safety claims actionable where defendant

"represented itself as prioritizing [] safety").[15] And consumers have understood this statement to

refer to a material feature of Leo's Loo Too: since the filing of the FAC, Whisker has become aware

of numerous social media posts focusing on the purported safety benefits of Defendants' UV

feature, further proof that its statement is successfully misleading consumers.

**<u>Misleading Statement: "First Ever App Connected Self-Cleaning Litter Box with</u>**

**<u>Alexa and Google Voice controls."</u>** The FAC alleges that this statement is objectively false and

misleading. *E.g.*, ¶68. Defendants seize on the phrase "first-ever," but fail to take this statement

"as a whole." *See Autodesk, Inc.*, 685 F. Supp. 3d at 1017–18. Defendants' statement refers to a

specific product feature: integration with voice controls. ¶53. This is sufficient detail to convey a

factual assertion that no other self-cleaning litter box contains that feature, even as LITTER-

ROBOT 3 CONNECT (and, for that matter, the imported knockoff), ¶68, do the same. *See*

*LivePerson, Inc. v. [24]7.ai*, 2018 WL 5849025, at *6 (N.D. Cal. Nov. 7, 2018) (denying summary

judgment, finding "world's first smart chat platform powered by prediction in real-time" statement

of fact where defendant's "blog post, white paper, and video introduced particular features as

'smart' or 'predictive'").[16]

**<u>Misleading Statement: "Smartest Self-Cleaning Litter Box."</u>** Defendants assert that the

word "smartest" is subjective, but again fail to take the statement as a whole, along with the others

noted above. For example, a representation that a product was the "world's first smart chat

---

[15] This misleading context distinguishes the statement from the generalized allegations in *Zaccagnino v. Nissan N. Am., Inc.*, 2015 WL 3929620, at *4 (S.D.N.Y. June 17, 2015), and *Cohen v. Porsche Cars N. Am., Inc.*, 2019 WL 6700941, at *5 (C.D. Cal. Dec. 6, 2019).

[16] This allegation is therefore distinguishable from general statements that a lamp was "far brighter than any lamp ever before offered," that a recycling method was "unique" and "unprecedented," or that a bike was "the first of its kind." *See Coastal, Abstract Serv., Inc. v. First Am. Title Ins. Co.*,173 F.3d 725, 731 (9th Cir. 1999); *Appliance Recycling Ctrs. Of Am., Inc. v. JACO Env't, Inc.*, 378 F. App'x 652, 654 (9th Cir. 2010); *Peloton* 2021 WL 2188219.

COOLEY LLP
ATTORNEYS AT LAW

platform" was found actionable where the defendant included supporting details to indicate the nature of why the product was supposedly "smart," thereby giving the term a sufficiently definite meaning for reasonable consumers. *See LivePerson, Inc*, 2018 WL 5839025, at *6. Here, Defendants' video follows the phrase "Say Hello to the Smartest Self-Cleaning Litter Box," with a description of five specific product features. ¶69. Reasonable consumers would understand this statement to mean that other products do ***not*** contain those features, which is false. ¶70. In fact, Whisker owns a ***patent*** covering, among other features, an app that connects to the product. ¶ 29.

**Misleading Statement: "Half a million cats and their owners" in the "Smarty Pear Family."** This false and misleading statement necessarily implies that Smarty Pear has a client base of over 500,000 sales. ¶¶71-72. Defendants assert vaguely that this statement "is discussing joining the 'Smarty Pear Family' such as by hitting 'Subscribe' or 'Follow Us on Instagram' button, not purchasing a Leo's Loo." This flimsy explanation is hardly a basis to dismiss Whisker's claim on the pleadings. Notably, Defendants do not actually provide any "obvious" understanding of the phrase "Smarty Pear Family," which Defendants' website nowhere defines or explains. *See McLaughlin v. Homelight, Inc.*, 2021 WL 5986913, at *4 (C.D. Cal. Sept. 17, 2021) (statement that defendants were "top real estate agent in Agoura Hills" reasonably meant they were authorized to offer real estate services there). Nor, for purposes of a California false advertising claim, must this Court "decide which party offers the better, more reasonable or more persuasive definition." *See In re S.C. Johnson & Son, Inc. Windex Non-Toxic Litig.*, 2021 WL 3191733, at *9 (N.D. Cal. July 28, 2021) ("enough that Plaintiffs' interpretation is plausible under the lenient *Williams* standard").

