**HALEY GUILIANO LLP**
JOSHUA V. VAN HOVEN (CSB No. 262815)
    E-Mail: joshua.vanhoven@hglaw.com
111 N Market Street, Suite 900
San Jose, California 95113
Telephone: 669.213.1061
Facsimile: 669.500.7375

RICHARD T. MCCAULLEY  (*pro hac vice*)
    E-Mail: richard.mccaulley@hglaw.com
116 W. Hubbard Street, Unit 20
Chicago, Illinois 60654
Telephone: 312.330.8105

*Attorneys for Defendants,*
PurLife Brands, Inc. d/b/a Smarty Pear,
and Chris Madeiras

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Automated Pet Care Products, LLC d/b/a Whisker, a Michigan corporation, | Case No. 3-22-cv-04261-VC |
| Plaintiff, | Honorable Vince Chhabria |
| vs. | **DEFENDANTS PURLIFE BRANDS, INC. AND CHRIS MADEIRAS' RESPONSE TO PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** |
| PurLife Brands, Inc. d/b/a Smarty Pear, a Delaware corporation, and Chris Madeiras, an individual, | Hearing: December 1, 2022 Time: 10:00 a.m. |
| Defendants. | Courtroom: 4 – 17th Floor (Zoom Hearing) Judge: The Honorable Vince Chhabria Complaint Filed: July 22, 2022 |

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** .................................................................................................. ii

**I.  Introduction** ............................................................................................................ 1

**II.  Whisker Does Not Allege A "Bonnet" as Claimed by the '185 Patent** ............................ 1

**III.  Whisker Does Not Allege "Reversing Orientation" as Claimed by the '889 Patent** ....... 3

**IV.  Whisker Does Not Allege the "Determin[ation]" of "Position" of the '502 Patent** .......... 4

**V.  Whisker Has No Enforceable Trademark Rights in "Litter Robot" or "#litterrobot"** .. 5

**VI.  Whisker's False Advertising Claims Rely On Fanciful Interpretations of Puffery** ........ 6

    A.  "Design" And "Creation" Of Products ............................................................. 6

    B.  "First-Ever App Connected Self-Cleaning Litter Box With Alexa and Google Voice Controls" ........................................................................................................ 7

    C.  "UV Rays That Are 99.9% Effective At Eliminating Bacteria, Parasites And Viruses" To "Keep Your Kitty Safe" And "Reduce Odors" ........................................ 7

    D.  "Smartest Self-Cleaning Litter Robot" ............................................................ 8

    E.  "Over Half A Million Cats And Their Owners" In "The Smarty Pear Family" ............. 9

**VII. All Claims Against Chris Madeiras in his Personal Capacity Should be Dismissed** ...... 9

**CONCLUSION** ................................................................................................ 10

Haley • Guiliano

# **TABLE OF AUTHORITIES**

Cases

*Apple Processor Litig.,*
  No. 18-cv-00147, 2022 U.S.Dist.LEXIS 102533 (N.D. Cal. June 8, 2022) .............................. 8

*Appliance Recycling Ctrs. of Am., Inc. v. JACO Envtl., Inc.,*
  No. 09-55168, 378 F. App'x 652 (9th Cir. May 4, 2010) ...................................................... 8

*Ariix, LLC v. NutriSearch Corp.*
  985 F.3d 1107 (9th Cir. 2021) ............................................................................................. 7

*Clorox Co. v. Reckitt Benckiser Grp. PLC,*
  398 F. Supp. 3d 623 (N.D. Cal. 2019) ................................................................................. 8

*ESIP Series 1, Ltd. Liab. Co. v. Doterra Int'l, Ltd. Liab. Co.,*
  No. 2:15-cv-00779, 2022 U.S. Dist. LEXIS 38852 (D. Utah Mar. 4, 2022) ........................... 4

*Healthier Choices v. Philip Morris,*
  No. 1:20-cv-4816, 2021 U.S. Dist. LEXIS 139224 (N.D. Ga. July 23, 2021) ................... 3, 10

