1   COOLEY LLP
    BOBBY GHAJAR (198719)
2   (bghajar@cooley.com)
    1333 2nd Street, Suite 400
3   Santa Monica, CA 90401
    Telephone:    (310) 883-6400
4   Facsimile:    (310) 883-6500

5   ERIK MILCH *[Pro hac vice]*
    (emilch@cooley.com)
6   11951 Freedom Drive, 14th Floor
    Reston, VA 20190
7   Telephone:    (703) 456-8573
    Facsimile:    (703) 456-8100

8   *[Full Listing on Signature Page]*

9   Attorneys for Plaintiff
    Automated Pet Care Products, LLC d/b/a Whisker
10

11              **UNITED STATES DISTRICT COURT**

12            **NORTHERN DISTRICT OF CALIFORNIA**

13  Automated Pet Care Products, LLC d/b/a
    Whisker, a Michigan corporation,
14
                                              Case No. 5-22-cv-04261-SVK
15                     Plaintiff,
                                              **FIRST AMENDED COMPLAINT FOR:**
16          v.
                                              **(1) INFRINGEMENT OF U.S. PATENT NO.**
17  PurLife Brands, Inc. d/b/a Smarty Pear, a   **9,433,185**
    Delaware corporation, and Chris Madeiras, an
18  individual,                               **(2) INFRINGEMENT OF U.S. PATENT NO.**
                                              **7,647,889**
19                     Defendants.
                                              **(3) INFRINGEMENT OF U.S. PATENT NO.**
20                                            **11,399,502**

21                                            **(4) TRADEMARK INFRINGEMENT (15**
                                              **U.S.C. § 1114)**
22
                                              **(5) FALSE DESIGNATION OF ORIGIN (15**
23                                            **U.S.C. § 1125)**

24                                            **(6) FALSE ADVERTISING (15 U.S.C. § 1125)**

25                                            **(7) VIOLATION OF FALSE ADVERTISING**
                                              **LAW (CAL. BUS. & PROF. CODE § 17500,**
26                                            *ET SEQ.***)**

27                                            **(8) VIOLATION OF UNFAIR COMPETITION**
                                              **LAW (CAL. BUS. & PROF. CODE § 17200,**
28                                            *ET SEQ.***)**

                                              **(9) COMMON LAW UNFAIR COMPETITION**

                                              **(10) COMMON LAW TRADEMARK**
                                              **INFRINGEMENT**

COOLEY LLP
ATTORNEYS AT LAW

                                              **FIRST AMENDED COMPLAINT**
                                              **CASE NO. 5:22-CV-04261-SVK**

Plaintiff Automated Pet Care Products, LLC d/b/a Whisker ("Plaintiff" or "Whisker"), by and through its undersigned attorneys, alleges against PurLife Brands, Inc. d/b/a/ Smarty Pear ("Smarty Pear") and Chris Madeiras ("Madeiras") (collectively, "Defendants") as follows.

## INTRODUCTION

For over 20 years since pioneering the litter barrel sifting process, Plaintiff Whisker has produced LITTER-ROBOT®, the leading brand of self-cleaning litter boxes in the world.  In that time, Whisker has grown to a team of over 35 engineers and over 300 other team members.  It has invested tens of millions in marketing to grow awareness of LITTER-ROBOT and the category as a whole, and millions in research and development to ensure each new model of LITTER-ROBOT remains best in class.  All the while, Whisker has proudly invested more than $13 million in recent years to continue manufacturing its devices in the United States, as it has for 22 years.  Those efforts have paid off: LITTER-ROBOT is the best-selling and most-beloved product in its category with more than 20,000 5-star reviews across Whisker's various models, and has received acclaim by publishers such *Inc5000*, *Good Housekeeping*, *CNN*, and the *New York Times*.

Whisker's success caught the attention of many, including Defendant Smarty Pear and its founder, Defendant Chris Madeiras.  Although Whisker welcomes fair competition, Defendants decided to shortcut the innovation process, rip off Whisker's product, and infringe Whisker's intellectual property rights with impunity.  Defendants recently launched "Leo's Loo" and "Leo's Loo Too," two knockoffs imported from China that infringe Whisker's patents, while falsely representing that *they* designed the products.  Moreover, Defendants have attempted to gain an unfair edge in the market by misleadingly using LITTER-ROBOT's trademarks and mimicking Whisker's marketing, going so far as to imitate Whisker's website layout and copy.  Meanwhile, Defendants make false and misleading statements to intentionally deceive pet parents: for example, that their product is the first self-cleaning litter box connected to an app; that their product's UV lamp can sterilize "99.9%" of cat litter; and that "half a million cats and their owners" are already using their products.  This hurts not only Whisker, but all innovators who risk everything to invent new products without taking shortcuts, and consumers who care about buying the right products for their pets.  Accordingly, Whisker has had no choice but to file this suit against Defendants.

## THE PARTIES

1.      Plaintiff Automated Pet Care Products, LLC d/b/a Whisker ("Whisker") is a limited liability company organized under the laws of the State of Michigan with its principal place of business at 1080 W Entrance Drive, Auburn Hills, Michigan 48326.

2.      On information and belief, Defendant PurLife Brands, Inc. d/b/a Smarty Pear ("Smarty Pear") is a corporation organized under the laws of the State of Delaware with its principal place of business at 96 Eleanor Avenue, Los Altos, California 94022.

3.      Defendant Chris Madeiras ("Madeiras") is, and at all relevant times was, the Founder and Chief Executive Officer of Smarty Pear, and authorizes, controls, and directs Smarty Pear's marketing and advertising strategy, including the conduct complained of herein.  He is the conscious, dominant, and active force behind the wrongful acts of Smarty Pear complained of herein, which wrongful acts he has engaged in for the gain and benefit of Smarty Pear and for his own individual gain and benefit.  On information and belief, Defendant Madeiras is an individual residing in Contra Costa County, California.

4.      At all relevant times, each of the Defendants was the agent and alter ego of the other Defendant, acting for and on behalf of both Defendants as a single enterprise, with unity of purpose and control.

## JURISDICTION, VENUE, AND INTRADISTRICT ASSIGNMENT

5.      This is an action for patent infringement arising under the Patent Laws of the United States, 35 U.S.C. § 1, *et seq*., trademark infringement  and unfair competition in violation of Section 32 and 43(a) of the Lanham Act, §§ 1114 and 1125(a), *et seq*., and violations of statutory and common law of the State of California.  Accordingly, this Court has subject-matter jurisdiction over the federal claims pursuant to 15 U.S.C. § 1121, as well as 28 U.S.C. §§ 1331 and 1338(a).

6.      Jurisdiction is also proper under 28 U.S.C. § 1332(a)(2) as the matter is between parties in different states (Defendants in California, and Whisker in Michigan), and because the amount in controversy, exclusive of interest and costs, exceeds $75,000.

7.      All other claims asserted in this action arise out of the same transaction or occurrence, so that this Court has supplemental jurisdiction over all additional claims asserted in

this case under 28 U.S.C. § 1367(a).

**8.**     This Court has personal jurisdiction over Defendants because Smarty Pear is headquartered in Los Altos, California and Madeiras resides in Contra Costa County, both within this District, and regularly conduct business, including advertising, offering to sell, and selling their services in this District and elsewhere in the United States.  Further, Defendants' wrongful acts complained of herein took place, and have caused injury to Whisker, within this judicial district.

**9.**     Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b)–(c) and 1400(a)–(b) because Defendants reside in this District and are subject to personal jurisdiction in this District.  Venue is also proper in this District because the acts that are the subject of this Complaint were committed at least in part in this District.

**10.**     Pursuant to Civil Local Rule 3-2(c) and General Order No. 44, this case is properly assigned to any division of this Court because it involves intellectual property claims.

## FACTUAL BACKGROUND

### WHISKER'S PIONEERING LITTER-ROBOT PRODUCTS

**11.**     For over 22 years, Whisker (formerly known as AutoPets) has designed, engineered, manufactured, and offered for sale highly innovative and technologically advanced pet products in the United States.  Whisker's flagship product line is the LITTER-ROBOT product, which it launched in April 2000 as the first automatic barrel-sifting litter box.

**12.**     Before the LITTER-ROBOT product, litter boxes were largely dependent on manual hand-scooping or sifting.  Traditional litter boxes accumulate litter clumps and waste, requiring further manual interaction to clean up.  A few products had experimented with a motorized rake, but they were merely a mechanical analog to manual scooping and suffered from the same limitations as conventional litter boxes.

**13.**     Over time, Whisker's LITTER-ROBOT product changed the landscape.  The first automatic barrel-sifting litter box, the LITTER-ROBOT product harnessed rotation, and gravity to separate waste from clean litter and disperse it in a fully-enclosed waste drawer.  This design provides material benefits to both pets and their owners.  For the pets, the automatic cleaning cycle

produces a clean bed of litter after each use.  Clean litter also enables the device to be used with multiple pets, who may be otherwise territorial.  Owners, meanwhile, do not have to scoop out any waste litter, and can enjoy significant odor reduction.  Further, by conserving more clean litter, owners can save money.  Finally, newer models of the LITTER-ROBOT product collect data based on pet usage, and conveys it via an integrated app.  This gives pet owners real-time insight into their cats' behaviors, alerting them to irregular usage and possible health concerns.

14.    Over the years, Whisker has upgraded and innovated on the LITTER-ROBOT product.  Currently, Whisker offers three models.  The LITTER-ROBOT 3 model, launched in 2015, features a more ergonomic and spacious litter chamber resulting from a patented tilted axis of rotation, as well as automatic cycling, cat sensors, pinch detection, sleep mode, an adjustable wait timer, and night light.  Each of these features made it wildly successful.  A Wi-Fi enabled version, LITTER-ROBOT 3 CONNECT, followed in 2017, which connects to the Whisker app to facilitate mobile control and remote monitoring, and can be used with home automation systems like Alexa and Google Assistant through the widely used If This Then That automation platform.

15.    Most recently, on May 10, 2022, Whisker launched its newest model, LITTER-ROBOT 4.  It features a sleek, modern design, quiet operation, a sealed waste drawer with odor-absorbing features, and the patented tilted axis of rotation.  Like LITTER-ROBOT-3, LITTER-ROBOT 4 features a cat sensor, but now has an accurate scale that enables further safety and owner insights.  Moreover, LITTER-ROBOT 4 includes time-of-flight laser sensors that are uniquely oriented on the device to enable more advanced cat detection, litter level monitoring, and waste drawer level reporting.  These sensors are covered by a separate patent, as discussed below.

