1   COOLEY LLP
    BOBBY GHAJAR (198719)
2   (bghajar@cooley.com)
    1333 2nd Street, Suite 400
3   Santa Monica, CA 90401
    Telephone:    (310) 883-6400
4   Facsimile:    (310) 883-6500

5   ERIK MILCH *[admitted pro hac vice]*
    (emilch@cooley.com)
6   11951 Freedom Drive, 14th Floor
    Reston, VA 20190
7   Telephone:    (703) 456-8573
    Facsimile:    (703) 456-8100

8   *[Additional Counsel on Following Page]*

9   Attorneys for Plaintiff
    Automated Pet Care Products, LLC d/b/a Whisker
10

11              UNITED STATES DISTRICT COURT

12            NORTHERN DISTRICT OF CALIFORNIA

13                  SAN JOSE DIVISION

14

15  Automated Pet Care Products, LLC d/b/a     Case No. 3:22-cv-04261-VC
    Whisker, a Michigan corporation,
16                                             **JOINT INITIAL CASE MANAGEMENT
                   Plaintiff,                  STATEMENT**
17
           v.                                  Case Management Conference
18                                             Date:   March 1, 2023
    PurLife Brands, Inc. d/b/a Smarty Pear, a  Time:   10:00am
19  Delaware corporation, and Chris Madeiras, an  Judge:  Hon. Vince Chhabria
    individual,
20
                   Defendants.
21

22

23

24

25

26

27

28

ARI LIPSITZ *[admitted pro hac vice]*
(alipsitz@cooley.com)
55 Hudson Yards
New York, NY 10001
Telephone:     (212) 479-6692
Facsimile:     (212) 479-6275

ALLISON ELKMAN *[admitted pro hac vice]*
(aelkman@cooley.com)
1299 Pennsylvania Avenue, NW, Suite 700
Washington, DC 20004
Telephone:     (202) 776-2196
Facsimile:     (202) 842-7899

Attorneys for Plaintiff

Automated Pet Care Products, LLC d/b/a Whisker

Plaintiff Automated Pet Care Products, LLC d/b/a Whisker ("Plaintiff" or "Whisker"), and PurLife Brands, Inc. d/b/a Smarty Pear ("Smarty Pear"), and Chris Madeiras (collectively "Defendants") (together, with Plaintiff, the "Parties"), jointly submit this Initial Joint Case Management Statement and Proposed Order pursuant to the Standing Order for All Judges of the Northern District of California, Civil Local Rule 16-9, and the Clerk's Notice Rescheduling the Initial Case Management Conference entered on January 23, 2023 (Dkt. 46).

## 1.    Jurisdiction and Service

The Court has subject matter jurisdiction over this action for patent infringement, trademark infringement, unfair competition, and false advertising under federal and state law pursuant to 28 U.S.C. §§ 1331, 1338(a), 1367, and 35 U.S.C. § 1121.  Jurisdiction is also proper under 28 U.S.C. § 1332 as there is complete diversity and the amount in controversy exceeds $75,000.  No issues exist regarding personal jurisdiction or venue, as Defendants are both residents of this District.  All Parties have been served.  The Parties do not object to the Court's jurisdiction over this matter.

## 2.    Facts

**Plaintiff's Position[1]:**

Plaintiff is a pioneer in the field of automated self-cleaning litter boxes, which it manufactures and sells under the brand name Litter-Robot®.  Before Whisker's Litter-Robot product line, litter boxes required manual scooping or sifting.  Whisker's Litter-Robot products harness rotation and gravity to separate waste from clean litter, disperse it into a fully-enclosed waste drawer, and then produce a clean bed of litter for the next use.  Whisker's innovative design enables pet owners to avoid physically interacting with waste, reduces odor, and conserves cat litter. Whisker's newer Litter-Robot models also collect data on pet usage and communicate it to pet owners via an integrated app.

---

[1] Plaintiff provides a brief chronology of facts and statement of the principal factual issues in dispute.  Defendants' section includes over 6 pages of argument copied from their Motion to Dismiss, thus unnecessarily lengthening the Joint Initial Case Management Statement.  And although Defendants allude to other claims or defenses below, they neglected to outline such claims or defenses as required by the Rules, and instead repeat arguments made in their Motion to Dismiss.

Over the years, Whisker's models have become wildly successful. Whisker's Litter-Robot® 3 product is the best-reviewed self-cleaning litter box on Amazon. Whisker's newest model, Litter-Robot® 4, received rave reviews from publications like CNN, Good Housekeeping, and The Daily Beast. Overall, Plaintiff has sold over 700,000 Litter-Robot devices, all of which are designed, assembled, and serviced in the United States.

Whisker protects its innovative products with numerous patents. At issue in this case are three patents (collectively, the "Patents-In-Suit"): U.S. Patent No. 9,433,185 ("the '185 Patent") which captures innovations primarily focuses on the tilted axis of rotation; U.S. Patent No. 7,647,889 ("the '889 Patent") which covers other features of an automated litter box; and U.S. Patent No. 11,399,502 ("the '502 Patent") which focuses on the sensor integrations and remote monitoring capabilities. The Accused Products are Defendants' Leo's Loo and Leo's Loo Too devices. Whisker seeks a judgment against Defendants, an injunction, damages, pre-judgment and post-judgment interest, attorneys' fees and costs, and further relief as the Court deems proper.

