UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AUTOMATED PET CARE PRODUCTS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>PURLIFE BRANDS, INC. D/B/A SMARTY PEAR, A DELAWARE CORPORATION, et al.,<br><br>Defendants. | Case No.  22-cv-04261-VC<br><br>**ORDER DENYING MOTION TO DISMISS IN PART**<br><br>Re: Dkt. No. 29 |

Automated Pet Care Products, LLC (doing business as Whisker) and PurLife Brands, Inc. (doing business as Smarty Pear) are competitors in the market for automated, self-cleaning litter boxes. Whisker is the pioneer of this technology while Smarty Pear is the newcomer. Whisker has sued Smarty Pear for patent infringement, trademark infringement, false designation of origin, false advertising, and unfair competition. Smarty Pear has moved to dismiss Whisker's complaint for failure to state claims on which relief can be granted. The motion is denied as to Whisker's claims for trademark infringement, false designation of origin, and unfair competition. The remaining claims will be addressed in a separate order.

**I**

Twenty-three years ago, Whisker launched its flagship product: the Litter-Robot. The Litter-Robot was the first of its kind. It consists of a rotating chamber that automatically sifts cat waste after each use into a waste drawer beneath the chamber, thus keeping the litter box perpetually clean and eliminating the need for manual scooping. Since the launch of the Litter-

Robot, Whisker has continued to innovate, launching new and improved models like the Litter-Robot II, Litter-Robot 3, Litter-Robot 3 Connect, and Litter-Robot 4.



**LITTER-ROBOT 4**

Whisker holds several trademarks associated with these products. Pertinent here are the following word marks: "Litter-Robot," "Litter-Robot 3," "Litter-Robot 3 Connect," and "Litter-Robot Pinch Detect." All four of these marks are registered on the federal Principal Register, which is the primary register of trademarks maintained by the United States Patent and Trademark Office. Whisker holds these marks as standard character marks "without claim to any particular font style, size or color." This means its marks capture any visual depiction of these words, with or without upper- or lower-case lettering.

In 2021, Smarty Pear arrived on the scene. Whisker alleges that Smarty Pear's founder, Chris Madeiras (also a defendant), was formerly affiliated with a company that did business with Whisker. As a result of that relationship, Madeiras allegedly obtained confidential information about the Litter-Robot product and about Whisker's plans to launch the Litter-Robot 4. Madeiras allegedly used this information to inject the market with a new—and virtually identical—automated litter box: the Leo's Loo.

2



**LEO'S LOO**

Smarty Pear began advertising its Leo's Loo product (and its successor, the Leo's Loo Too) on social media. Its posts featured photos of the Leo's Loo products, but those posts were tagged, at least in part, with the following hashtags: #litterrobot, #LitterRobot, and #litterrobot3. Whisker alleges that the use of these hashtags infringes on its trademark rights.

**II**

To state a trademark infringement claim, a plaintiff must adequately allege: (1) that it has a valid, protectable trademark, and (2) that the defendant's use of the mark is likely to cause consumer confusion. *See OTR Wheel Engineering, Inc. v. West Worldwide Services, Inc.*, 897 F.3d 1008, 1022 (9th Cir. 2018). Whisker's claims for false designation of origin and unfair competition are subject to the same test and therefore rise or fall with its trademark infringement claim. *See Walter v. Mattel, Inc.*, 210 F.3d 1108, 1110–11 (9th Cir. 2000); *Blumenthal Distributing, Inc. v. Comoch Inc.*, --- F. Supp. 3d ---, 2023 WL 2356713, at *4–*5 (C.D. Cal.

2023).

