UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AUTOMATED PET CARE PRODUCTS, LLC,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>PURLIFE BRANDS, INC. D/B/A SMARTY PEAR, A DELAWARE CORPORATION, et al.,<br><br>　　　　Defendants. | Case No. 22-cv-04261-VC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**<br><br>Re: Dkt. No. 29 |

　　　　This order addresses Whisker's patent infringement and false advertising claims. Whisker's claims for trademark infringement and false designation of origin are addressed in a separate order. *See* Dkt. No. 55. This order assumes the reader's familiarity with the factual allegations in the complaint, the relevant legal standards, and the arguments made by the parties.

　　　　Whisker fails to state a patent infringement claim based on the '185 Patent (Count 1) because Whisker's own photos in the complaint belie any assertion that the Leo's Loo's "bonnet … extends over [a] portion of the chamber so that … a *rear* of the outside wall of the chamber remain[s] uncovered by the bonnet." *See* Dkt. No. 25 at 26–27 (reciting the elements of the '185 Patent); Dkt. No. 25-1 at 87 (depicting fully assembled Leo's Loo and Leo's Loo Too products seemingly with no portion of the rear of the chamber uncovered). Indeed, Whisker's attempt at demonstrating that a portion of the rear of the chamber remains uncovered by the bonnet consists of pointing to photos in its claim chart disingenuously depicting *disassembled* Leo's Loo products. Dkt. No. 25-1 at 94.

Whisker's claim based on the '889 Patent (Count 2) fails because the videos and images included in or incorporated by reference into the complaint and claim chart demonstrate only a single, counter-clockwise rotation, and so Whisker has not plausibly alleged that the Leo's Loo products contain a "means for altering the orientation of the first unit assembly relative to the second unit assembly and the vector force of gravity … wherein *reversal* of the orientation of the first unit assembly passes litter from the temporary compartment to the compartment." Dkt. No. 25 at 37–38 (emphasis added); *see also* Dkt. Nos. 25 at 43, n. 48, 49; 25-1 at 119–20.

On the other hand, Whisker's claim based on the '502 Patent (Count 3) survives. Smarty Pear argues that the images in Whisker's complaint and claim chart do not depict "one or more sensors configured to detect one or more conditions of the device and transmit one or more signals related to th[ose] conditions" or "a controller in communication with the one or more sensors … adapted to receive the one or more signals, wherein the controller is configured to determine one or more positions of the chamber based on the one or more signals received from the one or more sensors and interpret the one or more signals as one or more status signals." *See* Dkt. No. 25-1 at 235–36.

The images in Whisker's complaint and claim chart more than adequately allege these elements. The images depict three sensors: an anti-pitch sensor, a radar wall sensor, and a weight sensor. *See* Dkt. No. 25-1 at 230, 234. At least one of these sensors, the anti-pitch sensor, appears to be "configured to detect one or more conditions of the device"—namely, a foreign object in the waste chute. *See* Dkt. No. 25-1 at 234–35. Whisker alleges that, upon detecting that condition, the machine stops, rotates, and enters safety mode. These allegations strongly suggest that the anti-pitch sensor transmits a signal to a controller that is adapted to receive and interpret the signal and to determine the position of the chamber based on that signal. *See* Dkt. 25-1 at 234–35. The image in the claim chart depicting a circuit board inside the Leo's Loo Too bolsters the inference of such a controller. *See* Dkt. 25-1 at 236.[1]

---

[1] Aside from conclusory and boilerplate references to the doctrine of equivalents in the claims section of the complaint, Whisker makes no effort to allege equivalence, nor did it argue it in

Whisker's false advertising claims (Counts 6 and 7) survive on the basis of some but not all of the allegedly false statements. Statements like "[w]e've packed the Leo's Loo with features that make it one of the most convenient self-cleaning litter boxes available" and "[w]e designed Leo's Loo with kitty safety in mind … so our feline friends are always safe when they step inside" are classic, non-actionable puffery. *See Newcal Industries, Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1053 (9th Cir. 2008). Whisker's position—that these are falsifiable statements of fact likely to mislead consumers into believing that the product is made in California when it is allegedly manufactured in China—is strained and unconvincing.

