MCCAULLEY LAW GROUP LLC
JOSHUA V. VAN HOVEN (CSB No. 262815)
E-Mail: josh@mccaulleylawgroup.com
3001 Bishop Dr., Suite 300
San Ramon, California 94583
Telephone: (925) 302-5941

RICHARD T. MCCAULLEY (pro hac vice)
E-Mail: richard@mccaulleylawgroup.com
180 N. Wabash Avenue, Suite 601
Chicago, Illinois 60601
Telephone: (312) 330-8105

Attorneys for Defendants,

PURLIFE BRANDS, INC., d/b/a SMARTY PEAR,
and CHRIS MADEIRAS

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| Automated Pet Care Products, LLC d/b/a Whisker, a Michigan corporation,<br><br>Plaintiff,<br><br>v.<br><br>PurLife Brands, Inc. d/b/a Smarty Pear, a Delaware corporation, and Chris Madeiras, an individual,<br><br>Defendants. | Case No. 3:22-cv-04261-VC<br><br>**JOINT INITIAL CASE MANAGEMENT STATEMENT**<br><br><u>Case Management Conference</u><br>Date: May 12, 2023<br>Time: 10:00am<br>Judge: Hon. Vince Chhabria |

Plaintiff Automated Pet Care Products, LLC d/b/a Whisker ("Plaintiff" or "Whisker"), and PurLife Brands, Inc. d/b/a Smarty Pear ("Smarty Pear"), and Chris Madeiras (collectively "Defendants") (together, with Plaintiff, the "Parties"), jointly submit this Initial Joint Case Management Statement and Proposed Order pursuant to the Standing Order for All Judges of the Northern District of California, Civil Local Rule 16-9, and the Clerks' Notice Continuing Initial Case Management Conference entered on April 27, 2023 (Dkt. 57).

**1.    Jurisdiction and Service**

The Court has subject matter jurisdiction over this action for patent infringement, trademark infringement, unfair competition, and false advertising under federal and state law pursuant to 28 U.S.C. §§ 1331, 1338(a), 1367, and 35 U.S.C. § 1121. Jurisdiction is also proper under 28 U.S.C. § 1332 as there is complete diversity and the amount in controversy exceeds $75,000. No issues exist regarding personal jurisdiction or venue, as Defendants are both residents of this District. All Parties have been served. The Parties do not object to the Court's jurisdiction over this matter.

**2.    Facts**

**Plaintiff's Position[1]:**

Plaintiff is a pioneer in the field of automated self-cleaning litter boxes, which it manufactures and sells under the brand name Litter-Robot®. Whisker's Litter-Robot products harness rotation and gravity to separate waste from clean litter, disperse it into a fully-enclosed waste drawer, and then produce a clean bed of litter for the next use. Whisker's innovative design enables pet owners to avoid physically interacting with waste, reduces odor, and conserves cat litter. Whisker's newer Litter-Robot models also collect data on pet usage and communicate it to pet owners via an integrated app. Over the years, Whisker's models have become wildly successful, with rave reviews and hundreds of thousands of sales.

---

[1] Based on this Court's discussion of Plaintiff's allegations in the orders on Defendants' motion to dismiss (Dkt. 55, 56), Plaintiff limits this section to the principal facts at issue in Plaintiff's Second Amended Complaint filed this week (Dkt. 58). Defendants' section appears to take a position on the complaint even as Defendants admit they have not yet reviewed it, as well as conflates the separate trademark and false advertising claims.

Whisker protects its innovative products with numerous patents. At issue are two patents (the "Patents-In-Suit"): U.S. Patent No. 9,433,185 ("the '185 Patent") and U.S. Patent No. 11,399,502 ("the '502 Patent"). Plaintiff has built strong trademark rights in LITTER-ROBOT word and design marks (the "Litter-Robot Marks").

Bolstering its common law rights, Plaintiff owns numerous federal trademark registrations, including but not limited to registrations for the word mark LITTER-ROBOT (Reg. No. 5,259,515), the litter·robot stylized mark (Reg. No. 6,227,960), and the word mark LITTER-ROBOT PINCH DETECT (Reg. No. 6,560,007), all of which were afforded a Section 2(f) claim of acquired distinctiveness by the USPTO and registered without disclaimer of any terms.

