**MCCAULLEY LAW GROUP LLC**
JOSHUA V. VAN HOVEN (CSB No. 262815)
E-Mail: josh@mccaulleylawgroup.com
3001 Bishop Dr., Suite 300
San Ramon, California 94583
Telephone: (925) 302-5941

RICHARD T. MCCAULLEY (*pro hac vice*)
E-Mail: richard@mccaulleylawgroup.com
180 N. Wabash Avenue, Suite 601
Chicago, Illinois 60601
Telephone: (312) 330-8105

Attorneys for Defendants,
PURLIFE BRANDS, INC., d/b/a SMARTY PEAR,
and CHRIS MADEIRAS

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| Automated Pet Care Products, LLC d/b/a Whisker, a Michigan corporation,<br><br>Plaintiff,<br><br>v.<br><br>PurLife Brands, Inc. d/b/a Smarty Pear, a Delaware corporation, and Chris Madeiras, an individual,<br><br>Defendants. | Case No. 3:22-cv-04261-VC<br><br>Defendants' Smarty Pear and Chris Madeiras' Answer to SA Complaint, Affirmative Defenses, Counterclaims<br><br><br>JURY TRIAL DEMANDED |
| PurLife Brands, Inc. d/b/a Smarty Pear, and Chris Madeiras,<br><br>Counterclaim-Plaintiffs,<br><br>v.<br><br>Automated Pet Care Products, LLC d/b/a Whisker, and Jacob Zuppke,<br><br>Counterclaim-Defendants. | |

Defendants PurLife Brands, Inc. d/b/a Smarty Pear ("Smarty Pear") and Chris Madeira

("Madeiras") hereby sets forth their Answer, Affirmative Defenses and Counterclaims to the

Second Amended Complaint ("SA Complaint") filed by Plaintiff Automated Pet Care Products,

LLC d/b/a Whisker ("Whisker"). (Dkt. 58).

Except as otherwise expressly set forth below, Defendants deny knowledge or

information sufficient to form a belief as to the truth or falsity of each and every allegation

contained in the SA Complaint. Any allegation, averment, contention or statement in the SA

Complaint not specifically and unequivocally admitted is denied, including any statement in a

heading.[1] Defendants preserve all objections regarding the admissibility of any allegations or

statements made in the SA Complaint. Defendants further deny that Plaintiff is entitled to the

requested relief or any other relief. Accordingly, Defendants respond to each of the paragraphs of

the SA Complaint as follows:

## RESPONSE TO "INTRODUCTION"

For over 20 years since pioneering the litter barrel sifting process, Plaintiff Whisker has
produced LITTER-ROBOT®, the leading brand of self-cleaning litter boxes in the world. In that
time, Whisker has grown to a team of over 35 engineers and over 300 other team members. It has
invested tens of millions in marketing to grow awareness of LITTER-ROBOT and the category
as a whole, and millions in research and development to ensure each new model of LITTER-
ROBOT remains best in class. All the while, Whisker has proudly invested more than $13
million in recent years to continue manufacturing its devices in the United States, as it has for 22
years. Those efforts have paid off: LITTER-ROBOT is the best-selling and most-beloved
product in its category with more than 20,000 5-star reviews across Whisker's various models,
and has received acclaim by publishers such Inc5000, Good Housekeeping, CNN, and the New
York Times.

---

[1] For the Court's convenience, Defendants generally adopt the headings used in Plaintiff's SA
Complaint. In so doing, Defendants do not admit that the headings are accurate and reserve the
right to contest any statement or characterization set forth under them. To the extent the
headings constitute allegations requiring a response, they are denied.

Whisker's success caught the attention of many, including Defendant Smarty Pear and its founder, Defendant Chris Madeiras. Although Whisker welcomes fair competition, Defendants decided to shortcut the innovation process, rip off Whisker's product, and infringe Whisker's intellectual property rights with impunity. Defendants recently launched "Leo's Loo" and "Leo's Loo Too," two knockoffs imported from China that infringe Whisker's patents, while falsely representing that they designed the products. Moreover, Defendants have attempted to gain an unfair edge in the market by misleadingly using LITTER-ROBOT's trademarks and mimicking Whisker's marketing, going so far as to imitate Whisker's website layout and copy. Meanwhile, Defendants make false and misleading statements to intentionally deceive pet parents: for example, that their product is the first self-cleaning litter box connected to an app; that their product's UV lamp can sterilize "99.9%" of cat litter; and that "half a million cats and their owners" are already using their products. This hurts not only Whisker, but all innovators who risk everything to invent new products without taking shortcuts, and consumers who care about buying the right products for their pets. Accordingly, Whisker has had no choice but to file this suit against Defendants.

Defendants object to Plaintiff's so-called "Introduction" since it is not in the form of numbered paragraphs as required by Fed.R.Civ.P. 10(b). Additionally, Defendants object because the "Introduction" does not comply with the requirements of Fed.R.Civ.P. 8(a) and (d) by failing to be simple, concise, and direct. To the extent Plaintiff's so-called "Introduction" is considered part of the allegations pleaded in the Second Amended Complaint, Defendants deny all such allegations.

## RESPONSE TO "THE PARTIES"

Paragraph 1: Plaintiff Automated Pet Care Products, LLC d/b/a Whisker ("Whisker") is a limited liability company organized under the laws of the State of Michigan with its principal place of business at 1080 W Entrance Drive, Auburn Hills, Michigan 48326.

    1.    Defendants deny the allegations in paragraph 1 because they lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 1.

Paragraph 2: On information and belief, Defendant PurLife Brands, Inc. d/b/a Smarty Pear ("Smarty Pear") is a corporation organized under the laws of the State of Delaware with its principal place of business at 96 Eleanor Avenue, Los Altos, California 94022.

2.      Admitted that PurLife Brands, Inc. d/b/a Smarty Pear ("Smarty Pear") is a

corporation organized under the laws of the State of Delaware. Defendants deny that Smarty

Pear's principal place of business is at 96 Eleanor Avenue, Los Altos, California 94022.

Paragraph 3: Defendant Chris Madeiras ("Madeiras") is, and at all relevant times was, the
Founder and Chief Executive Officer of Smarty Pear, and authorizes, controls, and directs
Smarty Pear's marketing and advertising strategy, including the conduct complained of herein.
He is the conscious, dominant, and active force behind the wrongful acts of Smarty Pear
complained of herein, which wrongful acts he has engaged in for the gain and benefit of Smarty
Pear and for his own individual gain and benefit. On information and belief, Defendant Madeiras
is an individual residing in Contra Costa County, California.

3.      Admitted that Defendant Chris Madeiras is the founder and chief executive officer

of Smarty Pear. Defendants deny the remaining allegations of paragraph 3.

Paragraph 4: At all relevant times, each of the Defendants was the agent and alter ego of the
other Defendant, acting for and on behalf of both Defendants as a single enterprise, with unity of
purpose and control.

4.      Denied.

RESPONSE TO "JURISDICTION, VENUE, AND INTRADISTRICT ASSIGNMENT"

Paragraph 5: This is an action for patent infringement arising under the Patent Laws of the
United States, 35 U.S.C. § 1, et seq., trademark infringement and unfair competition in violation
of Section 32 and 43(a) of the Lanham Act, §§ 1114 and 1125(a), et seq., and violations of
statutory and common law of the State of California. Accordingly, this Court has subject-matter
jurisdiction over the federal claims pursuant to 15 U.S.C. § 1121, as well as 28 U.S.C. §§ 1331
and 1338(a).

5.      Defendants admit that Plaintiff's Second Amended Complaint purports to assert

claims for patent infringement, trademark infringement and unfair competition, and for

violations of statutory and common law of the State of California. Defendants deny that any of

Plaintiff's claims are valid or involve actual violations of the laws cited in paragraph 5.

Defendants admit that this Court has subject-matter jurisdiction over any legitimate federal claims.

Paragraph 6: Jurisdiction is also proper under 28 U.S.C. § 1332(a)(2) as the matter is between parties in different states (Defendants in California, and Whisker in Michigan), and because the amount in controversy, exclusive of interest and costs, exceeds $75,000.

    6.      Admitted.

Paragraph 7: All other claims asserted in this action arise out of the same transaction or occurrence, so that this Court has supplemental jurisdiction over all additional claims asserted in this case under 28 U.S.C. § 1367(a).

    7.      Defendants admit that Plaintiff's Second Amended Complaint purports to assert other claims that allegedly arise out of the same transaction or occurrence. Defendants deny that any of these "other claims" are valid or involve actual causes of action which would entitle Plaintiff to relief. Defendants admit that this Court has supplemental jurisdiction over any legitimate additional claims properly asserted in the Second Amended Complaint.

Paragraph 8: This Court has personal jurisdiction over Defendants because Smarty Pear is headquartered in Los Altos, California and Madeiras resides in Contra Costa County, both within this District, and regularly conduct business, including advertising, offering to sell, and selling their services in this District and elsewhere in the United States. Further, Defendants' wrongful acts complained of herein took place, and have caused injury to Whisker, within this judicial district.

    8.      Defendants admit that Smarty Pear has a place of business located within this District and that Madeiras resides within this District. Defendants admit the Court has personal jurisdiction over the Defendants, but otherwise deny the allegations in paragraph 8.

Paragraph 9: Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b)–(c) and 1400(a)–(b) because Defendants reside in this District and are subject to personal jurisdiction in this District. Venue is also proper in this District because the acts that are the subject of this Complaint were committed at least in part in this District.

9.     Defendants admit venue is proper and Smarty Pear transacts business in this

District, but otherwise Defendants deny the allegations of paragraph 9.

Paragraph 10: Pursuant to Civil Local Rule 3-2(c) and General Order No. 44, this case is
properly assigned to any division of this Court because it involves intellectual property claims.

10.     Defendants lack knowledge or information sufficient to form a belief about the

truth of the allegations in paragraph 10 and therefore deny the same.

## RESPONSE TO "FACTUAL BACKGROUND"

Paragraph 11: For over 22 years, Whisker (formerly known as AutoPets) has designed,
engineered, manufactured, and offered for sale highly innovative and technologically advanced
pet products in the United States. Whisker's flagship product line is the LITTER-ROBOT
product, which it launched in April 2000 as the first automatic barrel-sifting litter box.

11.     Defendants deny the allegations in paragraph 11 because they lack knowledge or

information sufficient to form a belief as to the truth of the allegations in paragraph 11.

Paragraph 12: Before the LITTER-ROBOT product, litter boxes were largely dependent on
manual hand-scooping or sifting. Traditional litter boxes accumulate litter clumps and waste,
requiring further manual interaction to clean up. A few products had experimented with a
motorized rake, but they were merely a mechanical analog to manual scooping and suffered from
the same limitations as conventional litter boxes.

12.     Defendants deny the allegations in paragraph 12 because they lack knowledge or

information sufficient to form a belief as to the truth of the allegations in paragraph 12.

Paragraph 13: Over time, Whisker's LITTER-ROBOT product changed the landscape. The first
automatic barrel-sifting litter box, the LITTER-ROBOT product harnessed rotation, and gravity
to separate waste from clean litter and disperse it in a fully-enclosed waste drawer. This design
provides material benefits to both pets and their owners. For the pets, the automatic cleaning
cycle produces a clean bed of litter after each use. Clean litter also enables the device to be used
with multiple pets, who may be otherwise territorial. Owners, meanwhile, do not have to scoop
out any waste litter, and can enjoy significant odor reduction. Further, by conserving more clean
litter, owners can save money. Finally, newer models of the LITTER-ROBOT product collect

data based on pet usage, and conveys it via an integrated app. This gives pet owners real-time insight into their cats' behaviors, alerting them to irregular usage and possible health concerns.

13.     Defendants deny the allegations in paragraph 13 because they lack knowledge or

information sufficient to form a belief as to the truth of the allegations in paragraph 13.

Paragraph 14: Over the years, Whisker has upgraded and innovated on the LITTER-ROBOT product. Currently, Whisker offers three models. The LITTER-ROBOT 3 model, launched in 2015, features a more ergonomic and spacious litter chamber resulting from a patented tilted axis of rotation, as well as automatic cycling, cat sensors, pinch detection, sleep mode, an adjustable wait timer, and night light. Each of these features made it wildly successful. A Wi-Fi enabled version, LITTER-ROBOT 3 CONNECT, followed in 2017, which connects to the Whisker app to facilitate mobile control and remote monitoring, and can be used with home automation systems like Alexa and Google Assistant through the widely used If This Then That automation platform.

14.     Defendants deny the allegations in paragraph 14 because they lack knowledge or

information sufficient to form a belief as to the truth of the allegations in paragraph 14.

Paragraph 15: Most recently, on May 10, 2022, Whisker launched its newest model, LITTER-ROBOT 4. It features a sleek, modern design, quiet operation, a sealed waste drawer with odor-absorbing features, and the patented tilted axis of rotation. Like LITTER-ROBOT-3, LITTER-ROBOT 4 features a cat sensor, but now has an accurate scale that enables further safety and owner insights. Moreover, LITTER-ROBOT 4 includes time-of-flight laser sensors that are uniquely oriented on the device to enable more advanced cat detection, litter level monitoring, and waste drawer level reporting. These sensors are covered by a separate patent, as discussed below.

15.     Defendants deny the allegations in paragraph 15 because they lack knowledge or

information sufficient to form a belief as to the truth of the allegations in paragraph 15.

Paragraph 16: Below are images of Whisker's LITTER-ROBOT product models.

| **LITTER-ROBOT** (launched 2000) | **LITTER-ROBOT II** (launched 2005) |
|---|---|



| LITTER -ROBOT 3<br>(launched 2015) | LITTER-ROBOT 4<br>(launched 2022) |
|---|---|

16.     Defendants deny the allegations in paragraph 16 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 16.

Paragraph 17: It is with great pride that Whisker's LITTER-ROBOT models are designed, assembled, and serviced in the United States. Whisker ships its products from its assembly and fulfillment center in Juneau, Wisconsin.

17.     Defendants deny the allegations in paragraph 17 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 17.

Paragraph 18: Buyers may purchase the LITTER-ROBOT product through Whisker's website, or through third-party retailers such as the prominent online retailers Chewy and Amazon.

18. Defendants deny the allegations in paragraph 18 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 18.

Paragraph 19: Whisker's LITTER-ROBOT line has received rave reviews from publishers. CNN gave the LITTER-ROBOT 3 model the title of the best self-cleaning litter box.[1] *The Dodo* awarded the LITTER-ROBOT 3 CONNECT model the "Paw of Approval."[2] Meanwhile, the LITTER-ROBOT 4 model has again received glowing reviews, with Good Housekeeping naming it the "best overall self-cleaning litter box" of 2022, CNN calling it "brilliantly designed," The Daily Beast calling it a "game changer," and Best Products stating that it is "at the top of the game in terms of specs and tech."[3]

[1] Christina Vercelletto, The best litter boxes—and litter—for your cat, according to vets, CNN (Apr. 19, 2021), https://www.cnn.com/cnn-underscored/pets/best-cat-litter-box.

