1  COOLEY LLP
   BOBBY GHAJAR (198719)
2  (bghajar@cooley.com)
   1333 2nd Street, Suite 400
3  Santa Monica, CA 90401
   Telephone:    (310) 883-6400
4  Facsimile:    (310) 883-6500

5  ERIK MILCH *[Pro hac vice]*
   (emilch@cooley.com)
6  11951 Freedom Drive, 14th Floor
   Reston, VA 20190
7  Telephone:    (703) 456-8573
   Facsimile:    (703) 456-8100

8  *[Full Listing on Signature Page]*

9  Attorneys for Plaintiff
   Automated Pet Care Products, LLC d/b/a Whisker
10

11          **UNITED STATES DISTRICT COURT**

12          **NORTHERN DISTRICT OF CALIFORNIA**

13

14 | Automated Pet Care Products, LLC d/b/a | Case No. 3:22-cv-04261-VC (SK)
   | Whisker, a Michigan corporation,       |
15 |                                        | **WHISKER'S MOTION TO DISMISS**
   |              Plaintiff,                 | **DEFENDANTS' COUNTERCLAIMS**
16 |                                        |
   |          v.                            | Hearing Date: July 20, 2023
17 |                                        | Time: 10:00 a.m.
   | PurLife Brands, Inc. d/b/a Smarty Pear, a | Courtroom: 4, 17th Floor
18 | Delaware corporation, and Chris Madeiras, an | Judge: Hon. Vince Chhabria
   | individual,                            |
19 |                                        |
   |              Defendants.               |
20 |                                        | Counterclaims Filed: May 13, 2023
   |_____|
21 | PurLife Brands, Inc. d/b/a Smarty Pear, a |
   | Delaware corporation, and Chris Madeiras, an |
22 | individual,                            |
   |                                        |
23 |        Counterclaim-Plaintiffs,        |
   |                                        |
24 |          v.                            |
   |                                        |
25 | Automated Pet Care Products, LLC d/b/a |
   | Whisker, a Michigan corporation,       |
26 |                                        |
   |        Counterclaim-Defendant.         |
27

28

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ................................................................................................. 1

II.     LEGAL STANDARD ............................................................................................ 2

III.    DEFENDANTS FAIL TO STATE FALSE ADVERTISING COUNTERCLAIMS .................................. 3

IV.     DEFENDANTS FAIL TO STATE UNFAIR COMPETITION COUNTERCLAIMS ............................ 6

V.      DEFENDANTS FAIL TO STATE TORTIOUS INTERFERENCE COUNTERCLAIMS ....................... 9

VI.     DEFENDANTS FAIL TO STATE DECLARATORY JUDGMENT COUNTERCLAIMS. ................... 13

VII.    DEFENDANTS FAIL TO STATE DEFAMATION COUNTERCLAIMS. ...................................... 13

VIII.   CONCLUSION ................................................................................................... 15

**Cases**

*A.P. Deauville, LLC v. Arion Perfume and Beauty, Inc.*,
    2014 WL 7140041 (N.D. Cal. Dec. 12, 2014) ........................................................ 6

*Ahern v. Apple Inc.*,
    411 F. Supp. 3d 541 (N.D. Cal. 2019) .............................................................. 3, 9

*Alfasigma USA, Inc. v. First Databank, Inc.*,
    525 F. Supp. 3d 1088 ................................................................... 4, 6, 10, 14

*AlterG, Inc. v. Boost Treadmills LLC*,
    388 F. Supp. 3d 1133 (N.D. Cal. 2019) ............................................................. 10

*Ariix, LLC v. NutriSearch Corp.*,
    985 F.3d 1107 (9th Cir. 2021) ....................................................................... 5

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................. 2, 13

*Calsoft Labs, Inc. v. Panchumarthi*,
    2019 WL 5811300 (N.D. Cal. Nov. 7, 2019) ......................................................... 12

*Choon's Design, LLC v. ContextLogic Inc.*,
    2020 WL 6891824 (N.D. Cal. Nov. 24, 2020) ................................................... 2, 3, 5

*Cisco Sys., Inc. v. Dexon Comput., Inc.*,
    2021 WL 5848080 (N.D. Cal. Dec. 9, 2021) .......................................................... 5

*Cisco Sys., Inc. v. Dexon Comput., Inc.*,
    2022 WL 2222962 (N.D. Cal. June 21, 2022) ......................................................... 9

*Destfino v. Reiswig*,
    630 F.3d 952 (9th Cir. 2011) ....................................................................... 3, 7

*DocMagic, Inc. v. Ellie Mae, Inc.*,
    745 F. Supp. 2d 1119 (N.D. Cal. 2010) ............................................................. 6, 8

*Hadley v. Kellogg Sales Co.*,
    243 F. Supp. 3d 1074 (N.D. Cal. 2017) ............................................................... 6

*Honey Bum, LLC v. Fashion Nova, Inc.*,
    63 F.4th 813 (9th Cir. 2023) .................................................................... 9, 10, 12

*Infectolab Americas LLC v. ArminLabs GmbH*,
    2021 WL 292182 (N.D. Cal. Jan. 28, 2021) ....................................................... 9, 10

*Ixchel Pharma, LLC v. Biogen, Inc.*,
9 Cal. 5th 1130 (Cal. 2020) .................................................................................................. 10

*J&K IP Assets, LLC v. Armaspec, Inc.*,
2018 WL 3428757 (N.D. Cal. July 16, 2018) ...................................................................... 13

*Jackson v. Ocwen Loan Servicing, LLC*,
2010 WL 3294397 (E.D. Cal. Aug. 20, 2010) ....................................................................... 8

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009) ........................................................................................... 5, 7

*Left Field Holdings v. Google LLC*,
2022 WL 17072948 (N.D. Cal. Nov. 18, 2022) .................................................................. 3, 6

*LegalForce RAPC Worldwide P.C. v. Swyers*,
2018 WL 3439371 (N.D. Cal. July 17, 2018) .................................................................. 2, 3, 5

*Lynwood Investments CY Ltd. v. Konovalov*,
2022 WL 3370795 (N.D. Cal. Aug. 16, 2022) ..................................................................... 10

