**MCCAULLEY LAW GROUP LLC**
JOSHUA V. VAN HOVEN (CSB No. 262815)
E-Mail: josh@mccaulleylawgroup.com
3001 Bishop Dr., Suite 300
San Ramon, California 94583
Telephone: (925) 302-5941

RICHARD T. MCCAULLEY (*pro hac vice*)
E-Mail: richard@mccaulleylawgroup.com
180 N. Wabash Avenue, Suite 601
Chicago, Illinois 60601
Telephone: (312) 330-8105

Attorneys for Defendants, Counterclaim-Plaintiffs

PURLIFE BRANDS, INC., d/b/a SMARTY PEAR,
and CHRISTOPHER MADEIRAS

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Automated Pet Care Products, LLC d/b/a Whisker, a Michigan corporation,<br><br>Plaintiff,<br><br>v.<br><br>PurLife Brands, Inc. d/b/a Smarty Pear, a Delaware corporation, and Chris Madeiras, an individual,<br><br>Defendants.<br><br>――――――――――――――――――――<br><br>PurLife Brands, Inc. d/b/a Smarty Pear, and Chris Madeiras,<br><br>Counterclaim-Plaintiffs,<br><br>v.<br><br>Automated Pet Care Products, LLC d/b/a Whisker,<br><br>Counterclaim-Defendant. | Case No. 3:22-cv-04261-VC<br><br>Defendants' Smarty Pear and Christopher Madeiras' First Amended Counterclaims |

DEFENDANTS' FIRST AMENDED COUNTERCLAIMS

PurLife Brands, Inc. d/b/a Smarty Pear ("Smarty Pear"), a Delaware corporation, and

Christopher Madeiras ("Madeiras"), an individual, by their undersigned counsel, counterclaims

against, Automated Pet Care Products, LLC d/b/a Whisker ("Whisker"), a Michigan corporation,

as follows:[1]

INTRODUCTION

Smarty Pear is a California based technology company dedicated to improving life for

pets and pet parents through innovative smart products like Leo's Loo and Leo's Loo Too.

Leo's Loo was named after Smarty Pear's founder and CEO's oversized, loving, and

sometimes cantankerous cat. Leo was badly injured and eating from a dumpster at a young age

when he was rescued. Thankfully, he went on to live over 18 wonderful years and provided love

and fun memories to all he met.

PARTIES

1.      Counterclaim Plaintiff, PurLife Brands, Inc. d/b/a Smarty Pear ("Smarty Pear") is

a corporation organized under the laws of the State of Delaware with its principal place of

business at 228 Hamilton Avenue #3107 3rd Floor Palo Alto CA 94301.

---

[1] Whisker filed its Second Amended Complaint (Dkt. No. 58) on May 3, 2023. Defendants
Smarty Pear and Christopher Madeiras filed their Answer and Counterclaims in response to
the Second Amended Complaint (Dkt. No. 68) on May 17, 2023. Thereafter, Whisker moved to
dismiss Smarty Pear and Madeiras' Counterclaims (Dkt. No. 82). On July 17, 2023, the Court
entered an Order (Dkt. No. 95) dismissing Smarty Pear and Madeiras' Counterclaims with leave
to amend within 14 days of the Order.

2.      Counterclaim Plaintiff, Christopher Madeiras ("Madeiras") is, and at all relevant times was, the Founder and Chief Executive Officer of Smarty Pear, and resides in California.

3.      Counterclaim Defendant, Automated Pet Care Products, LLC d/b/a Whisker ("Whisker") is a limited liability company organized under the laws of the State of Michigan with its principal place of business at 1080 W Entrance Drive, Auburn Hills, Michigan 48326.

4.      Smarty Pear and Whisker are direct competitors in the automated pet care market.

<u>JURISDICTION AND VENUE</u>

5.      This Court has subject matter jurisdiction over Smarty Pear's federal claims under 28 U.S.C. § 1331 and § 1338(a). The federal claims arise under the Lanham Act, 15 U.S.C. § 1125. This Court has supplemental subject matter jurisdiction over Smarty Pear's state-law claims under 28 U.S.C. § 1367(a).

6.      Jurisdiction is also proper under 28 U.S.C. § 1332(a)(2) as the matter is between parties in different states (Counterclaim Plaintiffs in California, and Counterclaim Defendant in Michigan), and because the amount in controversy, exclusive of interest and costs, exceeds $75,000.

7.      All other claims asserted in this Counterclaim arise out of the same transaction or occurrence, so that this Court has supplemental jurisdiction over all additional claims asserted in this case under 28 U.S.C. § 1367(a).

8.      Personal jurisdiction over Whisker is proper because Whisker has submitted itself to the jurisdiction of this Court by, among other things, filing the SA Complaint. Further, this Court has personal jurisdiction over Whisker because it regularly conducts business, including advertising, offering to sell, and selling its products in this District and elsewhere in the United

States. Lastly, Whisker's wrongful acts complained of in this Counterclaim took place, and have caused injury to Smarty Pear and Madeiras, within this judicial district.

9.     Venue is proper in the Northern District of California pursuant to 28 U.S.C. § 1391(b) and (c), and § 1400(a)-(b), because Whisker is subject to personal jurisdiction in this District and has appeared in this action and initiated this action by filing claims against Smarty Pear and Madeiras in this District. Venue is also proper in this District because the acts that are the subject of this Counterclaim were committed at least in part in this District.

