**MCCAULLEY LAW GROUP LLC**
JOSHUA V. VAN HOVEN (CSB No. 262815)
E-Mail: josh@mccaulleylawgroup.com
3001 Bishop Dr., Suite 300
San Ramon, California 94583
Telephone: (925) 302-5941

RICHARD T. MCCAULLEY (*pro hac vice*)
E-Mail: richard@mccaulleylawgroup.com
180 N. Wabash Avenue, Suite 601
Chicago, Illinois 60601
Telephone: (312) 330-8105

Attorneys for Defendants, Counterclaim-Plaintiffs

PURLIFE BRANDS, INC., d/b/a SMARTY PEAR,
and CHRISTOPHER MADEIRAS

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| Automated Pet Care Products, LLC d/b/a Whisker, a Michigan corporation,<br><br>    Plaintiff,<br><br>v.<br><br>PurLife Brands, Inc. d/b/a Smarty Pear, a Delaware corporation, and Chris Madeiras, an individual,<br><br>    Defendants. | Case No. 3:22-cv-04261-VC<br><br>Defendants' Smarty Pear and Christopher Madeiras' Motion for Judgment on the Pleadings as to Plaintiff's '502 Patent<br><br>Hearing: September 14, 2023<br>Time: 10:00 AM<br>Courtroom: 4-17th Floor<br>Judge: Hon. Vince Chhabria |
| PurLife Brands, Inc. d/b/a Smarty Pear, and Chris Madeiras,<br><br>    Counterclaim-Plaintiffs,<br><br>v.<br><br>Automated Pet Care Products, LLC d/b/a Whisker,<br><br>    Counterclaim-Defendant. | |

## <u>TABLE OF CONTENTS</u>

Page(s)

I.     INTRODUCTION.................................................................................................................1

II.    BACKGROUND...................................................................................................................2

III.   APPLICABLE LEGAL STANDARDS................................................................................3

     A.    Rule 12(c) Motion for Judgment on the Pleadings....................................................3

     B.    Patent Eligibility Under 35 U.S.C. § 101..................................................................4

IV.   ARGUMENT.......................................................................................................................7

     A.    Applying *Alice* Step One:
           The '502 Patent Is Directed To Abstract Ideas..........................................................7

     B.    Applying Alice Step Two:
           The '502 Patent Does Not Contain An Inventive Concept......................................12

V.    CONCLUSION..................................................................................................................15

i        Smarty Pear and Madeiras' Motion
for Judgment on the Pleadings
Case No. 3:22-cv-04261-VC

## <u>TABLE OF AUTHORITIES</u>

Page(s)

CASES

*Accenture Global Servs., GmbH v. Guidewire Software, Inc.*,
    728 F.3d 1336 (Fed. Cir. 2013)........................................................................12, 13

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208 (2014).........................5, 6, 7, 10, 12, 13, 14

*Alza Corp. v. Mylan Labs, Inc.*, 464 F.3d 1286 (Fed.Cir.2006).......................................................4

*Am. Axle & Mfg., Inc. v. Neapco Holdings LLC*, 967 F.3d 1285 (Fed. Cir. 2020).........................6

*Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada (U.S.)*,
    687 F.3d 1266 (Fed. Cir. 2012).................................................................6, 14, 15

*Becton, Dickinson & Co. v. Baxter Intern., Inc.*, 127 F. Supp. 3d 687 (W.D. Tex. 2015).............10

*Bilski v. Kappos*, 561 U.S. 593 (2010)................................................................................1, 5, 13

*BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281 (Fed. Cir. 2018)..........................................6, 7

*Cleveland Clinic Found. v. True Health Diagnostics LLC*,
    859 F.3d 1352 (Fed. Cir. 2017), cert, denied, 138 S.Ct. 2621 (2018)....................................1

*Cloud Satchel, LLC v. Amazon.com, Inc.*, 76 F. Supp. 3d 553 (D. Del. 2014).............................10

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*,
    776 F.3d 1343 (Fed. Cir. 2014).................................................................3, 7, 8

*DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245 (Fed. Cir. 2014)...................................14

*Diamond v. Chakrabarty*, 447 U.S. 303 (1980)................................................................................5

*Dworkin v. Hustler Mag., Inc.*, 867 F.2d 1188 (9th Cir. 1989)........................................................4

*Electric Power Group, LLC v. Alstom S.A.*, 830 F.3d 1350 (Fed. Cir. 2016)............................8, 14

*Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327 (Fed. Cir. 2016).....................................................5

*Free Stream Media Corp. v. Alphonso Inc.*, 996 F.3d 1355 (Fed. Cir. 2021)................................6

*Genetic Techs. Ltd. v. Merial L.L.C.*, 818 F.3d 1369 (Fed. Cir. 2016)............................................3

ii                     Smarty Pear and Madeiras' Motion
                       for Judgment on the Pleadings
                       Case No. 3:22-cv-04261-VC

