COOLEY LLP
BOBBY GHAJAR (198719)
(bghajar@cooley.com)
COLETTE GHAZARIAN (322235)
(cghazarian@cooley.com)
1333 2nd Street, Suite 400
Santa Monica, CA 90401
Telephone:    (310) 883-6400
Facsimile:    (310) 883-6500

MATTHEW BRIGHAM (191428)
(mbrigham@cooley.com)
3175 Hanover Street
Palo Alto, CA 94304-1130
Telephone:    (650) 843-5000
Facsimile:    (650) 849-7400

[*Full Counsel Listing on Signature Page*]

Attorneys for Plaintiff
Automated Pet Care Products, LLC d/b/a Whisker

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Automated Pet Care Products, LLC d/b/a Whisker, a Michigan corporation,<br><br>             Plaintiff,<br><br>       v.<br><br>PurLife Brands, Inc. d/b/a Smarty Pear, a Delaware corporation, and Chris Madeiras, an individual,<br><br>             Defendants.<br><hr>PurLife Brands, Inc. d/b/a Smarty Pear, a Delaware corporation, and Chris Madeiras, an individual,<br><br>             Counterclaim-Plaintiffs,<br><br>       v.<br><br>Automated Pet Care Products, LLC d/b/a Whisker, a Michigan corporation,<br><br>             Counterclaim-Defendant. | Case No. 3:22-cv-04261-VC (SK)<br><br>**WHISKER'S MOTION TO DISMISS DEFENDANTS' AMENDED COUNTERCLAIMS 1–7, 9, AND 10**<br><br>Hearing Date: September 21, 2023<br>Time: 10:00 a.m.<br>Courtroom: 4, 17th Floor<br>Judge: Hon. Vince Chhabria<br><br>Counterclaims Filed: July 31, 2023 |

**TABLE OF CONTENTS**

| | | Page |
|---|---|---|

I.      Introduction ........................................................................................................... 1

II.     Procedural History Relevant to This Motion ...................................................... 2

III.    Legal Standard ...................................................................................................... 3

IV.     The Court Should Dismiss the ACC ..................................................................... 4

     A.      The ACC Fails To State Plausible Claims for False Advertising ........................... 4

     B.      The ACC Fails To State Plausible Claims for Unfair Competition ....................... 7

     C.      The ACC Fails To State Plausible Claims for Tortious Interference................... 10

     D.      The ACC Fails To State Plausible Claims for Defamation.................................. 13

     E.      The ACC Fails To State a Non-Infringement DJ Counterclaim. ......................... 15

V.      Conclusion ........................................................................................................... 15

COOLEY LLP
ATTORNEYS AT LAW

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alfasigma USA, Inc. v. First Databank, Inc.*,
    525 F. Supp. 3d 1088 (N.D. Cal. 2021) ................................................................. 7

*AlterG, Inc. v. Boost Treadmills LLC*,
    388 F. Supp. 3d 1133 (N.D. Cal. 2019) ................................................................. 13

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................................................. 3

*BHRS Grp. LLC v. Brio Water Tech., Inc.*,
    553 F. Supp. 3d 793 (C.D. Cal. 2021) ................................................. 5, 6, 8, 10

*Choon's Design, LLC v. ContextLogic Inc.*,
    2020 WL 6891824 (N.D. Cal. Nov. 24, 2020) ................................................ 4, 5

*Cisco Sys., Inc. v. Dexon Comput., Inc.*,
    2021 WL 5848080 (N.D. Cal. Dec. 9, 2021) ......................................................... 6

*Cisco Sys., Inc. v. Dexon Comput., Inc.*,
    2022 WL 2222962 (N.D. Cal. June 21, 2022) ...................................................... 10

*Clorox Co. v. Reckitt Benckiser Grp. PLC*,
    398 F. Supp. 3d 623 (N.D. Cal. 2019) ............................................................... 4, 6

*Cook v. UPS Cartage Services, Inc.*,
    2018 WL 3630043 (E.D. Cal. Jul. 31, 2018) ....................................................... 14

*Eclectic Properties East, LLC v. Marcus & Millichap Co.*,
    751 F.3d 990 (9th Cir. 2014).......................................................................... 3, 9, 12

*Greencycle Paint, Inc. v. Paintcare, Inc.*,
    2016 WL 1402845 ................................................................................................. 12

*Hadley v. Kellogg Sales Co.*,
    243 F. Supp. 3d 1074 (N.D. Cal. 2017) .............................................................. 7, 8

*Honey Bum, LLC v. Fashion Nova, Inc.*,
    63 F.4th 813 (9th Cir. 2023) ................................................................................. 10

*Infectolab Americas LLC v. ArminLabs GmbH*,
    2021 WL 292182 (N.D. Cal. Jan. 28, 2021) ................................................... 10, 11

COOLEY LLP
ATTORNEYS AT LAW

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Ixchel Pharma, LLC v. Biogen, Inc.*
    9 Cal. 5th 1130 (2020) ...................................................................................... 11

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009).......................................................................... 3, 8

*Knievel v. ESPN*,
    393 F.3d 1068 (9th Cir. 2005)............................................................................... 7

*LegalForce RAPC Worldwide P.C. v. Swyers*,
    2018 WL 3439371 (N.D. Cal. July 17, 2018)............................................... 4, 5, 6

*Moore v. Trader Joe's Co.*,
    4 F.4th 874 (9th Cir. 2021) .................................................................................... 4

*Neo4j, Inc. v. PureThink, LLC*,
    2023 WL 122402 (N.D. Cal. Jan. 6, 2023) .................................................. 10, 12

*Oracle USA, Inc. v. Rimini Street, Inc.*,
    2010 WL 4386957 (D. Nevada Oct. 29, 2010)................................................... 14

*Schrader Cellars, LLC v. Roach*,
    2021 WL 9816545 (N.D. Cal. June 10, 2021) ................................................... 13

