# EXHIBIT 1

```
 1                UNITED STATES DISTRICT COURT
 2              NORTHERN DISTRICT OF CALIFORNIA
 3      Before The Honorable Vince Chhabria, District Judge
 4
 5  AUTOMATED PET CARE PRODUCTS,  )  No. C 22-04261-VC
    LLC,                          )
 6                                )
              Plaintiff,          )
 7                                )
    vs.                           )
 8                                )
    PURLIFE BRANDS, INC., d/b/a   )
 9  Smarty Pear, a Delaware       )
    Corporation, et al.,          )
10                                )
              Defendants.         )
11  _____)
12                                   San Francisco, California
                                     Thursday, July 13, 2023
13
14   TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND
                RECORDING 10:05 - 10:23 = MINUTES
15
16  APPEARANCES:
17  For Plaintiff:
                            Cooley, LLP
18                          1333 2nd Street
                            Santa Monica, California
19                              90401
                        BY: BOBBY A. GHAJAR, ESQ.
20
    For Defendants:
21                          McCaulley Law Group
                            180 North Wabash Avenue
22                          Suite 601
                            Chicago, Illinois 60601
23                      BY: JOSHUA VOIGHT VANHOVEN, ESQ.
24
25
```

```
                                                                    2
 1  Transcribed by:              Echo Reporting, Inc.
                                 Contracted Court Reporter/
 2                               Transcriber
                                 echoreporting@yahoo.com
 3
 4
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
                                                              3
 1  Thursday, July 13, 2023                            10:05 a.m.
 2                     P-R-O-C-E-E-D-I-N-G-S
 3                           --oOo--
 4         THE CLERK:  Calling civil action C 22-4261,
 5  Automated Pet Care Products, LLC versus PurLife Brands,
 6  Inc., d/b/a Smarty Pear, a Delaware Corporation, et al.
 7      Counsel, please state your appearances for the record.
 8  Thank you.
 9         MR. GHAJAR (via Zoom):  Good morning, your Honor.
10  Bobby Ghajar from Cooley on behalf of the Plaintiff.
11         THE COURT:  Good morning.
12         MR. VANHOVEN (via Zoom):  Morning, your Honor.
13  Josh Vanhoven of McCaulley Law Group for Smarty Pear and
14  Maderis (phonetic).
15         THE COURT:  Morning.  Okay.
16      So, there's a motion to dismiss the patent claim.  That
17  motion will be granted.  I don't need to hear argument about
18  that.  On the motion to dismiss the counterclaims, let me
19  give you my first impression of them.
20      The allegations are very sparse.  You know, there's --
21  you say that the Plaintiffs made a bunch of false statements
22  about your company, but you don't really identify any of the
23  statements.  ==You say that the Plaintiffs caused a bunch of==
24  ==fake reviews to be posted about your client's product, but==
25  ==you don't -- you don't describe any of the reviews.==
```

1  Everything is on information and belief.  The whole thing
2  just seems so sparse that it almost invokes this image in my
3  mind of the client saying, "Well we should sue them back."
4  And the lawyer saying, "Well what should we sue them back
5  for?"  And the client saying, "I don't care.  Just sue them
6  back."  I mean, that's -- that's the image I get in my mind
7  when I read your counterclaims, given how sparse the
8  allegations are and given that everything is on information
9  and belief.
10      So, I find it difficult imagining that I would allow
11 the counterclaims to go forward as alleged, currently.  I
12 assume I would have to give you leave to amend to add
13 further detail, if you -- if you believed that you could.
14 But, let me just ask you first, like am I wrong in the
15 mental image that appeared in my mind?  I mean, is that
16 wrong?
17         MR. VANHOVEN:  Your Honor, I think we have over 40
18 paragraphs of allegations and I'll talk about fraud in a
19 second and what those may apply to, but the vast majority of
20 those allegations are subject to the standard Rule 8
21 pleading standards.
22      And so, for example, when we're talking about actions
23 toward influencers.  We identified the influencer.  We
24 identified what was wrong with the influencer presentation.
25 We identify how we understand that Whisker has -- has

5

1 engaged with that influencer --
2           THE COURT:  Do you want to -- I mean, you might be
3 leading with like your best example now, but let's take a
4 look at the actual allegations in the complaint.  Do you
5 want to point me to a particular paragraph that we should be
6 looking at?
7           MR. VANHOVEN:  Sure.  And -- and again, these are
8 allegations --
9           THE COURT:  Before --
10          MR. VANHOVEN:  These are allegations that we don't
11 believe are subject to 9(b) pleading, for example.
12          THE COURT:  Okay.  Before we analyze them, let's
13 -- let's get them in -- let's --
14          MR. VANHOVEN:  Sure.
15          THE COURT:  -- get them in front of us.
16          MR. VANHOVEN:  So let's look at paragraph 20 --
17 well, it's 21, 22, 23, 24 are the influencer allegations.
18          THE COURT:  Okay.  So the first sentence is, "On
19 information and belief, Whisker induced this person to
20 create a You Tube video trashing your product."  Right?
21          MR. VANHOVEN:  Correct.
22          THE COURT:  So what -- what is the basis for your
23 view?  What is the -- what is the -- what is the basis for
24 your allegation that Whisker is the one that caused this You
25 Tube video to be created?

