COOLEY LLP
BOBBY GHAJAR (198719)
(bghajar@cooley.com)
COLETTE GHAZARIAN (322235)
(cghazarian@cooley.com)
1333 2nd Street, Suite 400
Santa Monica, CA 90401
Telephone:    (310) 883-6400
Facsimile:    (310) 883-6500

MATTHEW BRIGHAM (191428)
(mbrigham@cooley.com)
3175 Hanover Street
Palo Alto, CA 94304-1130
Telephone:    (650) 843-5000
Facsimile:    (650) 849-7400

[*Full Counsel Listing on Signature Page*]

Attorneys for Plaintiff
Automated Pet Care Products, LLC d/b/a Whisker

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Automated Pet Care Products, LLC d/b/a Whisker, a Michigan corporation,<br><br>Plaintiff,<br><br>v.<br><br>PurLife Brands, Inc. d/b/a Smarty Pear, a Delaware corporation, and Chris Madeiras, an individual,<br><br>Defendants. | Case No. 3:22-cv-04261-VC (SK)<br><br>**PLAINTIFF WHISKER'S OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS AS TO PLAINTIFF'S '502 PATENT**<br><br>Hearing Date: September 14, 2023<br>Time: 10:00 a.m.<br>Courtroom: 4, 17th Floor<br>Judge: Hon. P. Casey Pitts<br><br>Motion Filed: August 10, 2023 |
| PurLife Brands, Inc. d/b/a Smarty Pear, a Delaware corporation, and Chris Madeiras, an individual,<br><br>Counterclaim-Plaintiffs,<br><br>v.<br><br>Automated Pet Care Products, LLC d/b/a Whisker, a Michigan corporation,<br><br>Counterclaim-Defendant. | |

# TABLE OF CONTENTS

**Page**

I.      Introduction ..................................................................................................... 1

II.     Background ...................................................................................................... 2

III.    Legal Standards .............................................................................................. 5

    A.      Rule 12(c) Motion ............................................................................... 5

    B.      35 U.S.C. § 101 Invalidity .................................................................. 6

IV.     Argument ........................................................................................................ 6

    A.      *Alice* Step 1: The '502 Patent Claims are Not Directed to an Abstract Idea. ......... 6

        1.      Defendants Oversimplify the '502 Patent Claims...................................... 6

        2.      The Claims are Directed to an Improvement on an Automated Litter Box, which is not Abstract. ........................... 8

        3.      Remotely Controlling and Monitoring a Device is Not Inherently Abstract. ....................... 9

    B.      *Alice* Step 2: The '502 Patent Claims Contains a Patent-Eligible Inventive Concept in its Ordered Combination of Elements ................ 10

        1.      The Recited Elements in the '502 Patent Claims were not "Well-Known" or "Conventional"........................ 10

        2.      The Asserted Claims Recite an Ordered Combination of Elements that Yields an Inventive Concept. ..................... 11

    C.      Defendants' 12(c) Motion is Premature as Material Factual Disputes Remain. ..................... 13

V.      Conclusion ................................................................................................... 15

COOLEY LLP
ATTORNEYS AT LAW

**WHISKER'S OPPOSITION TO MOT. FOR JUDGMENT ON THE PLEADINGS**
Case No. 3:22-cv-04261-VC (SK)

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*01 Communique Lab., Inc. v. Citrix Sys., Inc.*,
  151 F. Supp. 3d 778 (N.D. Ohio 2015) ................................................................. 10

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
  882 F.3d 1121 (Fed. Cir. 2018) .................................................................... 13, 14

*Adasa Inc. v. Avery Dennison Corp.*,
  55 F.4th 900 (Fed. Cir. 2022) ........................................................................ 8

*Alice Corp. v. CLS Bank Int'l*,
  573 U.S. 208 (2014) ................................................................... 6, 9, 10, 13

*Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*,
  841 F.3d 1288 (Fed. Cir. 2016) .................................................................... 12, 13

*Bascom Global Internet Servs., Inc. v. AT&T Mobility LLC*,
  827 F.3d 1341 (Fed. Cir. 2016) .................................................................... 11, 12

*Berkheimer v. HP Inc.*,
  881 F.3d 1360 (Fed. Cir. 2018) ............................................................ 6, 10, 11, 14

*CardioNet, LLC v. Infobionic, Inc.*,
  955 F.3d 1358 (Fed. Cir. 2020) ...................................................................... 7, 9

*Chamberlain Grp., Inc. v. Techtronic Indus. Co.*,
  935 F.3d 1341 (Fed. Cir. 2019) ....................................................................... 13

*Cooperative Entmt., Inc. v. Kollective Tech., Inc.*,
  50 F.4th 127 (Fed. Cir. 2022) ............................................................. 8, 12, 14, 15

*DDR Holdings, LLC v. Hotels.com, L.P.*,
  773 F.3d 1245 (Fed. Cir. 2014) ....................................................................... 11

*EcoServices LLC v. Certified Aviation Servs.*,
  830 F. App'x 634 (Fed. Cir. Oct. 8, 2020) ............................................................ 8, 9

*Forest Labs., Inc. v. United States*,
  476 F.3d 877 (Fed. Cir. 2007) ........................................................................ 5

*Freeny v. Fossil Grp., Inc.*,
  No. 2:18-cv-00049, 2019 WL 1089145 (E.D. Tex. Feb. 12, 2019) ....................................... 9

WHISKER'S OPPOSITION TO MOT. FOR
JUDGMENT ON THE PLEADINGS
Case No. 3:22-cv-04261-VC (SK)

