**MCCAULLEY LAW GROUP LLC**
JOSHUA V. VAN HOVEN (CSB No. 262815)
E-Mail: josh@mccaulleylawgroup.com
3001 Bishop Dr., Suite 300
San Ramon, California 94583
Telephone: (925) 302-5941

RICHARD T. MCCAULLEY (*pro hac vice*)
E-Mail: richard@mccaulleylawgroup.com
180 N. Wabash Avenue, Suite 601
Chicago, Illinois 60601
Telephone: (312) 330-8105

Attorneys for Defendants, Counterclaim-Plaintiffs

PURLIFE BRANDS, INC., d/b/a SMARTY PEAR,
and CHRISTOPHER MADEIRAS

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| Automated Pet Care Products, LLC d/b/a Whisker, a Michigan corporation,<br><br>    Plaintiff and Counterclaim-Defendant,<br><br>v.<br><br>PurLife Brands, Inc. d/b/a Smarty Pear, a Delaware corporation, and Chris Madeiras, an individual,<br><br>    Defendants and Counterclaim-Plaintiffs | Case No. 5:22-cv-04261-PCP<br><br>Defendants' Smarty Pear and Christopher Madeiras' Reply ISO Motion for Judgment on the Pleadings as to the '502 patent<br><br><br>Hearing: October 12, 2023<br><br>Time: 10:00 AM<br>Courtroom 8, 4th Floor<br>Judge: Hon. P. Casey Pitts |

i    Smarty Pear and Madeiras' Reply ISO
Mtn. for Judgment on the Pleadings
Case No. 5:22-cv-04261-PCP

# **TABLE OF CONTENTS**

Page

I. INTRODUCTION ………………………………………………………………………. 1

II. *ALICE* STEP ONE –THE PURPORTED "ADVANCE OVER THE PRIOR ART" IS AN ABSTRACT IDEA ………………….. …………………………………………….… 1

    A. Whisker Improperly Focuses on the Specification Instead of the Claims……….. 1

    B. The '185 Patent is Most Certainly Prior Art, as are the Other Incorporated Patents and the Applicant Admitted Prior Art of the '502 patent's BACKGROUND Section ……………………………………………………………..……. 2

    C. *Alice* Step 1 Requires an Assessment of "The Advance Over the Prior Art" – which in this Case is "Remotely Controlling and Monitoring" the Known Prior Art Systems ……………………………………………………….……….... 3

    D. "Remotely Controlling and Monitoring" the Prior Art Systems is an Abstract Idea ……………………………………………………………….…………… 4

III. *ALICE* STEP TWO – ADDING OFF-THE-SHELF WIRELESS CONNECTIVITY TO A KNOWN PRODUCT CANNOT SUPPLY AN INVENTIVE CONCEPT ……….…… 7

    A. Every Element of the Asserted Claims of the '502 Patent is Well Known and Conventional ……………………………………………………………….. 7

    B. The '502 patent Merely Adds Off-The-Shelf Wireless Connectivity to the Conventional Device – There is no Inventive "Ordered Combination" ………... 8

    D. Whisker's Attempt to Manufacture a Factual Dispute also Fails ……...……….. 9

IV. CONCLUSION………………………………………………………..……………… 10

ii     Smarty Pear and Madeiras' Reply ISO
Mtn. for Judgment on the Pleadings
Case No. 5:22-cv-04261-PCP

# TABLE OF AUTHORITIES

Page(s)

*01 Communique Lab., Inc. v. Citrix Sys., Inc.*, 151 F. Supp. 3d 778 (N.D. Ohio 2015) ................................................................................................ 6

*Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121 (Fed. Cir. 2018) ..................................................................................... 10

*Adasa Inc. v. Avery Dennison Corp.*, 55 F.4th 900 (Fed. Cir. 2022) ............................................................................................. 5

*BASCOM Glob. Internet Servs. v. AT&T Mobility LLC*, 827 F.3d 1341 (Fed. Cir. 2016) ............................................................................... 8, 9

