**MCCAULLEY LAW GROUP LLC**
JOSHUA V. VAN HOVEN (CSB No. 262815)
E-Mail: josh@mccaulleylawgroup.com
3001 Bishop Dr., Suite 300
San Ramon, California 94583
Telephone: (925) 302-5941

RICHARD T. MCCAULLEY (*pro hac vice*)
E-Mail: richard@mccaulleylawgroup.com
180 N. Wabash Avenue, Suite 601
Chicago, Illinois 60601
Telephone: (312) 330-8105

Attorneys for Defendants,
PURLIFE BRANDS, INC., d/b/a SMARTY PEAR,
and CHRIS MADEIRAS

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| Automated Pet Care Products, LLC d/b/a Whisker, a Michigan corporation,<br><br>Plaintiff,<br><br>v.<br><br>PurLife Brands, Inc. d/b/a Smarty Pear, a Delaware corporation, and Chris Madeiras, an individual,<br><br>Defendants. | Case No. 5:22-cv-04261-PCP<br><br>Defendants' Smarty Pear and Chris Madeiras' Answer to TAC Complaint, Affirmative Defenses, First Amended Counterclaims |
| PurLife Brands, Inc. d/b/a Smarty Pear, and Chris Madeiras,<br><br>Counterclaim-Plaintiffs,<br><br>v.<br><br>Automated Pet Care Products, LLC d/b/a Whisker,<br><br>Counterclaim-Defendant. | <u>JURY TRIAL DEMANDED</u> |

DEFENDANTS' ANSWER TO THIRD AMENDED COMPLAINT
AFFIRMATIVE DEFENSES AND FIRST AMENDED COUNTERCLAIMS

Defendants PurLife Brands, Inc. d/b/a Smarty Pear ("Smarty Pear") and Chris Madeiras

("Madeiras") hereby sets forth their Answer, Affirmative Defenses and First Amended

Counterclaims to the Third Amended Complaint ("TA Complaint") filed by Plaintiff Automated

Pet Care Products, LLC d/b/a Whisker ("Whisker"). (Dkt. 115).

Except as otherwise expressly set forth below, Defendants deny knowledge or

information sufficient to form a belief as to the truth or falsity of each and every allegation

contained in the TA Complaint. Any allegation, averment, contention or statement in the TA

Complaint not specifically and unequivocally admitted is denied, including any statement in a

heading.[1] Defendants preserve all objections regarding the admissibility of any allegations or

statements made in the TA Complaint. Defendants further deny that Plaintiff is entitled to the

requested relief or any other relief. Accordingly, Defendants respond to each of the paragraphs of

the TA Complaint as follows:

RESPONSE TO "INTRODUCTION"

For over 20 years since pioneering the litter barrel sifting process, Plaintiff Whisker has
produced LITTER-ROBOT®, the leading brand of self-cleaning litter boxes in the world. In that
time, Whisker has grown to a team of over 35 engineers and over 500 other team members. It has
invested tens of millions in marketing to 50 awareness of LITTER-ROBOT and the category as a
whole, and millions in research and development to ensure each new model of LITTER-ROBOT
remains best in class. All the while, Whisker has proudly invested more than $13 million in
recent years to continue manufacturing its devices in the United States, as it has for 22 years.
Those efforts have paid off: LITTER-ROBOT is the best-selling and most-beloved product in its
category with more than 20,000 5-star reviews across Whisker's various models, over 1,000,000

---

[1] For the Court's convenience, Defendants generally adopt the headings used in Plaintiff's TA
Complaint. In so doing, Defendants do not admit that the headings are accurate and reserve the
right to contest any statement or characterization set forth under them. To the extent the headings
constitute allegations requiring a response, they are denied.

units sold, and has received acclaim by publishers such Inc5000, Good Housekeeping, CNN, and the New York Times.

Whisker's success caught the attention of many, including Defendant Smarty Pear and its founder, Defendant Chris Madeiras. Although Whisker welcomes fair competition, Defendants decided to shortcut the innovation process, rip off Whisker's product, and infringe Whisker's intellectual property rights with impunity. Defendants recently launched "Leo's Loo" and "Leo's Loo Too," two knockoffs imported from China that infringe Whisker's patents, while falsely representing that they designed the products. Moreover, Defendants have attempted to gain an unfair edge in the market by misleadingly using Whisker's trademarks (including LITTER-ROBOT marks and Whisker's slogan, NEVER SCOPE AGAIN®), and mimicking Whisker's marketing, going so far as to imitate Whisker's website layout and copy. Meanwhile, Defendants make false and misleading statements to intentionally deceive pet parents: for example, that their product is the first self-cleaning litter box connected to an app; that their product's UV lamp can sterilize "99.9%" of cat litter; and that "half a million cats and their owners" are already using their products. This hurts not only Whisker, but all innovators who risk everything to invent new products without taking shortcuts, and consumers who care about buying the right products for their pets. Accordingly, Whisker has had no choice but to file this suit against Defendants.

Defendants object to Plaintiff's so-called "Introduction" since it is not in the form of numbered paragraphs as required by Fed.R.Civ.P. 10(b). Additionally, Defendants object because the "Introduction" does not comply with the requirements of Fed.R.Civ.P. 8(a) and (d) by failing to be simple, concise, and direct. To the extent Plaintiff's so-called "Introduction" is considered part of the allegations pleaded in the Third Amended Complaint, Defendants deny all such allegations.

## RESPONSE TO "THE PARTIES"

Paragraph 1: Plaintiff Automated Pet Care Products, LLC d/b/a Whisker ("Whisker") is a limited liability company organized under the laws of the State of Michigan with its principal place of business at 1080 W Entrance Drive, Auburn Hills, Michigan 48326.

1.      Defendants deny the allegations in paragraph 1 because they lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 1.

Paragraph 2: On information and belief, Defendant PurLife Brands, Inc. d/b/a Smarty Pear ("Smarty Pear") is a corporation organized under the laws of the State of Delaware with its principal place of business at 96 Eleanor Avenue, Los Altos, California 94022.

2.      Admitted that PurLife Brands, Inc. d/b/a Smarty Pear ("Smarty Pear") is a

corporation organized under the laws of the State of Delaware. Defendants deny that Smarty

Pear's principal place of business is at 96 Eleanor Avenue, Los Altos, California 94022.

Paragraph 3: Defendant Chris Madeiras ("Madeiras") is, and at all relevant times was, the Founder and Chief Executive Officer of Smarty Pear, and authorizes, controls, and directs Smarty Pear's marketing and advertising strategy, including the conduct complained of herein. He is the conscious, dominant, and active force behind the wrongful acts of Smarty Pear complained of herein, which wrongful acts he has engaged in for the gain and benefit of Smarty Pear and for his own individual gain and benefit. On information and belief, Defendant Madeiras is an individual residing in Contra Costa County, California.

3.      Admitted that Defendant Christopher Madeiras is the founder and chief executive

officer of Smarty Pear. Defendants deny the remaining allegations of paragraph 3.

Paragraph 4: At all relevant times, each of the Defendants was the agent and alter ego of the other Defendant, acting for and on behalf of both Defendants as a single enterprise, with unity of purpose and control.

4.      Denied.

RESPONSE TO "JURISDICTION, VENUE, AND INTRADISTRICT ASSIGNMENT"

Paragraph 5: This is an action for patent infringement arising under the Patent Laws of the United States, 35 U.S.C. § 1, et seq., trademark infringement and unfair competition in violation of Section 32 and 43(a) of the Lanham Act, §§ 1114 and 1125(a), et seq., and violations of statutory and common law of the State of California. Accordingly, this Court has subject-matter jurisdiction over the federal claims pursuant to 15 U.S.C. § 1121, as well as 28 U.S.C. §§ 1331 and 1338(a).

5.      Defendants admit that Plaintiff's Third Amended Complaint purports to assert

claims for patent infringement, trademark infringement and unfair competition, and for

violations of statutory and common law of the State of California. Defendants deny that any of

Plaintiff's claims are valid or involve actual violations of the laws cited in paragraph 5.

Defendants admit that this Court has subject-matter jurisdiction over any legitimate federal

claims.

Paragraph 6: Jurisdiction is also proper under 28 U.S.C. § 1332(a)(2) as the matter is between parties in different states (Defendants in California, and Whisker in Michigan), and because the amount in controversy, exclusive of interest and costs, exceeds $75,000.

      6.      Admitted.

Paragraph 7: All other claims asserted in this action arise out of the same transaction or occurrence, so that this Court has supplemental jurisdiction over all additional claims asserted in this case under 28 U.S.C. § 1367(a).

      7.      Defendants admit that Plaintiff's Third Amended Complaint purports to assert

other claims that allegedly arise out of the same transaction or occurrence. Defendants deny that

any of these "other claims" are valid or involve actual causes of action which would entitle

Plaintiff to relief. Defendants admit that this Court has supplemental jurisdiction over any

legitimate additional claims properly asserted in the Third Amended Complaint.

Paragraph 8: This Court has personal jurisdiction over Defendants because Smarty Pear is headquartered in Los Altos, California and Madeiras resides in Contra Costa County, both within this District, and regularly conduct business, including advertising, offering to sell, and selling their services in this District and elsewhere in the United States. Further, Defendants' wrongful acts complained of herein took place, and have caused injury to Whisker, within this judicial district.

      8.      Defendants admit that Smarty Pear has a place of business located within this

District and that Christopher Madeiras resides within this District. Defendants admit the Court

has personal jurisdiction over the Defendants, but otherwise deny the allegations in paragraph 8.

Paragraph 9: Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b)–(c) and 1400(a)–(b) because Defendants reside in this District and are subject to personal jurisdiction in

this District. Venue is also proper in this District because the acts that are the subject of this Complaint were committed at least in part in this District.

9.      Defendants admit venue is proper and Smarty Pear transacts business in this

District, but otherwise Defendants deny the allegations of paragraph 9.

Paragraph 10: Pursuant to Civil Local Rule 3-2(c) and General Order No. 44, this case is properly assigned to any division of this Court because it involves intellectual property claims.

10.      Defendants lack knowledge or information sufficient to form a belief about the

truth of the allegations in paragraph 10 and therefore deny the same.

## RESPONSE TO "FACTUAL BACKGROUND"

Paragraph 11: For over 22 years, Whisker (formerly known as AutoPets) has designed, engineered, manufactured, and offered for sale highly innovative and technologically advanced pet products in the United States. Whisker's flagship product line is the LITTER-ROBOT product, which it launched in April 2000 as the first automatic barrel-sifting litter box.

11.      Defendants deny the allegations in paragraph 11 because they lack knowledge or

information sufficient to form a belief as to the truth of the allegations in paragraph 11.

Paragraph 12:  Before the LITTER-ROBOT product, litter boxes were largely dependent on manual hand-scooping or sifting. Traditional litter boxes accumulate litter clumps and waste, requiring further manual interaction to clean up. A few products had experimented with a motorized rake, but they were merely a mechanical analog to manual scooping and suffered from the same limitations as conventional litter boxes.

12.      Defendants deny the allegations in paragraph 12 because they lack knowledge or

information sufficient to form a belief as to the truth of the allegations in paragraph 12.

Paragraph 13: Over time, Whisker's LITTER-ROBOT product changed the landscape. The first automatic barrel-sifting litter box, the LITTER-ROBOT product harnessed rotation, and gravity to separate waste from clean litter and disperse it in a fully-enclosed waste drawer. This design provides material benefits to both pets and their owners. For the pets, the automatic cleaning cycle produces a clean bed of litter after each use. Clean litter also enables the device to be used with multiple pets, who may be otherwise territorial. Owners, meanwhile, do not have to scoop

out any waste litter, and can enjoy significant odor reduction. Further, by conserving more clean litter, owners can save money. Finally, newer models of the LITTER-ROBOT product collect data based on pet usage, and conveys it via an integrated app. This gives pet owners real-time insight into their cats' behaviors, alerting them to irregular usage and possible health concerns.

13.     Defendants deny the allegations in paragraph 13 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 13.

Paragraph 14: Over the years, Whisker has upgraded and innovated on the LITTER-ROBOT product. Currently, Whisker offers three models. The LITTER-ROBOT 3 model, launched in 2015, features a more ergonomic and spacious litter chamber resulting from a patented tilted axis of rotation, as well as automatic cycling, cat sensors, pinch detection, sleep mode, an adjustable wait timer, and night light. Each of these features made it wildly successful. A Wi-Fi enabled version, LITTER-ROBOT 3 CONNECT, followed in 2017, which connects to the Whisker app to facilitate mobile control and remote monitoring, and can be used with home automation systems like Alexa and Google Assistant through the widely used If This Then That automation platform.

14.     Defendants deny the allegations in paragraph 14 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 14.

Paragraph 15: Most recently, on May 10, 2022, Whisker launched its newest model, LITTER-ROBOT 4. It features a sleek, modern design, quiet operation, a sealed waste drawer with odor-absorbing features, and the patented tilted axis of rotation. Like LITTER-ROBOT-3, LITTER-ROBOT 4 features a cat sensor, but now has an accurate scale that enables further safety and owner insights. Moreover, LITTER-ROBOT 4 includes time-of-flight laser sensors that are uniquely oriented on the device to enable more advanced cat detection, litter level monitoring, and waste drawer level reporting. These sensors are covered by a separate patent, as discussed below.

15.     Defendants deny the allegations in paragraph 15 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 15.

Paragraph 16: Below are images of Whisker's LITTER-ROBOT product models.

| LITTER-ROBOT (launched 2000) | LITTER-ROBOT II (launched 2005) |
|---|---|

Defendants' Answer to TA Complaint
Affirmative Defenses and Counterclaims
Case No. 5:22-cv-04261-PCP



|  |  |
|---|---|
| **LITTER -ROBOT 3**<br>(launched 2015) | **LITTER-ROBOT 4**<br>(launched 2022) |

16.     Defendants deny the allegations in paragraph 16 because they lack knowledge or

information sufficient to form a belief as to the truth of the allegations in paragraph 16.

Paragraph 17: It is with great pride that Whisker's LITTER-ROBOT models are designed,
assembled, and serviced in the United States. Whisker ships its products from its assembly and
fulfillment center in Juneau, Wisconsin.

17.     Defendants deny the allegations in paragraph 17 because they lack knowledge or

information sufficient to form a belief as to the truth of the allegations in paragraph 17.

Paragraph 18: Buyers may purchase the LITTER-ROBOT product through Whisker's website, or
through third-party retailers such as the prominent online retailers Chewy and Amazon.

18.    Defendants deny the allegations in paragraph 18 because they lack knowledge or

information sufficient to form a belief as to the truth of the allegations in paragraph 18.

Paragraph 19: Whisker's LITTER-ROBOT line has received rave reviews from publishers. CNN gave the LITTER-ROBOT 3 model the title of the best self-cleaning litter box.[1] *The Dodo* awarded the LITTER-ROBOT 3 CONNECT model the "Paw of Approval."[2] Meanwhile, the LITTER-ROBOT 4 model has again received glowing reviews, with Good Housekeeping naming it the "best overall self-cleaning litter box" of 2022, CNN calling it "brilliantly designed," The Daily Beast calling it a "game changer," and Best Products stating that it is "at the top of the game in terms of specs and tech."[3]

[1] Christina Vercelletto, The best litter boxes—and litter—for your cat, according to vets, CNN (Apr. 19, 2021), https://www.cnn.com/cnn-underscored/pets/best-cat-litter-box.

[2] Sam Howell, We Tried The Fanciest Litter Box In The World And It Changed Our Lives, The Dodo (June 7, 2021), https://www.goodhousekeeping.com/home/cleaning/g31206600/best-self-cleaning-litter-box/.

[3] Lynn Redmile, 6 Best Self-Cleaning Litter Boxes of 2022, Good Housekeeping Institute (May 9, 2022), https://www.goodhousekeeping.com/home/cleaning/g31206600/best-self-cleaning-litter-box/;
Noelle Ike, Never Scoop Poop Again With The Sleek, Brilliantly Designed Litter-Robot 4, CNN (May 13, 2022), https://www.cnn.com/cnn-underscored/reviews/litter-robot-4-review;
Mia Maguire, This Actually Attractive Self-Cleaning Litter Box Is a Game-Changer for Cat Parents, The Daily Beast (May 10, 2022), https://www.thedailybeast.com/litter-robot-4-review;
Eunice Lucero-Lee, The Litter-Robot 4 Is Here—And My Life Has Never Been Better, Best Products (May 10, 2022), https://www.bestproducts.com/lifestyle/pets/a39929990/litter-robot-4-review/.