Because the FAC pleads that the above statements are actionable statements of fact, and because the allegations must be taken as a whole, the FAC states a claim for false advertising.

**D.     The FAC Plausibly States a Claim against Mr. Madeiras**

The FAC explains that Mr. Madeiras is the mastermind, architect, and conscious force behind the illegal acts alleged in the Complaint, and in particular, all of the decisions around the marketing and branding of the copycat product. *See* ¶¶3, 33–34, 36, 54. Corporate officers that personally authorize, direct, or are otherwise directly involved in a company's infringing conduct

may be individually liable. [17] *See Comm. for Idaho's High Desert, Inc. v. Yost*, 92 F.3d 814, 823 (9th Cir. 1996). Contrary to Defendants' arguments, Whisker does not simply rely on Mr. Madeiras's role as an officer. Rather, the FAC alleges that Mr. Madeiras "authorizes, controls, and directs Smarty Pear's marketing and advertising strategy," and provides direct quotations from Mr. Madeiras in press releases and user manuals claiming that he "designed" and "create[d]" the infringing products. ¶¶3, 54. This is more than sufficient to survive a motion to dismiss. *See Global Apogee v. Sugarfina, Inc.*, 2021 WL 4819715, at *4 (C.D. Cal. Oct. 15, 2021) (denying motion to dismiss where officer "handle[d] product, packaging, branding, marketing, sales, retail stores, and the website"); *Fitbit, Inc. v. Laguna 2, LLC*, 2017 WL 8294274, at *2 (N.D. Cal. Apr. 26, 2017) (corporate defendant and officer both allegedly "provided counterfeit packaging"). If given leave to amend, Whisker could allege additional facts showing that Mr. Madeiras was aware of knock-off litter boxes even before launching Smarty Pear, and his personal involvement in creating the social media posts—all further evidence of his orchestration of the infringement, and liability for the Lanham Act claims. The Court should deny the Motion as to Mr. Madeiras, as well.

## V.     CONCLUSION

Defendants' Motion is a shotgun attempt to dismiss a detailed, well-pleaded Complaint that explains how Smarty Pear and Madeiras engaged in a concerted effort to knock off Whisker's innovative and successful LITTER-ROBOT® product line and deceive consumers with their various acts of deception and infringement. At best, the Motion raises factual disagreements regarding the merits of the case. That, however, is not a basis for early dismissal of factual patent, trademark, or false advertising claims. The Court should deny the Motion in its entirety, or if inclined to grant any portion of it, give Whisker permission to amend the complaint to address any issues identified by the Court. *See Foman v. Davis*, 371 U.S. 178, 182 (1962) ("leave . . . 'freely given'" and refusal is "abuse of . . . discretion and inconsistent with the spirit of the Federal Rules").

---

[17] The officer must—as Mr. Madeiras is alleged to have done—"personally take part in infringing activities or specifically direct employees to do so." *Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1021 (9th Cir. 1985); *Hewlett-Packard Co. v. Repeat-O-Type Stencil Mfg. Corp.*, 1995 WL 552168, at *6 (N.D. Cal. Aug. 30, 1995) ("If an individual actively and knowingly caused the trademark infringement, he is personally responsible.").

COOLEY LLP
ATTORNEYS AT LAW

Dated: November 3, 2022

COOLEY LLP

By: */s/ Bobby A. Ghajar*
     Bobby A. Ghajar
     Erik Milch
     Ari Lipsitz
     Allison Elkman

*Attorneys for Plaintiff*
Automated Pet Care Products, LLC d/b/a Whisker

*[Full Counsel List]*

ARI LIPSITZ *[Pro hac vice forthcoming]*
(alipsitz@cooley.com)
55 Hudson Yards
New York, NY 10001
Telephone:    (212) 479-6692
Facsimile:    (212) 479-6275

ALLISON ELKMAN *[Pro hac vice forthcoming]*
(aelkman@cooley.com)
1299 Pennsylvania Avenue, NW, Suite 700
Washington, DC 20004
Telephone:    (202) 776-2196
Facsimile:    (202) 842-7899

Attorneys for Plaintiff
Automated Pet Care Products, LLC d/b/a Whisker