*LivePerson, Inc. v. [24]7.ai, Inc.,*
  No. 17-cv-01268, 2018 U.S. Dist. LEXIS 190918 (N.D. Cal. Oct. 26, 2018) .................... 7, 8

*Locklin v. StriVectin Operating Co.,*
  No. 21-cv-07967, 2022 U.S. Dist. LEXIS 52461 (N.D. Cal. Mar. 23, 2022) ......................... 8

*McLaughlin v. Homelight, Inc.,*
  No. 2:21-cv-05379, 2021 U.S. Dist. LEXIS 177657 (C.D. Cal. Sep. 17, 2021) ..................... 10

*Newcal Indus. v. Ikon Office Solution,*
  513 F.3d 1038 (9th Cir. 2008) ............................................................................................. 8

*Uniloc USA, Inc. v. Apple Inc.,*
  No. 18-cv-00359, 2018 U.S. Dist. LEXIS 75225 (N.D. Cal. May 2, 2018) ............................ 3

*Vitt v. Apple Comput., Inc.,*
  No. 10-55941, 469 F. App'x 605 (9th Cir. Feb. 28, 2012)..................................................... 6

*Werbel ex rel. v. PepsiCo, Inc.,*
  No. 09-cv-04456, 2010 U.S. Dist. LEXIS 76289 (N.D. Cal. July 2, 2010) ............................ 9

## I. Introduction

Nobody disputes that Whisker, as the industry incumbent employing a high-powered law firm, drafted a lengthy complaint with voluminous attachments. Nor is there any dispute about pleading standards. Rather, Smarty Pear's position is that Whisker has hidden specious claims under a mountain of irrelevant allegations as part of the tried-and-true strategy of burying a smaller competitor under millions of dollars in litigation costs. Whisker's Opposition confirms this:

- Despite allusions to "claim construction," Whisker does not even attempt to identify any construction under which Smarty Pear could infringe relevant key limitations of each asserted patent. Nor could it – the cited materials conclusively demonstrate non-infringement.

- Whisker ignores that it has no protectable trademark rights to "Litter Robot" or "#litterrobot." Whisker's attempt to register "Litter Robot" was denied by the USPTO. Regarding "#litterrobot," Whisker recently admitted in official USPTO filings that: (1) "#LitterRobot" is descriptive; and (2) its first use of that hashtag in commerce was in April 2022. Nor does Whisker allege that "#litterrobot" has since obtained secondary meaning.

- For its false advertising claims, Whisker merely doubles down on its strained interpretations of standard-issue advertising statements. But, even at the 12(b)(6) stage, such statements are considered from the perspective of reasonable consumers, not extremely creative lawyers.

- Whisker effectively admits that Mr. Madeiras did not personally misappropriate anything in his dealings with Whisker. The Opposition's reliance on conclusory allegations about his role at Smarty Pear prove that dragging him into this lawsuit is a transparent pressure tactic.

Whisker is not an unsophisticated or *pro se* litigant. It has already amended its Complaint and had a further opportunity to put its best foot forward in its Opposition. Millions of dollars of litigation costs, however, should not be forced upon a smaller competitor absent plausible claims. Because its claims remain specious, Whisker should not be permitted to further Amend.

## II. Whisker Does Not Allege A "Bonnet" as Claimed by the '185 Patent

As set forth in Smarty Pear's Motion, Whisker does not plausibly allege that the key "bonnet" claim limitation is infringed. Dkt. 29 at 2:11-4:11. Whisker's Opposition attempts to cast Smarty Pear's Motion as engaging in "claim construction" of the '185 patent. Dkt. 33 at 6:20-

24. However, there is no possible construction of a "bonnet [that] extends over the portion of the chamber so that a . . . rear of the outside wall of the chamber remain[s] uncovered by the bonnet" that would encompass the accused products, and Whisker does not propose one. As discussed in Smarty Pear's Motion, the Amended Complaint does not provide any evidence for this element, and the images of partially disassembled Smarty Pear products relied on for this limitation in Whisker's claim chart show a "covered" rear of the chamber (despite Whisker's annotations):





Dkt. 25-1, Exhibit 4 at p. 16 (red annotations from Whisker in claim chart).