16.    Below are images of Whisker's LITTER-ROBOT product models.



| LITTER-ROBOT (launched 2000) | LITTER-ROBOT II (launched 2005) |
|---|---|
| LITTER -ROBOT 3 (launched 2015) | LITTER-ROBOT 4 (launched 2022) |

**17.**     It is with great pride that Whisker's LITTER-ROBOT models are designed, assembled, and serviced in the United States.  Whisker ships its products from its assembly and fulfillment center in Juneau, Wisconsin.

**18.**     Buyers may purchase the LITTER-ROBOT product through Whisker's website, or through third-party retailers such as the prominent online retailers Chewy and Amazon.

**19.**     Whisker's LITTER-ROBOT line has received rave reviews from publishers.  CNN gave the LITTER-ROBOT 3 model the title of the best self-cleaning litter box.[1] *The Dodo* awarded

---

[1] Christina Vercelletto, *The best litter boxes—and litter—for your cat, according to vets*, CNN (Apr. 19, 2021), https://www.cnn.com/cnn-underscored/pets/best-cat-litter-box.

COOLEY LLP
ATTORNEYS AT LAW

**FIRST AMENDED COMPLAINT**
**CASE NO. 5:22-CV-04261-SVK**

the LITTER-ROBOT 3 CONNECT model the "Paw of Approval."[2]  Meanwhile, the LITTER-

ROBOT 4 model has again received glowing reviews, with *Good Housekeeping* naming it the "best

overall self-cleaning litter box" of 2022, CNN calling it "brilliantly designed," *The Daily Beast*

calling it a "game changer," and *Best Products* stating that it is "at the top of the game in terms of

specs and tech."[3]

20.     Although industry reviews are important, Whisker relies heavily on positive word-

of-mouth and favorable reviews from authentic customers.  Over 22 years in business, Whisker

invested millions of dollars to educate consumers about its LITTER-ROBOT product alongside the

self-cleaning litter box category as a whole.  This has paid off.  Whisker has sold over **700,000**

LITTER-ROBOT devices to cat parents.  Its website features over **20,000** five-out-of-five-star

reviews for the LITTER-ROBOT 3 product, LITTER-ROBOT 3 CONNECT product, and their

respective bundles, from customers.  Similarly, the LITTER-ROBOT 3 CONNECT product is the

best-reviewed self-cleaning litter box on Amazon, with nearly 1,050 five-star ratings as of July 7,

2022, and over 218 five-star user reviews.  It is important to Whisker's brand that prospective

customers trust other customer reviews of the LITTER-ROBOT product.

### WHISKER'S VALUABLE PATENTS AND TRADEMARKS

21.     Central to Whisker's success has been its protection of its valuable intellectual

property underlying the LITTER-ROBOT product line.

22.     Whisker owns by entire right, title, and interest in and to U.S. Patent No. 9,433,185

(the "'185 Patent"), titled "Automated Litter Device and Method."  The '185 Patent duly and legally

issued on September 6, 2016, to inventors Brad Baxter and Jason Smith from U.S. Patent

---

[2] Sam Howell, *We Tried The Fanciest Litter Box In The World And It Changed Our Lives*, The Dodo (June 7, 2021), https://www.goodhousekeeping.com/home/cleaning/g31206600/best-self-cleaning-litter-box/.
[3] Lynn Redmile, *6 Best Self-Cleaning Litter Boxes of 2022*, Good Housekeeping Institute (May 9, 2022), https://www.goodhousekeeping.com/home/cleaning/g31206600/best-self-cleaning-litter-box/;
Noelle Ike, *Never Scoop Poop Again With The Sleek, Brilliantly Designed Litter-Robot 4*, CNN (May 13, 2022), https://www.cnn.com/underscored/reviews/litter-robot-4-review;
Mia Maguire, *This Actually Attractive Self-Cleaning Litter Box Is a Game-Changer for Cat Parents*, The Daily Beast (May 10, 2022), https://www.thedailybeast.com/litter-robot-4-review;
Eunice Lucero-Lee, *The Litter-Robot 4 Is Here—And My Life Has Never Been Better*, Best Products (May 10, 2022), https://www.bestproducts.com/lifestyle/pets/a39929990/litter-robot-4-review/.

Application No. 14/274,884, filed on May 12, 2014.  A true and correct copy of the '185 Patent is attached as **Exhibit 1** to this Complaint.

23.     The inventions of the '185 Patent are generally directed to an improved litter device for use by animals that automatically removes animal waste from litter.  The innovations captured by the '185 Patent cover many important aspects of an automated pet product, but primarily focused on the novel application of a tilted axis.  As opposed to a horizontal axis, a tilted rotation allowed for a larger opening and a more ergonomic space for use.  It also enables a single waste port due to the tilted funneling action.

24.     The '185 Patent is valid, enforceable, and duly issued in full compliance with Title 35 of the United States Code.

25.     Whisker owns by entire right, title, and interest in and to U.S. Patent No. 7,647,889 (the "'889 Patent"), titled "Apparatus for a Litter Box."  The '889 Patent duly and legally issued on January 19, 2010, to inventor Jerry Horanoff from U.S. Patent Application No. 11/540,129, filed on September 29, 2006.  A true and correct copy of the '889 Patent is attached as **Exhibit 2** to this Complaint.

26.     The inventions of the '889 Patent are generally directed to an automated system for a litter device.

27.     The '889 Patent is valid, enforceable, and duly issued in full compliance with Title 35 of the United States Code.

28.     Whisker owns by entire right, title, and interest in and to U.S. Patent No. 11,399,502 ( the "'502 Patent") (collectively with the '185 Patent and the '889 Patent, the "Patents-In-Suit"), titled "System for Monitoring and Controlling an Automated Litter Device."  The '502 Patent duly and legally issued on August 2, 2022 to inventors Brad Baxter and Jacob Zuppke from U.S. Patent Application No. 16/428,433, filed on May 31, 2019.  A true and correct copy of the '502 Patent is attached as **Exhibit 3** to this Complaint.

29.     The inventions of the '502 Patent are generally directed to an automated system for a litter device and related to a method of operating an automated litter device via a remote user interface.   The innovations captured by the '502 Patent are particularly useful in remotely

monitoring and receiving signals from an automated litter device, and remotely controlling one or more operations of an automated litter device.

**30.** The '502 Patent is valid, enforceable, and duly issued in full compliance with Title 35 of the United States Code.

**31.** In addition to its valuable patents, Whisker has devoted substantial time, effort, and resources to the development and promotion of its distinctive and well-known LITTER-ROBOT trademarks (hereinafter the "Litter-Robot Marks") and the goods offered thereunder. Thus, the purchasing public identifies the Litter-Robot Marks with Whisker and its products.

**32.** Whisker supports its strong common law trademark rights in the Litter-Robot Marks with numerous federal trademark registrations. *See* U.S. Trademark Reg. Nos. 4,674,124; 4,674,125; 5,259,515; 6,227,960; 6,570,005; 6,668,860; 6,734,934; 6,734,935; and 6,799,211. Moreover, the USPTO accepted a Section 2(f) claim of acquired distinctiveness as to Whisker's registration for the word mark LITTER-ROBOT (Reg. No. 5,259,515, covering "Automated pet appliances, namely, litter boxes" in Class 21, and asserting a first use date of April 7, 2000). Thus, the USPTO accepted that the purchasing public identifies the word mark "LITTER-ROBOT" with Whisker's automated litter boxes.

**SMARTY PEAR IMPORTS AN INFRINGING KNOCKOFF FROM CHINA AND LAUNCHES A DIRECT COMPETITOR**

**33.** Defendant PurLife Brands, Inc., doing business as "Smarty Pear," launched in or around April 2021 as a direct competitor to Whisker. Its founder, Defendant Chris Madeiras, was formerly affiliated with a company that did business directly with Whisker. For years, Madeiras had a relationship with Whisker, and through his employment had access to Whisker's confidential information and business plans for the LITTER-ROBOT product.

**34.** In or around October 2019, after Madeiras had left the other company, Madeiras met privately with one of Whisker's executives, Jacob Zuppke. There, Madeiras and Zuppke discussed the upcoming development and launch of the LITTER-ROBOT 4 product, Whisker's financial success, and the new business Litterbox.com that Whisker was planning to launch. At that meeting, Madeiras did not reveal that he was intending to launch a copycat product. Following this meeting,

Zuppke and Madeiras stayed in touch through phone calls and text messages.  In 2021, Whisker learned that Madeiras had started Smarty Pear and launched a direct competitor to the successful LITTER-ROBOT product.

35.     In or around April 2021—decades after Whisker introduced the LITTER-ROBOT product—Smarty Pear and Madeiras began to make, use, offer for sale, sell, directly and/or through intermediaries, and import, directly and/or through intermediaries, an automatic self-cleaning litter box it called the "Leo's Loo."  It was offered for $499—matching the price point of the LITTER-ROBOT 3 product—and was sold through the third-party retailer Chewy.



36.     Smarty Pear and Madeiras represent to the public that *they* are the designer of Leo's Loo.  For example, in assuring consumers of the quality of the Leo's Loo safety features, Smarty Pear's website states, "**[w]e designed** Leo's Loo with kitty safety in mind."[4]  Similarly, Smarty Pear's website states, "we've packed the Leo's Loo with features that make it one of the most convenient self-cleaning litter box [sic] available."  *Id.*  Consistent with these representations, Smarty Pear and Madeiras describe Smarty Pear as a "California based technology company," stating that its "team of innovators and pet lovers are actively working on several new products." [5] Together, this was intended to create the impression that Leo's Loo was designed by Smarty Pear

---

[4] Smarty Pear, *Leo's Loo*, https://smartypear.com/products/leo-s-loo (emphasis added).
[5] Smarty Pear, *Meet Smarty Pear*, https://smartypear.com/pages/about-us.

and Madeiras in California, much like the LITTER-ROBOT product is designed by Whisker in the Midwest, and that Madeiras and Smarty Pear innovated the technology behind the product.