The Liter-Robot® brand is a powerful source identifier, with strong recognition built up over two decades of use, promotion, and sales success. Plaintiff has built strong trademark rights in LITTER-ROBOT word and design marks (the "Litter-Robot Marks").

Plaintiff's common law rights arise from its decades of consistent and notorious use of the Litter-Robot Marks, millions of dollars in advertising, unsolicited press, commercial impressions, and incredible sales. The purchasing public identifies the Litter-Robot Marks with Plaintiff and its products. Bolstering its common law rights, Plaintiff owns numerous federal trademark registrations, including but not limited to registrations for the word mark LITTER-ROBOT (Reg. No. 5,259,515), the **litter·robot** stylized mark (Reg. No. 6,227,960), and the word mark LITTER-ROBOT PINCH DETECT (Reg. No. 6,560,007), all of which were afforded a Section 2(f) claim of acquired distinctiveness by the USPTO and registered without disclaimer of any terms.

In or around April 2021, Defendants (Smarty Pear and its founder and CEO Chris Madeiras) began to offer a competing automated litter box sold as "Leo's Loo." A successor, "Leo's Loo Too," followed in October 2021. Defendants purposely positioned these products as direct competitors to the Litter-Robot® products. Although Defendants represented to the public that

they created and designed the products, in fact Defendants merely purchased, imported, and rebranded preexisting copycat products available on Chinese e-commerce sites such as Alibaba. Defendants' products have identical dimensions, specifications, and features to those products. The products contain the features covered by the Patents-In-Suit, including a tilted axis, a rotating chamber leading to a waste receptacle, and a sensor configuration.

Defendants promoted their products by directly targeting consumers of Litter-Robot products. For example, starting in October 2021, Defendants began a campaign of uploading social media posts on the Smarty Pear Instagram and TikTok accounts containing the hashtags "litterrobot," "LitterRobot," and "litterrobot3." Obviously, Defendants used these as references to Plaintiff's brand and products, and to draw traffic and interest in its products. It appears Defendants deleted some, but not all, of these infringing uses. These posts were intended to capitalize on Plaintiff's goodwill by infringing the Litter-Robot Marks.

Defendants did not stop there. In addition to falsely asserting that they were the designers and creators of Leo's Loo and Leo's Loo Too, Defendants made – and continue to make – false and misleading statements meant to induce customers to purchase their products. The Complaint highlights a number of these statements, each which represent examples of Defendants' false and misleading advertising. These statements include claims that Leo's Loo Too contains an ultraviolet sanitization feature that is "99% effective at eliminating bacteria, parasites, and viruses." This statement is repeated by customers – indicating it was a driver in purchasing interest – and resellers alike. But this statement is false and misleading, given that UV rays cannot penetrate cat litter and Defendants' products do not eliminate 99% of bacteria, parasites, and viruses in its cat litter box. Defendants also advertised that their Leo's Loo Too was the "first" to contain certain features like voice controls and an app connection (and thereby is the "smartest self-cleaning litter box"), as well as statements implying that "over half a million cats and their owners" have purchased Defendants' products. These, too, are false and misleading, and consumers have relied on these false statements to purchase Defendants' products, thereby harming Whisker and the public.

**Defendants' Position[2]:** Rather than competing with a disruptive new market entrant on technology, design, and price, Whisker has employed the legal equivalent of throwing "claims" against the wall in the hope that something will stick. But none do. Whisker's patents are so weak that it fails to plead infringement of key elements of each asserted independent claim. Whisker's trademark claims boil down to an assertion that Smarty Pear is prohibited from using descriptive words – "Litter Robot" and "#litterrobot" – that Whisker has repeatedly and recently disclaimed at the Trademark Office. And the false advertising claims are based on strained interpretations of standard-issue "puffery" and absurd attempts to demonstrate falsity, such as comparing the waste compartment of a litter box to the removal of the COVID-19 virus from a home or office.

Patent Claims

**US 9,433,185**

Whisker's Complaint and exhibits conclusively demonstrate that the accused products do not include a "bonnet" as claimed. Specifically, the claimed "bonnet . . . extends over the portion of the chamber so that a . . . rear of the outside wall of the chamber remain[s] uncovered by the bonnet[.]" Ex. 1 at 29:58-62. The rear of the outside wall of the purported chamber is in fact entirely covered by the purported bonnet, as is conclusively demonstrated by a plethora of images of the assembled Smarty Pear products depicted throughout Whisker's Complaint and claim chart. See Dkt. 25 at ¶¶34, 45, 52, 73, 80, 84, 98, 100, 103 (similar); Ex. 4 at pp. 1, 2, 3, 4, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 21, 23, 24 (similar). In view of these images, it is not plausible to allege that the "rear of the outside wall of the chamber remain[s] uncovered by the bonnet" as required for claim 1.