A plaintiff has a valid, protectable trademark if: (1) it has a federally registered mark; (2) it has a suggestive mark; or (3) its mark, while merely descriptive, has acquired a secondary meaning in the market. *Applied Information Sciences Corporation v. eBay, Inc.*, 511 F.3d 966, 969–70 (9th Cir. 2007). The first of these options—registration on the Principal Register— "constitutes prima facie evidence of the validity of the registered mark and of [the registrant's] exclusive right to use the mark on the goods and services specified in the registration." *Id.* at 970; *see also* 3 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 19:9 (5th ed. 2023). Because Whisker's marks are registered on the Principal Register, Whisker effortlessly alleges the first element of its claim.

The second element, likelihood of confusion, asks "whether a reasonably prudent consumer … is 'likely to be confused as to the origin or source of the goods or services bearing one of the marks.'" *Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1214 (9th Cir. 2012). Likelihood of confusion is typically a question of fact. *One Industries, LLC v. Jim O'Neal Distributing, Inc.*, 578 F.3d 1154, 1162 (9th Cir. 2009).[1]

In the Ninth Circuit, this determination is made based on the well-established *Sleekcraft* factors: (1) strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of

---

[1] Smarty Pear gestures at the idea that the use of hashtags cannot constitute trademark infringement categorically. There is no principled basis for such a rule, and nearly every authority to have considered the issue thus far has recognized as much. *See, e.g.*, 1 McCarthy § 7:17.70; *Public Impact, LLC v. Boston Consulting Group, Inc.*, 169 F. Supp. 3d 278, 294–95 (D. Mass. 2016); *Fraternity Collection, LLC v. Fargnoli*, No. 13-cv-0664, 2015 WL 1486375, at *2, *5–*6 (S.D. Miss. Mar. 31, 2015); *Chanel, Inc. v. WGACA, LLC*, No. 18-cv-2253, 2018 WL 4440507, at *2 (S.D.N.Y. Sept. 14, 2018); *Reflex Media, Inc. v. Richard Easton Limited*, No. 20-cv-0051, 2022 WL 17095158, at *4–*5 (D. Nev. Nov. 21, 2022); *Align Technology v. Strauss*, 18-cv-6663, 2019 WL 1586776, at *3–*6, *8–*10 (N.D. Cal. Apr. 12, 2019); *Moonbug Entertainment Limited v. HappyKidsTV*, No. 22-cv-3203, 2022 WL 18859471, at *7–*8 (N.D. Cal. Dec. 15, 2022); *IN RE I.AM.SYMBOLIC, LLC*, 127 U.S.P.Q. 2d 1627, 2018 WL 3993582, at *4–*8 (T.T.A.B. Feb. 8, 2018); *3 Ratones Ciegos v. Mucha Lucha Libre Taco Shop 1 LLC*, No. 16-cv-4538, 2017 WL 4284570, at *2–*4 (D. Ariz. Sept. 27, 2017); *but see AOP Ventures, Inc. v. Steam Distribution, LLC*, 15-cv-1586, 2016 WL 7336730, at *12–*13 (C.D. Cal. Oct. 11, 2016) (citing *Eksouzian v. Albanese*, No. 13-cv-0728, 2015 WL 4720478, at *8 (C.D. Cal. Aug. 7, 2015)).

care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines. *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–49 (9th Cir. 1979), *abrogated in part on other grounds by Mattel, Inc. v. Walking Mountain Products*, 353 F.3d 792 (9th Cir. 2003).

This eight-factor test is "pliant." *Brookfield Communications, Inc. v. West Coast Entertainment Corporation*, 174 F.3d 1036, 1054 (9th Cir. 1999). Not every case will implicate every factor, and some cases may warrant consideration of other, unenumerated factors. *See Sleekcraft*, 599 F.2d at 348 n. 11; *Rearden*, 683 F.3d at 1209. "[T]he relative importance of each individual factor will be case-specific." *Brookfield*, 174 F.3d at 1054. In the Internet context, "the three most important *Sleekcraft* factors are (1) the similarity of the marks, (2) the relatedness of the goods or services, and (3) the simultaneous use of the Web as a marketing channel." *GoTo.com, Inc. v. Walt Disney Company*, 202 F.3d 1199, 1205 (9th Cir. 2000).