The same is true of Smarty Pear's fleeting description—in a video on its website—of the Leo's Loo Too as "the smartest self-cleaning litter box." Standing alone, that descriptor is classic puffery. Whisker argues that, in context, the statement is actionable because the video then goes on to identify several specific features, falsely implying that competitor products lack those features. *See LivePerson, Inc. v. [24]7.AI, Inc.*, No. 17-cv-1268, 2018 WL 5849025, at *4–5 (N.D. Cal. Nov. 7, 2018). If anything, the context here reinforces the conclusion that the statement is not actionable. Immediately below the video is a bold header that reads "Features You'll Love," followed by a second line of text which—in reference to the features listed immediately below it—describes the Leo's Loo Too as "*one of* the most advanced … self-cleaning litter boxes available." And of the four features highlighted ever so briefly in the video itself, two are the most basic functions of any automated litter box: the Leo's Loo Too "detects when kitties visit" and "cleans after they leave." Under these circumstances, no reasonable consumer could believe the video implies that no other automated litter box can boast the identified features.

By contrast, Whisker adequately alleges false advertising based on Smarty Pear's claim that the Leo's Loo Too is the "First-Ever App-Connected Self-Cleaning Litter Box with Alexa and Google Voice Controls." Whisker alleges that the Litter-Robot 3 Connected, which preceded

---

opposing Smarty Pear's motion.

3

the Leo's Loo Too by years, features its own smart app and can support Alexa and Google Voice. Smarty Pear points out that, as alleged, the Litter-Robot 3 Connected can support Alexa and Google Voice only by way of integration with a third-party platform, whereas the Leo's Loo Too has that functionality built in. But Whisker also plausibly alleges that the MEET Smart Litter Box—the Chinese product that Smarty Pear allegedly knocked off—featured this built-in functionality long before the Leo's Loo Too did. *See* Dkt. No. 25 at 18–19.

Whisker also alleges false advertising based on Smarty Pear's claim that "[o]ver half a million cats and their owners have made the transition to a litter-free life with Pear Family." Dkt. No. 25 at 25. This statement—conveying to consumers that Smarty Pear has sold over 500,000 of its Leo's Loo and/or Leo's Loo Too products—is a quantifiable claim capable of being proven false. Whisker plausibly alleges its falsity based on the fact that Whisker, which has been in business for over 22 years, has had 700,000 sales in that time. It thus seems implausible that Smarty Pear could have sold over 500,000 of its products in the one to two years it has been in the market. Moreover, such a representation is material to consumers and likely to induce reliance because it inspires confidence in the product.

Whisker also plausibly alleges false advertising based on Smarty Pear's representation that its product's UV rays are 99.9% effective at eliminating viruses and bacteria. Whisker's complaint incorporates FDA guidance advising that UV rays are not effective at eliminating viruses or bacteria when they are "covered by dust or soil, embedded in porous surface or on the underside of a surface." In other words, direct exposure is necessary for UV rays to be (at least maximally) effective. Because bacteria or viruses within the Leo's Loo Too are likely to be buried in litter, Whisker has adequately alleged that Smarty Pear's boast of 99.9% effectiveness is false. And the complaint adequately alleges that such a representation is material and likely to induce consumer reliance given the premium placed on odor reduction in the market for litter boxes.

Whisker's unfair competition claims (Counts 8 and 9) survive to the extent they are predicated on the patent infringement, false advertising, and trademark infringement claims that

4

Whisker has adequately alleged. *See* Dkt. No. 55 (discussing the trademark infringement claims).

Finally, Smarty Pear's argument that Whisker has not adequately stated claims against Madeiras is unpersuasive. Whisker alleges that Madeiras is the founder of Smarty Pear, that he was previously affiliated with a company that did business with Whisker, that he therefore had insight into Whisker's products and its plans to launch the Litter-Robot 4, and that he used that information to inject the market with a copycat product that traded off Whisker's goodwill. These allegations give rise to the plausible inference that Madeiras was behind Smarty Pear's allegedly violative conduct.

Dismissal is with leave to amend as to Counts 1 and 2. Whisker's amended complaint is due within 21 days of this order. Smarty Pear's response is due within 14 days of the filing of any amended complaint. Alternatively, if Whisker opts not to file an amended complaint at this time but discovery on the surviving claims provides further support for the allegations underlying Counts 1 and 2, Whisker may seek leave to file an amended complaint at that time. In the event Whisker opts not to file an amended complaint within 21 days of this order, Smarty Pear's answer is due within 28 days of this order. Discovery may proceed immediately.

**IT IS SO ORDERED.**

Dated: April 21, 2023

_____
VINCE CHHABRIA
United States District Judge