In or around April 2021, Defendants (Smarty Pear and its founder and CEO Chris Madeiras) began to offer a competing automated litter box sold as "Leo's Loo." A successor, "Leo's Loo Too," followed in October 2021. Defendants purposely positioned these products as direct competitors to the Litter-Robot products. Although Defendants represented to the public that they created and designed the products, in fact Defendants merely purchased, imported, and rebranded preexisting copycat products available on Chinese e-commerce sites such as Alibaba. The products contain the features covered by the Patents-In-Suit.

Defendants promoted their products by directly targeting consumers of Litter-Robot products. For example, starting in October 2021, Defendants began a campaign of uploading social media posts on the Smarty Pear Instagram and TikTok accounts containing the hashtags "litterrobot," "LitterRobot," and "litterrobot3." Obviously, Defendants used these as references to Plaintiff's brand and products, and to draw traffic and interest in its products. In addition, Defendants made – and continue to make – false and misleading statements meant to induce customers to purchase their products. The Complaint highlights a number of these statements, including false and misleading claims that Leo's Loo Too contains an ultraviolet sanitization feature that is "99% effective at eliminating bacteria, parasites, and viruses." This statement is repeated by customers – indicating it was a driver in purchasing interest – and resellers alike. Defendants also falsely advertised that Leo's Loo Too was the "first" to contain certain features

2          JOINT CASE MANAGEMENT STATEMENT
                    CASE NO. 3:22-CV-04261-VC

like voice controls and an app connection, as well as statements implying that "over half a million cats and their owners" have purchased Defendants' products. Consumers have relied on these false statements to purchase Defendants' products, thereby harming Whisker and the public.

On April 21, 2023, the Court held that Plaintiff stated a claim against both Defendants as to seven out of nine counts (infringement of the '502 Patent, trademark infringement, false advertising, and unfair competition). (Dkts. 55, 56.) The Court granted leave to amend the other two patent claims, holding that the photos in Plaintiff's First Amended Complaint did not identify all of the limitations of the '185 and '889 Patents. (*Id.*) On May 3, 2023, Plaintiff filed a Second Amended Complaint clarifying its allegations as to the '185 Patent. (Dkt. 58.)

**Defendants' Position:** The Court recently ruled on Defendants' Motion to Dismiss. That Order substantially narrowed the issues in the case, dismissing two patents and several of the business related claims. Several claims remain:

Patent Claim

**US 11,399,502**

Claim 1 of the '502 Patent requires "one or more sensors configured to detect one or more conditions of the device and transmit one or more signals related to the one or more conditions" and "a controller in communication with the one or more sensors and is adapted to receive the one or more signals, wherein the controller is configured to determine one or more positions of the chamber based on the one or more signals received from the one or more sensors and interpret the one or more signals as one or more status signals." Ex. 3 at 36:53-62 (emphasis added).

The claim chart merely recites the claim language above an image from the Smarty Pear user manual referencing a "Safety Mode" entered in response to a detection by the "anti-pinch sensor" and a picture of a circuit board contained inside the accused device. Ex. 8 at pp. 12-13.

The images in Whisker's Amended Complaint and claim chart fail to provide any proof that the accused products have a "controller… configured to determine one or more positions of the chamber based on the one or more signals received from the one or more sensors" as required by Claim 1. Nor do they even attempt to explain how the identified sensors of the accused devices – a radar sensor, an anti-pinch sensor, or a weight sensor – could be used by a controller to

"determine one or more positions of the chamber."

Defendants will wait to try and understand how Plaintiff is interpreting the claims to understand how it can sustain an infringement analysis. Plaintiff believes that any claim interpretation that could potentially read on Defendant's products would render the claims invalid.

Plaintiff recently served an Amended Complaint. Defendant has not yet reviewed that pleading.

Trademark And Unfair Competition Claims

Based on the Court's recently entered Orders deciding Defendants' Motion to Dismiss (Dkt. No. 29), it would seem unnecessary to re-introduce the Court to the trademark and unfair competition claims, which the Court no doubt remains familiar with. Defendants are confident that the evidence developed through discovery will establish the absence of an intent to deceive and that in fact, consumers were not actually deceived by any of Defendants' statements or conduct.