[2] Sam Howell, We Tried The Fanciest Litter Box In The World And It Changed Our Lives, The Dodo (June 7, 2021), https://www.goodhousekeeping.com/home/cleaning/g31206600/best-self-cleaning-litter-box/.

[3] Lynn Redmile, 6 Best Self-Cleaning Litter Boxes of 2022, Good Housekeeping Institute (May 9, 2022), https://www.goodhousekeeping.com/home/cleaning/g31206600/best-self-cleaning-litter-box/;
Noelle Ike, Never Scoop Poop Again With The Sleek, Brilliantly Designed Litter-Robot 4, CNN (May 13, 2022), https://www.cnn.com/cnn-underscored/reviews/litter-robot-4-review;
Mia Maguire, This Actually Attractive Self-Cleaning Litter Box Is a Game-Changer for Cat Parents, The Daily Beast (May 10, 2022), https://www.thedailybeast.com/litter-robot-4-review;
Eunice Lucero-Lee, The Litter-Robot 4 Is Here—And My Life Has Never Been Better, Best Products (May 10, 2022), https://www.bestproducts.com/lifestyle/pets/a39929990/litter-robot-4-review/.

19. Defendants deny the allegations in paragraph 19 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 19.

Paragraph 20: Although industry reviews are important, Whisker relies heavily on positive word-of-mouth and favorable reviews from authentic customers. Over 22 years in business, Whisker invested millions of dollars to educate consumers about its LITTER-ROBOT product alongside the self-cleaning litter box category as a whole. This has paid off. Whisker has sold over 700,000 LITTER-ROBOT devices to cat parents. Its website features over 20,000 five-out-of-five-star reviews for the LITTER-ROBOT 3 product, LITTER-ROBOT 3 CONNECT product, and their respective bundles, from customers. Similarly, the LITTER-ROBOT 3 CONNECT product is the best-reviewed self-cleaning litter box on Amazon, with nearly 1,050 five-star ratings as of July 7, 2022, and over 218 five-star user reviews. It is important to Whisker's brand that prospective customers trust other customer reviews of the LITTER-ROBOT product.

Defendants' Answer to SA Complaint
Affirmative Defenses and Counterclaims
Case No. 3:22-cv-04261-VC

20.     Defendants deny the allegations in paragraph 20 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 20.

Paragraph 21: Central to Whisker's success has been its protection of its valuable intellectual property underlying the LITTER-ROBOT product line.

21.     Defendants deny the allegations in paragraph 21 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 21.

Paragraph 22: Whisker owns by entire right, title, and interest in and to U.S. Patent No. 9,433,185 (the "'185 Patent"), titled "Automated Litter Device and Method." The '185 Patent duly and legally issued on September 6, 2016, to inventors Brad Baxter and Jason Smith from U.S. Patent Application No. 14/274,884, filed on May 12, 2014. A true and correct copy of the '185 Patent is attached as Exhibit 1 to this Complaint.

22.     Defendants deny that the '185 Patent was duly and legally issued. Defendants deny the remaining allegations in paragraph 22 because they lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 22.

Paragraph 23: The inventions of the '185 Patent are generally directed to an improved litter device for use by animals that automatically removes animal waste from litter. The innovations captured by the '185 Patent cover many important aspects of an automated pet product, but primarily focused on the novel application of a tilted axis. As opposed to a horizontal axis, a tilted rotation allowed for a larger opening and a more ergonomic space for use. It also enables a single waste port due to the tilted funneling action.

23.     Defendants deny that the '185 Patent involves any inventions, innovations, or novel applications of any construction features for automatic litter devices. Defendants deny the remaining allegations in paragraph 23 because they lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 23.

Paragraph 24: The '185 Patent is valid, enforceable, and duly issued in full compliance with Title 35 of the United States Code.

24.     Denied.

Defendants' Answer to SA Complaint
Affirmative Defenses and Counterclaims
Case No. 3:22-cv-04261-VC

Paragraph 25: Whisker owns by entire right, title, and interest in and to U.S. Patent No. 11,399,502 ( the "'502 Patent") (collectively with the '185 Patent, the "Patents-In-Suit"), titled "System for Monitoring and Controlling an Automated Litter Device." The '502 Patent duly and legally issued on August 2, 2022 to inventors Brad Baxter and Jacob Zuppke from U.S. Patent Application No. 16/428,433, filed on May 31, 2019. A true and correct copy of the '502 Patent is attached as Exhibit 2 to this Complaint.

25. Defendants deny that the '502 Patent was duly and legally issued. Defendants

deny the remaining allegations in paragraph 25 because they lack knowledge or information

sufficient to form a belief as to the truth of the remaining allegations in paragraph 25.

Paragraph 26: The inventions of the '502 Patent are generally directed to an automated system for a litter device and related to a method of operating an automated litter device via a remote user interface. The innovations captured by the '502 Patent are particularly useful in remotely monitoring and receiving signals from an automated litter device, and remotely controlling one or more operations of an automated litter device.

26. Defendants deny that the '502 Patent involves any inventions or innovations for

automatic litter devices. Defendants deny the remaining allegations in paragraph 26 because they

lack knowledge or information sufficient to form a belief as to the truth of the remaining

allegations in paragraph 26.

Paragraph 27: The '502 Patent is valid, enforceable, and duly issued in full compliance with Title 35 of the United States Code.

27. Denied.

Paragraph 28: In addition to its valuable patents, Whisker has devoted substantial time, effort, and resources to the development and promotion of its distinctive and well-known LITTER-ROBOT trademarks (hereinafter the "Litter-Robot Marks") and the goods offered thereunder. Thus, the purchasing public identifies the Litter-Robot Marks with Whisker and its products.

28. Defendants deny the allegations in paragraph 28 because they lack knowledge or

information sufficient to form a belief as to the truth of the allegations in paragraph 28.

Paragraph 29: Whisker supports its strong common law trademark rights in the Litter-Robot Marks with numerous federal trademark registrations. *See* U.S. Trademark Reg. Nos. 4,674,124; 4,674,125; 5,259,515; 6,227,960; 6,570,005; 6,668,860; 6,734,934; 6,734,935; and 6,799,211. Moreover, the USPTO accepted a Section 2(f) claim of acquired distinctiveness as to Whisker's

registration for the word mark LITTER-ROBOT (Reg. No. 5,259,515, covering "Automated pet appliances, namely, litter boxes" in Class 21, and asserting a first use date of April 7, 2000). Thus, the USPTO accepted that the purchasing public identifies the word mark "LITTER-ROBOT" with Whisker's automated litter boxes.

29.     Denied.

Paragraph 30: Defendant PurLife Brands, Inc., doing business as "Smarty Pear," launched in or around April 2021 as a direct competitor to Whisker. Its founder, Defendant Chris Madeiras, was formerly affiliated with a company that did business directly with Whisker. For years, Madeiras had a relationship with Whisker, and through his employment had access to Whisker's confidential information and business plans for the LITTER-ROBOT product.

30.     Defendants admit that Defendant PurLife Brands, Inc., doing business as "Smarty Pear," launched in or around April 2021 as a direct competitor to Whisker. Defendants deny the remaining allegations in paragraph 30.

Paragraph 31: In or around October 2019, after Madeiras had left the other company, Madeiras met privately with one of Whisker's executives, Jacob Zuppke. There, Madeiras and Zuppke discussed the upcoming development and launch of the LITTER-ROBOT 4 product, Whisker's financial success, and the new business Litterbox.com that Whisker was planning to launch. At that meeting, Madeiras did not reveal that he was intending to launch a copycat product. Following this meeting, Zuppke and Madeiras stayed in touch through phone calls and text messages. In 2021, Whisker learned that Madeiras had started Smarty Pear and launched a direct competitor to the successful LITTER-ROBOT product.

31.     Defendant Madeiras admits that he had various conversations with Zuppke. None of those conversations were subject to any confidentiality obligations. Furthermore Zuppke did not reveal anything that could be considered confidential. None of those conversations took place after Madeiras decided to launch a competitive product. Furthermore, the initial conversations were initiated by Zuppke.

Paragraph 32: In or around April 2021—decades after Whisker introduced the LITTER-ROBOT product—Smarty Pear and Madeiras began to make, use, offer for sale, sell, directly and/or through intermediaries, and import, directly and/or through intermediaries, an automatic self-cleaning litter box it called the "Leo's Loo." It was offered for $499—matching the price point of the LITTERROBOT 3 product—and was sold through the third-party retailer Chewy.



**Leo's Loo**

**Covered Automatic Self-Cleaning Cat Litter Box**

★★★★★ 4.7 (39)

Leo's Loo self-cleaning litter box detects each time your cat visits and automatically cleans up afterwards. In just seconds, Leo's Loo separates waste from clean litter and deposits it in the enclosed waste drawer underneath. It helps eliminate odor, reduces litter usage and liberates you from constant scooping.

*Use of anything other than 100% clay-clumping litter will void the warranty and 90-day free trial. Any brand will work, but we recommend using Scoop Away Clumping Clay Litter.

**$499.99**

[ Buy on Chewy ]

32.     Admitted, but denied as to the price alleged.

Paragraph 33: Smarty Pear and Madeiras represent to the public that they are the designer of Leo's Loo. For example, in assuring consumers of the quality of the Leo's Loo safety features, Smarty Pear's website states, "[w]e designed Leo's Loo with kitty safety in mind."[5] Similarly, Smarty Pear's website states, "we've packed the Leo's Loo with features that make it one of the most convenient self-cleaning litter box [sic] available." Id.  Consistent with these representations, Smarty Pear and Madeiras describe Smarty Pear as a "California based technology company," stating that its "team of innovators and pet lovers are actively working on several new products." [6] Together, this was intended to create the impression that Leo's Loo was designed by Smarty Pear and Madeiras in California, much like the LITTER-ROBOT product is designed by Whisker in the Midwest, and that Madeiras and Smarty Pear innovated the technology behind the product.

[5] Smarty Pear, Leo's Loo, https://smartypear.com/products/leo-s-loo (emphasis added).
[6] Smarty Pear, Meet Smarty Pear, https://smartypear.com/pages/about-us.

33.     Defendants' admit that the language quoted in paragraph 33 was authored by

Smarty Pear and appeared on the internet at the indicated addresses. Defendants deny that the

quoted passages are falsifiable statements of fact likely to mislead consumers and further deny

that they are actionable violations of any law related to false advertising. Further, the allegations

comprising paragraph 33 were dismissed as insufficient bases for Plaintiff's false advertising

claims (Counts 6 and 7). Dkt. 56 at p. 3.

Paragraph 34: This curated impression by Madeiras and Smarty Pear is false and misleading. On information and belief, Leo's Loo is a copycat product designed and manufactured in China. It appears that this product has been available since 2019 through the Chinese e-commerce site Alibaba, and currently sells under a variety of names, such as the "MEET Smart Litter Box" or the "MOME Smart Cat Sand Bytes." On information and belief, Smarty Pear and Madeiras merely purchased these third-party devices, imported them, and now resell them under Smarty Pear's own name. As shown below, the two products have identical dimensions, specifications, and features.



Defendants' Answer to SA Complaint
Affirmative Defenses and Counterclaims
Case No. 3:22-cv-04261-VC

[7] The measurements are effectively identical. For example, 650 millimeters converts to 25.6 inches, and 215 millimeters converts to 8.5 inches.



34.    Defendants deny they engaged in any acts that are false or misleading. Defendants deny that Leo's Loo is a copycat product designed and manufactured in China. Defendants deny

Defendants' Answer to SA Complaint
Affirmative Defenses and Counterclaims
Case No. 3:22-cv-04261-VC

that Leo's Loo has been available since 2019 through the Chinese e-commerce site Alibaba, and currently sells under a variety of names, such as the "MEET Smart Litter Box" or the "MOME Smart Cat Sand Bytes." Defendants deny they merely purchased third-party devices, imported them, and now resell them under Smarty Pear's own name. Defendants deny the remaining allegations of paragraph 34 because they lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 34.

Paragraph 35: Smarty Pear and Madeiras's false and misleading statement that they "designed" Leo's Loo allows consumers to trust their representations as to the origin of their self-cleaning litter box. The origin and actual manufacturer of a product are important qualities for consumers shopping for appliances, especially in a sensitive and pricey commercial market such as self-cleaning litter boxes.

35. Defendants' admit that the language quoted in paragraph 35 was authored by Smarty Pear. Defendants deny that the quoted language is a falsifiable statement of fact likely to mislead consumers and further deny that such language is an actionable violation of any law related to false advertising. Further, the allegation comprising paragraph 35 were dismissed as insufficient bases for Plaintiff's false advertising claims (Counts 6 and 7). Dkt. 56 at p. 3.

Paragraph 36: Further, the following Chewy product reviews show that consumers were actually misled by this assertion into believing that Smarty Pear was the designer of Leo's Loo:
> "A big shout out to Smarty Pear for making such a great machine! I'm sensing another purchase in the very near future."
> "I currently have a litter robot I decided to try this one because it's cheaper and you get what you pay for! On a sidenote the customer service for smarty pear who is the manufacturer of this litter box is fantastic until you have an issue. Once they realize you were unhappy they stop messaging you back in when you ask for a refund you definitely never hear from them!"

36. Defendants deny that consumers were actually mislead by any statements made and attributed to Smarty Pear regarding the design of Leo's Loo. Further, the allegation relating

to the designing of Leo's Loo in paragraph 35 was dismissed as insufficient basis for Plaintiff's

false advertising claims (Counts 6 and 7). Dkt. 56 at p. 3.

Paragraph 37: Making matters worse, the device that Defendants imported into the United States and offered for sale as Leo's Loo infringes Whisker's '185 Patent. As detailed further in Exhibit 3, Leo's Loo incorporates the same support base, chamber, entry opening, screen and/or septum, axis of rotation, track plane, and waste opening. These are innovations that made the LITTER-ROBOT product so successful, and it appeared that Leo's Loo was blatant infringement.

37.     Denied.

Paragraph 38: On April 14, 2021, Whisker's counsel sent Smarty Pear a cease-and-desist letter setting forth detailed allegations of patent infringement and disclosing various patents and patent applications, specifically citing the '185 Patent. Accordingly, it requested that Smarty Pear cease all advertising and sales of Leo's Loo. A copy of this letter is attached as Exhibit 4.

38.     Admitted.

Paragraph 39: In a response dated April 21, 2021, Smarty Pear acknowledged that it was aware of Whisker's patents. Rather than comply with Whisker's requests, however, Smarty Pear simply rejected the allegations. A copy of this letter is attached as Exhibit 5. Madeiras and Smarty Pear have since escalated their acts of unfair competition and infringement.

39.     Defendants deny that "Smarty Pear simply rejected the allegations" in the April

14, 2021 letter from Whisker's counsel. The letter makes unsubstantiated allegations of patent

infringement. Smarty Pear's counsel reviewed the patents mentioned in the April 14 letter and

found no basis for asserting that Smarty Pear's product infringes any claims of the '185 Patent.