*Magic Leap, Inc. v. Chi Xu*,
2020 WL 3268659 (N.D. Cal. June 17, 2020) ....................................................................... 2

*Merioanos v. Merry Chance Indus.*,
2010 WL 11549750 (C.D. Cal. Nov. 12, 2010) .................................................................. 14

*Moore v. Trader Joe's Co.*,
4 F.4th 874 (9th Cir. 2021) ................................................................................................... 3

*Neo4j, Inc. v. PureThink, LLC*,
2023 WL 122402 (N.D. Cal. Jan. 6, 2023) ..................................................................... 9, 12

*Oracle USA, Inc. v. Rimini Street, Inc.*,
2010 WL 4386957 (D. Nevada Oct. 29, 2010) ................................................................... 15

*Schrader Cellars, LLC v. Roach*,
2021 WL 9816545 (N.D. Cal. June 10, 2021) .................................................................... 14

*Sciacca v. Apple, Inc.*,
362 F. Supp. 3d 787 (N.D. Cal. Jan. 25, 2019) .................................................................... 5

*Sharper Image Corp. v. Target Corp.*,
425 F. Supp. 2d 1056 (N.D. Cal. 2006) ............................................................................. 15

Cooley LLP
ATTORNEYS AT LAW

iii

WHISKER'S MOTION TO DISMISS
COUNTERCLAIMS
CASE NO. 3:22-CV-04261-VC (SK)

*Silicon Knights, Inc. v. Crystal Dynamics, Inc.*,
   983 F. Supp. 1303 (N.D. Cal. 1997) ............................................................... 13, 14

*Smith v. Maldonado*,
   72 Cal. App. 4th 637 (1999) ............................................................................ 13

*So v. HP, Inc.*,
   2022 WL 16925965 (N.D. Cal. Nov. 14, 2022) ................................................ 7

*Somers v. Apple, Inc.*,
   729 F.3d 953 (9th Cir. 2013) ............................................................................ 2

*Sosa v. DIRECTV, Inc.*,
   437 F.3d 923 (9th Cir. 2006) ............................................................................ 15

*Southland Sod Farms v. Stover Seed Co.*,
   108 F.3d 1134 (9th Cir. 1997) ......................................................................... 3, 6

*Spy Phone Labs LLC v. Google Inc.*,
   2016 WL 6025469 (N.D. Cal. Oct. 14, 2016) ................................................... 6

*Sumer v. Carrier Corp.*,
   2015 WL 3630972 (N.D. Cal. June 10, 2015) .................................................. 9

*Sybersound Records, Inc. v. UAV Corp.*,
   517 F.3d 1137 (9th Cir. 2008) ......................................................................... 7, 12

*Trindade v. Reach Media Grp., LLC*,
   2013 WL 3977034 (N.D. Cal. July 31, 2013) .................................................. 10

*Tuck Beckstoffer Wines LLC v. Ultimate Distributors, Inc.*,
   682 F. Supp. 2d 1003 (N.D. Cal. 2010) ........................................................... 15

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003) ......................................................................... 2, 3

*Xilinx, Inc. v. Invention Inv. Fund I LP*,
   2011 WL 3206686 (N.D. Cal. July 27, 2011) .................................................. 13

# TABLE OF AUTHORITIES
## (Continued)

Page(s)

**Statutes**

35 U.S.C.
§ 1 ................................................................................................................ 13
§ 101 ............................................................................................................ 13
§ 102 ............................................................................................................ 13
§ 103 ............................................................................................................ 13
§ 112 ............................................................................................................ 13

Cal. Bus. & Prof. Code § 17200 ......................................................................... 6

**Other Authorities**

Fed R. Civ. P.
8 .................................................................................................................... 8
9(b) ....................................................................................................... *passim*
12(b)(6) ........................................................................................................ 2
41 ................................................................................................................... 1

## I.    INTRODUCTION

In April, this Court largely denied Defendants Smarty Pear's and its founder Chris Madeiras' ("Defendants") attempt to dismiss Whisker's claims based on their importing and sale of an infringing product, copying of Whisker's registered trademarks, and making false and misleading statements.  (ECF 56.)  In response, Defendants rushed to file a Counterclaim ("CC") against Plaintiff *and* its CEO (ECF 68) that is rife with conclusory allegations and innuendo—a compilation of vagaries that fail to state a claim for any of its ten claims for relief.  Already, after Plaintiff pointed out obvious defects in the pleading, Defendants walked back their claims against Plaintiff's CEO, filing a Rule 41 dismissal last week.  (ECF 77.)  Plaintiff moves to dismiss and notices a hearing for Thursday, July 20, 2023 at 10:00am.

The allegations in the CC are baseless—a retaliatory measure meant to distract from Smarty Pear's misconduct.  Notwithstanding, as explained below, the CC does not plausibly state a claim for relief, and for that reason alone it should be dismissed.  Defendants allege vague suppositions, that, for example, unidentified people at Whisker spoke ill of Smarty Pear or its products, or that Whisker somehow "induced" disruption of barely articulated contracts or relationships, without any indication what, exactly, was said, when, and to what effect.

Whereas Whisker's false advertising claims contained actual quotes, screenshots, and examples of each of the alleged statements at issue, Defendants instead refer to generalities, double hearsay, or conclusory allegations.  They fail to allege plausible facts indicating how or why certain "statements" were false, and otherwise fail to satisfy the applicable elements of false advertising claims (Counts 1, 3).  This obfuscation appears to be strategic—to avoid specifics or obvious contradictions; for example, Defendants decline to explain their allegation that Whisker falsely claimed to sell the "Highest Rated Litter Machine," notwithstanding Whisker's high ratings that Defendants *themselves* concede.  Defendants assert that a prominent retailer, Chewy, "reduced support," without any allegation what that "support" was, or whether it was contractually obligated.  And although Defendants imply that a sales contract with Chewy was purportedly compromised, Smarty Pear continues to claim it as its "top customer."  Overall, the CC is devoid of allegations satisfying the elements of its interference claims, including injury, knowledge, and intentional

conduct (Counts 5,6). Defendants also suggest (though do not say outright) that it is "unfair competition" for Whisker to pay for advertising, but cry interference when a publisher allegedly terminated their own advertising contract (without any allegation that Whisker was responsible). The CC otherwise fails to allege fraudulent, unlawful, or unfair conduct (Counts 2, 4). Defendants' defamation claims (Counts 9, 10) fare no better, as the CC lacks plausible allegations concerning the speaker, recipients, or context of the generalized statements alleged, some of which are also protected by the litigation privilege. Finally, the CC asserts threadbare patent invalidity and non-infringement counterclaims (Counts 7, 8) under the guise of "declaratory relief," which is improper.