10.    This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331, 1338(a), 2201, and 2202 as to Defendants' counterclaims against Whisker pursuant to the patent laws of the United States, Title 35, United States Code, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. An actual, substantial, and continuing justiciable controversy exists between Whisker and Defendants based on Whisker having filed a SA Complaint against Defendants alleging infringement of the '502 Patent with its Leo's Loo Too product with respect to which Defendants require a declaration of their rights by this Court. Specifically, the controversy concerns non-infringement and invalidity of the '502 Patent.

GENERAL ALLEGATIONS

11.    In January 2016, Christopher Madeiras (Senior Vice President for Petcube's Worldwide Sales) and Yaroslav Azhnyuk (CEO of Petcube) met Jacob Zuppke for the first time at the CES show in Las Vegas. Thereafter, Christopher Madeiras exchanged emails with Zuppke proposing an exchange of a small number of commercially available products and discussing the possibility of potential partnerships with retailers and programs. These products were exchanged in that timeframe. As far as Christopher Madeiras knows, Petcube and Whisker never jointly entered into any partnerships with retailers and/or programs. Christopher Madeiras is not aware

of any actual business relationship between Petcube and Whisker during the time he was employed at Petcube.

12.    At Yaroslav Azhnyuk's request, Christopher Madeiras provided Zuppke with introductions to Best Buy and Brookstone. Christopher also provided Zuppke with introductions to Amazon and Primal. Christopher Madeiras also gave Zuppke information regarding the sales strategy appropriate for doing business with Chewy.

13.    In March 2016, Christopher Madeiras became aware that Jacob Zuppke (who was at that time Whisker's VP of Business Development) and Vivian Lee (who was at that time Petcube's Chief Marketing Officer), had been discussing the possibility of carrying out a co-marketing promotion. Christopher was not, however, involved with nor did he participate in any discussions about that potential co-marketing promotion, which ultimately did not go forward.

14.    Christopher Madeiras had no business dealings with Whisker or Jacob Zuppke on behalf of Petcube during the time that Madeiras worked for Petcube except for the occasional request by Zuppke for Christopher to provide him with gratuitous sales advice. Christopher enjoys sharing his wealth of experience with others when asked and has done this kind of mentorship through managing large teams and his many roles as a senior leader. As a Petcube employee, Christopher was not a party to any confidentiality agreements or obligations between Whisker and Petcube, he was not aware of any Whisker confidential information, if any, in Petcube's possession, he did not receive or need to have access to any Whisker confidential information to carry out his job as Petcube's Chief Revenue Officer.

15.    In its complaint in this matter, Whisker misrepresents the relationship between Madeiras and Whisker. Its various complaints in this matter all contain this statement:

*30. Defendant PurLife Brands, Inc., doing business as "Smarty Pear," launched in or*

*around April 2021 as a direct competitor to Whisker. Its founder, Defendant Christopher*
*Madeiras, was formerly affiliated with a company that did business directly with Whisker. For*
*years, Madeiras had a relationship with Whisker, and through his employment had access to*
*Whisker's confidential information and business plans for the LITTER-ROBOT product.*

The only company that this narrative could relate to is Petcube. With the exception of an

exploratory discussion of a co-marketing promotion in 2016,  no "business relationship" between

Petcube and Whisker was established. Christopher Madeiras is not aware of any business that

Petcube did directly with Whisker during the time he was Petcube's Chief Revenue Officer.

Moreover, Christopher Madeiras did not have a "relationship with Whisker" while employed by

Petcube.

16.     Whisker has, as discussed in detail below, spread the false narrative that Madeiras

stole company secrets from Whisker and used those secrets to launch Smarty Pear.

17.     Christopher introduced Zuppke to numerous industry contacts. For example, in

July of 2020 Zuppke asked Christopher if he had any pet buying contacts at Amazon.

Christopher responded by introducing Zuppke to Mary Kreutz, providing her email address and

cell phone number. There were numerous examples of Christopher providing such assistance to

Zuppke both while he was at Petcube and after Christopher had left that company. Christopher

and his company Petcube were not paid in any way for the assistance they provided.

18.     Christopher did not access any confidential information of Whisker in his role as

Chief Revenue Officer at Petcube.

19.     At the time that Christopher was introduced to Zuppke, Petcube was exploring the

possibility of entering the litter robot market and the market for an automatic feeder. That plan

had not come to fruition, however, when Christopher Madeiras left Petcube in the fourth quarter

of 2019.

20.     At no point did Zuppke reveal any trade secret or other confidential information to Christopher Madeiras while Christopher was at Petcube. Christopher gratuitously gave Zuppke access to his key industry contacts and free advice about marketing and sales of pet-related products.

21.     In early 2021, Christopher founded Smarty Pear. Smarty Pair was founded to market a competitive litter robot. That product was available outside the United States. Smarty Pear made modifications to that existing product, and began marketing the product in the United States under the name "Leo's Loo".

22.     Leo's Loo was well received, and was considered a lower priced alternative to the comparable Whisker products.

23.     Whisker engaged in an all-out assault on Leo's Loo almost immediately. That assault included a barrage of interference based on untrue statements about the company, the Leo's Loo product and Christopher.

24.     The first line of attack was to immediately threaten Smarty Pear with patent infringement. On April 21, 2021, mere weeks after the product was launched, Whisker sent a cease-and-desist letter to Smarty Pear. The letter contained a one-sentence accusation of patent infringement – "[t]his product infringes claims of U.S. Patent No. 9,433,185 …" Contrary to the misleading impression left by Whisker's pleadings in this matter, Smarty Pear immediately responded, noting that there was no basis for asserting the patent claims, that Leo's Loo did not infringe the '185 patent. Smarty Pear asked Whisker for a claim chart identifying precisely how Whisker supported its bare assertion of infringement.