*Gottschalk v. Benson*, 409 U.S. 630 (1972)......................................................................8

*Hewlett Packard Co. v. ServiceNow, Inc.*, No. 14–cv–00570–BLF,
  2015 WL 1133244, at *5 (N.D. Cal. Mar. 10, 2015)........................................................9

*In re Katz Interactive Call Processing Patent Litig.*, 639 F.3d 1303 (Fed. Cir. 2011)..................14

*Intellectual Ventures I LLC v. Cap. One Bank (USA)*, 792 F.3d 1363 (Fed. Cir. 2015)............6, 13

*JOAO Control & Monitoring Systems, LLC v. Telular Corporation*,
  173 F. Supp. 3d 717 (N.D. Ill. 2016)..............................................................................8

*Khoja v. Orexigen Therapeutics*, 899 F.3d 988 (9th Cir. 2018)................................................4

*MacroPoint, LLC v. FourKites, Inc.*, No. 15–cv–1002,
  2015 WL 6870118, at *3 (N.D. Ohio Nov. 6, 2015)......................................................9

*Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025 (9th Cir. 2008)...............................4

*Mayo Collaborative Serv. v. Prometheus Labs.*, 566 U.S. 66 (2012).......................................5, 7

*McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299 (Fed. Cir. 2016).............................6

*Microsoft Corp. v. I 4 I Ltd. P'ship*, 564 U.S. 91 (2011)......................................................4

*Morgan v. Cnty. of Yolo*, 436 F.Supp.2d 1152 (E.D. Cal. 2006)............................................4

*Neochloris, Inc. v. Emerson Process Mgmt. LLLP*,
  140 F. Supp. 3d 763 (N.D. Ill. 2015)..........................................................................9, 14

*OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359 (Fed. Cir. 2015)....................................4

*Phillips v. AWH Corp.*, 415 F.3d 1303 (7th Cir. 2005)......................................................4

*Samsung Elecs. Co v. Blaze Mobile, Inc.*, 21-cv-02989-EJD (N.D. Cal. May. 16, 2023)...............9

*SiRF Tech., Inc. v. Int'l Trade Comm'n*, 601 F.3d 1319 (Fed. Cir. 2010).................................15

*SSIH Equip. S.A. v. U.S. Int'l Trade Comm'n*, 718 F.2d 365 (Fed.Cir.1983)................................4

*Tuxis Technologies, LLC v. Amazon.com, Inc., No. 13–1771–RGA*,
  2015 WL 1387815, at *2 (D. Del. Mar. 25, 2015)............................................................10

*Ubiquitous Connectivity, LP v. City of San Antonio*, Civil No. SA-18-CV-00718-XR
  (W.D. Tex. Sep. 26, 2019)..........................................................................................8

iii                                    Smarty Pear and Madeiras' Motion
                                       for Judgment on the Pleadings
                                       Case No. 3:22-cv-04261-VC

*Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709 (Fed. Cir. 2014)...................................................6, 14

*Vehicle Intelligence and Safety LLC v. Mercedes– Benz USA, LLC,* No. 2015–1411,
    635 Fed. Appx. 914, 2015 WL 9461707, at *2 (Fed. Cir. Dec. 28, 2015).................10, 12

*Versata Dev. Grp., Inc. v. SAP Am., Inc.*, 793 F.3d 1306 (Fed. Cir. 2015)......................................8

*Wireless Media Innovations LLC v. Maher Terminals, LLC*,
    100 F. Supp. 3d 405 (D.N.J. 2015)..................................................................................8, 9

STATUTES

35 U.S.C. § 101................................................................................................1, 3, 5, 7, 8, 9, 10, 15


RULES

Federal Rule of Civil Procedure 12(c)........................................................................................1,4,5

Federal Rule of Civil Procedure 12(b)(6)......................................................................................3

Patent L.R. 4-1.(a)..........................................................................................................................7

## I.    INTRODUCTION

In its Second Amended Complaint ("SAC"), Plaintiff / Counterclaim-Defendant, Automated Pet Care Products, LLC d/b/a Whisker (hereafter "Whisker") claims, *inter alia,* that Defendants / Counterclaim-Plaintiffs, PurLife Brands, Inc. d/b/a Smarty Pear, and Chris Madeiras (hereafter collectively "Smarty Pear") infringe one or more claims of U.S. PATENT NO. 11,399,502 (hereafter "the '502 patent"). *See* Dkt. No. 58, <u>Second Cause of Action</u> ¶¶ 93-111.[1]

The '502 patent is titled "System for Monitoring and Controlling an Automated Litter Device". A true and correct copy of the '502 Patent is attached as Exhibit 2 to the SAC (Dkt. No. 58-2). Whisker states that "[t]he inventions of the '502 Patent are generally directed to an automated system for a litter device and related to a method of operating an automated litter device via a remote user interface." Dkt. No. 58, ¶ 26.