*Sharper Image Corp. v. Target Corp.*,
    425 F. Supp. 2d 1056 (N.D. Cal. 2006) ...................................................... 14, 15

*Smith v. Maldonado*,
    72 Cal.App.4th 637 (1999) ................................................................................. 13

*So v. HP, Inc.*,
    2022 WL 16925965 (N.D. Cal. Nov. 14, 2022)................................................... 8

*Somers v. Apple, Inc.*,
    729 F.3d 953 (9th Cir. 2013)................................................................................. 3

*Southland Sod Farms v. Stover Seed Co.*,
    108 F.3d 1134 (9th Cir. 1997)........................................................................... 4, 7

*Sybersound Records, Inc. v. UAV Corp.*,
    517 F.3d 1137 (9th Cir. 2008)............................................................................... 8

*Tuck Beckstoffer wines LLC v. Ultimate Distrib., Inc.*,
    682 F. Supp. 2d 1003 (N.D. Cal. 2010............................................................... 15

-ii-

WHISKER'S MOTION TO DISMISS
AMENDED COUNTERCLAIMS
Case No. 3:22-cv-04261-VC (SK)

COOLEY LLP
ATTORNEYS AT LAW

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Weiland Sliding Doors and Windows, Inc. v. Panda Windows and Doors, LLC,*
    814 F. Supp. 2d 1033 ................................................................................................ 15

**Statutes**

Cal. Bus. & Prof. Code § 17200 .......................................................................................... 7

California's False Advertising Law ...................................................................................... 4

California's Unfair Competition Law ................................................................................... 7

Lanham Act ................................................................................................................. 4, 5, 8

UCL ....................................................................................................................... 5, 7, 8

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) .................................................................................................. 1, 3

Rule 8 .................................................................................................................................... 3

Rule 9(b) ................................................................................................................... 3, 4, 6, 8

COOLEY LLP
ATTORNEYS AT LAW

1       Plaintiff Automated Pet Care Products, LLC d/b/a Whisker ("Plaintiff" or "Whisker")

2 hereby moves to dismiss Counts 1–7, 9, and 10 of the Amended Counterclaims ("ACC") (Dkt. 105)

3 filed by Defendants PurLife Brands, Inc. d/b/a Smarty Pear ("Smarty Pear") and Chris Madeiras

4 ("Madeiras") (collectively, "Defendants") for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

5 Plaintiff notices a hearing for Thursday, September 21, 2023 at 10:00 a.m.

6 **I.**     **INTRODUCTION**

7       As the Court is aware, Whisker brought this case to stop Smarty Pear – a company whose

8 "innovation" involved importing a product, mimicking Whisker's website, blatantly infringing its

9 two most important trademarks, infringing its patents, and making ridiculous and misleading

10 advertising statements to gain a foothold in the automated litter box market.  In their Counterclaims

11 ("CC") (Dkt. 68), Defendants threw the kitchen sink at Whisker and its CEO.  Whisker moved to

12 dismiss the CC because its scattershot and speculative allegations could not plausibly form the basis

13 for any of its ten claims for relief.  At the hearing, the Court criticized the sparsity of the allegations,

14 remarking that they felt "made up."  Ignoring the Court's instructions to Defendants to "back up"

15 their claims in "good faith," the ACC doubles-down on many of the same anemic allegations as

16 before.  Defendants' attempt to add more innuendo and a few superficial details are futile. As much

17 as they want to return fire to detract from their ongoing misconduct, the ACC continues to suffer

18 from many fatal deficiencies and relies on uncorrelated allegations that do not plausibly or legally

19 support any of the asserted claims.  The retaliatory intent behind the ACC is evidenced by a new

20 tactic that it employs: Defendants newly refer to their products as "litter robots" and refuse to

21 capitalize Whisker's Litter-Robot® mark, its latest effort to disregard Whisker's trademark rights.

22 (*See* Dkt. 55 at 4 (Court Order noting that the LITTER-ROBOT® mark is valid and protectable).)

23 The ACC is a fictional stretch—an implausible, speculative sideshow threatening to drag in

24 numerous third parties and create a discovery circus.  The Court should end this folly.

25       ***First***, Defendants again fail to allege plausible facts to satisfy the elements of their false

26 advertising claims (Counts 1, 3),[1] stretching tenuous connections based on hearsay and conjecture

---

[1] The Court should note the ACC no longer includes bogus allegations that Whisker put out advertising containing false statements about its own products.  (*Compare* CC ¶¶ 18-20.)

to concoct a narrative that Whisker staged a smear campaign against them.  Defendants' speculation aside, there is no actionable "false advertising."  **Second**, Defendants' unfair competition claims (Counts 2, 4), apparently based on speculation that Whisker manipulated online product reviews on Amazon and Chewy, have no plausible basis.  The allegations rely on purported "spikes" and removal of reviews of Whisker's products, as well as a hyperbolic email Defendant Madeiras personally received from an unrelated *third party*.  **Third,** Defendants' interference claims (Counts 5, 6) remain based on perceived "disruption" of Smarty Pear's contractual or prospective business relationships with Chewy, Great Pet Media, Radio Systems, and unspecified "influencers / content creators."  Despite extensive prior motion practice on this very issue, Defendants still fail to allege plausible facts as to knowledge, intentional conduct, causation, and injury – required elements of the claims.  **Fourth,** Defendants' defamation claims (Counts 9, 10) are similarly plagued by generalities and missing information, including who made certain statements, the contexts in which they were made, or even what the allegedly defamatory statements are – many of which are subject to the litigation privilege.  **Finally**, Defendants' non-infringement counterclaim (Count 7) remains entirely unchanged and should be dismissed on the same grounds as before. Defendants are using this side-show – based on speculation and supposition – to embark on a costly discovery fishing expedition.[2]  The ACC should be dismissed with prejudice.