6

```
 1            MR. VANHOVEN:  Again, this is not an allegation
 2  that we believe is subject to 9(b) pleading, where we have
 3  to plead exactly who said what to whom.
 4            THE COURT:  I know, but if you have a breach of
 5  contract case, right --
 6            MR. VANHOVEN:  Yes.
 7            THE COURT:  And you say, "On information and
 8  belief, they breached the contract."  You have to -- you
 9  still have to explain how they breached the contract and how
10  it is you know that they -- you have to describe the breach,
11  right?
12            MR. VANHOVEN:  Yes.
13            THE COURT:  You can't just say, "They did it," and
14  leave it at that.  I mean, at least not in federal court.
15  Right.  So, even if it's not a fraud-based claim.
16       So, what -- I understand your argument that some of
17  this stuff is not fraud based.  Maybe that's right, maybe
18  it's not right.  I don't know, but I'm not sure it matters
19  because you still have to, you know, provide enough
20  information --
21            MR. VANHOVEN:  So in the -- the case of that
22  allegation, it's our understanding that they had interacted
23  with the reviewer to prompt that presentation, and then that
24  -- and then we've also alleged that they've actively
25  promoted that particular video.
```

```
                                                                    7
 1           THE COURT:  And where -- and so where is that --
 2   well, the fact that they've promoted the video -- I mean if
 3   there's a -- if there's a video -- there's a negative review
 4   of your product, right?
 5           MR. VANHOVEN:  Yes.
 6           THE COURT:  And your competitor promotes the
 7   video, but it has a negative review of your product, there's
 8   nothing wrong with that.
 9           MR. VANHOVEN:  Yes.
10           THE COURT:  Right?  You agree?
11           MR. VANHOVEN:  Correct.
12           THE COURT:  Okay.  It's only if they were involved
13   in the -- and by the way, if they communicated with the
14   reviewer and they provided their opinion of your product to
15   the reviewer, and then the reviewer agreed and created a
16   video trashing your product, and then Whisker disseminated
17   the video, still there's nothing wrong with that, right?
18           MR. VANHOVEN:  Depending on -- if it was a simple,
19   "Hey, take a look at this product."
20           THE COURT:  "Take a look at this product, we
21   believe it's a lot worse than ours and it has functionality
22   problems."  Whatever it is they might have said, right.  You
23   lobby somebody to do a video --
24           MR. VANHOVEN:  General truthful statements would
25   not be actionable.
```

8

```
 1            THE COURT:  Right.  So what -- so where's the --
 2  so where is the cause -- where is the wrongdoing here?
 3            MR. VANHOVEN:  In that instance and in some -- and
 4  in probably most of these influencer-related claims, we have
 5  not conveyed how we're aware of the particular interaction
 6  of Whisker with the influencer.
 7            THE COURT:  What --
 8            MR. VANHOVEN:  I --
 9            THE COURT:  I mean, on information and belief,
10  Whisker told her to say this stuff, right?
11            MR. VANHOVEN:  We have not -- we have not stated
12  it in that level of detail.  We could amend to state that
13  for sure.  I will say that our client and people are
14  concerned about getting out how that -- how we know that
15  happened, but we can figure out how to include those
16  allegations.
17            THE COURT:  Right now it has a feel of just being
18  made up.  I mean, I'm not saying that it's made up, but
19  that's the -- just the sort of feel of -- that's the vibe of
20  your lawsuit.
21            MR. VANHOVEN:  There is a concern because of the
22  aggressiveness of Whisker within the industry of people
23  having names stated, or information that might identify them
24  as associating them with us.  But I --
25            THE COURT:  But I mean, look -- so, for example,
```

9

```
 1  like I'm just looking -- I'm now looking at paragraphs 42
 2  and 43.
 3              "A prominent industry investor was
 4          interested in investing in Smarty Pear
 5          or purchasing the company.  On
 6          information and belief, Jacob Zuppke,
 7          who is the CEO of Whisker,"
 8  is that right?
 9              MR. VANHOVEN:  CEO or president, yes.
10              THE COURT:
11                 "On information and belief, Jacob
12          Zuppke made false and misleading
13          statements to the promising industry
14          investor about Smarty Pear, which
15          disrupted that perspective economic
16          relationship."
17  I mean, what am I supposed to do with those allegations?
18  That's just -- that doesn't state a claim for interference
19  with economic advantage.
20              MR. VANHOVEN:  It has put them -- this is conduct
21  that we are aware of that they've done.  It does put them on
22  notice of exactly the interactions that we're talking about,
23  for purposes of 8(c), but I understand that certainly we
24  can --
25              THE COURT:  But I have a job of -- I have -- I
```