COOLEY LLP
ATTORNEYS AT LAW

1

**TABLE OF AUTHORITIES**
(continued)

2

**Page(s)**

3

*Genetic Techs. Ltd. v. Merial L.L.C.,*
4
    818 F.3d 1369 (Fed. Cir. 2016)..................................................................................... 8

5

*Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.,*
    896 F.2d 1542 (9th Cir. 1990)....................................................................................... 5
6

*Helios Software, LLC v. SpectorSoft Corp.,*
7
    No. 12-081-LPS, 2014 WL 4796111 (D. Del. Sept. 18, 2014)................................... 9

8

*Hewlett Packard Co. v. ServiceNow, Inc.,*
    No. 14-cv-00570-BLF, 2015 WL 1133244 (N.D. Cal. Mar. 10, 2015).................... 7
9

10

*Internet Patents Corp. Active Network, Inc.,* 790 F.3d 1343, 1346 (Fed. Cir. 2015) .................... 7

11

*MacroPoint, LLC v. FourKites, Inc.,*
    No. 15-cv-1002, 2015 WL 6870118 (N.D. Ohio Nov. 6, 2015)............................... 7
12

13

*McRo, Inc. v. Bandai Namco Games Am. Inc.,*
    837 F.3d 1299 (Fed. Cir. 2016)....................................................................... 7, 9, 15

14

*Microsoft Corp. v. i4i Ltd. P'ship,*
15
    564 U.S. 91 (2011)........................................................................................................ 6

16

*Neochloris, Inc. v. Emerson Process Mgmt. LLLP,*
    140 F. Supp. 3d 763 (N.D. Ill. 2015) ......................................................................... 7
17

18

*Pantech Corp. v. LG Elecs.,*
    No. 5:22-cv-113-RWS-JBB (E.D. Tex. Aug. 21, 2023), ECF No. 153................... 7

19

*Samsung Elecs. Co. Ltd. v. Blaze Mobile,*
20
    No. 21-cv-02989-EJD, 2023 WL 3510380 (N.D. Cal. May 16, 2023)..................... 5

21

*SimpleAir, Inc. v. Google Inc.,*
    136 F. Supp. 3d 745 (E.D. Tex. 2015) ................................................................ 9, 13
22

23

*Thales Visionix Inc. v. United States,*
    850 F.3d 1343 (2017)................................................................................................... 8

24

*Vehicle Intelligence and Safety LLC v. Mercedes – Benz USA, LLC,*
25
    635 F. App'x 914 (Fed. Cir. Dec. 28, 2015) ........................................................... 10

26

*Wireless Media Innovations LLC v. Maher Terminals, LLC,*
    100 F. Supp. 3d 405 (D.N.J. 2015) ............................................................................ 7

27

28

-ii-
    **WHISKER'S OPPOSITION TO MOT. FOR JUDGMENT ON THE PLEADINGS**
Case No. 3:22-cv-04261-VC (SK)

COOLEY LLP
ATTORNEYS AT LAW

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

**Statutes**

35 U.S.C. § 101 ....................................................................................................... *passim*
35 U.S.C.§ 102 ......................................................................................................... 10, 11
35 U.S.C. §103 ......................................................................................................... 10, 11

**Other Authorities**

Rule 12 ...................................................................................................................... 15
Rule 12(b)(6) ............................................................................................................ 5, 14
Rule 12(c) ................................................................................................................. 2, 5, 15

COOLEY LLP
ATTORNEYS AT LAW

1

## I.    INTRODUCTION

Having already burdened the Court with one unsuccessful attack on the '502 patent, Defendants file yet another premature motion directed at the pleadings. Defendants' motion ignores Federal Circuit precedent in this complex area of patent law – patent eligibility. Defendants also improperly gloss over factual disputes that cannot be resolved on the pleadings. The extraordinary remedy of judgment on the pleadings is neither justified nor proper at this stage of the case.

Whisker's '502 patent describes an inventive and improved approach to self-cleaning litter boxes that allows a user to change conditions in the litter box, in real time, while away from home. A user can observe the current conditions of the litter box on a mobile device, including whether the cat is present, waste drawer is full, or the device is not working properly, and send instructions back to the litter box to begin a cleaning cycle, adjust the lighting, enter sleep mode, or perform a variety of other functions, all while traveling or at work. The claimed inventions are embodied by Whisker's own litter box products, which received industry praise for their novel approach and allowed users to avoid directly interacting with the litter box in the home. Defendants even picked up on this inventive concept by falsely touting their own infringing product in this case as the "first-ever app-connected self-cleaning litter box". Incredibly, Defendants' pre-litigation praise for the novelty of an app-connected litter box has now turned into a litigation-induced claim that the idea is so well-known as to be *abstract*. Defendants' motion should be denied.

To detract from the technological advances and inventive concepts included within the '502 patent, Defendants oversimplify the patent claims to focus on monitoring, controlling, and communicating functionalities. In determining invalidity under 35 U.S.C. § 101, the claims must be viewed in their entirety and this oversimplification ignores the complexity of the automated litter box system and advantages propounded by the patented invention. Even if the claims are simplified to the remote monitoring and controlling of the litter box, though, the '502 patent claims are directed to a technological improvement over prior litter box devices, which are not abstract. As demonstrated by the patent specification and public response, this remote functionality was missing in the industry and the '502 patent solved the technological problem of operating a litter box

1   remotely. The claims of the '502 patent are not directed to an abstract idea and, therefore, are not

2   invalid under Section 101.