*Berkheimer v. HP Inc.*, 881 F.3d 1360 (Fed. Cir. 2018) .............................................................................. 8, 10

*Coop. Entm't, Inc. v. Kollective Tech., Inc.*, 50 F.4th 127 (Fed. Cir. 2022) ........................................................................................ 10

*DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245 (Fed. Cir. 2014) ..................................................................................... 9

*EcoServices LLC v. Certified Aviation Servs.*, 830 F. App'x 634 (Fed. Cir. Oct. 8, 2020) .................................................................... 5

*Ericsson Inc. v. TCL Commun. Tech. Holdings Ltd.*, 955 F.3d 1317 (Fed. Cir. 2020) ..................................................................................... 1

*Freeny v. Fossil Grp., Inc.*, No. 2:18-CV-00049-JRG-RSP, 2019 U.S. Dist. LEXIS 36688 (E.D. Tex. Feb. 12, 2019) ..................................................... 6

*In re Cohen*, No. 2018-1609, 767 Fed. Appx. 985 (Fed. Cir. May 1, 2019) ............................................................... 3

*McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299 (Fed. Cir. 2016) ..................................................................................... 6

*Helios Software, LLC v. Spectorsoft Corp.*, No. 12-081-LPS, 2014 U.S. Dist. LEXIS 135379 (D. Del. Sep. 18, 2014) ................................................. 6

*People.ai, Inc. v. Clari Inc.*, Nos. 2022-1364, 2023 U.S. App. LEXIS 8294 (Fed. Cir. Apr. 7, 2023) .......................................... 8

*Qualcomm Inc. v. Apple Inc.*, 24 F.4th 1367 (Fed. Cir. 2022) ...................................................................................... 3

*SimpleAir, Inc. v. Google Inc.*,

iii   Smarty Pear and Madeiras' Reply ISO
Mtn. for Judgment on the Pleadings
Case No. 5:22-cv-04261-PCP

136 F. Supp. 3d 745 (E.D. Tex. 2015) .................................................................................. 6

*Thales Visionix Inc. v. United States*,
 850 F.3d 1343 (2017) ........................................................................................................ 5

*Trinity Info Media, LLC v. Covalent, Inc.*,
 72 F.4th 1355 (Fed. Cir. 2023) ......................................................................................... 8

35 U.S.C. § 101 ....................................................................................................................... 10

35 U.S.C. § 102 ......................................................................................................................... 2

iv   Smarty Pear and Madeiras' Reply ISO
Mtn. for Judgment on the Pleadings
Case No. 5:22-cv-04261-PCP

I.    INTRODUCTION

Whisker's Opposition pulls out all the stops in an attempt to save the '502 patent from an early *Alice* dismissal. But try as it might, adding "wireless" communication and a remote "user device" to a conventional product in 2018 – without even changing the conventional product other than adding wireless – is a textbook, unpatentable abstract idea lacking any inventive concept.

II.   *ALICE* STEP ONE –THE PURPORTED "ADVANCE OVER THE PRIOR ART" IS AN ABSTRACT IDEA

Whisker asserts that "the claims, as a whole, are directed to a more intricate system that uses various pieces of hardware and software to allow a user to remotely operate a device and receive a plethora of data from that device regarding its conditions." Dkt. 117 at p. 7. Yet, Whisker never identifies what is "intricate" in the system as **claimed**, which recites generic components combined at a high level of generalization. Where, as here, the only purported advance over the prior art is remotely monitoring and controlling the prior art device, the claims are directed to an abstract idea.

A.    Whisker Improperly Focuses on the Specification Instead of the Claims

Whisker repeatedly relies on the '502 patent specification or "the '502 patent" to support the proposition that the '502 claims are directed to a "complex," "intricate," or "highly-complex automated litter box." Dkt. 117 at pp. 6-10. Attempting to import complexity into the claims from unclaimed aspects of the specification, Whisker hopes to save its claims. This is clearly improper: "While the specification may be 'helpful in illuminating what a claim is directed to . . . the specification must always yield to the claim language' when identifying the 'true focus of a claim.'" *Ericsson Inc. v. TCL Commun. Tech. Holdings Ltd.*, 955 F.3d 1317, 1325 (Fed. Cir. 2020) (quoting *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 766 (Fed. Cir. 2019)).