19.    Defendants deny the allegations in paragraph 19 because they lack knowledge or

information sufficient to form a belief as to the truth of the allegations in paragraph 19.

Paragraph 20: Although industry reviews are important, Whisker relies heavily on positive word-of-mouth and favorable reviews from authentic customers. Over 22 years in business, Whisker invested millions of dollars to educate consumers about its LITTER-ROBOT product alongside the self-cleaning litter box category as a whole. This has paid off. Whisker has sold over 700,000 LITTER-ROBOT devices to cat parents. Its website features over 20,000 five-out-of-five-star reviews for the LITTER-ROBOT 3 product, LITTER-ROBOT 3 CONNECT product, and their respective bundles, from customers. Similarly, the LITTER-ROBOT 3 CONNECT product is the best-reviewed self-cleaning litter box on Amazon, with nearly 1,050 five-star ratings as of July 7, 2022, and over 218 five-star user reviews. It is important to Whisker's brand that prospective customers trust other customer reviews of the LITTER-ROBOT product.

20.     Defendants deny the allegations in paragraph 20 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 20.

Paragraph 21: Central to Whisker's success has been its protection of its valuable intellectual property underlying the LITTER-ROBOT product line.

21.     Defendants deny the allegations in paragraph 21 because they lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 21.

Footnote 4 at p.6 of TA Complaint: [4]For purposes of streamlining the litigation, Plaintiff has removed FAC Count 2 regarding Defendants' infringement of U.S. Patent No. 7,647,889 from this Second Amended Complaint. However, per the Court's Order (Dkt. 56), Plaintiff reserves its rights to "seek leave to file an amended complaint" should discovery on the surviving claims provide further support for the allegations underlying FAC Count 2. (Dkt. 56, p.5.) Additionally, Plaintiff previously asserted infringement of U.S. Patent No. 9,433,185 ("'185 patent"). (Dkt. 58.) On July 17, 2023, the Court granted Defendant's motion to dismiss the '185 patent. (Dkt. 95.) Plaintiff disagrees with the Court's Order, and maintains that the '185 patent is infringed, but is removing the '185 patent allegations pursuant to the Court's August 16, 2023 Order. (Dkt. 114). Plaintiff reserves all rights to appeal the Court's Order dismissing the '185 patent from the case.

Defendants, Counterclaim-Plaintiffs (hereafter collectively "Smarty Pear") Respond to Whisker's Footnote 4:

In response to Whisker's FAC, Smarty Pear filed a motion to dismiss (Dkt. No. 29) based on Whisker's failure to plausibly alleged that Smarty Pear infringes U.S. Patent No. 7,647,889 ("'899 patent") or U.S. Patent No. 9,433,185 ("'185 patent"). The Court agreed with Smarty Pear and dismissed both the '185 patent and the '899 patent (Dkt. No. 56) from the lawsuit, ruling:

> Whisker fails to state a patent infringement claim based on the '185 Patent (Count 1) because Whisker's own photos in the complaint belie any assertion that the Leo's Loo's "bonnet … extends over [a] portion of the chamber so that … a rear of the outside wall of the chamber remain[s] uncovered by the bonnet." See Dkt. No. 25 at 26–27 (reciting the elements of the '185 Patent); Dkt. No. 25-1 at 87 (depicting fully assembled Leo's Loo and Leo's Loo Too products seemingly with no portion of the rear of the chamber uncovered). Indeed, Whisker's attempt at demonstrating that a portion of the rear of the chamber remains uncovered by the bonnet

consists of pointing to photos in its claim chart disingenuously depicting *disassembled* Leo's Loo products. Dkt. No. 25-1 at 94.

\* \* \*

Whisker's claim based on the '889 Patent (Count 2) fails because the videos and images included in or incorporated by reference into the complaint and claim chart demonstrate only a single, counter-clockwise rotation, and so Whisker has not plausibly alleged that the Leo's Loo products contain a "means for altering the orientation of the first unit assembly relative to the second unit assembly and the vector force of gravity … wherein reversal of the orientation of the first unit assembly passes litter from the temporary compartment to the compartment." Dkt. No. 25 at 37–38 (emphasis added); see also Dkt. Nos. 25 at 43, n. 48, 49; 25-1 at 119–20.

ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS (Dkt. No. 56)

pp. 1-2 (emphasis added). The Court's dismissal granted Whisker leave to amend its '185 patent

and '899 patent infringement claims.

Whisker filed a Second Amended Complaint (Dkt. No. 58) in which it dropped the '899

patent from the lawsuit and attempted to re-allege infringement of the '185 patent. In response,

Smarty Pear filed a second motion to dismiss (Dkt. No. 69) because Whisker's second try at

keeping the '185 patent in the lawsuit still failed to plausibly alleged that Smarty Pear infringes

that patent. Once again, The Court agreed with Smarty Pear and dismissed the '185 patent from

the case with finality (Dkt. No.95), ruling:

Smarty Pear's motion to dismiss Whisker's patent infringement claim based on the '185 patent is granted. See Dkt. No. 69. As to this claim, Whisker's Second Amended Complaint suffers from the same deficiency the Court noted in its prior order—the photos in the complaint belie the assertion that any portion of the rear of the chamber remains uncovered in the Leo's Loo products. See Dkt. No. 56 at 1; see also Dkt. No. 58 at 11, 31. Last time, Whisker tried to overcome this problem by depicting the Leo's Loo products in disassembled form in its claim chart. See Dkt. No. 56 at 1; Dkt. No. 25-1 at 94. This time, Whisker concedes the product must infringe the patent in its assembled form but argues that the patent requires only that a portion of the rear of the chamber remain uncovered by the

Defendants' Answer to TA Complaint
Affirmative Defenses and Counterclaims
Case No. 5:22-cv-04261-PCP

bonnet, even if that same portion is covered by some other part, such that no portion of the rear of the chamber in fact remains uncovered. Dkt. No. 74 at 5–7.

\* \* \*

[T]he drawings in the patent itself—which is attached as an exhibit to the operative complaint—make clear that the claim language means what it sounds like: a "band-like shape[d]" bonnet extends over the chamber, attaching to the support base on either side of the chamber, leaving the front and the back of the chamber uncovered. See Dkt. No. 58-1 at 4–5.

This is not a matter of claim construction, as Whisker insists. <u>Whisker's reading of the claim elements is simply implausible on its face</u>, and so its patent infringement claim must be dismissed. Given that Whisker's own images and claim charts demonstrate that no portion of the rear of the chambers in the Leo's Loo products remains uncovered when the product is fully assembled, further amendment would be futile, and so <u>dismissal of this claim is with prejudice.</u>

ORDER GRANTING SMARTY PEAR'S MOTION TO DISMISS WHISKER'S PATENT

INFRINGEMENT CLAIM WITH PREJUDICE (Dkt. No. 95) pp. 2-3 (emphasis added).

Whisker sought leave from the Court to file a THIRD Amended Complaint in this case and attempted to keep its '185 patent infringement claim as part of its pleading (Dkt. No. 93). The Court, however, rejected Whisker's attempt to keep allegations about the '185 patent in the THIRD Amended Complaint and ORDERED that "Whisker must file a revised third amended complaint <u>without the first cause of action for infringement of the '185 patent, which has been dismissed with prejudice</u>...." (Dkt. No. 114) (emphasis added).

Although Whisker complied with the Court's Order, it has included misleading and self-serving statements in Footnote 4 of the TA Complaint. Smarty Pear's response set out above provides the full context and factual details regarding Whisker's failed efforts to assert the '899 and '185 patents against Smarty Pear. Further, despite stating it "reserves all rights to appeal", should

Whisker actually appeal the Court's Order dismissing the '185 and the '899 patents, Smarty Pear is confident that the Court's Order will be upheld by the Ninth Circuit Court of Appeals.

Paragraph 22: Whisker owns by entire right, title, and interest in and to U.S. Patent No. 11,399,502 (the "'502 Patent" or "Patent-In-Suit"), titled "System for Monitoring and Controlling an Automated Litter Device." The '502 Patent duly and legally issued on August 2, 2022 to inventors Brad Baxter and Jacob Zuppke from U.S. Patent Application No. 16/428,433, filed on May 31, 2019. A true and correct copy of the '502 Patent is attached as Exhibit 1 to this Complaint.

22.     Defendants deny that the '502 Patent was duly and legally issued. Defendants deny the remaining allegations in paragraph 22 because they lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 22.

Paragraph 23: The inventions of the '502 Patent are generally directed to an automated system for a litter device and related to a method of operating an automated litter device via a remote user interface. The innovations captured by the '502 Patent are particularly useful in remotely monitoring and receiving signals from an automated litter device, and remotely controlling one or more operations of an automated litter device.

23.     Defendants deny that the '502 Patent involves any inventions, innovations, or novel applications of any construction features for remotely monitoring and receiving signals from an automated litter device, and remotely controlling one or more operations of an automated litter device. Defendants deny the remaining allegations in paragraph 23 because they lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 23.

Paragraph 24: The '502 Patent is valid, enforceable, and duly issued in full compliance with Title 35 of the United States Code.

24.     Denied.

Paragraph 25: In addition to its valuable patents, Whisker has devoted substantial time, effort, and resources to the development and promotion of its distinctive and well-known LITTER-ROBOT trademarks (hereinafter the "Litter-Robot Marks") and primary slogan "NEVER

SCOOP AGAIN" and the goods offered thereunder. Thus, the purchasing public identifies the LITTER-ROBOT and NEVER SCOOP AGAIN marks with Whisker and its products.

25.     Defendants deny the allegations in paragraph 25 because they lack knowledge or

information sufficient to form a belief as to the truth of the allegations in paragraph 25.

Paragraph 26: Whisker supports its strong common law trademark rights in the Litter-Robot Marks with numerous federal trademark registrations. *See* U.S. Trademark Reg. Nos. 4,674,124; 4,674,125; 5,259,515; 6,227,960; 6,570,005; 6,668,860; 6,734,934; 6,734,935; and 6,799,211. Moreover, the USPTO accepted a Section 2(f) claim of acquired distinctiveness as to Whisker's registration for the word mark LITTER-ROBOT (Reg. No. 5,259,515, covering "Automated pet appliances, namely, litter boxes" in Class 21, and asserting a first use date of April 7, 2000). Thus, the USPTO accepted that the purchasing public identifies the word mark "LITTER-ROBOT" with Whisker's automated litter boxes. In addition to approximately ten years of use and promotion, giving rise to significant common law rights, Whisker owns a federal trademark registration for its primary slogan NEVER SCOOP AGAIN, claiming a first use date as early as January 2013. See Exhibit 2 (attaching U.S. Trademark Reg. No. 6,383,646).

26.     Denied.

Paragraph 27: Defendant PurLife Brands, Inc., doing business as "Smarty Pear," launched in or around April 2021 as a direct competitor to Whisker. Its founder, Defendant Chris Madeiras, was formerly affiliated with a company that did business directly with Whisker. For years, Madeiras had a relationship with Whisker, and through his employment had access to Whisker's confidential information and business plans for the LITTER-ROBOT product.

27.     Defendants admit that Defendant PurLife Brands, Inc., doing business as "Smarty

Pear," launched in or around April 2021 as a direct competitor to Whisker.

Defendants admit that in January 2016, Christopher Madeiras (Senior Vice President for

Petcube's Worldwide Sales) and Yaroslav Azhnyuk (CEO of Petcube) met Jacob Zuppke for the

first time at the CES show in Las Vegas. Thereafter, Christopher Madeiras exchanged emails with

Zuppke proposing an exchange of a small number of commercially available products and

discussing the possibility of potential partnerships with retailers and programs. These products

were exchanged in that timeframe. As far as Defendants know, Petcube and Whisker never jointly

entered into any partnerships with retailers and/or programs. Defendants are not aware of any

actual business relationship between Petcube and Whisker during the time Christopher Madeiras was employed at Petcube.

Defendants admit that at Yaroslav Azhnyuk's request, Christopher Madeiras provided Zuppke with introductions to Best Buy and Brookstone. Christopher also provided Zuppke with introductions to Amazon and Primal. Christopher Madeiras also gave Zuppke information regarding the sales strategy appropriate for doing business with Chewy.

Christopher Madeiras introduced Zuppke to numerous industry contacts. For example, in July of 2020 Zuppke asked Christopher if he had any pet buying contacts at Amazon. Christopher responded by introducing Zuppke to Mary Kreutz, providing her email address and cell phone number. There were numerous examples of Christopher providing such assistance to Zuppke both while he was at Petcube and after Christopher had left that company. Christopher and his company Petcube were not paid in any way for the assistance they provided.

Defendants admit that in March 2016, Christopher Madeiras became aware that Jacob Zuppke (who was at that time Whisker's VP of Business Development) and Vivian Lee (who was at that time Petcube's Chief Marketing Officer), had been discussing the possibility of carrying out a co-marketing promotion. Christopher was not, however, involved with nor did he participate in any discussions about that potential co-marketing promotion, which ultimately did not go forward.

Defendants deny that Christopher Madeiras had any business dealings with Whisker or Jacob Zuppke on behalf of Petcube during the time that Madeiras worked for Petcube except for the occasional request by Zuppke for Christopher to provide him with gratuitous sales advice. Christopher enjoys sharing his wealth of experience with others when asked and has done this kind of mentorship through managing large teams and his many roles as a senior leader. As a Petcube employee, Christopher Madeiras was not a party to any confidentiality agreements or obligations

between Whisker and Petcube, he was not aware of any Whisker confidential information, if any, in Petcube's possession, he did not receive or need to have access to any Whisker confidential information to carry out his job as Petcube's Chief Revenue Officer.

In the above Paragraph 27 of Whisker's TA Complaint, Whisker misrepresents the relationship between Christopher Madeiras and Whisker. The only company that the narrative presented in Paragraph 27 could relate to is Petcube. With the exception of an exploratory discussion of a co-marketing promotion in 2016, Defendants deny that any "business relationship" between Petcube and Whisker was established. Christopher Madeiras denies being aware of any business that Petcube did directly with Whisker during the time he was Petcube's Chief Revenue Officer. Moreover, Christopher Madeiras denies having a "relationship with Whisker" while employed by Petcube. Christopher Madeiras denies having access to any confidential information of Whisker in his role as Chief Revenue Officer at Petcube.

At the time that Christopher was introduced to Zuppke, Petcube was exploring the possibility of entering the litter robot market and the market for an automatic feeder. That plan had not come to fruition, however, when Christopher Madeiras left Petcube in the fourth quarter of 2019. Defendants deny that at any point Zuppke revealed any trade secret or other confidential information to Christopher Madeiras while Christopher was at Petcube. Christopher gratuitously gave Zuppke access to his key industry contacts and free advice about marketing and sales of pet-related products.

Defendants deny the remaining allegations in paragraph 27.

Paragraph 28: In or around October 2019, after Madeiras had left the other company, Madeiras met privately with one of Whisker's executives, Jacob Zuppke. There, Madeiras and Zuppke discussed the upcoming development and launch of the LITTER-ROBOT 4 product, Whisker's financial success, and the new business Litterbox.com that Whisker was planning to launch. At

that meeting, Madeiras did not reveal that he was intending to launch a copycat product. Following this meeting, Zuppke and Madeiras stayed in touch through phone calls and text messages. In 2021, Whisker learned that Madeiras had started Smarty Pear and launched a direct competitor to the successful LITTER-ROBOT product.

28.     Defendant Christopher Madeiras admits that he had various conversations with Zuppke. None of those conversations were subject to any confidentiality obligations. Furthermore Zuppke did not reveal anything that could be considered confidential. At no time prior to its product launch, did Zuppke provide Christopher Madeiras with any information about Litter Robot 4 ("LR4"), which was launched well after Smarty Pear introduced its Leo's Loo Too product. Christopher Madeiras became aware of LR4 at the same time consumers did, when it was publicly launched. Further, none of the conversations Whisker alleges to have occurred between Zuppke and Madeiras took place after Madeiras decided to launch a competitive product. Furthermore, the initial conversations were initiated by Zuppke. Defendants deny the remaining allegations in paragraph 28.