As Smarty Pear explained, this allegation of infringement necessarily fails, *inter alia*, because rather than levitating as in the disassembled images above, the "bonnet" must also be "attached to the support base [*i.e.*, the lower component] on two sides of the chamber[.]" Although Whisker now contends that it "nowhere alleges that the Accused Products only infringe when disassembled" and that "[t]he images in the claim chart and FAC of the Accused Products with the bonnet attachment separated from the product are purely for context" (Dkt. 33 at n.4), it makes no attempt to explain or provide a proposed claim construction as to how the "rear outside wall of the chamber remains uncovered" when the Smarty Pear products are assembled, nor could it do so:



Dkt. 25-1, Ex. 4 at p. 17; *see also* Dkt. 25 at ¶¶ 34, 45, 52, 73, 80, 84, 98, 100, 103 (similar); Dkt. 25-1, Ex. 4 at pp. 1, 2, 3, 4, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 21, 23, 24 (similar).

*Uniloc* is thus readily distinguishable – in that case, the parties were arguing over the definition of a "graphic primitives" limitation based on the specification's description.  *Uniloc USA, Inc. v. Apple Inc.*, 2018 U.S. Dist. LEXIS 75225, at *12 (N.D. Cal. May 2, 2018).  In contrast, no "parsing" or "claim construction" is required here.  Whisker does not even attempt to propose a claim construction that would even arguably support infringement.

## III.   Whisker Does Not Allege "Reversing Orientation" as Claimed by the '889 Patent

Smarty Pear previously explained that the Amended Complaint does not plausibly allege that the accused products have a "means for altering the orientation of the first unit assembly relative to the second unit assembly . . . wherein reversal of the orientation of the first unit assembly passes litter from the temporary compartment to the unenclosed compartment."  Dkt. 29 at 4:19-5:24.  Specifically, Whisker's cited evidence conclusively demonstrates that Smarty Pear **does not** practice this limitation – *i.e.*, its cited images and videos clearly show that there is no "reversal of the orientation of the first unit assembly" that "passes litter from the temporary compartment to the unenclosed compartment."  *See, e.g.*, Dkt. 25 at ¶110 (showing a single counterclockwise rotation for filtration cycle); Ex. 5 at p. 15 (same); Dkt. 25 at ¶110, fn. 22-23 & 48-49 (relying on videos[1] that show a single counterclockwise rotation).  In sum, there is no possible construction of this limitation that could possibly encompass a device where ***there is no reversal*** for the litter transfer.

Whisker points to the *Battery Conservation* case and the *Throop, LLC* cases for the idea that screenshots can be used to allege patent infringement.  Dkt. 33 at 7:2-7.  This misses the point – Smarty Pear does not contend that screenshots or videos cannot be submitted to show infringement.  Rather, the patent owner must also provide a plausible explanation as to *how* infringement is shown by those images.  Here, not only has Whisker not attempted such a showing, but all of its cited evidence "directly refutes" any plausible infringement theory.  *Healthier Choices v. Philip Morris*, 2021 U.S. Dist. LEXIS 139224, at *10 (N.D. Ga. July 23, 2021).

---

[1] *E.g.*, https://cdn.shopify.com/s/files/1/0639/8921/9573/files/smarty-pear.mp4?v=1651821590 ; https://cdn.shopify.com/s/files/1/0639/8921/9573/files/30s_Product_Video_final_2.mp4?v=1652196618

Whisker also argues that the pleading standard is met for infringement of the '889 patent since "[d]efendants are able to respond to and disagree with Whisker's FAC and claim chart regarding the reversal limitation." Dkt. 33 at 7:7-10. However, the issue is not whether Smarty Pear can respond to Whisker's allegations, but whether it should be subjected to burdensome and expensive litigation despite facially implausible allegations of infringement.