37.     This curated impression by Madeiras and Smarty Pear is false and misleading.  On information and belief, Leo's Loo is a copycat product designed and manufactured in China.  It appears that this product has been available since 2019 through the Chinese e-commerce site Alibaba, and currently sells under a variety of names, such as the "MEET Smart Litter Box" or the "MOME Smart Cat Sand Bytes."  On information and belief, Smarty Pear and Madeiras merely purchased these third-party devices, imported them, and now resell them under Smarty Pear's own name.  As shown below, the two products have identical dimensions, specifications, and features.

| MEET Smart Litter Box *(available on Alibaba)* | Leo's Loo |
|---|---|
|  |  |
|  |  |

---

[6] The measurements are effectively identical.  For example, 650 millimeters converts to 25.6 inches, and 215 millimeters converts to 8.5 inches.

| **MEET Smart Litter Box** *(available on Alibaba)* | **Leo's Loo** |
|---|---|

| **Product Name:** | **MOME Smart Cat Sand Bytes** |
|---|---|
| **Product size:** | **650*630*660mm** |
| **Rated voltage:** | **12V** |
| **Maximum load:** | **25KG** |
| **Cat litter capacity:** | **6L** |
| **Trash capacity:** | **9L** |
| **Body material:** | **PP** |
| **Product weight:** | **12KG** |
| **Rated power:** | **standby 1W / operating state 6W** |
| **Regular power consumption:** | **about 1 degree electricity / month** |
| **Minimum accuracy:** | **0.1KG** |
| **Backup battery:** | **2000mAh** |

| Product Name | Automatic Self-Cleaning Litter Machine |
|---|---|
| Dimensions | 26 x 25 x 26 in (65 x 63 x 66 cm) |
| Input Voltage | 12 V |
| Max Weight Capacity | 55 lb (25 kg) |
| Max Litter Capacity | 1.5 gal (6 L) |
| Material | PP |
| Product Weight - Net | 26.5 lb (12 kg) |
| Product Weight - Gross | 35.3 lb (16 kg) |
| Power - Operating | 53 kWh per year |
| Power - Standby | 9 kWh per year |
| Scale Accuracy | ± 1 lb (0.5 kg) |

**FOUR–POINT SENSING, ALL–ROUND SENSING**

During the operation of the device, if the cat is touched or tapped on the device, it will stop running immediately until the cat leaves.

**1 Weight Sensors**

The weight sensors at the bottom of the machine detect the presence of a cat heavier than 2 lb (1 kg). The machine will pause if a cat jumps on it while it's running a cycle. Do NOT use for cats weighing less than 2 lb (1 kg).

**Sand leakage port prevents pinch induction**

When the sand leakage port senses the cat's claws or other foreign objects, it will immedi–ately stop running and make a small swing, waiting for foreign matter to be excluded.

**2 Anti-Pinch Sensors**

In the case of an obstruction, the machine will stop and rotate backwards as a safety measure. The unit will then return to its normal cleaning cycle.





**38.** Smarty Pear and Madeiras's false and misleading statement that they "designed" Leo's Loo allows consumers to trust their representations as to the origin of their self-cleaning litter box. The origin and actual manufacturer of a product are important qualities for consumers shopping for appliances, especially in a sensitive and pricey commercial market such as self-cleaning litter boxes.

39. Further, the following Chewy product reviews show that consumers were actually misled by this assertion into believing that Smarty Pear was the designer of Leo's Loo:

- "A big shout out to Smarty Pear for making such a great machine! I'm sensing another purchase in the very near future."

- "I currently have a litter robot I decided to try this one because it's cheaper and you get what you pay for!  On a sidenote the customer service for smarty pear who is the manufacturer of this litter box is fantastic until you have an issue.  Once they realize you were unhappy they stop messaging you back in when you ask for a refund you definitely never hear from them!"

40. Making matters worse, the device that Defendants imported into the United States and offered for sale as Leo's Loo infringes Whisker's '185 Patent.  As detailed further in **Exhibit 4**, Leo's Loo incorporates the same support base, chamber, entry opening, screen and/or septum, axis of rotation, track plane, and waste opening.  The same product also infringes Whisker's '889 Patent.  As detailed further in **Exhibit 5**, Leo's Loo incorporates the same unenclosed compartment, temporary litter storage compartment, screen, base, waste receptacle, and orientation.  These are the innovations that made the LITTER-ROBOT product so successful, and it appeared that Leo's Loo was blatant infringement.

41. On April 14, 2021, Whisker's counsel sent Smarty Pear a cease-and-desist letter setting forth detailed allegations of patent infringement and disclosing various patents and patent applications, specifically citing the '185 Patent.  Accordingly, it requested that Smarty Pear cease all advertising and sales of Leo's Loo.  A copy of this letter is attached as **Exhibit 6**.

42. In a response dated April 21, 2021, Smarty Pear acknowledged that it was aware of Whisker's patents.  Rather than comply with Whisker's requests, however, Smarty Pear simply rejected the allegations.  A copy of this letter is attached as **Exhibit 7**.  Madeiras and Smarty Pear have since escalated their acts of unfair competition and infringement.

43. Almost immediately, Smarty Pear's Leo's Loo began to steal away sales from Whisker.  For example, of the 185 customer reviews of Leo's Loo on Chewy as of July 7, 2022, *at least 28* mention Whisker's LITTER-ROBOT product.

44.     Smarty Pear and Madeiras's marketing also targeted the LITTER-ROBOT product, both explicitly and implicitly.  One post uploaded to Smarty Pear's Instagram account on July 8, 2021 claimed a user stated Leo's Loo was "**Better than a Litter Robot**"—a reference to Whisker's product.  Another Instagram post on October 16, 2021 quoted a review referencing a "more expensive automatic litter box, whose name shall not be named in comparison."[7]  Further, upon information and belief, starting in October 2021, Smarty Pear and Madeiras began to use the hashtags "#litterrobot" and "#litterrobot3" in their social media posts promoting Leo's Loo Too.

45.     Hashtags are metadata tags directed at users on social media websites that make it possible for others to easily find messages with a particular theme or content.  For this reason, hashtag marketing is a useful way to build an association between a brand and a product.  Thus, when an Instagram user searches for "#litterrobot," she will be looking for content related to Whisker's LITTER-ROBOT product.  As shown below, Smarty Pear used these hashtags in order to create the impression that Leo's Loo was affiliated with LITTER-ROBOT.

46.     The following Smarty Pear Instagram post from November 11, 2021, for example, touts the Leo's Loo Too's features, and ends with the hashtags "#LitterRobot" and "#litterrobot3." The fact that "#LitterRobot" is capitalized serves to highlight that Smarty Pear and Madeiras sought to trade off of Whisker's goodwill.



---

[7] Smarty Pear (@smartypear), Instagram (Oct. 18, 2021), https://www.instagram.com/p/CVLP6n9grd8/.

[8] Smarty Pear (@smartypear), Instagram (Nov. 11, 2021), https://www.instagram.com/p/CWKNMipMLDW/.

COOLEY LLP
ATTORNEYS AT LAW

FIRST AMENDED COMPLAINT
CASE NO. 5:22-CV-04261-SVK

47.     Another Instagram post dated November 21, 2021 promotes Leo's Loo Too and includes the hashtags "#litterrobot" and "litterrobot3."



48.     Similarly, an Instagram post dated January 11, 2022 promotes Leo's Loo Too and includes the hashtag "#litterrobot."



49.     Nor were these isolated incidents.  Of the 140 posts uploaded to SmartyPear's Instagram account as of July 7, 2022, at least 22 of them include the hashtags "#litterrobot" or "#litterrobot3."  Smarty Pear and Madeiras engaged in similar practices on Facebook and TikTok.

---

[9] Smarty Pear (@smartypear), Instagram (Nov. 21, 2021), https://www.instagram.com/p/CWizikIMxsU/.

[10] Smarty Pear (@smartypear), Instagram (Jan. 11, 2022), https://www.instagram.com/p/CYmjIhcAf8i/.

FIRST AMENDED COMPLAINT
CASE NO. 5:22-CV-04261-SVK

50.     Smarty Pear and Madeiras's copying did not stop with product features or hashtags. Taking note of Whisker's success, Smarty Pear and Madeiras updated Smarty Pear's website to closely resemble Whisker's website for the LITTER-ROBOT product.  The website now mimics marketing assets, fonts, photos, email prompts, footer layouts, and overall webpage layouts—down to the rounded designs of the button edges, as the below comparison makes clear.



First Amended Complaint
Case No. 5:22-cv-04261-SVK

| LITTER-ROBOT | Smarty Pear |
|---|---|
|  |  |
| Add to Cart | Add to cart |

51.     Moreover, Smarty Pear and Madeiras produced a "How It Works" video for Leo's Loo that is nearly identical in script to Whisker's video for the LITTER-ROBOT product.

52.     The effect of this conduct was to draw in consumers seeking out information about the LITTER-ROBOT product and create a false association between Whisker's LITTER-ROBOT product and Smarty Pear's infringing knockoff.  Smarty Pear and Madeiras's knockoff product and infringement resulted in actual consumer confusion.  To incentivize reviews of Leo's Loo, Smarty Pear and Madeiras offered consumers free accessories.  Several consumers emailed to claim those accessories, and instead directed their emails at Whisker.  Thus, Whisker's product specialists were forced to explain repeatedly that Whisker was not the source of Smarty Pear's goods.

**SMARTY PEAR AND MADEIRAS LAUNCH LEO'S LOO TOO, COMMIT FURTHER INFRINGEMENT, AND ESCALATE THEIR UNFAIR COMPETITION**

53.     On October 27, 2021, well after the filing of the Patents-In-Suit, Smarty Pear issued a press release touting a new model, "Leo's Loo Too."  Thereafter Smarty Pear and Madeiras began to make, use, offer for sale, sell, directly and/or through intermediaries, and import directly and/or through intermediaries, the automatic self-cleaning litter box called "Leo's Loo Too."  This model appears very similar to Leo's Loo, but touted several new features, including the "**first-ever** app connected self-cleaning litter box with Alexa and Google Voice controls" and "UV rays that **eliminate 99.9%** of bacteria."[11]

---

[11] Press Release, *Smarty Pear Launches First-Ever App-Connected Self-Cleaning Litter Box with Alexa and Google Voice Controls* (Oct. 27, 2021), https://www.prnewswire.com/news-releases/smarty-pear-launches-first-ever-app-connected-self-cleaning-litter-box-with-alexa-and-google-voice-controls-301409876.html (emphasis added).