**US 7,647,889**

Claim 1 requires "means for altering the orientation of the first unit assembly relative to the second unit assembly and the vector force of gravity, whereby alteration of the orientation of the

---

[2] As Defendants detailed in briefing on their motion to dismiss, Plaintiff has filed numerous facially implausible claims in hopes of burdening Smarty Pear's business through the cost and distraction of litigation. Defendants have summarized facts stated in their Motion to Dismiss because those are the facts that are presently relevant to this matter. Until Plaintiff has pleaded a plausible claim from relief, Defendants are not under an obligation to preemptively outline additional facts that may be relevant to its potential defenses or counterclaims.

first unit assembly passes litter from the unenclosed compartment to the temporary compartment through the screen, . . . and wherein reversal of the orientation of the first unit assembly passes litter from the temporary compartment to the compartment." Ex. 2 at 13:13-15, 13:19-21 (emphasis added).

Whisker's Complaint makes no attempt to show that these claim elements are infringed by the accused products, instead merely reciting the claim language and citing, without elaboration, to three videos of Smarty Pear products. Dkt. 25 at ¶110. The attached claim chart is similarly devoid of elaboration as to the "alteration of orientation" and "reversal of orientation" that respectively pass litter between the "unenclosed compartment" and "temporary compartment", instead repeating the claim language verbatim and including annotations addressing only another claim limitation. See Ex. 5 at pp. 14-15 (including green annotations purporting to show "waste material being restrained by the screen and discharged under the force of gravity").

The images and videos cited in the Amended Complaint and claim chart conclusively demonstrate that there is no reversal for the filtration cycle, and thus no plausible infringement. See, e.g., Dkt. 25 at ¶110 (showing a single counterclockwise rotation for filtration cycle); Ex. 5 at p. 15 (same); Dkt. 25 at ¶110, fn. 48-49 (referring to videos in fn. 22 and 236,which show a single counterclockwise rotation).

**US 11,399,502**

Claim 1 of the '502 Patent requires "one or more sensors configured to detect one or more conditions of the device and transmit one or more signals related to the one or more conditions" and "a controller in communication with the one or more sensors and is adapted to receive the one or more signals, wherein the controller is configured to determine one or more positions of the chamber based on the one or more signals received from the one or more sensors and interpret the one or more signals as one or more status signals." Ex. 3 at 36:53-62 (emphasis added).

For this claim element, Whisker's Amended Complaint rotely recites the language of Claim 1 alongside pictures of two sensors and a circuit board inside the Leo's Loo Too device. Dkt. 25 at ¶¶122-125. The claim chart merely recites the claim language above an image from the Smarty Pear user manual referencing a "Safety Mode" entered in response to a detection by the "anti-pinch

sensor" and a picture of a circuit board contained inside the accused device. Ex. 8 at pp. 12-13.

The images in Whisker's Amended Complaint and claim chart fail to provide any proof that the accused products have a "controller… configured to determine one or more positions of the chamber based on the one or more signals received from the one or more sensors" as required by Claim 1. Nor do they even attempt to explain how the identified sensors of the accused devices – a radar sensor, an anti-pinch sensor, or a weight sensor – could be used by a controller to "determine one or more positions of the chamber."7

Trademark Claims

Whisker alleges that it has "strong common law trademark rights in the Litter-Robot Marks with numerous federal trademark registrations" including "U.S. Trademark Reg. Nos. 4,674,124; 4,674,125; 5,259,515; 6,227,960; 6,570,005; 6,668,860; 6,734,934; 6,734,935; and 6,799,211." Dkt. 25 at ¶¶32, 135. All of these marks are either design marks or permutations of Litter-Robot (with a dash).

The Complaint includes 39 paragraphs of allegations that purport to support claims of "infringement" and "unfair competition." Id. at ¶¶33-72. However, the only allegations that even arguably allege Smarty Pear's purported use of a Whisker mark are limited to use of the words "Litter Robot" or use of "#litterrobot" and permutations thereof. Dkt. 25 at ¶44 (alleging use of "Better than a Litter Robot," "#LitterRobot," and "#litterrobot3"); ¶46 (alleging use of "#LitterRobot" and "#litterrobot3"); ¶47 (alleging hashtag use); ¶48 (similar); ¶49 (similar); ¶60 (similar).

Prior to seeking registration of "Litter-Robot" or any of its permutations, in 2007 Whisker sought registration of a word mark for "Litter Robot." Citing to Whisker's products as "litter containers" and a dictionary definition of "Robot," the USPTO concluded that the "Mark is Merely Descriptive" and "refused registration on the Principal Register[.]" Whisker did not respond and the application was abandoned.

The first of the "Litter-Robot" (with a dash) applications was filed in 2016 for "Litter-Robot". Registration was initially refused based on the word "litter" in the description of goods and

a dictionary definition of "robot." Whisker responded that "Applicant's mark LITTER-ROBOT has obtained secondary meaning" and submitted evidence of articles with the phrase "Litter-Robot" (with a dash) highlighted. The mark issued on the principal register based on this submission.