All three of these factors weigh heavily in Whisker's favor. First, Smarty Pear's product is virtually identical to Whisker's. Second, Smarty Pear advertised its product—using the "#litterrobot" marks—on the same marketing channels that Whisker traffics, namely social media sites like Instagram. Third, the marks are undeniably similar. Take, for instance, the "#litterrobot3" mark. The similarity between that hashtag and the "Litter-Robot 3" mark is self-evident. And the inclusion of the number three makes it especially likely that a reasonably prudent consumer would believe the product being pictured and advertised in the Instagram post is, in fact, the Litter-Robot 3. The same is true of the "#LitterRobot" and "#litterrobot" hashtags. The similarities to the "Litter-Robot" mark are, again, obvious. And much like the use of the number three, the use of upper-case letters (giving the impression that the phrase is being used as a proper noun) makes it even more likely that a prudent consumer would believe the advertised product is a "Litter-Robot."

True, the hashtags do not contain hyphens, but the marks need not be identical, and "similarities weigh more heavily than differences." *GoTo.com*, 202 F.3d at 1206. Moreover, "[w]here the goods and services are directly competitive," as they are here, "the degree of

similarity required to prove a likelihood of confusion is less than in the case of dissimilar products." *Public Impact, LLC v. Boston Consulting Group, Inc.*, 169 F. Supp. 3d 278, 288 (D. Mass. 2016) (citing 4 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 23:20.50 (4th ed.) (where the parties are direct competitors, "it is likely that even a sophisticated consumer could be confused.").

Perhaps recognizing it has no good argument that these marks are not similar, Smarty Pear asks the Court to take judicial notice of the fact that Whisker lacks valid marks over the phrase "Litter Robot" (that is, with a space instead of a hyphen) and the hashtag "#litterrobot." *See Harris v. County of Orange*, 17 F.4th 849, 865 (9th Cir. 2021). Indeed, in 2007—before successfully registering the "Litter-Robot" marks—Whisker tried to register the word mark "Litter Robot," but the Trademark Office refused registration, concluding that those words were "merely descriptive." In subsequent applications for registration of marks on the Principal Register in 2022, Whisker "disclaimed" exclusive rights to the "Litter Robot" word mark, meaning it acknowledged that it lacks a valid trademark over those words. *See* 2 MCCARTHY § 11:52 (5th ed. 2023) (explaining the import of a disclaimer); 3 MCCARTHY §§ 19:65, 19:72 (same).

Whisker also attempted to register the hashtag "#litterrobot" on the Principal Register, but the Trademark Office declined on the grounds that adding a hashtag to an otherwise descriptive mark did not alone make the mark suggestive. Whisker then proceeded to register the mark on the Supplemental Register, which—like a disclaimer—constitutes an "admission against interest" that the registered mark is not yet a protectable trademark. 3 MCCARTHY § 19:43; *see also* 3 MCCARTHY § 19:33 ("[W]hile the Principal Register is a register of designations that have been used as real trademarks and service marks, the Supplemental Register is a listing of non-mark designations (such as descriptive words) that are only 'capable' of someday becoming a 'mark' upon the acquisition of secondary meaning. That is, a designation on the Supplemental Register is not a 'trademark' at all.").

Smarty Pear argues that Whisker cannot state a trademark infringement claim based on

Smarty Pear's use of hashtags like "#LitterRobot" or "#litterrobot" because the Trademark Office has rejected (and Whisker has disclaimed) the "Litter Robot" and "#litterrobot" marks. If Whisker were pursuing claims based on those marks—say, if it were arguing that those marks have attained secondary meaning since the time they were rejected—then Smarty Pear's disclaimer arguments would have merit. Whisker's recent disclaimers would constitute admissions that the marks are not yet protectable. *See* 2 MCCARTHY § 11:52.