**3. Legal Issues**

**Plaintiff's Position:** The legal issues raised by Plaintiff's Second Amended Complaint include:

(i) whether Defendants directly infringe, either literally or under the doctrine of equivalents any asserted claim of the Patents-in-Suit;

(ii) whether Defendants indirectly infringe, either literally or under the doctrine of equivalents, any asserted claim of the Patents-in-Suit;

(iii) whether any of the asserted claims are invalid;

(iv) whether Defendants' conduct infringes the Litter-Robot Marks;

(v) whether Defendants' conduct constitutes false and misleading advertising under the law; and

(vi) whether Defendants' conduct constitutes unfair competition under state and common law;

(vii) if Defendants infringe a valid claim of the Patents-in-Suit, whether Plaintiff is entitled to a permanent injunction pursuant to 35 U.S.C. § 283;

(viii) if Defendants infringe a valid claim of the Patents-in-Suit, whether Plaintiff is entitled to damages, including prejudgment and post-judgment interest and its costs incurred in this action, pursuant to 35 U.S.C. § 284;

(ix) if Defendants infringe a valid claim of the Patents-in-Suit, whether Defendants' infringement was willful pursuant to 35 U.S.C. § 284;

(x) whether this case is exceptional under 35 U.S.C. § 285, entitling Plaintiff to an award of reasonable attorney's fees;

(xi) whether this case is exceptional thereby warranting costs and fees under 35 U.S.C. § 285; and

(xii) the appropriate measure of any additional damages and injunctive relief in connection with the above.

**Defendants' Position:** Defendants understand that Plaintiff intends to file an Amended Complaint, at which point Defendants will respond and are considering the assertion of a number of potential Counterclaims. Accordingly, at this time, the issues are as follows:

1) Whether Plaintiff's patent claims are not infringement because Plaintiff cannot establish the presence of the required elements for the asserted patent;
2) Whether Plaintiff's trademark claims cannot be sustained because, mere months before filing this action, Plaintiff disclaimed trademark protection for the exact words it is accusing of infringing, and has not pleaded secondary meaning since those representations;
3) Whether Plaintiff's unfair competition claims cannot be sustained because the evidence does not establish an intent to deceive or actual consumer deception;
4) Whether Defendants should be entitled to fees and costs in defending against implausible claims.

**3. Motions**

On October 12, 2022, Defendants moved to dismiss the First Amended Complaint (Dkt. 29). On April 21, 2023, the Court granted the motion in part with leave to amend, and denied it in part (Dkts. 55, 56). Plaintiff also moved to compel Defendants to respond to discovery requests (Dkt. 54). The Parties anticipate that both sides may file a motion for summary judgment at the appropriate time, and that motion practice may arise in the context of discovery disputes.

**4. Amendment of Pleadings**

Plaintiff proposes to set July 10, 2023 as the deadline to add parties and/or amend the pleadings, while Defendants propose September 5, 2023.

**5. Evidence Preservation**

The Parties have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information ("ESI Guidelines") and confirm that they have met and conferred pursuant to Fed. R. Civ. P. 26(f) regarding reasonable and proportionate steps taken to preserve evidence relevant to the issues reasonably evident in this action. The Parties intend to discuss and negotiate a proposed ESI Order based on this District's model order, but are not in agreement as to material terms (the current state of the dispute is discussed below).

**6. Disclosures**

The Parties have stipulated to exchange initial disclosures as required under Fed. R. Civ. P. 26 by May 10, 2023. Each Party may supplement, amend, or modify their disclosures as discovery continues.

**7. Discovery**

    **A. Discovery Taken to Date & Scope of Anticipated Discovery**

Plaintiff served a first set of Requests for Production and Interrogatories on March 14, 2023, and served an additional set of Requests for Production, Interrogatories, and Requests for Admission on May 3, 2023.

The Parties expect to negotiate the terms of a stipulated protective order based on the Model Stipulated Protective Order Litigation Involving Patents, Highly Sensitive Confidential

Information and/or Trade Secrets and anticipate presenting that to the Court for approval following the CMC.

**Plaintiff's Position:**

<u>Discovery Dispute</u>. The Parties are currently in a dispute regarding Defendants' responses to Plaintiff's first set of discovery, served nearly two months ago. Defendants, however, are taking inconsistent positions. The bottom line is that Defendants' responses and documents are overdue and there is no valid basis to withhold them. The statement below from Defendants is copied directly from an email sent to Plaintiff on May 2, in which Defendants stated that they would withhold document production for a variety of reasons. At a meet-and-confer this week on May 3, however, Defendants counsel offered a revised view, indicating that production would be forthcoming. Nonetheless, despite Plaintiff's best efforts, Defendants declined to confirm Plaintiff's understanding, and declined to revise their section of the joint statement (although gave permission to file as it stands). This leaves Plaintiff with no real understanding of what Defendants plan to produce or withhold, or when they plan to do it—notwithstanding this Court's instruction on April 24 that "[d]iscovery may proceed immediately." (Dkt. 56 at 5.)