Smarty Pear's counsel requested that if Whisker's counsel has a basis for asserting infringement

of the '185 Patent, then provide a detailed claim chart demonstrating how Whisker construes the

claims and applies them to Smarty Pear's products by April 28, 2021 -- otherwise Smarty Pear

would consider the matter resolved. Whisker never replied and did not provide the requested

claim chart. Defendants' deny that they engaged in acts of unfair competition or infringement.

Paragraph 40: Almost immediately, Smarty Pear's Leo's Loo began to steal away sales from Whisker. For example, of the 185 customer reviews of Leo's Loo on Chewy as of July 7, 2022, at least 28 mention Whisker's LITTER-ROBOT product.

40. Denied.

Paragraph 41: Smarty Pear and Madeiras's marketing also targeted the LITTER-ROBOT product, both explicitly and implicitly. One post uploaded to Smarty Pear's Instagram account on July 8, 2021 claimed a user stated Leo's Loo was "Better than a Litter Robot"—a reference to Whisker's product. Another Instagram post on October 16, 2021 quoted a review referencing a "more expensive automatic litter box, whose name shall not be named in comparison."[8] Further, upon information and belief, starting in October 2021, Smarty Pear and Madeiras began to use the hashtags "#litterrobot" and "#litterrobot3" in their social media posts promoting Leo's Loo Too.
[8] Smarty Pear (@smartypear), Instagram (Oct. 18, 2021), https://www.instagram.com/p/CVLP6n9grd8/.

41. Denied.

Paragraph 42: Hashtags are metadata tags directed at users on social media websites that make it possible for others to easily find messages with a particular theme or content. For this reason, hashtag marketing is a useful way to build an association between a brand and a product. Thus, when an Instagram user searches for "#litterrobot," she will be looking for content related to Whisker's LITTER-ROBOT product. As shown below, Smarty Pear used these hashtags in order to create the impression that Leo's Loo was affiliated with LITTER-ROBOT.

42. Denied.

Paragraph 43: The following Smarty Pear Instagram post from November 11, 2021, for example, touts the Leo's Loo Too's features, and ends with the hashtags "#LitterRobot" and "#litterrobot3." The fact that "#LitterRobot" is capitalized serves to highlight that Smarty Pear and Madeiras sought to trade off of Whisker's goodwill.

 

[9] Smarty Pear (@smartypear), Instagram (Nov. 11, 2021),
https://www.instagram.com/p/CWKNMipMLDW/.

43.    Denied.

Paragraph 44: Another Instagram post dated November 21, 2021 promotes Leo's Loo Too and includes the hashtags "#litterrobot" and "litterrobot3."



[10] Smarty Pear (@smartypear), Instagram (Nov. 21, 2021),
https://www.instagram.com/p/CWizikIMxsU/.

44.    Denied.

Paragraph 45: Similarly, an Instagram post dated January 11, 2022 promotes Leo's Loo Too and includes the hashtag "#litterrobot."

Defendants' Answer to SA Complaint
                                             Affirmative Defenses and Counterclaims
                                             Case No. 3:22-cv-04261-VC



[11] Smarty Pear (@smartypear), Instagram (Jan. 11, 2022),
https://www.instagram.com/p/CYmjlhcAf8i/

45.     Denied.

Paragraph 46: Nor were these isolated incidents. Of the 140 posts uploaded to SmartyPear's
Instagram account as of July 7, 2022, at least 22 of them include the hashtags "#litterrobot" or
"#litterrobot3." Smarty Pear and Madeiras engaged in similar practices on Facebook and TikTok.

46.     Smarty Pear admits it has posted more than 400 posts to date. Smarty Pear further

admits that twenty two of the posts included #litterrobot among a list of other hashtags. The

posts always listed #SmartyPear prior to any hashtag referring to litterrobot. Any reference to

#litterrobot and the like were intended to draw a comparison between the Leo's LOO and the

market leader in the space. There was no intent to deceive or to draw an association between the

products other than a comparison. To the extent not expressly admitted, Defendants deny the

allegations of paragraph 46.

Paragraph 47: Smarty Pear and Madeiras's copying did not stop with product features or
hashtags. Taking note of Whisker's success, Smarty Pear and Madeiras updated Smarty Pear's

website to closely resemble Whisker's website for the LITTER-ROBOT product. The website now mimics marketing assets, fonts, photos, email prompts, footer layouts, and overall webpage layouts—down to the rounded designs of the button edges, as the below comparison makes clear.



Defendants' Answer to SA Complaint
Affirmative Defenses and Counterclaims
Case No. 3:22-cv-04261-VC



47.     Defendants deny that Smarty Pear or Madeiras copied any product features or hashtags.

Paragraph 48: Moreover, Smarty Pear and Madeiras produced a "How It Works" video for Leo's Loo that is nearly identical in script to Whisker's video for the LITTER-ROBOT product.

48.     Denied.

Paragraph 49: The effect of this conduct was to draw in consumers seeking out information about the LITTER-ROBOT product and create a false association between Whisker's LITTER-ROBOT product and Smarty Pear's infringing knockoff. Smarty Pear and Madeiras's knockoff product and infringement resulted in actual consumer confusion. To incentivize reviews of Leo's Loo, Smarty Pear and Madeiras offered consumers free accessories. Several consumers emailed to claim those accessories, and instead directed their emails at Whisker. Thus, Whisker's product specialists were forced to explain repeatedly that Whisker was not the source of Smarty Pear's goods.

49.     Denied.

Paragraph 50: On October 27, 2021, well after the filing of the Patents-In-Suit, Smarty Pear issued a press release touting a new model, "Leo's Loo Too." Thereafter Smarty Pear and Madeiras began to make, use, offer for sale, sell, directly and/or through intermediaries, and import directly and/or through intermediaries, the automatic self-cleaning litter box called "Leo's Loo Too." This model appears very similar to Leo's Loo, but touted several new features, including the "first-ever app connected self-cleaning litter box with Alexa and Google Voice controls" and "UV rays that eliminate 99.9% of bacteria."[12]

[12] Press Release, Smarty Pear Launches First-Ever App-Connected Self-Cleaning Litter Box with Alexa and Google Voice Controls (Oct. 27, 2021), https://www.prnewswire.com/newsreleases/ smarty-pear-launches-first-ever-app-connected-self-cleaning-litter-box-with-alexa-andgoogle-voice-controls-301409876.html (emphasis added).



50.      Admitted.

Paragraph 51: Again, Smarty Pear and Madeiras falsely and misleadingly represented that they were the designer of Leo's Loo Too. In the press release, Madeiras was quoted as stating, "[w]e had a clear and ambitious goal when we designed Leo's Loo Too: To create a self-cleaning litter box that stands out from all the others with the very best user experience, most innovative technology and a design worthy of magazine covers." Id. (emphasis added). Similarly, the user manual for Leo's Loo Too begins with a quote from Madeiras (identified as "Smarty Pear Founder / CEO"), stating, "When I started Smarty Pear, my goal was to create products that injected even more magic into the special bond that exists between pet lovers and their fur babies."[13]

[13] Smarty Pear, Leo's Loo Too Manual, at 4, https://drive.google.com/file/d/1pOl7QSAV6q2vFzaq1amU5cI200WASxOh/view (emphasis added).

51.      Defendants deny that they made any false or misleading factual statements about the designer of Leo's Loo Too. Defendants admit that the press release referenced in paragraph 51 contains the quoted language. Defendants admit that the user manual for Leo's Loo Too contains the language quoted in paragraph 51. Further, the allegation relating to the designing of

Leo's Loo Too in paragraph 51 was dismissed as an insufficient basis for Plaintiff's false

advertising claims (Counts 6 and 7). Dkt. 56 at p. 3. To the extent not expressly admitted,

Defendants deny the allegations contained in paragraph 51.

Paragraph 52: These quotes are false and misleading. On information and belief, Smarty Pear and Madeiras are not the designer of Leo's Loo Too. As with the first model, Leo's Loo Too is nothing but a relabeled product imported from China. As the below comparison demonstrates, Leo's Loo Too is identical to the "MEET Smart Litter Box" in appearance, dimensions, and features.

Defendants' Answer to SA Complaint
Affirmative Defenses and Counterclaims
Case No. 3:22-cv-04261-VC

| MEET Litter Box (Second Generation) | Leo's Loo Too |
|---|---|



Defendants' Answer to SA Complaint
Affirmative Defenses and Counterclaims
Case No. 3:22-cv-04261-VC

| MEET Litter Box (Second Generation) | Leo's Loo Too |
|---|---|
|  | |

52.     Defendants deny that any quoted language attributed to Defendants and identified by Whisker are false and misleading. Further, Whisker's allegation relating to the designing of Leo's Loo Too in paragraph 52 was dismissed as an insufficient basis for Plaintiff's false advertising claims (Counts 6 and 7). Dkt. 56 at p. 3. To the extent not expressly admitted, Defendants deny the allegations contained in paragraph 52.

Paragraph 53: Tellingly, when asked about the above product via email, Smarty Pear's customer service falsely and misleadingly represented that it was a "knockoff," stating, "we are the original creators of the Leo's Loo and Leo's Loo Too."

53.     Denied.

Paragraph 54: Moreover, this product—as with the product imported into the United States as Leo's Loo (collectively, the "Accused Products")—infringes Whisker's patents. As detailed further in Exhibit 4, Leo's Loo Too incorporates the same support base, chamber, entry opening, screen and/or septum, axis of rotation, track plane, and waste opening described in and covered by the '185 Patent. As such, Leo's Loo Too infringes the '185 Patent.

54.     Denied.

Paragraph 55: Further, as detailed in Exhibit 6, Leo's Loo Too incorporates the same sensors, wireless communication module, and user interface described in and covered by the '502 Patent.

As such, Leo's Loo Too also infringes the '502 Patent.

55.    Denied.

Paragraph 56: Smarty Pear and Madeiras are engaging in false and misleading advertising with respect to the UV feature in Leo's Loo Too. On Smarty Pear's website and in the Leo's Loo Too user manual, Smarty Pear and Madeiras assert (with no support) that Leo's Loo Too contains UV rays that are "99.9% effective at eliminating bacteria, parasites and viruses."[14] Other resellers of Defendants' products have repeated the false and misleading allegations about the Leo's Loo products' UV feature.

[14] Smarty Pear, Leo's Loo Too, https://smartypear.com/products/leo-s-loo-too; Smarty Pear, Leo's Loo Too Manual, supra n.13, at 5.



**UV Rays that Eliminate 99.9% of Bacteria**

Leo's Loo Too utilizes UV rays to kill bacteria.

After your cat exits the Loo, the machine projects UV rays into the waste drawer to thoroughly sterilize. The UV rays are 99.9% effective at eliminating bacteria, parasites and viruses.

56.    Denied.

Paragraph 57: Smarty Pear and Madeiras repeat this claim in Smarty Pear's marketing, stating in a now-deleted Instagram post dated November 17, 2021 (and tagging "#litterrobot" and "#litterrobot3," as discussed above) that the feature "[k]eep[s] you and your kitty safe" and "reduc[es] odor.



57.    Denied.

Paragraph 58: The claim that the UV feature "thoroughly sterilize[s]" and is "99.9% effective at eliminating bacteria, parasites and viruses," thereby "reducing odor" in Leo's Loo Too is false and misleading.

58.    Denied.

Paragraph 59: Smarty Pear and Madeiras are not the first to sell consumers on an ultraviolet sterilization feature. In the wake of the COVID-19 pandemic, the market was flooded with products claiming to provide disinfecting benefits through ultraviolet light. This led to so many dubious and nonscientific efficacy claims that the FDA was forced to release a guide for consumers.[15]

[15] UV Lights and Lamps: Ultraviolet-C Radiation, Disinfection, and Coronavirus, FDA (Feb. 1, 2021), https://www.fda.gov/medical-devices/coronavirus-covid-19-and-medical-devices/uvlights-and-lamps-ultraviolet-c-radiation-disinfection-and-coronavirus.

59.    Defendants deny the allegations in paragraph 59 because Defendants lack

knowledge or information sufficient to form a belief as to the truth of the allegations in

paragraph 59.

Paragraph 60: In its guide, the FDA acknowledged that ultraviolet-C (a specific variation on UV rays) is "a known disinfectant for air, water, and nonporous surfaces," and "has effectively been

Defendants' Answer to SA Complaint
Affirmative Defenses and Counterclaims
Case No. 3:22-cv-04261-VC

used for decades to reduce the spread of bacteria[.]" Id. Critically, however, the FDA cautioned that there were "limitations" with respect to efficacy. For one, not every UV wavelength is the same, "so it may take longer exposure to a given surface area to potentially provide effective inactivation of a bacteria or virus." Id. And as is most relevant here, the FDA stated that "UVC radiation can only inactivate a virus if the virus is directly exposed to the radiation." Id. Accordingly, the FDA stated, "the virus or bacterium will not be inactivated if it is covered by dust or soil, embedded in porous surface or on the underside of a surface." Id. (emphasis added). As another researcher stated, "We refer to UV disinfection as a line-of-sight technology, so if anything blocks the UV light including dirt, stains, [or] anything casting shadows then those 'shaded or protected' areas will not be disinfected."[16]

[16] Shannon Bauer, Does UV Light Actually Disinfect and Kill Viruses? UCI Beckman Laser Institute & Medical Clinic (Sept. 23, 2020), https://www.bli.uci.edu/does-uv-light-actuallydisinfect-and-kill-viruses/.

60. Defendants deny the allegations in paragraph 60 because Defendants lack

knowledge or information sufficient to form a belief as to the truth of the allegations in

paragraph 60.

Paragraph 61: Given the science of UV disinfection, a litter box may be the worst possible use case. Cat litter is designed to be highly porous, and collects dust and soil. It is an example of an environment in which UV disinfection would be ineffective. For this reason, it is false and misleading for Defendants to assert that the UV rays in Leo's Loo Too can "thoroughly sterilize" or "reduc[e] odor" in waste litter.

61. Denied.

Paragraph 62: Further, this deception was material to consumer purchases. Product reviews on Chewy and Amazon demonstrate that multiple consumers bought Leo's Loo Too due to the claim that its UV rays "thoroughly sterilize." For example:

> "I researched all of the robot litter boxes I could find before deciding on Leo's Loo Too. I chose it because of the larger waste drawer and the [u]v sterilization, and the.overall design."
> "UV sanitizing on the Too was a plus for me."
> "I love the UV sterilization cleaning[.]"
> "It utilizes UV light sterilization to kill the germs and bacteria that are the primary cause of odor in the first place."