The CC's claims are self-defeating, inadequately pleaded, and fail to state a claim. Defendants cannot hope to survive this motion by relying on a hodge-podge of unspecific and often disconnected allegations, many based on "information and belief" and without factual underpinnings. Respectfully, the Court should stop Defendants from turning this case into a fishing expedition and dismiss Defendants' counterclaims with prejudice.

## II. LEGAL STANDARD

"Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013). The complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plausibility standard "requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Where an allegation sounds in fraud—as at least Defendants' claims for false advertising, unfair competition, and tortious interference (Counts 1-6) do here—the heightened pleading requirements of Rule 9(b) apply. *See LegalForce RAPC Worldwide P.C. v. Swyers*, 2018 WL 3439371, at *5 (N.D. Cal. July 17, 2018) (applying Rule 9(b) to false advertising claims); *Choon's Design, LLC v. ContextLogic Inc.*, 2020 WL 6891824, at *5 (N.D. Cal. Nov. 24, 2020) (applying Rule 9(b) to unfair competition claim premised on false advertising); *Magic Leap, Inc. v. Chi Xu*, 2020 WL 3268659, at *6 (N.D. Cal. June 17, 2020) (applying Rule 9(b) to tortious interference claim premised on fraud). To meet Rule 9(b), a plaintiff must allege the "who, what, when, where,

and how" of the alleged conduct." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003); *see Ahern v. Apple Inc.*, 411 F. Supp. 3d 541, 552 (N.D. Cal. 2019) (requiring "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations"). Likewise, Rule 9(b) "requires plaintiffs to differentiate their allegations when suing more than one defendant." *Destfino v. Reiswig*, 630 F.3d 952, 958 (9th Cir. 2011) (affirming dismissal of "'everyone did everything' allegations"). Failure to plead fraud with particularity justifies dismissal. *See Left Field Holdings v. Google LLC*, 2022 WL 17072948, at *1 (N.D. Cal. Nov. 18, 2022) (dismissing false advertising claims that failed to comply with Rule 9(b)); *see generally Vess*, 317 F.3d at 1107 (failure to plead fraud with particularity is the "functional equivalent" of a failure to state a claim).

## III. DEFENDANTS FAIL TO STATE FALSE ADVERTISING COUNTERCLAIMS

To state a plausible claim for false advertising under the Lanham Act, Defendants must allege that Whisker made (1) a false statement of fact in a commercial advertisement about its own or another's product, that (2) actually deceived or tended to deceive a substantial segment of its audience, (3) was material to purchasing decisions, (4) entered interstate commerce; ***and*** (5) injured or is likely to injure Defendants, either by direct diversion of sales from themselves to Whisker or by a lessening of the goodwill associated with their products. *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997). Stating a claim under California's False Advertising Law requires a showing that a reasonable consumer is likely to be misled by the advertisement. *Moore v. Trader Joe's Co.*, 4 F.4th 874, 881 (9th Cir. 2021).

The Court must dismiss false advertising allegations that "fail to identify who made the challenged statement, fail to identify the nature of the 'ad copy' in which the statement is assertedly found, and fail to state when such advertisement was broadcast or otherwise made available to the public." *LegalForce*, 2018 WL 3439371, at *6 (N.D. Cal. July 17, 2018). Moreover, a false advertising claim that fails to allege falsity must be dismissed. *See Choon's Design*, 2020 WL 6891824, at *5 (dismissing false advertising claims that failed to allege falsity).

One of the defects in the CC is its failure to tie the freestanding allegations to the false advertising claims. CC ¶¶ 44–55. Plaintiff is left to guess which and whether any other allegations

are intended to support Defendants' false advertising claims, as opposed to other causes of action.

For example, the CC includes the following scattershot allegations (labeled as "statements" only

for ease of reference):

- Statement 1: "On information and belief, Whisker falsely claimed it was a 'small business' on Amazon's website." *Id.* ¶ 18.

- Statement 2: "On information and belief, Whisker falsely claimed for an extended period that they [sic] had the 'Highest Rated Litter Machine.'" *Id.* ¶ 19.

- Statement 3: "On information and belief, for many months, Whisker advertised on Chewy's website that its products were made in the USA. On information and belief, the products are only assembled in the USA." *Id.* ¶ 20. [The CC does not attach any examples showing that, or where, Whisker made this statement].

- Statements 4-8: "On information and belief, communicated false and misleading information to influencers / content creators about Smarty Pear's products, including, but not limited to: [4] Smarty Pear's product was a cheap Chinese knockoff, [5] Smarty Pear violated Whisker's patents and Chris Madeiras, Smarty Pear's CEO, stole company secrets, [6] Smarty Pear manufactured in China and 'pretended' to be an American company, [7] Smarty Pear was not likely to be in business for long or be able to provide quality customer support, and [8] The story of Leo was fabricated." *Id.* ¶ 29.

Other allegations—such as unspecified "false reviews" or statements made privately to

Defendants' business affiliates (*Id.* ¶¶ 16, 28)—cannot sound in false advertising, as they do not

reference any statement at all, or reference alleged statements made in "commercial advertising or

promotion." Regardless, each of these statements fail to plausibly state a false advertising claim.

***First***, these alleged statements fail to comply with the Rule 9(b) pleading requirements

because they do not properly put Whisker or this Court on notice of the substance of the allegations.

Defendants fail to allege the where, when, who, and why, among other things:

- The "***where***." With the exception of Statements 1 ("on Amazon's website") and 3 ("on Chewy's website"), Defendants do not allege *where* (*i.e.*, to whom) any of the alleged statements were made. For example, Defendants plead Statements 4 through 8 in a single paragraph of alleged statements made to "influencers / content creators," but do not specify whether this was a single alleged communication made to a collective group, or many successive statements made to different individuals. CC ¶ 29.