25.     Whisker never responded to Smarty Pear's request for a claim chart until Whisker sued Smarty Pear over a year later. After forcing Smarty Pear to spend substantial time and

money defending against the implausible assertion of the '185 patent, the Court has now twice dismissed the '185 patent from this case, the most recent dismissal with prejudice. Furthermore, as discussed more fully below, Whisker has advertised these infringement allegations to the trade and to consumers.

26.     Whisker's full court press against Smarty Pear also included a wide-spread smear campaign against Smarty Pear – disseminating a consistent message based on phony allegations. Whisker repeatedly stated that Madeiras founded Smarty Pear with information that he stole from Whisker. Whisker repeatedly stated that Smarty Pear was/is on the verge of going out of business. Whisker repeatedly stated that Leo's Loo is a cheap "Chinese" knock-off that violates Whisker's patent rights. Whisker repeatedly stated that Smarty Pear cannot support its product.

27.     Whisker directly interfered with Smarty Pear's contractual relationship with Chewy.com.

28.     Smarty Pear has a valid contract with Chewy. Through that contract, Smarty Pear partners with Chewy to offer exclusively its automated litter box products to Chewy customers online through Chewy's website and its mobile app. That contract provides Chewy with exclusive rights to sell Smarty Pear's Leo's Loo product.

29.     Chewy, Inc. is a publicly traded e-commerce company which describes itself as offering the personalized service of a neighborhood pet store alongside the convenience and speed of e-commerce. Chewy has a selection of more than 110,000 products which it offers for sale to its customers. Chewy had net sales of $10.1 billion in fiscal year 2022 to 20.4 million active customers and bills itself as the preeminent online source for pet products, supplies and prescriptions. Chewy partners with more than 3000 brands in the pet industry.

30.     Smarty Pear felt that it was having more trouble than would normally be expected in getting its products placed with Chewy. Smarty Pear suspected that Chewy Associate Director of Pet Technology, Erick Goihman, deliberately delayed the launch of Leo's Loo Too through Chewy. Mr. Goihman's wife is friends with Zuppke and went to same college at same time as the CEO of Whisker. Mr. Goihman told Christopher that he went in and out of the area where Whisker and Zuppke are located in Michigan. And Mr. Goihman told Christopher that on several occasions, he visited Whisker, having several get-togethers including with Zuppke. Social media suggests that Mr. Goihman is connected to Zuppke socially, but Smarty Pear could not initially substantiate its suspicions and belief that Whisker through Zuppke had directly interfered with Smarty Pear's relationship with Chewy. Neither Smarty Pear nor Christopher ever heard from Mr. Goihman again after August 24, 2022 when he just disappeared, leaving all of Smarty Pear's holiday sales plans dormant and unexecuted.

31.     Then, in an in-person meeting with Smarty Pear's new Chewy Associate Director of Pet Technology, Brian Choi, on or about August 3, 2022 (long after Smarty Pear was shut out of the 2022 holiday season), he told Christopher Madeiras that representatives of Whisker had told him that Smarty Pear would not be in business much longer. Choi indicated that these representations caused him to pull back his support of Leo's Loo at Chewy.

32.     Smarty Pear is not going out of business. Telling partners such as Chewy that Smarty Pear will not be in business much longer is harmful to Smarty Pear.

33.     This specific information from Choi – while actionable in and of itself - reinforces Smarty Pear's suspicions and the reasonable inference that Whisker has engaged in a pervasive campaign to sabotage Smarty Pear and Madeiras' contractual relationship with Chewy.

34. Influencers who provide reviews to potential consumers are an important and crucial part of marketing campaigns that companies rely on to promote their products through various social media outlets. Among other things these influencers purport to present objective reviews of products that potential consumers can rely on to make good decisions in product purchasers.

35. The cat litter robot market is no different. There are a handful of influencers that drive significant sales in the cat litter robot market through their posted reviews.

36. One such influencer is Jennifer Dean. Ms. Dean runs a cat blog called Floppy Cats and a YouTube Channel, where she writes and vlogs about her Ragdoll cats, reviews products and produces other content. Ms. Dean enjoys a substantial following and significant market power in the cat product industry, including the market for cat litter robots.

37. Historically Ms. Dean had a close relationship with Whisker, where she purportedly drove over $1M of sales to Whisker. She historically earned a $50 commission for each litter robot that she 'sold' for Whisker.

38. Smarty Pear began communicating with Ms. Dean in about March of 2022. During that approximate timeframe, two Smarty Pear employees, Mark Budgell and Soo Jin Yi, had a telephone discussion with Ms. Dean. During the call Ms. Dean discussed information that she had been told by Whisker representatives about Smarty Pear and about Mr. Madeiras personally.

39. Ms. Dean told the Smarty Pear employees that Whisker said to her that the Smarty Pear products were a cheap Chinese "knock off".

40.      Ms. Dean told the Smarty Pear employees that Whisker said to her that Christopher Madeiras stole Whisker corporate secrets and used those secrets in Smarty Pear's business.

41.      Ms. Dean told the Smarty Pear employees that Whisker said to her that Smarty Pear would soon be out of business and would not be able to support its products.

42.      Ms. Dean told the Smarty Pear employees that Whisker said to her that Mr. Madeiras and Smarty Pear fabricated the story about Mr. Madeiras's cat Leo.

43.      All of these statements Whisker made to Ms. Dean were false, and calculated to leave a damaging impression of Smarty Pear products and the people responsible for those products.