Smarty Pear asserts that the '502 patent claims ineligible subject matter in violation of 35 U.S.C. § 101. Remotely monitoring and controlling a device is precisely the type of "invention" that the Federal Circuit and other courts routinely find ineligible for patent protection.

Patentability under 35 U.S.C. §101 is a threshold legal issue. *Bilski v. Kappos*, 561 U.S. 593, 602 (2010). Accordingly, the § 101 inquiry is properly raised at the pleading stage if it is apparent from the face of the patent that the asserted claims are not directed to eligible subject matter. *See Cleveland Clinic Found. v. True Health Diagnostics LLC*, 859 F.3d 1352, 1360 (Fed. Cir. 2017), cert, denied, 138 S.Ct. 2621 (2018). Whisker's '502 patent violates the Patent Act, 35 U.S.C. § 101, because it claims abstract ideas and does not contain any "inventive concept"

---

[1] Whisker's SAC is the operative pleading in this matter. However, pending is Whisker's motion for leave to file a Third Amended Complaint. See Dkt. No. 93. The proposed Third Amended Complaint (Dkt. No. 93-2) reasserts the essentially identical cause of action for alleged infringement of the '502 patent. *See* Dkt. No. 93-2, ¶¶ 94-112. Thus, Smarty Pear's motion for judgment on the pleadings directed to the SAC would apply equally to Whisker's TAC should it be filed in this action upon leave being granted by the Court.

sufficient to confer patent eligibility. Because the claims of the '502 are unpatentable on their face, the patent is invalid as a matter of law, and Smarty Pear is entitled to judgment on the pleadings.

## II.    BACKGROUND

The '502 patent is directed to a system for monitoring and controlling an automated litter box. By the patent's own admission, the litter box itself is disclosed in the prior art. Dkt. No. 58-2, column 1, lines 1-8.  The structural limitations of the asserted claims are all disclosed in the '185 patent[2] (which this Court has dismissed from this case with prejudice *See* Dkt. No. 95), which issued years before Whisker applied for the '502 patent. The '502 patent specifically embraces the fact that the alleged invention is directed to remotely monitoring and controlling the known automated litter device:

> "The present teachings may be particularly useful in remotely monitoring and receiving signals from an automated litter device, and even remotely controlling one or more operations of an automated litter device."

*Id.* at column 1, lines 7-11. The '502 patent claims an apparatus and method for operating the automated litter device via a user interface remote from the device. Dkt. No. 58-2, column 36, line 46 - column 37, line 7; and column 38, line 34 - column 39, line 10.

The '502 patent acknowledges that automated litter box devices had controllers that could display information on the device itself, but that the user had to be close to the unit to see that output:

> "Generally, automated litter devices are standalone devices. They have one or more controllers onboard which determine one or more operations, conditions, faults, or any combination thereof directly on the device. For a user to determine a status of these operations, conditions, or faults, the user typically has to be within proximity of the litter device, or may even have to read a control panel located directly on the litter device. Thus, if one or more faults occur while a user is physically away

---

[2] A true and correct copy of the '185 Patent is attached as Exhibit 1 to the SAC (Dkt. No. 58-1).

> from the automated litter device, the user may be unaware of the fault
> until once again in proximity."

Dkt. No. 58-2, column 1, lines 30-40. Additional disadvantages and drawbacks relate to the need

for the user to interface with a control panel located directly on the device to execute any operations

of the device. Dkt. No. 58-2, column 1, line 56 - column 2, line 3.

The '502 patent proposes to overcome these disadvantages and drawbacks associated with

the known prior art automated litter boxes by remotely monitoring and controlling the automated

litter box using conventional computer technology and components.[3]

## III.   APPLICABLE LEGAL STANDARDS

### A.   Rule 12(c) Motion for Judgment on the Pleadings

Patent eligibility under 35 U.S.C. § 101 is an issue of law; as such, it is suitable for

resolution on a motion to dismiss. *Genetic Techs. Ltd. v. Merial L.L.C.*, 818 F.3d 1369, 1373 (Fed.

Cir. 2016). A court is permitted to make a patent eligibility determination at the Rule 12(b)(6)

stage, so long as it has a "full understanding of the basic character of the claimed subject matter."

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1349

(Fed. Cir. 2014). In considering such a motion, the Complaint and patent-in-suit must be viewed

in the light most favorable to the plaintiff. *Id.* As with all Rule 12(b)(6) motions, the analysis is

"limited to the face of the complaint, materials incorporated into the complaint by reference, and

---

[3] Specifically, the abstract ideas to which the '502 patent claims are directed include: (1) monitoring one or more conditions, operations, or both, of the litter box from one or more computing devices remote from the litter box; (2) automatically receiving one or more notifications of one or more conditions, faults, operations, or any combination thereof, of an automated litter device via one or more computing devices remote from the litter box; (3) controlling one or more operations of an automated litter device via one or more computing devices remote from the litter box; and (4) having an automated litter device which is able to be integrated into a network to allow communication over the network. Dkt. No. 58-2, column 2, lines 19-30.