## II.    PROCEDURAL HISTORY RELEVANT TO THIS MOTION

Defendants filed their original CC on May 13, 2023.  Whisker moved to dismiss those counterclaims ("Motion"), explaining that they failed to include basic factual allegations and therefore did not plausibly state a claim for relief as to any of the ten claims at issue.  (Dkt. 82.) Many of the allegations were untethered to any claims; others were based on admitted speculation or implausible leaps of supposition.  At the hearing on the Motion, the Court had a strong reaction to the CC, explaining that it invokes an image of a client instructing its attorney to "just sue them back," regardless of the merits of the claims.  (Decl. of C. Ghazarian, Ex. 1 at 4:2–6 ("Transcript").) Defendants' counsel conceded the sparsity of the allegations.  *See*, *e.g.*, *id.* at 10:23 ("I don't think that those state a lot of detail, for sure.").  Granting Whisker's Motion, the Court gave Defendants

---

[2] Tellingly, all but **one** of Defendants' discovery requests to date relate to their counterclaims.

1   leave to amend if Defendants could in "good faith" address the deficiencies.  (Dkt. 95.)

2          On July 31, 2023, Defendants filed their Amended Counterclaims ("ACC").  (Dkt. 105.)

3   Though they did not provide a redline, much of it remains unchanged from the CC.  Defendants

4   again make no effort to correlate the factual allegations in the ACC to the specific causes of action,

5   despite Plaintiff raising that issue in the Motion to Dismiss and at the hearing.  On the one hand,

6   Defendants dropped vague and nonsensical allegations such as that Whisker failed to disclose paid

7   affiliations with product reviewers or made false claims regarding its own products (*see* Dkt. 82 at

8   4, 8–9) – all of which Defendants must have known were untrue.  On the other hand, the ACC

9   continues to assert the remaining claims, adding a few superficial details here and there to support

10  them.  This is not enough.  The amended allegations are based on conjecture—not plausible facts.

11  **III.    LEGAL STANDARD**

12         "Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable

13  legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory."  *Somers v.*

14  *Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013).  The complaint must "contain sufficient factual

15  matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*,

16  556 U.S. 662, 678 (2009).  This standard "requires the [] court to draw on its judicial experience

17  and common sense."  *Id.* at 679.  "When considering plausibility, courts must also consider an

18  'obvious alternative explanation' for the defendant's behavior."  *Eclectic Properties East, LLC v.*

19  *Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 679).

20         Where an allegation sounds in fraud, the heightened pleading requirements of Rule 9(b)

21  apply.  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (citation omitted); Fed. R.

22  Civ. P. 9(b).  Because the allegations in the original CC lacked sufficient specificity under either

23  Rule 8 or Rule 9(b), the Court did not reach the issue of whether Rule 9(b) applies to any of

24  Defendants' claims.  However, as explained previously, claims for false advertising, unfair

25  competition, and tortious interference, which sound in fraud, must meet the heightened pleading

26  requirements under Rule 9(b).  (*See* Dkt. 82 at 2–3 (citing cases).)

27

28

IV.    **THE COURT SHOULD DISMISS THE ACC**

A.    **The ACC Fails To State Plausible Claims for False Advertising**

To survive this motion, Defendants must plausibly allege that Whisker made (1) a false statement of fact in a commercial advertisement about its own or another's product, that (2) actually deceived or tended to deceive a substantial segment of its audience, (3) was material to purchasing decisions, (4) entered interstate commerce; **and** (5) injured or is likely to injure Defendants, either by direct diversion of sales from themselves to Whisker or by a lessening of the goodwill associated with their products. *Southland Sod Farms v. Stover Seed Co*., 108 F.3d 1134, 1139 (9th Cir. 1997). Stating a claim under California's False Advertising Law requires a showing that a reasonable consumer is likely to be misled by the advertisement. *Moore v. Trader Joe's Co*., 4 F.4th 874, 881 (9th Cir. 2021). Further, "where a Lanham Act claim is predicated on the theory that the defendant engaged in a knowing and intentional misrepresentation, then Rule 9(b) is applicable." *Clorox Co. v. Reckitt Benckiser Grp. PLC*, 398 F. Supp. 3d 623, 634 (N.D. Cal. 2019) (citations omitted).

Also, relevant here, the Court must dismiss false advertising allegations that "fail to identify who made the challenged statement, fail to identify the nature of the 'ad copy' in which the statement is assertedly found, and fail to state when such advertisement was broadcast or otherwise made available to the public." *LegalForce RAPC Worldwide P.C. v. Swyers*, 2018 WL 3439371, at *6 (N.D. Cal. July 17, 2018). A false advertising claim that fails to allege falsity must be dismissed. *See Choon's Design, LLC v. ContextLogic Inc*.,2020 WL 6891824, at *5 (N.D. Cal. Nov. 24, 2020). This pleading threshold was outlined the original Motion, but the ACC ignores it.

Once again, the ACC fails to tie its freestanding allegations to actionable false advertising claims. Creating needless make-work, it is unclear which of the ACC's allegations are directed to the advertising claims, as opposed to other claims for relief. (*See* ACC ¶¶ 83–89.) Of the three sets of allegations Defendants relied on in their Opposition to the Motion to Dismiss (Dkt. 88), ***only one set***[3] – baseless allegations relating to the posting of "false reviews" online (*id.* ¶¶ 73–81) – remains in the ACC. The rest of the allegations pretend to support Defendants' belief that Whisker

---

[3] Defendants previously tied their false advertising claims to allegations that Whisker falsely claimed its product was the "Highest Rated Litter Machine" and failed to disclose paid affiliations with publishers, neither of which are included in the ACC. (*See* CC ¶¶ 19, 21.)