10

1 have job, under the federal case law, to ensure that the
2 complaint adequately sets forth facts that would support a
3 claim.  Right.  And, I mean, do -- you don't really think
4 that --
5           MR. VANHOVEN:  I think that paragraph --
6 paragraph --
7           THE COURT:  -- the sentence that I just read --
8           MR. VANHOVEN:  If we look -- if we look at
9 paragraph 42 and 43 in isolation, I don't think that those
10 state a lot of detail, for sure.  And it's something that --
11 would we re-plead, as I said, we are -- we have concern
12 about exposing how we know things, but --
13           THE COURT:  Right.  Well, but I mean my concern is
14 whether these allegations are true, right?  And so it seems
15 to me that you need to back up your allegations, and maybe
16 that will help us be able to figure out whether some of them
17 are true down the line.  If you -- if you can back them up,
18 you know, in allegations, then we can test the veracity of
19 those allegations, right.  But right now there's -- there's
20 like nothing to test because there's so little detail in the
21 allegations.
22           MR. VANHOVEN:  And again, that may apply to
23 certain sub-allegations that I do believe we could re-plead
24 to fill in those holes, your Honor, but I also believe there
25 are allegations that are more robustly pled in here too.

```
 1              THE COURT:  Okay, so do you want to give me one --
 2   one more example of that?  I mean your first -- your first
 3   example was the one you gave at paragraphs 21, 22 and 23,
 4   the tech reviewers.  So that's your -- you think that's your
 5   strongest allegation?
 6              MR. VANHOVEN:  No, I was just -- I was just
 7   starting with the first paragraph of the influencers, your
 8   Honor.
 9              THE COURT:  Okay.  What's --
10              MR. VANHOVEN:  So, for example --
11              THE COURT:  Give me an example of some --
12              MR. VANHOVEN:  Yeah, 22 -- 22 and 23 includes
13   allegations where we specifically identify Whisker's
14   statements to the influencer, that they also -- that they
15   also compensate.
16              THE COURT:  Well, but it says,
17                  "Ms. Dean (phonetic) said she'd
18              been contacted by a representative of
19              Whisker who briefed her on the facts
20              concerning Smarty Pear."
21              MR. VANHOVEN:  And that's stolen, Whisker's
22   intellectual property and product design.  It was personally
23   responsible for stealing Whisker's intellectual property and
24   product design.  And Smarty Pear would not be in the market
25   for long.
```

```
 1       So I do agree, there's a difference in kind between 22
 2  and 23 and 21 -- or 22 and 23 versus 42 and 43.
 3            THE COURT:  Uh-huh.
 4            MR. VANHOVEN:  And I think that we could -- I
 5  think 22 and 23, for example, certainly survives kind of the
 6  standard Rule 8 pleading.  But, you know, if we're looking
 7  at a -- if you have a concern about 21 or 42, 43, we have
 8  facts which we could plead there.
 9            THE COURT:  Okay.  Mr. Ghajar, do you want to --
10  is it Ghajar or Ghajar?
11            MR. GHAJAR:  Ghajar.
12            THE COURT:  Ghajar.
13            MR. GHAJAR:  Thank you, your Honor.
14            THE COURT:  Sorry about that.
15            MR. GHAJAR:  You sort of took the words out of my
16  mouth in preparing for today.  I wanted to share with you
17  that what you probably gleaned from our papers is, my client
18  is a 20-year-old business that has built products from
19  scratch, employs 50 engineers, believes in fair competition.
20  Believes innovation.  This is background.  The allegations
21  here read to us like somebody sat in a room and said, "What
22  can we say?"  You took the words out of my mouth.  That was
23  in my preparation.  And it was just a random assortment of
24  allegations.
25       And so, we tried to sort all of that out in our motion,
```

13

1 and in response they ran away, or didn't address, a number
2 of the allegations we attacked in our motion.  And we point
3 that out in reply.  And what's left doesn't correlate to the
4 claims that they've alleged.  False advertising.  It's a
5 multi-part test.  They didn't even begin to allege facts,
6 plausible facts, non-conclusory facts that correlate to the
7 false advertising allegations.
8        I'll focus -- I mean, I could talk about --
9            THE COURT:  Why don't you focus on paragraph 23.
10           MR. GHAJAR:  So 23 --
11           THE COURT:  It seems -- that seems to be the one
12 that he thinks is the strongest.
13           MR. GHAJAR:  I guess the question, if I may direct
14 it to counsel, what is -- what claim is this directed
15 toward?  Is this is a -- is this is a (sic) allegation in
16 support of false advertising, or is this supposedly
17 defamation?  That would help orient my argument, but it's
18 not --
19           THE COURT:  I would -- my guess would be that it
20 would be in support of defamation.
21           MR. GHAJAR:  Okay.  So let me address that.
22 Defamation, as your Honor know -- knows, requires an
23 intentional false statement of fact made that causes injury.
24 There's no allegation -- I'll start at the end -- there's no
25 allegation here how it injured Smarty Pear in any way.