3        The '502 patent claims are also patent-eligible as an ordered combination of elements that

4   recite an inventive concept. Automated litter boxes were not well-known or conventional at the

5   time of invention, and Whisker's prior, novel invention embodied in the '185 patent does not

6   demonstrate otherwise. The '185 patent's disclosure of the structural elements of an automated

7   litter box does not mean that automated litter boxes generally were conventional. Even if they were,

8   the unique combination of elements recited in the '502 patent demonstrates an inventive concept

9   beyond what was known in the art. Being able to receive detailed data on a mobile device from

10  sensors and the controller on the litter box, monitor the status of the litter box, and send instruction

11  signals on a variety of operations and conditions to the litter box to control its operation was an

12  inventive concept in the litter box industry. Accordingly, the '502 patent does not merely recite

13  well-known, routine, or conventional ideas; rather, it describes an inventive system and method of

14  operating an automated litter box from anywhere.  It was so inventive that Defendants decided to

15  copy it and claim they were the "first".

16       Lastly, Defendants' Rule 12(c) motion should be denied because Whisker's Complaint and

17  the '502 patent specification disclosures create factual disputes regarding whether the asserted

18  claims recite technological improvements and/or inventive concepts that were not well-known in

19  the industry. Because Whisker's factual allegations in its pleadings must be accepted as true, these

20  allegations demonstrate that the patented invention is a novel, technological improvement to

21  automated litter boxes and is not directed to an abstract idea. Whisker's factual allegations further

22  demonstrate there is nothing routine or conventional about its invention. Defendants' attorney

23  argument is insufficient to prove, by *clear and convincing evidence*, that the '502 patent is

24  something that was so well-known, routine, and conventional as to be abstract. Thus, Defendants'

25  Motion for Judgment on the Pleadings as to the validity of the '502 patent should be denied.

26  ## II.   BACKGROUND

27       U.S. Patent No. 11,399,502 (the "'502 patent") discloses a unique approach to automated

28  litter boxes that allows the user to remotely operate, interact with, and control the litter box which

COOLEY LLP
ATTORNEYS AT LAW

WHISKER'S OPPOSITION TO MOT. FOR
JUDGMENT ON THE PLEADINGS
CASE NO. 3:22-CV-04261-VC (SK)

can automatically dispose of a pet's waste. The claimed system is an intricate combination of structural elements—a litter box chamber, waste drawer, sensors, controller, communication module, interface, network—that can perform numerous functions including sending and receiving signals, interpreting signals, detecting conditions, determining positions, controlling operations, and sending instructions, among others. *See generally* '502 patent. As recited in claim 1, the patented invention includes wireless communication between a user device and the litter box's controller to change conditions of the litter box:

> 1. A device which is an automated litter device comprising:
>    a) a chamber configured to hold litter to allow an animal to enter and excrete a waste;
>    b) a waste drawer in communication with the chamber and configured to receive the waste;
>    c) one or more sensors configured to detect one or more conditions of the device and transmit one or more signals related to the one or more conditions;
>    d) a controller in communication with the one or more sensors and is adapted to receive the one or more signals, wherein the controller is configured to determine one or more positions of the chamber based on the one or more signals received from the one or more sensors and interpret the one or more signals as one or more status signals;
>    e) a communication module in communication with the controller and adapted to communicate with a user interface via a network to transmit the one or more status signals to the user interface, receive one or more instruction signals via the user interface, or both;
>        wherein the communication module is a wireless communication module and is in wireless communication with the user interface via the network; and
>        wherein the user interface is adapted to transmit the one or more instruction signals wirelessly to the controller via the network to change at least one of the one or more conditions of the device.

The concept of receiving data relating to an automated litter box's conditions and sending instructions to the automated litter box had never been done before. For example, when Whisker released its Litter-Robot, it was on the cutting edge of cloud-connected device technology. *See* Third Amended Complaint ("Am. Compl.") (Dkt. 115) at ¶¶ 14-15. As explained in the patent specification, an automated litter box "is generally a standalone device" and "a user typically needs to interface with a control panel located directly on the device to execute any operations of the device." '502 patent, 1:56-59. An automated litter box that allows a user to receive data and control the conditions and operations of the litter box remotely, however, allows the user to remain in

Whisker's Opposition to Mot. for
Judgment on the Pleadings
Case No. 3:22-cv-04261-VC (SK)

communication with and control the device while away on business or personal travel. *Id.* at 1:45-47. The ability to remotely receive information and control operations of the device provide additional benefits to a user, including:

> A user may want to temporarily pause operations of the device to avoid noise, allow for comfortable training of an animal to use the device, or both. A user may want to change one or more settings of a device for comfort of the animal, such as lighting within the device, a predetermined mass which recognizes a presence of an animal, or both. A user may even want to limit functionality of a control panel, so as to avoid other individuals, such as children, or animals from accidentally touching a control panel and changing one or more settings, initiating one or more cleaning cycles, turning the device off, or any combination thereof.

*Id.* at 1:59 – 2:3. Several years *after* the '502 patent was filed, Defendants themselves recognized the novelty of this idea by mistakenly advertising their own product as the "first-ever app connected self-cleaning litter box with Alexa and Google Voice controls." *See* Am. Compl., referencing Smarty Pear Press Release (Oct. 27, 2021), *available at* https://www.prnewswire.com/news-releases/smarty-pear-launches-first-ever-app-connected-self-cleaning-litter-box-with-alexa-and-google-voice-controls-301409876.html ("Press Release").