The only asserted independent claim includes no such "complexity" and instead claims a generic "chamber," "waste drawer," "one or more sensors," and "controller," as well as a "wireless

communication module" "to communicate with a user interface via a network." '502 patent at claim 1. In the sections below, Smarty Pear will address the claim language rather than unclaimed (and unidentified) "highly-complex" embodiments purportedly in the specification.

    B.    <u>The '185 Patent is Most Certainly Prior Art, as are the Other Incorporated Patents and the Applicant Admitted Prior Art of the '502 patent's BACKGROUND Section</u>

In one instance, Whisker attempts to identify actual claim language in support of its "complex automated litter box" argument, *i.e.*, in a parenthetical summarizing claims 5 and 7. Dkt. 117 at p. 7 (relying on "cleaning cycles, reset cycles, sleep modes, wait modes, light modes, lockout modes, training modes, and/or power modes" and "sensors and signals to indicate to the user's remote device when the waste level changes"). However, Whisker does not dispute that this subject matter was part of the prior art such as the '185 Patent.[1] *See id.* at p. 5 (admitting that the "structural elements of the automated litter box itself . . . are also recited in another of Whisker's patents —U.S. Patent No. 9,433,185"). Instead, Whisker misleadingly insinuates that the '185 Patent isn't prior art at all. *E.g.*, Dkt. 177 at p. 10 ("[T]he '185 patent—even if it could qualify as prior art under 35 U.S.C.§§ 102 and/or 103 . . . ."), p. 11 (describing the '185 Patent as a "a *single* patent which [Smarty Pear] claims is prior art (emphasis in original)).

To be clear, the '185 Patent is undeniably prior art to the '502 patent for all purposes, without regard to whether it is Whisker's patent or incorporated by reference. Under 35 U.S.C. § 102, a patent is prior art to another patent or application if, *inter alia*, "the claimed invention was patented . . . before the effective filing date of the claimed invention[.]" 35 U.S.C. § 102(a)(1). Here, the '185 Patent issued on September 6, 2016, over a year and eight months before the first

---

[1] *E.g.*, '185 Patent at 4:61-66 ("The control panel may include a reset button, a cleaning cycle button, an empty button, an on/off Switch, a waste level indicator, an advance button to partially rotate the chamber, a light sensor, or a combination thereof.").

        2        Smarty Pear and Madeiras' Reply ISO
Mtn. for Judgment on the Pleadings
Case No. 5:22-cv-04261-PCP

possible "effective filing date" for the '502 patent, which is May 31, 2018. *Compare* '185 patent Cover Page at "Date of Patent" with '502 patent Cover Page at "Related U.S. Application Data."

Similarly, the other two cited patents in the '502 patent "BACKGROUND" section– U.S. Patent No. 6,463,881 (the "'881 Patent") and 8,757,094 (the "094 Patent") – as well as the applicant admitted prior art ("AAPA) of the "BACKGROUND" itself, are also indisputably known prior art technology. *See* McCaulley Decl. Ex. 1 (providing an Oct. 15, **2002**, issue date for the '881 Patent); McCaulley Decl. Ex. 2 (providing a June 24, 2014, issue date for the '094 Patent); *Qualcomm Inc. v. Apple Inc.*, 24 F.4th 1367, 1369 (Fed. Cir. 2022) (describing as "applicant admitted prior art (AAPA)" the "statements in the challenged patent acknowledging that most of the limitations of the patent's claims were already known"); *In re Cohen*, No. 2018-1609, 767 Fed. Appx. 985, 987 (Fed. Cir. May 1, 2019) (describing the "'Background of the Invention' section of the specification" as "the applicant-admitted prior art"). This prior art also includes the structural claim limitations of the '502 patent. For example, a word search for "chamber" from the 2002-issued '881 Patent has 342 results, a "drawer" or "waste drawer" has 9 results, a "sensor" has 33 results, and a "controller" has 40 results. *See generally* '881 Patent, McCaulley Decl. Ex. 1.