Paragraph 29: In or around April 2021—decades after Whisker introduced the LITTER-ROBOT product—Smarty Pear and Madeiras began to make, use, offer for sale, sell, directly and/or through intermediaries, and import, directly and/or through intermediaries, an automatic self-cleaning litter box it called the "Leo's Loo." It was offered for $499—matching the price point of the LITTERROBOT 3 product—and was sold through the third-party retailer Chewy.



29.    Admitted, but denied as to the price alleged.

Paragraph 30: Smarty Pear and Madeiras represent to the public that they are the designer of Leo's Loo. For example, in assuring consumers of the quality of the Leo's Loo safety features, Smarty Pear's website states, "[w]e designed Leo's Loo with kitty safety in mind."[5] Similarly, Smarty Pear's website states, "we've packed the Leo's Loo with features that make it one of the most convenient self-cleaning litter box [sic] available."  Id.  Consistent with these representations, Smarty Pear and Madeiras describe Smarty Pear as a "California based technology company," stating that its "team of innovators and pet lovers are actively working on several new products." [6] Together, this was intended to create the impression that Leo's Loo was designed by Smarty Pear and Madeiras in California, much like the LITTER-ROBOT product is designed by Whisker in the Midwest, and that Madeiras and Smarty Pear innovated the technology behind the product.

[5] Smarty Pear, Leo's Loo, https://smartypear.com/products/leo-s-loo (emphasis added).
[6] Smarty Pear, Meet Smarty Pear, https://smartypear.com/pages/about-us.

30.    Defendants' admit that the language quoted in paragraph 30 was authored by Smarty Pear and appeared on the internet at the indicated addresses. Defendants deny that the quoted passages are falsifiable statements of fact likely to mislead consumers and further deny that they are actionable violations of any law related to false advertising. Further, many of the allegations comprising paragraph 30 were dismissed as insufficient bases for Plaintiff's false advertising claims (Counts 6 and 7). Dkt. 56 at p. 3. As examples of Whisker's allegations deemed

insufficient to support its false advertising claims, the Court cited to statements like "[w]e've packed Leo's Loo with features that make it one of the most convenient self-cleaning litter boxes available" and "[w]e designed Leo's Loo with kitty safety in mind...so our feline friends are always safe when they step inside". *Id.*   The Court characterized these statements as "classic, non-actionable puffery." *Id.* The Court also found that Whisker's allegations regarding supposedly falsifiable statements that likely mislead consumers into believing that Smarty Pear's products are made in California when they are manufactured in China is "strained and unconvincing". *Id.*

<u>Paragraph 31</u>: This curated impression by Madeiras and Smarty Pear is false and misleading. On information and belief, Leo's Loo is a copycat product designed and manufactured in China. It appears that this product has been available since 2019 through the Chinese e-commerce site Alibaba, and currently sells under a variety of names, such as the "MEET Smart Litter Box" or the "MOME Smart Cat Sand Bytes." On information and belief, Smarty Pear and Madeiras merely purchased these third-party devices, imported them, and now resell them under Smarty Pear's own name. As shown below, the two products have identical dimensions, specifications, and features.



| MEET Smart Litter Box (available on Alibaba) | Leo's Loo |
|---|---|

**Product Name:** MOME Smart Cat Sand Bytes
**Product size:** 650*630*660mm
**Rated voltage:** 12V
**Maximum load:** 25KG
**Cat litter capacity:** 6L
**Trash capacity:** 9L
**Body material:** PP
**Product weight:** 12KG
**Rated power:** standby 1W / operating state 6W
**Regular power consumption:** about 1 degree electricity / month
**Minimum accuracy:** 0.1KG
**Backup battery:** 2000mAh

**Product Name:** Automatic Self-Cleaning Litter Machine
**Dimensions:** 26 x 25 x 26 in (65 x 63 x 66 cm)
**Input Voltage:** 12 V
**Max Weight Capacity:** 55 lb (25 kg)
**Max Litter Capacity:** 1.5 gal (6 L)
**Material:** PP
**Product Weight - Net:** 26.5 lb (12 kg)
**Product Weight - Gross:** 35.3 lb (16 kg)
**Power - Operating:** 53 kWh per year
**Power - Standby:** 9 kWh per year
**Scale Accuracy:** ± 1 lb (0.5 kg)

[7] The measurements are effectively identical. For example, 650 millimeters converts to 25.6 inches, and 215 millimeters converts to 8.5 inches.

Defendants' Answer to TA Complaint
Affirmative Defenses and Counterclaims
Case No. 5:22-cv-04261-PCP



31.     Defendants deny they engaged in any acts that are false or misleading. Defendants

deny that Leo's Loo is a copycat product designed and manufactured in China. Defendants deny

that Leo's Loo has been available since 2019 through the Chinese e-commerce site Alibaba, and

currently sells under a variety of names, such as the "MEET Smart Litter Box" or the "MOME

Smart Cat Sand Bytes."  Defendants deny they merely purchased third-party devices, imported

them, and now resell them under Smarty Pear's own name. Defendants deny the remaining

allegations of paragraph 31 because they lack knowledge or information sufficient to form a

belief as to the truth of the remaining allegations in paragraph 31.

Paragraph 32: Smarty Pear and Madeiras's false and misleading statement that they "designed" Leo's Loo allows consumers to trust their representations as to the origin of their self-cleaning litter box. The origin and actual manufacturer of a product are important qualities for consumers shopping for appliances, especially in a sensitive and pricey commercial market such as self-cleaning litter boxes.

32.    Defendants' admit that the language quoted in paragraph 32 was authored by

Smarty Pear. Defendants deny that the quoted language is a falsifiable statement of fact likely to

mislead consumers and further deny that such language is an actionable violation of any law

related to false advertising. Further, the allegation comprising paragraph 32 were dismissed as

insufficient bases for Plaintiff's false advertising claims (Counts 6 and 7). Dkt. 56 at p. 3.

Paragraph 33: Further, the following Chewy product reviews show that consumers were actually misled by this assertion into believing that Smarty Pear was the designer of Leo's Loo:

> "A big shout out to Smarty Pear for making such a great machine! I'm sensing another purchase in the very near future."
> "I currently have a litter robot I decided to try this one because it's cheaper and you get what you pay for! On a sidenote the customer service for smarty pear who is the manufacturer of this litter box is fantastic until you have an issue. Once they realize you were unhappy they stop messaging you back in when you ask for a refund you definitely never hear from them!"

33.    Defendants deny that consumers were actually mislead by any statements made

and attributed to Smarty Pear regarding the design of Leo's Loo. Further, the allegation relating

to the designing of Leo's Loo in paragraph 33 was dismissed as insufficient basis for Plaintiff's

false advertising claims (Counts 6 and 7). Dkt. 56 at p. 3.

Paragraph 34: On April 14, 2021, Whisker's counsel sent Smarty Pear a cease-and-desist letter setting forth detailed allegations of patent infringement and disclosing various patents and patent applications A copy of this letter is attached as Exhibit 3.

34.    Admitted.

Paragraph 35: In a response dated April 21, 2021, Smarty Pear acknowledged that it was aware of Whisker's patents. Rather than comply with Whisker's requests, however, Smarty Pear simply rejected the allegations. A copy of this letter is attached as Exhibit 4. Madeiras and Smarty Pear have since escalated their acts of unfair competition and infringement.

35.    Defendants deny that "Smarty Pear simply rejected the allegations" in the April 14, 2021 letter from Whisker's counsel. Whisker's letter makes unsubstantiated allegations of patent infringement. Smarty Pear's counsel reviewed the patents mentioned in the April 14 letter and found no basis for asserting that Smarty Pear's product infringes any claims of Whisker's identified patent. Smarty Pear's counsel requested that if Whisker's counsel has a basis for asserting infringement of the identified patent, then provide a detailed claim chart demonstrating how Whisker construes the claims and applies them to Smarty Pear's products by April 28, 2021 -- otherwise Smarty Pear would consider the matter resolved. Whisker never replied and did not provide the requested claim chart. Defendants' deny that they engaged in acts of unfair competition or infringement.

Paragraph 36: Almost immediately, Smarty Pear's Leo's Loo began to steal away sales from Whisker. For example, of the 185 customer reviews of Leo's Loo on Chewy as of July 7, 2022, at least 28 mention Whisker's LITTER-ROBOT product.

36.    Denied.

Paragraph 37: Smarty Pear and Madeiras's marketing also targeted the LITTER-ROBOT product, both explicitly and implicitly. One post uploaded to Smarty Pear's Instagram account on July 8, 2021 claimed a user stated Leo's Loo was "Better than a Litter Robot"—a reference to Whisker's product. Another Instagram post on October 16, 2021 quoted a review referencing a "more expensive automatic litter box, whose name shall not be named in comparison."[8] Further, upon information and belief, starting in October 2021, Smarty Pear and Madeiras began to use the hashtags "#litterrobot" and "#litterrobot3" in their social media posts promoting Leo's Loo Too.

[8] Smarty Pear (@smartypear), Instagram (Oct. 18, 2021),
https://www.instagram.com/p/CVLP6n9grd8/.

37.    Denied.

Paragraph 38: Hashtags are metadata tags directed at users on social media websites that make it

possible for others to easily find messages with a particular theme or content. For this reason, hashtag marketing is a useful way to build an association between a brand and a product. Thus, when an Instagram user searches for "#litterrobot," she will be looking for content related to Whisker's LITTER-ROBOT product. As shown below, Smarty Pear used these hashtags in order to create the impression that Leo's Loo was affiliated with LITTER-ROBOT.

      38.    Denied.

Paragraph 39: The following Smarty Pear Instagram post from November 11, 2021, for example, touts the Leo's Loo Too's features, and ends with the hashtags "#LitterRobot" and "#litterrobot3." The fact that "#LitterRobot" is capitalized serves to highlight that Smarty Pear and Madeiras sought to trade off of Whisker's goodwill.



[9] Smarty Pear (@smartypear), Instagram (Nov. 11, 2021), https://www.instagram.com/p/CWKNMipMLDW/.

      39.    Denied.

Paragraph 40: Another Instagram post dated November 21, 2021 promotes Leo's Loo Too and includes the hashtags "#litterrobot" and "litterrobot3."



[10] Smarty Pear (@smartypear), Instagram (Nov. 21, 2021),
https://www.instagram.com/p/CWizikIMxsU/.

    40.    Denied.

<u>Paragraph 41</u>: Similarly, an Instagram post dated January 11, 2022 promotes Leo's Loo Too and includes the hashtag "#litterrobot."



[11] Smarty Pear (@smartypear), Instagram (Jan. 11, 2022),

Defendants' Answer to TA Complaint
Affirmative Defenses and Counterclaims
Case No. 5:22-cv-04261-PCP

https://www.instagram.com/p/CYmjlhcAf8i/

41.     Denied.

Paragraph 42: Nor were these isolated incidents. Of the 140 posts uploaded to SmartyPear's Instagram account as of July 7, 2022, at least 22 of them include the hashtags "#litterrobot" or "#litterrobot3." Smarty Pear and Madeiras engaged in similar practices on Facebook and TikTok.

42.     Smarty Pear admits it has posted more than 400 posts to date. Smarty Pear further admits that twenty two of the posts included #litterrobot among a list of other hashtags. The posts always listed #SmartyPear prior to any hashtag referring to litterrobot. Any reference to #litterrobot and the like were intended to draw a comparison between the Leo's Loo and the market leader in the space. There was no intent to deceive or to draw an association between the products other than a comparison. To the extent not expressly admitted, Defendants deny the allegations of paragraph 42.

Paragraph 43: Smarty Pear and Madeiras's copying did not stop with product features or hashtags. Taking note of Whisker's success, Smarty Pear and Madeiras updated Smarty Pear's website to closely resemble Whisker's website for the LITTER-ROBOT product. The website now mimics marketing assets, fonts, photos, email prompts, footer layouts, and overall webpage layouts—down to the rounded designs of the button edges, as the below comparison makes clear.





43.     Defendants deny that Smarty Pear or Madeiras copied any product features or

hashtags.

<u>Paragraph 44</u>: Moreover, Smarty Pear and Madeiras produced a "How It Works" video for Leo's Loo that is nearly identical in script to Whisker's video for the LITTER-ROBOT product.

44.     Denied.

<u>Paragraph 45</u>: More recently, Whisker became aware that Smarty Pear and Madeiras began using Whisker's primary brand line and registered trademark NEVER SCOOP AGAIN® (shown above in ¶ 47) in advertising to promote Smarty Pear's products and website on search engines. Defendants are trying to confuse consumers searching for Whisker's products and Whisker's advertising slogan on Google, evidenced by Defendants intentionally targeting the slogan NEVER SCOOP AGAIN—also an admission by Defendants that consumers recognize and value Whisker's NEVER SCOOP AGAIN branding. To be sure, Defendants' conduct goes beyond purchasing keyword advertising against a competitor's products: Defendants are not only targeting "LITTER ROBOT" and "NEVER SCOOP AGAIN" in keyword advertising, but they are in fact using the slogan "Never Scoop Again" in their ads, as the following examples show:

Examples of use of "NEVER SCOOP AGAIN"



45.    Denied.


Paragraph 46: The effect of this conduct was to draw in consumers seeking out information about the LITTER-ROBOT product and create a false association between Whisker's LITTER-ROBOT product and Smarty Pear's infringing knockoff. Smarty Pear and Madeiras's knockoff product and infringement resulted in actual consumer confusion. To incentivize reviews of Leo's Loo, Smarty Pear and Madeiras offered consumers free accessories. Several consumers emailed to claim those accessories, and instead directed their emails at Whisker. Thus, Whisker's product specialists were forced to explain repeatedly that Whisker was not the source of Smarty Pear's goods.

46.    Denied.


Paragraph 47: On October 27, 2021, well after the filing of the Patent-In-Suit, Smarty Pear issued a press release touting a new model, "Leo's Loo Too." Thereafter Smarty Pear and Madeiras began to make, use, offer for sale, sell, directly and/or through intermediaries, and import directly and/or through intermediaries, the automatic self-cleaning litter box called "Leo's Loo Too." This model appears very similar to Leo's Loo, but touted several new features, including the "first-ever app connected self-cleaning litter box with Alexa and Google Voice controls" and "UV rays that eliminate 99.9% of bacteria."[12]


[12] Press Release, Smarty Pear Launches First-Ever App-Connected Self-Cleaning Litter Box with Alexa and Google Voice Controls (Oct. 27, 2021), https://www.prnewswire.com/newsreleases/ smarty-pear-launches-first-ever-app-connected-self-cleaning-litter-box-with-alexa-andgoogle-voice-controls-301409876.html (emphasis added).

## Smarty Pear Launches First-Ever App-Connected Self-Cleaning Litter Box with Alexa and Google Voice Controls

Leo's Loo Too with Vibrant Color Options Available Just in Time for Holiday Season



NEWS PROVIDED BY
**Smarty Pear →**
Oct 27, 2021, 09:38 ET

SHARE THIS ARTICLE

47.    Admitted.

Paragraph 48: Again, Smarty Pear and Madeiras falsely and misleadingly represented that they were the designer of Leo's Loo Too. In the press release, Madeiras was quoted as stating, "[w]e had a clear and ambitious goal when we designed Leo's Loo Too: To create a self-cleaning litter box that stands out from all the others with the very best user experience, most innovative technology and a design worthy of magazine covers." Id. (emphasis added). Similarly, the user manual for Leo's Loo Too begins with a quote from Madeiras (identified as "Smarty Pear Founder / CEO"), stating, "When I started Smarty Pear, my goal was to create products that injected even more magic into the special bond that exists between pet lovers and their fur babies."[13]

[13] Smarty Pear, Leo's Loo Too Manual, at 4, https://drive.google.com/file/d/1pOl7QSAV6q2vFzaq1amU5cI200WASxOh/view (emphasis added).

48.    Defendants deny that they made any false or misleading factual statements about the designer of Leo's Loo Too. Defendants admit that the press release referenced in paragraph 48 contains the quoted language. Defendants admit that the user manual for Leo's Loo Too contains the language quoted in paragraph 48. Further, the allegation relating to the designing of Leo's Loo Too in paragraph 48 was dismissed as an insufficient basis for Plaintiff's false advertising claims (Counts 6 and 7). Dkt. 56 at p. 3. To the extent not expressly admitted, Defendants deny the allegations contained in paragraph 48.