## IV. Whisker Does Not Allege the "Determin[ation]" of "Position" of the '502 Patent

As set forth in the Motion to Dismiss, the Amended Complaint fails to plausibly allege that the accused products have "one or more sensors configured to detect one or more conditions of the device and transmit one or more signals related to the one or more conditions" and "a controller in communication with the one or more sensors and is adapted to receive the one or more signals, wherein the controller is *configured to determine one or more positions of the chamber based on the one or more signals received from the one or more sensors*," as required by the claims of the '502 patent. Dkt. 29 at 6:2-7:5. Specifically, the sensors cited by Whisker – a weight sensor that measures a cat's weight, a radar "wall" used to determine a cat's presence, and an anti-pinch sensor that is "located at the top of the waste drawer [and] detects when foreign objects enter the waste chute" – are not plausibly alleged to "determine one or more positions of the chamber." *Id.*

Whisker argues in its Opposition that it has no way of knowing exactly what code is in the controller, and that a "detailed understanding and analysis of Leo's Loo Too's app, source-code, software, hardware, etc." is only achievable through discovery. Dkt. 33 at 7:16-18 & n.6. This argument reveals Whisker's true motive of subjecting Smarty Pear to burdensome and expensive technical document and expert discovery. Absent a reasonable (or even attempted) explanation as to how any of the sensors of the accused products can be used "to determine one or more positions of the chamber," Smarty Pear should not be subjected to Whisker's costly fishing expedition. *ESIP Series 1, Ltd. Liab. Co. v. Doterra Int'l, Ltd. Liab. Co.*, 2022 U.S. Dist. LEXIS 38852, at *21 (D. Utah Mar. 4, 2022) ("[A] patentee is obliged to take reasonable measures to ascertain whether its claims of infringement are reasonable before filing. Patent suits should not be used as a fishing expedition for hypothetical infringements . . . .").

**V.    Whisker Has No Enforceable Trademark Rights in "Litter Robot" or "#litterrobot"**

As set forth in Smarty Pear's Motion, all of Whisker's trademark allegations involve variations on "Litter Robot" or the hashtag "#litterrobot" in social media (and before April 2022):

- "[O]n July 8, 2021 claimed a user stated Leo's Loo was 'Better than a ***Litter Robot***'—a reference to Whisker's product." (Dkt. 25 at ¶ 44).

- "[S]tarting in October 2021, Smarty Pear and Madeiras began to use the hashtags "#***litterrobot***' and "#***litterrobot3***" in their social media posts promoting Leo's Loo Too." (Dkt. 25 at ¶ 44).

- "The following Smarty Pear Instagram post from November 11, 2021, for example, touts the Leo's Loo Too's features, and ends with the hashtags '#**LitterRobot**' and '#**litterrobot3**.' The fact that '#**LitterRobot**' is capitalized serves to highlight that Smarty Pear and Madeiras sought to trade off of Whisker's goodwill." (Dkt. 25 at ¶ 46).

- "Another Instagram post dated November 21, 2021 promotes Leo's Loo Too and includes the hashtags '#**litterrobot**' and '**litterrobot3**.'" (Dkt. 25, at ¶ 47).

- "Similarly, an Instagram postdated January 11, 2022 promotes Leo's Loo Too and includes the hashtag '#**litterrobot**.'" (Dkt. 25, at ¶ 48).

- "Of the 140 posts uploaded to SmartyPear's [sic] Instagram account as of July 7, 2022,[2] at least 22 of them include the hashtags '#**litterrobot**' or '#**litterrobot3**.' Smarty Pear and Madeiras engaged in similar practices on Facebook and TikTok." (Dkt. 25, at ¶ 49).

- "[A] now-deleted Instagram post dated November 7, 2021 (and tagging '#**litterrobot**' and '#**litterrobot3**,' as discussed above) [states] that the feature '[k]eep[s] you and your kitty safe' and 'reduc[es] odor.'" (Dkt. 25, at ¶ 60).