1
2
3
4
5
6
7
8

## Smarty Pear Launches First-Ever App-Connected Self-Cleaning Litter Box with Alexa and Google Voice Controls



Leo's Loo Too with Vibrant Color Options Available Just in Time for Holiday Season

NEWS PROVIDED BY
**Smarty Pear →**
Oct 27, 2021, 09:38 ET

SHARE THIS ARTICLE
  

9   **54.**   Again, Smarty Pear and Madeiras falsely and misleadingly represented that they

10  were the designer of Leo's Loo Too.  In the press release, Madeiras was quoted as stating, "[w]e

11  had a clear and ambitious goal when **we designed** Leo's Loo Too: To create a self-cleaning litter

12  box that stands out from all the others with the very best user experience, most innovative

13  technology and a design worthy of magazine covers."  *Id.* (emphasis added).  Similarly, the user

14  manual for Leo's Loo Too begins with a quote from Madeiras (identified as "Smarty Pear Founder

15  / CEO"), stating, "When I started Smarty Pear, my goal was to **create products** that injected even

16  more magic into the special bond that exists between pet lovers and their fur babies."[12]

17  **55.**   These quotes are false and misleading.  On information and belief, Smarty Pear and

18  Madeiras are not the designer of Leo's Loo Too.  As with the first model, Leo's Loo Too is nothing

19  but a relabeled product imported from China.  As the below comparison demonstrates, Leo's Loo

20  Too is identical to the "MEET Smart Litter Box" in appearance, dimensions, and features.

21
22
23
24
25
26
27

---

[12] Smarty Pear, *Leo's Loo Too Manual*, at 4, https://drive.google.com/file/d/1pOl7QSAV6q2vFzaq1amU5cI200WASxOh/view (emphasis added).

28

COOLEY LLP
ATTORNEYS AT LAW

**FIRST AMENDED COMPLAINT**
**CASE NO. 5:22-CV-04261-SVK**

| MEET Litter Box (Second Generation) | Leo's Loo Too |
|:---:|:---:|
|  |  |
|  |  |
|  |  |

| MEET Litter Box (Second Generation) | Leo's Loo Too |
|---|---|
|  | |

56.     Tellingly, when asked about the above product via email, Smarty Pear's customer service falsely and misleadingly represented that it was a "knockoff," stating, "we are the original creators of the Leo's Loo and Leo's Loo Too."

57.     Moreover, this product—as with the product imported into the United States as Leo's Loo (collectively, the "Accused Products")—infringes Whisker's patents.  As detailed further in Exhibits 4 and 5, Leo's Loo Too incorporates the same support base, chamber, entry opening, screen and/or septum, axis of rotation, track plane, and waste opening described in and covered by the '185 Patent; and the same unenclosed compartment, temporary litter storage compartment, screen, base, waste receptacle, and orientation described in and covered by the '889 Patents.  As such, Leo's Loo Too infringes the '185 and '889 patents.

58.     Further, as detailed in **Exhibit 8**, Leo's Loo Too incorporates the same sensors, wireless communication module, and user interface described in and covered by the '502 Patent. As such, Leo's Loo Too also infringes the '502 Patent.

59.     Smarty Pear and Madeiras are engaging in false and misleading advertising with respect to the UV feature in Leo's Loo Too.  On Smarty Pear's website and in the Leo's Loo Too user manual, Smarty Pear and Madeiras assert (with no support) that Leo's Loo Too contains UV rays that are "99.9% effective at eliminating bacteria, parasites and viruses."[13]

---

[13] Smarty Pear, *Leo's Loo Too*, https://smartypear.com/products/leo-s-loo-too; *Smarty Pear*, *Leo's Loo Too Manual*, *supra* n.12, at 5.

**UV Rays that Eliminate 99.9% of Bacteria**

Leo's Loo Too utilizes UV rays to kill bacteria.
After your cat exits the Loo, the machine projects UV rays into the waste drawer to thoroughly sterilize. The UV rays are 99.9% effective at eliminating bacteria, parasites and viruses.

60. Smarty Pear and Madeiras repeat this claim in Smarty Pear's marketing, stating in a now-deleted Instagram post dated November 17, 2021 (and tagging "#litterrobot" and "#litterrobot3," as discussed above) that the feature "[k]eep[s] you and your kitty safe" and "reduc[es] odor.



61. The claim that the UV feature "thoroughly sterilize[s]" and is "99.9% effective at eliminating bacteria, parasites and viruses," thereby "reducing odor" in Leo's Loo Too is false and misleading.

62. Smarty Pear and Madeiras are not the first to sell consumers on an ultraviolet sterilization feature. In the wake of the COVID-19 pandemic, the market was flooded with products claiming to provide disinfecting benefits through ultraviolet light. This led to so many dubious and nonscientific efficacy claims that the FDA was forced to release a guide for consumers.[14]

---

[14] *UV Lights and Lamps: Ultraviolet-C Radiation, Disinfection, and Coronavirus*, FDA (Feb. 1, 2021), https://www.fda.gov/medical-devices/coronavirus-covid-19-and-medical-devices/uv-lights-and-lamps-ultraviolet-c-radiation-disinfection-and-coronavirus.

63.     In its guide, the FDA acknowledged that ultraviolet-C (a specific variation on UV rays) is "a known disinfectant for air, water, and nonporous surfaces," and "has effectively been used for decades to reduce the spread of bacteria[.]" *Id.* Critically, however, the FDA cautioned that there were "limitations" with respect to efficacy. For one, not every UV wavelength is the same, "so it may take longer exposure to a given surface area to potentially provide effective inactivation of a bacteria or virus." *Id.* And as is most relevant here, the FDA stated that "UVC radiation can only inactivate a virus if the virus is directly exposed to the radiation." *Id.* Accordingly, the FDA stated, "**the virus or bacterium will not be inactivated if it is covered by dust or soil, embedded in porous surface or on the underside of a surface**." *Id.* (emphasis added). As another researcher stated, "We refer to UV disinfection as a line-of-sight technology, so if anything blocks the UV light including dirt, stains, [or] anything casting shadows then those 'shaded or protected' areas will not be disinfected."[15]

64.     Given the science of UV disinfection, a litter box may be the worst possible use case. Cat litter is designed to be highly porous, and collects dust and soil. It is an example of an environment in which UV disinfection would be ineffective. For this reason, it is false and misleading for Defendants to assert that the UV rays in Leo's Loo Too can "thoroughly sterilize" or "reduc[e] odor" in waste litter.

65.     Further, this deception was material to consumer purchases. Product reviews on Chewy and Amazon demonstrate that multiple consumers bought Leo's Loo Too due to the claim that its UV rays "thoroughly sterilize." For example:

- "I researched all of the robot litter boxes I could find before deciding on Leo's Loo Too. I chose it because of the larger waste drawer and the [u]v sterilization, and the overall design."

- "UV sanitizing on the Too was a plus for me."

- "I love the UV sterilization cleaning[.]"

---

[15] Shannon Bauer, *Does UV Light Actually Disinfect and Kill Viruses?* UCI Beckman Laser Institute & Medical Clinic (Sept. 23, 2020), https://www.bli.uci.edu/does-uv-light-actually-disinfect-and-kill-viruses/.

- "It utilizes UV light sterilization to kill the germs and bacteria that are the primary cause of odor in the first place."

66. Likewise, in a head-to-head product comparison between Leo's Loo Too and Whisker's LITTER-ROBOT product, a reviewer relied on Smarty Pear and Madeiras's representation and stated: "[Leo's Loo Too] also features a programmable **UV sterilization technology that disinfects and kills 99 percent of germs, viruses, and parasites** in the waste drawer using UV rays.  When it comes to picking a litter box, odor management is crucial, and this function increases the product's odor elimination mechanism, ensuring that your home stays as fresh as possible."[16]

67. Smarty Pear and Madeiras made further false and misleading statements in connection with the release of Leo's Loo Too.

68. First, Smarty Pear and Madeiras assert in the initial press release that Leo's Loo Too is the "first ever" app connected self-cleaning litter box.  The necessary implication of this factual statement is that other products available on the market lacked these features.  This statement is false and misleading: not only is Leo's Loo Too identical to an imported product, but Whisker's LITTER-ROBOT 3 CONNECTED model predated Leo's Loo Too by years, and is capable of integrating with voice control systems such as Alexa and Google Assistant.  In fact, some consumers noticed the similarities: one comment on a Smarty Pear video stated, "Lol same device as the litter robot[.]"

69. Second, Smarty Pear and Madeiras assert on Smarty Pear's website that Leo's Loo Too is "The Smartest Self-Cleaning Litter Box."  In this context, the word "smartest" specifically refers to a subset of features touted by Smarty Pear and Madeiras.  For example, the Leo's Loo Too webpage features a video stating "Say Hello to the Smartest Self-Cleaning Litter Box"—itself a clear reference to a marketing slogan used by Whisker for years, "Say Hello To The Last Litter Box You'll Ever Buy."  As is shown in the below screenshots, the video identifies the following

---

[16] Clair Chesterman, *Leo's Loo Too VS Litter Robot*, TechnoMeow, https://technomeow.com/leos-loo-too-vs-litter-robot/ (emphasis added).

features of Leo's Loo Too: (1) self-cleaning; (2) voice controls; (3) app connection; (4) pet sensing; and (5) post-exit cleaning.



**Screenshots of Leo's Loo Too Video**

70. Thus, consumers may plausibly understand "smartest" to refer to the fact that each of the above features is present in Leo's Loo Too. The necessary implication of "smart*est*" is that other products in the market lack those features. Each of those features, however, is present in the LITTER-ROBOT product (and, for that matter, in the Chinese product). Accordingly, Smarty Pear and Madeiras's factual representation that Leo's Loo Too is the "smartest self-cleaning litter box" is false and misleading. Moreover, such a deception is material to consumers. In a head-to-head product review between Leo's Loo Too and the LITTER-ROBOT 3 CONNECT product, the reviewer noted that the "advanced and hi-tech stuff" in Leo's Loo Too weighed in its advantage.[17]

---

[17] Chesterman, *Leo's Loo Too VS Litter Robot*, *supra* n.16.