In 2020-2021, Whisker filed applications for additional permutations of "Litter-Robot." For "Litter-Robot 3" and "Litter-Robot 3 Connect," Whisker disclaimed exclusive rights to "Litter Robot" in early 2022: "No claim is made to the exclusive right to use LITTER ROBOT apart from the mark as shown."

The only accused infringement of Whisker's purported marks other than literal use of the disclaimed "Litter Robot" is combining those disclaimed words with a hashtag, i.e., as #litterrobot, #LitterRobot, and #litterrobot3. Dkt. 25 at ¶¶44, 46-49, and 60. In addition to its failed attempt to register "Litter Robot" and its myriad attempts to register "Litter-Robot" and permutations thereof, Whisker also recently attempted to obtain federal registration for "#LitterRobot" in an application filed on November 3, 2020. In an April 6, 2021 Office Action, in addition to the now-common refrain that "litter" and "robot" are descriptive, the Examiner explained that "[w]here a hashtag is used as part of an online social media search term, it generally serves no source-indicating function, because it merely facilitate[s] categorization and searching within online social media.'"

On October 6, 2021, Whisker responded with a lengthy argument that #LitterRobot was purportedly suggestive, which the Examiner rejected. Whisker responded on May 9, 2022 – less than two months prior to filing the Complaint in this action – seeking registration on the supplemental register. Because actual use is required for the supplemental register, Whisker also submitted an Allegation of Use with the USPTO, alleging a first use in commerce of April 9, 2022.

Here, Whisker has not made any allegations that "#litterrobot" has obtained secondary meaning, let alone in the five months since it admitted that "#litterrobot" is descriptive via registration the supplemental register. See Dkt. 25 at ¶¶44-49, 60 (all allegations related to #litterrobot, none of which allege secondary meaning or provide any evidence thereof). Under these circumstances, Whisker has failed to plausibly allege any valid trademark rights in #litterrobot or any permutations thereof.

Website

Whisker also alleges that Smarty Pear's "website now mimics marketing assets, fonts, photos, email prompts, footer layouts, and overall webpage layouts—down to the rounded designs of the button edges" and that Smarty Pear "produced a 'How It Works' video for Leo's Loo that is nearly identical in script to Whisker's video for the LITTER-ROBOT product." Dkt. 25 at ¶¶50-51. Whisker's Complaint does not allege copyright infringement, trade dress, or any other intellectual property right that might cover website design or videos, and thus, does not plausibly support a cause of action.

Unfair Competition

Whisker identifies a number of statements where Smarty Pear purportedly "represent[s] that they are the designer of Leo's Loo.".Whisker's manufactured "impression" is too vague and subjective, and is not a specific and measurable claim, capable of being proved false or of being reasonably interpreted as a statement of objective fact.

Whisker alleges that Smarty Pear "touted several new-features" with the launch of Leo's Loo Too, including that it was the "first-ever app connected self-cleaning litter box with Alexa and Google Voice controls[.]" Dkt. 25 at ¶53. Because Whisker has not alleged that LITTER-ROBOT 3 CONNECT was itself an "app connected self-cleaning robot with Alexa and Google voice controls," there are no allegations from which Smarty Pear's statement might be deemed false.

Another feature that Smarty Pear allegedly "touted" with the launch of Leo's Loo Too was "UV rays that eliminate 99.9% of bacteria." These allegations fail to state a claim for two reasons. First, Whisker once again strains the language of the underlying 99.9% statements, which merely discuss UV rays generally, and for example, do not state that the UV kills unexposed bacteria within the litter box as would be required for falsity under Whisker's COVID-19 analogy. Second, regarding the litter compartment, Smarty Pear merely states that the UV "reduces odor" and "keeps your kitty safe," both of which are nonactionable puffery, and neither of which are addressed by FDA's COVID-19 guidance. Indeed, the whole purpose of an automated litter box is reduce odor while ensuring cat safety.

Smarty Pear has also advertised Leo's Loo products as being "The Smartest Self-Cleaning Litter Box." Dkt. 25 at ¶69. According to Whisker, "[i]n this context, the word 'smartest'

specifically refers to a subset of features" described in a video, including "(1) self-cleaning; (2) voice controls; (3) app connection; (4) pet sensing; (5) post-exit cleaning." Id. From this, Whisker jumps to the conclusion that "[t]he necessary implication of 'smartest' is that other products in the market lack those features." Id. at ¶70. Because, according to Whisker, "each of those features is present in the LITTER-ROBOT product[,]" Whisker alleges that the "smartest" claim "is false and misleading." Id. But of course the "smartest" statement itself does not identify any specific features, let alone state that any such features are missing from other products. Because "smartest" is a general, subjective claim without any mention of specific characteristics, it is textbook non-actionable puffery.