But Whisker is not advancing trademark infringement claims based on those disclaimed marks. It neither disputes that it has disclaimed them nor argues that they've attained secondary meaning. Smarty Pear's disclaimer arguments are therefore misplaced. The key question here is whether Smarty Pear's hashtags are confusingly similar to the marks over which Whisker has rights; focusing on whether they are also similar to marks over which Whisker does not have rights is not helpful.

To be sure, there is something unintuitive about the idea that Smarty Pear could be held liable for using marks that are nearly identical to marks the Trademark Office has determined are not protected. This is a function of the similarity between the marks the Trademark Office has approved and those it has rejected. Take, for instance, the "Litter Robot" and "Litter-Robot" marks; they are a hyphen away from being the same mark, yet one is valid while the other is not. That makes this case—where the allegedly infringing marks are virtually identical to both protected and unprotected marks—somewhat unusual.

But there is a place in the analysis to account for this peculiarity: the first of the *Sleekcraft* factors, the "strength of the mark." In evaluating this factor, courts consider where a mark lies in the spectrum of distinctiveness. *See Sleekcraft*, 599 F.2d at 349–50; *see also Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1126–27 (9th Cir. 2014). The resemblance between the marks that the Trademark Office has determined are merely descriptive and those it has agreed to register suggests that Whisker's marks—while valid—are weak. *See Sleekcraft*, 599 F.2d at 349–50.

On the other hand, Whisker alleges significant marketing efforts over the course of 22

years, widespread publicity and write-ups, and rave customer reviews ranging in the tens of thousands. These allegations suggest the marks have been strengthened over time. *See Sleekcraft*, 599 F.2d at 349–50 (courts also consider customer recognition when evaluating the strength of a mark). But even if these were "weak mark[s] entitled to a restricted range of protection," infringement may still be found where, as here, "the marks are quite similar, and the goods closely related." *Id.* at 350. Taking judicial notice of Whisker's rejected and disclaimed marks thus does not get Smarty Pear very far.

Moreover, three of the remaining *Sleekcraft* factors weigh in Whisker's favor, and none seems to weigh in Smarty Pear's. For one, Smarty Pear's intent is transparent: Not only are the products themselves virtually identical, but the strategic use of the number three and the upper-case letters in its hashtags evinces an intent to capitalize on Whisker's goodwill. The seventh factor thus weighs heavily in Whisker's favor.

The eighth factor, "likelihood of expansion," also weighs in Whisker's favor. In *Sleekcraft*, the Ninth Circuit reasoned that "[i]nasmuch as a trademark owner is afforded greater protection against competing goods, a 'strong possibility' that either party may expand his business to compete with the other will weigh in favor of finding that the present use is infringing. When goods are closely related, any expansion is likely to result in direct competition." *Sleekcraft*, 599 F.2d at 354. The goods here are more than closely related—they are virtually identical—and both parties have expanded their businesses over time, developing newer models of their products.

The fourth factor, "evidence of actual confusion," likewise weighs in Whisker's favor. Whisker alleges that when Smarty Pear offered consumers free accessories to incentivize reviews of the Leo's Loo, several consumers emailed *Whisker*'s customer support to claim their accessories, such that Whisker's product specialists had to explain that the Leo's Loo was not Whisker's product.

Finally, the sixth factor—the "type of goods and the degree of care likely to be exercised by the purchaser"—is arguably too close to call. These automated litter boxes aren't exactly cars

costing tens of thousands of dollars, but they're not insubstantial purchases either. They sell for nearly $500 each. Most consumers would pause to reflect before spending that much on a product.

On balance, the *Sleekcraft* factors weigh decidedly in Whisker's favor.

### III

Smarty Pear's motion to dismiss is DENIED as to Whisker's trademark infringement, false designation of origin, and unfair competition claims based on the use of Smarty Pear's hashtags.

**IT IS SO ORDERED.**

Dated: April 21, 2023

_____

VINCE CHHABRIA
United States District Judge