This is only the latest in a line of delay tactics. Even after Plaintiff was forced to move to compel, and the Court ordered discovery to proceed, Defendants' counsel represented on April 26, that they *had not even begun* the process of collecting documents. Counsel also contended that before Defendants could "formulate a process for address any remaining objections" and before "proposing a process for and the timing of" Defendants' responses, Plaintiff was required to disclose which patent claims it would be amending and circulate proposals for a protective order and ESI order. Plaintiff objected, but the next day, it identified the forthcoming patent claims, and the day after, circulated a draft protective order.

The following week, Defendants again moved the goalposts. On May 2, Defendants' counsel took the position—nowhere mentioned in their responses, and therefore waived—that Plaintiff's first set of discovery did not cover emails. That is demonstrably false: Plaintiff's requests included "electronic mail" in the definition of "Documents" and so requests seeking "Documents" cover email on their face. It is absurd that Defendants believe that emails and other

1  communications are not covered by the requests. Defendants also asserted (again for the first
2  time) that this case is presumptively governed by the District's model ESI order on patent
3  litigation, and used that as another excuse to avoid production of communications including
4  emails. An ESI order is not a prerequisite to producing documents in response to straightforward
5  requests. Then, Defendants refused to produce documents unless Plaintiff identified Defendants'
6  custodians and search terms. However, Defendants have provided no information whatsoever on
7  the nature of their collection or even served Initial Disclosures such that Plaintiff could even be in
8  a position to offer, much less negotiate over, custodians or search terms. Finally, Defendants
9  unilaterally stated that they would withhold discovery based on the '185 Patent, even as Plaintiff
10 filed a Second Amended Complaint this week.

During a meet-and-confer on May 3, Defendants appeared to agree that they (1) would not withhold discovery based on an objection to the '185 Patent, (2) would produce a substantial production of documents by May 12, and (3) would provide custodian information and email volume by the end of the week (thereby conceding that emails were covered by the requests), but would not withhold documents based on the lack of an agreed-upon ESI order.

Later, Defendants' counsel backtracked via email, stating that Defendants "have not committed to produce emails until we have an ESI order in place," and "do not intend to produce all emails responsive to the broad first set of requests."

This case has been pending for many months. Plaintiff served discovery months ago. Plaintiff is entitled to discovery from Defendants. Defendants are not entitled to (1) limit production of responsive emails despite failing to timely object, (2) withhold their email production altogether pending the entry of an ESI order, and (3) withhold discovery based on the '185 Patent.

<u>Remaining scope of discovery</u>. At a high level, Plaintiff anticipates fact discovery on topics including:

(i) the facts and circumstances underlying the manufacturing and importing of Defendants' products;

(ii) the facts and circumstances underlying Defendants' sale and marketing of the Leo's

1  Loo and Leo's Loo Too, including the various advertising and marketing statements they made in
connection with their products;

(iii) the facts and circumstances underlying Defendants' use of Plaintiff's trademark to drive traffic and sales, including their social sale and marketing of the Leo's Loo and Leo's Loo Too, including social media engagement

(iv) Defendants' communications with third parties regarding Plaintiff and its products;

(v) evidence of any consumer confusion between the Parties and their respective products;

(vi) information relating to the falsity and materiality of Plaintiff's promotional statements, and Plaintiff's awareness of same;

(vii) any profits and costs associated with the sale of Defendants' products;

(viii) non-privileged matters relevant to the claims and defenses in this action and proportional to the needs of this case, including but not limited to the alleged making, using, selling, offering for sale, and/or importing into this country of Defendants' products;

(ix) alleged infringement of the asserted claims of the Patents-in-Suit;

(x) design, development, function, characteristics, and methods of use of Defendants' products;

(xi) validity of the Patents-in-Suit; and

(xii) damages issues.

Plaintiff also anticipates expert discovery on issues including but not limited to false advertising, consumer confusion, and damages.