62. Denied.

Paragraph 63: Likewise, in a head-to-head product comparison between Leo's Loo Too and Whisker's LITTER-ROBOT product, a reviewer relied on Smarty Pear and Madeiras's

representation and stated: "[Leo's Loo Too] also features a programmable UV sterilization technology that disinfects and kills 99 percent of germs, viruses, and parasites in the waste drawer using UV rays. When it comes to picking a litter box, odor management is crucial, and this function increases the product's odor elimination mechanism, ensuring that your home stays as fresh as possible."[17]

[17] Clair Chesterman, Leo's Loo Too VS Litter Robot, TechnoMeow, https://technomeow.com/leos-loo-too-vs-litter-robot/ (emphasis added).

      63.    Denied.

Paragraph 64: Smarty Pear and Madeiras made further false and misleading statements in connection with the release of Leo's Loo Too.

      64.    Denied.

Paragraph 65: First, Smarty Pear and Madeiras assert in the initial press release that Leo's Loo Too is the "first ever" app connected self-cleaning litter box. The necessary implication of this factual statement is that other products available on the market lacked these features. This statement is false and misleading: not only is Leo's Loo Too identical to an imported product, but Whisker's LITTER-ROBOT 3 CONNECTED model predated Leo's Loo Too by years, and is capable of integrating with voice control systems such as Alexa and Google Assistant. In fact, some consumers noticed the similarities: one comment on a Smarty Pear video stated, "Lol same device as the litter robot[.]"

      65.    Denied.

Paragraph 66: Second, Smarty Pear and Madeiras assert on Smarty Pear's website that Leo's Loo Too is "The Smartest Self-Cleaning Litter Box." In this context, the word "smartest" specifically refers to a subset of features touted by Smarty Pear and Madeiras. For example, the Leo's Loo Too webpage features a video stating "Say Hello to the Smartest Self-Cleaning Litter Box"— itself a clear reference to a marketing slogan used by Whisker for years, "Say Hello To The Last Litter Box You'll Ever Buy." As is shown in the below screenshots, the video identifies the following features of Leo's Loo Too: (1) self-cleaning; (2) voice controls; (3) app connection; (4) pet sensing; and (5) post-exit cleaning.



66. Defendants admit that Smarty Pear's website states that Leo's Loo Too is "The Smartest Self-Cleaning Litter Box." Defendants admit that the Leo's Loo Too webpage features a video stating "Say Hello to the Smartest Self-Cleaning Litter Box". Defendants admit that the video identifies the following features of Leo's Loo Too: (1) self-cleaning; (2) voice controls; (3) app connection; (4) pet sensing; and (5) post-exit cleaning. To the extent not expressly admitted, Defendants deny the allegation in paragraph 66. Further, Whisker's allegation relating to the characterizations of "Smartest" in paragraph 66 was dismissed as an insufficient basis for Plaintiff's false advertising claims (Counts 6 and 7). Dkt. 56 at p. 3.

Paragraph 67: Thus, consumers may plausibly understand "smartest" to refer to the fact that each of the above features is present in Leo's Loo Too. The necessary implication of "smartest" is that other products in the market lack those features. Each of those features, however, is present in the LITTER-ROBOT product (and, for that matter, in the Chinese product). Accordingly, Smarty Pear and Madeiras's factual representation that Leo's Loo Too is the "smartest self-cleaning litter box" is false and misleading. Moreover, such a deception is material to consumers. In a head-to-head product review between Leo's Loo Too and the LITTER-ROBOT 3 CONNECT product, the reviewer noted that the "advanced and hi-tech stuff" in Leo's Loo Too weighed in its advantage.[18]

[18] Chesterman, Leo's Loo Too VS Litter Robot, supra n.17.

67. Defendants deny that Smarty Pear and Madeiras's statements that Leo's Loo Too is the "smartest self-cleaning litter box" is false or misleading. Defendants deny the remaining allegations in paragraph 67. Further, Whisker's allegation relating to the characterizations of "Smartest" in paragraph 67 was dismissed as an insufficient basis for Plaintiff's false advertising claims (Counts 6 and 7). Dkt. 56 at p. 3.

Paragraph 68: 68. Finally, Smarty Pear and Madeiras assert on Smarty Pear's website that "[o]ver half a million cats and their owners have made the transition to a litter-free life with Pear Family[.]" The necessary implication of this statement is that over 500,000 "cats and their owners" are using Leo's Loo or Leo's Loo Too devices. This conveys the impression that there have been hundreds of thousands of sales of Leo's Loo and Leo's Loo Too, which would tend to increase consumer confidence in the products.



      68.     Denied

Paragraph 69: On information and belief, however, this is false and misleading. By comparison, over 22 years in business, Whisker has sold over 700,000 LITTER-ROBOT devices. It is implausible that Smarty Pear and Madeiras have sold even a fraction of that amount after scarcely a year in business.

      69.     Denied.

RESPONSE TO
INFRINGEMENT OF U.S. PATENT NO. 9,433,185[19]

[19] Any images shown below in which components of the Accused Products are illustrated in an exploded view or disassembled view are for illustration purposes and context/clarity. The Accused Products infringe when the product is fully assembled.

Paragraph 70: Whisker realleges and incorporates by reference paragraphs 1 through 69 of this Complaint as if fully set forth herein.

      70.     Defendants reassert and incorporate specifically by reference their responses to

paragraphs 1 through 69 of the Second Amended Complaint as if fully set forth herein.

Paragraph 71: Defendants have and continue to directly and indirectly infringe one or more claims of the '185 Patent, including at least claim 1 of the '185 Patent, literally and/or under the doctrine of equivalents, by or through making, using, selling, importing, offering for sale, and/or

providing and causing to be used the Accused Products. Defendants have acted without authority or license from Whisker, in violation of 35 U.S.C. § 271(a).

71. Denied.

Paragraph 72: Independent claim 1 of the '185 Patent recites:
1. A device comprising:
(a) a support base;
(b) a chamber, located on the support base, which includes:
(i) an entry opening so that an animal can enter and exit the chamber;
(ii) a screen and/or septum located at a back of the chamber, opposite the entry opening;
(iii) a single axis of rotation that forms an angle of between about 80 degrees and about 55 degrees with a vertical plane;
(iv) a track, which encircles an outside wall of the chamber and lies in one plane defining a track plane which forms an angle between about 10 degrees and 35 degrees with the vertical plane, for rotating the chamber around the single axis of rotation;
(v) a single waste opening, located entirely on one side of the track plane in a wall of the chamber and on an opposite side of the track plane as the entry opening; and
(vi) two chamber halves separated by the track plane;
(c) a bonnet, which has a band-like shape and substantially a same contour as a portion of the outside wall of the chamber, extends over the portion of the chamber so that a front and a rear of the outside wall of the chamber remain uncovered by the bonnet, is attached to the support base on two sides of the chamber, and at least partially covers the track and the single waste opening so that during rotation of the chamber a pinch condition is prevented between the track, the single waste opening, or both and the support base;
wherein during rotation of the chamber, the single axis of rotation funnels clumps, waste, or both towards and then out of the single waste opening.

72. Admitted.

Paragraph 73: The Accused Products contain each of the above limitations and Defendants have infringed at least claim 1 of the '185 Patent as detailed in Exhibit 3. The infringement allegations included in Exhibit 3 are preliminary only and Whisker reserves the right to amend these allegations as the case progresses.

73. Denied.

<u>Paragraph 74</u>: The Accused Products each have a support base, which supports and houses the components of the self-cleaning litter box, as well as a chamber. Shown below are the support base and chamber of the Accused Products with a purple annotation illustrating the support base and a green annotation illustrating the chamber. The Accused Products are shown in an exploded view so the components are visible. The Accused Products infringe when fully assembled.



| Leo's Loo[20] | Leo's Loo Too[21] |
|---|---|

[20] Smarty Pear, Leo's Loo Manual, at 3,
https://drive.google.com/file/d/1bFoOMp4LwGYfP1rghYd4nm_sWrJ3q3aV/;
Smarty Pear, Leo's Loo, supra n.5.
[21] Leo's Loo Too Manual, supra n.13, at 4; Smarty Pear, Leo's Loo Too, supra n.14.

| Leo's Loo[20] | Leo's Loo Too[21] |
|:---:|:---:|
|  |  |

74.     The Court recently entered an Order setting forth the schedule for claim

construction and infringement contentions. Defendants deny that their products infringe any

valid claim of the asserted patents.

Paragraph 75: The chamber of the Accused Products includes an entry opening so that an animal can enter and exit the chamber. Shown below is the entry opening of the Accused Products.

| Leo's Loo[22] | Leo's Loo Too[23] |
|---|---|



[22] Smarty Pear, Leo's Loo, supra n.5.
[23] Smarty Pear, Leo's Loo Too, supra n.14.

| Leo's Loo[22] | Leo's Loo Too[23] |
|---|---|



75.     The Court recently entered an Order setting forth the schedule for claim

construction and infringement contentions. Defendants deny that their products infringe any

valid claim of the asserted patents.

Paragraph 76: The chamber of the Accused Products includes a screen and septum within its interior and opposite the entry opening, wherein the screen is affixed to the septum. Shown below is the screen and septum within the chamber of the Accused Products.

| Leo's Loo[24] | Leo's Loo Too[25] |
|---|---|



[24] Smarty Pear, Leo's Loo—How It Works,
https://cdn.shopify.com/s/files/1/0639/8921/9573/files/Smarty_Pear_Leo_s_Loo_Covered_Automatic_Self-
Cleaning_Cat_Litter_Box_How_It_Works_Product_Features_2.mp4?v=1652196618;
Photograph of Leo's Loo
[25] Smarty Pear, Say So Long To Scooping Video,
https://cdn.shopify.com/s/files/1/0639/8921/9573/files/smarty-pear.mp4?v=1651821590;
Photograph of Leo's Loo Too

| Leo's Loo[24] | Leo's Loo Too[25] |
|---|---|



Defendants' Answer to SA Complaint
Affirmative Defenses and Counterclaims
Case No. 3:22-cv-04261-VC

76. The Court recently entered an Order setting forth the schedule for claim construction and infringement contentions. Defendants deny that their products infringe any valid claim of the asserted patents.

Paragraph 77: The chamber of the Accused Products includes a single axis of rotation that forms an angle of between 80 degrees and about 55 degrees with a vertical plane. This chamber automatically rotates about its own single axis of rotation during a cleaning cycle. Upon information and belief, Leo's Loo and Leo's Loo Too have a chamber with an axis of rotation that forms an angle of about 75-80 degrees with the vertical plane. Shown below is the axis of rotation of the Accused Products.



[26] Smarty Pear, Leo's Loo, supra n.5.
[27] Smarty Pear, Leo's Loo Too, supra n.14.

77. The Court recently entered an Order setting forth the schedule for claim construction and infringement contentions. Defendants deny that their products infringe any valid claim of the asserted patents.

Paragraph 78: The chamber of the Accused Products includes a track, which encircles an outside wall of the chamber and lies in one plane defining a track plane which forms an angle between

Defendants' Answer to SA Complaint
Affirmative Defenses and Counterclaims
Case No. 3:22-cv-04261-VC

about 10 degrees and 35 degrees with the vertical plane, for rotating the chamber around the single axis of rotation. Shown below is the track of the Accused Products. The Accused Products are shown in an exploded view so the track is visible.





[28] Smarty Pear, Leo's Loo, supra n.5; Leo's Loo—How It Works, supra n.24.
[29] Smarty Pear, Leo's Loo, supra n.5; Say So Long To Scooping Video, supra n.25.

78. The Court recently entered an Order setting forth the schedule for claim construction and infringement contentions. Defendants deny that their products infringe any valid claim of the asserted patents.

<u>Paragraph 79</u>: The chamber of the Accused Products includes a single waste opening, located entirely on one side of the track plane in a wall of the chamber and on an opposite side of the track plane as the entry opening. Shown below is an exploded view of each of the Accused Products that show the waste opening in the chamber of the Accused Products.

| Leo's Loo[30] | Leo's Loo Too[31] |
|---|---|
|  | |

[30] Leo's Loo—How It Works, supra n.24.
[31] Say So Long To Scooping Video, supra n.25.

79. The Court recently entered an Order setting forth the schedule for claim construction and infringement contentions. Defendants deny that their products infringe any valid claim of the asserted patents.

<u>Paragraph 80</u>: The chamber of the Accused Products includes two chamber halves separated by the track plane.

80. The Court recently entered an Order setting forth the schedule for claim construction and infringement contentions. Defendants deny that their products infringe any valid claim of the asserted patents.

<u>Paragraph 81</u>: The Accused Products include a bonnet which has a band-like shape and

substantially the same contour as a portion of the outside wall of the chamber. Shown below is the bonnet of the Accused Products with a blue annotation illustrating the bonnet.

| Leo's Loo[32] | Leo's Loo Too[33] |
|---|---|
|  |  |

[32] Smarty Pear, Leo's Loo, supra n.5.
[33] Smarty Pear, Leo's Loo Too, supra n.14.

81. The Court recently entered an Order setting forth the schedule for claim construction and infringement contentions. Defendants deny that their products infringe any valid claim of the asserted patents.

<u>Paragraph 82</u>: The bonnet of the Accused Products is attached to the support base on two sides of the chamber.

82. The Court recently entered an Order setting forth the schedule for claim construction and infringement contentions. Defendants deny that their products infringe any valid claim of the asserted patents.

<u>Paragraph 83</u>: The bonnet of the Accused Products at least partially covers the track and the single opening so that during rotation of the chamber a pinch condition is prevented between the track, the single waste opening, or both and the support base.

83.     The Court recently entered an Order setting forth the schedule for claim construction and infringement contentions. Defendants deny that their products infringe any valid claim of the asserted patents.

<u>Paragraph 84</u>: The bonnet of the Accused Products extends over the portion of the chamber so that a front and a rear of the outside wall of the chamber remain uncovered by the bonnet as required by claim 1. A portion of the rear of the chamber is covered by the support base, not by the bonnet. Shown below is the portion of the chamber of the Accused Products with a blue annotation illustrating the bonnet, a purple annotation illustrating the support base, and a green annotation illustrating the chamber. In the second set of images, the bonnet is removed for illustration purposes only, and the blue dashed lines are representative of where the bonnet would be positioned for illustration purposes.



| Leo's Loo[34] | Leo's Loo Too[35] |
|---|---|

[34] Leo's Loo—How It Works, supra n.24; Photograph of Leo's Loo.
[35] Smarty Pear, Leo's Loo Too, supra n.14; Photograph of Leo's Loo Too.

84. The Court recently entered an Order setting forth the schedule for claim

construction and infringement contentions. Defendants deny that their products infringe any

valid claim of the asserted patents.

Paragraph 85: During rotation of the chamber of the Accused Products, the single axis of rotation funnels clumps, waste, or both towards and then out of the single waste opening.

85.     The Court recently entered an Order setting forth the schedule for claim construction and infringement contentions. Defendants deny that their products infringe any valid claim of the asserted patents.

Paragraph 86: Shown below is the operation of the rotating chamber in the Accused Products.