- The "***when***." Defendants do not allege *when* any of the alleged statements were made. *See id.* ¶¶ 18 (no allegations when stated); 19 (alleging only "for an extended period"); 20 ("for many months"); 29 (no allegations when stated).

- The "***who***." Defendants do not allege *who* at Whisker made any of the alleged statements, even as they allege that Mr. Zuppke (who Defendants then dismissed) and "Whisker" are both somehow responsible for them. *See id.* ¶¶ 18–20, 29 (alleging simply that "Whisker" made statements); *id.* ¶ 45 (alleging "Whisker and Zuppke have made numerous false and misleading

statements"). Separately, there are no allegations that Plaintiff was responsible for alleged language on Amazon or Chewy (regarding Statements 1 and 3).

The other problem is that the CC strips these alleged statements of any necessary context and fails to include supporting detail (such as screenshots or URLs) that might indicate whether and how the statements appeared. Alone, the above deficiencies justify dismissal. *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009) (affirming dismissal of unfair competition claim where pleading failed to specify "who made [the] statement or when [the] statement was made"); *LegalForce*, 2018 WL 3439371, at *6; *Cisco Sys., Inc. v. Dexon Comput., Inc.*, 2021 WL 5848080, at *8 (N.D. Cal. Dec. 9, 2021) (dismissing unfair competition claims that not state "who at Cisco classified genuine products as 'used' or 'counterfeit,' or when, and to whom").

*Second*, these allegations fail because Defendants do not allege *why* the statements are false. *E.g.*, CC ¶¶ 18-19 (why is Whisker not a "small business"?) (simply alleging that Whisker "falsely" claimed to have the "Highest Rated Litter Machine" without allegations to the contrary). *See Choon's Design*, 2020 WL 6891824, at *5; *Sciacca v. Apple, Inc.*, 362 F. Supp. 3d 787, 799 (N.D. Cal. Jan. 25, 2019) (dismissing claims that "fail[] to plead what is false or misleading about a statement and why it was false").

*Third,* given the total absence of specifics, no statement is a "specific and measurable claim, capable of being proved false or of being reasonably interpreted as a statement of objective fact." *Ariix, LLC v. NutriSearch Corp.*, 985 F.3d 1107, 1121 (9th Cir. 2021). It is impossible to falsify whether, for example, Whisker had the "Highest Rated Litter Machine," begging the questions: When? Which ratings? According to which website or review? Among which consumers? As compared to which machines? *How or why* do Defendants claim that it is false?

And assuming *arguendo* that "somebody" from Whisker offered an opinion to somebody else (who then relayed some conversation to somebody at Smarty Pear) that "Smarty Pear was not likely to be in business for long or be able to provide quality customer support," what is "not likely?" How long is "for long?" And what makes customer support "quality?" *See* CC ¶¶19, 29.[1]

---

[1] Separately, Statement 8 is obvious puffery, as customers do not treat anecdotes about a pet as objective fact. (ECF 56 at 3 (explaining "classic puffery").)

But *even if* these alleged statements established *measurable* claims (which they do not), the CC itself admits that some are true. For example, the CC alleges that "recently," Whisker's products have had higher ratings than their own (supporting Statement 2). *Compare* CC ¶17, *with id.* ¶ 19. Defendants carefully do not allege where the Leo's Loo devices are manufactured or who designed them (supporting Statement 6). *Compare id.* ¶12 (alleging that "Smarty Pear helped design" and "has manufactured" the Leo's Loo devices), *with id.* ¶ 29. *See Left Field Holdings*, 2022 WL 17072948, at *1 (dismissing allegations that "are not consistent with…false advertising"). And as to Statement 3, Defendants undermine their claim by alleging that Whisker's products are "assembled in the USA," which is a valid basis to claim U.S. origin under FTC guidelines. *See A.P. Deauville, LLC v. Arion Perfume and Beauty, Inc.*, 2014 WL 7140041, at *3 (N.D. Cal. Dec. 12, 2014) (citing FTC regulations on U.S. origin claims and stating that "FTC policy requires that the final assembly of the product take place in the United States"); *compare* CC ¶ 20.

**Finally**, the CC does not contain plausible allegations supporting the remaining elements of a false advertising claim. *See Southland*, 108 F.3d at 1139. They do not allege why, for example, claiming to be a "small business" is ***material*** to purchasing decisions (Element 3), or the context in which statements to "influencers / content creators" amounts to "commercial advertising" (Element 1), or whether or how Defendants were injured by any of the alleged claims (Element 5), including, for example, "Highest Rated Litter Machine" claim. (Statements 1–2, 4–8; CC ¶¶ 18–19, 29). *See Spy Phone Labs LLC v. Google Inc.*, 2016 WL 6025469, at *12 (N.D. Cal. Oct. 14, 2016) (no materiality or injury); *Alfasigma USA, Inc. v. First Databank, Inc.*, 525 F. Supp. 3d 1088, 1101 (N.D. Cal. 2021) (no advertising or promotion). Any ***one*** of these reasons requires dismissal.

## IV. DEFENDANTS FAIL TO STATE UNFAIR COMPETITION COUNTERCLAIMS

Defendants' unfair competition counterclaims fare no better. The California Unfair Competition Law ("UCL") prohibits business practices that are (1) unlawful, (2) fraudulent, or (3) unfair. *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1105 (N.D. Cal. 2017) (dismissing UCL claim under all theories) (citing Cal. Bus. & Prof. Code § 17200). An "unlawful" theory fails without an alleged violation of an underlying law. *Id.* at 1089. A "fraudulent" theory fails without an act likely to deceive the public. *Id.* at 1090. An "unfair" theory must "threaten an incipient

violation of an antitrust law . . . or otherwise significantly threaten[] or harm[] competition." *DocMagic, Inc. v. Ellie Mae, Inc.*, 745 F. Supp. 2d 1119, 1154 (N.D. Cal. 2010). An "unfair" theory based on the same conduct falls with "unlawful" and "fraudulent" prongs. *So v. HP, Inc.*, 2022 WL 16925965, at *5 (N.D. Cal. Nov. 14, 2022). Where a UCL claim is premised on a "unified course of fraudulent conduct," Rule 9(b) applies regardless of the theory. *Id.*[2]