44.      Another influencer in this space is Mallory Crusta. Similar to Ms. Dean, Ms. Crusta is the "Head of Content" for a website called All About Cats. All About Cats also has a YouTube Channel that, among other things, reviews cat products.

45.      Smarty Pear employees contacted Ms. Crusta in March of 2022 to see if she would be interested in reviewing the Leo's Loo Too product on her website.

46.      On May 17, 2022 Smarty Pear hosted a call with Ms. Crusta. During that call Ms. Crusta asked a number of questions that led the Smarty Pear people on the call to believe that Ms. Crusta had received a briefing from Whisker similar to the one that Ms. Dean had received. The similarity of the questions, when compared to the information Ms. Dean relayed, leads to the conclusion that Ms. Crusta was given the same false information from Whisker that Ms. Dean received.

47.      Sometime shortly after the call on May 17, 2022, Ms. Crusta informed Smarty Pear that she did not intend to review the Leo's Loo Too. However, a short time later, she posted

a video entitled "10 Things You Should Know Before Buying an Automatic Litter Box". In that video Ms. Crusta purported to provide pointers to customers which appear to be based on the "briefing" she received from Whisker. Ms. Crusta discusses the danger of dealing with companies that haven't been around for a long while, that do not have large engineering teams, or that make "distorted" product claims. While Ms. Crusta does not mention the Leo's Loo Too product by name, during the entire video, Leo's Loo Too is displayed prominently in the background.

48.    Soon after the release of the video, Ms. Crusta contacted Smarty Pear and said she changed her mind, and she would like to review the Smarty Pear product. Her request came with specific questions.

49.    Based on interactions with multiple other influencers who generate product reviews, and in light of the specific information received from Ms. Dean, Whisker has apparently engaged in a pervasive and coordinated campaign with influencers to spread false information about the Leo's Loo products, Christopher Madeiras and Smarty Pear. Whisker's unfair conduct prevented Smarty Pear from gaining needed critical support for its products.

50.    Whisker's interference has not been limited to online retailers and influencers. Whisker has also directly interfered with Smarty Pear's advertising and marketing contracts.

51.    In the Spring of 2022, Smarty Pear contracted for paid advertising with Great Pet Media.

52.    When the advertising went live, Great Pet Media received "an angry note" from Whisker's CEO, Jacob Zuppke, demanding that Great Pet Media remove the Smarty Pear advertising. The demand was based on an alleged relationship between Whisker and a company affiliated with Great Pet Media.

53.     On June 10, 2022, Kevin Campbell of Great Pet Media told Mark Budgell of Smarty Pear that Great Pet Media was pulling the advertising campaign because of the demand made by Whisker.

54.     Whiskers actions directly interfered with an existing contract between Smarty Pear and Great Pet Media, causing Smarty Pear harm.

55.     Christopher Madeiras, along with other employees of Smarty Pear, attended the Global Pet trade show on March 22-23, 2023 in Orlando, Florida.

56.     Also in attendance at the Global Pet trade show was Robert Candelino, the Chief Executive Officer of Radio Systems Corporation (hereafter "Radio Systems").

57.     Radio Systems is a Delaware corporation having a principal place of business at 10427 PetSafe Way, Knoxville, Tennessee 37932. Radio Systems is engaged in the pursuit of commerce in the manufacture and sale of pet training, containment, safety, lifestyle solutions, and other pet and pet-related products and services.

58.     More specifically, Radio Systems business comprises the acquisition, conception, design, development, improvement, evaluation, testing, manufacture, marketing, and sale of pet management products, both mechanical and electronic, and services involving the tracking, locating, training, containment, health, safety, comfort, care, entertainment, or well-being of pets and domestic animals, including but not limited to animal containment systems, remote animal training systems, and bark control systems, pet access systems, and animal feeding systems.

59.     Radio System's CEO, Robert Candelino, had a conversation with Christopher Madeiras at the Global Pet trade show during which Mr. Candelino stated that he was "very impressed" with Christopher Madeiras' company, Smarty Pear, and told Mr. Madeiras that Radio

Systems was "interested in purchasing" Smarty Pear or entering into some type of business relationship.

60.     To facilitate discussions related to a potential transaction or relationship between Radio Systems and Smarty Pear, Robert Candelino sent a proposed "Confidential Disclosure Agreement" to Christopher Madeiras. Mr. Candelino requested that Mr. Madeiras execute the Confidential Disclosure Agreement because Radio Systems and Smarty Pear intended to enter into discussions for the purpose of evaluating the interest, ability, and/or feasibility of the parties to engage in a transaction or enter into a relationship pertaining to the Radio Systems area of business operations or other area of interest to the parties and, if desired, to pursue such relationship or transaction.

61.     Robert Candelino signed the Confidential Disclosure Agreement on behalf of Radio Systems and Christopher Madeiras signed on behalf of Smarty Pear.

62.     Between the execution of the Confidential Disclosure Agreement with Smarty Pear and April 19, 2023, Mr. Robert Candelino had a conversation with Mr. Jacob Zuppke about a possible transaction or business relationship between Whisker and Radio Systems. During that conversation, Mr. Zuppke learned Radio Systems was also interested in a business transaction or relationship Smarty Pear.

63.     Mr.  Candelino informed Mr. Zuppke that he was having business conversations with Madeiras and Smarty Pear. Intending to disrupt that prospective business deal, Mr. Zuppke told Mr. Candelino that Smarty Pear was a company based on confidential information Christopher Madeiras had stolen from Whisker.