Smarty Pear and Madeiras' Motion
                                     for Judgment on the Pleadings
                                     Case No. 3:22-cv-04261-VC

matters of judicial notice." *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1362 (Fed. Cir. 2015) (applying Federal Circuit and Ninth Circuit law).

A motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) challenges the sufficiency of the complaint to state a claim upon which relief may be granted, and is subject to the same standard as a Rule 12(b)(6) motion to dismiss. *Morgan v. Cnty. of Yolo*, 436 F.Supp.2d 1152, 1154-55 (E.D. Cal. 2006); *see also Dworkin v. Hustler Mag., Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989). This means that the court will view the facts and inferences drawn from the pleadings in the light most favorable to the non-moving party. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

Because every patent is presumed to be issued properly, *Microsoft Corp. v. I 4 I Ltd. P'ship*, 564 U.S. 91 (2011), a party challenging patent eligibility under Rule 12(c) must point to clear and convincing evidence that the patent covers a patent-ineligible subject matter. *Id.* This clear-and-convincing standard applies only to questions of fact, not questions of law. *SSIH Equip. S.A. v. U.S. Int'l Trade Comm'n*, 718 F.2d 365, 375 (Fed.Cir.1983) ("[W]e find it inappropriate to speak in terms of a particular standard of proof being necessary to reach a legal conclusion [because] [s]tandard of proof relates to specific factual questions."); *Alza Corp. v. Mylan Labs. Inc.*, 464 F.3d 1286, 1289 (Fed.Cir.2006) ("[T]he movant retains the burden to show the invalidity of the claims by clear and convincing evidence as to underlying facts.") In considering a Rule 12(c) motion, a court may look at documents incorporated into the pleadings by reference as well as matters of public record (*Khoja v. Orexigen Therapeutics*, 899 F.3d 988, 998 (9th Cir. 2018)), including the patents themselves and the prosecution history. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (7th Cir. 2005).

B.   Patent Eligibility Under 35 U.S.C. § 101

The '502 patent should be declared invalid because it contains no more than abstract ideas. To be patent-eligible, § 101 of the Patent Act requires that a claimed invention be a "new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101. Although § 101 is broad in scope, the Supreme Court recognizes three fundamental exceptions to statutory patent eligibility: "laws of nature, physical phenomena, and abstract ideas." *Bilski*, 561 U.S. at 601 (quoting *Diamond v. Chakrabarty*, 447 U.S. 303, 308 (1980)). These narrow exceptions "strik[e] the balance between protecting inventors and not granting monopolies over procedures that others would discover by independent, creative application of general principles." *Id.* at 606. An invention is not necessarily ineligible for patent because it involves an abstract concept, however. *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 217 (2014). An invention that applies an abstract concept to "a new and useful end," so as to "integrate the building blocks [of human ingenuity] into something more," will be eligible for patent protection. *Id.*

To determine whether an invention is patent eligible under § 101, courts engage in a two-step process. *Alice*, 573 U.S. at 217-18 (citing *Mayo Collaborative Serv. v. Prometheus Labs*., 566 U.S. 66 (2012)). First, the court must determine "whether the claims at issue are directed to one of the patent-ineligible concepts"—laws of nature, natural phenomena, or abstract ideas. *Id.* (citation omitted). As part of *Alice's* first step, courts must consider, "in light of [its] specification," whether the patent claims "as a whole" are directed to an abstract idea or other patent-ineligible concepts. *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016).[4]

---

[4] Neither the Supreme Court nor the Federal Circuit has defined what constitutes an abstract idea. Instead, they "have found it sufficient to compare claims at issue to those claims already found to be directed to an abstract idea in previous cases." *Enfish*, 822 F.3d at 1334; see also *Alice*, 573 U.S. at 221 ("[W]e need not labor to delimit the precise contours of the 'abstract ideas' category ....").