"engaged in a pervasive and coordinated campaign with influencers to spread false information about the Leo's Loos products" (*id.* ¶ 49), namely that "Smarty Pear products were a cheap, Chinese "knock-off" (*id.* ¶ 39) [herein, "**Statement 1**"]; "Christopher Madeiras stole Whisker corporate secrets and used those secrets in Smarty Pear's business" (*id.* ¶ 40) ["**Statement 2**"]; "Smarty Pear would soon be out of business and would not be able to support its products" (*id.* ¶ 41) ["**Statement 3**"]; and "Mr. Madeiras and Smarty Pear fabricated the story about Mr. Madeiras's cat Leo" (*id.* ¶ 42) ["**Statement 4**"].  Defendants have also added a new allegation that Whisker "disseminated false information by 'shopping' this lawsuit to consumers," without indicating which claim it is intended to support.  (ACC ¶ 82.)  None of these allegations are true, but relevant here, ***none are "commercial advertising"*** or otherwise plausibly support a claim for false advertising.

Alleged "false reviews."  The ACC repeats allegations, based purely on conjecture, that Whisker somehow caused the posting of false customer reviews on Chewy and Amazon.  (*Id.* ¶¶ 73–81.)  The logical leaps required to reach that conclusion are remarkable.  To begin, Defendants *again* fail to include a *single* example of the reviews at issue or specify their substance or by whom they were posted, which alone justifies dismissal.  *See LegalForce*, 2018 WL 3439371, at *6.  The Court previously called out a similar deficiency: "You say that the Plaintiffs caused a bunch of fake reviews to be posted … but you don't – you don't describe any of the reviews."  Transcript at 3:21-25.  And now, Defendants cannot even seem to keep their stories straight, alleging on the one hand that Whisker "uses [unspecified] 'deplorable sponsors'" to manipulate online reviews (ACC ¶ 73), while on the other hand alleging that "Whisker manipulates its online reviews" (*id.* ¶ 76).  Either way, Defendants do not explain the characteristics of the accused reviews to assess their alleged falsity.  *Choon's Design*, 2020 WL 6891824, at *5.

Nor are there allegations to plausibly support the notion that Whisker controlled or compensated the individuals posting the reviews, or the companies operating the platforms on which they appeared.  (ACC ¶¶ 73–81); *see BHRS Grp. LLC v. Brio Water Tech., Inc.*, 553 F. Supp. 3d 793, 801 (C.D. Cal. 2021) (dismissing Lanham Act and UCL claims based on alleged Amazon review manipulation where plaintiff did "not allege facts plausibly to show that any of the individual reviewers were controlled or paid by Brio, or otherwise acting on behalf of Brio"); *see,*

*e.g.,* Transcript at 5:23-25 (questioning basis for allegation that *Whisker* caused a third party statement). Without this, Defendants do not and cannot state a plausible claim for false advertising.

Defendants reveal how little they have by twisting an email from Sean Awdish – implying without basis that he is a "close friend" of Whisker's CEO. (ACC ¶ 71.) Quoting an email and Twitter post from Awdish, Defendants somehow believe this indicates an effort *by Whisker* to manipulate online reviews for the parties' products. (*Id.* ¶¶ 70, 72.) This is implausible, conclusory speculation; not surprisingly, the ACC contains no plausible allegations (1) that Awdish *actually* did any of the hyperbolic things in his email or Twitter post (which, in any event, do not relate to e-commerce websites like Chewy and Amazon) or (2) that Whisker controlled, directed, or had any involvement in Awdish's rogue actions (it did ***not***). *See BHRS Grp. LLC*, 553 F. Supp. 3d at 801.

Allegedly false statements to influencers. If Defendant's false advertising claims are based on statements that Whisker allegedly made to influencers, these allegations fare no better. Simply alleging that Whisker has engaged in a "coordinated campaign…to spread false information" (ACC ¶ 49) is not enough. And because Defendants allege that Whisker "engaged in a knowing and intentional misrepresentation," Rule 9(b)'s heightened pleading standard applies. *Clorox*, 398 F. Supp. 3d at 634. Even as amended, the ACC falls far short. Defendants now identify, by name, two influencers to whom they allege Whisker made false statements. (ACC ¶¶ 38–43, 46.) But they still do not specify the required "where," "when," or "who" of these statements. *Clorox Co.*, 398 F. Supp. 3d at 634. Under Defendants' concocted theory, did Whisker make the statements to the influencers at once or separately? (ACC ¶¶ 38–43, 46, 49.) When were the statements made? Who at Whisker made them? These questions remain unanswered in the ACC.

To the extent Defendants suggest Whisker made false statements to *additional* influencers besides Jennifer Dean and Mallory Crusta, the ACC contains no allegations as to who made those statements, or when or to whom they were made. And as to Crusta, there are no allegations that Whisker had any relationship with Crusta, let alone allegations that meet Rule 9(b)'s requirements. These deficiencies justify dismissal. *See LegalForce*, 2018 WL 3439371, at *6; *Cisco Sys., Inc. v. Dexon Comput., Inc.*, 2021 WL 5848080, at *8–9 (N.D. Cal. Dec. 9, 2021) (dismissing claims that did not state "who. . . classified genuine products as 'used' or 'counterfeit,' or when, and to whom").

The deficiencies don't end there, as the ACC also fails to tie these allegations to the remaining false advertising factors; most notably, ***none of the alleged Statements 1-4 are in a "commercial advertisement,"*** which is required for false advertising. *Southland Sod Farms*, 108 F.3d at 1139; *see also Alfasigma USA, Inc. v. First Databank, Inc.*, 525 F. Supp. 3d 1088, 1101 (N.D. Cal. 2021) (no advertising or promotion). Crusta's "10 Things You Should Know Before Buying an Automatic Litter Box" video is ***not*** a "commercial advertisement," but even so: (1) the ACC alleges nothing materially "false" about this video; (2) the video[4] does not actually mention the Leo's Loo Too by name (ACC ¶ 47); and (3) there are no plausible facts that Whisker controlled or created the video. *See, e.g.,* Transcript at 7:1-17 (explaining deficiencies with these types of allegations). Finally, the ACC provides no plausible support for the conclusory allegations that ***any*** of the Statements deceived consumers or harmed Defendants. Thus, the alleged "communications … to influencers" do not support a claim for false advertising. (ACC ¶ 84.)