14

1 There's causation --
2         THE COURT:  Wasn't it obvious that if a You Tube
3 video from an influencer is posted trashing their product,
4 that it causes them injury?
5         MR. GHAJAR:  But the allegation -- I don't know
6 about that.  If my client is alleged with specificity to
7 have contributed to some false content that made its way
8 into a viewer's review, perhaps, theoretically, but that's
9 not what's alleged.
10    The specificity in that statement that my colleague
11 called out was statements about Smarty Pear's business.
12 There's no allegation that those allegations --
13         THE COURT:  I mean, one of the problems, of
14 course, is that they -- they say that she produced this
15 content that was -- you know, purports to be independent,
16 but is actually -- she has actually, you know, been
17 influenced by Whisker and it's a negative -- it's negative
18 content about our product.  But they don't even include the
19 content.
20         MR. GHAJAR:  They don't.
21         THE COURT:  They don't include the content, so we
22 can't judge whether there are false statements in there, or
23 whether it harmed --
24         MR. GHAJAR:  It's a problem, your Honor, that
25 permeated the set of counterclaims.  They didn't provide

1  examples of false advertising.  Contrast that with what we
2  did in our -- in our pleadings.  We put a copy of the ad, we
3  told you where it was, we told you why it was false, we
4  cited proof.  There's nothing there.  And so these -- if
5  these are the best examples, I think it exposes the problem.
6       But defamation, as your Honor may be aware from the
7  Schraeder Cellars case, we cited this in our brief, it
8  describes the kind of generalized allegations that are
9  subject to Rule 8, not 9(b) necessarily, that the -- or the
10 counter plaintiffs rely on in their -- in their
11 counterclaims.  The court there analyzed very similar
12 generalized allegations and said, "This is not enough."  And
13 we think that liable and slander, they need to have some
14 sort of specificity, in terms of what statements were made,
15 by whom and to what effect.  And the statements that are
16 alleged in that paragraph that my colleague read, there's no
17 allegation that those statements were made in a video or
18 some review.  I don't see the correlation, or I should say,
19 the proximate cause.  So there are many problems, and so
20 that's just one of them.
21          THE COURT:  Okay.  I gather -- assuming I dismiss
22 the counterclaims, I gather you are requesting leave to
23 amend?
24          MR. VANHOVEN:  Yes, we'd request leave to amend.
25 Yes.

```
 1          THE COURT:  Okay.  I'll -- I'll think about it a
 2 little more and I'll issue an order shortly.
 3          MR. GHAJAR:  Can I -- can I make a request?  It
 4 might be a little bit unorthodox.  If they are, and we
 5 strongly urge them not to, because we don't think that
 6 there's any there, we believe these are all baseless claims,
 7 they do need to say when and where and how these occurred
 8 and to whom.  This case law says, if you are alleging that
 9 there is defamation, who's -- who's the recipient of that
10 information?  Who, for example, at Chewy, received that
11 information?  Not just Chewy.  Chewy employs thousands of
12 people.
13      And so we --
14          THE COURT:  I'm sorry, what's your request?
15          MR. GHAJAR:  The --
16          THE COURT:  Unorthodox request?
17          MR. GHAJAR:  If they're going to actually proceed,
18 the when, the to whom and to where, so that we're not back
19 here pointing all of those same defects out to your Honor.
20          THE COURT:  Okay.  I'll -- I'll give it a little
21 more thought and issue an order shortly.
22          MR. GHAJAR:  Thank you, your Honor.
23          THE COURT:  Thank you.
24          MR. VANHOVEN:  Thank you, your Honor.
25      (Proceedings adjourned at 10:23 a.m.)
```

1          CERTIFICATE OF TRANSCRIBER

2

3     I certify that the foregoing is a true and correct
4 transcript, to the best of my ability, of the above pages of
5 the official electronic sound recording provided to me by
6 the U.S. District Court, Northern District of California, of
7 the proceedings taken on the date and time previously stated
8 in the above matter.
9     I further certify that I am neither counsel for,
10 related to, nor employed by any of the parties to the action
11 in which this hearing was taken; and, further, that I am not
12 financially nor otherwise interested in the outcome of the
13 action.

14
15          [signature]

16          Echo Reporting, Inc., Transcriber

17              Friday, August 4, 2023

18
19
20
21
22
23
24
25