The '502 patent recites a complex technological system that enables a user to remotely monitor, communicate with, and operate an automated litter box. To carry out these functions, the '502 patent discloses a highly-technical system that includes sensors which can detect conditions of the litter box relating to a change in mass, amount of waste, presence of light, connection between parts of the device, general operating conditions of the device, and positions of the litter box chamber. '502 patent, 4:58-67, 5:7-16. Additionally, the invention includes a controller that communicates with the sensors to receive signals regarding the device's conditions and can also communicate with a user interface. *Id.* at 9:4-16, 9:18-21, 9:29-31. The patent specification further describes the communication module and network which allow for communication between the various devices in the system. *Id.* at 9:34-59, 10:55 – 11:3. Receiving and sending data involve interaction interfaces (APIs), which may store algorithms and transmit data (*id.* at 14:39-57, 16:30-32), and user interfaces, such as mobile phones, which "display information related to a litter device, receive user inputs related to the litter device, transmit information related to the litter

1    device, or any combination thereof." *Id.* at 15:63-67.

2        Users, who may be located far away from the litter box, can use the user interface to send

3    instruction signals to operate the automated litter box. *See id.* at 27:29-31. The operations of the

4    litter box which a user may remotely control via the user interface include "cleaning cycles, reset

5    cycles, sleep modes, wait modes, light modes, lockout modes, training modes, power modes, reset

6    modes, or any combination thereof." *Id.* at 27:49-53. The '502 patent specification describes these

7    modes and concludes "[i]t would be attractive to control one or more operations of an automated

8    litter device for comfort of a user, animal, or both." *Id.* at 2:25-27.

9        The claims of the '502 patent recite structural elements of the automated litter box itself,

10    which are also recited in another of Whisker's patents—U.S. Patent No. 9,433,185 (the "'185

11    patent")—which is incorporated by reference into the '502 patent. Like the '502 patent, the '185

12    patent recited a novel invention which included "an improved litter device for use by animals that

13    automatically removes animal waste from litter." '185 patent at 1:11-13. The '502 patent improved

14    upon this automated litter device by adding the technological elements discussed above, thereby

15    allowing a user to remain informed of the device's conditions and send instruction signals to the

16    device to control its operations while the user is away.

17    **III.    LEGAL STANDARDS**

18        **A.    Rule 12(c) Motion**

19        "Judgment on the pleadings is proper when the moving party clearly establishes on the face

20    of the pleadings that no material issue of fact remains to be resolved and that it is entitled to

21    judgment as a matter of law." *Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*, 896 F.2d

22    1542, 1550 (9th Cir. 1990); *see also Forest Labs., Inc. v. United States*, 476 F.3d 877, 881 (Fed.

23    Cir. 2007) (same).[1] When considering a 12(c) motion, "the allegations of the non-moving party

24    must be accepted as true[.]" *Hal Roach,* 896 F.2d at 1550. This includes accepting the factual

25    allegations as plead in Plaintiff's Complaint, including all documents cited therein, as true. *See*

26    *Samsung Elecs. Co. Ltd. v. Blaze Mobile*, No. 21-cv-02989-EJD, 2023 WL 3510380, at *4 (N.D.

27

28    _____
     [1] Defendants previously filed a Rule 12(b)(6) motion directed at the '502 Patent, which the Court denied.  Dkt. 56.

1   Cal. May 16, 2023). In a motion on the pleadings, the moving party must provide clear and

2   convincing evidence of its allegations of patent invalidity. *See Microsoft Corp. v. i4i Ltd. P'ship*,

3   564 U.S. 91 (2011).

4         **B.**     **35 U.S.C. § 101 Invalidity**

5        Patentable subject matter includes "any new and useful process, machine, manufacture, or

6   composition of matter, or any new and useful improvement thereof[.]" 35 U.S.C. § 101. Even

7   though "abstract ideas" are not patent-eligible, "[a]t some level," "all inventions . . . embody, use,

8   reflect, rest upon, or apply . . . abstract ideas." *Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208, 216-17

9   (2014) (internal citation and quotation marks omitted). To "distinguish between patents that claim

10   the buildin[g] block[s] of human ingenuity and those that integrate the building blocks into

11   something more," courts apply a two-step analysis. *Id.* at 217. (internal quotation marks omitted).

12   At step one, the Court determines whether the claim is "directed to" an abstract idea. *Id.* If so, at

13   step two, the Court "consider[s] the elements of each claim both individually and 'as an ordered

14   combination' to determine whether the additional elements 'transform the . . . claim' into a patent-

15   eligible application" of the idea. *Id.* (quoting *Mayo*, 566 U.S. at 78).

16   **IV.**    **ARGUMENT**

17        **A.**   *Alice* **Step 1: The '502 Patent Claims are Not Directed to an Abstract Idea.**

18        Defendants improperly over-generalize the '502 patent as being directed to remotely

19   monitoring and controlling a device and do not examine the claimed inventions as whole. The

20   patent claims and specification, however, describe a complex, technological system of operating

21   an automated litter device. Focusing on the actual claimed invention, the '502 patent recites a

22   technological improvement to an automated litter device, which is not an abstract idea. As such,

23   under *Alice* step one, the asserted claims are not directed to an abstract idea. The Court does not

24   even need to reach step two of the *Alice* analysis.