C. <u>*Alice* Step 1 Requires an Assessment of "The Advance Over the Prior Art" – which in this Case is "Remotely Controlling and Monitoring" the Known Prior Art Systems</u>

Although Whisker pays lip service to the principle that the "directed to" inquiry focuses on "the advance over the prior art" (Dkt. 117 at p. 8), it relies almost exclusively on unclaimed language found in the specification to show such an advance. *Id.* at pp. 8-9. Whisker nonetheless criticizes Smarty Pear for supposedly "fail[ing] to include any detailed analysis of the patent claims themselves" (Dkt. 117 at p. 6), while ignoring that Smarty Pear specifically addressed and accurately described the claims and their elements – *i.e.*, a prior art automated litter box with conventional wireless communications to remotely control and monitor the litter box. Dkt. 109 at

pp. 2-3, 10-11, 13. In any event, the illustration below presents the '502 patent's claim 1 with the prior art structural elements grayed out and the purportedly new elements in bold:

1. A device which is an automated litter device comprising:

    a) a chamber configured to hold litter to allow an animal to enter and excrete a waste;

    b) a waste drawer in communication with the chamber and configured to receive the waste;

    c) one or more sensors configured to detect one or more conditions of the device and transmit one or more signals related to the one or more conditions;

    d) a controller in communication with the one or more sensors and is adapted to receive the one or more signals, wherein the controller is configured to determine one or more positions of the chamber based on the one or more signals received from the one or more sensors and interpret the one or more signals as one or more status signals;

    e) **a communication module** in communication with the controller and **adapted to communicate with a user interface via a network** to transmit the one or more status signals to the user interface, receive one or more instruction signals via the user interface, or both;

      **wherein the communication module is a wireless communication module and is in wireless communication with the user interface via the network**; and

      wherein the user interface is adapted to transmit the one or more instruction signals **wirelessly to the controller** via the network to change at least one of the one or more conditions of the device.

As Smarty Pear detailed in its opening brief, in light of the actual claim language, the advancement over the prior art that the '502 patent is directed to is remote monitoring and controlling the known automated litter box device, and the '502 patent even concedes as much.[2] *E.g.*, Dkt. 109 at p. 2-3 and 7-12. Although Whisker attempts to cast the claims as "complex" and

---

[2] Of note, the above claim includes no technological improvements to the underlying conventional wireless technology that is added on to the prior art automated litter box, claiming "wireless communication" over a "network" at the highest level of generality. This is demonstrated by the dependent claims, which are limited to off-the-shelf wireless protocols such as "Wi-Fi" and "Bluetooth," user interface devices such as "mobile phones," "tablets," or "a mobile computer," and a network such as "the internet." *See* '502 patent at claims 2-4 and 6.

"intricate," it eventually agrees with Smarty Pear on the purported advancement of the '502 patent, albeit with more verbose language: "[H]ere, the '502 patent claims allow a user to avoid interacting with the litter box directly and provides for real-time automation of the litter box by sending device data to, and receiving instructions from, a wireless user interface." Dkt. 117 at p. 9.

### D. "Remotely Controlling and Monitoring" the Prior Art Systems is an Abstract Idea

Smarty Pear's opening brief cited numerous cases conclusively demonstrating that applying off-the-shelf computing and wireless technology to prior art devices is among the most common instances for invalidating patents under *Alice* and Section 101. Dkt. 109 at pp. 6-12. Whisker largely ignores Smarty Pears cited cases, instead combing through the hundreds of Section 101/*Alice* decisions to find factually inapposite cases where patent eligibility was upheld or put off for later consideration. Such cases generally fall into two categories, as described below.