<u>Paragraph 49</u>: These quotes are false and misleading. On information and belief, Smarty Pear and Madeiras are not the designer of Leo's Loo Too. As with the first model, Leo's Loo Too is nothing but a relabeled product imported from China. As the below comparison demonstrates, Leo's Loo Too is identical to the "MEET Smart Litter Box" in appearance, dimensions, and features.



Defendants' Answer to TA Complaint
Affirmative Defenses and Counterclaims
Case No. 5:22-cv-04261-PCP



49.   Defendants deny that any quoted language attributed to Defendants and identified

by Whisker are false and misleading. Further, Whisker's allegation relating to the designing of

Leo's Loo Too in paragraph 49 was dismissed as an insufficient basis for Plaintiff's false

advertising claims (Counts 6 and 7). Dkt. 56 at p. 3. To the extent not expressly admitted,

Defendants deny the allegations contained in paragraph 49.


Paragraph 50: Tellingly, when asked about the above product via email, Smarty Pear's customer
service falsely and misleadingly represented that it was a "knockoff," stating, "we are the
original creators of the Leo's Loo and Leo's Loo Too."

50.   Denied.


Paragraph 51: Moreover, this product infringes Whisker's patent. As detailed in Exhibit 5, Leo's
Loo Too incorporates the same sensors, wireless communication module, and user interface
described in and covered by the '502 Patent. As such, Leo's Loo Too infringes the '502 Patent.

51.   Denied.


Paragraph 52: Smarty Pear and Madeiras are engaging in false and misleading advertising with
respect to the UV feature in Leo's Loo Too. On Smarty Pear's website and in the Leo's Loo Too
user manual, Smarty Pear and Madeiras assert (with no support) that Leo's Loo Too contains UV

rays that are "99.9% effective at eliminating bacteria, parasites and viruses."[14] Other resellers of Defendants' products have repeated the false and misleading allegations about the Leo's Loo products' UV feature.

[14] Smarty Pear, Leo's Loo Too, https://smartypear.com/products/leo-s-loo-too;
Smarty Pear, Leo's Loo Too Manual, supra n.13, at 5.



52.    Denied.

Paragraph 53: Smarty Pear and Madeiras repeat this claim in Smarty Pear's marketing, stating in a now-deleted Instagram post dated November 17, 2021 (and tagging "#litterrobot" and "#litterrobot3," as discussed above) that the feature "[k]eep[s] you and your kitty safe" and "reduc[es] odor.



53.    Denied.

Paragraph 54: The claim that the UV feature "thoroughly sterilize[s]" and is "99.9% effective at

eliminating bacteria, parasites and viruses," thereby "reducing odor" in Leo's Loo Too is false and misleading.

54.     Denied.

Paragraph 55: Smarty Pear and Madeiras are not the first to sell consumers on an ultraviolet sterilization feature. In the wake of the COVID-19 pandemic, the market was flooded with products claiming to provide disinfecting benefits through ultraviolet light. This led to so many dubious and nonscientific efficacy claims that the FDA was forced to release a guide for consumers.[15]

[15] UV Lights and Lamps: Ultraviolet-C Radiation, Disinfection, and Coronavirus, FDA (Feb. 1, 2021), https://www.fda.gov/medical-devices/coronavirus-covid-19-and-medical-devices/uvlights-and-lamps-ultraviolet-c-radiation-disinfection-and-coronavirus.

55.     Defendants deny the allegations in paragraph 55 because Defendants lack

knowledge or information sufficient to form a belief as to the truth of the allegations in

paragraph 55.

Paragraph 56: In its guide, the FDA acknowledged that ultraviolet-C (a specific variation on UV rays) is "a known disinfectant for air, water, and nonporous surfaces," and "has effectively been used for decades to reduce the spread of bacteria[.]" Id. Critically, however, the FDA cautioned that there were "limitations" with respect to efficacy. For one, not every UV wavelength is the same, "so it may take longer exposure to a given surface area to potentially provide effective inactivation of a bacteria or virus." Id. And as is most relevant here, the FDA stated that "UVC radiation can only inactivate a virus if the virus is directly exposed to the radiation." Id. Accordingly, the FDA stated, "the virus or bacterium will not be inactivated if it is covered by dust or soil, embedded in porous surface or on the underside of a surface." Id. (emphasis added). As another researcher stated, "We refer to UV disinfection as a line-of-sight technology, so if anything blocks the UV light including dirt, stains, [or] anything casting shadows then those 'shaded or protected' areas will not be disinfected."[16]

[16] Shannon Bauer, Does UV Light Actually Disinfect and Kill Viruses? UCI Beckman Laser Institute & Medical Clinic (Sept. 23, 2020), https://www.bli.uci.edu/does-uv-light-actuallydisinfect-and-kill-viruses/.

56.     Defendants deny the allegations in paragraph 56 because Defendants lack

knowledge or information sufficient to form a belief as to the truth of the allegations in

paragraph 56.

Paragraph 57: Given the science of UV disinfection, a litter box may be the worst possible use case. Cat litter is designed to be highly porous, and collects dust and soil. It is an example of an environment in which UV disinfection would be ineffective. For this reason, it is false and misleading for Defendants to assert that the UV rays in Leo's Loo Too can "thoroughly sterilize" or "reduc[e] odor" in waste litter.

   57.   Denied.

Paragraph 58: Further, this deception was material to consumer purchases. Product reviews on Chewy and Amazon demonstrate that multiple consumers bought Leo's Loo Too due to the claim that its UV rays "thoroughly sterilize." For example:

> "I researched all of the robot litter boxes I could find before deciding on Leo's Loo Too. I chose it because of the larger waste drawer and the [u]v sterilization, and the.overall design."
> "UV sanitizing on the Too was a plus for me."
> "I love the UV sterilization cleaning[.]"
> "It utilizes UV light sterilization to kill the germs and bacteria that are the primary cause of odor in the first place."

   58.   Denied.

Paragraph 59: Likewise, in a head-to-head product comparison between Leo's Loo Too and Whisker's LITTER-ROBOT product, a reviewer relied on Smarty Pear and Madeiras's representation and stated: "[Leo's Loo Too] also features a programmable UV sterilization technology that disinfects and kills 99 percent of germs, viruses, and parasites in the waste drawer using UV rays. When it comes to picking a litter box, odor management is crucial, and this function increases the product's odor elimination mechanism, ensuring that your home stays as fresh as possible."[17]

[17] Clair Chesterman, Leo's Loo Too VS Litter Robot, TechnoMeow, https://technomeow.com/leos-loo-too-vs-litter-robot/ (emphasis added).

   59.   Denied.

Paragraph 60: Smarty Pear and Madeiras made further false and misleading statements in connection with the release of Leo's Loo Too.

   60.   Denied.

Paragraph 61: First, Smarty Pear and Madeiras assert in the initial press release that Leo's Loo Too is the "first ever" app connected self-cleaning litter box. The necessary implication of this factual statement is that other products available on the market lacked these features. This statement is false and misleading: not only is Leo's Loo Too identical to an imported product, but Whisker's LITTER-ROBOT 3 CONNECTED model predated Leo's Loo Too by years, and is

capable of integrating with voice control systems such as Alexa and Google Assistant. In fact, some consumers noticed the similarities: one comment on a Smarty Pear video stated, "Lol same device as the litter robot[.]"

61. Denied.

Paragraph 62: Second, Smarty Pear and Madeiras assert on Smarty Pear's website that Leo's Loo Too is "The Smartest Self-Cleaning Litter Box." In this context, the word "smartest" specifically refers to a subset of features touted by Smarty Pear and Madeiras. For example, the Leo's Loo Too webpage features a video stating "Say Hello to the Smartest Self-Cleaning Litter Box"— itself a clear reference to a marketing slogan used by Whisker for years, "Say Hello To The Last Litter Box You'll Ever Buy." As is shown in the below screenshots, the video identifies the following features of Leo's Loo Too: (1) self-cleaning; (2) voice controls; (3) app connection; (4) pet sensing; and (5) post-exit cleaning.



Defendants' Answer to TA Complaint
Affirmative Defenses and Counterclaims
Case No. 5:22-cv-04261-PCP

62.     Defendants admit that Smarty Pear's website states that Leo's Loo Too is "The Smartest Self-Cleaning Litter Box." Defendants admit that the Leo's Loo Too webpage features a video stating "Say Hello to the Smartest Self-Cleaning Litter Box". Defendants admit that the video identifies the following features of Leo's Loo Too: (1) self-cleaning; (2) voice controls; (3) app connection; (4) pet sensing; and (5) post-exit cleaning. To the extent not expressly admitted, Defendants deny the allegation in paragraph 62. Further, Whisker's allegation relating to the characterizations of "Smartest" in paragraph 62 was dismissed as an insufficient basis for Plaintiff's false advertising claims (Counts 6 and 7). Dkt. 56 at p. 3.

Paragraph 63: Thus, consumers may plausibly understand "smartest" to refer to the fact that each of the above features is present in Leo's Loo Too. The necessary implication of "smartest" is that other products in the market lack those features. Each of those features, however, is present in the LITTER-ROBOT product (and, for that matter, in the Chinese product). Accordingly, Smarty Pear and Madeiras's factual representation that Leo's Loo Too is the "smartest self-cleaning litter box" is false and misleading. Moreover, such a deception is material to consumers. In a head-to-head product review between Leo's Loo Too and the LITTER-ROBOT 3 CONNECT product, the reviewer noted that the "advanced and hi-tech stuff" in Leo's Loo Too weighed in its advantage.[18]

[18] Chesterman, Leo's Loo Too VS Litter Robot, supra n.17.

63.     Defendants deny that Smarty Pear and Madeiras's statements that Leo's Loo Too is the "smartest self-cleaning litter box" is false or misleading. Defendants deny the remaining allegations in paragraph 63. Further, Whisker's allegation relating to the characterizations of "Smartest" in paragraph 63 was dismissed as an insufficient basis for Plaintiff's false advertising claims (Counts 6 and 7). Dkt. 56 at p. 3.

Paragraph 64: Finally, Smarty Pear and Madeiras assert on Smarty Pear's website that "[o]ver half a million cats and their owners have made the transition to a litter-free life with Pear Family[.]" The necessary implication of this statement is that over 500,000 "cats and their owners" are using Leo's Loo or Leo's Loo Too devices. This conveys the impression that there

have been hundreds of thousands of sales of Leo's Loo and Leo's Loo Too, which would tend to increase consumer confidence in the products.



64.   Denied

Paragraph 65: On information and belief, however, this is false and misleading. By comparison, over 22 years in business, Whisker has sold over 700,000 LITTER-ROBOT devices. It is implausible that Smarty Pear and Madeiras have sold even a fraction of that amount after scarcely a year in business.

65.   Denied.

RESPONSE TO
INFRINGEMENT OF U.S. PATENT NO. 11,399,502[19]

[19] Any images shown below in which components of Leo's Loo Too are illustrated in an exploded view or disassembled view are for illustration purposes and context/clarity. Leo's Loo Too infringes when the product is fully assembled.

Paragraph 66: Whisker realleges and incorporates by reference paragraphs 1 through 65 of this Complaint as if fully set forth herein.

66.   Defendants reassert and incorporate specifically by reference their responses to

paragraphs 1 through 65 of the Third Amended Complaint as if fully set forth herein.

Paragraph 67: Defendants have and continue to directly and indirectly infringe one or more claims of the '502 Patent, including at least claim 1 of the '502 Patent, literally and/or under the doctrine of equivalents. Defendants have and continue to directly and indirectly infringe one or more claims of the '502 Patent, including at least claim 1 of the '502 Patent, literally and/or under the doctrine of equivalents, by or through making, using, selling, importing, offering for sale, and/or providing and causing to be used Leo's Loo Too. Defendants have acted without authority or license from Whisker, in violation of 35 U.S.C. § 271(a).

     67.     Denied.

Paragraph 68: Independent claim 1 of the '502 Patent recites:

1. A device which is an automated litter device comprising:

a) a chamber configured to hold litter to allow an animal to enter and excrete a waste;

b) a waste drawer in communication with the chamber and configured to receive the waste;

c) one or more sensors configured to detect one or more conditions of the device and transmit one or more signals related to the one or more conditions;

d) a controller in communication with the one or more sensors and is adapted to receive the one or more signals, wherein the controller is configured to determine one or more positions of the chamber based on the one or more signals received from the one or more sensors and interpret the one or more signals as one or more status signals;

e) a communication module in communication with the controller and adapted to communicate with a user interface via a network to transmit the one or more status signals to the user interface, receive one or more instruction signals via the user interface, or both;

wherein the communication module is a wireless communication module and is in wireless communication with the user interface via the network; and wherein the user interface is adapted to transmit the one or more instruction signals

wirelessly to the controller via the network to change at least one of the one or more conditions of the device.

     68.     Admitted.

Paragraph 69: Leo's Loo Too contains each of the above limitations and Defendants have infringed at least claim 1 of the '502 Patent as detailed in Exhibit 5. The infringement allegations included in Exhibit 5 are preliminary only and Whisker reserves the right to amend these allegations as the case progresses.

     69.     Denied.

Paragraph 70: Leo's Loo Too is an automated litter device.

70.     Admitted.

Paragraph 71: Leo's Loo Too has a chamber configured to hold litter to allow an animal to enter and excrete a waste. Shown below is the chamber in Leo's Loo Too.



[20] Leo's Loo Too, supra n.14; Leo's Loo Too Manual, at 6, supra n.13.

71.     Defendants deny that their Leo's Loo Too products infringe any valid asserted claims of the '502 patent.

Paragraph 72: Leo's Loo Too has a waste drawer in communication with the chamber and configured to receive the waste. Shown below is the waste drawer in Leo's Loo Too.

Defendants' Answer to TA Complaint
Affirmative Defenses and Counterclaims
Case No. 5:22-cv-04261-PCP

Leo's Loo Too[21]



---

[21] Leo's Loo Too, supra n.14.

72.     Defendants deny that their Leo's Loo Too products infringe any valid asserted

claims of the '502 patent.

Paragraph 73: Leo's Loo Too has one or more sensors configured to detect one or more
conditions of the device and transmit one or more signals related to the one or more conditions.

73.     Defendants deny that their Leo's Loo Too products infringe any valid asserted

claims of the '502 patent.

Paragraph 74: Leo's Loo Too has a controller in communication with one or more sensors and is
adapted to receive the one or more signals.

74.     Defendants deny that their Leo's Loo Too products infringe any valid asserted

claims of the '502 patent.

Paragraph 75: The controller of Leo's Loo Too is configured to determine one or more positions
of the chamber based on the one or more signals received from the one or more sensors and
interpret the one or more signal as one or more status signals.

75.     Defendants deny that their Leo's Loo Too products infringe any valid asserted

claims of the '502 patent.

Paragraph 76: Shown below are sensors and the controller of Leo's Loo Too.

Leo's Loo Too[22]





Defendants' Answer to TA Complaint
Affirmative Defenses and Counterclaims
Case No. 5:22-cv-04261-PCP

[22] Photographs of Leo's Loo Too product; Leo's Loo Too Manual, supra n.13, at 5; Leo's Loo Too, supra n.14.

Leo's Loo Too[22]



76.       Defendants deny that their Leo's Loo Too products infringe any valid asserted

claims of the '502 patent.


Paragraph 77: Leo's Loo Too has a communication module in communication with the controller
and adapted to communicate with a user interface via a network to transmit the one or more
status signals to the user interface, receive one or more instruction signals via the user interface,
or both.

77.       Defendants deny that their Leo's Loo Too products infringe any valid asserted

claims of the '502 patent.


Paragraph 78: The communication module of Leo's Loo Too is a wireless communication
module and is in wireless communication with the user interface via the network.

78.       Defendants deny that their Leo's Loo Too products infringe any valid asserted

claims of the '502 patent.


Paragraph 79: The user interface of Leo's Loo Too is adapted to transmit the one or more
instruction signals wirelessly to the controller via the network to change at least one of the one or
more conditions of the device.

79.       Defendants deny that their Leo's Loo Too products infringe any valid asserted

claims of the '502 patent.


Paragraph 80: Shown below are the communication module in wireless communication with the
user interface in Leo's Loo Too.

| **Leo's Loo Too[23]** |
| --- |

Defendants' Answer to TA Complaint
Affirmative Defenses and Counterclaims
Case No. 5:22-cv-04261-PCP



[23] Leo's Loo Too Manual, supra n.13, at 2, 10; Leo's Loo Too, supra n.14.