Official USPTO records show that Whisker simply does not hold protectable trademark rights to "Litter Robot" or to "#litterrobot." Whisker tried to obtain a broader trademark for "Litter Robot" (without a dash) and was refused by the USPTO. Dkt. 29-11 at pp. 1, 3. Whisker also tried to obtain trademark for "#LitterRobot" and admitted it was "descriptive," and thus ineligible for registration to the primary register. Dkt. 29-16 at pp. 33-34; Dkt. 29-17. It also admitted a

---

[2] This paragraph does not actually allege any posts after the April 2022 first use of "#LitterRobot" in commerce, but rather that Whisker checked the account as of July 2022.

first use in commerce of the hashtag in April 2022, well after Smarty Pear's purported infringement. Dkt. 29-16; Dkt. 29-17. And the Amended Complaint does not allege any activities to acquire secondary meaning since that first use in commerce. See Dkt. 25 at ¶¶ 44-49, 60 (all allegations related to #litterrobot, none of which allege secondary meaning since April 2022).

Whisker's Opposition simply fails to address these issues. *Compare* Dkt. 29 at 8:13-10:23 (explaining that "Litter Robot" and "#litterrobot" records at USPTO preclude relief for use of these terms by Smarty Pear); *with* Dkt. 33 at 7:21-10:18 (failing to address these official USPTO records). Whisker's **other** asserted trademarks are limited to various design marks and permutations of "Litter-Robot," i.e., with the dash between the words. Whisker's Opposition nonetheless argues that Smarty Pear's Motion asks the Court to make "improper evidentiary findings as a matter of law—before discovery has even commenced." Dkt. 33 at 7:21-24. No evidentiary findings relating to distinctiveness and likelihood of confusion are necessary to grant Smarty Pear's Motion, however. To the contrary, the Court's analysis need go no further than see Whisker's attempted sleight-of-hand with respect to the second element of the *Rearden* test urged by Whisker, *i.e.*, whether "defendant's use **of the mark** is likely to cause consumer confusion." There is no allegation anywhere in the pleadings that "Litter-Robot" has ever been used by Smarty Pear, because every claim of infringement of "LITTER-ROBOT" is "supported" with allegations of use of the phrase "Litter Robot" or "#litterrobot."

## VI. Whisker's False Advertising Claims Rely On Fanciful Interpretations of Puffery

### A. *"Design" And "Creation" Of Products*

According to Whisker, Smarty Pear "intended to create the impression that Leo's Loo was designed by Smarty Pear and Madeiras in California, much like the LITTER-ROBOT product is designed by Whisker in the Midwest, and that Madeiras and Smarty Pear innovated the technology behind the product." Dkt. 25 at ¶ 36. Whisker's combination of multiple statements to manufacture an "impression" and non-existent comparison to Whisker may be creative, but they neglect the malleable meaning of "design" and "create." *See Vitt v. Apple Comput., Inc.*, 469 F. App'x 605, 608 (9th Cir. 2012) (rejecting an attempt to recast statements that product is "mobile," "durable," "portable," "rugged," "built to withstand reasonable shock," "reliable," "high

performance," "high value," an "affordable choice," and an "ideal student laptop" as factual representation "that the iBook G4's useful life will extend for 'at least a couple of years.'")

Whisker's argument that statements of "design" can be characterized as a "binary issue" fails to suggest any reasonable definition that would allow the issue to be proven either way. The *Ariix* case cited in Whisker's Opposition, by contrast, dealt with a claim that entities were "not associated with any manufacturer listed in the Guide," which is "a statement of fact that can be proven true or false." *Ariix, LLC v. NutriSearch Corp.*, 985 F.3d 1107, 1122 (9th Cir. 2021).

B.     *"First-Ever App Connected Self-Cleaning Litter Box With Alexa and Google Voice Controls"*

Whisker's Opposition argues that the statement that Smarty Pear's device is the "first-ever" is misleading because it conveys an impression that "no other self-cleaning litter box contains that feature **currently**. Dkt. 33 at 13:12-16. This argument fails for two reasons. First, the statement that something is the "first-ever" is not the same as saying that a device is the only one in existence with the features. Second, Whisker ignores that its Amended Complaint relied upon a *possible* integration with a third-party automation platform, not features of its own product. Dkt. 29 at 12:24-13:5; Dkt 25 at ¶¶ 14, 68. Because Whisker did not allege that its own products had the feature first, and appears to have now abandoned that claim altogether, the cited *LivePerson* case is simply inapplicable. See *LivePerson, Inc. v. [24]7.ai, Inc.*, 2018 U.S. Dist. LEXIS 190918, at *12 (N.D. Cal. Oct. 26, 2018) ("A reasonable consumer could understand [24]7's 'first' statements as implying that other products **available at the time** lacked these features." (emphasis added)).