COOLEY LLP
ATTORNEYS AT LAW

**FIRST AMENDED COMPLAINT**
**CASE NO. 5:22-CV-04261-SVK**

71.      Finally, Smarty Pear and Madeiras assert on Smarty Pear's website that "[o]ver half a million cats and their owners have made the transition to a litter-free life with Pear Family[.]" The necessary implication of this statement is that over 500,000 "cats and their owners" are using Leo's Loo or Leo's Loo Too devices.  This conveys the impression that there have been hundreds of thousands of sales of Leo's Loo and Leo's Loo Too, which would tend to increase consumer confidence in the products.



72.      On information and belief, however, this is false and misleading.  By comparison, over 22 years in business, Whisker has sold over 700,000 LITTER-ROBOT devices.   It is implausible that Smarty Pear and Madeiras have sold even a fraction of that amount after scarcely a year in business.

**First Cause of Action**

**INFRINGEMENT OF U.S. PATENT NO. 9,433,185**

**73.**   Whisker realleges and incorporates by reference paragraphs 1 through 72 of this Complaint as if fully set forth herein.

**74.**   Defendants have and continue to directly and indirectly infringe, one or more claims of the '185 Patent, including at least claim 1 of the '185 Patent, literally and/or under the doctrine of equivalents.  Defendants have and continue to directly and indirectly infringe one or more claims of the '185 Patent, including at least claim 1 of the '185 Patent, literally and/or under the doctrine of equivalents, by or through making, using, selling, importing, offering for sale, and/or providing and causing to be used the Accused Products.  Defendants have acted without authority or license from Whisker, in violation of 35 U.S.C. § 271(a).

**75.**   Independent claim 1 of the '185 Patent recites:

1.  A device comprising:

(a) a support base;

(b) a chamber, located on the support base, which includes:

(i) an entry opening so that an animal can enter and exit the chamber;

(ii) a screen and/or septum located at a back of the chamber, opposite the entry opening;

(iii) a single axis of rotation that forms an angle of between about 80 degrees and about 55 degrees with a vertical plane;

(iv) a track, which encircles an outside wall of the chamber and lies in one plane defining a track plane which forms an angle between about 10 degrees and 35 degrees with the vertical plane, for rotating the chamber around the single axis of rotation;

(v) a single waste opening, located entirely on one side of the track plane in a wall of the chamber and on an opposite side of the track plane as the entry opening; and

(vi) two chamber halves separated by the track plane;

(c) a bonnet, which has a band-like shape and substantially a same contour as a portion of the outside wall of the chamber, extends

over the portion of the chamber so that a front and a rear of the outside wall of the chamber remain uncovered by the bonnet, is attached to the support base on two sides of the chamber, and at least partially covers the track and the single waste opening so that during rotation of the chamber a pinch condition is prevented between the track, the single waste opening, or both and the support base;

wherein during rotation of the chamber, the single axis of rotation funnels clumps, waste, or both towards and then out of the single waste opening.

76.     The Accused Products contain each of the above limitations and Defendants have infringed at least claim 1 of the '185 Patent as detailed in Exhibit 4.  The infringement allegations included in Exhibit 4 are preliminary only and Whisker reserves the right to amend these allegations as the case progresses.

77.     The Accused Products each have a support base, which supports and houses the components of the self-cleaning litter box, as well as a chamber.  Shown below are the support base and chamber of the Accused Products.

| Leo's Loo[18] | Leo's Loo Too[19] |
|---|---|
|  |  |

[18] Smarty Pear, *Leo's Loo Manual*, at 3, https://drive.google.com/file/d/1bFoOMp4LwGYfP1rghYd4nm_sWrJ3q3aV/; Smarty Pear, *Leo's Loo*, *supra* n.4.
[19] *Leo's Loo Too Manual*, *supra* n.12, at 4; Smarty Pear, *Leo's Loo Too*, *supra* n.13.

Cooley LLP
Attorneys at Law

First Amended Complaint
Case No. 5:22-cv-04261-SVK

| Leo's Loo[18] | Leo's Loo Too[19] |
|---|---|
| | |

78.     The chamber of the Accused Products includes an entry opening so that an animal can enter and exit the chamber.  Shown below is the entry opening of the Accused Products.

| Leo's Loo[20] | Leo's Loo Too[21] |
|---|---|



[20] Smarty Pear, *Leo's Loo*, *supra* n.4.
[21] Smarty Pear, *Leo's Loo Too*, *supra* n.13.

COOLEY LLP
ATTORNEYS AT LAW

- 28 -

FIRST AMENDED COMPLAINT
CASE NO. 5:22-CV-04261-SVK

| Leo's Loo[20] | Leo's Loo Too[21] |
|---|---|
|  | |

79.     The chamber of the Accused Products includes a screen and septum within its interior and opposite the entry opening, wherein the screen is affixed to the septum.  Shown below is the screen and septum within the chamber of the Accused Products.

| Leo's Loo[22] | Leo's Loo Too[23] |
|---|---|

---

[22] Smarty Pear, *Leo's Loo—How It Works*, https://cdn.shopify.com/s/files/1/0639/8921/9573/files/Smarty_Pear_Leo_s_Loo_Covered_Automatic_Self-Cleaning_Cat_Litter_Box_How_It_Works_Product_Features_2.mp4?v=1652196618; Smarty Pear, *Leo's Loo, supra* n.4.
[23] Smarty Pear, *Leo's Loo Too Product Video*, https://cdn.shopify.com/s/files/1/0639/8921/9573/files/30s_Product_Video_final_2.mp4?v=1652196618; Smarty Pear, *Say So Long To Scooping Video*, https://cdn.shopify.com/s/files/1/0639/8921/9573/files/smarty-pear.mp4?v=1651821590.

| Leo's Loo[22] | Leo's Loo Too[23] |
|---|---|
|  |  |
|  |  |

80.    The chamber of the Accused Products includes a single axis of rotation that forms an angle of between 80 degrees and about 55 degrees with a vertical plane.  This chamber automatically rotates about its own single axis of rotation during a cleaning cycle.  Upon information and belief, Leo's Loo and Leo's Loo Too have a chamber with an axis of rotation that forms an angle of about 75-80 degrees with the vertical plane.  Shown below is the axis of rotation of the Accused Products.

| Leo's Loo[24] | Leo's Loo Too[25] |
|---|---|
| | |



**81.**     The chamber of the Accused Products includes a track, which encircles an outside wall of the chamber and lies in one plane defining a track plane which forms an angle between about 10 degrees and 35 degrees with the vertical plane, for rotating the chamber around the single axis of rotation.  Shown below is the track of the Accused Products.

| Leo's Loo[26] | Leo's Loo Too[27] |
|---|---|
| | |

---

[24] Smarty Pear, *Leo's Loo*, *supra* n.4.
[25] Smarty Pear, *Leo's Loo Too*, *supra* n.13.
[26] Smarty Pear, *Leo's Loo*, *supra* n.4; *Leo's Loo—How It Works*, *supra* n.22.
[27] Smarty Pear, *Leo's Loo*, *supra* n.4; *Say So Long To Scooping Video*, *supra* n.23.

| Leo's Loo[26] | Leo's Loo Too[27] |
|---|---|



82.     The chamber of the Accused Products includes a single waste opening, located entirely on one side of the track plane in a wall of the chamber and on an opposite side of the track plane as the entry opening.  Shown below is the waste opening in the chamber of the Accused Products.

| Leo's Loo[28] | Leo's Loo Too[29] |
|---|---|

83.     The chamber of the Accused Products includes two chamber halves separated by the track plane.

[28] *Leo's Loo—How It Works*, *supra* n.22.
[29] *Say So Long To Scooping Video*, *supra* n.23.

COOLEY LLP
ATTORNEYS AT LAW

FIRST AMENDED COMPLAINT
CASE NO. 5:22-CV-04261-SVK

**84.** The Accused Products include a bonnet which has a band-like shape and substantially the same contour as a portion of the outside wall of the chamber.

**85.** The bonnet of the Accused Products is attached to the support base on two sides of the chamber.

**86.** The bonnet of the Accused Products at least partially covers the track and the single opening so that during rotation of the chamber a pinch condition is prevented between the track, the single waste opening, or both and the support base.

**87.** The bonnet of the Accused Products extends over the portion of the chamber so that a front and a rear of the outside wall of the chamber remain uncovered by the bonnet.

**88.** Shown below are the chamber halves and bonnet of the Accused Products.

| Leo's Loo[30] | Leo's Loo Too[31] |
|---|---|
|  |  |

---

[30] *Leo's Loo—How It Works*, *supra* n.22.
[31] *Say So Long To Scooping Video*, *supra* n.23; *Leo's Loo Too Manual*, *supra* n.12, at 4.

| Leo's Loo[30] | Leo's Loo Too[31] |
| --- | --- |
| |  |
| |  |

**89.** During rotation of the chamber of the Accused Products, the single axis of rotation funnels clumps, waste, or both towards and then out of the single waste opening.

**90.** Shown below is the operation of the rotating chamber in the Accused Products.

COOLEY LLP
ATTORNEYS AT LAW

**FIRST AMENDED COMPLAINT**
**CASE NO. 5:22-CV-04261-SVK**



| Leo's Loo[32] | Leo's Loo Too[33] |
|---|---|

91.     Defendants have induced and continue to induce others to infringe at least one claim of the '185 Patent under 35 U.S.C. § 271(b) by, among other things, actively aiding and abetting others to infringe with specific intent or willful blindness, such others including, but not limited to, Defendants' partners, clients, customers, and end users, whose use of the Accused Products constitutes direct infringement of at least one claim of the '185 Patent.

92.     In particular, Defendants' actions that aid and abet others, such as its partners, clients, customers, and end users, to infringe include advertising and distributing the Accused

---

[32] *Leo's Loo—How It Works*, *supra* n.22.
[33] *Leo's Loo Too Product Video*, *supra* n.23.

COOLEY LLP
ATTORNEYS AT LAW

**FIRST AMENDED COMPLAINT**
**CASE NO. 5:22-CV-04261-SVK**

Products and providing instruction materials, training, and services regarding the Accused Products.

**93.** Defendants have willfully infringed, and continue to willfully infringe, the '185 Patent. By at least as early as April 14, 2021, when Whisker sent Defendants a cease-and-desist demand letter regarding the '185 Patent, Defendants had actual knowledge of the '185 Patent and knowledge that its activities were infringing the '185 Patent. After receiving actual knowledge of the '185 Patent and of its infringement of the '185 Patent, Defendants willfully continued to make, use, sell, offer for sale, and/or import into the United States infringing products despite knowing that there was a high likelihood of infringement and, in fact, being on notice of such infringement. Additionally, after receiving actual knowledge of the '185 Patent and of its infringement of the '185 Patent, Defendants actively continued promotion of the infringing features in its products.