Finally, Whisker points to a website link to "Join the Smarty Pear Family" by entering an "e-mail address" and pressing a "Subscribe" button, or clicking a button to "Follow Us on Instagram." Dkt. 25 at ¶71. This link includes the statement that "[o]ver half a million cats and their owners have made the transition to a litter-free life with Pear Family." Id. Whisker speculates that "[t]he necessary implication of this statement is that over 500,000 'cats and their owners' are using Leo's Loo or Leo's Loo Too devices . . . [which] conveys the impression that there have been hundreds of thousands of sales of Leo's Loo and Leo's Loo Too[.]" Id. This claim once again makes a strained interpretation of the language at issue, which in context is discussing joining the "Smarty Pear Family" such as by hitting "Subscribe" or "Follow Us on Instagram" button, not purchasing a Leo's Loo.

Claims Against Madeiras

Although the Amended Complaint says "Madeiras" 109 times, only two paragraphs include allegations specific to Chris Madeiras. Dkt. 25 at ¶¶33-34 (alleging that "Madeiras had a relationship with Whisker" through which he "had access to Whisker's confidential information and business plans for the LITTER-ROBOT product" and that in fall of 2019 "Madeiras met privately with one of Whisker's executives"). Whisker does not allege that Madeiras actually misappropriated any Whisker-confidential information via his "access" or "private" meeting, let alone any protectable IP. In other words, the sole basis for the claims against Madeiras is his actions in his corporate role at Smarty Pear. Dkt. 25, passim (referring to "Smarty Pear and Madeiras" 86

times without elaboration). Accordingly, Whisker has no basis to drag him into this lawsuit in his personal capacity.

3.  **Legal Issues**

    **Plaintiff's Position:** In summary, the legal issues in this dispute include:

    (i) whether Defendants directly infringe, either literally or under the doctrine of equivalents any asserted claim of the Patents-in-Suit;

    (ii) whether Defendants indirectly infringe, either literally or under the doctrine of equivalents, any asserted claim of the Patents-in-Suit;

    (iii) whether any of the asserted claims are invalid;

    (iv) whether Defendants' conduct infringes the Litter-Robot Marks;

    (v) whether Defendants' conduct constitutes false and misleading advertising under the law; and

    (vi) whether Defendants' conduct constitutes unfair competition under state and common law;

    (vii) if Defendants infringe a valid claim of the Patents-in-Suit, whether Plaintiff is entitled to a permanent injunction pursuant to 35 U.S.C. § 283;

    (viii) if Defendants infringe a valid claim of the Patents-in-Suit, whether Plaintiff is entitled to damages, including prejudgment and post-judgment interest and its costs incurred in this action, pursuant to 35 U.S.C. § 284;

    (ix) if Defendants infringe a valid claim of the Patents-in-Suit, whether Defendants' infringement was willful pursuant to 35 U.S.C. § 284;

    (x) whether this case is exceptional under 35 U.S.C. § 285, entitling Plaintiff to an award of reasonable attorney's fees;

    (xi) whether this case is exceptional thereby warranting costs and fees under 35 U.S.C. § 285; and

    (xii) the appropriate measure of any additional damages and injunctive relief in connection with the above.

**Defendants' Position:** The Court has yet to rule on Defendants' Motion to Dismiss and Defendants have not yet served any Counterclaims in this matter. Accordingly, Defendants' position is that most of the legal issues that may be relevant to resolving this litigation are not yet determined.  At this time, the issues are as follows:

1) Whether Plaintiff's patent claims should be dismissed for failure to plead infringement of elements of each asserted patent;

2) Whether Plaintiff's trademark claims should be dismissed because, mere months before filing this action, Plaintiff disclaimed trademark protection for the exact words it is accusing of infringing, and has not pleaded secondary meaning since those representations;

3) Whether Plaintiff's unfair competition claims should be dismissed for failure to state a claim, for relying on strained interpretations of sales puffery;

4) Whether – in light of Plaintiff's repeated failure to address these deficiencies, including in briefing before the Court -- it should be permitted to amend its Amended Complaint

5) Whether Defendants should be entitled to fees and costs in defending against implausible claims.

**4.**   <u>**Motions**</u>

Defendants' Motion to Dismiss the First Amended Complaint (Dkt. 29) has been fully briefed, and a hearing occurred on January 19, 2023.  Also pending is Defendants' request for judicial notice in connection with the motion to dismiss (Dkt. 30).  The Parties anticipate that both sides may file a motion for summary judgment at the appropriate time, and that motion practice may arise in the context of discovery disputes.

**5.**   <u>**Amendment of Pleadings**</u>

Plaintiff proposes to set May 1, 2023 as the deadline to add parties and/or amend the pleadings, while Defendants propose September 5, 2023.

**6.**   <u>**Evidence Preservation**</u>

The Parties have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information ("ESI Guidelines") and confirm that they have met and conferred pursuant to Fed. R.

Civ. P. 26(f) regarding reasonable and proportionate steps taken to preserve evidence relevant to the issues reasonably evident in this action. The Parties intend to discuss and negotiate a proposed ESI Order based on this District's model order.