**Defendants' Position:** Defendants are in the process of gathering the technical documents requested in Plaintiff's document requests. As for the various requests related to the "patents-in-suit", Defendants are limiting responses to the '502 patent. A substantial amount of the information that is sought will be caught up in emails, which are not covered by the current requests. Defendants are working toward having documents ready for production and anticipate providing Plaintiff with an estimated date for Defendants' initial document production within a week. Defendants anticipate that a substantial document production to Plaintiff can be accomplished by the end of next week (May 12, 2023). Defendants will update their Interrogatory

responses at that time as well.

The parties are close to reaching agreement on a Protective Order. Defendants are working under the assumption that the parties will follow the procedures of the Model Order for ESI in Patent Litigation.

### B. Privilege Logs

The Parties agree that privileged or protected documents created on or after the commencement of this action shall not be included on any privilege log except as otherwise agreed to by the parties or ordered by the Court. The Parties will work to agree to a mutually agreeable deadline for privilege logs.

### C. Topics Required Under Patent Local Rule 2-1(b)

*i. Proposed modification of the obligations or deadlines set forth in these Patent Local Rules to ensure that they are suitable for the circumstance of the particular case (see Patent L.R. 1-3).*

The Parties propose retaining the schedule set forth in the Patent Local Rules, except that the Parties should complete any necessary claim construction expert depositions after the filing of the expert's claim construction declaration, and before the responsive briefing is submitted.

The Parties have set forth in Section 16 ("Scheduling") their respective proposals concerning the timing of the required disclosures under Patent Local Rules.

*ii. The scope and timing of any claim construction discovery (including disclosure of and discovery from any expert witness permitted by the court) and damages discovery;*

The Parties proposals concerning the timing of claim construction and damages discovery is set forth below in Section 16 ("Scheduling").

*iii. The format of the Claim Construction Hearing, including whether the Court will hear live testimony, the order of presentation, and the estimated length of the hearing;*

The Parties believe that the Claim Construction Hearing will be coupled with the Summary Judgment Hearing, pursuant to this Court's Standing Order. The Parties believe that the claim construction should be conducted on a claim term by claim term basis, with the Party seeking to advance a claim construction that is not the plain and ordinary meaning presenting

1 | first. The Parties presently estimate a single day for the hearing, and expect to offer live testimony.

*iv. How the parties intend to educate the court on the technology at issue.*

The Parties currently intend to present an overview of the technology during the Claim Construction and Summary Judgment Hearing. The Parties reserve the right to request a separate claim construction tutorial in accordance with the Court's Standing Order.

*v. The parties shall provide the court with a non-binding, good-faith estimate of the damages range expected for the case along with an explanation for the estimates. If either party is unable to provide such information, that party shall explain why it cannot and what specific information is needed before it can do so. Such party shall also state the time by which it should be in a position to provide that estimate and explanation.*

**Plaintiff's Position:** The Parties have not yet exchanged information relevant to the damages inquiry.

Plaintiff seeks an amount that adequately compensates it for Defendants' infringement, which is no less than a reasonable royalty together with interests and costs. *See* 35 U.S.C. § 284. As the Parties have yet to exchange any information regarding sales of the Products that are the subject of the case, Plaintiff is not in a position to approximate its damages range.

**Defendants' Position:** Defendants have not yet served any Counterclaims in this matter. The Parties have not yet exchanged information relevant to the damages inquiry. Accordingly, Defendants' position is that attempting to define the scope of damages at issue in this litigation is premature and cannot yet be assessed with any degree of certainty until the Plaintiffs' and Defendants' claims are fixed by the finalization of the parties' pleadings and discovery has proceeded as to subject matter relevant to the calculation of damages being sought by the Parties.

**8. <u>Class Actions</u>**

Not applicable.

**9. <u>Related Cases</u>**

None.

10. **Relief**

**Plaintiff's Position:** Whisker seeks the following relief:

(A) A permanent injunction enjoining Defendants and their related companies, affiliates, officers, agents, employees, successors, and assignees—and all persons in active concert or participation with them who receive actual notice of such injunction—from (i) using or marketing the Litter-Robot Marks or any confusingly similar mark in connection with the marketing, promotion, advertising, sale, or distribution of any products or services, including on Defendants' social media pages; (ii) directly or indirectly using in commerce or causing to be published or otherwise disseminated any promotional or advertising materials containing any false or misleading statements about Smarty Pear or its products; (iii) further infringement of the Patents-in-Suit; and (iv) engaging in any activity constituting unfair competition with Plaintiff;

(B) a judgment that Defendant has directly infringed and continues to directly infringe one or more asserted claim under at least 35 U.S.C. § 271(a);