[36] Leo's Loo—How It Works, supra n.24.
[37] Leo's Loo Too Product Video, supra n.25.

86. The Court recently entered an Order setting forth the schedule for claim construction and infringement contentions. Defendants deny that their products infringe any valid claim of the asserted patents.

Paragraph 87: Defendants have induced and continue to induce others to infringe at least one claim of the '185 Patent under 35 U.S.C. § 271(b) by, among other things, actively aiding and abetting others to infringe with specific intent or willful blindness, such others including, but not limited to, Defendants' partners, clients, customers, and end users, whose use of the Accused Products constitutes direct infringement of at least one claim of the '185 Patent.

87. The Court recently entered an Order setting forth the schedule for claim construction and infringement contentions. Defendants deny that their products infringe any valid claim of the asserted patents.

Paragraph 88: In particular, Defendants' actions that aid and abet others, such as its partners, clients, customers, and end users, to infringe include advertising and distributing the Accused Products and providing instruction materials, training, and services regarding the Accused Products.

88. Denied.

Paragraph 89: Defendants have willfully infringed, and continue to willfully infringe, the '185 Patent. By at least as early as April 14, 2021, when Whisker sent Defendants a cease-and-desist demand letter regarding the '185 Patent, Defendants had actual knowledge of the '185 Patent and knowledge that its activities were infringing the '185 Patent. After receiving actual knowledge of the '185 Patent and of its infringement of the '185 Patent, Defendants willfully continued to make, use, sell, offer for sale, and/or import into the United States infringing products despite knowing that there was a high likelihood of infringement and, in fact, being on notice of such infringement. Additionally, after receiving actual knowledge of the '185 Patent and of its infringement of the '185 Patent, Defendants actively continued promotion of the infringing features in its products.

89. Denied.

Paragraph 90: Defendants' past and continuing infringement has been deliberate and willful, and this case is therefore an exceptional case, which warrants award of treble damages and attorneys' fees to Whisker pursuant to 35 U.S.C. § 285.

90. Denied.

Paragraph 91: As a result of Defendants' direct and indirect infringement of the '185 Patent, Whisker has suffered monetary damages and is entitled to no less than a reasonable royalty for Defendants' use of the claimed inventions of the '185 Patent, together with interest and costs determined by the Court. Whisker will continue to suffer damages in the future unless Defendants' infringing activities are enjoined by this Court.

91.     Denied.

Paragraph 92: Whisker will be irreparably harmed unless a permanent injunction is issued enjoining Defendants and Defendants' agents, employees, affiliates, and others acting in concert with Defendants from infringing the '185 Patent.

92.     Denied,.

RESPONSE TO
INFRINGEMENT OF U.S. PATENT NO. 11,399,502[38]

[38] Any images shown below in which components of Leo's Loo Too are illustrated in an exploded view or disassembled view are for illustration purposes and context/clarity. Leo's Loo Too infringes when the product is fully assembled.

Paragraph 93: Whisker realleges and incorporates by reference paragraphs 1 through 69 of this Complaint as if fully set forth herein.

93.     Defendants reassert and incorporate specifically by reference their responses to

paragraphs 1 through 69 of the Second Amended Complaint as if fully set forth herein.

Paragraph 94: Defendants have and continue to directly and indirectly infringe one or more claims of claims of the '502 Patent, including at least claim 1 of the '502 Patent, literally and/or under the doctrine of equivalents. Defendants have and continue to directly and indirectly infringe one or more claims of the '502 Patent, including at least claim 1 of the '502 Patent, literally and/or under the doctrine of equivalents, by or through making, using, selling, importing, offering for sale, and/or providing and causing to be used Leo's Loo Too. Defendants have acted without authority or license from Whisker, in violation of 35 U.S.C. § 271(a).

94.     Denied.

Paragraph 95: Independent claim 1 of the '502 Patent recites:
1. A device which is an automated litter device comprising:
a) a chamber configured to hold litter to allow an animal to enter and excrete a

waste;

b) a waste drawer in communication with the chamber and configured to receive the waste;

c) one or more sensors configured to detect one or more conditions of the device and transmit one or more signals related to the one or more conditions;

d) a controller in communication with the one or more sensors and is adapted to receive the one or more signals, wherein the controller is configured to determine one or more positions of the chamber based on the one or more signals received from the one or more sensors and interpret the one or more signals as one or more status signals;

e) a communication module in communication with the controller and adapted to communicate with a user interface via a network to transmit the one or more status signals to the user interface, receive one or more instruction signals via the user interface, or both;

wherein the communication module is a wireless communication module and is in wireless communication with the user interface via the network; and

wherein the user interface is adapted to transmit the one or more instruction signals wirelessly to the controller via the network to change at least one of the one or more conditions of the device.

95.     Admitted.

Paragraph 96: Leo's Loo Too contains each of the above limitations and Defendants have infringed at least claim 1 of the '502 Patent as detailed in Exhibit 6. The infringement allegations included in Exhibit 6 are preliminary only and Whisker reserves the right to amend these allegations as the case progresses.

96.     Denied.

Paragraph 97: Leo's Loo Too is an automated litter device.

97.     Admitted.

Paragraph 98: Leo's Loo Too has a chamber configured to hold litter to allow an animal to enter and excrete a waste. Shown below is the chamber in Leo's Loo Too.

| **Leo's Loo Too**[39] |
|---|



[39] Leo's Loo Too, supra n.14; Leo's Loo Too Manual, at 6, supra n.13.

98.     The Court recently entered an Order setting forth the schedule for claim construction and infringement contentions. Defendants deny that their products infringe any valid claim of the asserted patents.

<u>Paragraph 99</u>: Leo's Loo Too has a waste drawer in communication with the chamber and configured to receive the waste. Shown below is the waste drawer in Leo's Loo Too.



Leo's

[40] Leo's Loo Too, supra n.14.

99. The Court recently entered an Order setting forth the schedule for claim construction and infringement contentions. Defendants deny that their products infringe any valid claim of the asserted patents.

Paragraph 100: Leo's Loo Too has one or more sensors configured to detect one or more conditions of the device and transmit one or more signals related to the one or more conditions.

100. The Court recently entered an Order setting forth the schedule for claim construction and infringement contentions. Defendants deny that their products infringe any valid claim of the asserted patents.

Paragraph 101: Leo's Loo Too has a controller in communication with one or more sensors and is adapted to receive the one or more signals.

101. The Court recently entered an Order setting forth the schedule for claim construction and infringement contentions. Defendants deny that their products infringe any valid claim of the asserted patents.

Defendants' Answer to SA Complaint
Affirmative Defenses and Counterclaims
Case No. 3:22-cv-04261-VC

Paragraph 102: The controller of Leo's Loo Too is configured to determine one or more positions of the chamber based on the one or more signals received from the one or more sensors and interpret the one or more signal as one or more status signals.

102. The Court recently entered an Order setting forth the schedule for claim construction and infringement contentions. Defendants deny that their products infringe any valid claim of the asserted patents.

Paragraph 103: Shown below are sensors and the controller of Leo's Loo Too.

| Leo's Loo Too[41] |
|---|





[41] Photographs of Leo's Loo Too product; Leo's Loo Too Manual, supra n.13, at 5; Leo's Loo Too, supra n.14.



## 2 Triple Safety Protection



**RADAR WALL**

Our state of the art radar system forms an invisible wall around your Loo. When it detects your kitty nearby, it stops the Loo from rotating, ensuring your kitty can always enter safely.

**WEIGHT SENSORS**

Four weight sensors located at the bottom of your Loo detect when your kitty enters and exits the drum. The Loo will only initiate a cleaning cycle when the weight sensors indicate the drum is empty.

**ANTI-PINCH SENSOR**

An anti-pinch sensor located at the top of the waste drawer detects when foreign objects enter the waste chute. When foreign objects are detected, your Loo will stop immediately and reverse rotation.



**Triple Layer Protection to Keep Kitty Safe**

Protect kitty with three layers of advanced safety technology that stop moving parts whenever kitty is detected:

A state of the art Radar System that forms a protective wall

Four Weight Sensors that detect when kitty is inside the drum

An aerospace-grade Anti-Pinch Sensor at the top of the waste drawer

103. The Court recently entered an Order setting forth the schedule for claim construction and infringement contentions. Defendants deny that their products infringe any valid claim of the asserted patents.

Paragraph 104: Leo's Loo Too has a communication module in communication with the controller and adapted to communicate with a user interface via a network to transmit the one or more status signals to the user interface, receive one or more instruction signals via the user interface, or both.

104. The Court recently entered an Order setting forth the schedule for claim construction and infringement contentions. Defendants deny that their products infringe any valid claim of the asserted patents.

Paragraph 105: The communication module of Leo's Loo Too is a wireless communication module and is in wireless communication with the user interface via the network.

105. The Court recently entered an Order setting forth the schedule for claim construction and infringement contentions. Defendants deny that their products infringe any valid claim of the asserted patents.

Paragraph 106: The user interface of Leo's Loo Too is adapted to transmit the one or more instruction signals wirelessly to the controller via the network to change at least one of the one or more conditions of the device.

106. The Court recently entered an Order setting forth the schedule for claim construction and infringement contentions. Defendants deny that their products infringe any valid claim of the asserted patents.

Paragraph 107: Shown below are the communication module in wireless communication with the user interface in Leo's Loo Too.

**Leo's Loo Too**[42]

Defendants' Answer to SA Complaint
Affirmative Defenses and Counterclaims
Case No. 3:22-cv-04261-VC



[42] Leo's Loo Too Manual, supra n.13, at 2, 10; Leo's Loo Too, supra n.14.

107.    The Court recently entered an Order setting forth the schedule for claim

construction and infringement contentions. Defendants deny that their products infringe any

valid claim of the asserted patents.

<u>Paragraph 108</u>: Defendants have induced and continue to induce others to infringe at least one claim of the '502 Patent under 35 U.S.C. § 271(b) by, among other things, actively aiding and abetting others to infringe with specific intent or willful blindness, such others including, but not limited to, Defendants' partners, clients, customers, and end users, whose use of the Leo's Loo Too constitutes direct infringement of at least one claim of the '502 Patent.

108.    The Court recently entered an Order setting forth the schedule for claim

construction and infringement contentions. Defendants deny that their products infringe any

valid claim of the asserted patents.

Paragraph 109: In particular, Defendants' actions that aid and abet others, such as its partners, clients, customers, and end users, to infringe include advertising and distributing Leo's Loo Too and providing instruction materials, training, and services regarding Leo's Loo Too.

109.    Denied.

Paragraph 110: As a result of Defendants' direct and indirect infringement of the '502 Patent, Whisker has suffered monetary damages and is entitled to no less than a reasonable royalty for Defendants' use of the claimed inventions of the '502 Patent, together with interest and costs determined by the Court. Whisker will continue to suffer damages in the future unless Defendants' infringing activities are enjoined by this Court.

110.    Denied.

Paragraph 111: Whisker will be irreparably harmed unless a permanent injunction is issued enjoining Defendants and Defendants' agents, employees, affiliates, and others acting in concert with Defendants from infringing the '502 Patent.

111.    Denied.


RESPONSE TO
INFRINGEMENT OF A REGISTERED TRADEMARK
(LANHAM ACT § 32, 15 U.S.C. § 1114)


Paragraph 112: Whisker realleges and incorporates by reference paragraphs 1 through 69 of this Complaint as if fully set forth herein.

112.    Defendants reassert and incorporate specifically by reference their responses to

paragraphs 1 through 69 of the Second Amended Complaint as if fully set forth herein.

Paragraph 113: Whisker owns U.S. Trademark Registration Nos. 4,674,124; 4,674,125; 5,259,515; 6,227,960; 6,570,005; 6,668,860; 6,734,934; 6,734,935; and 6,799,211 for the trademark LITTERROBOT and variations (the "Litter-Robot Marks").

113.    Defendants deny the allegations in paragraph 113 because Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 113.

Paragraph 114: Whisker is presently using the Litter-Robot Marks in commerce in the United States in connection with the sale, offering for sale, distribution, and advertising of automated litter boxes.

114.    Defendants deny the allegations in paragraph 114 because Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 114.

Paragraph 115: Whisker has not consented to Smarty Pear and Madeiras's use of the Litter-Robot Marks.

115.    Defendants deny the allegations in paragraph 115 because Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 115.

Paragraph 116: Smarty Pear and Madeiras's use of the Litter-Robot Marks is likely to cause confusion, mistake, and deception by creating the false and misleading impression that Whisker has sponsored, endorsed, or approved Smarty Pear's social media posts touting the Leo's Loo and Leo's Loo Too.

116.    Denied.

Paragraph 117: It is not necessary for Smarty Pear and Madeiras to use the Litter-Robot Marks to identify its products in any of its posts. The vast majority of Smarty Pear's posts promoting the Leo's Loo and Leo's Loo Too products made no comparison to any other products.

117.    Denied.

Paragraph 118: The above-described acts and practices constitute trademark infringement of the Litter-Robot Marks in violation of Section 32 of the Lanham Act (15 U.S.C. § 1114).

118.    Denied,.

Paragraph 119: On information and belief, Smarty Pear and Madeiras's conduct was undertaken

willfully. Smarty Pear and Madeiras have refused to cease their infringing conduct following notice from Whisker, and thus Smarty Pear and Madeiras's continued infringement is therefore willful.

119. Denied.

Paragraph 120: Whisker has been and will continue to be injured by Smarty Pear and Madeiras's conduct. This injury includes direct diversion of sales from Whisker to Smarty Pear, injury to Whisker's reputation, and loss of goodwill associated with Whisker's marks, brands, and products.

120. Denied.

Paragraph 121: Unless Smarty Pear and Madeiras's infringing conduct is enjoined by this Court, the consuming public will continue to be confused and Whisker will suffer a loss of sales and goodwill, causing irreparable injury.

121. Denied.

Paragraph 122: Whisker has no adequate remedy at law and is therefore entitled to injunctive relief pursuant to 15 U.S.C. § 1116.

122. Denied.

Paragraph 123: Pursuant to 15 U.S.C. § 1117(a), Whisker is also entitled to recover (i) Smarty Pear and Madeiras's profits, (ii) Whisker's ascertainable damages, and (iii) Whisker's costs of suit. Moreover, Smarty Pear and Madeiras's willful infringement renders this an exceptional case entitling Whisker to reasonable attorney fees.

123. Denied.

RESPONSE TO
UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN
(LANHAM ACT § 43(A)(1)(A), 15 U.S.C. § 1125(A)(1)(A))

Paragraph 124: Whisker realleges and incorporates by reference paragraphs 1 through 69 of this Complaint as if fully set forth herein.

124. Defendants reassert and incorporate specifically by reference their responses to

paragraphs 1 through 69 of the Second Amended Complaint as if fully set forth herein.

Paragraph 125: Smarty Pear and Madeiras have used the Litter-Robot Marks in commerce and without Whisker's authorization or consent.