Although Defendants' UCL cause of action uses only the words "unlawful" and "unfair," the few allegations appear premised on unified course of fraudulent conduct. *See* CC ¶¶ 52 (alleging "deceptive acts or practices"), 53 (alleging "willful[]"acts that Whisker and Mr. Zuppke "knew or should have known [] were unlawful"); 61 (common law unfair competition claim based on "above-detailed deceptive and fraudulent conduct with the intent to confuse and deceive the public into purchasing its automatic litter box products"). Thus, these are claims "grounded in fraud" and subject to Rule 9(b). *See Kearns*, 567 F.3d at 1127 (grounded in fraud to allege that dealerships "knowingly misrepresent to the public that [vehicles] are safer and more reliable").

The CC fails to allege any unlawful, fraudulent, or unfair business practices. Because there is no violation of the Lanham Act or FAL (*supra* § III), Defendants cannot plead an "unlawful" theory. Defendants do not allege any other "fraudulent" or "unfair" conduct. At best, Defendants appear to support their UCL claim with vague references to (1) unspecific "false" user reviews and (2) undisclosed relationships with content creators. CC ¶¶ 16–17, 21–24. For the following reasons, these allegations fail to plead unfair competition.

Purportedly "false" user reviews. Defendants accuse Plaintiff of a campaign to falsify user reviews, alleging on a conclusory basis that Mr. Zuppke, "through one or more agents, independent contractors, and/or users of Whisker caused the posting of false reviews for both Whisker's products and Smarty Pear's products." *Id.* ¶¶ 16; 28. First, this theory fails to differentiate Whisker and Mr. Zuppke, justifying dismissal. *See Destfino*, 630 F.3d at 958 (affirming dismissal of "'everyone did everything' allegations"). Defendants plead only a single alleged supporting detail, one that is an implausible stretch. They say that, "on information and belief," an unspecified

---

[2] Count 4 should be dismissed because common law unfair competition is limited to "passing off," which is not alleged in the CC. *See Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1153 (9th Cir. 2008) (absence of passing off fails to state a common law unfair competition claim").

Whisker product "recently" received 20 positive reviews on Chewy's website in a day, at the "same time" that an unspecified Smarty Pear product has been "systematically" receiving negative reviews that Smarty Pear believes "make no sense." CC ¶ 17. On its own, this allegation is banal; as a basis to infer a campaign of false reviews, it is implausible and purely speculative. Defendants do not explain, for example, (1) why 20 reviews in a day is unreasonable, (2) how many negative reviews Smarty Pear has been receiving, (3) why Smarty Pear's negative reviews "make no sense," (4) whether and how any of the positive reviews are "false," or (5) any basis for Defendants' speculation that Mr. Zuppke—through agents, independent contractors, and/or Whisker users— "caused" such reviews. Defendants' musings fail the pleading standards of Rule 8, let alone Rule 9(b). *See DocMagic*, 745 F. Supp. 2d at 1155 (dismissing unfair competition counterclaim that was "too vague and conclusory to support a viable cause of action").

Purportedly "undisclosed" connections to third-party content. Defendants are even less clear about their other theory, regarding Whisker's apparent "relationships" with third-party content creators. Defendants allege that three third-party content creators have (or had) undisclosed "relationships" with Whisker. CC ¶¶ 21 (alleging "undisclosed sponsored or paid relationship" and "undisclosed part of Whisker's affiliate program"); 22 (alleging third-party was affiliate and received advertising revenue); 23 (alleging unspecified "relationship" between creator and Whisker). Defendants allege that Whisker "induced" one creator to create a video "positioning Smarty Pear's Leo's Loo as a poor alternative to Whisker's Litter Robot 3," and "induced" another creator to publish a video called "10 Things You Should Know Before Buying an Automatic Litter Box." *Id.* ¶¶ 21, 23. One apparently made content "favorable" to Whisker's products. *Id.* ¶ 22.

Again, these allegations fail Rule 9(b). As an initial matter, other than offering their conclusory takeaways from the videos, Defendant do not describe or attach them. More importantly, they do not allege what content in the video supposedly presents Leo's Loo as a "poor alternative," whether or how such content is false, or how Whisker "induced" such content. Moreover, the CC does not plausibly allege what is fraudulent (or unlawful, or unfair) about *any* of this. *See Jackson v. Ocwen Loan Servicing, LLC*, 2010 WL 3294397, at *5 (E.D. Cal. Aug. 20, 2010) (dismissing UCL claim for failure to "identify which specific behaviors [plaintiffs] believe

1    are punishable under the UCL").  It is not clear what is unfair about a third-party favorably

2    comparing Litter-Robot to Leo's Loo.  If Defendants are implying that the *third parties* failed to

3    disclose their "relationships" with Whisker, they do not explain why *Whisker* should be liable.  And

4    if Defendants imply that Whisker fraudulently concealed the "relationships," they do not plead

5    *Whisker* was under any duty to disclose such information.  *See Sumer v. Carrier Corp.*, 2015 WL

6    3630972, at *1 (N.D. Cal. June 10, 2015) (dismissing unfair competition claims based on "fraud

7    by omission" theory where no allegations of duty to disclose); *Ahern*, 411 F. Supp. 3d at 560–61

8    (N.D. Cal. 2019) ("For an omission to be actionable under the UCL, the omission must be contrary

9    to a representation actually made by the defendant, or an omission of a fact the defendant was

10   obliged to disclose.").  Accordingly, the unfair competition counterclaims must be dismissed.