64.     Mr. Zuppke also told Mr. Candelino that Christopher Madeiras had been an employee of a company that did business directly with Whisker, and for years had a relationship

with Whisker that gave Mr. Madeiras access to Whisker's confidential information and business plans for the Litter Robot product. Mr. Zuppke told Mr. Candelino that he later met with Mr. Madeiras around October 2019 and discussed the upcoming development and launch of the Litter Robot 4 product, Whisker's financial success, and the new business Litterbox.com that Whisker was planning to launch. Mr. Zuppke told Mr. Candelino that Mr. Madeiras never revealed to Mr. Zuppke that he was intending to launch a copycat product.

65.     On April 19, 2023, Christopher Madeiras and Robert Candelino had a conversation during which Mr. Candelino stated that Radio Systems was considering a transaction or business relationship with Whisker and related to Mr. Madeiras the prior conversation Mr. Candelino had with Mr. Zuppke.

66.     On May 1, 2023, Christopher Madeiras advised Robert Candelino that he would not be sharing any Smarty Pear confidential information with Radio Systems as long as Radio Systems was exploring a possible business transaction or relationship with Jacob Zuppke and Whisker.

67.     On or about May 14, 2023, Robert Candelino contacted Christopher Madeiras and told him that Radio Systems had reconsidered and Mr. Candelino said he was "99.9%" certain that Radio Systems would not be pursuing a transaction or business relationship with Whisker.

68.     On May 15, 2023, pursuant to the Confidential Disclosure Agreement, Christopher Madeiras sent via email to Robert Candelino, Smarty Pear's confidential strategic company presentation. That presentation included confidential details about the Leo's Loo version 3 product development and launch strategy developed for some time in collaboration with Smarty Pear's Chinese manufacturing partner, whose identity was also disclosed in confidence to Radio Systems.

69.     On or about June 1 or 2, 2023, Robert Candelino advised Christopher Madeiras

that Radio Systems was no <u>longer</u> interested in pursuing a transaction or business relationship

with Smarty Pear. Zuppke's false statements to Candelino at a minimum contributed to Radio

Systems not doing business with Smarty Pear.

70.     Sean Awdish sent a threatening message to Madeiras and Smarty Pear on

September 2, 2022:

> *"Hi,*
> *Is your business plan to just go to www.litter-robot.com and copy*
> *everything they do?*
> *You aren't original and your name is the stupidest fucking name not*
> *only for your product but for anything in general.*
> *Only pear I ever knew either got eaten or rotted.*
> *Hashtag LitterRobot on any of your posts again and I will have City*
> *to Kitty so far up your ass you'll have hemorrhoids the size of a pear.*
> *If you're lucky, they might be 'smart.'*
> *And tell that little bitch Chris Madeiras if he knows what's good for*
> *his sorry ass brand to create his own content because I will flood the*
> *social media platforms with all my little fucking minions and destroy*
> *the smartypear brand even more than when he named it.*
> *Have a great weekend,*
> *-Sean Fucking Awdish"*

71.     A review of social media accounts indicates that Mr. Awdish is a close friend of

Mr. Zuppke.

72.     Mr. Awdish has advertised his connection to Mr. Zuppke on social media to

influencers in the cat product space to seek out their help in "deplorable" sponsorship. For

example, on February 6, 2021, Mr. Awdish posted the following exchange on Twitter:



73.    While Smarty Pear does not have access to the internal communications, there is sufficient evidence to suggest that Whisker uses "deplorable sponsors" such as Awdish to manipulate online reviews of Whisker's products and Smarty Pear's products. Such illegitimate, fake and false reviews caused adverse impact on ratings and directly impacted sales negatively of Smarty Pear's products.

74.    This existence of illegitimate, fake and false reviews is reasonably inferred from, and is borne out by, examining review patterns for Whisker products on Chewy. A pattern is observed that when Whisker's overall product reviews fall below a certain threshold, a significant spike thereafter occurs in 5-star reviews that defies statistical analysis. As observed in the graph below, Whisker received a number of 1-star reviews at the end of April and beginning of May of 2021. Whisker then saw an unprecedented spike in counter-balancing 5-star reviews in a very short period. These positive reviews were an anomalous spike of nearly triple the amount of 5-star reviews for any similar time period in the prior six months.



As indicated in the graph above, an even more unprecedented spike in reviews occurred about a month later. In the last two weeks of June 2021, Whisker received the same number of 1-star reviews that it had received in total over the previous six months. At the very end of June Whisker received 25 5-star reviews to buoy the negative drag of the unprecedented string of 1-star reviews. This miraculous run of 5-star reviews was nearly 5 times more 5-star reviews than Whisker received in any similar period over the previous 7 months. That is, nearly 20% of Litter Robot's total reviews of selling in over 240 days -- accumulated in only four (4) days.

75.     The pattern is also evident when examining the reviews surrounding the launch of Whisker's litter robot V4. Whisker launched V4 in January of 2023 at Chewy. Whisker received 115 5-star reviews in the first few weeks after the launch. After this period of apparent manipulation Whisker averaged just 1.7 reviews per week. The chart below represents the number of reviews during the relevant time period.



76.     Based on the pattern of these reviews, Whisker manipulates its online reviews to maintain a favorable rating. This manipulation gives consumers a misleading impression when comparing Whisker products to Smarty Pear products. This misleading impression drives sales from Smarty Pear to Whisker.

77.     The review pattern is especially misleading because the Whisker litter robot V4 was plagued with problems at the launch. The problems were so severe that Zuppke had to issue a formal apology in October of 2022.

78.     Smarty Pear is not the only party monitoring the patterns of Whisker's reviews. During the week of February 26, 2023, Amazon removed 599 reviews from Whisker's Litter Robot 3 listing (approximately 1/3 of the total reviews at that time). The product's overall rating decreased.