Smarty Pear and Madeiras' Motion
                                          for Judgment on the Pleadings
                                          Case No. 3:22-cv-04261-VC

Courts have identified multiple inquiries relevant to *Alice* step one. If, for example, the patent claims an abstract "result or effect" while invoking "generic processes and machinery," then the claims are directed to an abstract idea. *Free Stream Media Corp. v. Alphonso Inc.*, 996 F.3d 1355, 1363 (Fed. Cir. 2021) (quoting *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1314 (Fed. Cir. 2016)). Indeed, patent claims must "go beyond stating a functional result [and] identify how that functional result is achieved by limiting the claim scope to . . . concrete action." *Am. Axle & Mfg., Inc. v. Neapco Holdings LLC*, 967 F.3d 1285, 1302 (Fed. Cir. 2020) (internal quotation marks omitted). Particularly in the context of computer based patents, courts must determine "whether the 'focus of the claims' is on a 'specific asserted improvement in capabilities, or instead, on a process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool.'" *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1286 (Fed. Cir. 2018) (quoting *Enfish*, 822 F.3d at 1336) (cleaned up). Put differently, "[a]n abstract idea does not become non-abstract by limiting the invention to a particular field of use or technological environment, such as the Internet." *Intellectual Ventures I LLC v. Cap. One Bank (USA)*, 792 F.3d 1363, 1366 (Fed. Cir. 2015).

In this case, the Court may properly decide the question of patent eligibility without first construing the claim terms of the '502 patent. *See Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada (U.S.)*, 687 F.3d 1266, 1273 (Fed. Cir. 2012) ("[C]laim construction is not an inviolable prerequisite to a validity determination under § 101.") Indeed, where patent eligibility is dispositive, determining that issue at the outset "will have a number of salutary effects," such as conserving scarce judicial resources and minimizing unnecessary litigation costs. *Ultramercial, Inc. v. Hulu, LLC* , 772 F.3d 709, 718–19 (Fed. Cir. 2014).[5]

---

[5] In this case, the parties have raised no issues regarding the construction of the elements or language of the asserted claims of the '502 patent. Whisker did not identify any proposed terms for

If the main thrust of the claims is a patent ineligible concept, then courts must proceed to *Alice* step two. The Court must then "search for an 'inventive concept' " in the claims to determine whether they contain any "additional elements" that "transform [the ineligible concept] into a patent-eligible application." *Alice*, 573 U.S. at 217 (quoting *Mayo*, 566 U.S. at 72, 79) (quotation and citation omitted). Most importantly, if the only possible "inventive concept is the application of an abstract idea using conventional and well-understood techniques," then the patent will fail at *Alice* step two. *BSG Tech. LLC*, 899 F.3d at 1290 (internal quotation marks omitted).

## IV.   ARGUMENT

### A.   Applying *Alice* Step One:
The '502 Patent Is Directed To Abstract Ideas

Under the framework set forth in *Alice*, the Court must first look to whether the '502 patent claims are directed to patent-ineligible concepts. The '502 patent does not purport to overcome any problem unique to monitoring and controlling a device using conventional computing devices and electronics in conjunction with conventional computer and network technology. Rather, the patent merely uses conventional technologies to implement the abstract idea of remotely monitoring and controlling a known automated litter box device.[6] Merely identifying the parameters for monitoring and controlling a device not constitute an inventive concept. Thus, the patent claims ineligible subject matter in violation of § 101.

The Federal Circuit has found that a patent claim is directed to an abstract idea when it involves a concept that is "well-known" and that "humans have always performed." *Content*

---

construction as required by Patent L.R. 4-1.(a) and in view of Whisker's position, Smarty Pear withdrew its identification of proposed terms for construction. Accordingly, there is no need to construe any of the '502 patent's claim language and as such, claim construction has no bearing on this Court's § 101 analysis.

[6] There can be no good faith dispute that the structural elements of the asserted claims are all found in the prior art. The '502 patent incorporates the prior art '185 patent (Dkt. No. 58-1, Exhibit 1) by reference multiple times in the body of the specification.

*Extraction*, 776 F.3d at 1347. The Federal Circuit has also described an abstract idea as one "ha[ving] no particular concrete or tangible form or application." *Versata Dev. Grp., Inc. v. SAP Am., Inc.*, 793 F.3d 1306, 1333 (Fed. Cir. 2015). According to the Supreme Court and the Federal Circuit, classic examples of abstract ideas include: mathematic algorithms, *Gottschalk v. Benson*, 409 U.S. 63, 64 (1972); data recognition and storage, *Content Extraction*, 76 F.3d at 1347; and merely selecting information, by content or by source, for collection, analysis and display, *Electric Power Group, LLC v. Alstom S.A.*, 830 F.3d 1350, 1355 (Fed. Cir. 2016). Whisker's '502 patent is directed to all of these well-established abstract ideas.[7] Unremarkably, the '502 patent's automated litter device is integrated into a system that uses sensors to select information about the condition of the automated litter device, which is then collected, analyzed and converted into signals by controllers, processors, communication modules, computing devices or any combination of those components. Dkt. No. 58-2, column 4, line 58 - column 5, line 7; column 11, line 59 - column 12, line 55. In the '502 patent system, communication modules allow for the litter device to receive and/or transmit data signals, including relaying data signals to other controllers, communication modules, communication hubs, networks, computing devices, or processors located external of the litter device. *Id.* at column 9, lines 33-43. The computing devices of the '502 patent include user interfaces that function to display information related to the litter device. *Id.* at column 15, lines 63-67.