"Shopping" the lawsuit to consumers. Although it is unclear which cause of action it is intended to support, Defendants have included a new allegation that Whisker "disseminated false information by 'shopping' this lawsuit to consumers" at a trade show in October 2022. (*Id.* ¶ 84.) These allegations are insufficient to state a claim for false advertising (or any other cause of action asserted). Whisker's ongoing lawsuit with Defendants is not "false information," and Whisker directing consumers to read about the lawsuit online (even if true) is not a false statement or advertising. This frivolous claim should be dismissed.

### B.    The ACC Fails To State Plausible Claims for Unfair Competition

The unfair competition claims in the ACC are even less tenable than in the CC. California's Unfair Competition Law ("UCL") prohibits business practices that are (1) unlawful, (2) fraudulent, or (3) unfair. *Hadley v. Kellogg Sales Co*., 243 F. Supp. 3d 1074, 1105 (N.D. Cal. 2017) (dismissing UCL claim under all theories) (citing Cal. Bus. & Prof. Code § 17200).

---

[4] The video, incorporated by reference in the ACC, shows several automatic litter boxes, including Whisker's Litter-Robot 3®, without singling out any particular brand. (Decl. of C. Ghazarian, ¶ 3); *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (courts may consider documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached …"). And the display of the Leo's Loo Too in the video's background arguably suggests the reviewer's *endorsement* of the product, as opposed to some negative connotation. (*Id.*)

Defendants' UCL and common law unfair competition causes of action[5] are largely unchanged from the CC.  As in the CC, the allegations are premised on a unified course of fraudulent conduct, and subject to Rule 9(b).  *See Kearns*, 567 F.3d at 1127; *So v. HP, Inc.*, 2022 WL 16925965, at *5 (N.D. Cal. Nov. 14, 2022);  (ACC ¶¶ 91 (alleging "deceptive acts or practices"), ¶52 (alleging "willful[]"acts that Whisker and Zuppke[6] "knew or should have known [] were unlawful"); ¶100 (claim based on "above-detailed deceptive and fraudulent conduct with the intent to confuse and deceive the public into purchasing its automatic litter box products")).

Even as to the newest allegations, the ACC fails to allege plausible facts that state a claim for unfair competition.  Notably, the ACC abandons earlier frivolous allegations relating to alleged undisclosed relationships with content creators (CC ¶ 21); now, the only allegations that purportedly support Defendants' UCL claim are related to "review manipulation" using "deplorable sponsors," as discussed in § IV.A, *supra*.[7]  (ACC ¶¶ 73–81.)  Defendants provide three bases for this theory: (1) *Awdish*, supposedly a "close friend" of Zuppke's, alluded to the use of "minions" and "deplorable sponsorship" to respectively damage Smarty Pear's brand and promote Whisker's brand on social media (*id.* ¶¶ 70, 72); (2) Whisker's overall product ratings and ratings for "litter robot V4 [sic]" experienced spikes in 5-star reviews after receiving a number of 1-star reviews and upon launching on Chewy, respectively (*id.* ¶¶ 74, 75); and (3) Amazon allegedly removed 599 reviews from Whisker's Litter-Robot® 3 listing (¶ 78).  Although the suggestion is inaccurate nonsense, neither of these alleged bases plausibly suggest that Whisker manipulated user reviews, much less support the unfair competition claims.

**First**, as noted, there are no allegations that Whisker directed or was involved in Awdish's purported actions.  *See BHRS Grp.*, 553 F. Supp. 3d at 801.  It is pure supposition to conclude this "must" be the case because of an alleged close "friendship" between Awdish and Zuppke.  It also

---

[5] As stated in Whisker's first Motion, and unaddressed by Defendants, Count 4 should be dismissed because common law unfair competition is limited to "passing off," which is (again) not alleged in the ACC.  *See Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1153 (9th Cir. 2008).

[6] Despite Defendants voluntarily dismissing Zuppke months ago, the causes of action in the ACC are still as to "Whisker and Zuppke."  (*See generally* ACC ¶¶ 45–73, 85–93.)

[7] Because there is no violation of the Lanham Act or FAL (§ IV.A, *supra*), Defendants cannot plead an "unlawful" theory.  *Hadley*, 243 F. Supp. 3d at 1089–90.

1   implausible to suggest that a colorfully-worded "trolling" email and a reply to another's post on

2   Twitter—neither of which even mention online product reviews—are the basis of a "coordinated

3   campaign of review manipulation."  This is absurd, and Defendants know it.

4       **Second**, as to the alleged spikes in positive reviews of Whisker's products, which are only

5   supported by two graphs provided with no source or attribution (ACC ¶¶ 74, 75), three spikes in a

6   two-year period is hardly indicative of "manipulation," much less by Whisker.[8]  Nor does it suggest

7   a "pattern."  (*id.* ¶¶ 74–77.)  To reach Defendants' conclusion based on these allegations requires

8   multiple implausible leaps and ignorance of obvious questions.  For instance, where are allegations

9   concerning how "unprecedented" these spikes are when compared to the ratings for other products?

10  Without a single example of the accused reviews in the ACC, what is the basis for concluding that

11  they are "false"?  (*Id.* ¶ 76.)  Indeed, there are numerous plausible explanations, including the

12  context and events surrounding the relevant time periods, for a handful of spikes in reviews.