25          **1.**  **Defendants Oversimplify the '502 Patent Claims.**

26        Tellingly, Defendants' motion fails to include any detailed analysis of the patent claims

27   themselves, or choose a representative claim, choosing instead to rely on broad attorney

28   characterizations. *See Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018) (holding that

COOLEY LLP
ATTORNEYS AT LAW

WHISKER'S OPPOSITION TO MOT. FOR
JUDGMENT ON THE PLEADINGS
CASE NO. 3:22-CV-04261-VC (SK)

there must be a stated rationale for treating a claim as representative in a Section 101 motion); *see also* Ex. 1, Report and Recommendation at 8-9, *Pantech Corp. v. LG Elecs.*, No. 5:22-cv-113-RWS-JBB (E.D. Tex. Aug. 21, 2023), ECF No. 153. (holding Defendants failed to identify a representative claim and denying the motion with respect to the non-identified claims). The Federal Circuit has rejected such an approach requiring the court to look to the claims themselves and "their character as a whole." *McRo, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1312 (Fed. Cir. 2016) (internal quotation marks omitted) (quoting *Internet Patents Corp. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015)). The asserted claims recite a complex automated litter device including various structural limitations and devices that interact to allow a user to wirelessly receive information from and send instruction signals to the litter box to operate it remotely. *See, e.g.,* '502 patent, cl. 1; *see also id.*, cl. 5 (reciting specific operations that may be performed including cleaning cycles, reset cycles, sleep modes, wait modes, light modes, lockout modes, training modes, and/or power modes); *id.*, cl. 7 (reciting sensors and signals to indicate to the user's remote device when the waste level changes). As such, the asserted claims are not merely focused on "controlling," "monitoring," and "communicating."[2] Defs.' Mot. for Judgment on the Pleadings ("Defs.' Mot.") at 2, 3 n.3, 7. Rather, the claims, as a whole, are directed to a more intricate system that uses various pieces of hardware and software to allow a user to remotely operate a device and receive a plethora of data from that device regarding its conditions.

The '502 patent's written description lays out, at length, the various operations, conditions, signals, communication avenues, and types of data that are involved in the invention. Indeed, the specification details the use and function of sensors, controllers, communication modules, networks, APIs, user interfaces, and instruction signals inherent in carrying out the patented invention. *See, e.g.,* '502 patent at 4:58 – 5:16, 9:4-46, 10:55 – 11:3, 14:40-57, 15:63-67, 27:29 – 30:38. The written description is "helpful in illuminating what a claim is directed to." *CardioNet,*

---

[2] The cases upon which Defendants cite all relate to "the generic idea of monitoring and communicating information," as acknowledged by Defendants and, as such, are not instructive for the '502 patent. Defs.' Mot. at 8-9; *see also, e.g., Wireless Media Innovations LLC v. Maher Terminals, LLC*, 100 F. Supp. 3d 405 (D.N.J. 2015); *MacroPoint, LLC v. FourKites, Inc.*, No. 15-cv-1002, 2015 WL 6870118 (N.D. Ohio Nov. 6, 2015); *Neochloris, Inc. v. Emerson Process Mgmt. LLLP*, 140 F. Supp. 3d 763 (N.D. Ill. 2015); *Hewlett Packard Co. v. ServiceNow, Inc.*, No. 14-cv-00570-BLF, 2015 WL 1133244 (N.D. Cal. Mar. 10, 2015).

1   *LLC v. Infobionic, Inc.*, 955 F.3d 1358, 1368 (Fed. Cir. 2020) (internal quotation marks and citation

2   omitted). Here, the written description informs the claim scope which covers the automated

3   litterbox itself, different conditions and operations of the litter box, and the user's ability to receive

4   information and send instructions to control the litter box while away from the device itself.

5         Defendants' oversimplification of the claims ignores the complexity of the system, which

6   is what creates its novelty and non-abstractness. *See Cooperative Entmt., Inc. v. Kollective Tech.,*

7   *Inc.*, 50 F.4th 127, 131 (Fed. Cir. 2022) (explaining that the asserted claims incorporated "inventive

8   concepts not limited to the abstract idea"). Defendants' focus on the remote operation, monitoring,

9   and control of the device (*see* Defs.' Mot. at 7-12) fails to take into account the numerous other

10  elements, as explained above, that are ingrained in the patented invention and render it patent-

11  eligible. *See, e.g., Thales Visionix Inc. v. United States*, 850 F.3d 1343, 1348-49 (2017) ("the claims

12  are directed to systems and methods that use inertial sensors in a non-conventional manner . . .").

13  Thus, taken as a whole, the patented invention is directed to far more than an abstract idea.

14        **2.   The Claims are Directed to an Improvement on an Automated Litter Box,**
              **which is not Abstract.**

15  

16        "When considered as a whole, and in light of the written description" the '502 patent claims

17  "are directed to an improved system . . . and not to an abstract idea." *EcoServices LLC v. Certified*

18  *Aviation Servs.*, 830 F. App'x 634, 642 (Fed. Cir. Oct. 8, 2020). An "advance over the prior art" is

19  patent-eligible if it is a technological improvement over a non-abstract idea. *Genetic Techs. Ltd. v.*

20  *Merial L.L.C.*, 818 F.3d 1369, 1375 (Fed. Cir. 2016); *see also Adasa Inc. v. Avery Dennison Corp.*,

21  55 F.4th 900, 908 (Fed. Cir. 2022) ("If the focus of the claim is a specific and concrete technological

22  advance, for example an improvement to a technological process or in the underlying operation of

23  a machine, our inquiry ends and the claim is eligible."). The '502 patent recites an improvement to

24  an automated litter device, which is not abstract, that allows a user to remotely operate a litany of

25  functions on the device while also receiving detailed information from the device.