<u>First</u>, Whisker relies upon a number of cases where the claims recited essential structural elements that were themselves new or were operated in a new manner, and thus part of the advance over the prior art. *E.g.*, *Thales Visionix Inc. v. United States*, 850 F.3d 1343, 1348-49 (2017) ("[T]he claims are directed to systems and methods that use inertial sensors in a non-conventional manner to reduce errors in measuring the relative position and orientation of a moving object on a moving reference frame."); *EcoServices LLC v. Certified Aviation Servs.*, 830 F. App'x 634, 642 (Fed. Cir. Oct. 8, 2020) ("[T]he claims are directed to a specific system that improves jet engine washing[.]"); *Adasa Inc. v. Avery Dennison Corp.*, 55 F.4th 900, 908 (Fed. Cir. 2022) (noting that claim 1 was "directed to a specific, hardware based RFID serial number data structure designed to enable technological improvements to the commissioning process"). It is undisputed that no such technological improvements to the prior art automated litter devices are at issue here; rather, the wireless interface merely allows prior art components to perform prior operations remotely.

Second, Whisker's "remote communications" cases all involved instances where the patent claims actually modified and improved the underlying remote communication technology.[3] *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1314 (Fed. Cir. 2016) (unlike the present case where the underlying litter box is the prior art, "[d]efendants provided no evidence that the process previously used by animators is the same as the process required by the claims" in part because "the background section of the patents . . . makes no suggestion that animators were previously employing the type of rules required by claim 1"); *SimpleAir, Inc. v. Google Inc.*, 136 F. Supp. 3d 745, 750 (E.D. Tex. 2015) (unlike the present case where old wireless technology is generally claimed, the patent challenger "ignore[d] significant claim limitations as to how 'packaging and transmitting information'" was performed); *Freeny v. Fossil Grp., Inc.*, No. 2:18-CV-00049-JRG-RSP, 2019 U.S. Dist. LEXIS 36688, at *13-14 (E.D. Tex. Feb. 12, 2019) (first noting that "the patent claims priority to 1999 and there are disputes between the parties as to what was conventional and well understood in the art at that time" and concluding that the claims "overcome a problem specifically arising in the realm of computer networks"); *01 Communique Lab., Inc. v. Citrix Sys., Inc.*, 151 F. Supp. 3d 778 (N.D. Ohio 2015) ("[C]laim 24 describes a 'particular approach' to solving problems with prior art remote access patents that could only exist in a post-Internet world, utilizing a 'location facility' that creates the private communication portal between the personal and remote computers in a specific way[.]"). Here, it is undisputed the claims do not improve remote communication technology, but instead add the well-known and routine

---

[3] The unpublished 2014 decision in *Helios Software, LLC v. Spectorsoft Corp.* merely held that that the patent challenger "has provided no support for [the] position" that specific operations "were principles fundamental to the ubiquitous use of the Internet or computers generally[,]" No. 12-081-LPS, 2014 U.S. Dist. LEXIS 135379, at *54 (D. Del. Sep. 18, 2014). Here, the claimed wireless technologies and user devices were certainly "fundamental and ubiquitous" by 2018.

activities of conventional wireless systems (such as Bluetooth and WiFi) and user devices (such as mobile phones and tablets) to the known prior art automated litter box.

### III.   *ALICE* STEP TWO – ADDING OFF-THE-SHELF WIRELESS CONNECTIVITY TO A KNOWN PRODUCT CANNOT SUPPLY AN INVENTIVE CONCEPT

Smarty Pear's opening brief and the caselaw cited therein conclusively demonstrate that merely relocating a preexisting user interface from the outside of a preexisting automated litter box to a well-known remote "user device" (*e.g.*, a smart phone application) via conventional wireless transmission techniques (*e.g.*, WiFi or Bluetooth) did not provide an inventive concept as of 2018 when the first priority application for the '502 patent was filed. Dkt. 109 at pp. 12-15. Whisker attempts three arguments to save its claims, each of which fails as discussed below.