80.    Defendants deny that their Leo's Loo Too products infringe any valid asserted claims of the '502 patent.

Paragraph 81: Defendants have induced and continue to induce others to infringe at least one claim of the '502 Patent under 35 U.S.C. § 271(b) by, among other things, actively aiding and abetting others to infringe with specific intent or willful blindness, such others including, but not limited to, Defendants' partners, clients, customers, and end users, whose use of the Leo's Loo Too constitutes direct infringement of at least one claim of the '502 Patent.

81.    Defendants deny that their Leo's Loo Too products infringe any valid asserted claims of the '502 patent.

Paragraph 82: In particular, Defendants' actions that aid and abet others, such as its partners, clients, customers, and end users, to infringe include advertising and distributing Leo's Loo Too and providing instruction materials, training, and services regarding Leo's Loo Too.

82.     Denied.

Paragraph 83: As a result of Defendants' direct and indirect infringement of the '502 Patent, Whisker has suffered monetary damages and is entitled to no less than a reasonable royalty for Defendants' use of the claimed inventions of the '502 Patent, together with interest and costs determined by the Court. Whisker will continue to suffer damages in the future unless Defendants' infringing activities are enjoined by this Court.

83.     Denied.

Paragraph 84: Whisker will be irreparably harmed unless a permanent injunction is issued enjoining Defendants and Defendants' agents, employees, affiliates, and others acting in concert with Defendants from infringing the '502 Patent.

84.     Denied.

RESPONSE TO
INFRINGEMENT OF A REGISTERED TRADEMARK
(LANHAM ACT § 32, 15 U.S.C. § 1114)

Paragraph 85: Whisker realleges and incorporates by reference paragraphs 1 through 65 of this Complaint as if fully set forth herein.

85.     Defendants reassert and incorporate specifically by reference their responses to

paragraphs 1 through 65 of the Third Amended Complaint as if fully set forth herein.

Paragraph 86: Whisker owns U.S. Trademark Registration Nos. 4,674,124; 4,674,125; 5,259,515; 6,227,960; 6,570,005; 6,668,860; 6,734,934; 6,734,935; and 6,799,211 for the trademark LITTERROBOT and variations (the "Litter-Robot Marks"), as well as U.S. Trademark Registration No. 6,383,646 for the trademark NEVER SCOOP AGAIN.

86.     Defendants deny the allegations in paragraph 86 because Defendants lack

knowledge or information sufficient to form a belief as to the truth of the allegations in

paragraph 86.

Paragraph 87: Whisker is presently using the Litter-Robot Marks and NEVER SCOOP AGAIN®
mark in commerce in the United States in connection with the sale, offering for sale, distribution,
and advertising of automated litter boxes.

87.     Defendants deny the allegations in paragraph 87 because Defendants lack

knowledge or information sufficient to form a belief as to the truth of the allegations in

paragraph 87.

Paragraph 88: Whisker has not consented to Smarty Pear and Madeiras's use of the Litter-Robot
Marks or NEVER SCOOP AGAIN® mark.

88.     Defendants deny the allegations in paragraph 88 because Defendants lack

knowledge or information sufficient to form a belief as to the truth of the allegations in

paragraph 88.

Paragraph 89: Smarty Pear and Madeiras's use of the Litter-Robot Marks and NEVER SCOOP
AGAIN® mark are likely to cause confusion, mistake, and deception by creating the false and
misleading impression that Whisker has sponsored, endorsed, or approved Smarty Pear's social
media posts touting the Leo's Loo and Leo's Loo Too.

89.     Denied.

Paragraph 90: It is not necessary for Smarty Pear and Madeiras to use the Litter-Robot Marks to
identify its products in any of its posts. The vast majority of Smarty Pear's posts promoting the
Leo's Loo and Leo's Loo Too products made no comparison to any other products.

90.     Denied.

Paragraph 91: The above-described acts and practices constitute trademark infringement of the
Litter-Robot Marks in violation of Section 32 of the Lanham Act (15 U.S.C. § 1114).

91.     Denied,.

Paragraph 92: On information and belief, Smarty Pear and Madeiras's conduct was undertaken
willfully. Smarty Pear and Madeiras have refused to cease their infringing conduct following
notice from Whisker, and thus Smarty Pear and Madeiras's continued infringement is therefore
willful.

92.     Denied.

Paragraph 93: Whisker has been and will continue to be injured by Smarty Pear and Madeiras's conduct. This injury includes direct diversion of sales from Whisker to Smarty Pear, injury to Whisker's reputation, and loss of goodwill associated with Whisker's marks, brands, and products.

     93.    Denied.

Paragraph 94: Unless Smarty Pear and Madeiras's infringing conduct is enjoined by this Court, the consuming public will continue to be confused and Whisker will suffer a loss of sales and goodwill, causing irreparable injury.

     94.    Denied.

Paragraph 95: Whisker has no adequate remedy at law and is therefore entitled to injunctive relief pursuant to 15 U.S.C. § 1116.

     95.    Denied.

Paragraph 96: Pursuant to 15 U.S.C. § 1117(a), Whisker is also entitled to recover (i) Smarty Pear and Madeiras's profits, (ii) Whisker's ascertainable damages, and (iii) Whisker's costs of suit. Moreover, Smarty Pear and Madeiras's willful infringement renders this an exceptional case entitling Whisker to reasonable attorney fees.

     96.    Denied.

RESPONSE TO
UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN
(LANHAM ACT § 43(A)(1)(A), 15 U.S.C. § 1125(A)(1)(A))

Paragraph 97: Whisker realleges and incorporates by reference paragraphs 1 through 65 of this Complaint as if fully set forth herein.

     97.    Defendants reassert and incorporate specifically by reference their responses to

paragraphs 1 through 65 of the Third Amended Complaint as if fully set forth herein.

Paragraph 98: Smarty Pear and Madeiras have used the Litter-Robot Marks and NEVER SCOOP AGAIN® mark, which are protected under common law, in commerce and without Whisker's authorization or consent.

     98.    Denied.

Paragraph 99: Smarty Pear and Madeiras's use of the Litter-Robot Marks and NEVER SCOOP AGAIN® mark are likely to cause confusion, mistake, and deception by creating the false and misleading impression that Whisker has sponsored, endorsed, or approved Smarty Pear's social media posts touting the Leo's Loo and Leo's Loo Too.

      99.     Denied.

Paragraph 100: Smarty Pear and Madeiras's use of the Litter-Robot Marks and NEVER SCOOP AGAIN® mark create a false suggestion of an affiliation or connection between Defendants and Whisker.

      100.     Denied.

Paragraph 101: Smarty Pear and Madeiras's actions constitute unfair competition and false designation of origin in violation of 15 U.S.C. § 1125(a).

      101.     Denied.

Paragraph 102: On information and belief, Smarty Pear and Madeiras's conduct was undertaken willfully. Smarty Pear and Madeiras have refused to cease their infringing conduct following notice from Whisker, and thus Smarty Pear and Madeiras's continued infringement is therefore willful.

      102.     Denied.

Paragraph 103: Whisker has been and will continue to be injured by Smarty Pear and Madeiras's conduct. This injury includes direct diversion of sales from Whisker to Smarty Pear, injury to Whisker's reputation, and loss of goodwill associated with Whisker's marks, brands, and products.

      103.     Denied.

Paragraph 104: Unless Smarty Pear and Madeiras's infringing conduct is enjoined by this Court, the consuming public will continue to be confused and Whisker will suffer a loss of sales and goodwill, causing irreparable injury.

      104.     Denied.

Paragraph 105: Whisker has no adequate remedy at law and is therefore entitled to injunctive relief pursuant to 15 U.S.C. § 1116.

      105.     Denied.

Paragraph 106: Pursuant to 15 U.S.C. § 1117(a), Whisker is also entitled to recover (i) Smarty Pear and Madeiras's profits, (ii) Whisker's ascertainable damages, and (iii) Whisker's costs of suit. Moreover, Smarty Pear and Madeiras's willful infringement renders this an exceptional case entitling Whisker to reasonable attorney fees.

106.    Denied.


RESPONSE TO
FALSE ADVERTISING
(LANHAM ACT § 43(A)(1)(B), 15 U.S.C. § 1125(A)(1)(B))


Paragraph 107: Whisker realleges and incorporates by reference paragraphs 1 through 65 of this Complaint as if fully set forth herein.

107.    Defendants reassert and incorporate specifically by reference their responses to

paragraphs 1 through 65 of the Third Amended Complaint as if fully set forth herein.


Paragraph 108: Smarty Pear and Madeiras are making false, misleading, and deceptive representations of fact in their promotion and sale of the Leo's Loo and Leo's Loo Too products.

108.    Denied.


Paragraph 109: Smarty Pear and Madeiras's statements misrepresent the nature, characteristics, and qualities of Smarty Pear and its products, and are material to consumer purchasing decisions.

109.    Denied.

Paragraph 110: The above-described acts and practices constitute false advertising in violation of Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)).

110.    Denied.

Paragraph 111: Whisker has standing to sue Smarty Pear and Madeiras for false advertising under the Lanham Act. Whisker and Smarty Pear are direct competitors selling self-cleaning litter boxes to the same consumers. Whisker has been and will continue to be injured by Smarty Pear and Madeiras's conduct. This injury includes direct diversion of sales from Whisker to Smarty Pear, injury to Whisker's reputation, and loss of goodwill associated with Whisker's marks, brands, and products. Whisker's injury is proximately caused by Smarty Pear and Madeiras's false and misleading statements.

111.    Denied.

Paragraph 112: On information and belief, Smarty Pear and Madeiras's conduct was undertaken willfully. Smarty Pear and Madeiras have refused to cease their infringing conduct following notice from Whisker, and thus Smarty Pear and Madeiras's continued conduct is therefore willful.

112.    Denied.

Paragraph 113: Unless Smarty Pear and Madeiras's infringing conduct is enjoined by this Court, the consuming public will continue to be confused and Whisker will suffer a loss of sales and goodwill, causing irreparable injury.

113.    Denied.

Paragraph 114: Whisker has no adequate remedy at law and is therefore entitled to injunctive relief pursuant to 15 U.S.C. § 1116.

114.    Denied.

Paragraph 115: Pursuant to 15 U.S.C. § 1117(a), Whisker is also entitled to recover (i) Smarty Pear and Madeiras's profits, (ii) Whisker's ascertainable damages, and (iii) Whisker's costs of suit. Moreover, Smarty Pear and Madeiras's willful infringement renders this an exceptional case entitling Whisker to reasonable attorney fees.

115.    Denied.

RESPONSE TO
VIOLATION OF FALSE ADVERTISING LAW
(CAL. BUS. & PROF. CODE § 17500 ET SEQ.)

Paragraph 116: Whisker realleges and incorporates by reference paragraphs 1 through 65 of this Complaint as if fully set forth herein.

116.    Defendants reassert and incorporate specifically by reference their responses to

paragraphs 1 through 65 of the Third Amended Complaint as if fully set forth herein.

Paragraph 117: Smarty Pear and Madeiras are making untrue or misleading statements in their promotion and sale of the Leo's Loo and Leo's Loo Too products.

117.    Denied.

Paragraph 118: Smarty Pear and Madeiras's statements misrepresent the nature, characteristics, and qualities of Smarty Pear and its products, and are material to consumer purchasing decisions.

118.    Denied.

Paragraph 119: Smarty Pear and Madeiras knew or should have known through the exercise of reasonable care that the statements were untrue or misleading. As such, Smarty Pear and Madeiras have violated the California False Advertising Law (Cal. Bus. & Prof. Code § 17500).

119.    Denied.

Paragraph 120: Whisker has suffered an injury in fact, including the loss of money or property, as a result of Smarty Pear and Madeiras's unfair, unlawful, and/or deceptive practices. Consumers relied on the representations in Smarty Pear and Madeiras's untrue or misleading statements as described herein, which in turn resulted in damage to Whisker. Had Smarty Pear and Madeiras not made such statements, consumers would have altered their purchasing behavior.

120.    Denied.

Paragraph 121: All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Smarty Pear and Madeiras's business.

121.    Denied.

Paragraph 122: Whisker requests that this Court enter such orders or judgments as may be necessary to enjoin Smarty Pear and Madeiras from continuing their unfair, unlawful, and/or deceptive practices and to restore Whisker any money Smarty Pear and Madeiras acquired by unfair competition, including restitution and/or disgorgement, and for other relief set forth below.

122.    Denied.

Paragraph 123: Whisker is also entitled to attorneys' fees pursuant to California Code of Civil Procedure § 1021.5.

123.    Denied.

RESPONSE TO
VIOLATION OF UNFAIR COMPETITION LAW
(CAL. BUS. & PROF. CODE § 17200 ET SEQ.)

Paragraph 124: Whisker realleges and incorporates by reference paragraphs 1 through 65 of this Complaint as if fully set forth herein.

124.    Defendants reassert and incorporate specifically by reference their responses to

paragraphs 1 through 65 of the Third Amended Complaint as if fully set forth herein.

Paragraph 125: By the acts described herein, Smarty Pear and Madeiras have engaged in unlawful and unfair business practices that have injured and will continue to injure Whisker's business and property in violation of the California Unfair Competition Law (Cal. Bus. & Prof. Code § 17200 et seq.

125.    Denied.

Paragraph 126: Smarty Pear and Madeiras's acts alleged herein are unlawful as they violate the Patent Act, the Lanham Act, and the California False Advertising Law.

126.    Denied.

Paragraph 127: Smarty Pear and Madeiras's acts alleged herein are unfair as Defendants have made advertising that is false or has a tendency to deceive or confuse the public.

127.    Denied.

Paragraph 128: Smarty Pear and Madeiras's acts alleged herein have caused monetary damages to Whisker in an amount to be proven at trial.

128.    Denied.

Paragraph 129: Whisker has been and will continue to be injured by Smarty Pear and Madeiras's conduct. This injury includes direct diversion of sales from Whisker to Smarty Pear, injury to Whisker's reputation, and loss of goodwill associated with Whisker's marks, brands, and products.

129.    Denied.

Paragraph 130: Unless Smarty Pear and Madeiras's infringing conduct is enjoined by this Court, the consuming public will continue to be confused and Whisker will suffer a loss of sales and goodwill, causing irreparable injury. Whisker has no adequate remedy at law and is therefore entitled to injunctive relief.

130.    Denied.

RESPONSE TO
UNFAIR COMPETITION UNDER CALIFORNIA COMMON LAW

Paragraph 131: Whisker realleges and incorporates by reference paragraphs 1 through 65 of this Complaint as if fully set forth herein.

131.    Defendants reassert and incorporate specifically by reference their responses to

paragraphs 1 through 65 of the Third Amended Complaint as if fully set forth herein.

Paragraph 132: Smarty Pear and Madeiras, to induce the public to purchase its products, have disseminated untrue and misleading statements about its own products, and falsely claimed an association between Defendants and Whisker.

132.    Denied.

Paragraph 133: Smarty Pear and Madeiras knew or should have known by the exercise or reasonable care that its advertising and promotions were untrue and misleading.

133.    Denied.

Paragraph 134: Whisker has been and is likely to be injured as a result of Smarty Pear and Madeiras's conduct.

134.    Denied.

Paragraph 135: Unless Smarty Pear and Madeiras's infringing conduct is enjoined by this Court, the consuming public will continue to be confused and Whisker will suffer a loss of sales and goodwill, causing irreparable injury. Whisker has no adequate remedy at law and is therefore entitled to injunctive relief.

135.    Denied.

RESPONSE TO
TRADEMARK INFRINGEMENT UNDER CALIFORNIA COMMON LAW

Paragraph 136: Whisker realleges and incorporates by reference paragraphs 1 through 65 of this Complaint as if fully set forth herein.

Defendants' Answer to TA Complaint
Affirmative Defenses and Counterclaims
Case No. 5:22-cv-04261-PCP

136.     Defendants reassert and incorporate specifically by reference their responses to

paragraphs 1 through 65 of the Third Amended Complaint as if fully set forth herein.


Paragraph 137: As a result of its use of the Litter-Robot Marks in rendering its services in
California, Whisker owns California common law rights in the Litter-Robot Marks from at least
as early as 2000 and to the NEVER SCOOP AGAIN mark since at least as early as 2013.