C.     *"UV Rays That Are 99.9% Effective At Eliminating Bacteria, Parasites And Viruses" To "Keep Your Kitty Safe" And "Reduce Odors"*

Whisker attempts to broaden the quoted statement beyond what it simply says, *i.e.*, that the accused products use "UV Rays That Are 99.9% Effective At Eliminating Bacteria, Parasites And Viruses." Whisker offers their opinion that "a litter box may be the worst possible use case" for UV disinfection, since "[c]at litter is highly porous, and collects dust and soil", based on FDA guidance for the removal of the COVID-19 virus from a home or office. Dkt. 25, at ¶ 64. However, Smarty Pear's statement does not state that the UV Rays tunnel through cat litter, nor

does Whisker explain why this would be necessary to "keep your kitty safe" or "reduce odor."

Whisker's reliance upon *Clorox* and *StriVectin* in their Opposition is misplaced, since those cases involved specific statements that were contrary to directly applicable underlying facts. *Clorox* involved statements made in the context of a visual illustration of "actors spraying and immediately wiping surfaces clean," in contrast to "EPA-approved use instructions on the label requires ten minutes of contact with a treated surface to achieve its disinfectant effect." *Clorox Co. v. Reckitt Benckiser Grp. PLC*, 398 F. Supp. 3d 623, 643 (N.D. Cal. 2019). Similarly, in *StriVectin*, the complaint identified specific chemicals present in a sunscreen advertised as "reef-safe" that had been shown to "adversely impact" coral reefs. *Locklin v. StriVectin Operating Co.*, 2022 U.S. Dist. LEXIS 52461, at *3 (N.D. Cal. Mar. 23, 2022). In contrast, guidance on removal of the COVID-19 virus from a home or office is simply not a rational basis for making factual comparisons to an enclosed litter compartment of a litter box.

### D. "Smartest Self-Cleaning Litter Robot"

As Smarty Pear explained in its motion, "smartest" is a paradigmatic statement of puffery. Dkt. 29 at p. 14:11-18. The *LivePerson* case cited in Whisker's Opposition is not to the contrary. As discussed above, that case involved a claim "that [24]7's chat platform was the 'first' to incorporate smart or predictive technology." *LivePerson, Inc.*¸ 2018 U.S. Dist. LEXIS 190918, at *12. The statements at issue in *LivePerson* implied a lack of "smart or predictive technology" at a specific time, not a generalized allegation that a product was the "smartest." *Id*.

Words like "smartest" are "all-but-meaningless superlatives[,]" "say nothing about the specific characteristics or components[,]" and are as a result are "too vague to be actionable." *In re Apple Processor Litig.*, 2022 U.S. Dist. LEXIS 102533, at *17-18 (N.D. Cal. June 8, 2022). At most, "smartest" is a general, subjective term of degree and textbook non-actionable puffery. *Appliance Recycling Ctrs. of Am., Inc. v. JACO Envtl., Inc.*, 378 F. App'x 652, 654 (9th Cir. 2010) ("The statement that Defendants' method for recycling appliances is a 'unique' system with 'unprecedented' results is non-actionable puffery because it is a 'general, subjective claim,' rather than a statement about 'specific or absolute characteristics.'" (quoting *Newcal Indus. v. Ikon Office Solution*, 513 F.3d 1038, 1053 (9th Cir. 2008)).