**94.** Defendants' past and continuing infringement has been deliberate and willful, and this case is therefore an exceptional case, which warrants award of treble damages and attorneys' fees to Whisker pursuant to 35 U.S.C. § 285.

**95.** As a result of Defendants' direct and indirect infringement of the '185 Patent, Whisker has suffered monetary damages and is entitled to no less than a reasonable royalty for Defendants' use of the claimed inventions of the '185 Patent, together with interest and costs determined by the Court. Whisker will continue to suffer damages in the future unless Defendants' infringing activities are enjoined by this Court.

**96.** Whisker will be irreparably harmed unless a permanent injunction is issued enjoining Defendants and Defendants' agents, employees, affiliates, and others acting in concert with Defendants from infringing the '185 Patent.

### Second Cause of Action

#### INFRINGEMENT OF U.S. PATENT NO. 7,647,889

**97.** Whisker realleges and incorporates by reference paragraphs 1 through 72 of this Complaint as if fully set forth herein.

**98.** Defendants have and continue to directly and indirectly infringe one or more claims of claims of the '889 Patent, including at least claim 1 of the '889 Patent, literally and/or under the

COOLEY LLP
ATTORNEYS AT LAW

doctrine of equivalents.  Defendants have and continue to directly and indirectly infringe one or more claims of the '889 Patent, including at least claim 1 of the '889 Patent, literally and/or under the doctrine of equivalents, by or through making, using, selling, importing, offering for sale, and/or providing and causing to be used the Accused Products.  Defendants have acted without authority or license from Whisker, in violation of 35 U.S.C. § 271(a).

**99.**     Independent claim 1 of the '889 Patent recites:

1. An apparatus for receiving and disposing of animal waste comprising:

a) a first unit assembly further comprising:

(i) an unenclosed compartment open from above used to contain litter for the deposit of animal waste material that allows for ingress and egress of an animal from at least one direction;

(ii) a temporary litter storage compartment laterally adjacent to and in communication with the unenclosed compartment;

(iii) a screen located between the unenclosed compartment and the temporary compartment;

b) a second unit assembly further comprising:

(i) a base;

(ii) means within the base for movably and rotatably supporting the first unit assembly above the base;

(iii) means within the base, located below the means for supporting the first unit assembly, for receiving a waste receptacle such that the waste receptacle remains below the first unit assembly during a physical cycle;

(iv) means within the base for allowing communication of waste material from the first unit assembly to a waste receptacle;

c) a waste receptacle; and

d) means for altering the orientation of the first unit assembly relative to the second unit assembly and the vector force of gravity;
whereby alteration of the orientation of the first unit assembly passes litter from the unenclosed compartment to the temporary compartment through the screen, waste material being restrained by the screen and discharged under the force of gravity to the waste receptacle, and wherein reversal of the orientation of the first

unit assembly passes litter from the temporary compartment to the unenclosed compartment.

100.     The Accused Products contain each of the above limitations and Defendants have infringed at least claim 1 of the '889 Patent as detailed in Exhibit 5.  The infringement allegations included in Exhibit 5 are preliminary only and Whisker reserves the right to amend these allegations as the case progresses.

101.     The Accused Products are each an apparatus for receiving and disposing of animal waste.

102.     The Accused Products each have a first unit assembly that includes an unenclosed compartment open from above used to contain litter for the deposit of animal waste material that allows for ingress and egress of an animal from at least one direction.  The compartment for each of the Accused Products is shown below.

COOLEY LLP
ATTORNEYS AT LAW

FIRST AMENDED COMPLAINT
CASE NO. 5:22-CV-04261-SVK

| Leo's Loo[34] | Leo's Loo Too[35] |
|---|---|
|  |  |
|  |  |

**103.** The Accused Products each include a temporary litter storage compartment laterally adjacent to and in communication with the unenclosed compartment. Shown below is the temporary litter storage compartment for each of the Accused Products.

---

[34] *Leo's Loo Manual*, *supra* n.18, at 3; Smarty Pear, *Leo's Loo*, *supra* n.4.
[35] *Leo's Loo Too Manual*, *supra* n.12, at 4; Smarty Pear, *Leo's Loo Too*, *supra* n.13.

FIRST AMENDED COMPLAINT
CASE NO. 5:22-CV-04261-SVK

| Leo's Loo[36] | Leo's Loo Too[37] |
|---|---|



104.    The Accused Products each have a screen located between the unenclosed compartment and the temporary compartment.  Shown below is the screen for each of the Accused Products.

| Leo's Loo[38] | Leo's Loo Too[39] |
|---|---|

105.    The Accused Products each have a second unit assembly further comprising a base. Shown below is the base of each of the Accused Products.

---

[36] *Leo's Loo—How It Works*, *supra* n.22.
[37] *Leo's Loo Too Product Video*, *supra* n.23.
[38] *Leo's Loo – How It Works*, *supra* n.22.
[39] *Leo's Loo Too Product Video*, *supra* n.23.

| Leo's Loo[40] | Leo's Loo Too[41] |
|---|---|
| 1 Rotating Drum<br>2 Sifter<br>3 Silicon Litter Bladder<br>4 Weight Sensors<br>5 Top Cover (Removable)<br>6 Display Panel<br>7 Control Panel<br>8 Machine Base (Non-removable)<br>9 Top Cover Buckle<br>10 Waste Litter Drawer<br>11 Power Connector<br>12 Night Light Cover | **Components**<br>1 Rotating Drum (Removable)   7 POWER Button<br>2 Sifter                        8 Base<br>3 Silicon Litter Bladder        9 Top Cover (Removable)<br>4 Weight Sensors               10 Waste Litter Drawer<br>5 Top Cover (Removable)        11 Power Connector<br>6 Silicone Step (Replaceable)  12 Carbon Filters |

106.    The Accused Products each have means within the base for movably and rotatably supporting the first unit assembly above the base.  Shown below is the means for movably and rotatable supporting the first unit assembly for each of the Accused Products.

| Leo's Loo[42] | Leo's Loo Too[43] |
|---|---|



107.    The Accused Products each have means within the base, located below the means for supporting the first unit assembly, for receiving a waste receptacle such that the waste receptacle remains below the first unit assembly during a physical cycle.  Shown below annotated in red is the means for receiving the waste receptacle.

---

[40] *Leo's Loo Manual*, *supra* n.18, at 3.
[41] *Leo's Loo Too Manual*, *supra* n.12, at 4.
[42] Photographs of Leo's Loo product.
[43] Clair Chesterman, *Leo's Loo Too Cat Litter Box Review: Is It Too Good To Be True?* TechnoMeow (July 9, 2022), https://technomeow.com/leos-loo-too-review/.

| Leo's Loo[44] | Leo's Loo Too[45] |
|---|---|
|  |  |
| **1** Rotating Drum<br>**2** Sifter<br>**3** Silicon Litter Bladder<br>**4** Weight Sensors<br>**5** Top Cover (Removable)<br>**6** Display Panel<br>**7** Control Panel<br>**8** Machine Base (Non-removable)<br>**9** Top Cover Buckle<br>**10** Waste Litter Drawer<br>**11** Power Connector<br>**12** Night Light Cover | **1** Rotating Drum (Removable)  **7** POWER Button<br>**2** Sifter  **8** Base<br>**3** Silicon Litter Bladder  **9** Top Cover (Removable)<br>**4** Weight Sensors  **10** Waste Litter Drawer<br>**5** Top Cover (Removable)  **11** Power Connector<br>**6** Silicone Step (Replaceable)  **12** Carbon Filters |
|  |  |

108.    The Accused Products each have means within the base for allowing communication of waste material from the first unit assembly to a waste receptacle.  Shown below annotated in red is the means for allowing communication of waste material.

---
[44] *Leo's Loo Manual*, *supra* n.18, at 3; Smarty Pear, *Leo's Loo*, *supra* n.4.
[45] *Leo's Loo Too Manual*, *supra* n.12, at 4; Smarty Pear, *Leo's Loo Too*, *supra* n.13.

| Leo's Loo[46] | Leo's Loo Too[47] |
|---|---|
|  |  |

109.    The Accused Products each have a waste receptacle.  Shown above is the waste receptacle for each of the Accused Products.

110.    The Accused Products each have means for altering the orientation of the first unit assembly relative to the second unit assembly and the vector force of gravity; whereby alteration of the orientation of the first unit assembly passes litter from the unenclosed compartment to the temporary compartment through the screen, waste material being restrained by the screen and discharged under the force of gravity to the waste receptacle, and wherein reversal of the orientation of the first unit assembly passes litter from the temporary compartment to the unenclosed compartment.[48],[49]

111.    Defendants have induced and continue to induce others to infringe at least one claim of the '889 Patent under 35 U.S.C. § 271(b) by, among other things, actively aiding and abetting others to infringe with specific intent or willful blindness, such others including, but not limited to, Defendants' partners, clients, customers, and end users, whose use of the Accused Products constitutes direct infringement of at least one claim of the '889 Patent.

---

[46] *Leo's Loo – How It Works*, *supra* n.22.
[47] *Say So Long To Scooping Video*, *supra* n.23.
[48] *Leo's Loo – How It Works*, *supra* n.22.
[49] *Say So Long To Scooping Video*, *supra* n.23.

112.    In particular, Defendants' actions that aid and abet others, such as its partners, clients, customers, and end users, to infringe include advertising and distributing the Accused Products and providing instruction materials, training, and services regarding the Accused Products.

113.    As a result of Defendants' direct and indirect infringement of the '889 Patent, Whisker has suffered monetary damages and is entitled to no less than a reasonable royalty for Defendants' use of the claimed inventions of the '889 Patent, together with interest and costs determined by the Court.  Whisker will continue to suffer damages in the future unless Defendants' infringing activities are enjoined by this Court.

114.    Whisker will be irreparably harmed unless a permanent injunction is issued enjoining Defendants and Defendants' agents, employees, affiliates, and others acting in concert with Defendants from infringing the '889 Patent.

### Third Cause of Action

### INFRINGEMENT OF U.S. PATENT NO. 11,399,502

115.    Whisker realleges and incorporates by reference paragraphs 1 through 72 of this Complaint as if fully set forth herein.