**7.    Disclosures**

The Parties will exchange initial disclosures as required under Fed. R. Civ. P. 26. As shown below in Section 16, Plaintiff proposes that initial disclosures occur within fourteen (14) calendar days following the Case Management Conference. Defendants propose the initial disclosures occur by June 21, 2023. Each Party may supplement, amend, or modify their disclosures as discovery continues.

**8.    Discovery**

**A.    Discovery Taken to Date & Scope of Anticipated Discovery**

No discovery has yet taken place. The Parties expect to negotiate the terms of a stipulated protective order based on the Model Stipulated Protective Order Litigation Involving Patents, Highly Sensitive Confidential Information and/or Trade Secrets and anticipate presenting that to the Court for approval following the CMC.

**Plaintiff's Position:** At a high level, Plaintiff anticipates fact discovery on topics including:

(i) the facts and circumstances underlying the manufacturing and importing of Defendants' products;

(ii) the facts and circumstances underlying Defendants' sale and marketing of the Leo's Loo and Leo's Loo Too, including the various advertising and marketing statements they made in connection with their products;

(iii) the facts and circumstances underlying Defendants' use of Plaintiff's trademark to drive traffic and sales, including their social sale and marketing of the Leo's Loo and Leo's Loo Too, including social media engagement

(iv) Defendants' communications with third parties regarding Plaintiff and its products;

(v) evidence of any consumer confusion between the Parties and their respective products;

(vi) information relating to the falsity and materiality of Plaintiff's promotional statements, and Plaintiff's awareness of same;

(vii) any profits and costs associated with the sale of Defendants' products;

(viii) non-privileged matters relevant to the claims and defenses in this action and proportional to the needs of this case, including but not limited to the alleged making, using, selling, offering for sale, and/or importing into this country of Defendants' products;

(ix) alleged infringement of the asserted claims of the Patents-in-Suit;

(x) design, development, function, characteristics, and methods of use of Defendants' products;

(xi) validity of the Patents-in-Suit; and

(xii) damages issues.

Plaintiff also anticipates expert discovery on issues including but not limited to false advertising, consumer confusion, and damages.

**Defendants' Position:** The Court has yet to rule on Defendants' Motion to Dismiss and Defendants have not yet served any Counterclaims in this matter. Accordingly, Defendants' position is that attempting to define the scope of discovery necessary to resolve this litigation is premature and cannot yet be assessed with any degree of certainty until the Plaintiffs' and Defendants' claims are fixed by the finalization of the parties' pleadings.

## B. Privilege Logs

The Parties agree that privileged or protected documents created on or after the commencement of this action shall not be included on any privilege log except as otherwise agreed to by the parties or ordered by the Court. The Parties will work to agree to a mutually agreeable deadline for privilege logs.

## C. Topics Required Under Patent Local Rule 2-1(b)

*i.* *Proposed modification of the obligations or deadlines set forth in these Patent Local Rules to ensure that they are suitable for the circumstance of the particular case (see Patent L.R. 1-3).*

The Parties propose retaining the schedule set forth in the Patent Local Rules, except that the Parties should complete any necessary claim construction expert depositions after the filing of the expert's claim construction declaration, and before the responsive briefing is submitted.

The Parties have set forth in Section 16 ("Scheduling") their respective proposals concerning the timing of the required disclosures under Patent Local Rules.

  *ii. The scope and timing of any claim construction discovery (including disclosure of and discovery from any expert witness permitted by the court) and damages discovery;*

The Parties proposals concerning the timing of claim construction and damages discovery is set forth below in Section 16 ("Scheduling").

  *iii. The format of the Claim Construction Hearing, including whether the Court will hear live testimony, the order of presentation, and the estimated length of the hearing;*

The Parties believe that the Claim Construction Hearing will be coupled with the Summary Judgment Hearing, pursuant to this Court's Standing Order. The Parties believe that the claim construction should be conducted on a claim term by claim term basis, with the Party seeking to advance a claim construction that is not the plain and ordinary meaning presenting first. The Parties presently estimate a single day for the hearing, and expect to offer live testimony.

  *iv. How the parties intend to educate the court on the technology at issue.*

The Parties currently intend to present an overview of the technology during the Claim Construction and Summary Judgment Hearing. The Parties reserve the right to request a separate claim construction tutorial in accordance with the Court's Standing Order.

  *v. The parties shall provide the court with a non-binding, good-faith estimate of the damages range expected for the case along with an explanation for the estimates. If either party is unable to provide such information, that party shall explain why it cannot and what specific information is needed before it can do so. Such party shall also state the time by which it should be in a position to provide that estimate and explanation.*

**Plaintiff's Position:** The Parties have not yet exchanged information relevant to the damages inquiry.

Plaintiff seeks an amount that adequately compensates it for Defendants' infringement, which is no less than a reasonable royalty together with interests and costs. *See* 35 U.S.C. § 284. As the Parties have yet to exchange any information regarding sales of the Products that are the subject of the case, Plaintiff is not in a position to approximate its damages range.