(C) a judgment that Defendant has indirectly infringed and continues to indirectly infringe one or more asserted claim under at least 35 U.S.C. § 271 (b) and/or (c);

(D) a judgment that Defendant's infringement under at least 35 U.S.C. §§ 271(a), (b), and (c) has been and continues to be willful;

(E) a preliminary and permanent injunction prohibiting Defendant and its officers, agents, representatives, assigns, licenses, distributors, servants, employees, related entities, attorneys, and all those acting in concert, privity, or participation with them, from: infringing, inducing, or contributing to the infringement of any asserted claim;

(F) monetary relief, namely:

    (i) Defendants' profits, gains, and advantages derived from Defendants' unlawful conduct;

    (ii) all damages sustained by Whisker as a result of Defendants' unlawful conduct, including the cost of corrective advertising;

    (iii) trebled damages under 15 U.S.C. § 1117;

    (iv) attorneys' fees and costs under 15 U.S.C. § 1117;

12     **JOINT CASE MANAGEMENT STATEMENT**
**CASE NO. 3:22-CV-04261-VC**

(v) exemplary and punitive damages as the Court finds appropriate to punish Defendants' misconduct and deter and future willful conduct;

(vi) pre-judgment and post-judgment interest;

(vii) with respect to Plaintiff's patent infringement claims,

(1) an award of monetary damages, to be obtained from any and all of Defendant's assets, sufficient to compensate Plaintiff for Defendant's patent infringement, together with interest, pursuant to at least 35 U.S.C. § 284;

(2) an award of enhanced damages, to be obtained from any and all of Defendant's assets, of three times the amount found or assessed for Defendant's willful patent infringement, pursuant to 35 U.S.C. § 284, including prejudgment interest on such damages;

(3) an order finding this case exceptional and awarding Plaintiff its attorneys' fees, to be obtained from any and all of Defendant's assets, pursuant to 35 U.S.C. § 285, including prejudgment interest on such fees;

(4) an accounting and supplemental damages for all damages occurring after the period for which damages discovery is taken, and after discovery closes, through the Court's decision regarding the imposition of a permanent injunction;

(5) an award of Plaintiff's costs and expenses of this suit as the prevailing party, to be obtained from any and all of Defendant's assets; and

(6) any other relief as the Court deems necessary, just, and/or proper.

(G) pursuant to 15 U.S.C. § 1118, delivery for seizure or destruction at Plaintiff's election all products, labels, signs, prints, packages, wrappers, receptacles, advertisements, stickers, tags, warranty booklets, promotional materials, and other items in their possession or under their control on which the Litter-Robot Marks (or any marks likely to be confused with those marks) appears; and

(H) any other and further relief as the Court may deem just and equitable.

**Defendants' Position:** Defendants have not yet served any Counterclaims in this matter. Accordingly, Defendants' cannot yet assess the nature and scope of the relief they may additionally be requesting as part of this litigation.

11. **Settlement and ADR**

Pursuant to ADR Local Rule 3-5, the Parties have discussed the prospects of alternative dispute resolution. The Parties believe that ADR before a Magistrate Judge may be useful at a later date..

12. **Other References**

None proposed. The Parties do not believe that the issues and technology in this case are sufficiently complex for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

13. **Narrowing of Issues**

The Parties do not believe that any narrowing of the issues is possible at this time, but reserve the right to revisit the prospect of doing so.

14. **Expedited Trial Procedures**

The Parties agree that this action is not appropriate for the expedited trial procedure.

15. **Scheduling**

The Parties' specific scheduling proposals are indicated below.

| Event | Plaintiff's Proposal[2] | Defendants' Proposal[3] |
|---|---|---|
| Operative Deadlines | | |
| Joint Case Management Statement | Friday, May 5, 2023 | |

---

[2] Plaintiff's proposed schedule complies with and was calculated pursuant to the Civil Local Rules, Patent Local Rules, and the Court's Standing Order. Defendants' proposed schedule does not comply with these rules, and instead needlessly delays the case. For example, Defendants prolong discovery by 4 weeks to allow for amended pleadings, even as the majority of Plaintiff's claims are now largely set following the Court's rulings and Defendants have filed no counterclaims. Nor is there any reason to postpone trial by 12 weeks.