125.     Denied.

Paragraph 126: Smarty Pear and Madeiras's use of the Litter-Robot Marks is likely to cause confusion, mistake, and deception by creating the false and misleading impression that Whisker has sponsored, endorsed, or approved Smarty Pear's social media posts touting the Leo's Loo and Leo's Loo Too.

126.     Denied.

Paragraph 127: Smarty Pear and Madeiras's use of the Litter-Robot Marks creates a false suggestion of an affiliation or connection between Defendants and Whisker.

127.     Denied.

Paragraph 128: Smarty Pear and Madeiras's actions constitute unfair competition and false designation of origin in violation of 15 U.S.C. § 1125(a).

128.     Denied.

Paragraph 129: On information and belief, Smarty Pear and Madeiras's conduct was undertaken willfully. Smarty Pear and Madeiras have refused to cease their infringing conduct following notice from Whisker, and thus Smarty Pear and Madeiras's continued infringement is therefore willful.

129.     Denied.

Paragraph 130: Whisker has been and will continue to be injured by Smarty Pear and Madeiras's conduct. This injury includes direct diversion of sales from Whisker to Smarty Pear, injury to Whisker's reputation, and loss of goodwill associated with Whisker's marks, brands, and products.

130.     Denied.

Paragraph 131: Unless Smarty Pear and Madeiras's infringing conduct is enjoined by this Court, the consuming public will continue to be confused and Whisker will suffer a loss of sales and goodwill, causing irreparable injury.

131.     Denied.

Paragraph 132: Whisker has no adequate remedy at law and is therefore entitled to injunctive relief pursuant to 15 U.S.C. § 1116.

132.    Denied.

Paragraph 133: Pursuant to 15 U.S.C. § 1117(a), Whisker is also entitled to recover (i) Smarty Pear and Madeiras's profits, (ii) Whisker's ascertainable damages, and (iii) Whisker's costs of suit. Moreover, Smarty Pear and Madeiras's willful infringement renders this an exceptional case entitling Whisker to reasonable attorney fees.

133.    Denied.


RESPONSE TO
FALSE ADVERTISING
(LANHAM ACT § 43(A)(1)(B), 15 U.S.C. § 1125(A)(1)(B))


Paragraph 134: Whisker realleges and incorporates by reference paragraphs 1 through 69 of this Complaint as if fully set forth herein.

134.    Defendants reassert and incorporate specifically by reference their responses to

paragraphs 1 through 69 of the Second Amended Complaint as if fully set forth herein.


Paragraph 135: Smarty Pear and Madeiras are making false, misleading, and deceptive representations of fact in their promotion and sale of the Leo's Loo and Leo's Loo Too products.

135.    Denied.


Paragraph 136: Smarty Pear and Madeiras's statements misrepresent the nature, characteristics, and qualities of Smarty Pear and its products, and are material to consumer purchasing decisions.

136.    Denied.

Paragraph 137: The above-described acts and practices constitute false advertising in violation of Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)).

137.    Denied.

Paragraph 138: Whisker has standing to sue Smarty Pear and Madeiras for false advertising under the Lanham Act. Whisker and Smarty Pear are direct competitors selling self-cleaning litter boxes to the same consumers. Whisker has been and will continue to be injured by Smarty Pear and Madeiras's conduct. This injury includes direct diversion of sales from Whisker to Smarty Pear, injury to Whisker's reputation, and loss of goodwill associated with Whisker's

marks, brands, and products. Whisker's injury is proximately caused by Smarty Pear and Madeiras's false and misleading statements.

138.    Denied.

Paragraph 139: On information and belief, Smarty Pear and Madeiras's conduct was undertaken willfully. Smarty Pear and Madeiras have refused to cease their infringing conduct following notice from Whisker, and thus Smarty Pear and Madeiras's continued conduct is therefore willful.

139.    Denied.

Paragraph 140: Unless Smarty Pear and Madeiras's infringing conduct is enjoined by this Court, the consuming public will continue to be confused and Whisker will suffer a loss of sales and goodwill, causing irreparable injury.

140.    Denied.

Paragraph 141: Whisker has no adequate remedy at law and is therefore entitled to injunctive relief pursuant to 15 U.S.C. § 1116.

141.    Denied.

Paragraph 142: Pursuant to 15 U.S.C. § 1117(a), Whisker is also entitled to recover (i) Smarty Pear and Madeiras's profits, (ii) Whisker's ascertainable damages, and (iii) Whisker's costs of suit. Moreover, Smarty Pear and Madeiras's willful infringement renders this an exceptional case entitling Whisker to reasonable attorney fees.

142.    Denied.

RESPONSE TO
VIOLATION OF FALSE ADVERTISING LAW
(CAL. BUS. & PROF. CODE § 17500 ET SEQ.)


Paragraph 143: Whisker realleges and incorporates by reference paragraphs 1 through 69 of this Complaint as if fully set forth herein.

143.    Defendants reassert and incorporate specifically by reference their responses to

paragraphs 1 through 69 of the Second Amended Complaint as if fully set forth herein.


Paragraph 144: Smarty Pear and Madeiras are making untrue or misleading statements in their

Defendants' Answer to SA Complaint
Affirmative Defenses and Counterclaims
Case No. 3:22-cv-04261-VC

promotion and sale of the Leo's Loo and Leo's Loo Too products.

144.    Denied.

Paragraph 145: Smarty Pear and Madeiras's statements misrepresent the nature, characteristics, and qualities of Smarty Pear and its products, and are material to consumer purchasing decisions.

145.    Denied.

Paragraph 146: Smarty Pear and Madeiras knew or should have known through the exercise of reasonable care that the statements were untrue or misleading. As such, Smarty Pear and Madeiras have violated the California False Advertising Law (Cal. Bus. & Prof. Code § 17500).

146.    Denied.

Paragraph 147: Whisker has suffered an injury in fact, including the loss of money or property, as a result of Smarty Pear and Madeiras's unfair, unlawful, and/or deceptive practices. Consumers relied on the representations in Smarty Pear and Madeiras's untrue or misleading statements as described herein, which in turn resulted in damage to Whisker. Had Smarty Pear and Madeiras not made such statements, consumers would have altered their purchasing behavior.

147.    Denied.

Paragraph 148: All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Smarty Pear and Madeiras's business.

148.    Denied.

Paragraph 149: Whisker requests that this Court enter such orders or judgments as may be necessary to enjoin Smarty Pear and Madeiras from continuing their unfair, unlawful, and/or deceptive practices and to restore Whisker any money Smarty Pear and Madeiras acquired by unfair competition, including restitution and/or disgorgement, and for other relief set forth below.

149.    Denied.

Paragraph 150: Whisker is also entitled to attorneys' fees pursuant to California Code of Civil Procedure § 1021.5.

150.    Denied.

RESPONSE TO
VIOLATION OF UNFAIR COMPETITION LAW
(CAL. BUS. & PROF. CODE § 17200 ET SEQ.)

Paragraph 151: Whisker realleges and incorporates by reference paragraphs 1 through 69 of this Complaint as if fully set forth herein.

151.     Defendants reassert and incorporate specifically by reference their responses to

paragraphs 1 through 69 of the Second Amended Complaint as if fully set forth herein.

Paragraph 152: By the acts described herein, Smarty Pear and Madeiras have engaged in unlawful and unfair business practices that have injured and will continue to injure Whisker's business and property in violation of the California Unfair Competition Law (Cal. Bus. & Prof. Code § 17200 et seq.

152.     Denied.

Paragraph 153: Smarty Pear and Madeiras's acts alleged herein are unlawful as they violate the Patent Act, the Lanham Act, and the California False Advertising Law.

153.     Denied.

Paragraph 154: Smarty Pear and Madeiras's acts alleged herein are unfair as Defendants have made advertising that is false or has a tendency to deceive or confuse the public.

154.     Denied.

Paragraph 155: Smarty Pear and Madeiras's acts alleged herein have caused monetary damages to Whisker in an amount to be proven at trial.

155.     Denied.

Paragraph 156: Whisker has been and will continue to be injured by Smarty Pear and Madeiras's conduct. This injury includes direct diversion of sales from Whisker to Smarty Pear, injury to Whisker's reputation, and loss of goodwill associated with Whisker's marks, brands, and products.

156.     Denied.

Paragraph 157: Unless Smarty Pear and Madeiras's infringing conduct is enjoined by this Court, the consuming public will continue to be confused and Whisker will suffer a loss of sales and goodwill, causing irreparable injury. Whisker has no adequate remedy at law and is therefore entitled to injunctive relief.

157.    Denied.


# RESPONSE TO
<u>UNFAIR COMPETITION UNDER CALIFORNIA COMMON LAW</u>


<u>Paragraph 158</u>: Whisker realleges and incorporates by reference paragraphs 1 through 69 of this Complaint as if fully set forth herein.

158.    Defendants reassert and incorporate specifically by reference their responses to

paragraphs 1 through 69 of the Second Amended Complaint as if fully set forth herein.


<u>Paragraph 159</u>: Smarty Pear and Madeiras, to induce the public to purchase its products, have disseminated untrue and misleading statements about its own products, and falsely claimed an association between Defendants and Whisker.

159.    Denied.

<u>Paragraph 160</u>: Smarty Pear and Madeiras knew or should have known by the exercise or reasonable care that its advertising and promotions were untrue and misleading.

160.    Denied.

<u>Paragraph 161</u>: Whisker has been and is likely to be injured as a result of Smarty Pear and Madeiras's conduct.

161.    Denied.

<u>Paragraph 162</u>: Unless Smarty Pear and Madeiras's infringing conduct is enjoined by this Court, the consuming public will continue to be confused and Whisker will suffer a loss of sales and goodwill, causing irreparable injury. Whisker has no adequate remedy at law and is therefore entitled to injunctive relief.

162.    Denied.


# RESPONSE TO
<u>TRADEMARK INFRINGEMENT UNDER CALIFORNIA COMMON LAW</u>


<u>Paragraph 163</u>: Whisker realleges and incorporates by reference paragraphs 1 through 69 of this

Complaint as if fully set forth herein.

163. Defendants reassert and incorporate specifically by reference their responses to

paragraphs 1 through 69 of the Second Amended Complaint as if fully set forth herein.

Paragraph 164: As a result of its use of the Litter-Robot Marks in rendering its services in California, Whisker owns California common law rights in the Litter-Robot Marks from at least as early as 2000.

164. Denied.

Paragraph 165: The acts and conduct of Smarty Pear and Madeiras as alleged in this Complaint, and in particular the use of the infringing marks, constitute trademark infringement under California common law

165. Denied.

Paragraph 166: Smarty Pear and Madeiras's acts alleged herein have caused monetary damages to Whisker in an amount to be proven at trial.

166. Denied.

Paragraph 167: Whisker has been and will continue to be injured by Smarty Pear and Madeiras's conduct. This injury includes direct diversion of sales from Whisker to Smarty Pear, injury to Whisker's reputation, and loss of goodwill associated with Whisker's marks, brands, and products.

167. Denied.

Paragraph 168: Unless Smarty Pear and Madeiras's infringing conduct is enjoined by this Court, the consuming public will continue to be confused and Whisker will suffer a loss of sales and goodwill, causing irreparable injury. Whisker has no adequate remedy at law and is therefore entitled to injunctive relief.

168. Denied.

RESPONSE TO "PRAYER FOR RELIEF"

169. Responding to the unnumbered paragraphs and each of their subparts under the

heading "PRAYER FOR RELIEF," Defendants deny that Plaintiff is entitled to any damages,

Defendants' Answer to SA Complaint
Affirmative Defenses and Counterclaims
Case No. 3:22-cv-04261-VC

costs of suit, attorney's fees, injunctive relief or any other form of relief. Plaintiff's Prayer For Relief should be denied in its entirety and with prejudice, and Plaintiff should be awarded nothing. Defendants further deny each and every allegation in Plaintiff's Prayer for Relief.

## PREAMBLE TO AFFIRMATIVE DEFENSES

170.     Defendants allege and assert the following defenses in response to the allegations in the SA Complaint, undertaking the burden of proof only as to those defenses deemed affirmative defenses by law, regardless of how such defenses are denominated herein. Defendants reserve the right to rely upon any of the following or additional defenses to claims asserted by Plaintiff to the extent that such defenses are supported by information developed through discovery or evidence at trial and thus reserve the right to amend their Answer and Affirmative Defenses, including to modify, amend, and/or expand upon its defenses once discovery progresses. Without conceding that any of the following defenses must necessarily be pled, or that any of the following defenses is not already at issue by virtue of the foregoing denials, and without reducing or removing Plaintiff's burdens of proof on the affirmative claims against Defendants, Smarty Pear and Chris Madeiras allege and assert as follows:

## FIRST DEFENSE
### (Non-Infringement)

171.     Defendants have not infringed, and are not infringing, literally or under the doctrine of equivalents, directly, or jointly, any valid and enforceable claim of the '502 Patent.

172.     This case is subject to the Local Rules of Practice for Patent Cases before the United States District Court for the Northern District of California. Patent L.R. 1-2.  As an initial matter, Whisker is required to provide a disclosure of asserted claims and infringement

contentions and supporting documentation. Patent L.R. 3-1, 3-2. At the Initial Case Management Conference, the Court adopted Whisker's proposed schedule. Dkt. 65. Pursuant to that Schedule, Whisker's disclosure of its infringement contentions is due on May 26, 2023. Defendants will disclose their theories and supporting facts to rebut Whisker's infringement contentions and to support their non-infringement counterclaim during the pre-trial phases of this case in accordance with the requirements of the Federal Rules of Civil Procedure, the Local Rules of Practice in Civil Proceedings before the courts in this District, the Local Rules of Practice for Patent Cases before the courts in this District, the Standing Order for Civil Cases Before Judge Vince Chhabria, and the Schedule set by the Court for this matter.

173. Further, Defendants have not infringed contributorily or by inducement any valid and enforceable claim of the '502 Patent because there is no direct infringement; the Accused Products do not fall within the claims of the '502 Patent. Moreover, to the extent Plaintiff asserts that Defendants indirectly infringe the '502 Patent, including by inducement of infringement, Defendants are not liable, because, at a minimum, Defendants lack the requisite intent or knowledge to induce direct infringement of the '502 Patent by another. Defendants also lack the knowledge required for a finding of contributory infringement under 35 U.S.C. § 271(c).

SECOND DEFENSE
(Invalidity)

174. Each of the claims of the '502 Patent is invalid for failure to satisfy one or more conditions for patentability set forth under 35 U.S.C. including, but not limited to §§ 101, 102, 103, and 112 *et seq.,* and the rules, regulations, and laws pertaining to those provisions, including the applicable provisions of Title 37 of the Code of Federal Regulations.

175. This case is subject to the Local Rules of Practice for Patent Cases before the United States District Court for the Northern District of California. Patent L.R. 1-2. Defendants are required to provide a disclosure of their invalidity contentions following Whisker's disclosure of its infringement contentions. Patent L.R. 3-3, 3-4. At the Initial Case Management Conference, the Court adopted Whisker's proposed schedule. Dkt. 65. Pursuant to that Schedule, Defendants' disclosure of their invalidity contentions is due on July 10, 2023.