11   **V.    DEFENDANTS FAIL TO STATE TORTIOUS INTERFERENCE COUNTERCLAIMS.**

12         Defendants conflate the allegations of two distinct claims and fail to allege plausible facts

13   supporting the necessary elements of both of them.  A claim for tortious interference with contract

14   requires alleging: (1) a valid contract between Defendants and a third party, (2) Whisker's

15   knowledge of this contract, (3) Whisker's intentional acts designed to induce a breach or disruption,

16   (4) actual breach or disruption, *and* (5) resulting damage.  *See Honey Bum, LLC v. Fashion Nova,*

17   *Inc.*, 63 F.4th 813, 824–25 (9th Cir. 2023).  Pleading intentional interference with prospective

18   economic advantage requires alleging (1) an economic relationship between Defendants and some

19   third party, with the probability of future economic benefit to Defendants; (2) Whisker's knowledge

20   of the relationship; (3) intentional wrongful acts by Whisker designed to disrupt the relationship;

21   (4) actual disruption; *and* (5) economic harm proximately caused Whisker's acts.  *See id.* at 824.

22   Failure to plead facts supporting these elements justifies dismissal.  *See Infectolab Americas LLC*

23   *v. ArminLabs GmbH*, 2021 WL 292182, at *4 (N.D. Cal. Jan. 28, 2021) (dismissing "entirely

24   conclusory" allegations of knowledge, intent to disrupt, and injury); *Cisco Sys., Inc. v. Dexon*

25   *Comput., Inc.*, 2022 WL 2222962, at *6 (N.D. Cal. June 21, 2022) (dismissing counterclaim for

26   failure to allege wrongful acts).  Additionally, failure to allege actual disruption or proximate

27   causation are "two independent bases" to dismiss an economic interference claim.  *See Neo4j, Inc.*

28   *v. PureThink, LLC*, 2023 WL 122402, at *6 (N.D. Cal. Jan. 6, 2023) (dismissing "barebone

allegations" that "provided no basis for the Court to even infer that the supposed disruption was caused by Plaintiffs"). Defendants' Counterclaims appear to reference the following relationships:

- <u>Chewy</u>. Defendants allege they have a contract for the sale of goods with Chewy, a pet product retailer. Even that "contract" is inconsistently characterized. *Compare* CC ¶ 14 (claiming sales partnerships "with both CHEWY and AMAZON"), *with id.* ¶ 30 (claiming contract with Chewy "to offer exclusively its automated litter box products"). Regardless, under California law, interference with a contract for the sale of goods requires an independently wrongful act. *See Ixchel Pharma, LLC v. Biogen, Inc.*, 9 Cal. 5th 1130, 1137 (Cal. 2020) (regularly renewed contracts for the sale of goods create "no legal assurance of the buyer's continued purchases"); *see Honey Bum*, 63 F.4th at 825 (noting a "purchase order is simply an offer").[3]

- <u>Great Pet Media</u>. Defendants plead a single *advertising* contract entered into around April 2022 with Great Pet Media, which "promised to include Smarty Pear and its products in a couple of articles that the publications would author." CC ¶ 39. No other details are provided.

- "<u>Various influencers / content creators.</u>" Any claims as to unspecified "various influencers / content creators" fail for lack of specificity. *Id.* ¶¶ 70–72. *See AlterG, Inc. v. Boost Treadmills LLC*, 388 F. Supp. 3d 1133, 1152 (N.D. Cal. 2019) (dismissing interference claims referring to unspecified "vendors, suppliers, and prospective and current customers").

Defendants also allege an economic relationship with an unnamed "prominent industry investor." CC ¶ 42. They refer to "Radio Systems" but offer no other relevant facts. *Id.* ¶¶ 70–72. These alleged relationships cannot support a plausible claim for at least the following reasons.

***First***, Defendants fail to plead anything more than conclusory allegations of Whisker's ***knowledge*** of any of the alleged "contracts" or economic relationships (Element 2). *See id.* ¶¶ 32 ("On information and belief, [Whisker] had knowledge of the contract between Smarty Pear and Chewy."); 65 (vaguely alleging Whisker was "at all times aware" of contractual relationships); 71 (same for economic relationships). This failure to allege knowledge independently justifies dismissal of both counterclaims.[4] Moreover, Defendants likewise fail to allege that Whisker had an ***intent*** to disrupt those relationships (Element 3). *See Trindade v. Reach Media Grp., LLC*, 2013 WL 3977034, at *16 (N.D. Cal. July 31, 2013) (where only "generalized knowledge of contractual relationships," no allegations of "requisite intent to disrupt").

---

[3] Defendants refer to *their* expectations regarding their relationship with Chewy, including unspecified "support," a role in product launches, and receipt of proprietary information. CC ¶¶ 34–37. But Defendants do not allege that the contract covers those expectations, so at best they might be treated as prospective economic relations. *See Honey Bum*, 63 F.4th at 825.

[4] *See Infectolab*, 2021 WL 292182, at *5 (dismissing interference claims where "allegations regarding [defendant's] knowledge of the relationship between [plaintiff] and [third party] [were] entirely conclusory"); *Lynwood Investments CY Ltd. v. Konovalov*, 2022 WL 3370795, at *15 (N.D. Cal. Aug. 16, 2022) (same).

**Second**, the CC fails to plausibly allege Whisker's allegedly intentional acts or wrongful conduct. That is: what, exactly, did Whisker do, and to what effect? As to Chewy, Defendants do not allege any acts directed at disruption of valid contracts (*i.e.*, shipped goods). The CC does not allege that Chewy has stopped selling Defendants' products. The CC does not plead that Whisker engaged in an independently wrongful act—a precondition for a claim for interference with a contract for the sale of goods *or* with prospective economic relations. At best, Defendants allege vaguely that "Whisker" somehow "induced" Chewy to delay launch of Smarty Pear's products, to "cease communication" with Chewy, and to disclose Smarty Pear's proprietary information, but do not offer *any* facts of the supposed "inducement(s)." CC ¶¶ 34–36. These are implausible on their face, as it is unclear how Plaintiff could control or manipulate Chewy, a massive online retailer— all while Chewy continues to sell Defendants' products (thus, a "contract" or relationship clearly still exists). *See id.* ¶ 88 (characterizing Chewy as "Counterclaim Plaintiffs' top customer").