79.     According to Amazon, reviews will be removed if they are not genuine reviews

from consumers:

Customer Reviews should give customers genuine product feedback from fellow shoppers. We have a zero tolerance policy for any review designed to mislead or manipulate customers.

We don't allow anyone to write reviews as a form of promotion.

The following are types of reviews that we don't allow and will remove:

- A review by someone who has a direct or indirect financial interest in the product.
- A review by someone perceived to have a close personal relationship with the product's owner, author, or artist.
- A review by the product manufacturer, posing as an unbiased shopper.
- Multiple negative reviews for the same product from one customer.
- A review in exchange for monetary reward.
- A review of a game in exchange for bonus in-game credits.
- A negative review from a seller on a competitor's product.
- A positive review from an artist on a peer's album in exchange for receiving a positive review from them.

https://www.amazon.com/gp/help/customer/display.html?nodeId=G3UA5WC5S5UUKB

5G#:~:text=We%20have%20a%20zero%20tolerance,financial%20interest%20in%20the

%20product

80.     A review of the Amazon website did not reveal any other identified reason that

Amazon would remove reviews. Based on this, Smarty Pear concludes that Amazon determined

that 1/3 of the Whisker litter robot V3 reviews violated Amazon's rules.

81.     Smarty Pear believes that Whisker's recruited "deplorables" (or others working

for, or in concert with, Whisker) engage in the same type of review manipulation with respect to

Smarty Pear's products at the direction of Whisker to reduce the overall rating for Smarty Pear's

litter robot products.

82.     Whisker has also disseminated false information by "shopping" this lawsuit to

consumers. At the Pasadena trade show between October 1 and 2, 2022, Whisker representatives,

when asked about the Smarty Pear product, directed consumers to read about this lawsuit online.

## COUNT ONE

### (Unfair Competition and False Advertising - Lanham Act, 15 U.S.C. § 1125)

83.     Counterclaim Plaintiffs, Smarty Pear and Madeiras, incorporate by reference the allegations set forth in paragraphs 1- 82 of the Counterclaims herein.

84.     In its marketing materials and communications disseminated to potential and actual customers, as well as to influencers / content creators, Whisker and Zuppke have made numerous false and misleading statements.

85.     Whisker's and Zuppke's deceptive statements and conduct have deceived and confused, and/or have the capacity to deceive and confuse, a substantial segment of Intuitive's current and potential consumers.

86.     Whisker's and Zuppke's deceptive statements and conduct are material and likely to influence consumer purchasing decisions.

87.     Both Smarty Pear's Leo's Loo and Leo's Loo Too and Whisker's automatic litter box products are advertised, offered for sale and sold in interstate commerce.

88.     Whisker's and Zuppke's deceptive statements and conduct are willful and made with the knowledge that they are untruthful and/or unlawful.

89.     Smarty Pear and Madeiras have suffered substantial harm, both monetary and irreparable, as a result of Whisker's and Zuppke's actions, and will continue to suffer such substantial harm unless those actions are restrained and enjoined by this Court.

## COUNT TWO

### (Unfair Competition Law – CA. Stat. § 17200)

90.    Counterclaim Plaintiffs, Smarty Pear and Madeiras, incorporate by reference the allegations set forth in paragraphs 1-82 of the Counterclaims herein.

91.    Whisker's and Zuppke's conduct detailed above constitutes unlawful, unfair and deceptive acts or practices in the conduct of trade or commerce.

92.    Whisker and Zuppke willfully used or practiced these acts in violation of California's unfair competition statute, Section 17200, and both Whisker and Zuppke knew or should have known that their acts were unlawful and would damage Intuitive and injure consumers by its deception.

93.    Whisker's and Zuppke's conduct has resulted in substantial harm to competition.

94.    Smarty Pear, which has a principal place of business in California, and Madeiras who resides in California, have suffered substantial harm, both monetary and irreparable, as a result of Whisker's and Zuppke's actions, and will continue to suffer such substantial harm unless those actions are restrained and enjoined by this Court.

<u>COUNT THREE</u>

(False Advertising – CA. Stat. § 17500)

95.    Counterclaim Plaintiffs, Smarty Pear and Madeiras, incorporate by reference the allegations set forth in paragraphs 1- 82 of the Counterclaims herein.

96.    Whisker and Zuppke intended for consumers in California to purchase automatic litter box products from Whisker.

97.    Whisker's and Zuppke's publicly disseminated marketing and advertising materials include numerous statements detailed above that Whisker and Zuppke knew or should have known through the exercise of reasonable care were both untrue and misleading.

98.     Smarty Pear and Madeiras have suffered substantial harm, both monetary and irreparable, as a result of Whisker's and Zuppke's actions, and will continue to suffer such substantial harm unless those actions are restrained and enjoined by this Court.

COUNT FOUR

(Common Law Unfair Competition)

99.     Counterclaim Plaintiffs, Smarty Pear and Madeiras, incorporate by reference the allegations set forth in paragraphs 1- 82 of the Counterclaims herein.

100.     Whisker is a competitor of Smarty Pear and has engaged in the above-detailed deceptive and fraudulent conduct with the intent to confuse and deceive the public into purchasing its automatic litter box products.

101.     Whisker's and Zuppke's conduct has caused deception and confusion among consumers.

102.     Smarty Pear and Madeiras have suffered substantial harm, both monetary and irreparable, as a result of Whisker's and Zuppke's actions, and will continue to suffer such substantial harm unless those actions are restrained and enjoined by this Court.