In a number of recent decisions, courts have invalidated patents directed to the generic idea of monitoring and communicating information.[8] In *Wireless Media Innovations LLC v. Maher*

---

[7] For example, Figures 4 and 5 illustrate a process of executing one or more algorithms. See Dkt. No. 58-2. The '502 patent also focuses on the recognition and storage of data signals. *Id*. at column 10, line 62 - column 11, line 9; column 12, lines 7-15.
[8] *See Ubiquitous Connectivity, LP v. City of San Antonio,* Civil No. SA-18-CV-00718-XR (W.D. Tex. Sep. 26, 2019); *see also JOAO Control & Monitoring Systems, LLC v. Telular Corporation,*

*Terminals, LLC*, for example, the court invalidated two patents for a system and method of "monitoring locations, movement, and load status of shipping containers within a container-receiving yard, and storing, reporting and communicating this information in various forms through generic computer functions." 100 F. Supp. 3d 405, 413 (D.N.J. 2015). This was an abstract idea, according to the court, because these general monitoring and recording functions "could be carried out by human memory, by hand, or by conventional equipment and general purpose computer and printer resources." *Id.* at 415. Similarly, in *MacroPoint, LLC v. FourKites, Inc.*, the court held that certain patents were directed towards an abstract idea because their claims "disclose[d] nothing more than a process for tracking freight, including monitoring, locating, and communicating regarding the location of the freight." No. 15–cv–1002, 2015 WL 6870118, at *3 (N.D. Ohio Nov. 6, 2015) ; *see also Neochloris, Inc. v. Emerson Process Mgmt. LLLP*, 140 F. Supp. 3d 763, 769–70 (N.D. Ill. 2015) (Chang, J.) (holding that patent was invalid under § 101 because patent claims were directed to the abstract idea "of observing, analyzing, monitoring, and altering" data coming from a water treatment plant); *Hewlett Packard Co. v. ServiceNow, Inc.*, No. 14–cv–00570–BLF, 2015 WL 1133244, at *5 (N.D. Cal. Mar. 10, 2015) (concluding that patent was invalid under § 101 because it was "directed to the abstract idea of monitoring deadlines and providing an alert when the deadline is approaching").

In this case, the '502 patent is directed to the basic idea of monitoring and controlling a standalone prior art automated litter box device and communicating this information through generic computer functions and computing devices. The fact that the '502 patent purports to solve a problem by allowing individuals to monitor and control their automated litter box remotely through the use of a computer network does not make the patented subject matter non-abstract.

---

173 F. Supp. 3d 717 (N.D. Ill. 2016); *Samsung Elecs. Co v. Blaze Mobile, Inc.,* 21-cv-02989-EJD (N.D. Cal. May. 16, 2023).

Smarty Pear and Madeiras' Motion
                                            for Judgment on the Pleadings
                                            Case No. 3:22-cv-04261-VC

*See, e.g., Tuxis Technologies, LLC v. Amazon.com, Inc.*, No. 13–1771–RGA, 2015 WL 1387815, at *2 (D. Del. Mar. 25, 2015) ("[T]he fact that [performance of the idea] occurs remotely and/or over the Internet does not make the claimed subject matter non-abstract.") In fact, a claimed invention's ability to operate remotely has played little to no role in other courts' § 101 analyses. *See, e.g. , Becton, Dickinson & Co. v. Baxter Intern., Inc.*, 127 F. Supp. 3d 687, 692–93 (W.D. Tex. 2015) ("The fact that [an invention] is 'remote' is of no added consequence to the abstract nature of the concept."); *Cloud Satchel, LLC v. Amazon.com, Inc.*, 76 F. Supp. 3d 553, 562 (D. Del. 2014) (patent claim "at its core, describes the implementation of the abstract idea of cataloguing documents to facilitate their retrieval from storage in the field of remote computing"). Logically, this makes sense; "[s]tating an abstract idea while adding the wor[d] '[remotely]' is not ... the sort of 'additional featur[e]' that provides any 'practical assurance that the [invention] is more than a drafting effort designed to monopolize the [abstract idea] itself." *Alice*, 573 U.S. at 221.

In addition to its system for monitoring the automated litter box, the '502 patent is directed to controlling the prior art equipment. This, too, is an abstract idea. Turning a device on and off, or otherwise controlling a device, is a well-known concept. In *Vehicle Intelligence and Safety LLC v. Mercedes – Benz USA, LLC*, the Federal Circuit invalidated a patent for a system designed to screen a vehicle for equipment impairments and then control the vehicle in response to the screening results. No. 2015–1411, 635 Fed. Appx. 914, 916–17, 2015 WL 9461707, at *2 (Fed. Cir. Dec. 28, 2015). The Federal Circuit held that the claims were directed to an abstract idea because "[n]one of the claims at issue are limited to a particular kind of impairment, explain how to perform either screening or testing for any impairment, specify how to program [the system] to perform any screening or testing, or explain the nature of control to be exercised on the vehicle in response to the test results." *Id.* at 917, at *2.