13      **Third**, as Whisker would readily demonstrate if this spurious claim proceeds (and it should

14  not), there is an "obvious alternative explanation" for the alleged removal of reviews from one of

15  Whisker's Litter-Robot 3® products on Amazon, namely that Amazon *moved* product reviews

16  between different product listings for the Litter-Robot 3® on the platform.  *Eclectic Properties*, 751

17  F.3d at 996 ("courts must also consider an 'obvious alternative explanation' for the defendant's

18  behavior").  Even assuming *arguendo* that Amazon deleted Litter-Robot 3® reviews for not being

19  genuine (and there's no basis for that conclusion), the ACC fails to plausibly tie this to any conduct

20  *by Whisker*.  In support of their claim, Defendants include a list from Amazon's website of the

21  types of reviews that Amazon will delete.  (*Id.* ¶ 79.)  Several of the categories listed do *not* assume

22  involvement or direction by the seller of the product, such as reviews by "someone who has

23  a…indirect financial interest in the product," "a someone perceived to have a close personal

24  relationship with the product's owner," "the product manufacturer."  (*Id.*)  These groups would

25  have their own motivations for submitting user reviews, and, apart from speculative allegations

26  regarding the recruitment of unspecified "deplorables," Defendants do not allege that Whisker

27

28  _____
[8] Unlike before (CC ¶17; Dkt. 82 at 8 (Whisker's Motion)), Defendants no longer correlate the
spikes in Whisker's positive reviews to negative reviews of Whisker's products.

1   controlled or compensated any reviewers. *BHRS Grp.*, 553 F. Supp. 3d at 802 (dismissing UCL

2   claim for failure to allege that false reviews were made by individuals who received compensation).

3       **C.     The ACC Fails To State Plausible Claims for Tortious Interference.**

4       The ACC still does not state plausible claims for tortious interference and fails to plead

5   allegations as to each of the legal requirements of the claims.[9] *See Infectolab Americas LLC v.*

6   *ArminLabs GmbH*, 2021 WL 292182, at *4 (N.D. Cal. Jan. 28, 2021) (dismissing "entirely

7   conclusory" allegations of knowledge, intent to disrupt, and injury); *Cisco Sys., Inc. v. Dexon*

8   *Comput., Inc.*, 2022 WL 2222962, at *6 (N.D. Cal. June 21, 2022) (dismissing counterclaim for

9   failure to allege wrongful acts).   Additionally, failure to allege actual disruption or proximate

10  causation are "two independent bases" to dismiss an economic interference claim. *See Neo4j, Inc.*

11  *v. PureThink, LLC*, 2023 WL 122402, at *6 (N.D. Cal. Jan. 6, 2023) (dismissing "barebone

12  allegations" that "provided no basis … to [] infer that [Plaintiffs caused] the supposed disruption").

13      Here, the ACC continues to aggrandize allegations to insinuate something that is baseless.

14  The counterclaims are based on (1) a contract with Chewy "to offer exclusively its automated litter

15  box products," that is still alleged to be in effect (ACC ¶ 28); (2) a contract of unspecified duration

16  for advertising with Great Pet Media entered into in Spring 2022[10] (*id.* ¶ 51); (3) a "potential

17  transaction or relationship" with Radio Systems and a "Confidential Disclosure Agreement"

18  relating to the same (*id.* ¶ 60, 61); and (4) an unspecified "economic relationship with…various

19  influencer / content creators (*id.* ¶ 109).   Whisker addresses each in turn below.

20      **Chewy**.  Defendants fail to allege the required elements to state a claim for tortious interference

21  as to Smarty Pear's contractual relationship with Chewy.   First, despite prior briefing on this very

22  issue (Dkt. 82 at 10), the ACC again relies on conclusory allegations of Whisker's "knowledge" of

23  Smarty Pear's contract with Chewy.   (*See id.* ¶ 104 (vaguely alleging Whisker was "at all times

24

---

25  [9] Contract interference requires: (1) a valid contract between Defendants and a third party, (2)
    Whisker's knowledge of this contract, (3) Whisker's intentional acts designed to induce a breach
26  or disruption, (4) actual breach or disruption, *and* (5) resulting damage.  *See Honey Bum, LLC v.*
    *Fashion Nova, Inc.*, 63 F.4th 813, 824–25 (9th Cir. 2023).  The elements of intentional interference
27  with prospective economic advantage are similar; instead of a valid contract, there must be (1) an
    economic relationship between Defendants and some third party, with the probability of future
28  economic benefit to Defendants.  *See id.* at 824.

[10] The CC alleged that this contract was entered into in April 2022. (CC ¶ 39.)

aware" of a contractual relationship).  This alone warrants dismissal.  *Infectolab*, 2021 WL 292182, at \*5 (dismissing interference claims where "allegations regarding [defendant's] knowledge of the relationship between [plaintiff] and [third party] [were] entirely conclusory").  Second, Defendants fail to allege any intentional acts or conduct *by Whisker*.  The ACC now alleges that Chewy's former Associate Director of Pet Technology, Erick Goihman, who is supposedly "connected to Zuppke socially," delayed the launch of Leo's Loo Too on Chewy around the 2022–23 holiday season.[11]  (ACC ¶ 30.)  Relying on speculation, Defendants believe Whisker played a role in Goihman's actions because the *next* Associate Director of Pet Technology, Brian Choi, was told by Whisker that Smarty Pear would not be in business any longer and, for that reason, "pull[ed] back his support of Leo's Loo at Chewy."  (*Id.* ¶ 31.)  These allegations make no sense.  There is no plausible explanation provided for why a statement made at an unspecified time to Goihman's successor would have any bearing on *Goihman's* actions.  And how did Choi supposedly "pull back his support" of Leo's Loo?  Innuendo and vagaries do not make this plausible.  Regardless, there are no allegations that Chewy terminated Smarty Pear's contract (it didn't) or that Smarty Pear's relationship with Chewy was negatively impacted at all by Whisker's purported statements to Choi.

**Great Pet Media ("GPM").**  Defendants allege GPM "pull[ed] the advertising campaign" by Smarty Pear, supposedly because of a demand made by Zuppke based on "an alleged relationship between Whisker and a company affiliated with [GPM]."  (ACC ¶¶ 52, 53.)  These allegations do not pass the smell test.  Defendants provide no plausible basis for GPM to terminate a contract simply because they received an "angry note" from someone who has an unspecified "relationship" with an unidentified "affiliated" company.[12]  (*Id.* ¶ 52.)  Indeed, there are no allegations that explain how *Whisker* could control or manipulate *GPM*.  Moreover, if Whisker was merely enforcing the terms of its relationship with this affiliated company, that is not an "independently wrongful act."  *Ixchel Pharma, LLC v. Biogen, Inc.* 9 Cal. 5th 1130, 1148 (2020) (holding allegation of "independently wrongful act" required to state a claim for tortious interference with contract).