26        The specification explains the advantages of such a system. For example, the invention

27  allows a user who may be traveling to be kept abreast of the various conditions of the litter box

28  (waste level, light, pet presence, structural issues, etc.) and allows a user to correct any issues and

1    send instructions to the litter box in real time. The Federal Circuit has relied on these types of

2    advantages as described in a patent specification to be relevant to the determination of whether

3    claims are directed to a technical improvement as opposed to an abstract idea. *See EcoServices*, 830

4    F. App'x at 643; *see also CardioNet*, 955 F.3d at 1368-69. In *EcoServices*, in which the asserted

5    patent was directed to an automated washing system, the Federal Circuit found the concept of

6    remote operation to be a technological improvement in that "the human factor [was] minimized"

7    as much as possible in the operation of the device. 830 F. App'x at 654. As such, "[t]he systems of

8    the claims at issue achieve a level of automation that provides an improvement over the prior art"

9    and the claims were not held to be abstract under *Alice* step one. *Id.* at 642.

10       Similarly, here, the '502 patent claims allow a user to avoid interacting with the litter box

11   directly and provides for real-time automation of the litter box by sending device data to, and

12   receiving instructions from, a wireless user interface. These remote operations "perform a distinct

13   process to automate a task previously performed by humans" who had to interact with the

14   automated litter box directly and, thus, constitutes a patentable technological improvement. *McRO*,

15   837 F.3d at 1314. At base, the '502 patented invention provides a user with the ability to issue

16   instructions remotely, which improves the performance of the automated litter box.

17               **3.   Remotely Controlling and Monitoring a Device is Not Inherently Abstract.**

18       Even if the claimed invention were boiled down to the remote operation of the automated

19   litter device, that would still not render the '502 claims patent-ineligible. While it is true that courts

20   have found certain patents claiming remote functionalities to be abstract, the opposite is also true.

21   *See, e.g., Helios Software, LLC v. SpectorSoft Corp.*, No. 12-081-LPS, 2014 WL 4796111, at *17

22   (D. Del. Sept. 18, 2014) ("Here, the patents-in-suit are drawn to remotely monitoring data

23   associated with an Internet session and controlling network access . . . . [T]he Court cannot agree

24   with SpectorSoft that the patents-in-suit are drawn to an abstract idea"); *SimpleAir, Inc. v. Google*

25   *Inc.*, 136 F. Supp. 3d 745, 750 (E.D. Tex. 2015) (finding claims directed towards "using a central

26   broadcast server to package and transmit data from an online information source to remote

27   computing devices" patent-eligible) (internal quotation marks and citation omitted); *Freeny v.*

28   *Fossil Grp., Inc.*, No. 2:18-cv-00049, 2019 WL 1089145, at *5 (E.D. Tex. Feb. 12, 2019) (holding

claims "drawn to a single device that transmits an authorization code remotely over different wireless protocols" was not abstract); *01 Communique Lab., Inc. v. Citrix Sys., Inc.*, 151 F. Supp. 3d 778 (N.D. Ohio 2015) (holding a patent directed to remote Internet access was not abstract). Moreover, Defendants' cited cases regarding only remotely controlling or turning on or off a device are not applicable to the '502 patent which recites much greater technical functionality than simply turning the litter box on and off remotely. *See, e.g., Vehicle Intelligence and Safety LLC v. Mercedes – Benz USA, LLC*, 635 F. App'x 914, 916-17 (Fed. Cir. Dec. 28, 2015).

Defendants have not established that the '502 patent is directed to an abstract idea under *Alice* step one. The '502 patent claims, taken as a whole and read in light of the specification, recite a highly-complex automated litter box system that includes remote functionality which is an improvement over prior automated litter box devices. Accordingly, the Court need not advance to *Alice* step two as the claims are not invalid under 35 U.S.C. § 101.

**B.    *Alice* Step 2: The '502 Patent Claims Contains a Patent-Eligible Inventive Concept in its Ordered Combination of Elements**

To the extent the Court were to hold that the '502 patent is directed to an abstract idea, the asserted claims still contain an "inventive concept" which is sufficient to render the claimed invention patent-eligible. *Alice Corp.*, 573 U.S. at 217-18. The '502 patent is patent-eligible under *Alice* step two for two reasons: (1) the claims as a whole are directed to an inventive device that was not well-known or conventional; and (2) the asserted claims recite a unique, ordered combination of components—even if considered conventional—such that they claim an inventive concept. Thus, the '502 patent should not be deemed invalid under *Alice* step two.

**1.    The Recited Elements in the '502 Patent Claims were not "Well-Known" or "Conventional".**

There is no dispute that the '502 patent incorporates the '185 patent into its specification, including the '185 patent's recitation of the structural components of an automated litter device. That said, the existence of the '185 patent—even if it could qualify as prior art under 35 U.S.C.§§ 102 and/or 103—does not mean that the recited automated litter device was "well-understood, routine, and conventional". *Berkheimer*, 881 F.3d at 1369. As the Federal Circuit has explained: "Whether a particular technology is well-understood, routine, and conventional goes beyond what

was simply known in the prior art. ***The mere fact that something is disclosed in a piece of prior art, for example, does not mean it was well-understood, routine, and conventional***." *Id.* (emphasis added.)  At the time of the '502 patented invention, automated litter boxes, let alone litter boxes with the detailed features and functionality of the litter box in the asserted claims of the '502 patent, were not well-known in the industry and it was Whisker's own patented invention that disclosed the structure and functionality of the automated litter box. In its Complaint, Whisker explained in great detail about the novelty of its invention, including the fact that it was first to market, how its products were "wildly successful," and how Defendants sought to capitalize off of that success through willful infringement and false advertising tactics. Am. Compl. at ¶¶ 11-16, 27-65. These allegations, combined with Whisker's confidential sales figures, demonstrate that these devices were not "conventional" by the time of the '502 patent.