    A.    <u>Every Element of the Asserted Claims of the '502 Patent is Well Known and Conventional</u>

Despite acknowledging the fact that the prior art "'185 Patent recit[es] the structural components of an automated litter device[,]" Whisker nonetheless argues that this "does not mean that the recited automated litter device was 'well-understood, routine, and conventional.'" Dkt. 117 at p. 10. Notably, Whisker makes no attempt to demonstrate that any of the claim elements including the purportedly new and inventive wireless communication technique were not well-understood, routine, and conventional. *Id.* at pp. 10-11. As for the claim elements of the known prior art automated litter boxes, Whisker fails to identify any claim language that is not conventional, and instead generally alludes to "detailed features and functionality." *Id.* at p. 11. However, as detailed in §§ II(B)-(C) *supra*, the '502 patent does not claim the automated litter box in detail and the generically claimed elements such as a "chamber," "waste drawer," "sensor," and "controller" were previously described and disclosed in detail at least as early as the '881 Patent, which **issued in 2002**. Nor can Whisker use its Complaint to show that the claimed components of the prior-art automated litter boxes were non-conventional. The story Whisker's Complaint tells

7    Smarty Pear and Madeiras' Reply ISO
Mtn. for Judgment on the Pleadings
Case No. 5:22-cv-04261-PCP

is of an "automatic barrel sifting litter box" that was "**launched in April 2000**." Dkt. 115 at ¶ 11 (emphasis added). "The first automatic barrel-sifting litter box, the LITTER-ROBOT product harnessed rotation, and gravity to separate waste from clean litter and disperse it in a fully-enclosed waste drawer." *Id.* at ¶ 13. And according to the Complaint, this product was incredibly well known for the 18 or so years before Whisker filed for the '502 patent. *Id.* at ¶¶ 19-20.

Because Whisker has not identified any purportedly non-conventional claim elements, Whisker's citation to the general maxim that "[t]he mere fact that something is disclosed in a piece of prior art . . . does not mean it was well-understood, routine, and conventional" is of no avail here. *See Berkheimer v. HP Inc.*, 881 F.3d 1360, 1369 (Fed. Cir. 2018) (rejecting claim under Section 101 where "it does not recite any of the purportedly unconventional activities disclosed in the specification"); *BASCOM Glob. Internet Servs. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016) ("The claims do not merely recite the abstract idea of filtering content along with the requirement to perform it on the Internet, or to perform it on a set of generic computer components. Such claims would not contain an inventive concept.").

B. <u>The '502 Patent Merely Adds Off-The-Shelf Wireless Connectivity to the Conventional Device – There is no Inventive "Ordered Combination"</u>

Although Whisker generally recites the "ordered combination" portion of *Alice* step 2, it ignores that the "ordered combination" must itself be a unique arrangement of the conventional elements. *Compare* Dkt. 117 at pp. 12-13; *with Trinity Info Media, LLC v. Covalent, Inc.,* 72 F.4th 1355, 1366 (Fed. Cir. 2023) (rejecting "ordered combination" argument where "the asserted claims are organized in an expected way"); *People.ai, Inc. v. Clari Inc.*, Nos. 2022-1364, 2022-1366, 2023 U.S. App. LEXIS 8294, at *35 (Fed. Cir. Apr. 7, 2023) ("The ordered combination of steps, which matches the ordered combination of steps traditionally practiced by people manually, are themselves part of the abstract idea and cannot supply the inventive concept" (citation omitted)).