137.     Denied.

Paragraph 138: The acts and conduct of Smarty Pear and Madeiras as alleged in this Complaint,
and in particular the use of the infringing marks, constitute trademark infringement under
California common law

138.     Denied.

Paragraph 139: Smarty Pear and Madeiras's acts alleged herein have caused monetary damages
to Whisker in an amount to be proven at trial.

139.     Denied.

Paragraph 140: Whisker has been and will continue to be injured by Smarty Pear and Madeiras's
conduct. This injury includes direct diversion of sales from Whisker to Smarty Pear, injury to
Whisker's reputation, and loss of goodwill associated with Whisker's marks, brands, and
products.

140.     Denied.

Paragraph 141: Unless Smarty Pear and Madeiras's infringing conduct is enjoined by this Court,
the consuming public will continue to be confused and Whisker will suffer a loss of sales and
goodwill, causing irreparable injury. Whisker has no adequate remedy at law and is therefore
entitled to injunctive relief.

141.     Denied.


## RESPONSE TO "PRAYER FOR RELIEF"

142.     Responding to the unnumbered paragraphs and each of their subparts under the

heading "PRAYER FOR RELIEF," Defendants deny that Plaintiff is entitled to any damages,

costs of suit, attorney's fees, injunctive relief or any other form of relief. Plaintiff's Prayer For

Relief should be denied in its entirety and with prejudice, and Plaintiff should be awarded nothing. Defendants further deny each and every allegation in Plaintiff's Prayer for Relief.

PREAMBLE TO AFFIRMATIVE DEFENSES

143.    Defendants allege and assert the following defenses in response to the allegations in the TA Complaint, undertaking the burden of proof only as to those defenses deemed affirmative defenses by law, regardless of how such defenses are denominated herein. Defendants reserve the right to rely upon any of the following or additional defenses to claims asserted by Plaintiff to the extent that such defenses are supported by information developed through discovery or evidence at trial and thus reserve the right to amend their Answer and Affirmative Defenses, including to modify, amend, and/or expand upon its defenses once discovery progresses. Without conceding that any of the following defenses must necessarily be pled, or that any of the following defenses is not already at issue by virtue of the foregoing denials, and without reducing or removing Plaintiff's burdens of proof on the affirmative claims against Defendants, Smarty Pear and Christopher Madeiras allege and assert as follows:

FIRST DEFENSE<br>(Non-Infringement)

144.    Defendants have not infringed, and are not infringing, literally or under the doctrine of equivalents, directly, or jointly, any valid and enforceable claim of the '502 Patent.

145.    This case is subject to the Local Rules of Practice for Patent Cases before the United States District Court for the Northern District of California. Patent L.R. 1-2.  As an initial matter, Whisker is required to provide a disclosure of asserted claims and infringement contentions and supporting documentation. Patent L.R. 3-1, 3-2. At the Initial Case Management Conference, the Court adopted Whisker's proposed schedule. Dkt. 65. Pursuant to that Schedule,

Whisker's disclosure of its infringement contentions was served on May 26, 2023. Defendants

will disclose their theories and supporting facts to rebut Whisker's infringement contentions and

to support their non-infringement counterclaim during the pre-trial phases of this case in

accordance with the requirements of the Federal Rules of Civil Procedure, the Local Rules of

Practice in Civil Proceedings before the courts in this District, the Local Rules of Practice for

Patent Cases before the courts in this District, the Standing Order for Civil Cases Before Judge

Vince Chhabria, and the Schedule set by the Court for this matter.

146.    Further, Defendants have not infringed contributorily or by inducement any valid

and enforceable claim of the '502 Patent because there is no direct infringement; the Accused

Products do not fall within the claims of the '502 Patent. Moreover, to the extent Plaintiff asserts

that Defendants indirectly infringe the '502 Patent, including by inducement of infringement,

Defendants are not liable, because, at a minimum, Defendants lack the requisite intent or

knowledge to induce direct infringement of the '502 Patent by another. Defendants also lack the

knowledge required for a finding of contributory infringement under 35 U.S.C. § 271(c).

SECOND DEFENSE
(Invalidity)

147.    Each of the claims of the '502 Patent is invalid for failure to satisfy one or more

conditions for patentability set forth under 35 U.S.C. including, but not limited to §§ 101, 102,

103, and 112 *et seq.,* and the rules, regulations, and laws pertaining to those provisions, including

the applicable provisions of Title 37 of the Code of Federal Regulations.

148.    This case is subject to the Local Rules of Practice for Patent Cases before the

United States District Court for the Northern District of California. Patent L.R. 1-2.  Defendants

are required to provide a disclosure of their invalidity contentions following Whisker's disclosure

of its infringement contentions.  Patent L.R. 3-3, 3-4. At the Initial Case Management

Conference, the Court adopted Whisker's proposed schedule. Dkt. 65. Pursuant to that Schedule

and Order of July 10, 2023 (Dkt. 91), Defendants' provided Whisker with their invalidity

contentions for U.S. Patent No. 11,399,502 (the "'502 patent) on July 20, 2023.

THIRD DEFENSE
(Prosecution History Estoppel/Disclaimer)

149.    Plaintiff is estopped from construing the claims of the '502 Patent to cover or

include, either literally or by application of the doctrine of equivalents, products manufactured,

used, imported, sold, or offered for sale by Defendants or methods used by Defendants because

of amendments, admissions, representations, or statements made before the USPTO during

prosecution of the applications leading to the issuance of the '502 Patent or applications

related thereto, because of disclosures or language in the specifications of the '502 Patent,

and/or because of limitations in the claims of the '502 Patent.

FOURTH DEFENSE
(Limitations on Recovery)

150.    Plaintiff's claims for damages and other remedies are limited by 35 U.S.C. §§ 286

and/or 288. Plaintiff is barred by 35 U.S.C. § 288 from recovering costs associated with this

action.

FIFTH DEFENSE
(Barring of Claims for Injunctive Relief)

151.    Plaintiff is not entitled to injunctive relief against Defendants because any alleged

injury is not immediate or irreparable, Plaintiff has an adequate remedy at law for its alleged

injury, the balance of hardships does not favor an injunction.

SIXTH DEFENSE
(No Exceptional Case)

152.    Plaintiff cannot prove that this is an exceptional case that justifies an award of attorney fees against Defendants pursuant to 35 U.S.C. § 285.

## DEFENDANTS' FIRST AMENDED COUNTERCLAIMS

PurLife Brands, Inc. d/b/a Smarty Pear ("Smarty Pear"), a Delaware corporation, and Christopher Madeiras ("Madeiras"), an individual, by their undersigned counsel, counterclaims against, Automated Pet Care Products, LLC d/b/a Whisker ("Whisker"), a Michigan corporation, as follows:[2]

## INTRODUCTION

Smarty Pear is a California based technology company dedicated to improving life for pets and pet parents through innovative smart products like Leo's Loo and Leo's Loo Too.

Leo's Loo was named after Smarty Pear's founder and CEO's oversized, loving, and sometimes cantankerous cat. Leo was badly injured and eating from a dumpster at a young age when he was rescued. Thankfully, he went on to live over 18 wonderful years and provided love and fun memories to all he met.

## PARTIES

---

[2] Whisker filed its Second Amended Complaint (Dkt. No. 58) on May 3, 2023. Defendants Smarty Pear and Christopher Madeiras filed their Answer and Counterclaims in response to the Second Amended Complaint (Dkt. No. 68) on May 17, 2023. Thereafter, Whisker moved to dismiss Smarty Pear and Madeiras' Counterclaims (Dkt. No. 82). On July 17, 2023, the Court entered an Order (Dkt. No. 95) dismissing Smarty Pear and Madeiras' Counterclaims with leave to amend within 14 days of the Order. Thereafter, Smarty Pear and Madeiras filed their First Amended Counterclaims (Dkt. No. 105) which are expressly incorporated verbatim in Defendants' Answer to Whisker's Third Amended Complaint.

1.      Counterclaim Plaintiff, PurLife Brands, Inc. d/b/a Smarty Pear ("Smarty Pear") is a corporation organized under the laws of the State of Delaware with its principal place of business at 228 Hamilton Avenue #3107 3rd Floor Palo Alto CA 94301.

2.      Counterclaim Plaintiff, Christopher Madeiras ("Madeiras") is, and at all relevant times was, the Founder and Chief Executive Officer of Smarty Pear, and resides in California.

3.      Counterclaim Defendant, Automated Pet Care Products, LLC d/b/a Whisker ("Whisker") is a limited liability company organized under the laws of the State of Michigan with its principal place of business at 1080 W Entrance Drive, Auburn Hills, Michigan 48326.

4.      Smarty Pear and Whisker are direct competitors in the automated pet care market.

<u>JURISDICTION AND VENUE</u>

5.      This Court has subject matter jurisdiction over Smarty Pear's federal claims under 28 U.S.C. § 1331 and § 1338(a). The federal claims arise under the Lanham Act, 15 U.S.C. § 1125. This Court has supplemental subject matter jurisdiction over Smarty Pear's state-law claims under 28 U.S.C. § 1367(a).

6.      Jurisdiction is also proper under 28 U.S.C. § 1332(a)(2) as the matter is between parties in different states (Counterclaim Plaintiffs in California, and Counterclaim Defendant in Michigan), and because the amount in controversy, exclusive of interest and costs, exceeds $75,000.

7.      All other claims asserted in this Counterclaim arise out of the same transaction or occurrence, so that this Court has supplemental jurisdiction over all additional claims asserted in this case under 28 U.S.C. § 1367(a).

8.      Personal jurisdiction over Whisker is proper because Whisker has submitted itself to the jurisdiction of this Court by, among other things, filing the SA Complaint. Further, this

Court has personal jurisdiction over Whisker because it regularly conducts business, including advertising, offering to sell, and selling its products in this District and elsewhere in the United States. Lastly, Whisker's wrongful acts complained of in this Counterclaim took place, and have caused injury to Smarty Pear and Madeiras, within this judicial district.

9.     Venue is proper in the Northern District of California pursuant to 28 U.S.C. § 1391(b) and (c), and § 1400(a)-(b), because Whisker is subject to personal jurisdiction in this District and has appeared in this action and initiated this action by filing claims against Smarty Pear and Madeiras in this District. Venue is also proper in this District because the acts that are the subject of this Counterclaim were committed at least in part in this District.

10.     This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331, 1338(a), 2201, and 2202 as to Defendants' counterclaims against Whisker pursuant to the patent laws of the United States, Title 35, United States Code, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. An actual, substantial, and continuing justiciable controversy exists between Whisker and Defendants based on Whisker having filed a SA Complaint against Defendants alleging infringement of the '502 Patent with its Leo's Loo Too product with respect to which Defendants require a declaration of their rights by this Court. Specifically, the controversy concerns non-infringement and invalidity of the '502 Patent.

<u>GENERAL ALLEGATIONS</u>

11.     In January 2016, Christopher Madeiras (Senior Vice President for Petcube's Worldwide Sales) and Yaroslav Azhnyuk (CEO of Petcube) met Jacob Zuppke for the first time at the CES show in Las Vegas. Thereafter, Christopher Madeiras exchanged emails with Zuppke proposing an exchange of a small number of commercially available products and discussing the

possibility of potential partnerships with retailers and programs. These products were exchanged in that timeframe. As far as Christopher Madeiras knows, Petcube and Whisker never jointly entered into any partnerships with retailers and/or programs. Christopher Madeiras is not aware of any actual business relationship between Petcube and Whisker during the time he was employed at Petcube.

12.     At Yaroslav Azhnyuk's request, Christopher Madeiras provided Zuppke with introductions to Best Buy and Brookstone. Christopher also provided Zuppke with introductions to Amazon and Primal. Christopher Madeiras also gave Zuppke information regarding the sales strategy appropriate for doing business with Chewy.

13.     In March 2016, Christopher Madeiras became aware that Jacob Zuppke (who was at that time Whisker's VP of Business Development) and Vivian Lee (who was at that time Petcube's Chief Marketing Officer), had been discussing the possibility of carrying out a co-marketing promotion. Christopher was not, however, involved with nor did he participate in any discussions about that potential co-marketing promotion, which ultimately did not go forward.

14.     Christopher Madeiras had no business dealings with Whisker or Jacob Zuppke on behalf of Petcube during the time that Madeiras worked for Petcube except for the occasional request by Zuppke for Christopher to provide him with gratuitous sales advice. Christopher enjoys sharing his wealth of experience with others when asked and has done this kind of mentorship through managing large teams and his many roles as a senior leader. As a Petcube employee, Christopher was not a party to any confidentiality agreements or obligations between Whisker and Petcube, he was not aware of any Whisker confidential information, if any, in Petcube's possession, he did not receive or need to have access to any Whisker confidential information to carry out his job as Petcube's Chief Revenue Officer.

15.     In its complaint in this matter, Whisker misrepresents the relationship between

Madeiras and Whisker. Its various complaints in this matter all contain this statement:

> 30. Defendant PurLife Brands, Inc., doing business as "Smarty Pear," launched in or around April 2021 as a direct competitor to Whisker. Its founder, Defendant Christopher Madeiras, was formerly affiliated with a company that did business directly with Whisker. For years, Madeiras had a relationship with Whisker, and through his employment had access to Whisker's confidential information and business plans for the LITTER-ROBOT product.

The only company that this narrative could relate to is Petcube. With the exception of an

exploratory discussion of a co-marketing promotion in 2016,  no "business relationship" between

Petcube and Whisker was established. Christopher Madeiras is not aware of any business that

Petcube did directly with Whisker during the time he was Petcube's Chief Revenue Officer.

Moreover, Christopher Madeiras did not have a "relationship with Whisker" while employed by

Petcube.

16.     Whisker has, as discussed in detail below, spread the false narrative that Madeiras

stole company secrets from Whisker and used those secrets to launch Smarty Pear.

17.     Christopher introduced Zuppke to numerous industry contacts. For example, in

July of 2020 Zuppke asked Christopher if he had any pet buying contacts at Amazon.

Christopher responded by introducing Zuppke to Mary Kreutz, providing her email address and

cell phone number. There were numerous examples of Christopher providing such assistance to

Zuppke both while he was at Petcube and after Christopher had left that company. Christopher

and his company Petcube were not paid in any way for the assistance they provided.

18.     Christopher did not access any confidential information of Whisker in his role as

Chief Revenue Officer at Petcube.

19.     At the time that Christopher was introduced to Zuppke, Petcube was exploring the

possibility of entering the litter robot market and the market for an automatic feeder. That plan

had not come to fruition, however, when Christopher Madeiras left Petcube in the fourth quarter of 2019.

20.     At no point did Zuppke reveal any trade secret or other confidential information to Christopher Madeiras while Christopher was at Petcube. Christopher gratuitously gave Zuppke access to his key industry contacts and free advice about marketing and sales of pet-related products.

21.     In early 2021, Christopher founded Smarty Pear. Smarty Pair was founded to market a competitive litter robot. That product was available outside the United States. Smarty Pear made modifications to that existing product, and began marketing the product in the United States under the name "Leo's Loo".

22.     Leo's Loo was well received, and was considered a lower priced alternative to the comparable Whisker products.

23.     Whisker engaged in an all-out assault on Leo's Loo almost immediately. That assault included a barrage of interference based on untrue statements about the company, the Leo's Loo product and Christopher.

24.     The first line of attack was to immediately threaten Smarty Pear with patent infringement. On April 21, 2021, mere weeks after the product was launched, Whisker sent a cease-and-desist letter to Smarty Pear. The letter contained a one-sentence accusation of patent infringement – "[t]his product infringes claims of U.S. Patent No. 9,433,185 …" Contrary to the misleading impression left by Whisker's pleadings in this matter, Smarty Pear immediately responded, noting that there was no basis for asserting the patent claims, that Leo's Loo did not infringe the '185 patent. Smarty Pear asked Whisker for a claim chart identifying precisely how Whisker supported its bare assertion of infringement.

25.     Whisker never responded to Smarty Pear's request for a claim chart until Whisker sued Smarty Pear over a year later. After forcing Smarty Pear to spend substantial time and money defending against the implausible assertion of the '185 patent, the Court has now twice dismissed the '185 patent from this case, the most recent dismissal with prejudice. Furthermore, as discussed more fully below, Whisker has advertised these infringement allegations to the trade and to consumers.