*E.      "Over Half A Million Cats And Their Owners" In "The Smarty Pear Family"*

Even taken in isolation, the statement that "[o]ver half a million cats and their owners have made the transition to a litter-free life with Pear Family" hardly suggests that over 500,000 "cats and their owners" have purchased Leo's Loo or Leo's Loo Too devices, as Whisker argues.  Dkt 25 at ¶ 71.  Moreover, this statement is made in the context of a website link to "***Join the Smarty Pear Family***" by entering an "e-mail address" and pressing a "Subscribe" button or clicking a button to "Follow Us on Instagram" (Dkt. 25 at ¶ 71):

The actual context states exactly what "the transition to a litter-free life with Pear Family" entails.  Whisker's fanciful, out-of-context interpretation cannot save its claims. *Werbel ex rel. v. PepsiCo, Inc.*, 2010 U.S. Dist. LEXIS 76289, at *13 (N.D. Cal. July 2, 2010) (considering context of images to determine that "a reasonable consumer would [not] likely be deceived into believing that Cap'n Crunch derives some of its nutritional value from fruit").

**VII.    All Claims Against Chris Madeiras in his Personal Capacity Should be Dismissed**

Whisker cites to ¶¶ 3, 33–34, 36, and 54 of the Amended Complaint as support for its claims against Madeiras.  Dkt. 33 at 14:24-26.  None of these allegations justify personal liability:

- ¶ 3 –Whisker states the legal conclusion that Mr. Madeiras "authorizes, controls, and directs Smarty Pear's marketing and advertising strategy, including the conduct complained of herein," and that he is "the conscious, dominant, and active force behind the wrongful acts of Smarty Pear complained of herein, which wrongful acts he has engaged in for the gain and benefit of Smarty Pear and for his own individual gain and benefit[.]"  Whisker acknowledges that its parroting of legal conclusions without facts is inappropriate by offering to further Amend their Complaint.  Dkt. 33 at 15:10-14.

- ¶¶ 33-34 – Whisker again cites to paragraphs alleging "access to information" and "private" meetings.  As Smarty Pear addressed in its Motion and as Whisker's Opposition ignores, there are no allegations of any misappropriation from this "access" or these "meetings."

HG   Haley ▪ Guiliano

- • ¶ 36 alleges statements made on Smarty Pear's website, not by Mr. Madeiras.

The only cited paragraph that includes statements by Mr. Madeiras is ¶ 54, which quotes a press release stating that "[w]e had a clear and ambitious goal when we designed Leo's Loo Too" and a statement in a product manual that "[w]hen I started Smarty Pear, my goal was to create products that injected even more magic into the special bond that exists between pet lovers and their fur babies." First, these statements are limited to the advertising claims. Second, they fail to state a claim because "designing" and "creating" products to "inject[] even more magic into the special bond that exists between pet lovers and their fur babies" is non-actionable puffery.

## CONCLUSION

The Amended Complaint should be dismissed. Because Whisker's Opposition failed to address key issues (*e.g.*, not proposing "claim constructions" or addressing "#LitterRobot" USPTO filings), it should not be permitted to Amend. *See McLaughlin v. Homelight, Inc.*, 2021 U.S. Dist. LEXIS 177657, *15 (C.D. Cal. Sep. 17, 2021) (no right to amend where "the Court concludes that [plaintiff's] claim borders on frivolous"); *Healthier Choices*, 2021 U.S. Dist. LEXIS 139224 at *17 (requiring leave where "the Court surmises based on the clear and unambiguous language of [the] exhibits that any attempt to overcome any pleading deficiencies would be futile").

Dated: November 17, 2022

HALEY GUILIANO LLP

By: /s/ Joshua Van Hoven
JOSHUA V. VAN HOVEN
joshua.vanhoven@hglaw.com
111 N. Market Street, Suite 900
San Jose, California 95113
Telephone: 669.213.1050
Facsimile: 669.500.7375

RICHARD T. MCCAULLEY (*pro hac vice*)
richard.mccaulley@hglaw.com
116 W. Hubbard Street, Unit 20
Chicago, Illinois 60654
Telephone: 312.330.8105

*Attorneys for Defendants,*
PurLife Brands, Inc. d/b/a Smarty Pear,
and Chris Madeiras