116.    Defendants have and continue to directly and indirectly infringe one or more claims of claims of the '502 Patent, including at least claim 1 of the '502 Patent, literally and/or under the doctrine of equivalents.  Defendants have and continue to directly and indirectly infringe one or more claims of the '502 Patent, including at least claim 1 of the '502 Patent, literally and/or under the doctrine of equivalents, by or through making, using, selling, importing, offering for sale, and/or providing and causing to be used Leo's Loo Too.  Defendants have acted without authority or license from Whisker, in violation of 35 U.S.C. § 271(a).

117.    Independent claim 1 of the '502 Patent recites:

1.  A device which is an automated litter device comprising:

a) a chamber configured to hold litter to allow an animal to enter and excrete a waste;

b) a waste drawer in communication with the chamber and configured to receive the waste;

c) one or more sensors configured to detect one or more conditions of the device and transmit one or more signals related to the one or more conditions;

d) a controller in communication with the one or more sensors and is adapted to receive the one or more signals, wherein the controller is configured to determine one or more positions of the chamber based on the one or more signals received from the one or more sensors and interpret the one or more signals as one or more status signals;

e) a communication module in communication with the controller and adapted to communicate with a user interface via a network to transmit the one or more status signals to the user interface, receive one or more instruction signals via the user interface, or both;

wherein the communication module is a wireless communication module and is in wireless communication with the user interface via the network; and

wherein the user interface is adapted to transmit the one or more instruction signals wirelessly to the controller via the network to change at least one of the one or more conditions of the device.

118.    The Accused Products contain each of the above limitations and Defendants have infringed at least claim 1 of the '502 Patent as detailed in Exhibit 8.  The infringement allegations included in Exhibit 8 are preliminary only and Whisker reserves the right to amend these allegations as the case progresses.

119.    Leo's Loo Too is an automated litter device.

120.    Leo's Loo Too has a chamber configured to hold litter to allow an animal to enter and excrete a waste.  Shown below is the chamber in Leo's Loo Too.



**121.**    Leo's Loo Too has a waste drawer in communication with the chamber and configured to receive the waste.  Shown below is the waste drawer in Leo's Loo Too.

---

[50] *Leo's Loo Too*, *supra* n.13; *Leo's Loo Too Manual*, at 6, *supra* n.12.

| Leo's Loo Too[51] |
|---|
|  |

122.    Leo's Loo Too has one or more sensors configured to detect one or more conditions of the device and transmit one or more signals related to the one or more conditions.

123.    Leo's Loo Too has a controller in communication with one or more sensors and is adapted to receive the one or more signals.

124.    The controller of Leo's Loo Too is configured to determine one or more positions of the chamber based on the one or more signals received from the one or more sensors and interpret the one or more signal as one or more status signals.

125.    Shown below are sensors and the controller of Leo's Loo Too.

---

[51] *Leo's Loo Too*, *supra* n.13.

COOLEY LLP
ATTORNEYS AT LAW

**FIRST AMENDED COMPLAINT**
**CASE NO. 5:22-CV-04261-SVK**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

| Leo's Loo Too[52] |
|---|

 



[52] Photographs of Leo's Loo Too product; *Leo's Loo Too Manual*, *supra* n.12, at 5; *Leo's Loo Too*, *supra* n.13.

COOLEY LLP
ATTORNEYS AT LAW

**FIRST AMENDED COMPLAINT**
**CASE NO. 5:22-CV-04261-SVK**

| Leo's Loo Too[52] |
|---|



**② Triple Safety Protection**

**RADAR WALL**

Our state of the art radar system forms an invisible wall around your Loo. When it detects your kitty nearby, it stops the Loo from rotating, ensuring your kitty can always enter safely.

**WEIGHT SENSORS**

Four weight sensors located at the bottom of your Loo detect when your kitty enters and exits the drum. The Loo will only initiate a cleaning cycle when the weight sensors indicate the drum is empty.

**ANTI-PINCH SENSOR**

An anti-pinch sensor located at the top of the waste drawer detects when foreign objects enter the waste chute. When foreign objects are detected, your Loo will stop immediately and reverse rotation.

**Triple Layer Protection to Keep Kitty Safe**

Protect kitty with three layers of advanced safety technology that stop moving parts whenever kitty is detected:

A state of the art Radar System that forms a protective wall

Four Weight Sensors that detect when kitty is inside the drum

An aerospace-grade Anti-Pinch Sensor at the top of the waste drawer

**126.** Leo's Loo Too has a communication module in communication with the controller and adapted to communicate with a user interface via a network to transmit the one or more status signals to the user interface, receive one or more instruction signals via the user interface, or both.

**127.** The communication module of Leo's Loo Too is a wireless communication module and is in wireless communication with the user interface via the network.

128.    The user interface of Leo's Loo Too is adapted to transmit the one or more instruction signals wirelessly to the controller via the network to change at least one of the one or more conditions of the device.

129.    Shown below are the communication module in wireless communication with the user interface in Leo's Loo Too.



130.    Defendants have induced and continue to induce others to infringe at least one claim of the '502 Patent under 35 U.S.C. § 271(b) by, among other things, actively aiding and abetting others to infringe with specific intent or willful blindness, such others including, but not limited to,

---

[53] *Leo's Loo Too Manual*, *supra* n.12, at 2, 10; *Leo's Loo Too*, *supra* n.13.

Defendants' partners, clients, customers, and end users, whose use of the Leo's Loo Too constitutes direct infringement of at least one claim of the '502 Patent.

131.    In particular, Defendants' actions that aid and abet others, such as its partners, clients, customers, and end users, to infringe include advertising and distributing Leo's Loo Too and providing instruction materials, training, and services regarding Leo's Loo Too.

132.    As a result of Defendants' direct and indirect infringement of the '502 Patent, Whisker has suffered monetary damages and is entitled to no less than a reasonable royalty for Defendants' use of the claimed inventions of the '502 Patent, together with interest and costs determined by the Court.  Whisker will continue to suffer damages in the future unless Defendants' infringing activities are enjoined by this Court.

133.    Whisker will be irreparably harmed unless a permanent injunction is issued enjoining Defendants and Defendants' agents, employees, affiliates, and others acting in concert with Defendants from infringing the '502 Patent.

### Fourth Cause of Action

**INFRINGEMENT OF A REGISTERED TRADEMARK (LANHAM ACT § 32, 15 U.S.C. § 1114)**

134.    Whisker realleges and incorporates by reference paragraphs 1 through 72 of this Complaint as if fully set forth herein.

135.    Whisker owns U.S. Trademark Registration Nos. 4,674,124; 4,674,125; 5,259,515; 6,227,960; 6,570,005; 6,668,860; 6,734,934; 6,734,935; and 6,799,211 for the trademark LITTER-ROBOT and variations (the "Litter-Robot Marks").

136.    Whisker is presently using the Litter-Robot Marks in commerce in the United States in connection with the sale, offering for sale, distribution, and advertising of automated litter boxes.

137.    Whisker has not consented to Smarty Pear and Madeiras's use of the Litter-Robot Marks.

138.    Smarty Pear and Madeiras's use of the Litter-Robot Marks is likely to cause confusion, mistake, and deception by creating the false and misleading impression that Whisker has sponsored, endorsed, or approved Smarty Pear's social media posts touting the Leo's Loo and Leo's Loo Too.

139.    It is not necessary for Smarty Pear and Madeiras to use the Litter-Robot Marks to identify its products in any of its posts.  The vast majority of Smarty Pear's posts promoting the Leo's Loo and Leo's Loo Too products made no comparison to any other products.

140.    The above-described acts and practices constitute trademark infringement of the Litter-Robot Marks in violation of Section 32 of the Lanham Act (15 U.S.C. § 1114).

141.    On information and belief, Smarty Pear and Madeiras's conduct was undertaken willfully.  Smarty Pear and Madeiras have refused to cease their infringing conduct following notice from Whisker, and thus Smarty Pear and Madeiras's continued infringement is therefore willful.

142.    Whisker has been and will continue to be injured by Smarty Pear and Madeiras's conduct.  This injury includes direct diversion of sales from Whisker to Smarty Pear, injury to Whisker's reputation, and loss of goodwill associated with Whisker's marks, brands, and products.

143.    Unless Smarty Pear and Madeiras's infringing conduct is enjoined by this Court, the consuming public will continue to be confused and Whisker will suffer a loss of sales and goodwill, causing irreparable injury.

144.    Whisker has no adequate remedy at law and is therefore entitled to injunctive relief pursuant to 15 U.S.C. § 1116.

145.    Pursuant to 15 U.S.C. § 1117(a), Whisker is also entitled to recover (i) Smarty Pear and Madeiras's profits, (ii) Whisker's ascertainable damages, and (iii) Whisker's costs of suit. Moreover, Smarty Pear and Madeiras's willful infringement renders this an exceptional case entitling Whisker to reasonable attorney fees.

### Fifth Cause of Action

### UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN (LANHAM ACT § 43(A)(1)(A), 15 U.S.C. § 1125(A)(1)(A))

146.    Whisker realleges and incorporates by reference paragraphs 1 through 72 of this Complaint as if fully set forth herein.

147.    Smarty Pear and Madeiras have used the Litter-Robot Marks in commerce and without Whisker's authorization or consent.

**148.**     Smarty Pear and Madeiras's use of the Litter-Robot Marks is likely to cause confusion, mistake, and deception by creating the false and misleading impression that Whisker has sponsored, endorsed, or approved Smarty Pear's social media posts touting the Leo's Loo and Leo's Loo Too.

**149.**     Smarty Pear and Madeiras's use of the Litter-Robot Marks creates a false suggestion of an affiliation or connection between Defendants and Whisker.

**150.**     Smarty Pear and Madeiras's actions constitute unfair competition and false designation of origin in violation of 15 U.S.C. § 1125(a).

**151.**     On information and belief, Smarty Pear and Madeiras's conduct was undertaken willfully.  Smarty Pear and Madeiras have refused to cease their infringing conduct following notice from Whisker, and thus Smarty Pear and Madeiras's continued infringement is therefore willful.

**152.**     Whisker has been and will continue to be injured by Smarty Pear and Madeiras's conduct.  This injury includes direct diversion of sales from Whisker to Smarty Pear, injury to Whisker's reputation, and loss of goodwill associated with Whisker's marks, brands, and products.