**Defendants' Position:** The Court has yet to rule on Defendants' Motion to Dismiss and Defendants have not yet served any Counterclaims in this matter. The Parties have not yet exchanged information relevant to the damages inquiry. Accordingly, Defendants' position is that attempting to define the scope of damages at issue in this litigation is premature and cannot yet be assessed with any degree of certainty until the Plaintiffs' and Defendants' claims are fixed by the finalization of the parties' pleadings and discovery has proceeded as to subject matter relevant to the calculation of damages being sought by the Parties.

**9.** **Class Actions**

Not applicable.

**10.** **Related Cases**

None.

**11.** **Relief**

**Plaintiff's Position:** Whisker seeks the following relief:

(A) A permanent injunction enjoining Defendants and their related companies, affiliates, officers, agents, employees, successors, and assignees—and all persons in active concert or participation with them who receive actual notice of such injunction—from (i) using or marketing the Litter-Robot Marks or any confusingly similar mark in connection with the marketing, promotion, advertising, sale, or distribution of any products or services, including on Defendants' social media pages; (ii) directly or indirectly using in commerce or causing to be published or otherwise disseminated any promotional or advertising materials containing any false or misleading statements about Smarty Pear or its products; (iii) further infringement of the Patents-in-Suit; and (iv) engaging in any activity constituting unfair competition with Plaintiff;

(B) a judgment that Defendant has directly infringed and continues to directly infringe one or more asserted claim under at least 35 U.S.C. § 271(a);

(C) a judgment that Defendant has indirectly infringed and continues to indirectly infringe one or more asserted claim under at least 35 U.S.C. § 271 (b) and/or (c);

(D) a judgment that Defendant's infringement under at least 35 U.S.C. §§ 271(a), (b), and (c) has been and continues to be willful;

(E) a preliminary and permanent injunction prohibiting Defendant and its officers, agents, representatives, assigns, licenses, distributors, servants, employees, related entities, attorneys, and all those acting in concert, privity, or participation with them, from: infringing, inducing, or contributing to the infringement of any asserted claim;

(F) monetary relief, namely:

(i) Defendants' profits, gains, and advantages derived from Defendants' unlawful conduct;

(ii) all damages sustained by Whisker as a result of Defendants' unlawful conduct, including the cost of corrective advertising;

(iii) trebled damages under 15 U.S.C. § 1117;

(iv) attorneys' fees and costs under 15 U.S.C. § 1117;

(v) exemplary and punitive damages as the Court finds appropriate to punish Defendants' misconduct and deter and future willful conduct;

(vi) pre-judgment and post-judgment interest;

(vii) with respect to Plaintiff's patent infringement claims,

(1) an award of monetary damages, to be obtained from any and all of Defendant's assets, sufficient to compensate Plaintiff for Defendant's patent infringement, together with interest, pursuant to at least 35 U.S.C. § 284;

(2) an award of enhanced damages, to be obtained from any and all of Defendant's assets, of three times the amount found or assessed for Defendant's willful patent infringement, pursuant to 35 U.S.C. § 284, including prejudgment interest on such damages;

(3) an order finding this case exceptional and awarding Plaintiff its attorneys' fees, to be obtained from any and all of Defendant's assets, pursuant to 35 U.S.C. § 285, including prejudgment interest on such fees;

(4) an accounting and supplemental damages for all damages occurring after the period for which damages discovery is taken, and after discovery closes, through the Court's decision regarding the imposition of a permanent

injunction;

(5) an award of Plaintiff's costs and expenses of this suit as the prevailing party, to be obtained from any and all of Defendant's assets; and

(6) any other relief as the Court deems necessary, just, and/or proper.

(G) pursuant to 15 U.S.C. § 1118, delivery for seizure or destruction at Plaintiff's election all products, labels, signs, prints, packages, wrappers, receptacles, advertisements, stickers, tags, warranty booklets, promotional materials, and other items in their possession or under their control on which the Litter-Robot Marks (or any marks likely to be confused with those marks) appears; and

(H) any other and further relief as the Court may deem just and equitable.

**Defendants' Position:** The Court has yet to rule on Defendants' Motion to Dismiss and Defendants have not yet served any Counterclaims in this matter. Accordingly, Defendants' position is that beyond seeking dismissal of Plaintiffs' claims, Defendants' cannot yet assess the nature and scope of the relief they may additionally be requesting as part of this litigation.

**12.** **Settlement and ADR**

Pursuant to ADR Local Rule 3-5, the Parties have discussed the prospects of alternative dispute resolution. The Parties believe that ADR before a Magistrate Judge may be useful at a later date..

**13.** **Other References**

None proposed. The Parties do not believe that the issues and technology in this case are sufficiently complex for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

**14.** **Narrowing of Issues**

The Parties do not believe that any narrowing of the issues is possible at this time, but reserve the right to revisit the prospect of doing so.

**15.** **Expedited Trial Procedures**

The Parties agree that this action is not appropriate for the expedited trial procedure.