[3] Defendants proposal provides a reasonable time for Plaintiff to file yet another Amended Pleading, if it can, for Defendants to file additional motions if necessary, for Defendants to file responsive pleadings including likely counterclaims, and for Plaintiff to respond to Defendants' likely counterclaim. In contrast, Plaintiff's proposal furthers its apparent goals of increasing litigation burdens and costs by providing it offensive discovery before its claims are settled or Defendants' claims even pleaded.

| Initial Disclosures | Wednesday, May 10, 2023 | |
|---|---|---|
| Initial Case Management Conference | Friday, May 12, 2023 | |
| Fact Discovery | | |
| Infringement contentions | Friday, May 26, 2023 | Wednesday, June 21, 2023 |
| Invalidity contentions | Monday, July 10, 2023 | Tuesday, August 1, 2023 |
| Last day to amend pleadings | Monday, July 10, 2023 | Tuesday, September 5, 2023 |
| Exchange proposed claim terms | Monday, July 24, 2023 | Tuesday, September 19, 2023 |
| ADR deadline | Thursday, August 10, 2023 | Friday, September 29, 2023 |
| Exchange preliminary claim construction | Monday, August 14, 2023 | Monday, October 2, 2023 |
| Damages contentions | Tuesday, August 29, 2023 | Tuesday, October 17, 2023 |
| Joint claim construction statement | September 8, 2023 | Friday, October 27, 2023 |
| Case Management Conference | Thursday, September 14, 2023 or at Court's convenience | Thursday, November 2, 2023 or at the Court's convenience |
| Responsive damages contentions | Thursday, September 28, 2023 | Thursday, November 16, 2023 |
| Claim construction / fact discovery cutoff | Monday, October 8, 2023 | Thursday, November 30, 2023 |
| Expert Discovery | | |
| Expert discovery - opening reports | Monday, November 6, 2023 | Friday, January 5, 2024 |
| Expert discovery - rebuttal reports | Monday, December 4, 2023 | Friday, February 9, 2024 |
| Expert discovery cutoff | Monday December 18, 2023 | Friday, March 1, 2024 |
| Dispositive Motions | | |
| Summary Judgment / Claim Construction - Opening Brief | Thursday, January 11, 2024 or at Court's convenience | Friday, March 29, 2024 or at the Court's convenience |
| Summary Judgment / Claim Construction - Hearing | Thursday, March 14, 2024 or at Court's convenience | Monday, June 3, 2024 or at the Court's convenience |

| | Trial | |
|---|---|---|
| Pretrial conference | Monday, May 6, 2024 or at Court's convenience | Monday, July 22, 2024 or at the Court's convenience |
| Trial | Monday, May 20, 2024 [4-5 days] or at Court's convenience | Monday, August 12, 2024 or at the Court's convenience |

**16.    Trial**

Plaintiff proposes May 6, 2024 as the pre-trial conference date and May 20, 2024 or the first available date thereafter convenient to the Court, as the trial date. Defendants propose July 22, 2024 as the pre-trial conference date and August 12, 2024, or the first available date thereafter convenient to the Court as the trial date. Plaintiff currently anticipates the trial will take approximately four to five court days. Defendants respectfully submit that estimating the number of trial court days required for this case is premature since the pleadings are not closed and discovery has yet to commence. Both sides have reserved their right to a trial by jury of any issues so triable.

**17.    Disclosure of Non-Party Interested Entities or Persons**

The Parties have each filed the required disclosures pursuant to Fed. R. Civ. P. 7.1 and L.R. 3-15 and have no further disclosures in that regard.

**18.    Professional Conduct**

Attorneys of record for all Parties have reviewed the Northern District of California Guidelines for Professional Conduct.

**19.    Other**

Nothing further at this time.

Dated: May 5, 2023

COOLEY LLP

*/s/ Bobby Ghajar*
Bobby Ghajar

*Attorney for Plaintiff*
Automated Pet Care Products LLC d/b/a Whisker

Dated: May 5, 2023

MCCAULLEY LAW GROUP LLC

*/s/ Richard McCaulley /*
Richard T. McCaulley

*Attorney for Defendants*
PurLife Brands, Inc. d/b/a Smarty Pear, Chris Madeiras

**ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(h)**

I hereby attest that I obtained concurrence in the filing of this document from each of the other signatories. I declare under penalty of perjury that the foregoing is true and correct.

Dated: May 5, 2023

COOLEY LLP

*/s/ Bobby Ghajar*

*Attorney for Plaintiff*
Automated Pet Care Products LLC d/b/a Whisker