## THIRD DEFENSE
### (Prosecution History Estoppel/Disclaimer)

176. Plaintiff is estopped from construing the claims of the '502 Patent to cover or include, either literally or by application of the doctrine of equivalents, products manufactured, used, imported, sold, or offered for sale by Defendants or methods used by Defendants because of amendments, admissions, representations, or statements made before the USPTO during prosecution of the applications leading to the issuance of the '502 Patent or applications related thereto, because of disclosures or language in the specifications of the '502 Patent, and/or because of limitations in the claims of the '502 Patent.

## FOURTH DEFENSE
### (Limitations on Recovery)

177. Plaintiff's claims for damages and other remedies are limited by 35 U.S.C. §§ 286 and/or 288. Plaintiff is barred by 35 U.S.C. § 288 from recovering costs associated with this action.

## FIFTH DEFENSE
### (Barring of Claims for Injunctive Relief)

178. Plaintiff is not entitled to injunctive relief against Defendants because any alleged injury is not immediate or irreparable, Plaintiff has an adequate remedy at law for its alleged

injury, the balance of hardships does not favor an injunction.

## SIXTH DEFENSE
(No Exceptional Case)

179.    Plaintiff cannot prove that this is an exceptional case that justifies an award of attorney fees against Defendants pursuant to 35 U.S.C. § 285.

## DEFENDANTS' COUNTERCLAIMS

PurLife Brands, Inc. d/b/a Smarty Pear ("Smarty Pear"), a Delaware corporation, and Chris Madeiras ("Madeiras"), an individual, by their undersigned counsel, counterclaims against, Automated Pet Care Products, LLC d/b/a Whisker ("Whisker"), a Michigan corporation, and against Jacob Zuppke ("Zuppke"), and individual, allege, upon personal knowledge as to themselves and their own acts and upon information and belief as to all other matters, as follows:

## INTRODUCTION

Smarty Pear is a California based technology company dedicated to improving life for pets and pet parents through innovative smart products like Leo's Loo and Leo's Loo Too. Leo's Loo was named after Smarty Pear's founder and CEO's oversized, loving, and sometimes cantankerous cat. Leo was badly injured and eating from a dumpster at a young age when he was rescued. Thankfully, he went on to live over 18 wonderful years and provided love and fun memories to all he met. Christopher was born with a cat in his crib and had pets throughout his lifetime.

Christopher also has a well-established career and track record of excellence. Having +35 years' experience working in senior leadership roles in four of the world's largest consumer packaged goods companies. In addition, he helped to build a $1 billion dollar pet food brand and assisted in starting two of the very first app enable pet technology companies in the industry, all

prior to starting PurLife Brands. He has followed his passions and love of pets to make better pet products available to all for the last consecutive 14 years.

PARTIES

1.     Counterclaim Plaintiff, PurLife Brands, Inc. d/b/a Smarty Pear ("Smarty Pear") is a corporation organized under the laws of the State of Delaware with its principal place of business at 228 Hamilton Avenue #3107 3rd Floor Palo Alto CA 94301.

2.     Counterclaim Plaintiff, Chris Madeiras ("Madeiras") is, and at all relevant times was, the Founder and Chief Executive Officer of Smarty Pear, and resides in California.

3.     Counterclaim Defendant, Automated Pet Care Products, LLC d/b/a Whisker ("Whisker") is a limited liability company organized under the laws of the State of Michigan with its principal place of business at 1080 W Entrance Drive, Auburn Hills, Michigan 48326.

4.     Counterclaim Defendant, Jacob Zuppke ("Zuppke") is, and at all relevant times was the Chief Executive Officer and President of Whisker, and authorizes, controls, and directs Whisker's marketing and advertising strategy, including the conduct constituting the business torts complained of in this Counterclaim. He is the conscious, dominant, and active force behind the wrongful acts of Whisker complained of in this Counterclaim, which wrongful acts he has engaged in for the gain and benefit of Whisker and for his own individual gain and benefit. On information and belief, Counterclaim Defendant Zuppke is an individual residing in Royal Oak, Michigan.

5.     At all relevant times, Counterclaim Defendants Whisker and Zuppke were the agent and alter ego of the other, acting for and on behalf of both Whisker and Zuppke as a single enterprise, with unity of purpose and control.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction over Smarty Pear's federal claims under 28 U.S.C. § 1331 and § 1338(a). The federal claims arise under the Lanham Act, 15 U.S.C. § 1125. This Court has supplemental subject matter jurisdiction over Smarty Pear's state-law claims under 28 U.S.C. § 1367(a).

7.      Jurisdiction is also proper under 28 U.S.C. § 1332(a)(2) as the matter is between parties in different states (Counterclaim Plaintiffs in California, and Counterclaim Defendants in Michigan), and because the amount in controversy, exclusive of interest and costs, exceeds $75,000.

8.      All other claims asserted in this Counterclaim arise out of the same transaction or occurrence, so that this Court has supplemental jurisdiction over all additional claims asserted in this case under 28 U.S.C. § 1367(a).

9.      Personal jurisdiction over Whisker is proper because Whisker has submitted itself to the jurisdiction of this Court by, among other things, filing the SA Complaint. Personal jurisdiction over Zuppke is proper because Zuppke has submitted himself to the jurisdiction of this Court by, among other things, having his alter ego Whisker file the SA Complaint. Further, this Court has personal jurisdiction over Whisker and Zuppke because both regularly conduct business, including advertising, offering to sell, and selling their products in this District and elsewhere in the United States. Further, Whisker's and Zuppke's wrongful acts complained of in this Counterclaim took place, and have caused injury to Smarty Pear and Madeiras, within this judicial district.

10.     Venue is proper in the Northern District of California pursuant to 28 U.S.C. § 1391(b) and (c), and § 1400(a)-(b), because Whisker and Zuppke are subject to personal jurisdiction in this District and Whisker has appeared in this action and initiated this action by filing claims against Smarty Pear and Madeiras in this District. Venue is also proper in this District because the acts that are the subject of this Counterclaim were committed at least in part in this District.

11.     This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331, 1338(a), 2201, and 2202 as to Defendants' counterclaims against Whisker pursuant to the patent laws of the United States, Title 35, United States Code, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. An actual, substantial, and continuing justiciable controversy exists between Whisker and Defendants based on Whisker having filed a SA Complaint against Defendants alleging infringement of the '502 Patent with its Leo's Loo and Leo's Loo Too products with respect to which Defendants require a declaration of their rights by this Court. Specifically, the controversy concerns non-infringement and invalidity of the '502 Patent.

GENERAL ALLEGATIONS

12.     Smarty Pear helped design, has manufactured and markets its unique brand of automatic litter boxes called "Leo's Loo" and "Leo's Loo Too."

13.     Influencers and content creators are important to Smarty Pear's success in the market place. To that end, it is crucial that influencers and content creators be impartial, objective and unbiased, as opposed to having non-disclosed affiliations.

14.     Additionally, e-commerce partnerships are critical contributors to the sales success of Smarty Pear. Smarty Pear has such partnerships with both CHEWY and AMAZON.

15.     Legitimate and authentic reviews published by influencers and content creators, as well as reviews posted on the websites of e-commerce partners such as CHEWY and AMAZON, play an indispensable role in driving the sales of Smarty Pear products.

16.     On information and belief, Counterclaim-Defendant, Mr. Zuppke through one or more agents, independent contractors, and/or employees of Whisker caused the posting of false reviews for both Whisker's products and Smarty Pear's products.

17.     On information and belief, when Whisker recently dropped to a 4.4 rating on Chewy, Whisker immediately and mysteriously received twenty 5 star reviews the following day that propped Whisker's product rating back up to a 4.5. That's 15% of your total reviews of 7 months of selling in one day. At the same time, Smarty Pear has been systematically getting one star reviews that make no sense and have slowly pulled Smarty Pear down from a 4.6 rating to a 4.

18.     On information and belief, Whisker falsely claimed to be a "small business" on Amazon's website.

19.     On information and belief, Whisker falsely claimed for an extended period that they had the "Highest Rated Litter Machine".

20.     On information and belief, for many months, Whisker advertised on Chewy's website that its products were made in the USA. On information and belief, the products are only assembled in the USA.

21.     On information and belief, Whisker induced "The Tech Reviewer (Kristin Guenov)" to create a YouTube video positioning Smarty Pear's Leo's Loo as a poor alternative to Whisker's Litter Robot 3, after which Whisker actively promoted that video until it achieved sufficient views to adversely affect the sales of Smarty Pear and boost the sales of Whisker's

automatic Self-Cleaning Litter Box product. Further, on information and belief, this content creator has or had an undisclosed sponsored or paid relationship with Whisker, and is or was an undisclosed part of Whisker's affiliate program.

22.     On information and belief, content creator "Floppy Cats (Jennifer Dean)" has a long term relationship with Whisker during which Whisker paid her affiliate commissions and bought quarterly advertising packages on her website. On information and belief, as a consequence of that relationship, Jennifer Dean created over 20 pieces of content promoting Whisker's products while appearing to be an unbiased and independent source of objective information. Her misleading promotional efforts had a significant impact on Whisker's sales of its automatic self-cleaning litter box products.

23.     In March 2022, representatives of Smarty Pear, Mark Budgell and Soo Jin Yi, spoke to the owner of www.floppycats.com, Jennifer Dean, for the purpose of introducing Ms. Dean to Leo's Loo Too. During that call, Ms. Dean said she had been contacted by a representative of Whisker who "briefed" her on the facts concerning Smarty Pear. Ms. Dean related to Mark Budgell and Soo Jin Yi that Whisker's representative told her that Smarty Pear had stolen Whisker's intellectual property and product design, that Chris Madeiras was personally responsible for stealing Whisker's intellectual property and product design, and that Smarty Pear would not be in the market for long.

24.     On information and belief, Whisker has a relationship with content creator / influencer "All About Cats (Mallory Crusta, Doron Wolffberg)". On information and belief, Whisker induced this content creator / influencer to publish a video entitled "10 Things You Should Know Before Buying an Automatic Litter Box", with Smarty Pear's product in the background creating a false impression that it was an example of what customers should beware

of when deciding on what to purchase. Additionally, she parroted the criticisms that Whisker uses in its marketing campaign.

25.     On information and belief, Whisker representatives shopped the lawsuit to the attendees of Cat Con (2022 in Pasadena, California).

26.     On information and belief, Jacob Zuppke, President and CEO of Whisker, induced his best friend, Sean Awdish, to transmit a threatening message to Smarty Pear:

> *"Hi,*
> *Is your business plan to just go to www.litter-robot.com and copy everything they do?*
> *You aren't original and your name is the stupidest fucking name not only for your product but for anything in general.*
> *Only pear I ever knew either got eaten or rotted.*
> *Hashtag LitterRobot on any of your posts again and I will have City to Kitty so far up your ass you'll have hemorrhoids the size of a pear. If you're lucky, they might be 'smart.'*
> *And tell that little bitch Chris Madeiras if he knows what's good for his sorry ass brand to create his own content because I will flood the social media platforms with all my little fucking minions and destroy the smartypear brand even more than when he named it.*
> *Have a great weekend,*
> *-Sean Fucking Awdish"*

27.     On information and belief, Mr. Zuppke made defamatory statements to one or more Smarty Pear customers about Chris Madeiras.

28.     On information and belief, Mr. Zuppke through one or more agents, independent contractors, and/or employees of Whisker caused the posting of fake and false reviews for both Whisker's products and Smarty Pear's products. Such fake and false reviews caused adverse impact on ratings and directly impacted sales negatively of Smarty Pear's products.

29.     On information and belief, Whisker communicated false and misleading information to influencers / content creators about Smarty Pear's products, including, but not limited to:

■ Smarty Pear's product was a cheap Chinese knock off

■ Smarty Pear violated Whisker's patents and Chris Madeiras, Smarty Pear's CEO, stole company secrets

■ Smarty Pear manufactured in China and "pretended" to be an American company

■ Smarty Pear was not likely to be in business long or be able to provide quality customer support

■ The story of Leo was fabricated

30.     Smarty Pear has a valid contract with Chewy. Through that contract, Smarty Pear partners with Chewy to offer exclusively its automated litter box products to Chewy customers online through Chewy's website and its mobile app. That contract provides Chewy with exclusive rights to sell Smarty Pear's V1 product.

31.     Chewy, Inc. is a publicly traded e-commerce company which describes itself as offering the personalized service of a neighborhood pet store alongside the convenience and speed of e-commerce. Chewy has a selection of more than 110,000 products which it offers for sale to its customers. Chewy had net sales of $10.1 billion in fiscal year 2022 to 20.4 million active customers and bills itself as the preeminent online source for pet products, supplies and prescriptions. Chewy partners with more than 3000 brands in the pet industry.

32.     On information and belief, Automated Pet Care Products, LLC d/b/a Whisker (hereinafter "Whisker") had knowledge of the contract between Smarty Pear and Chewy.

33.     On information and belief, Whisker engaged in a number of actions intentionally designed to induce a breach or disruption of Smarty Pear's contractual relationship with Chewy.

34.     On information and belief, Whisker's acts of interference include but are not limited to inducing Chewy to delay the original launch of Smarty Pear product, allowing Whisker to launch its own Litter Robot product months before Smarty Pear's product launch. This delayed launch resulted in damage and economic harm to Smarty Pear.

35.     On information and belief, Whisker also induced Chewy to delay Smarty Pear's second product launch and to cease communication with Smarty Pear. As a result, Smarty Pear was not included in the 2021 gift guide and was not included on many other support items.

36.     On information and belief, Whisker induced Chewy to disclose Smarty Pear's proprietary information to Whisker.

37.     On information and belief, Whisker made a false statement of fact to Chewy that Smarty Pear would no longer be in business. This false statement resulted in Chewy reducing its support for Smarty Pear and its products, locking Whisker into a long term deal with Chewy at Smarty Pear's expense, and causing damage and economic harm to Smarty Pear.

38.     On information and belief, Kyle Ashley (Whisker VP) communicated false information to Chewy creating the false impression that something bad was happening to Smarty Pear and that the company would not be in business anymore.

39.     On or about early April 2022, Smarty Pear entered into a valid advertising contract with Great Pet Media (also known as Metamorphosis), which owns the following publications: GreatPetCare.com, GreatPetLiving.com, DogsOfInstagram. Great Pet Media promised to include Smarty Pear and its products in a couple of articles that the publications would author.

40.     On or about June 2022, Kevin Campbell, a sales representative for Metamorphosis requested a phone call with Smarty Pear's Mark Budgell. Thereafter, Mr.

Budgell, along with two employees from Snow Consulting (Christina Smith and Randy Norton) spoke with Mr. Campbell. During that call, Mr. Campbell stated that his company had been acquired and the CEO of the new company had instructed him to terminate the contract with Smarty Pear, which he did. Mr. Campbell also revealed during the call that the new company had a relationship with Whisker and Whisker's CEO, Jacob Zuppke.