It is also difficult to determine what "statements of fact" Whisker supposedly made to a third party. The CC refers to vague allegations made by "Whisker" to "Chewy" that "Smarty Pear would no longer be in business" (*Id.* ¶ 37) and another that a Whisker executive "communicated false information to Chewy creating the false impression that something bad was happening to Smarty Pear and that the company would not be in business anymore." *Id.* ¶ 38. These allegations sound in fraud and fail to satisfy Rule 9(b). It is unclear whether these two paragraphs refer to one or two different statements; and, if the latter, who conveyed the first. Nor do Defendants explain the nature of the "false information" that led to the supposedly "false impression," or how this is anything more than a statement of opinion. Also missing are specifics and context: who at Chewy told Smarty Pear that somebody at Whisker made this precise statement? This dubious game of "telephone" renders the allegations implausible. And with no allegations relating to timing, it is unclear whether this is the same alleged conduct that supposedly "induced" delays and disclosures. Regardless, none of it plausibly alleges an independently wrongful act. (*See infra* 15.)

The remaining allegations similarly lack intentional acts (Element 3). As to Great Pet Media, Defendants allege that two months after the single advertising contract to author a "couple of articles," Great Pet Media was acquired, and its new owner terminated the contract. Defendants

make vague innuendo to the new owner's "relationship" with Whisker, but do not allege that Whisker caused the "termination" or when the first "contract" expired. Instead, Defendants allege that Mr. Zuppke (no longer a Counterclaim-Defendant) "induced" Great Pet Media to remove unspecified content. *Id.* ¶ 41. The CC cannot rely on speculation to state this claim. And the other economic relationships and alleged disruption to them are supported only by conclusory allegations. *See* CC ¶¶ 43 ("false and misleading statements" made by Mr. Zuppke to the "industry investor"), 71 ("intentional, wrongful acts" as to Radio Systems and the "various influencers / content creators"). Thus, these allegations cannot support interference claims. *See Neo4j*, 2023 WL 122402, at *4 (dismissing interference claim where alleged acts were "largely conclusory").

*Third*, Defendants also do not allege that the supposed "intentional" acts caused disruption of the contracts or proximately caused the disruption of the relationships (Element 4), let alone injury (Element 5). For example, Defendants conspicuously do not allege that Chewy terminated the contract to sell their products, or even impaired it in any way. *Cf.* CC ¶ 88. Nor have they alleged any facts that inhibited Defendants' performance or made performance more difficult. *See Calsoft Labs, Inc. v. Panchumarthi*, 2019 WL 5811300, at *4 (N.D. Cal. Nov. 7, 2019) (dismissing interference with contract claim alleging only that conduct "'prevented performance or made performance more expensive or difficult' without explanation of what it was that Plaintiffs needed to perform"). As to Great Pet Media, as discussed above, the alleged conduct is unrelated to the alleged termination. *See Honey Bum*, 63 F.4th at 826 (alleged conduct "does not relate to the either of the two purported contracts"). This hodge-podge does not support any interference claims.

Finally, as to the non-contract economic relationships (*i.e.*, Chewy, industry investor, Radio Systems, and various influencers), the CC fails to allege facts plausibly supporting that Whisker or Mr. Zuppke *proximately caused* whatever unspecified disruption to the alleged economic relationships (Element 5). *See Sybersound*, 517 F.3d at 1152 (affirming dismissal for failure to allege actual disruption); *Neo4j*, 2023 WL 122402, at *6 (allegations of actual disruption were "wholly conclusory" and "provided no basis for the Court to even infer that the supposed disruption was caused by Plaintiffs"). For example, because Defendants offer no timeline between the allegedly false statement to Chewy and its reduction in (unspecified) "support," there is no basis to

conclude that the latter was caused by the former, rather than any other reason. For all of these reasons, Defendants' tortious interference counterclaims must be dismissed.

## VI. DEFENDANTS FAIL TO STATE DECLARATORY JUDGMENT COUNTERCLAIMS.

Defendants plead no facts whatsoever in support of their tacked-on counterclaims alleging non-infringement and invalidity of the '502 Patent. Counts 7-8, CC ¶¶ 75–84. "In an action for declaratory judgment concerning claims for patent non-infringement, the pleading must specify the products or conduct alleged not to infringe. Without this level of specificity, there is 'no way to adjudicate' an infringement or non-infringement claim." *Xilinx, Inc. v. Invention Inv. Fund I LP*, 2011 WL 3206686, at *6–7 (N.D. Cal. July 27, 2011). Similarly, a "bare-bones recitation of statutes" is insufficient to plead invalidity. *Id.* (dismissing invalidity claim alleging the asserted patent did not "comply with one or more of the requirements of the patent laws of the United States,"); *see also J&K IP Assets, LLC v. Armaspec, Inc.*, 2018 WL 3428757, at *2–3 (N.D. Cal. July 16, 2018) (dismissing non-infringement and invalidity counterclaims that failed to plead facts).

Defendants' non-infringement counterclaim consists solely of conclusory legal statements that Defendants "have not directly or indirectly infringed, either literally or under the doctrine of equivalents, any valid and enforceable claim of the '502 Patent with the Leo's Loo and/or Leo's Loo Too products." CC ¶ 80. The CC contains no factual support for this conclusion. Defendants' invalidity counterclaim is similarly defective, alleging invalidity "in view of the prior art and/or for failure to comply with one or more of the requirements of the United States Patent Act set out in 35 U.S.C. §§ 1, *et seq.*, including without limitation 35 U.S.C. §§ 101, 102, 103, and 112." CC ¶ 83. This is nothing but a "bare-bones recitation of statutes," and plainly fails *Twombly* and *Iqbal*. *Xilinx*, 2011 WL 3206686, at *6–7. Whisker is unable to discern the "true nature of any potential counterclaims that [Defendants] have, nor . . . mount a meaningful defense in the face of such bare allegations." *Id.* Defendants' declaratory judgment counterclaims should be dismissed.