COUNT FIVE

(Tortious Interference With Contract)

103.     Counterclaim Plaintiffs, Smarty Pear and Madeiras, incorporate by reference the allegations set forth in paragraphs 1- 82 of the Counterclaims herein.

104.     At all relevant times, Smarty Pear has had contractual relationships with Chewy, Inc. and Great Pet Media. Whisker and Zuppke were at all times aware of these contractual

relationships and have undertaken intentional acts to disrupt them and/or induce Chewy, Inc. and Great Pet Media to breach them.

105.    Whisker's and Zuppke's actions have resulted in actual breach or disruption of contractual relationships between Smarty Pear and Chewy, as well as between Smarty Pear and Great Pet Media.

106.    There is no legal justification for Whisker's or Zuppke's actions, which have been motivated purely by their own greed and subjected Smarty Pear customers and Smarty Pear and Madeiras themselves to substantial harm.

107.    Smarty Pear and Madeiras have suffered substantial harm, both monetary and irreparable, as a result of Whisker's and Zuppke's actions, and will continue to suffer such substantial harm unless those actions are restrained and enjoined by this Court.

<u>COUNT SIX</u>

(Intentional Interference With Prospective Economic Relations Or Advantage)

108.    Counterclaim Plaintiffs, Smarty Pear and Madeiras, incorporate by reference the allegations set forth in paragraphs 1- 82 of the Counterclaims herein.

109.    At all relevant times, Smarty Pear has had an economic relationship with Radio Systems and various influencers/content creators, all of which had the probability of future economic benefit to Smarty Pear.

110.    Whisker and Zuppke at all relevant times had knowledge of Smarty Pear's relationships with Radio Systems, and various influencers/content creators. Whisker and Zuppke engaged in intentional, wrongful acts designed to disrupt Smarty Pear's relationships with Radio Systems, and various influencers/content creators.

111.     Smarty Pear's relationships with Radio Systems, and various influencers/content creators were actually disrupted.

112.     Smarty Pear and Madeiras suffered economic harm proximately caused by the acts of Whisker and Zuppke.

COUNT SEVEN

(Declaratory Judgment of Non-Infringement of the '502 Patent)

113.     Smarty Pear realleges and incorporates the allegations set forth in paragraphs 1-10 of these Counterclaims as if fully restated herein.

114.     In its Complaint, Whisker alleges that Defendants have infringed and continue to infringe the '502 Patent by its manufacture, use, sale, and offer to sell of its Leo's Loo Too products.

115.     Defendants have not and are not now infringing, inducing the infringement of, or contributing to the infringement of any valid and enforceable claim of the '502 Patent with Leo's Loo Too products.

116.     This case is subject to the Local Rules of Practice for Patent Cases before the United States District Court for the Northern District of California. Patent L.R. 1-2.  As an initial matter, Whisker is required to provide a disclosure of asserted claims and infringement contentions and supporting documentation. Patent L.R. 3-1, 3-2. At the Initial Case Management Conference, the Court adopted Whisker's proposed schedule. Dkt. No. 65. Pursuant to that Schedule, Whisker's disclosure of its infringement contentions was due on May 26, 2023. Defendants will disclose their theories and supporting facts to rebut Whisker's infringement contentions and to support their non-infringement counterclaim during the pre-trial phases of this case in accordance with the requirements of the Federal Rules of Civil Procedure, the Local

Rules of Practice in Civil Proceedings before the courts in this District, the Local Rules of Practice for Patent Cases before the courts in this District, the Standing Order for Civil Cases Before Judge Vince Chhabria, and the Schedule set by the Court for this matter.

117.    Defendants further lack and continue to lack the requisite intent or knowledge to induce or contribute to the direct infringement of the '502 Patent by another with the Leo's Loo Too products.

118.    A justiciable controversy exists as to whether Defendants have infringed any valid and enforceable claim of the '502 Patent with the Leo's Loo Too products.

119.    Defendants are entitled to a judgment declaring that they have not directly or indirectly infringed, either literally or under the doctrine of equivalents, any valid and enforceable claim of the '502 Patent with the Leo's Loo Too products.

<u>COUNT EIGHT</u>

(Declaratory Judgment of Invalidity of the '502 Patent)

120.    Defendants reallege and incorporate the allegations set forth in paragraphs 1-10 of these Counterclaims as if fully restated herein.

121.    The claims of the '502 Patent are invalid in view of the prior art and/or for failure to comply with one or more conditions for patentability set forth under 35 U.S.C. including but not limited to §§ 101, 102, 103, and 112 et seq., and the rules, regulations, and laws pertaining to those provisions, including the applicable provisions of Title 37 of the Code of Federal Regulations.

122.    Defendants are entitled to judgment declaring that the claims of the '502 Patent are invalid in view of the prior art and/or for failure to comply with one or more of the

requirements of the United States Patent Act set out in 35 U.S.C. §§ 1, et seq., including without limitation 35 U.S.C. §§ 101, 102, 103, and 112.

123.    This case is subject to the Local Rules of Practice for Patent Cases before the United States District Court for the Northern District of California. Patent L.R. 1-2.  Defendants are required to provide a disclosure of their invalidity contentions following Whisker's disclosure of its infringement contentions.  Patent L.R. 3-3, 3-4. At the Initial Case Management Conference, the Court adopted Whisker's proposed schedule. Dkt. No. 65. Pursuant to that Schedule, Defendants' disclosure of their invalidity contentions was due on July 10, 2023. By stipulation approved by the Court (Dkt. No. 90), Defendants' invalidity contentions as to the '502 patent were due on July 20, 2023 and were timely served on Plaintiff, Counterclaim-Defendant Whisker.