The '502 patent also suffers from serious deficiencies with respect to patent eligibility. The patent's asserted claims[9] 1-7 and 12 cover an automated litter box device that detects conditions of the automated litter box device and transmits signals related to the conditions to a controller that communicates with a wireless communication module adapted to communicate with a user interface via a network, in order to transmit status signals to, and receive instruction signals via, the user interface in order to change the conditions of the automated litter box device.

The '502 patent claims do not describe or limit how the devices are specially programmed to detect conditions, how they are specially programmed to transmit signals related to the conditions to a controller, how they are specially programmed to communicate with a wireless communication module adapted to communicate with a user interface via a network, or how they are specially programmed to transmit status signals or to receive instruction signals to change the conditions of the automated litter box device. In other words, the patent claims contain no descriptive limitations specifying how the apparatus works generally, other than through the use of generic devices such as a user interface computing device, a generic computer controller, generic wireless communication modules, and a generic computer network, all of which conventionally transmit and receive data. Without meaningful limitations, the claimed invention could apply to any type of remote access to a conventional computer network to achieve conventional monitoring of and controlling any type of conditions associated with an automated

---

[9] Whisker has asserted claims 1-7 and 12-18 of the '502 patent. Claims 13-18 cover "[a] method of operating an automated litter device via a user interface remote from the automated litter device" comprising various steps including: (1) receiving instructions from a user over a network from a remote user wireless interface which instructs the litter box device to change the conditions of the device by performing one or more operations; (2) the instructions are sent to a wireless communication module that sends status signals to the user interface and sends the received instructions to a controller in the device that includes a processor for analyzing the instruction signal; and (3) the controller processor automatically initiates one or more operations of the automated litter device based on the instruction signal to change the device's condition.

litter box device; it thus "risk[s] disproportionately tying up the use of the underlying [abstract] idea" of remotely monitoring and controlling an automated litter box.[10]

Merely because the '502 patent claims recite physical, tangible components does not mean the claims are directed to something more than performance of the abstract idea of monitoring and controlling an automated litter box device. An abstract idea is not patentable merely because it includes physical components or structures. *Alice*, 573 U.S. 222-24. In *Alice*, the fact that the abstract idea of intermediated settlement was performed using a computer, which "necessarily exist[s] in the physical, rather than purely conceptual, realm ... [was] beside the point." *Id*. The Court explained that if every patent were declared valid so long as it involved the use of a computer or other machine, "an applicant could claim any principle of the physical or social sciences by reciting a ... system configured to implement the relevant concept." *Id.* at 224. In this case, the '502 patent claims recite nothing more than the concept of monitoring and controlling a known, standalone automated litter box through the use of generic network, user interface, communication, and computer devices. This is not sufficient to transform the '502 patent's abstract idea into a patentable invention. As *Vehicle Intelligence and Safety* demonstrates, the mere presence of a "real-world, physical" purpose, such as controlling a device, does not show that the claims do not preempt an abstract idea.

      B.      Applying *Alice* Step Two:
                         The '502 Patent Does Not Contain An Inventive Concept

Having determined that the '502 patent embodies the abstract idea of monitoring and controlling an automated litter box device, under step two of *Alice,* the Court must consider whether the elements of the claims set forth an inventive concept sufficient to transform the idea

---

[10] *See Alice*, 573 U.S. at 217; *see also Accenture Global Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1341 (Fed. Cir. 2013) ("In the case of abstractness, the court must determine whether the claim poses 'any risk of preempting an abstract idea.'" (citation omitted)).

12          Smarty Pear and Madeiras' Motion
for Judgment on the Pleadings
Case No. 3:22-cv-04261-VC

into a patent-eligible invention. Smarty Pear respectfully submits that the '502 patent claims do not add the requisite inventive material to transform the patent into more than an attempt to claim dominion over an abstract idea -- monitoring and controlling an automated litter device.

Determining whether a patent contains an inventive concept requires an evaluation of the particular combination of elements claimed in the patent. The Supreme Court has been clear that "the prohibition against patenting abstract ideas cannot be circumvented by attempting to limit the use of the [system] to a particular environment." *Bilski*, 561 U.S. at 610–11. Additionally, "the mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent eligible invention." *Alice*, 573 U.S. at 225; *see also Intellectual Ventures*, 792 F.3d at 1367 ("A simple instruction to apply an abstract idea on a computer" does not amount to an "inventive concept." (citation omitted)) In *Alice*, the Court found that the patent claims did not contain an inventive concept because "each step [of the patented process] did no more than require a generic computer to perform generic computer functions." *Id.* at 225. These generic computer functions included obtaining data, keeping records, and issuing instructions. *Id*; *see also Accenture Global Servs.*, 728 F.3d at 1344–45 (implementing a general idea through a combination of computer components, without meaningful limitations, is not a patent-eligible concept).