---

[11] The dates alleged are inconsistent.  Defendants claim that Goihman "disappeared" after August 24, 2022, before the holiday season that year, then that they had a conversation with Choi in August 2022 "long after Smarty Pear was shut out of the 2022 holiday season."  (¶¶ 30, 31.)

[12] Defendants *removed* details as to the GPM allegations.  (*Compare* CC ¶¶ 39–41.) (alleging the company with which Whisker had relationship acquired GPM and new CEO terminated contract)

Although Defendants claim their advertising campaign was "pulled," they do not allege that GPM terminated any contract with Smarty Pear or when that contract expired or would have expired. *See id.* at 1147 (regularly renewed contracts for the sale of goods create "no legal assurance of the buyer's continued purchases"). The ACC's allegations as to GPM are speculative and deficient.

**Radio Systems.** Although the ACC colors in a few additional facts regarding Smarty Pear's "relationship" with Radio Systems and Whisker's supposed disruption of that relationship, the ACC fails to plausibly allege the required elements of an interference claim. In their fictional tale, Defendants do not allege that *Whisker* proximately caused any disruption. *See Neo4j*, 2023 WL 122402, at *6 (allegations of disruption were "wholly conclusory" and "provided no basis for the Court to even infer that the supposed disruption was caused by Plaintiffs"). Rather, they claim that in March 2023, Robert Candelino of Radio Systems and Mr. Madeiras initiated discussions regarding a potential transaction or business relationship. (ACC ¶¶ 55, 59–61.) They allege that Candelino then had a "similar" conversation with Zuppke, and, upon learning that Candelino was in discussions with Madeiras, Zuppke told Candelino that Smarty Pear was a company based on confidential information Christopher Madeiras had stolen from Whisker, which Defendants state, in conclusory fashion, "at a minimum contributed to Radio Systems not doing business with Smarty Pear. (*Id.* at ¶¶ 62–64, 69.) However, it was *Madeiras* who refused to share Smarty Pear's confidential information with Radio Systems upon learning of Candelino's conversation with Zuppke. (*Id.* at ¶ 66.) The ACC says it was only after Candelino reassured Madeiras that Radio Systems would not be working with Whisker and received a "strategic company presentation" regarding Smarty Pear's upcoming Leo's Loo version 3 product that Candelino advised Madeiras that Radio Systems was no longer interested in pursuing a business relationship. (*Id.* ¶¶ 68, 69.) Defendants want to ignore "obvious alternative explanations" (*Eclectic*, 751 F.3d at 996), including that Candelino decided not to work with Smarty Pear based on the contents of its presentation, his evaluation of the opportunity, Smarty Pear's products, or other confidential information that Madeiras shared with him. *See Greencycle Paint, Inc. v. Paintcare, Inc.*, 2016 WL 1402845, *6 (conclusory allegations implausible where no facts alleged excluding possibility that decision not to work with plaintiff was based on lack of prior experience or track record of success.) Lastly, the

1   ACC does not allege that (1) Candelino told Madeiras that some comment from Whisker was the

2   reason for disinterest or (2) all communications between Madeiras and Candelino have ceased.

3   **"Various influencers / content creators."**   The claims as to unspecified "various influencers

4   / content creators" once again fail for lack of specificity.   (ACC ¶ 109–112.)   *See AlterG, Inc. v.*

5   *Boost Treadmills LLC*, 388 F. Supp. 3d 1133, 1152 (N.D. Cal. 2019) (dismissing interference

6   claims referring to unspecified "vendors, suppliers, and prospective and current customers").   To

7   the extent Defendants' allegations regarding Dean and Crusta are intended to support their

8   intentional interference claim, they do not (§ IV.A, *supra*).   Defendants do not allege any economic

9   relationship with Dean, let alone that Whisker knew about it.   As to Crusta, even assuming she had

10  an economic relationship with Defendants (which is not plead), there are no allegations that

11  Whisker had knowledge of that relationship.   In any event, the ACC does not allege whether Crusta

12  "received a briefing from Whisker" before or after any supposed relationship began, much less that

13  such "briefing" was the reason the relationship discontinued.   These claims should be dismissed.

14           **D.       The ACC Fails To State Plausible Claims for Defamation.**

15           The ACC forces a re-do of Whisker's prior Motion.   As explained, claims for libel and

16  slander require allegations that Plaintiff intentionally published a statement of fact that is false,

17  unprivileged, and has a natural tendency to injure (defamation per se) or causes special damages.

18  *Smith v. Maldonado*, 72 Cal.App.4th 637, 645–46 (1999).   The ACC must "specifically identify

19  the defamatory statement and plead its substance," including referencing "the speakers of the

20  defamatory communications, the recipients, the timing, or the context in which they were made,

21  sufficient to provide . . . notice of the issues' to prepare a defense."   *Schrader Cellars, LLC v.*

22  *Roach*, 2021 WL 9816545, at *5 (N.D. Cal. June 10, 2021) (dismissing claim that "only describe[d]

23  the substance of the alleged defamatory statements generally and fail[ed] to describe to whom

24  Defendant allegedly made these comments . . . [or] the timing of these alleged statements").

25           As to libel, all of the bulleted "statements" in the counterclaim fail to identify the words that

26  allegedly constitute slander.   (*See* ACC ¶¶ 132 (unspecified and unattached "disparaging email to

27  all influencers about working with [Defendants]") *id.* alleging (again) that Whisker "made or

28  caused to be made falsifying reviews" of Defendants' products and "has a systematic approach to

falsify unfavorable reviews" of unspecified products, providing no examples or statements); and *id.* ("unspecified derogatory public comments" made by a Whisker employee about Defendants on social media"). As Whisker explained previously (Dkt. 82 at 14), such generalities do not provide it sufficient notice of the basis of a libel claim, warranting dismissal of the claim *in its entirety*.