Simply put, Defendants' Motion should be denied because it improperly conflates an invalidity analysis under Section 101 with an invalidity analysis under Sections 102 and/or 103. Based purely on attorney argument, Defendants claim that the structural components of the automated litter box recited in the '502 patent must have been *well-known, routine,* and *conventional* merely because they were described in a *single* patent which it claims is prior art. This is not clear and convincing evidence of invalidity under Section 101. *See Bascom Global Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016) (holding that under a Section 103 analysis each element may have been known in the art, but "an inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces"); *Berkheimer.*, 881 F.3d at 1369 ("The mere fact that something is disclosed in a piece of prior art, for example, does not mean it was well-understood, routine, and conventional.").

### 2. The Asserted Claims Recite an Ordered Combination of Elements that Yields an Inventive Concept.

As Defendants aptly point out: "Determining whether a patent contains an inventive concept requires an evaluation of the particular combination of elements claimed in the patent." Defs.' Mot. at 13. The "ordered combination" of claim elements in the '502 patent renders it patentable because, even if it includes conventional components, the combination of those elements recites a non-

conventional use of an automated litterbox that overcomes known drawbacks. *See DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1259 (Fed. Cir. 2014) (holding claims patent-eligible that, as an ordered combination, are not a "routine or conventional use of the Internet"); *Bascom*, 827 F.3d at 1344 ("The [asserted] patent describes its invention as combining the advantages of the then-known filtering tools while avoiding their drawbacks.").

The '502 patent recites a unique combination of elements that, when taken together, overcome issues in the prior art. As noted in the specification, "an automated litter device is generally a standalone device, a user typically needs to interface with a control panel located directly on the device to execute any operations of the device." '502 patent at 1:56-59. The asserted claims allow a user to remotely operate the device, but receive all of the same information the user would have received if he were interfacing directly with it. This was not something previously done in the art by anyone other than Whisker. Defendants recognized this fact when they publicly (albeit improperly) claimed that they were the first to market an app-connected litter box, which begs the question: why would Defendants focus its advertising on a feature if it was such a well-known, routine, and conventional concept as they now claim? *See* Press Release. Defendants' pre-litigation actions are far more informative than the attorney argument in its motion.

The asserted claims recite a technological, "unconventional solution that was an improvement over the prior art." *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1303 (Fed. Cir. 2016). Even if automated litter boxes were "well-known," the asserted claims' ordering of elements "is a technical improvement over prior art." *Bascom*, 827 F.3d at 1350. Moreover, as described more fully in Part IV.A.2 *supra*, the '502 patent claims are directed to a technical improvement on the preexisting automated litter boxes. *See Cooperative Entmt.*, 50 F.4th at 135 ("useful improvements to computer networks are patentable regardless of whether the network is comprised of standard computing equipment").   Under Federal Circuit authority, therefore, Defendants' motion must be denied.

Looking past the prior art, Defendants focus on the '502 patent claims' recitation of allegedly "conventional" components, including a chamber, waste drawer, sensors, controller, wireless communication module, user interface, network, and processors. *See* Defs.' Mot. at 13-14.

Defendants' focus on these elements, however, misses the mark. "While some individual limitations arguably may be generic, others are unconventional and the ordered combination of these limitations yields and inventive concept sufficient to confer eligibility without undue preemption." *Amdocs*, 841 F.3d at 1303. Taken together, the asserted claims do not merely list conventional computer components; rather, they recite an ordered interaction of these components that yields a unique result: a remote user is able to receive real-time conditions of the litter box, determined by sensors and the controller and transmitted through a communication module, which the user considers when sending instruction signals back to the litter box to update or change its conditions. *See, e.g.,* '502 patent, cl. 1; *compare Chamberlain Grp., Inc. v. Techtronic Indus. Co.*, 935 F.3d 1341, 1348 (Fed. Cir. 2019) (holding that patent claims failed *Alice* step two where they described "the controller, the interface, and the wireless data transmitter" in a "generic way") *with SimpleAir*, 136 F. Supp. 3d at 752 (explaining that the Court must determine "whether the function performed by the computer at each step of the process is purely conventional").

The '502 patent claims recite an inventive concept of remotely operating an automated litter box by receiving real-time information and using that information to change the conditions of the litter box without having to interface directly with it. This was not a concept that was known in the prior art and the automated litter box itself was not even a well-known or conventional device. To the extent the '502 patent includes conventional components, the unique ordered combination of its claim elements transforms the claims into a patent-eligible invention under 35 U.S.C. § 101.

C.    **Defendants' 12(c) Motion is Premature as Material Factual Disputes Remain.**

Defendants' Motion should also be denied because, at a minimum, factual disputes remain as to whether the '502 patent claims a technological improvement and/or contains an inventive concept beyond what was well-known, routine, and conventional at the time of invention. The allegations in Whisker's complaint demonstrate the technological advantages and inventive concept of the '502 patent. *See generally* Dkts. 1, 39, 58, 115; *see also Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018) ("factual allegations, spelled out in the proposed second amended complaint, that, if accepted as true, establish that the claimed combination contains inventive components and improves the workings of a computer"). Whisker's

1  Complaint explains the benefits of its patented system, including automated cleaning, a specific

2  rotational design of the chamber that allows for cleaner litter, collection, storage, and transmission

3  of detailed data relating to the litter box, cat and time-of-flight sensors, and an app that can be used

4  by the user on a mobile device. Am. Compl. at ¶¶ 12-16, 21-23, 61-62. The Complaint further

5  describes the "innovations" of the '502 patent as being "particularly useful in remotely monitoring

6  and receiving signals from an automated litter device, and remotely controlling one or more

7  operations of an automated litter device." *Id.* at ¶ 23.