In discussing the "ordered combination", Whisker does not contend that it modified the prior art litter box elements in any unique way, but instead repeats the conclusory argument that the claimed automated litter box components were not conventional. Dkt. 117 at pp. 12-13. Whisker's assertion is neither genuine nor credible. *See* § III(A), *supra*. Whisker's attempt to recast the wireless communication aspect of the claims as providing a unique ordered combination reveals a fundamental flaw in its argument: "The asserted claims allow a user to remotely operate the device, but **receive all of the same information the user would have received if he were interfacing directly with it**." Dkt. 117 at p. 12 (emphasis added). In other words, consistent with the admissions in the "Background" section of the '502 patent, the information provided to a remote "user device" via a "wireless" connection and a "network" as claimed was previously provided at a user interface on the prior art automated litter box. '502 patent at 1:56-2:3 (explaining that "a user typically needs to interface with a control panel located directly on the device to execute any operations of the device" and listing user interface functions). This preexisting local user interface was simply replaced with conventional wireless connectivity such as WiFi to a generic remote user device such as a smart phone, in 2018 at the earliest. Accordingly, none of the cases cited by Whisker – all of which modified to the ordering of conventional components or steps– are applicable here. *See, e.g., DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1258 (Fed. Cir. 2014) (claims "do not broadly and generically claim 'use of the Internet'" but instead "overrides the routine and conventional sequence of events ordinarily triggered by the click of a hyperlink"); *BASCOM*, 827 F.3d at 1350 ("As is the case here, an inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces.").

C.   Whisker's Attempt to Manufacture a Factual Dispute also Fails

Finally, Whisker attempts to create a factual dispute based on irrelevant allegations of the Complaint. But the *Berkheimer* line of cases does not stand for the proposition that generalized

allegations about how great a product is exempt a patent from early dismissal. Rather, the allegations of the Complaint – typically backed by an expert declaration – must address specific claim elements and explain how and why their arrangement was non-conventional to create genuine factual disputes sufficient to avoid early dismissal. *E.g.*, *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1127 (Fed. Cir. 2018) ("These allegations suggest that the claimed invention is directed to an improvement in the computer technology itself and not directed to generic components performing conventional activities."). The broad, self-serving praise Whisker heaps its own products, and even third-party praise, provide no specific technical description whatsoever to support the proposition that as of 2018 any component of the preexisting automated litter box and wireless technology was unknown or unconventional, or that the claims of the '502 patent arrange these conventional generic components in a unique ordered combination. As detailed in §§ III(A)-(B), *supra*, the Complaint and the '502 patent in fact support the proposition that the '502 patent lacks an inventive concept. Absent specific technical allegations of non-conventional claim elements in the Complaint, the cases cited by Whisker have no bearing on the present facts. *Berkheimer*, 881 F.3d at 1370 ("according to the specification, [the claimed subject matter] provides benefits that improve computer functionality."); *Coop. Entm't, Inc. v. Kollective Tech., Inc.*, 50 F.4th 127, 133 (Fed. Cir. 2022) (finding that the claim "recites a particular arrangement of peer nodes for distributing content 'outside controlled networks and/or [CDNs]' . . . **which did not exist in the prior art**" (emphasis added)).

IV.   **CONCLUSION**

For the foregoing reasons, Smarty Pear asks that its Rule 12(c) motion for judgment on the pleadings be granted and that the '502 patent be found invalid under 35 U.S.C. § 101.

| | |
|---|---|
| Dated: August 31, 2023 | **MCCAULLEY LAW GROUP LLC** |
| | By: _/s/ Richard T. McCaulley_<br>RICHARD T. MCCAULLEY (*pro hac vice*)<br>E-Mail: richard@mccaulleylawgroup.com<br>180 N. Wabash Avenue, Suite 601<br>Chicago, Illinois 60601<br>Telephone: (312) 330-8105<br><br>JOSHUA V. VAN HOVEN (CSB No. 262815)<br>E-Mail: josh@mccaulleylawgroup.com<br>3001 Bishop Dr., Suite 300<br>San Ramon, California 94583<br>Telephone: (925) 302-5941<br><br>Attorneys for Defendants, Counterclaim-Plaintiffs<br><br>PURLIFE BRANDS, INC., d/b/a SMARTY PEAR, and CHRISTOPHER MADEIRAS |