26.     Whisker's full court press against Smarty Pear also included a wide-spread smear campaign against Smarty Pear – disseminating a consistent message based on phony allegations. Whisker repeatedly stated that Madeiras founded Smarty Pear with information that he stole from Whisker. Whisker repeatedly stated that Smarty Pear was/is on the verge of going out of business. Whisker repeatedly stated that Leo's Loo is a cheap "Chinese" knock-off that violates Whisker's patent rights. Whisker repeatedly stated that Smarty Pear cannot support its product.

27.     Whisker directly interfered with Smarty Pear's contractual relationship with Chewy.com.

28.     Smarty Pear has a valid contract with Chewy. Through that contract, Smarty Pear partners with Chewy to offer exclusively its automated litter box products to Chewy customers online through Chewy's website and its mobile app. That contract provides Chewy with exclusive rights to sell Smarty Pear's Leo's Loo product.

29.     Chewy, Inc. is a publicly traded e-commerce company which describes itself as offering the personalized service of a neighborhood pet store alongside the convenience and speed of e-commerce. Chewy has a selection of more than 110,000 products which it offers for sale to its customers. Chewy had net sales of $10.1 billion in fiscal year 2022 to 20.4 million

active customers and bills itself as the preeminent online source for pet products, supplies and prescriptions. Chewy partners with more than 3000 brands in the pet industry.

30.     Smarty Pear felt that it was having more trouble than would normally be expected in getting its products placed with Chewy. Smarty Pear suspected that Chewy Associate Director of Pet Technology, Erick Goihman, deliberately delayed the launch of Leo's Loo Too through Chewy. Mr. Goihman's wife is friends with Zuppke and went to same college at same time as the CEO of Whisker. Mr. Goihman told Christopher that he went in and out of the area where Whisker and Zuppke are located in Michigan. And Mr. Goihman told Christopher that on several occasions, he visited Whisker, having several get-togethers including with Zuppke. Social media suggests that Mr. Goihman is connected to Zuppke socially, but Smarty Pear could not initially substantiate its suspicions and belief that Whisker through Zuppke had directly interfered with Smarty Pear's relationship with Chewy. Neither Smarty Pear nor Christopher ever heard from Mr. Goihman again after August 24, 2022 when he just disappeared, leaving all of Smarty Pear's holiday sales plans dormant and unexecuted.

31.     Then, in an in-person meeting with Smarty Pear's new Chewy Associate Director of Pet Technology, Brian Choi, on or about August 3, 2022 (long after Smarty Pear was shut out of the 2022 holiday season), he told Christopher Madeiras that representatives of Whisker had told him that Smarty Pear would not be in business much longer. Choi indicated that these representations caused him to pull back his support of Leo's Loo at Chewy.

32.     Smarty Pear is not going out of business. Telling partners such as Chewy that Smarty Pear will not be in business much longer is harmful to Smarty Pear.

33.     This specific information from Choi – while actionable in and of itself - reinforces Smarty Pear's suspicions and the reasonable inference that Whisker has engaged in a pervasive campaign to sabotage Smarty Pear and Madeiras' contractual relationship with Chewy.

34.     Influencers who provide reviews to potential consumers are an important and crucial part of marketing campaigns that companies rely on to promote their products through various social media outlets. Among other things these influencers purport to present objective reviews of products that potential consumers can rely on to make good decisions in product purchasers.

35.     The cat litter robot market is no different. There are a handful of influencers that drive significant sales in the cat litter robot market through their posted reviews.

36.     One such influencer is Jennifer Dean. Ms. Dean runs a cat blog called Floppy Cats and a YouTube Channel, where she writes and vlogs about her Ragdoll cats, reviews products and produces other content. Ms. Dean enjoys a substantial following and significant market power in the cat product industry, including the market for cat litter robots.

37.     Historically Ms. Dean had a close relationship with Whisker, where she purportedly drove over $1M of sales to Whisker. She historically earned a $50 commission for each litter robot that she 'sold' for Whisker.

38.     Smarty Pear began communicating with Ms. Dean in about March of 2022. During that approximate timeframe, two Smarty Pear employees, Mark Budgell and Soo Jin Yi, had a telephone discussion with Ms. Dean. During the call Ms. Dean discussed information that she had been told by Whisker representatives about Smarty Pear and about Mr. Madeiras personally.

39.     Ms. Dean told the Smarty Pear employees that Whisker said to her that the Smarty Pear products were a cheap Chinese "knock off".

40.     Ms. Dean told the Smarty Pear employees that Whisker said to her that Christopher Madeiras stole Whisker corporate secrets and used those secrets in Smarty Pear's business.

41.     Ms. Dean told the Smarty Pear employees that Whisker said to her that Smarty Pear would soon be out of business and would not be able to support its products.

42.     Ms. Dean told the Smarty Pear employees that Whisker said to her that Mr. Madeiras and Smarty Pear fabricated the story about Mr. Madeiras's cat Leo.

43.     All of these statements Whisker made to Ms. Dean were false, and calculated to leave a damaging impression of Smarty Pear products and the people responsible for those products.

44.     Another influencer in this space is Mallory Crusta. Similar to Ms. Dean, Ms. Crusta is the "Head of Content" for a website called All About Cats. All About Cats also has a YouTube Channel that, among other things, reviews cat products.

45.     Smarty Pear employees contacted Ms. Crusta in March of 2022 to see if she would be interested in reviewing the Leo's Loo Too product on her website.

46.     On May 17, 2022 Smarty Pear hosted a call with Ms. Crusta. During that call Ms. Crusta asked a number of questions that led the Smarty Pear people on the call to believe that Ms. Crusta had received a briefing from Whisker similar to the one that Ms. Dean had received. The similarity of the questions, when compared to the information Ms. Dean relayed, leads to the conclusion that Ms. Crusta was given the same false information from Whisker that Ms. Dean received.

47.     Sometime shortly after the call on May 17, 2022, Ms. Crusta informed Smarty Pear that she did not intend to review the Leo's Loo Too. However, a short time later, she posted a video entitled "10 Things You Should Know Before Buying an Automatic Litter Box". In that video Ms. Crusta purported to provide pointers to customers which appear to be based on the "briefing" she received from Whisker. Ms. Crusta discusses the danger of dealing with companies that haven't been around for a long while, that do not have large engineering teams, or that make "distorted" product claims. While Ms. Crusta does not mention the Leo's Loo Too product by name, during the entire video, Leo's Loo Too is displayed prominently in the background.

48.     Soon after the release of the video, Ms. Crusta contacted Smarty Pear and said she changed her mind, and she would like to review the Smarty Pear product. Her request came with specific questions.

49.     Based on interactions with multiple other influencers who generate product reviews, and in light of the specific information received from Ms. Dean, Whisker has apparently engaged in a pervasive and coordinated campaign with influencers to spread false information about the Leo's Loo products, Christopher Madeiras and Smarty Pear. Whisker's unfair conduct prevented Smarty Pear from gaining needed critical support for its products.

50.     Whisker's interference has not been limited to online retailers and influencers. Whisker has also directly interfered with Smarty Pear's advertising and marketing contracts.

51.     In the Spring of 2022, Smarty Pear contracted for paid advertising with Great Pet Media.

52.     When the advertising went live, Great Pet Media received "an angry note" from Whisker's CEO, Jacob Zuppke, demanding that Great Pet Media remove the Smarty Pear

advertising. The demand was based on an alleged relationship between Whisker and a company affiliated with Great Pet Media.

53.     On June 10, 2022, Kevin Campbell of Great Pet Media told Mark Budgell of Smarty Pear that Great Pet Media was pulling the advertising campaign because of the demand made by Whisker.

54.     Whiskers actions directly interfered with an existing contract between Smarty Pear and Great Pet Media, causing Smarty Pear harm.

55.     Christopher Madeiras, along with other employees of Smarty Pear, attended the Global Pet trade show on March 22-23, 2023 in Orlando, Florida.

56.     Also in attendance at the Global Pet trade show was Robert Candelino, the Chief Executive Officer of Radio Systems Corporation (hereafter "Radio Systems").

57.     Radio Systems is a Delaware corporation having a principal place of business at 10427 PetSafe Way, Knoxville, Tennessee 37932. Radio Systems is engaged in the pursuit of commerce in the manufacture and sale of pet training, containment, safety, lifestyle solutions, and other pet and pet-related products and services.

58.     More specifically, Radio Systems business comprises the acquisition, conception, design, development, improvement, evaluation, testing, manufacture, marketing, and sale of pet management products, both mechanical and electronic, and services involving the tracking, locating, training, containment, health, safety, comfort, care, entertainment, or well-being of pets and domestic animals, including but not limited to animal containment systems, remote animal training systems, and bark control systems, pet access systems, and animal feeding systems.

59.     Radio System's CEO, Robert Candelino, had a conversation with Christopher Madeiras at the Global Pet trade show during which Mr. Candelino stated that he was "very

impressed" with Christopher Madeiras' company, Smarty Pear, and told Mr. Madeiras that Radio Systems was "interested in purchasing" Smarty Pear or entering into some type of business relationship.

60.     To facilitate discussions related to a potential transaction or relationship between Radio Systems and Smarty Pear, Robert Candelino sent a proposed "Confidential Disclosure Agreement" to Christopher Madeiras. Mr. Candelino requested that Mr. Madeiras execute the Confidential Disclosure Agreement because Radio Systems and Smarty Pear intended to enter into discussions for the purpose of evaluating the interest, ability, and/or feasibility of the parties to engage in a transaction or enter into a relationship pertaining to the Radio Systems area of business operations or other area of interest to the parties and, if desired, to pursue such relationship or transaction.

61.     Robert Candelino signed the Confidential Disclosure Agreement on behalf of Radio Systems and Christopher Madeiras signed on behalf of Smarty Pear.

62.     Between the execution of the Confidential Disclosure Agreement with Smarty Pear and April 19, 2023, Mr. Robert Candelino had a conversation with Mr. Jacob Zuppke about a possible transaction or business relationship between Whisker and Radio Systems. During that conversation, Mr. Zuppke learned Radio Systems was also interested in a business transaction or relationship Smarty Pear.

63.     Mr.  Candelino informed Mr. Zuppke that he was having business conversations with Madeiras and Smarty Pear. Intending to disrupt that prospective business deal, Mr. Zuppke told Mr. Candelino that Smarty Pear was a company based on confidential information Christopher Madeiras had stolen from Whisker.

64.     Mr. Zuppke also told Mr. Candelino that Christopher Madeiras had been an employee of a company that did business directly with Whisker, and for years had a relationship with Whisker that gave Mr. Madeiras access to Whisker's confidential information and business plans for the Litter Robot product. Mr. Zuppke told Mr. Candelino that he later met with Mr. Madeiras around October 2019 and discussed the upcoming development and launch of the Litter Robot 4 product, Whisker's financial success, and the new business Litterbox.com that Whisker was planning to launch. Mr. Zuppke told Mr. Candelino that Mr. Madeiras never revealed to Mr. Zuppke that he was intending to launch a copycat product.

65.     On April 19, 2023, Christopher Madeiras and Robert Candelino had a conversation during which Mr. Candelino stated that Radio Systems was considering a transaction or business relationship with Whisker and related to Mr. Madeiras the prior conversation Mr. Candelino had with Mr. Zuppke.

66.     On May 1, 2023, Christopher Madeiras advised Robert Candelino that he would not be sharing any Smarty Pear confidential information with Radio Systems as long as Radio Systems was exploring a possible business transaction or relationship with Jacob Zuppke and Whisker.

67.     On or about May 14, 2023, Robert Candelino contacted Christopher Madeiras and told him that Radio Systems had reconsidered and Mr. Candelino said he was "99.9%" certain that Radio Systems would not be pursuing a transaction or business relationship with Whisker.

68.     On May 15, 2023, pursuant to the Confidential Disclosure Agreement, Christopher Madeiras sent via email to Robert Candelino, Smarty Pear's confidential strategic company presentation. That presentation included confidential details about the Leo's Loo version 3 product development and launch strategy developed for some time in collaboration

with Smarty Pear's Chinese manufacturing partner, whose identity was also disclosed in confidence to Radio Systems.

69.     On or about June 1 or 2, 2023, Robert Candelino advised Christopher Madeiras that Radio Systems was no longer interested in pursuing a transaction or business relationship with Smarty Pear. Zuppke's false statements to Candelino at a minimum contributed to Radio Systems not doing business with Smarty Pear.

70.     Sean Awdish sent a threatening message to Madeiras and Smarty Pear on September 2, 2022:

> "Hi,
> Is your business plan to just go to www.litter-robot.com and copy everything they do?
> You aren't original and your name is the stupidest fucking name not only for your product but for anything in general.
> Only pear I ever knew either got eaten or rotted.
> Hashtag LitterRobot on any of your posts again and I will have City to Kitty so far up your ass you'll have hemorrhoids the size of a pear. If you're lucky, they might be 'smart.'
> And tell that little bitch Chris Madeiras if he knows what's good for his sorry ass brand to create his own content because I will flood the social media platforms with all my little fucking minions and destroy the smartypear brand even more than when he named it.
> Have a great weekend,
> -Sean Fucking Awdish"

71.     A review of social media accounts indicates that Mr. Awdish is a close friend of Mr. Zuppke.

72.     Mr. Awdish has advertised his connection to Mr. Zuppke on social media to influencers in the cat product space to seek out their help in "deplorable" sponsorship. For example, on February 6, 2021, Mr. Awdish posted the following exchange on Twitter:



73.    While Smarty Pear does not have access to the internal communications, there is sufficient evidence to suggest that Whisker uses "deplorable sponsors" such as Awdish to manipulate online reviews of Whisker's products and Smarty Pear's products. Such illegitimate, fake and false reviews caused adverse impact on ratings and directly impacted sales negatively of Smarty Pear's products.

74.    This existence of illegitimate, fake and false reviews is reasonably inferred from, and is borne out by, examining review patterns for Whisker products on Chewy. A pattern is observed that when Whisker's overall product reviews fall below a certain threshold, a significant spike thereafter occurs in 5-star reviews that defies statistical analysis. As observed in the graph below, Whisker received a number of 1-star reviews at the end of April and beginning of May of 2021. Whisker then saw an unprecedented spike in counter-balancing 5-star reviews in a very short period. These positive reviews were an anomalous spike of nearly triple the amount of 5-star reviews for any similar time period in the prior six months.



As indicated in the graph above, an even more unprecedented spike in reviews occurred about a month later. In the last two weeks of June 2021, Whisker received the same number of 1-star reviews that it had received in total over the previous six months. At the very end of June Whisker received 25 5-star reviews to buoy the negative drag of the unprecedented string of 1-star reviews. This miraculous run of 5-star reviews was nearly 5 times more 5-star reviews than Whisker received in any similar period over the previous 7 months. That is, nearly 20% of Litter Robot's total reviews of selling in over 240 days -- accumulated in only four (4) days.

75.     The pattern is also evident when examining the reviews surrounding the launch of Whisker's litter robot V4. Whisker launched V4 in January of 2023 at Chewy. Whisker received 115 5-star reviews in the first few weeks after the launch. After this period of apparent manipulation Whisker averaged just 1.7 reviews per week. The chart below represents the number of reviews during the relevant time period.



76.      Based on the pattern of these reviews, Whisker manipulates its online reviews to maintain a favorable rating. This manipulation gives consumers a misleading impression when comparing Whisker products to Smarty Pear products. This misleading impression drives sales from Smarty Pear to Whisker.

77.      The review pattern is especially misleading because the Whisker litter robot V4 was plagued with problems at the launch. The problems were so severe that Zuppke had to issue a formal apology in October of 2022.

78.      Smarty Pear is not the only party monitoring the patterns of Whisker's reviews. During the week of February 26, 2023, Amazon removed 599 reviews from Whisker's Litter Robot 3 listing (approximately 1/3 of the total reviews at that time). The product's overall rating decreased.

79.     According to Amazon, reviews will be removed if they are not genuine reviews

from consumers:

Customer Reviews should give customers genuine product feedback from fellow shoppers. We have
a zero tolerance policy for any review designed to mislead or manipulate customers.

We don't allow anyone to write reviews as a form of promotion.