**153.**     Unless Smarty Pear and Madeiras's infringing conduct is enjoined by this Court, the consuming public will continue to be confused and Whisker will suffer a loss of sales and goodwill, causing irreparable injury.

**154.**     Whisker has no adequate remedy at law and is therefore entitled to injunctive relief pursuant to 15 U.S.C. § 1116.

**155.**     Pursuant to 15 U.S.C. § 1117(a), Whisker is also entitled to recover (i) Smarty Pear and Madeiras's profits, (ii) Whisker's ascertainable damages, and (iii) Whisker's costs of suit. Moreover, Smarty Pear and Madeiras's willful infringement renders this an exceptional case entitling Whisker to reasonable attorney fees.

**Sixth Cause of Action**

**FALSE ADVERTISING (LANHAM ACT § 43(A)(1)(B), 15 U.S.C. § 1125(A)(1)(B))**

156.    Whisker realleges and incorporates by reference paragraphs 1 through 72 of this Complaint as if fully set forth herein.

157.    Smarty Pear and Madeiras are making false, misleading, and deceptive representations of fact in their promotion and sale of the Leo's Loo and Leo's Loo Too products.

158.    Smarty Pear and Madeiras's statements misrepresent the nature, characteristics, and qualities of Smarty Pear and its products, and are material to consumer purchasing decisions.

159.    The above-described acts and practices constitute false advertising in violation of Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)).

160.    Whisker has standing to sue Smarty Pear and Madeiras for false advertising under the Lanham Act.  Whisker and Smarty Pear are direct competitors selling self-cleaning litter boxes to the same consumers.  Whisker has been and will continue to be injured by Smarty Pear and Madeiras's conduct.  This injury includes direct diversion of sales from Whisker to Smarty Pear, injury to Whisker's reputation, and loss of goodwill associated with Whisker's marks, brands, and products.  Whisker's injury is proximately caused by Smarty Pear and Madeiras's false and misleading statements.

161.    On information and belief, Smarty Pear and Madeiras's conduct was undertaken willfully.  Smarty Pear and Madeiras have refused to cease their infringing conduct following notice from Whisker, and thus Smarty Pear and Madeiras's continued conduct is therefore willful.

162.    Unless Smarty Pear and Madeiras's infringing conduct is enjoined by this Court, the consuming public will continue to be confused and Whisker will suffer a loss of sales and goodwill, causing irreparable injury.

163.    Whisker has no adequate remedy at law and is therefore entitled to injunctive relief pursuant to 15 U.S.C. § 1116.

164.    Pursuant to 15 U.S.C. § 1117(a), Whisker is also entitled to recover (i) Smarty Pear and Madeiras's profits, (ii) Whisker's ascertainable damages, and (iii) Whisker's costs of suit.

Moreover, Smarty Pear and Madeiras's willful infringement renders this an exceptional case entitling Whisker to reasonable attorney fees.

### Seventh Cause of Action

**VIOLATION OF FALSE ADVERTISING LAW (CAL. BUS. & PROF. CODE § 17500 *ET SEQ.*)**

165.    Whisker realleges and incorporates by reference paragraphs 1 through 72 of this Complaint as if fully set forth herein.

166.    Smarty Pear and Madeiras are making untrue or misleading statements in their promotion and sale of the Leo's Loo and Leo's Loo Too products.

167.    Smarty Pear and Madeiras's statements misrepresent the nature, characteristics, and qualities of Smarty Pear and its products, and are material to consumer purchasing decisions.

168.    Smarty Pear and Madeiras knew or should have known through the exercise of reasonable care that the statements were untrue or misleading.  As such, Smarty Pear and Madeiras have violated the California False Advertising Law (Cal. Bus. & Prof. Code § 17500).

169.    Whisker has suffered an injury in fact, including the loss of money or property, as a result of Smarty Pear and Madeiras's unfair, unlawful, and/or deceptive practices.  Consumers relied on the representations in Smarty Pear and Madeiras's untrue or misleading statements as described herein, which in turn resulted in damage to Whisker.  Had Smarty Pear and Madeiras not made such statements, consumers would have altered their purchasing behavior.

170.    All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Smarty Pear and Madeiras's business.

171.    Whisker requests that this Court enter such orders or judgments as may be necessary to enjoin Smarty Pear and Madeiras from continuing their unfair, unlawful, and/or deceptive practices and to restore Whisker any money Smarty Pear and Madeiras acquired by unfair competition, including restitution and/or disgorgement, and for other relief set forth below.

172.    Whisker is also entitled to attorneys' fees pursuant to California Code of Civil Procedure § 1021.5.

**Eighth Cause of Action**

**VIOLATION OF UNFAIR COMPETITION LAW (CAL. BUS. & PROF. CODE § 17200 *ET SEQ.*)**

173.    Whisker realleges and incorporates by reference paragraphs 1 through 72 of this Complaint as if fully set forth herein.

174.    By the acts described herein, Smarty Pear and Madeiras have engaged in unlawful and unfair business practices that have injured and will continue to injure Whisker's business and property in violation of the California Unfair Competition Law (Cal. Bus. & Prof. Code § 17200 *et seq.*

175.    Smarty Pear and Madeiras's acts alleged herein are unlawful as they violate the Patent Act, the Lanham Act, and the California False Advertising Law.

176.    Smarty Pear and Madeiras's acts alleged herein are unfair as Defendants have made advertising that is false or has a tendency to deceive or confuse the public.

177.    Smarty Pear and Madeiras's acts alleged herein have caused monetary damages to Whisker in an amount to be proven at trial.

178.    Whisker has been and will continue to be injured by Smarty Pear and Madeiras's conduct.  This injury includes direct diversion of sales from Whisker to Smarty Pear, injury to Whisker's reputation, and loss of goodwill associated with Whisker's marks, brands, and products.

179.    Unless Smarty Pear and Madeiras's infringing conduct is enjoined by this Court, the consuming public will continue to be confused and Whisker will suffer a loss of sales and goodwill, causing irreparable injury.  Whisker has no adequate remedy at law and is therefore entitled to injunctive relief.

**Ninth Cause of Action**

**UNFAIR COMPETITION UNDER CALIFORNIA COMMON LAW**

180.    Whisker realleges and incorporates by reference paragraphs 1 through 72 of this Complaint as if fully set forth herein.

181.    Smarty Pear and Madeiras, to induce the public to purchase its products, have disseminated untrue and misleading statements about its own products, and falsely claimed an association between Defendants and Whisker.

**182.** Smarty Pear and Madeiras knew or should have known by the exercise or reasonable care that its advertising and promotions were untrue and misleading.

**183.** Whisker has been and is likely to be injured as a result of Smarty Pear and Madeiras's conduct.

**184.** Unless Smarty Pear and Madeiras's infringing conduct is enjoined by this Court, the consuming public will continue to be confused and Whisker will suffer a loss of sales and goodwill, causing irreparable injury. Whisker has no adequate remedy at law and is therefore entitled to injunctive relief.

**Tenth Cause of Action**

**TRADEMARK INFRINGEMENT UNDER CALIFORNIA COMMON LAW**

**185.** Whisker realleges and incorporates by reference paragraphs 1 through 72 of this Complaint as if fully set forth herein.

**186.** As a result of its use of the Litter-Robot Marks in rendering its services in California, Whisker owns California common law rights in the Litter-Robot Marks from at least as early as 2000.

**187.** The acts and conduct of Smarty Pear and Madeiras as alleged in this Complaint, and in particular the use of the infringing marks, constitute trademark infringement under California common law.

**188.** Smarty Pear and Madeiras's acts alleged herein have caused monetary damages to Whisker in an amount to be proven at trial.

**189.** Whisker has been and will continue to be injured by Smarty Pear and Madeiras's conduct. This injury includes direct diversion of sales from Whisker to Smarty Pear, injury to Whisker's reputation, and loss of goodwill associated with Whisker's marks, brands, and products.

**190.** Unless Smarty Pear and Madeiras's infringing conduct is enjoined by this Court, the consuming public will continue to be confused and Whisker will suffer a loss of sales and goodwill, causing irreparable injury. Whisker has no adequate remedy at law and is therefore entitled to injunctive relief.

**PRAYER FOR RELIEF**

Whisker respectfully requests that the Court:

A.      Issue a permanent injunction enjoining Smarty Pear and all of its respective officers (including Madeiras), agents, representatives, employees, parent and subsidiary corporations, assigns and successors in interest, and all other persons acting in concert with it from (i) using the Litter-Robot Marks and trade names, or any other mark or name confusingly similar to the Litter-Robot Marks, in connection with the marketing promotion, advertising, sale, or distribution of any products and services; (ii) directly or indirectly using in commerce or causing to be published or otherwise disseminated any promotional or advertising materials containing any false or misleading statements about Smarty Pear or its products; and (iii) further infringement of the Patents-In-Suit.

B.      Award to Whisker:

      i.      Defendants' profits, gains, and advantages derived from Defendants' unlawful conduct;

      ii.      all damages sustained by Whisker as a result of Defendants' unlawful conduct, including the cost of corrective advertising;

      iii.      trebled damages under 15 U.S.C. § 1117;

      iv.      attorneys' fees and costs under 15 U.S.C. § 1117;

      v.      exemplary and punitive damages as the Court finds appropriate to punish Defendants' misconduct and deter and future willful conduct;

      vi.      pre-judgment and post-judgment interest;

C.      Enter such other and further relief as the Court may deem just and equitable.

Dated: September 22, 2022

COOLEY LLP

By: */s/ Bobby Ghajar*

Bobby Ghajar
Erik Milch
Ari Lipsitz
Allison Elkman

*Attorneys for Plaintiff*
Automated Pet Care Products, LLC d/b/a
Whisker

*[Full Counsel List]*

ARI LIPSITZ *[Pro hac vice forthcoming]*
(alipsitz@cooley.com)
55 Hudson Yards
New York, NY 10001
Telephone:     (212) 479-6692
Facsimile:     (212) 479-6275

ALLISON ELKMAN *[Pro hac vice forthcoming]*
(aelkman@cooley.com)
1299 Pennsylvania Avenue, NW, Suite 700
Washington, DC 20004
Telephone:     (202) 776-2196
Facsimile:     (202) 842-7899

Attorneys for Plaintiff
Automated Pet Care Products, LLC d/b/a Whisker