## 16.  **Scheduling**

The Parties' specific scheduling proposals are indicated below.

| Event | Plaintiff's Proposal[3] | Defendants' Proposal[4] |
|---|---|---|
| **Operative Deadlines** | | |
| Joint Case Management Statement | Wednesday, February 22, 2023 | Wednesday, February 22, 2023 |
| Initial Case Management Conference | Wednesday, March 1, 2023 | Wednesday, March 1, 2023 |
| **Fact Discovery** | | |
| Infringement contentions | Wednesday, March 15, 2023 | Wednesday, June 21, 2023 |
| Initial disclosures | Wednesday, March 15, 2023 | Wednesday, June 21, 2023 |
| Invalidity contentions | Monday, May 1, 2023 | Monday, May 1, 2023 |
| Last day to amend pleadings | Monday, May 1, 2023 | Tuesday, September 5, 2023 |
| Exchange proposed claim terms | Monday, May 15, 2023 | Tuesday, September 19, 2023 |
| ADR deadline | Thursday, May 25, 2023 | Friday, September 29, 2023 |
| Exchange preliminary claim construction | Monday, June 5, 2023 | Monday, October 2, 2023 |
| Damages contentions | Tuesday, June 20, 2023 | Tuesday, October 17, 2023 |
| Joint claim construction statement | Friday, June 30, 2023 | Friday, October 27, 2023 |
| Case Management Conference | Thursday, July 6, 2023 or at Court's convenience | Thursday, November 2, 2023 or at the Court's convenience |
| Responsive damages contentions | Thursday, July 20, 2023 | Thursday, November 16, 2023 |

---

[3] Plaintiff's proposed schedule complies with and was calculated pursuant to the Civil Local Rules, Patent Local Rules, and the Court's Standing Order.  Plaintiff's position is that Defendants' proposed schedule does not comply with the Civil Local Rules, Patent Local Rules, and the Court's Standing Order, and delays—without explanation or reasoning—the schedule by approximately 14 weeks.

[4] Defendants' proposal provides a reasonable time for Plaintiff to file yet another Amended Pleading, if it can, for Defendants to file additional motions if necessary, for Defendants to file responsive pleadings including likely counterclaims, and for Plaintiff to respond to Defendants' likely counterclaim.  In contrast, Plaintiff's proposal furthers its apparent goals of increasing litigation burdens and costs by providing it offensive discovery before its claims are settled or Defendants' claims even pleaded.

| Claim construction / fact discovery cutoff | Monday, July 31, 2023 | Thursday, November 30, 2023 |
|---|---|---|
| Expert Discovery | | |
| Expert discovery - opening reports | Monday, August 28, 2023 | Friday, January 5, 2024 |
| Expert discovery - rebuttal reports | Monday, September 25, 2023 | Friday, February 9, 2024 |
| Expert discovery cutoff | Monday October 16, 2023 | Friday, March 1, 2024 |
| Dispositive Motions | | |
| Summary Judgment / Claim Construction - Opening Brief | Thursday, November 9, 2023 or at Court's convenience | Friday, March 29, 2024 or at the Court's convenience |
| Summary Judgment / Claim Construction - Hearing | Thursday, January 11, 2024 or at Court's convenience | Monday, June 3, 2024 or at the Court's convenience |
| Trial | | |
| Pretrial conference | Monday, March 4, 2024 or at Court's convenience | Monday, July 22, 2024 or at the Court's convenience |
| Trial | Monday, March 18, 2024 [4-5 days] or at Court's convenience | Monday, August 12, 2024 or at the Court's convenience |

**17.** **Trial**

Plaintiff proposes March 4, 2024 as the pre-trial conference date and March 18, 2024 or the first available date thereafter convenient to the Court, as the trial date. Defendants propose July 22, 2024 as the pre-trial conference date and August 12, 2024, or the first available date thereafter convenient to the Court as the trial date. Plaintiff currently anticipates the trial will take approximately four to five court days. Defendants respectfully submit that estimating the number of trial court days required for this case is premature since the pleadings are not closed and discovery has yet to commence. Both sides have reserved their right to a trial by jury of any issues so triable.

**18.** **Disclosure of Non-Party Interested Entities or Persons**

The Parties have each filed the required disclosures pursuant to Fed. R. Civ. P. 7.1 and L.R. 3-15 and have no further disclosures in that regard.

**19.** **Professional Conduct**

Attorneys of record for all Parties have reviewed the Northern District of California Guidelines for Professional Conduct.

**20.** **Other**

Nothing further at this time.

Dated: February 22, 2023

COOLEY LLP

*/s/ Bobby Ghajar*
Bobby Ghajar

*Attorney for Plaintiff*
Automated Pet Care Products LLC d/b/a Whisker

Dated: February 22, 2023

HAILEY GUILIANO LLP

*/s/ Joshua Van Hoven*
Joshua Van Hoven

*Attorney for Defendants*
PurLife Brands, Inc. d/b/a Smarty Pear, Chris Madeiras

**ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(h)**

I hereby attest that I obtained concurrence in the filing of this document from each of the other signatories. I declare under penalty of perjury that the foregoing is true and correct.

Dated: February 22, 2023

COOLEY LLP

*/s/ Bobby Ghajar*

*Attorney for Plaintiff*
Automated Pet Care Products LLC d/b/a Whisker