41.     On information and belief, Whisker CEO and President, Jacob Zuppke, induced Great Pet Media to delete content from its website and other platforms that were promoting Smarty Pear and/or Leo's Loo Too.

42.     A prominent industry investor was interested in investing in Smarty Pear or purchasing the company.

43.     On information and belief, Jacob Zuppke made false and misleading statements to the prominent industry investor about Smarty Pear which disrupted that prospective economic relationship.

<u>COUNT ONE</u>

(Unfair Competition and False Advertising - Lanham Act, 15 U.S.C. § 1125)

44.     Counterclaim Plaintiffs, Smarty Pear and Madeiras, incorporate by reference the allegations set forth in paragraphs 1- 43 of the Counterclaims herein.

45.     In its marketing materials and communications disseminated to potential and actual customers, as well as to influencers / content creators, Whisker and Zuppke have made numerous false and misleading statements.

46.     Whisker's and Zuppke's deceptive statements and conduct have deceived and confused, and/or have the capacity to deceive and confuse, a substantial segment of Intuitive's current and potential consumers.

47.     Whisker's and Zuppke's deceptive statements and conduct are material and likely to influence consumer purchasing decisions.

48.     Both Smarty Pear's Leo's Loo and Leo's Loo Too and Whisker's automatic litter box products are advertised, offered for sale and sold in interstate commerce.

49.     Whisker's and Zuppke's deceptive statements and conduct are willful and made with the knowledge that they are untruthful and/or unlawful.

50.     Smarty Pear and Madeiras have suffered substantial harm, both monetary and irreparable, as a result of Whisker's and Zuppke's actions, and will continue to suffer such substantial harm unless those actions are restrained and enjoined by this Court.

<u>COUNT TWO</u>

(Unfair Competition Law – CA. Stat. § 17200)

51.     Counterclaim Plaintiffs, Smarty Pear and Madeiras, incorporate by reference the allegations set forth in paragraphs 1- 43 of the Counterclaims herein.

52.     Whisker's and Zuppke's conduct detailed above constitutes unlawful, unfair and deceptive acts or practices in the conduct of trade or commerce.

53.     Whisker and Zuppke willfully used or practiced these acts in violation of California's unfair competition statute, Section 17200, and both Whisker and Zuppke knew or should have known that their acts were unlawful and would damage Intuitive and injure consumers by its deception.

54.     Whisker's and Zuppke's conduct has resulted in substantial harm to competition.

55.     Smarty Pear, which has a principal place of business in California, and Madeiras who resides in California, have suffered substantial harm, both monetary and irreparable, as a

Defendants' Answer to SA Complaint
Affirmative Defenses and Counterclaims
Case No. 3:22-cv-04261-VC

result of Whisker's and Zuppke's actions, and will continue to suffer such substantial harm unless those actions are restrained and enjoined by this Court.

## COUNT THREE

### (False Advertising – CA. Stat. § 17500)

56.     Counterclaim Plaintiffs, Smarty Pear and Madeiras, incorporate by reference the allegations set forth in paragraphs 1- 43 of the Counterclaims herein.

57.     Whisker and Zuppke intended for consumers in California to purchase automatic litter box products from Whisker.

58.     Whisker's and Zuppke's publicly disseminated marketing and advertising materials include numerous statements detailed above Whisker and Zuppke knew or should have known through the exercise of reasonable care were both untrue and misleading.

59.     Smarty Pear and Madeiras have suffered substantial harm, both monetary and irreparable, as a result of Whisker's and Zuppke's actions, and will continue to suffer such substantial harm unless those actions are restrained and enjoined by this Court.

## COUNT FOUR

### (Common Law Unfair Competition)

60.     Counterclaim Plaintiffs, Smarty Pear and Madeiras, incorporate by reference the allegations set forth in paragraphs 1- 43 of the Counterclaims herein.

61.     Whisker is a competitor of Smarty Pear and has engaged in the above-detailed deceptive and fraudulent conduct with the intent to confuse and deceive the public into purchasing its automatic litter box products.

62.     Whisker's and Zuppke's conduct has caused deception and confusion among consumers.

63.     Smarty Pear and Madeiras have suffered substantial harm, both monetary and irreparable, as a result of Whisker's and Zuppke's actions, and will continue to suffer such substantial harm unless those actions are restrained and enjoined by this Court.

COUNT FIVE

(Tortious Interference With Contract)

64.     Counterclaim Plaintiffs, Smarty Pear and Madeiras, incorporate by reference the allegations set forth in paragraphs 1- 43 of the Counterclaims herein.

65.     At all relevant times, Smarty Pear has had contractual relationships with Chewy, Inc. and Great Pet Media. Whisker and Zuppke were at all times aware of these contractual relationships and have undertaken intentional acts to disrupt them and/or induce Chewy, Inc. and Great Pet Media to breach them.

66.     Whisker's and Zuppke's actions have resulted in actual breach or disruption of contractual relationships between Smarty Pear and Chewy, as well as between Smarty Pear and Great Pet Media.

67.     There is no legal justification for Whisker's or Zuppke's actions, which have been motivated purely by their own greed and subjected Smarty Pear customers and Smarty Pear and Madeiras themselves to substantial harm.

68.     Smarty Pear and Madeiras have suffered substantial harm, both monetary and irreparable, as a result of Whisker's and Zuppke's actions, and will continue to suffer such substantial harm unless those actions are restrained and enjoined by this Court.

<u>COUNT SIX</u>

(Intentional Interference With Prospective Economic Relations Or Advantage)

69.     Counterclaim Plaintiffs, Smarty Pear and Madeiras, incorporate by reference the allegations set forth in paragraphs 1- 43 of the Counterclaims herein.

70.     At all relevant times, Smarty Pear has had an economic relationship with Radio Systems and various influencers/content creators, all of which had the probability of future economic benefit to Smarty Pear.

71.     On information and belief, Whisker and Zuppke at all times had knowledge of Smarty Pear's relationships with Radio Systems, and various influencers/content creators. On information and belief, Whisker and Zuppke engaged in intentional, wrongful acts designed to disrupt Smarty Pear's relationships with Radio Systems, and various influencers/content creators.

72.     Smarty Pear's relationships with Radio Systems, and various influencers/content creators were actually disrupted.

73.     Smarty Pear and Madeiras suffered economic harm proximately caused by the acts of Whisker and Zuppke.

<u>COUNT SEVEN</u>

(Declaratory Judgment of Non-Infringement of the '502 Patent)

74.     Smarty Pear realleges and incorporates the allegations set forth in paragraphs 1-11 of these Counterclaims as if fully restated herein.

75.     In its Complaint, Whisker alleges that Defendants have infringed and continue to infringe the '502 Patent by its manufacture, use, sale, and offer to sell of its Leo's Loo and Leo's Loo Too products.

76. Defendants have not and are now infringing, inducing the infringement of, or contributing to the infringement of any valid and enforceable claim of the '502 Patent with Leo's Loo or Leo's Loo Too products.

77. This case is subject to the Local Rules of Practice for Patent Cases before the United States District Court for the Northern District of California. Patent L.R. 1-2. As an initial matter, Whisker is required to provide a disclosure of asserted claims and infringement contentions and supporting documentation. Patent L.R. 3-1, 3-2. At the Initial Case Management Conference, the Court adopted Whisker's proposed schedule. Dkt. 65. Pursuant to that Schedule, Whisker's disclosure of its infringement contentions is due on May 26, 2023. Defendants will disclose their theories and supporting facts to rebut Whisker's infringement contentions and to support their non-infringement counterclaim during the pre-trial phases of this case in accordance with the requirements of the Federal Rules of Civil Procedure, the Local Rules of Practice in Civil Proceedings before the courts in this District, the Local Rules of Practice for Patent Cases before the courts in this District, the Standing Order for Civil Cases Before Judge Vince Chhabria, and the Schedule set by the Court for this matter.

78. Defendants further lack and continue to lack the requisite intent or knowledge to induce or contribute to the direct infringement of the '502 Patent by another with the Leo's Loo and/or Leo's Loo Too products.

79. A justiciable controversy exists as to whether Defendants have infringed any valid and enforceable claim of the '502 Patent with the Leo's Loo and/or Leo's Loo Too products.

80. Defendants are entitled to a judgment declaring that they have not directly or indirectly infringed, either literally or under the doctrine of equivalents, any valid and enforceable claim of the '502 Patent with the Leo's Loo and/or Leo's Loo Too products.

## COUNT EIGHT

(Declaratory Judgment of Invalidity of the '502 Patent)

81.     Defendants reallege and incorporate the allegations set forth in paragraphs 1-11 of these Counterclaims as if fully restated herein.

82.     The claims of the '502 Patent are invalid in view of the prior art and/or for failure to comply with one or more conditions for patentability set forth under 35 U.S.C. including but not limited to §§ 101, 102, 103, and 112 et seq., and the rules, regulations, and laws pertaining to those provisions, including the applicable provisions of Title 37 of the Code of Federal Regulations.

83.     Defendants are entitled to judgment declaring that the claims of the '502 Patent are invalid in view of the prior art and/or for failure to comply with one or more of the requirements of the United States Patent Act set out in 35 U.S.C. §§ 1, et seq., including without limitation 35 U.S.C. §§ 101, 102, 103, and 112.

84.     This case is subject to the Local Rules of Practice for Patent Cases before the United States District Court for the Northern District of California. Patent L.R. 1-2.  Defendants are required to provide a disclosure of their invalidity contentions following Whisker's disclosure of its infringement contentions.  Patent L.R. 3-3, 3-4. At the Initial Case Management Conference, the Court adopted Whisker's proposed schedule. Dkt. 65. Pursuant to that Schedule, Defendants' disclosure of their invalidity contentions is due on July 10, 2023.

## COUNT NINE

(Slander under California Civil Code §§ 44 and 46)

85. Counterclaim Plaintiffs, Smarty Pear and Madeiras, incorporate by reference the allegations set forth in paragraphs 1- 43 of the Counterclaims herein.

86. Counterclaim Defendants, Whisker and Zuppke, have made false and unprivileged publications and statements, orally uttered, that tend to injure Counterclaim Plaintiffs in their business.

87. These statements impute characteristics of Counterclaim Plaintiffs' business that have a notice tendency to lessen its profits.

88. Those statements are slanderous under California Civil Code § 46.

89. On information and belief, Counterclaim Defendants have made at least the following slanderous statements:

- They have made slanderous statements to Counterclaim Plaintiffs' top customer Chewy, which have directly impacted sales; for example, stating that Counterclaim Plaintiffs would be out of business, causing Chewy to cut back its support and decrease its purchases; and

- They have made slanderous statements to a major potential investor, impacting its decision to invest.

COUNT TEN

(Libel Under California Civil Code §§ 44 and 45)

90. Counterclaim Plaintiffs, Smarty Pear and Madeiras, incorporate by reference the allegations set forth in paragraphs 1- 43 of the Counterclaims herein.

91. Counterclaim Defendants, Whisker and Zuppke, have made or caused to be made false and unprivileged publications in writing which tend to injure counterclaim Plaintiff in their business.

92.     Those written statements are libel under California Civil Code § 45.

93.     On information and belief, Counterclaim Defendants have made at least the following libelous publications:

- Whisker sent a disparaging email to all influencers about working with Counterclaim Plaintiffs;

- Whisker has made or caused to be made falsifying reviews of Counterclaim Plaintiff, hundreds of which Amazon.com has removed from its website for being fraudulent; and

- Whisker has a systematic approach to falsify unfavorable reviews by secretly paying content creators and other influencers to write unfavorable reviews, which are then distributed;

- Counterclaim Defendants' Director and Plant Manager made derogatory public comments about Counterclaim Plaintiffs on social media.

## RESERVATION OF RIGHTS

94.     Defendants expressly reserve the right to assert any additional defenses or counterclaims that may now exist or in the future may be available based on discovery and further factual investigation in this case.

## JURY TRIAL DEMANDED

95.     Defendants request a jury trial as to all issues so triable.

## PRAYER FOR RELIEF

96.     Defendants respectfully request this Court grant relief as follows:

A.      Judgment that Whisker's Complaint in its entirety be dismissed with

prejudice;

B.      Judgment that Whisker is entitled to nothing by its Complaint, including that Whisker is not entitled to an award of compensatory damages, attorneys' fees, costs, pre-judgment or post-judgment interest under 35 U.S.C. §§ 284 or 285, or any applicable law;

C.      Denial of any and all of Whisker's requests for injunctive relief;

D.      Judgment that Defendants have not infringed, and are not infringing, any valid and enforceable claim of the '502 Patent by any manufacture, use, sale, and offer to sell of Smarty Pear's Leo's Loo and/or Leo's Loo Too products;

E.      Judgment that the claims of the '502 Patent are invalid and/or unenforceable;

F.      Judgment that Whisker and/or any of its successors and attorneys, and all persons in active concert or participation with any of them, are enjoined from directly or indirectly asserting infringement or instituting any further action for infringement of the '502 Patent against Defendants, or any of Defendants' customers, end-users, agents, suppliers, contractors, consultants, successors, and assigns;

G.      Order that this case is "exceptional" pursuant to 35 U.S.C. § 285 entitling Defendants to an award of their reasonable and necessary attorneys' fees, expenses, and costs, and prejudgment interest thereon;

H.      Order awarding Defendants their costs incurred in this action; and

I.       Grant to Defendants such other and further relief as the Court deems just and proper.

97.     Counterclaim Plaintiffs, Smarty Pear and Madeiras, further respectfully request this Court enter judgment in favor of Smarty Pear and Madeiras against Counterclaim Defendants, Whisker and Zuppke, as to all the Counterclaims asserted herein, including an Order granting Counterclaim Plaintiffs, Smarty Pear and Whisker, the following relief:

A.      Compensatory damages on all applicable causes of action alleged herein;

B.      Actual costs, expenses and attorneys' fees incurred in this lawsuit;

C.      All exemplary, enhanced and punitive damages;

D.      Pre-judgment and post-judgment interest;

E.      Preliminary and permanent injunctive relief; and

F.      Such other and further relief as the Court shall deem just and proper.

Dated: May 17, 2023                          MCCAULLEY LAW GROUP LLC

By: */s/ Richard T. McCaulley*
RICHARD T. MCCAULLEY
(pro hac vice)
richard@mccaulleylawgroup.com
180 N. Wabash Avenue, Suite 601
Chicago, Illinois 60601
Telephone: 312.330.8105

JOSHUA V. VAN HOVEN
(CSB No.62815)
E-Mail: josh@mccaulleylawgroup.com
3001 Bishop Dr., Suite 300
San Ramon, California 94583
Telephone: (925) 302-5941

Attorneys for Defendants-Counterclaim Plaintiffs
SMARTY PEAR and CHRIS MADEIRAS