## VII. DEFENDANTS FAIL TO STATE DEFAMATION COUNTERCLAIMS.

To survive this motion, Defendants must allege Plaintiff intentionally published a statement of fact that is false, unprivileged, and has a natural tendency to injure (defamation per se) or causes special damages. *Smith v. Maldonado*, 72 Cal.App.4th 637, 645–46 (1999). "[T]he words

constituting a libel or slander must be specifically identified, if not plead verbatim." *Silicon Knights, Inc. v. Crystal Dynamics, Inc.*, 983 F. Supp. 1303, 1314 (N.D. Cal. 1997) (dismissing defamation claim that contained only "general allegations of the defamatory statements and d[id] not identify the substance of what was stated by the defendants"). "This means the complaint must reference 'the speakers of the defamatory communications, the recipients, the timing, or the context in which they were made, sufficient to provide . . . notice of the issues' to prepare a defense." *Schrader Cellars, LLC v. Roach*, 2021 WL 9816545, at *5 (N.D. Cal. June 10, 2021) (dismissing claim that "only describe[d] the substance of the alleged defamatory statements generally and fail[ed] to describe to whom Defendant allegedly made these comments . . . and does not provide the timing of these alleged statements"). The defamation claims fail for at least two reasons.

*First*, Defendants hide behind obscurity and innuendo. They fail to specifically identify any alleged statement—nor can they, given Whisker's longstanding relationships with (most) of its competitors and the industry at large. Five of the six bulleted statements in the libel and slander counterclaims are nothing but generalities. *See* CC ¶¶ 89 (unspecified "slanderous statements to a major potential investor"); 93 (unspecified and unattached "disparaging email to all influencers about working with [Defendants]"); *id.* (alleging no statements and citing no examples, but that Whisker "has made or caused to be made falsifying reviews" of Defendants' product); *id* (alleging no statements and citing no examples, but that Whisker pays "content creators and other influencers to write unfavorable reviews"); *id.* ("unspecified derogatory public comments" made by a Whisker employee about Defendants on social media"). The remaining statement—an allegedly "slanderous statement" made by "Whisker" to "Chewy" that "Counterclaim Plaintiffs would be out of business" fails to provide any necessary detail. CC ¶ 89; *see Schrader Cellars*, 2021 WL 9816545, at *5. Defendants are not consistent on the *content*, or even the *number*, of the alleged statement(s). *Compare* CC ¶¶ 37 ("Smarty Pear would no longer be in business"), *with* 38 ("false information to Chewy creating the false impression that something bad was happening to Smarty Pear and that the company would not be in business anymore'"); *see Silicon Knights*, 983 F. Supp. at 1314 (words must be "specifically identified"). Nor are Defendants specific on the *speaker*, *recipients*, or *timing*. *See* CC ¶¶ 37 ("Whisker"), 38 (a Whisker VP), 86 ("Whisker and Zuppke"); *see Merioanos v.*

*Merry Chance Indus.*, 2010 WL 11549750, at *4 (C.D. Cal. Nov. 12, 2010) (allegation of false statement made by "defendants and their officers, directors, and/or managing agents, including but not limited to Steven Kwan" did "not give the defendant fair notice" under *Twombly*). Ultimately, Whisker has no awareness who said what, when it was said, or to whom—much less the context, specifics, or reactions. Nor does the CC allege whether and how Defendants were injured by these purported statements. *Cf. Oracle USA, Inc. v. Rimini Street, Inc.*, 2010 WL 4386957, at *2–3 (D. Nevada Oct. 29, 2010) (holding that a statement "concerning the future financial stability of a business is a nonactionable statement of opinion").[5]

**Second,** many of these statements are immunized by the *Noerr-Pennington* doctrine and litigation privilege,[6] as they track with Whisker's lawsuit alleging Defendants' pattern of IP theft and misconduct. *Compare* CC ¶¶ 23 ("Smarty Pear had stolen Whisker's intellectual property and product design…would not be in the market for long."), 29 ("Smarty Pear's product was a cheap Chinese knock off" and "violated patents … [they] and stole company secrets"), *with* ECF 58 ¶¶ 30 (Madeiras "had access to Whisker's confidential information"), 34 ("copycat product designed and manufactured in China"), 49 (seeking permanent injunction against Defendants), 70–111 (patent claims). The purported statement to Chewy is consistent with this context, given Chewy's substantial interest in the underlying dispute. *See, e.g.*, CC ¶ 36 (accusing Chewy of disclosing Smarty Pear's proprietary information); *Sharper Image Corp. v. Target Corp.*, 425 F. Supp. 2d 1056, 1079 (N.D. Cal. 2006) (noting "injunctive relief[,] if granted, would have significantly disrupted the recipient's business arrangements with defendants"). Thus, these "defamation" allegations are also barred by the litigation privilege and *Noerr-Pennington* doctrine.

## VIII. CONCLUSION

For the foregoing reasons, Defendants' Counterclaims should be dismissed with prejudice.

---

[5] Another statement was allegedly sent by an *independent* third party to Smarty Pear, *not* by Plaintiff (and not published in any case). CC ¶ 26. Thus, any claim based on this statement is implausible.
[6] The *Noerr-Pennington* doctrine immunizes "conduct incidental to the prosecution of the suit." *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 934 (9th Cir. 2006). The litigation privilege applies to communications with "some connection or logical relation to the action" sent to nonparties if they possess a "substantial interest in the outcome of the litigation. *See, e.g.*, *Tuck Beckstoffer Wines LLC v. Ultimate Distributors, Inc.*, 682 F. Supp. 2d 1003, 1019 (N.D. Cal. 2010) (litigation privilege immunized statements made to buyers that they "should switch brands in any case because the quality of [counterclaim-plaintiff's] wine had deteriorated").

Dated: June 14, 2023                          COOLEY LLP


                                              By: /s/ Bobby A. Ghajar
                                                  Bobby A. Ghajar
                                                  Erik Milch
                                                  Ari Lipsitz
                                                  Beth Shrieves

                                              *Attorneys for Plaintiff*
                                              Automated Pet Care Products, LLC d/b/a
                                              Whisker


*[Full Counsel List]*

ARI LIPSITZ *[Pro hac vice]*
(alipsitz@cooley.com)
55 Hudson Yards
New York, NY 10001
Telephone:     (212) 479-6692
Facsimile:     (212) 479-6275

BETH SHRIEVES *[Pro hac vice]*
(bshrieves@cooley.com)
1299 Pennsylvania Avenue, NW, Suite 700
Washington, DC 20004
Telephone:     (202) 776-2196
Facsimile:     (202) 842-7899

Attorneys for Plaintiff
Automated Pet Care Products, LLC d/b/a Whisker