<u>COUNT NINE</u>

(Slander under California Civil Code §§ 44 and 46)

124.    Counterclaim Plaintiffs, Smarty Pear and Madeiras, incorporate by reference the allegations set forth in paragraphs 1- 82 of the Counterclaims herein.

125.    Counterclaim Defendant Whisker and Zuppke have made false and unprivileged publications and statements, orally uttered, that tend to injure Counterclaim Plaintiffs in their business.

126.    These statements impute characteristics of Counterclaim Plaintiffs' business that have a noticed tendency to lessen its  profits.

127.    Those statements are slanderous under California Civil Code § 46.

128.    Counterclaim Defendant Whisker and Zuppke have made at least the following slanderous statements:

- They have made slanderous statements to Counterclaim Plaintiffs' top customer Chewy, which have directly impacted sales; for example, stating that Counterclaim Plaintiffs would be out of business, causing Chewy to cut back its support and decrease its purchases; and

- They have made slanderous statements to Robert Candelino, negatively impacting Radio System's decision to invest.

<u>COUNT TEN</u>

(Libel Under California Civil Code §§ 44 and 45)

129.    Counterclaim Plaintiffs, Smarty Pear and Madeiras, incorporate by reference the allegations set forth in paragraphs 1- 82 of the Counterclaims herein.

130.    Counterclaim Defendant Whisker and Zuppke, have made or caused to be made false and unprivileged publications in writing which tend to injure Counterclaim Plaintiffs in their business.

131.    Those written statements are libel under California Civil Code § 45.

132.    Counterclaim Defendant Whisker and Zuppke have made at least the following libelous publications:

- Whisker sent a disparaging email to all influencers about working with Counterclaim Plaintiffs;

- Whisker has made or caused to be made falsifying reviews of Counterclaim Plaintiff's Leo's Loo products, hundreds of which Amazon.com has removed from its website for being fraudulent; and

- Whisker has a systematic approach to falsify unfavorable reviews by secretly paying content creators and other influencers to write unfavorable reviews, which are then distributed;

- Counterclaim Defendant Whiskers' Director and Plant Manager made derogatory public comments about Counterclaim Plaintiffs on social media.

## RESERVATION OF RIGHTS

133.     Defendants, Counterclaim Plaintiffs Smarty Pear and Christopher Madeiras expressly reserve the right to assert any additional defenses or counterclaims that may now exist or in the future may be available based on discovery and further factual investigation in this case.

## JURY TRIAL

134.     Defendants, Counterclaim Plaintiffs Smarty Pear and Christopher Madeiras request a jury trial as to all issues so triable.

## PRAYER FOR RELIEF

135.     Defendants, Counterclaim-Plaintiffs Smarty Pear and Christopher Madeiras respectfully request this Court grant relief as follows:

- A.     Judgment that Whisker's Complaint in its entirety be dismissed with prejudice;
- B.     Judgment that Whisker is entitled to nothing by its Complaint, including that Whisker is not entitled to an award of compensatory damages, attorneys' fees, costs, pre-judgment or post-judgment interest under 35 U.S.C. §§ 284 or 285, or any applicable law;
- C.     Denial of any and all of Whisker's requests for injunctive relief;
- D.     Judgment that Defendants have not infringed, and are not infringing, any valid and enforceable claim of the '502 Patent by any manufacture, use, sale, and offer to sell of Smarty Pear's Leo's Loo Too products;

E.    Judgment that the claims of the '502 Patent are invalid and/or unenforceable;

F.    Judgment that Whisker and/or any of its successors and attorneys, and all persons in active concert or participation with any of them, are enjoined from directly or indirectly asserting infringement or instituting any further action for infringement of the '502 Patent against Defendants, or any of Defendants' customers, end-users, agents, suppliers, contractors, consultants, successors, and assigns;

G.    Order that this case is "exceptional" pursuant to 35 U.S.C. § 285 entitling Defendants to an award of their reasonable and necessary attorneys' fees, expenses, and costs, and prejudgment interest thereon;

H.    Order awarding Defendants their costs incurred in this action; and

I.    Grant to Defendants such other and further relief as the Court deems just and proper.

136.    Counterclaim Plaintiffs, Smarty Pear and Madeiras, further respectfully request this Court enter judgment in favor of Smarty Pear and Madeiras against Counterclaim Defendant Whisker as to all the Counterclaims asserted herein, including an Order granting Counterclaim Plaintiffs, Smarty Pear and Madeiras, the following relief:

A.    Compensatory damages on all applicable causes of action alleged herein;

B.    Actual costs, expenses and attorneys' fees incurred in this lawsuit;

C.    All exemplary, enhanced and punitive damages;

D.    Pre-judgment and post-judgment interest;

E.    Preliminary and permanent injunctive relief; and

F.    Such other and further relief as the Court shall deem just and proper.

Dated: July 31, 2023

MCCAULLEY LAW GROUP LLC

By: /s/ Richard T. McCaulley
RICHARD T. MCCAULLEY
(pro hac vice)
richard@mccaulleylawgroup.com
180 N. Wabash Avenue, Suite 601
Chicago, Illinois 60601
Telephone: 312.330.8105

JOSHUA V. VAN HOVEN
(CSB No.62815)
E-Mail: josh@mccaulleylawgroup.com
3001 Bishop Dr., Suite 300
San Ramon, California 94583
Telephone: (925) 302-5941

Attorneys for Defendants, Counterclaim
Plaintiffs

SMARTY PEAR and CHRISTOPHER
MADEIRAS