The automated litter devices recited in the '502 patent claims 1-7 and 12 are comprised of the following well-known, conventional components: "a chamber"; "a waste drawer"; "sensors configured to detect one or more conditions"; "a controller"; "a wireless communication module"; "a user interface"; "a network"; and "processors" for analyzing instruction signals and automatically initiating operations of the automated litter device. The monitoring, communication and processing components recited in the '502 patent claims merely perform the basic computing

functions of receiving, processing and transmitting information.[11] Absent from the '502 patent claims is any inventive concept, such as the use of unconventional software or computer equipment with special capabilities that can "improve the functioning of the [computer] itself." *Alice*, 573 U.S. at 225. Accordingly, because the components and methods described in the '502 patent claims merely instruct the performance of an abstract idea—monitoring and controlling of an automated litter box device — on generic computing devices connected generically to a network and the Internet, the patent claims do not set forth any "inventive concept." *See DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1257 (Fed. Cir. 2014) (the elements of a patent claim do not contain an "inventive concept" if they "merely recite the performance of some business practice known from the pre-Internet world along with the requirement to perform it on the Internet").

    The '502 patent claims merely recite conventional steps, specified at a high level of generality, and as such, cannot pass muster under the second step of the *Alice* test. *Ultramercial*, 772 F.3d at 715-16. At this level of generality, the '502 patent is emblematic of the "essentially result-focused, functional character of claim language [that] has been a frequent feature of claims held ineligible under § 101." *Elec. Power Grp.*, 830 F.3d at 1356. Patents such as Whisker's '502 patent are properly invalidated because they are "so result-focused, so functional, as to effectively cover any solution to [the] identified problem." *Id.*

    In sum, the '502 patent describes systems allowing for the abstract ideas of monitoring and controlling an automated litter box device to be performed remotely or more efficiently, but the

---

[11] *See Neochloris*, 2015 WL 5951753, at *6 ("'At its most basic ... a computer is an automatic electronic device for performing mathematical or logical operations' involving the monitoring and processing of data." (quoting *Bancorp Servs.*, 687 F.3d at 1277 (citation and quotations omitted))); *see also In re Katz Interactive Call Processing Patent Litig.*, 639 F.3d 1303, 1316 (Fed. Cir. 2011) ("'processing,' 'receiving,' and 'storing,' ... can be achieved by any general purpose computer without special programming").

descriptions do not impose any meaningful limit on the scope of the claim.[12] In this case, the '502 patent does not provide enough inventive material to elevate it beyond an attempt to patent the abstract idea of monitoring and controlling an automated litter device. The '502 patent claims contain only well-understood, routine and conventional features. Nowhere in the '502 patent can there be found non-conventional and non-generic arrangements and/or uses of known conventional technology sufficient to supply an inventive concept. Therefore, even when viewed in the light most favorable to Whisker, the '502 patent is not patent-eligible subject matter under 35 U.S.C. § 101 and must be invalidated as a matter of law.

## V.    CONCLUSION

The '502 patent does not meet the requirements of 35 U.S.C. § 101. The patent claims are solely directed to the abstract idea of monitoring and controlling an automated litter box device, and they do not contain any additional elements sufficient to transform this abstract idea into a patent-eligible invention. Smarty Pear's motion for judgment on the pleadings should therefore be granted.

Dated: August 10, 2023            **MCCAULLEY LAW GROUP LLC**

By: */s/ Richard T. McCaulley*
RICHARD T. MCCAULLEY (*pro hac vice*)
E-Mail: richard@mccaulleylawgroup.com
180 N. Wabash Avenue, Suite 601
Chicago, Illinois 60601
Telephone: (312) 330-8105

---

[12] *SiRF Tech., Inc. v. Int'l Trade Comm'n*, 601 F.3d 1319, 1333 (Fed. Cir. 2010) ("In order for the addition of a machine to impose a meaningful limit on the scope of a claim, it must play a significant part in permitting the claimed method to be performed, rather than function solely as an obvious mechanism for permitting a solution to be achieved more [efficiently]."); *see also Bancorp Servs.*, 687 F.3d at 1278 ("[T]he fact that the required calculations could be performed more efficiently via a computer does not materially alter the patent eligibility of the claimed subject matter.").

JOSHUA V. VAN HOVEN (CSB No. 262815)
E-Mail: josh@mccaulleylawgroup.com
3001 Bishop Dr., Suite 300
San Ramon, California 94583
Telephone: (925) 302-5941

Attorneys for Defendants, Counterclaim-Plaintiffs

PURLIFE BRANDS, INC., d/b/a SMARTY PEAR,
and CHRISTOPHER MADEIRAS