Defendants' slander claim is also insufficiently pled. The counterclaim is based on two statements: one allegedly made by unidentified "representatives of Whisker" to "new" Chewy employee Brian Choi that "Smarty Pear would not be in business much longer" (*id.* ¶ 31) and others allegedly made by Zuppke to Robert Candelino of Radio Systems that "Smarty Pear was a company based on confidential information Christopher Madeiras had stolen from Whisker" and related statements (*id.* ¶ 63, 64). *First*, as to the supposed Chewy statement, Defendants fail to identify the speaker(s) of the alleged defamatory statement to Mr. Choi or when the statement was made. *See Cook v. UPS Cartage Services, Inc.*, 2018 WL 3630043, at *2 (E.D. Cal. Jul. 31, 2018) (dismissing defamation claim where plaintiff failed to allege identity of speakers and timing of defamatory statements). *Second*, although the ACC doesn't state *exactly* what was said to Mr. Choi (relying instead on a hearsay game of "telephone"), or how Mr. Choi relayed that to Smarty Pear, the statement is an opinion and thus non-actionable. *Oracle USA, Inc. v. Rimini Street, Inc.*, 2010 WL 4386957, at *2–3 (D. Nevada Oct. 29, 2010) (holding that a statement "concerning the future financial stability of a business is a nonactionable statement of opinion"). As to the statements to Radio Systems, although Defendants allege, in conclusory fashion that "Zuppke's false statements to Candelino at a minimum contributed to Radio Systems not doing business with Smarty Pear," its other allegations belie this conclusion, as discussed in § IV.C, *supra*. (ACC ¶ 69.) Defendants have not plausibly alleged any injury as a result of these statements.

Additionally, many of the statements are also immunized by the *Noerr-Pennington* doctrine and litigation privilege, as they track with Whisker's lawsuit alleging Defendants' pattern of IP theft and misconduct. (*See* Dkt. 82 at 15.) The litigation privilege protects statements with "some connection or logical relation to the action," including communications to a defendant's business partners who possess a "substantial interest in the outcome of the litigation." *Sharper Image Corp. v. Target Corp.*, 425 F. Supp. 2d 1056, 1079 (N.D. Cal. 2006). Both Chewy and Radio Systems

possess a "substantial interest in the outcome of the litigation" by virtue of their actual or prospective business relationships with Smarty Pear, as Defendants have alleged in support of their tortious interference claims. *See Weiland Sliding Doors and Windows, Inc. v. Panda Windows and Doors, LLC*, 814 F. Supp. 2d 1033, 1041 (finding third parties had substantial interest in outcome of litigation). Purported statements to Chewy, Radio Systems, or third parties putting them on notice of IP or other issues alleged in this lawsuit are the very types of statements Courts have held are subject to the litigation privilege. *See Sharper Image*, 425 F. Supp. 2d at 1079; *Tuck Beckstoffer wines LLC v. Ultimate Distrib., Inc.*, 682 F. Supp. 2d 1003, 1019 (N.D. Cal. 2010) (statement to buyers that the "quality" of defendant's product had "deteriorated" was privileged). The "defamation" allegations are also barred by the litigation privilege/*Noerr-Pennington* doctrine.

> **E.     The ACC Fails To State a Non-Infringement DJ Counterclaim.**

These allegations are substantively identical to those in the original CC. (ACC ¶¶ 113–19.)[13] The Court should, therefore, dismiss the non-infringement counterclaim for the same reason it was dismissed last month. (Dkt. Nos. 82, 95.) Once again, Defendants plead no facts whatsoever in support of this counterclaim, relying instead on conclusory statements that Defendants "have not directly or indirectly infringed, either literally or under the doctrine of equivalents, any valid and enforceable claim of the '502 Patent with the Leo's Loo Too products." *Id.* ¶ 115. This is insufficient. In pleading declaratory judgment claims for patent non-infringement, "the pleading must specify…the conduct alleged not to infringe," which Defendants have not done here, despite being put on detailed notice of Plaintiff's infringement claims for nearly a year. *Xilinx Inc. v. Invention Inv. Fund I LP,* 2011 WL 3206686, at *6–7 (N.D. Cal. July 27, 2011). Defendants have had Plaintiff's infringement contentions for nearly three months, yet still provide nothing more than an improper "bare-bones recitation of statutes." *Id.* This counterclaim should be dismissed.

**V.     CONCLUSION**

For the foregoing reasons, Counts 1–7, 9, and 10 of Defendants' Counterclaims should be dismissed with prejudice.

---

[13] In contrast, Defendants at least tried to address Plaintiff's concern about the invalidity counterclaim (Claim 8) by limiting the allegations to the grounds articulated in its now-served invalidity contentions. *See* ACC ¶ 123 (adding a reference to "timely served" contentions).

| | |
|---|---|
| 1 | Dated:  August 14, 2023 |

COOLEY LLP

By: */s/ Bobby Ghajar*

BOBBY GHAJAR (198719)
(bghajar@cooley.com)
COLETTE GHAZARIAN (322235)
(cghazarian@cooley.com)
1333 2nd Street, Suite 400
Santa Monica, CA 90401
Telephone:   (310) 883-6400
Facsimile:    (310) 883-6500

MATTHEW BRIGHAM (191428)
(mbrigham@cooley.com)
3175 Hanover Street
Palo Alto, CA 94304-1130
Telephone:     (650) 843-5000
Facsimile:     (650) 849-7400

STEPHEN SMITH *[Pro hac vice]*
(stephen.smith@cooley.com)
BETH SHRIEVES *[Pro hac vice]*
(bshrieves@cooley.com)
1299 Pennsylvania Avenue, NW, Suite 700
Washington, DC 20004
Telephone:    (202) 776-2196
Facsimile:     (202) 842-7899

*Attorneys for Plaintiff*
Automated Pet Care Products, LLC d/b/a
Whisker