8          The Complaint further describes Whisker's practicing products and their success in the

9  industry, including in news articles, via awards, and through customer reviews. *Id.* at ¶¶ 19-20.

10  Defendants' Motion does nothing to challenge the veracity of the factual allegations in the

11  Complaint and, cannot, as these factual allegations must be accepted as true in a 12(c) motion. *See*

12  *Aatrix*, 882 F.3d at 1125. The innovative design, app, and functionality of the claimed automated

13  litter box, as described in the Complaint and patent specification, creates a disputed fact as to

14  whether the '502 patent claims a technological improvement on an automated litter box or claims

15  an inventive concept that was not well-known or conventional. *See Berkheimer*, 881 F.3d at 1369-

16  70 (holding it improper to make a Section 101 determination because "[t]he improvements in the

17  specification, to the extent they are captured in the claims, create a factual dispute regarding

18  whether the invention describes well-understood, routine, and conventional activities").

19          Defendants' own comments in the press about the novelty of the app—the remote

20  monitoring aspect of the '502 patent—undercuts Defendants' own argument and creates another

21  factual dispute as to whether the concept of remotely monitoring and operating a litter box was

22  well-known or conventional. *See* Press Release. "Whether something is well-understood, routine,

23  and conventional to a skilled artisan at the time of the patent is a factual determination."

24  *Berkheimer*, 881 F.3d at 1369; *see also Cooperative Entmt.*, 50 F.4th at 133 ("Determining whether

25  the claimed network is well-understood, routine, or conventional is a question of fact that cannot

26  be resolved at the Rule 12(b)(6) stage, and the district court erred in resolving this factual issue

27  against Cooperative"). As explained in Part IV.B.1 *supra*, the fact that the '185 patent discloses the

28  same structural automated litter box does not mean that this litter box was well-known, routine, and

conventional. Defendants have raised no factual allegations to suggest that automated litter boxes were well-known in the art, other than pointing to the '502 patent's incorporation of the '185 patent by reference which, alone, is not clear and convincing evidence. *See generally* Defs.' Mot. To properly raise such allegations, Defendants would likely have to rely on an expert to opine that these automated litter boxes were well-known in the art, which is improper at the Rule 12(c) stage. In sum, Whisker's allegations in the Complaint and statements in the patent specification support that the '502 patent claims a technological improvement and inventive concept which "are sufficient to preclude dismissal at the Rule 12 stage." *Cooperative Entmt.*, 50 F.4th at 135-36.

Moreover, Defendants' Motion consists entirely of broad attorney argument that fails to analyze the claims on a claim-by-claim basis. Although in a Section 101 analysis the claims must be examined in their totality, Defendants cherry pick specific concepts—monitoring, controlling, and communicating—from the claim language. When considering the claims "in their entirety," however, the claims are not abstract. *McRO*, 837 F.3d at 1312. Defendants do not highlight any representative claims or walk through each element, nor do they specifically analyze any of the dependent claims. *See generally* Defs.' Mot. On the other hand, dependent claim 5, for example, details the ways in which a user may instruct the litter box to perform different operations by transmitting instruction signals telling the litter box to perform a cleaning cycle, reset cycle, sleep mode, wait mode, light more, lockout mode, training mode, or power mode. '502 patent, cl. 5. Defendants do not attempt to explain why these technological innovations are not abstract or how these claims do not recite inventive concepts. As such, factual disputes remain as to whether the asserted claims (individually and in their entirety) are, in fact, abstract or recite inventive concepts that, when considered as a whole, are not well-known, routine, or conventional. Defendants' Motion should be denied.[3]

V.   **CONCLUSION**

For the foregoing reasons, Defendants' Motion for Judgment on the Pleadings as to Plaintiff's '502 Patent should be denied.

---

[3] To the extent the Court considers granting Defendants' Motion, Whisker respectfully requests it be given leave to amend its Complaint to provide additional allegations regarding the technological innovations afforded by the '502 patent.

1

Dated:  August 24, 2023

COOLEY LLP

2

By: */s/ Matthew Brigham*

3

BOBBY GHAJAR (198719)
(bghajar@cooley.com)

4

COLETTE GHAZARIAN (322235)
(cghazarian@cooley.com)

5

1333 2nd Street, Suite 400
Santa Monica, CA 90401

6

Telephone:   (310) 883-6400
Facsimile:    (310) 883-6500

7

MATTHEW BRIGHAM (191428)
(mbrigham@cooley.com)

8

3175 Hanover Street
Palo Alto, CA 94304-1130

9

Telephone:    (650) 843-5000
Facsimile:    (650) 849-7400

10

11

STEPHEN SMITH *[Pro hac vice]*
(stephen.smith@cooley.com)

12

BETH SHRIEVES *[Pro hac vice]*
(bshrieves@cooley.com)

13

1299 Pennsylvania Avenue, NW, Suite 700
Washington, DC 20004

14

Telephone:   (202) 776-2196
Facsimile:    (202) 842-7899

15

*Attorneys for Plaintiff*

16

Automated Pet Care Products, LLC d/b/a
Whisker

17

18

19

20

21

22

23

24

25

26

27

28