The following are types of reviews that we don't allow and will remove:

- A review by someone who has a direct or indirect financial interest in the product.
- A review by someone perceived to have a close personal relationship with the product's
  owner, author, or artist.
- A review by the product manufacturer, posing as an unbiased shopper.
- Multiple negative reviews for the same product from one customer.
- A review in exchange for monetary reward.
- A review of a game in exchange for bonus in-game credits.
- A negative review from a seller on a competitor's product.
- A positive review from an artist on a peer's album in exchange for receiving a positive
  review from them.

https://www.amazon.com/gp/help/customer/display.html?nodeId=G3UA5WC5S5UUKB

5G#:~:text=We%20have%20a%20zero%20tolerance,financial%20interest%20in%20the

%20product

80.     A review of the Amazon website did not reveal any other identified reason that

Amazon would remove reviews. Based on this, Smarty Pear concludes that Amazon determined

that 1/3 of the Whisker litter robot V3 reviews violated Amazon's rules.

81.     Smarty Pear believes that Whisker's recruited "deplorables" (or others working

for, or in concert with, Whisker) engage in the same type of review manipulation with respect to

Smarty Pear's products at the direction of Whisker to reduce the overall rating for Smarty Pear's

litter robot products.

82.     Whisker has also disseminated false information by "shopping" this lawsuit to

consumers. At the Pasadena trade show between October 1 and 2, 2022, Whisker representatives,

when asked about the Smarty Pear product, directed consumers to read about this lawsuit online.

<u>COUNT ONE</u>

(Unfair Competition and False Advertising - Lanham Act, 15 U.S.C. § 1125)

125.        Counterclaim Plaintiffs, Smarty Pear and Madeiras, incorporate by reference the allegations set forth in paragraphs 1- 82 of the Counterclaims herein.

126.    In its marketing materials and communications disseminated to potential and actual customers, as well as to influencers / content creators, Whisker and Zuppke have made numerous false and misleading statements.

127.    Whisker's and Zuppke's deceptive statements and conduct have deceived and confused, and/or have the capacity to deceive and confuse, a substantial segment of Intuitive's current and potential consumers.

128.    Whisker's and Zuppke's deceptive statements and conduct are material and likely to influence consumer purchasing decisions.

129.    Both Smarty Pear's Leo's Loo and Leo's Loo Too and Whisker's automatic litter box products are advertised, offered for sale and sold in interstate commerce.

130.    Whisker's and Zuppke's deceptive statements and conduct are willful and made with the knowledge that they are untruthful and/or unlawful.

131.    Smarty Pear and Madeiras have suffered substantial harm, both monetary and irreparable, as a result of Whisker's and Zuppke's actions, and will continue to suffer such substantial harm unless those actions are restrained and enjoined by this Court.

Defendants' Answer to TA Complaint
                                        Affirmative Defenses and Counterclaims
                                        Case No. 5:22-cv-04261-PCP

## COUNT TWO

### (Unfair Competition Law – CA. Stat. § 17200)

90.     Counterclaim Plaintiffs, Smarty Pear and Madeiras, incorporate by reference the allegations set forth in paragraphs 1-82 of the Counterclaims herein.

91.     Whisker's and Zuppke's conduct detailed above constitutes unlawful, unfair and deceptive acts or practices in the conduct of trade or commerce.

92.     Whisker and Zuppke willfully used or practiced these acts in violation of California's unfair competition statute, Section 17200, and both Whisker and Zuppke knew or should have known that their acts were unlawful and would damage Intuitive and injure consumers by its deception.

93.     Whisker's and Zuppke's conduct has resulted in substantial harm to competition.

94.     Smarty Pear, which has a principal place of business in California, and Madeiras who resides in California, have suffered substantial harm, both monetary and irreparable, as a result of Whisker's and Zuppke's actions, and will continue to suffer such substantial harm unless those actions are restrained and enjoined by this Court.

## COUNT THREE

### (False Advertising – CA. Stat. § 17500)

95.     Counterclaim Plaintiffs, Smarty Pear and Madeiras, incorporate by reference the allegations set forth in paragraphs 1- 82 of the Counterclaims herein.

96.     Whisker and Zuppke intended for consumers in California to purchase automatic litter box products from Whisker.

97.     Whisker's and Zuppke's publicly disseminated marketing and advertising materials include numerous statements detailed above that Whisker and Zuppke knew or should have known through the exercise of reasonable care were both untrue and misleading.

98.     Smarty Pear and Madeiras have suffered substantial harm, both monetary and irreparable, as a result of Whisker's and Zuppke's actions, and will continue to suffer such substantial harm unless those actions are restrained and enjoined by this Court.

## COUNT FOUR

### (Common Law Unfair Competition)

99.     Counterclaim Plaintiffs, Smarty Pear and Madeiras, incorporate by reference the allegations set forth in paragraphs 1- 82 of the Counterclaims herein.

100.     Whisker is a competitor of Smarty Pear and has engaged in the above-detailed deceptive and fraudulent conduct with the intent to confuse and deceive the public into purchasing its automatic litter box products.

101.     Whisker's and Zuppke's conduct has caused deception and confusion among consumers.

102.     Smarty Pear and Madeiras have suffered substantial harm, both monetary and irreparable, as a result of Whisker's and Zuppke's actions, and will continue to suffer such substantial harm unless those actions are restrained and enjoined by this Court.

## COUNT FIVE

### (Tortious Interference With Contract)

103.     Counterclaim Plaintiffs, Smarty Pear and Madeiras, incorporate by reference the allegations set forth in paragraphs 1- 82 of the Counterclaims herein.

Defendants' Answer to TA Complaint
Affirmative Defenses and Counterclaims
Case No. 5:22-cv-04261-PCP

104.    At all relevant times, Smarty Pear has had contractual relationships with Chewy, Inc. and Great Pet Media. Whisker and Zuppke were at all times aware of these contractual relationships and have undertaken intentional acts to disrupt them and/or induce Chewy, Inc. and Great Pet Media to breach them.

105.    Whisker's and Zuppke's actions have resulted in actual breach or disruption of contractual relationships between Smarty Pear and Chewy, as well as between Smarty Pear and Great Pet Media.

106.    There is no legal justification for Whisker's or Zuppke's actions, which have been motivated purely by their own greed and subjected Smarty Pear customers and Smarty Pear and Madeiras themselves to substantial harm.

107.    Smarty Pear and Madeiras have suffered substantial harm, both monetary and irreparable, as a result of Whisker's and Zuppke's actions, and will continue to suffer such substantial harm unless those actions are restrained and enjoined by this Court

## COUNT SIX

(Intentional Interference With Prospective Economic Relations Or Advantage)

108.    Counterclaim Plaintiffs, Smarty Pear and Madeiras, incorporate by reference the allegations set forth in paragraphs 1- 82 of the Counterclaims herein.

109.    At all relevant times, Smarty Pear has had an economic relationship with Radio Systems and various influencers/content creators, all of which had the probability of future economic benefit to Smarty Pear.

110.    Whisker and Zuppke at all relevant times had knowledge of Smarty Pear's relationships with Radio Systems, and various influencers/content creators. Whisker and Zuppke

engaged in intentional, wrongful acts designed to disrupt Smarty Pear's relationships with Radio Systems, and various influencers/content creators.

111.    Smarty Pear's relationships with Radio Systems, and various influencers/content creators were actually disrupted.

112.    Smarty Pear and Madeiras suffered economic harm proximately caused by the acts of Whisker and Zuppke.

<u>COUNT SEVEN</u>

(Declaratory Judgment of Non-Infringement of the '502 Patent)

113.    Smarty Pear realleges and incorporates the allegations set forth in paragraphs 1-10 of these Counterclaims as if fully restated herein.

114.    In its Complaint, Whisker alleges that Defendants have infringed and continue to infringe the '502 Patent by its manufacture, use, sale, and offer to sell of its Leo's Loo Too products.

115.    Defendants have not and are not now infringing, inducing the infringement of, or contributing to the infringement of any valid and enforceable claim of the '502 Patent with Leo's Loo Too products.

116.    This case is subject to the Local Rules of Practice for Patent Cases before the United States District Court for the Northern District of California. Patent L.R. 1-2.  As an initial matter, Whisker is required to provide a disclosure of asserted claims and infringement contentions and supporting documentation. Patent L.R. 3-1, 3-2. At the Initial Case Management Conference, the Court adopted Whisker's proposed schedule. Dkt. No. 65. Pursuant to that Schedule, Whisker's disclosure of its infringement contentions was due on May 26, 2023. Defendants will disclose their theories and supporting facts to rebut Whisker's infringement

contentions and to support their non-infringement counterclaim during the pre-trial phases of this case in accordance with the requirements of the Federal Rules of Civil Procedure, the Local Rules of Practice in Civil Proceedings before the courts in this District, the Local Rules of Practice for Patent Cases before the courts in this District, the Standing Order for Civil Cases Before Judge Vince Chhabria, and the Schedule set by the Court for this matter.

117.    Defendants further lack and continue to lack the requisite intent or knowledge to induce or contribute to the direct infringement of the '502 Patent by another with the Leo's Loo Too products.

118.    A justiciable controversy exists as to whether Defendants have infringed any valid and enforceable claim of the '502 Patent with the Leo's Loo Too products.

119.    Defendants are entitled to a judgment declaring that they have not directly or indirectly infringed, either literally or under the doctrine of equivalents, any valid and enforceable claim of the '502 Patent with the Leo's Loo Too products.

<u>COUNT EIGHT</u>

(Declaratory Judgment of Invalidity of the '502 Patent)

120.    Defendants reallege and incorporate the allegations set forth in paragraphs 1-10 of these Counterclaims as if fully restated herein.

121.    The claims of the '502 Patent are invalid in view of the prior art and/or for failure to comply with one or more conditions for patentability set forth under 35 U.S.C. including but not limited to §§ 101, 102, 103, and 112 et seq., and the rules, regulations, and laws pertaining to those provisions, including the applicable provisions of Title 37 of the Code of Federal Regulations.

Defendants' Answer to TA Complaint
Affirmative Defenses and Counterclaims
Case No. 5:22-cv-04261-PCP

122.     Defendants are entitled to judgment declaring that the claims of the '502 Patent are invalid in view of the prior art and/or for failure to comply with one or more of the requirements of the United States Patent Act set out in 35 U.S.C. §§ 1, et seq., including without limitation 35 U.S.C. §§ 101, 102, 103, and 112.

123.     This case is subject to the Local Rules of Practice for Patent Cases before the United States District Court for the Northern District of California. Patent L.R. 1-2.  Defendants are required to provide a disclosure of their invalidity contentions following Whisker's disclosure of its infringement contentions.  Patent L.R. 3-3, 3-4. At the Initial Case Management Conference, the Court adopted Whisker's proposed schedule. Dkt. No. 65. Pursuant to that Schedule, Defendants' disclosure of their invalidity contentions was due on July 10, 2023. By stipulation approved by the Court (Dkt. No. 90), Defendants' invalidity contentions as to the '502 patent were due on July 20, 2023 and were timely served on Plaintiff, Counterclaim-Defendant Whisker.

<u>COUNT NINE</u>

(Slander under California Civil Code §§ 44 and 46)

124.     Counterclaim Plaintiffs, Smarty Pear and Madeiras, incorporate by reference the allegations set forth in paragraphs 1- 82 of the Counterclaims herein.

125.     Counterclaim Defendant Whisker and Zuppke have made false and unprivileged publications and statements, orally uttered, that tend to injure Counterclaim Plaintiffs in their business.

126.     These statements impute characteristics of Counterclaim Plaintiffs' business that have a noticed tendency to lessen its  profits.

127.     Those statements are slanderous under California Civil Code § 46.

128.    Counterclaim Defendant Whisker and Zuppke have made at least the following slanderous statements:

- They have made slanderous statements to Counterclaim Plaintiffs' top customer Chewy, which have directly impacted sales; for example, stating that Counterclaim Plaintiffs would be out of business, causing Chewy to cut back its support and decrease its purchases; and

- They have made slanderous statements to Robert Candelino, negatively impacting Radio System's decision to invest.

<u>COUNT TEN</u>

(Libel Under California Civil Code §§ 44 and 45)

129.    Counterclaim Plaintiffs, Smarty Pear and Madeiras, incorporate by reference the allegations set forth in paragraphs 1- 82 of the Counterclaims herein.

130.    Counterclaim Defendant Whisker and Zuppke, have made or caused to be made false and unprivileged publications in writing which tend to injure Counterclaim Plaintiffs in their business.

131.    Those written statements are libel under California Civil Code § 45.

132.    Counterclaim Defendant Whisker and Zuppke have made at least the following libelous publications:

- Whisker sent a disparaging email to all influencers about working with Counterclaim Plaintiffs;

- Whisker has made or caused to be made falsifying reviews of Counterclaim Plaintiff's Leo's Loo products, hundreds of which Amazon.com has removed from its website for being fraudulent; and

- Whisker has a systematic approach to falsify unfavorable reviews by secretly paying content creators and other influencers to write unfavorable reviews, which are then distributed;

- Counterclaim Defendant Whiskers' Director and Plant Manager made derogatory public comments about Counterclaim Plaintiffs on social media.

## RESERVATION OF RIGHTS

133.    Defendants, Counterclaim Plaintiffs Smarty Pear and Christopher Madeiras expressly reserve the right to assert any additional defenses or counterclaims that may now exist or in the future may be available based on discovery and further factual investigation in this case.

## JURY TRIAL DEMANDED

134.    Defendants, Counterclaim Plaintiffs Smarty Pear and Christopher Madeiras request a jury trial as to all issues so triable.

## PRAYER FOR RELIEF

135.    Defendants, Counterclaim-Plaintiffs Smarty Pear and Christopher Madeiras respectfully request this Court grant relief as follows:

      A.    Judgment that Whisker's Complaint in its entirety be dismissed with prejudice;

      B.    Judgment that Whisker is entitled to nothing by its Complaint, including that Whisker is not entitled to an award of compensatory damages,

attorneys' fees, costs, pre-judgment or post-judgment interest under 35
U.S.C. §§ 284 or 285, or any applicable law;

C.     Denial of any and all of Whisker's requests for injunctive relief;

D.     Judgment that Defendants have not infringed, and are not infringing, any
valid and enforceable claim of the '502 Patent by any manufacture, use,
sale, and offer to sell of Smarty Pear's Leo's Loo and/or Leo's Loo Too
products;

E.     Judgment that the claims of the '502 Patent are invalid and/or
unenforceable;

F.     Judgment that Whisker and/or any of its successors and attorneys, and all
persons in active concert or participation with any of them, are enjoined
from directly or indirectly asserting infringement or instituting any further
action for infringement of the '502 Patent against Defendants, or any of
Defendants' customers, end-users, agents, suppliers, contractors,
consultants, successors, and assigns;

G.     Order that this case is "exceptional" pursuant to 35 U.S.C. § 285 entitling
Defendants to an award of their reasonable and necessary attorneys' fees,
expenses, and costs, and prejudgment interest thereon;

H.     Order awarding Defendants their costs incurred in this action; and

I.     Grant to Defendants such other and further relief as the Court deems just
and proper.

136.   Counterclaim Plaintiffs, Smarty Pear and Madeiras, further respectfully request
this Court enter judgment in favor of Smarty Pear and Madeiras against Counterclaim Defendant

Defendants' Answer to TA Complaint
Affirmative Defenses and Counterclaims
Case No. 5:22-cv-04261-PCP

Whisker as to all the Counterclaims asserted herein, including an Order granting Counterclaim

Plaintiffs, Smarty Pear and Madeiras, the following relief:

A.     Compensatory damages on all applicable causes of action alleged herein;

B.     Actual costs, expenses and attorneys' fees incurred in this lawsuit;

C.     All exemplary, enhanced and punitive damages;

D.     Pre-judgment and post-judgment interest;

E.     Preliminary and permanent injunctive relief; and

F.     Such other and further relief as the Court shall deem just and proper.

Dated: August 31, 2023                    MCCAULLEY LAW GROUP LLC

                                          By: */s/ Richard T. McCaulley*
                                          RICHARD T. MCCAULLEY
                                          (pro hac vice)
                                          richard@mccaulleylawgroup.com
                                          180 N. Wabash Avenue, Suite 601
                                          Chicago, Illinois 60601
                                          Telephone: 312.330.8105

                                          JOSHUA V. VAN HOVEN
                                          (CSB No.62815)
                                          E-Mail: josh@mccaulleylawgroup.com
                                          3001 Bishop Dr., Suite 300
                                          San Ramon, California 94583
                                          Telephone: (925) 302-5941


                                          Attorneys for Defendants-Counterclaim
                                          Plaintiffs
                                          SMARTY PEAR and CHRIS MADEIRAS