COOLEY LLP
BOBBY GHAJAR (198719)
(bghajar@cooley.com)
COLETTE GHAZARIAN (322235)
(cghazarian@cooley.com)
1333 2nd Street, Suite 400
Santa Monica, CA 90401
Telephone:    (310) 883-6400
Facsimile:    (310) 883-6500

MATTHEW BRIGHAM (191428)
(mbrigham@cooley.com)
3175 Hanover Street
Palo Alto, CA 94304-1130
Telephone:    (650) 843-5000
Facsimile:    (650) 849-7400

*[Full Listing on Signature Page]*

*Attorneys for Plaintiff and Counter-Defendant
Automated Pet Care Products, LLC d/b/a Whisker*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Automated Pet Care Products, LLC d/b/a Whisker, a Michigan corporation,<br><br>Plaintiff,<br><br>v.<br><br>PurLife Brands, Inc. d/b/a Smarty Pear, a Delaware corporation, and Chris Madeiras, an individual,<br><br>Defendants.<br><br>PurLife Brands, Inc. d/b/a Smarty Pear, a Delaware corporation, and Chris Madeiras, an individual,<br><br>Counterclaim-Plaintiffs,<br><br>v.<br><br>Automated Pet Care Products, LLC d/b/a Whisker, a Michigan corporation,<br><br>Counterclaim-Defendant. | Case No. 5:22-cv-04261-PCP (SK)<br><br>**WHISKER'S REPLY IN SUPPORT OF MOTION TO DISMISS DEFENDANTS' AMENDED COUNTERCLAIMS 1-7, 9, AND 10**<br><br>Hearing Date: October 12, 2023<br>Time: 10:00 a.m.<br>Courtroom: Courtroom 8, 4th Floor<br>Judge: Hon. P. Casey Pitts<br><br>Am. Counterclaims Filed: July 31, 2023 |

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ................................................................................................................ 1

II. DEFENDANTS' AMENDED COUNTERCLAIMS 1–7, 9, AND 10 SHOULD BE DISMISSED ................................................................................................................. 3

    A. THE ACC FAILS TO ADEQUATELY PLEAD FALSE ADVERTISING (COUNTS 1, 3). ................................................................................................. 3

    B. THE ACC FAILS TO ADEQUATELY PLEAD TORTIOUS INTERFERENCE (COUNTS 5-6) ............................................................................. 5

    C. THE ACC FAILS TO ADEQUATELY PLEAD LIBEL AND SLANDER (COUNTS 9-10) ................................................................................................. 8

    D. DEFENDANTS FAIL TO ADDRESS *NOERR-PENNINGTON* AND THE LITIGATION PRIVILEGE ............................................................................... 9

    E. THE ACC FAILS TO ADEQUATELY PLEAD A UCL CLAIM (COUNT 2). ................................................................................................................... 10

    F. THE NON-INFRINGEMENT DECLARATORY JUDGMENT COUNTERCLAIM FAILS (COUNT 7) .................................................................. 10

III. CONCLUSION ................................................................................................................. 10

# TABLE OF AUTHORITIES
## (continued)

**Page**

**Cases**

*Alert Enter., Inc. v. Rana*,
  2023 WL 2541353 (N.D. Cal. Mar. 16, 2023) ................................................................. 6

*Ariix, LLC v. NutriSearch Corp.*,
  985 F.3d 1107 (9th Cir. 2021) ........................................................................................ 4

*Casper Sleep, Inc. v. Nectar Brand LLC*,
  2020 WL 5659581 (S.D.N.Y. Sept. 23, 2020) ......................................................... 3, 4, 5

*Cloudera, Inc. v. Databricks, Inc.*,
  2021 WL 3856697 (N.D. Cal. Aug. 30, 2021) ................................................................ 5

*Eclectic Properties East, LLC v. Marcus & Millichap Co.*,
  751 F.3d 1120 (9th Cir. 2009) ........................................................................................ 8

*GOLO, LLC v. HighYa, LLC*,
  310 F. Supp. 3d 499 (E.D. Pa.2018) ............................................................................... 4

*Honey Bum, LLC v. Fashion Nova, Inc.*,
  63 F.4th 813 (9th Cir. 2023) ........................................................................................... 6

*Infectolab Ams., LLC v. ArminLabs GmbH*,
  2021 WL 292182 (N.D. Cal. Jan. 28, 2021) ................................................................... 6

*J & K IP Assets, LLC v. Armaspec, Inc.*,
  2018 WL 3428757 (N.D. Cal. July 16, 2018) ............................................................... 10

*Knievel v. ESPN*,
  393 F.3d 1068 (9th Cir. 2005) ........................................................................................ 9

*LegalForce RAPC Worldwide P.C. v. Swyers*,
  2018 WL 3439371 (N.D. Cal. July 17, 2018) ................................................................. 4

*Maponics, LLC v. Wahl*,
  2008 WL 2788282 (N.D. Cal. July 18, 2008) ................................................................. 9

*Mohanna v. Carrington Mortg. Servs. LLC*,
  2018 WL 3730419 (N.D. Cal. Aug. 6, 2018) ................................................................ 10

*Neo4j, Inc. v. PureThink, LLC*,
  2023 WL 122402 (N.D. Cal. Jan. 6, 2023) .................................................................. 7, 8

*Pegasystms, Inc. v. Appian Corp.*,
  424 F.Supp.3d 214 (D. Mass. 2019) ............................................................................... 4

*Resnick v. Hyundai Motor Am., Inc.*,
  2017 WL 1531192 (C.D. Cal. Apr. 13, 2017) ......................................................... 3, 5, 8

COOLEY LLP
ATTORNEYS AT LAW

-ii-

WHISKER'S REPLY ISO MTD AMENDED
COUNTERCLAIMS 1-7, 9, AND 10
CASE NO. 5:22-cv-04261-PCP (SK)

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Smith v. Madlonado*,
  72 Cal.App.4th 637 (1999) .................................................................................................... 9

*Weiland Sliding Doors and Windows, Inc. v. Panda Windows and Doors, LLC*,
  814 F. Supp. 2d 1033 (S.D. Cal. 2011) ................................................................................ 10

COOLEY LLP
ATTORNEYS AT LAW

-iii-

WHISKER'S REPLY ISO MTD AMENDED
COUNTERCLAIMS 1-7, 9, AND 10
CASE NO. 5:22-cv-04261-PCP (SK)

## I. INTRODUCTION

Whisker has a 23-year track record of fair play, award-winning products, and innovation. (Dkt. 115 ("TAC") ¶¶ 11–20.) It filed suit against Defendants to protect its intellectual property from blatant infringement and to protect consumers from false advertising. Whisker's concerns were almost immediately validated by the Court, which found that "Smarty Pear's intent is transparent: Not only are the products themselves virtually identical, but the strategic use of the number three [LitterRobot3] and the upper-case letters in its hashtags evinces an intent to capitalize on Whisker's goodwill" and the trademark likelihood of confusion factors "weigh decidedly in Whisker's favor" (Dkt. 55 at 8-9). Later, the Court repeated its concern over Defendants' conduct, noting "it's a concern that I have … based on … the obvious sort of intent … of your clients to … mislead the public …[.]" (May 12, 2013 Hrg. Tr. (excerpts attached).) Caught red-handed, Defendants inexplicably doubled-down—starting a *new* promotional campaign based on Whisker's registered NEVER SCOOP AGAIN® trademark. (Dkt. 93 at 2–3 ; TAC at ¶ 45.)

Hoping to change the narrative, Defendants then retaliated with a series of baseless Counterclaims (Dkt. 68) ("CC") against Whisker and its CEO, which Whisker moved to dismiss. (Dkt. 82) ("CC Motion"). At the hearing on Whisker's CC Motion, Judge Chhabria immediately picked up on Defendants' tactics, noting:

> The whole thing just seems so sparse that it almost invokes this image in my mind of the client saying, "Well we should sue them back." And the lawyer saying, "Well what should we sue them back for?" And the client saying, "I don't care. Just sue them back."

(Dkt. 112-2 ("Transcript") at 5.)[1] The Court picked apart the CC. (*See*, *e.g.*, Transcript at 6 ("what is the basis for your view?"), 8 ("there's nothing wrong with that, right?"), 10 ("what am I supposed to do with those allegations?").) It criticized Defendants' failure to include any actual examples of the false or misleading content underlying their purported claims. (*Id.* at 15 ("[The CCs] don't include the content, so we can't judge whether there are false statements in there.") The Court dismissed the CC in its entirety, noting "concern…whether [the] allegations are true," but allowing Defendants to amend to "back up" their allegations if they could. (*Id.* at 11; Dkt. 95.)

---

[1] Citations to the transcript of the hearing on Whisker's CC Motion use the ECF page numbers, rather than the page numbers of the original transcript.

Defendants' Amended Counterclaims (Dkt. 105) ("ACC") and now their Opposition (Dkt. 127) ("Opposition" or "Opp.") confirm that Judge Chhabria was right. After the CC was dismissed due to "sparse" allegations (Transcript at 4–5), having "little detail" (*id.* at 11), and generally feeling "made up" (*id.* at 9), Defendants finally gave up on the bogus notion that Whisker made false statements regarding its products. (*Compare* CC ¶¶ 18–20.) And now, Defendants admit they do not have a common law unfair competition claim (Count 4) (Opp. at 10) and fail to defend the ACC's allegations relating to (1) Mallory Crusta (*see* ACC ¶¶ 44–48), (2) "shopping" this lawsuit to consumers (*see id.* ¶ 82), or (3) an unspecified "economic relationship with . . . various influencers / content creators" (*see id.* ¶ 109). These cannot support any of the ACC's claims.

Whisker's Motion (Dkt. 112) addressed fully the ACC's hodgepodge of allegations. **The Opposition defends only four**: (1) alleged defamatory statements to influencer Jennifer Dean; (2) alleged defamatory statements to Robert Candelino at Radio Systems and interference with prospective economic relationship with Radio Systems; (3) alleged interference with Smarty Pear's contracts with Great Pet Media and Chewy; and (4) "review manipulation" on Chewy and Amazon.

The ACC is a re-do of the CC with the veneer of a few new names, graphs, and irrelevant details. But the Court's concerns at the hearing remain unaddressed. Once again, Defendants allege "false reviews" but fail to include a single example on which their false advertising and unfair competition claims are now based. Their interference claims are implausible and mired with inconsistencies. Their defamation claims are based on hearsay statements that do not fit the definition of defamation and/or are protected under *Noerr-Pennington* and the litigation privilege (which Defendants totally ignore). Their declaratory judgment claim for non-infringement lacks sufficient specificity. Whisker's Motion exposed these deficiencies, which the Opposition largely ignores in favor of simply reiterating the ACC's allegations with little to no analysis. As before, Defendants rely on speculation and innuendo, failing to plausibly state claims for relief.

The Court is urged to stop Defendants' fishing expedition and efforts to deflect from their infringement and consumer deception – this time, with prejudice.

//

## II. DEFENDANTS' AMENDED COUNTERCLAIMS 1–7, 9, AND 10 SHOULD BE DISMISSED

### A. The ACC Fails to Adequately Plead False Advertising (Counts 1, 3).

Buried at the end of its Opposition, Defendants argue that these claims are based on allegations that Whisker, or unspecified "deplorables" acting on its behalf, supposedly manipulated product reviews on Chewy and Amazon. (Opp. at 9–14.) Defendants ignore, and thereby concede, Whisker's arguments as to the other related allegations (ACC ¶¶ 38–43, 46, 47, 49, 84), including purported false statements made to influencers and "shopping" this lawsuit to consumers. (Mot. at 6–7.) Accordingly, the Court should grant Whisker's Motion as to those allegations. *Resnick v. Hyundai Motor Am., Inc.*, 2017 WL 1531192, at *22 (C.D. Cal. Apr. 13, 2017) (waiver due to failure to oppose argument). The ACC's other bases for the false advertising claims fare no better.

First, Defendants' cited authority only confirms that, as plead, its "review manipulation" claim does not constitute false advertising. In *Casper Sleep, Inc. v. Nectar Brand LLC*, the court dismissed counterclaims for false advertising based on allegations of review manipulation. 2020 WL 5659581, at *10–11 (S.D.N.Y. Sept. 23, 2020). Just like this case, the *Casper* defendants pointed to circumstantial factors, including that many of Casper's five-star reviews had no comments and that Amazon deleted roughly 40% of Casper's product reviews, to suggest that Casper manipulated reviews. *Id.* at *3. Those allegations were insufficient:

> [T]he fact that certain reviews "have no comments" does not plausibly suggest that these are fake reviews generated by Plaintiff or its agents. There are any number of reasons why a review might have no comments, **and it is entirely speculative to contend that all such reviews are fake**. Moreover, **the fact that** a third-party website – or **Amazon** itself – **deleted several hundred favorable Amazon reviews** for Casper mattresses **does not plausibly suggest that these deleted reviews were fake reviews** generated by Plaintiff or its agents. Indeed, Defendants' counterclaims do not allege that Plaintiff or its agents posted the deleted reviews. Instead, the counterclaims merely allege that Plaintiff "manipulates" reviews on Amazon, without explaining how Plaintiff accomplishes the alleged manipulation.

*Id.* at *11. (emphasis added). The *Casper* court's reasoning applies here.[2] As explained in the Motion, Defendants fail to sufficiently describe, much less include, a *single* example of a

---

[2] The other cases Defendants cite are unhelpful and inapposite. In *GOLO, LLC v. HighYa, LLC*, the court dismissed false advertising claims, concluding that GOLO's reviews of HighYa's products were not commercial speech. 310 F. Supp. 3d 499, 507 (E.D. Pa. 2018). *Ariix, LLC v. NutriSearch Corp.* and *Pegasystems, Inc. v. Appian Corp.* involved a published guide and report,

supposedly fake product review—a deficiency Judge Chhabria specifically noted at the hearing. (Transcript at 4 ("You say that the Plaintiffs caused a bunch of fake reviews to be posted about your client's product, but you don't – you don't describe any of the reviews.").) While Defendants describe the reviews as "5-star reviews," that alone is not enough to "judge whether there are false statements" in them. (*Id.* at 15; Mot. at 5); *see also LegalForce RAPC Worldwide P.C. v. Swyers*, 2018 WL 3439371, at *6 (N.D. Cal. July 17, 2018) (dismissing claim where "nature of the 'ad copy'" not identified). Indeed, the ACC is fatally sparse, with no allegations regarding any comments associated with the reviews, who posted them, or what is false about them.

Contrary to Defendants' assertions (Opp. at 10), the circumstantial allegations in the ACC do not create a plausible inference of review manipulation. As to the three alleged "spikes" in positive reviews on Chewy (ACC ¶¶ 74, 75), "[t]here are any number of reasons" why such spikes would occur, and "it is entirely speculative to contend that all such reviews are fake." *Casper*, 2020 WL 5659581, at *11. And three "spikes" over the course of two years is hardly a "pattern" of manipulation, particularly where no comparative benchmark is alleged.[3] (ACC ¶¶ 74–76; *see also* Mot. at 9.) The ACC also contains no allegations to plausibly suggest that the Litter-Robot 3 reviews allegedly removed by Amazon were generated *by Whisker* or its agents. (ACC ¶ 78.) In fact, the ACC describes many reasons why Amazon would remove reviews, a number of which would have nothing to do with Whisker or any wrongdoing. (ACC ¶ 79; *see also* Mot. at 9.)

Defendants argue that "Whisker and/or its agents made the statements in the fake product reviews" (Opp. at 11). But the ACC itself does not say that; as in *Casper*, it alleges that Whisker or (undefined and unidentified) deplorables "manipulat[ed]" reviews, without more. (ACC ¶¶ 76, 81.) Defendants then blame their lack of detail because those details are "in Whisker's sole possession." (Opp. at 10.) However, although the Court "may consider whether facts are peculiarly within [Whisker's] possession and control…such latitude does not mean that conclusory allegations are permitted." *Cloudera, Inc. v. Databricks, Inc.*, 2021 WL 3856697, at *6 (N.D. Cal. Aug. 30,

---

respectively, that failed to disclose paid arrangements with the makers of the products they discuss, not user reviews on unaffiliated e-commerce websites. 985 F.3d 1107, 11–12 (9th Cir. 2021); 424 F. Supp. 3d 214, 222–23 (D. Mass. 2019).

[3] Even more remarkable is that Defendants' *own* documents show that Smarty Pear's Leo's Loo listings experienced similar spikes in positive reviews. They knew better but argued this anyhow.

2021) (cleaned up).  *Even if* Defendants had alleged that "Whisker and/or its agents made the false statements," Defendants do not cite a single case holding that such conclusory allegations are sufficient to state claims for false advertising, "without explaining how Plaintiff accomplishes the alleged manipulation."  *Casper*, 2020 WL 5659581, at *11.  Counts 1 and 3 should be dismissed.

### B. The ACC Fails to Adequately Plead Tortious Interference (Counts 5-6).

As clarified by the Opposition, Defendants' claim for Tortious Interference with Contractual Relations is based on alleged disruption of (1) a contract with Chewy "to offer exclusively its automated litter box products" (ACC ¶ 28) and (2) a contract for advertising with Great Pet Media (*id.* ¶ 51).  (Opp. at 7–8.)  Defendants' Intentional Interference claim is based on interference with a "potential transaction or relationship" with Radio Systems.[4]  (ACC ¶ 60; Opp. at 8–9.)  Defendants largely fail to address (or oppose) Whisker's arguments as to these allegations (Mot. at 10–13), thereby conceding the Motion as to them.  *Resnick*, 2017 WL 1531192, at *22.  Instead, Defendants selectively repeat the allegations in the ACC to feign the appearance of plausibility.  These tactics fail to overcome the ACC's inconsistencies and logical shortcomings.

**Chewy.**  Whisker's Motion explained the many inconsistencies and problems with Defendants' theory as to Chewy. (*See* Mot. at 10–11.)  Defendants reference "Smarty Pear's troubles penetrating Chewy's sales system[,]" then discuss statements allegedly made to Chewy's Associate Director of Pet Technology, Brian Choi that caused him to "pull back his support" of Leo's Loo.  (Opp. at 8.)  However, Smarty Pear's "troubles" refer to allegations involving Choi's *predecessor*, Erick Goihman, and do not include any intentional acts or conduct *by Whisker*.  (ACC ¶ 30.)  Other than pure speculation, there is nothing plausibly connecting the "troubles" Smarty Pear faced with the statements allegedly made to Choi.  Moreover, even if Whisker had made "false statements" to Choi that caused him to withdraw support for Leo's Loo (it did not), Defendants do not allege how the loss of support of one individual at a publicly traded e-commerce company that offers over 110,000 products and partners with over 3,000 brands resulted in any actual disruption of Smarty Pear's contract with Chewy, which is still in effect.  (*Id.* at ¶¶ 28, 29); *see Honey Bum, LLC v. Fashion Nova, Inc.*, 63 F.4th 813, 824–25 (9th Cir. 2023) ("actual breach or disruption of

---

[4] Defendants ignore and concede Whisker's arguments as to allegations of interference of an "economic relationship with … various influencers / content creators[.]"  (ACC ¶ 109; Mot. at 13.)

the contractual relationship" a required element of tortious interference claim). Defendants' allegations simply do not make sense. (*See also* Mot. at 11.)

Defendants also fail to defend their conclusory allegations as to knowledge. (ACC ¶ 104.) They argue that one can reasonably infer that Whisker had knowledge of the contract with Chewy "since Smarty Pear's products were *to be offered* for sale" on Chewy. (Opp. at 7 (emphasis added).) That's circular; they fail to explain how Whisker would know about *future* plans to offer Smarty Pear products on Chewy or any contract details. To the extent Defendants suggest Whisker knew of the contract because Smarty Pear's products were sold on Chewy, this is inconsistent with the allegations that Whisker's intentional actions resulted in difficulty for Smarty Pear to penetrate Chewy's sales system from the outset. (*See id.* at 8; ACC ¶ 30.) Defendants' failure to allege more than "entirely conclusory" allegations of knowledge and intent are fatal to its tortious interference claims as to Chewy. *Infectolab Ams. LLC v. ArminLabs GmbH*, 2021 WL 292182, at *4-5 (N.D. Cal. Jan. 28, 2021).

**Great Pet Media.** Defendants do not meaningfully contend with Whisker's arguments as to the allegations regarding Great Pet Media ("GPM") either. Other than stating that Smarty Pear "contracted for paid advertising[,]" Defendants do not allege any details about the contract with GPM, its terms, or its duration.[5] (ACC ¶ 51.) They provide no plausible explanation why GPM would feel compelled to act on an "angry note" from someone whose only connection to it is an unspecified "relationship" with an "affiliated" company. (*Id.* ¶ 52); *see also Alert Enter., Inc. v. Rana*, 2023 WL 2541353, at *5 (N.D. Cal. Mar. 16, 2023) (dismissing interference claim with "no specific allegations to back up" theory that defendant induced third party's actions). Neither Whisker nor Zuppke are alleged to have any control over GPM, nor are any details alleged regarding Whisker's "relationship" with GPM's affiliated company from which control could be inferred. Moreover, even if Zuppke had expressed a desire to have Smarty Pear's advertising removed based on Whisker's relationship with GPM's affiliated company, this does not constitute

---

[5] Curiously, against the Court's admonition, Defendants *removed* details relating to these allegations, presumably to draw more general inferences. These include allegations that the contract with GPM was "to include Smarty Pear and its products in a couple of articles" (CC ¶ 39), that GPM was acquired by a company with whom Whisker had a relationship (*id.* at ¶ 40), and the CEO of that company gave the instructions to terminate the contract with Smarty Pear (*id.*).

an "independently wrongful act," as is required for tortious interference claims. (Mot. at 11 (citing *Ixchel Pharma, LLC v. Biogen, Inc.*, 9 Cal. 5th 1130, 1148 (2020)).) Whisker cannot be held to blame for the business decisions of others. Another deficiency is that the ACC contains only conclusory allegations as to "harm" with no supporting factual allegations. (ACC ¶ 54.) Although only limited details are alleged about the contract with GPM, a "contract[] for paid advertising" implies that Smarty Pear paid GPM to put up advertising on its website. (*Id.* ¶ 51.) If Smarty Pear had made a one-time payment, absent allegations as to how long its ads were to remain on GPM's website under the contract, Defendants fail to sufficiently allege any harm resulting from GPM "pulling" the campaign. If the contract contemplated continuing payments, the money Smarty Pear would have paid to GPM could easily be allocated for advertising elsewhere. There is no plausible tortious interference claim based on an alleged contract with GPM.

**Radio Systems.** In response to Whisker's Motion (at 12–13), Defendants' sole argument is that they have sufficiently pled an "independently wrongful act" because they have alleged Whisker made defamatory statements to Candelino. (Opp. at 9.) Whisker explains why Defendants' defamation claims (and their argument) fail in Section C, *infra*, but there is another reason the Court should dismiss Defendants' intentional interference claim: Defendants do not plausibly allege that Whisker proximately caused any disruption of Smarty Pear's prospective economic relationship with Radio Systems. In order to state a claim for intentional interference, "Defendants must not only establish that [Whisker] actually disrupted their economic relationship, but they must also show that such disruption was the result of [Whisker's actions]." *Neo4j, Inc. v. PureThink, LLC*, 2023 WL 122402, at *5 (N.D. Cal. Jan. 6, 2023) (citation omitted). "[A]ctual disruption" and "proximate causation" are two "independent bases" to dismiss an intentional interference claim. *Id.* at *6. The Opposition selectively quotes from the ACC to create a false impression that Radio Systems' decision to no longer pursue a transaction with Smarty Pear was proximately caused by Whisker. (Opp. at 8–9.) In fact, as Whisker explained, Defendants *themselves* allege intervening events, including that Madeiras sent Candelino a presentation on Smarty Pear's upcoming Leo's Loo version 3 product, that could have reasonably prompted Radio Systems' decision. (ACC ¶¶ 66, 68, 69; Mot. at 12.) Even without these allegations, there are

numerous "obvious alternative explanations" for Radio Systems' decision not to work with Smarty Pear, including its independent evaluation of Smarty Pear, its products, or the opportunity overall. *Eclectic Properties East, LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2009). Speculation that Zuppke must have said something that "at a minimum contributed to Radio Systems not doing business with Smarty Pear" fails to plausibly allege proximate causation. (ACC ¶ 69.) Lastly, Defendants ignore Whisker's argument (Mot. at 13) that the ACC does not allege Candelino told Madeiras that some comment from Whisker was the cause of disinterest.

### C. The ACC Fails to Adequately Plead Libel and Slander (Counts 9-10).

As Whisker explained, the ACC's defamation allegations are almost unchanged from those dismissed in the CC. Defendants only address a subset of the allegations discussed in Whisker's Motion (at 13–14), thereby conceding Whisker's arguments as to the remaining statements on which the libel and slander claims were based.[6] *Resnick*, 2017 WL 1531192, at *22. Changing course from their position in the CC Motion (Dkt. 88 at 4–5 (arguing defamation claims were based on different allegations)), Defendants now argue that their defamation claims are based on:

- Statements allegedly made to Jennifer Dean in or around March 2022, namely, that (1) Smarty Pear's products were "a cheap Chinese 'knock-off'", (2) Madeiras stole Whisker corporate secrets and used them in Smarty Pear's business, (3) Smarty Pear would soon be out of business and would not be able to support its products, and (4) Defendants fabricated the story about Maderias's cat Leo (ACC ¶¶ 39–42); and

- Statements allegedly made to (5) Candelino that Smarty Pear was a company based on confidential information Madeiras had stolen from Whisker (ACC ¶¶ 63, 64).

The statements above are not defamatory. Statement (1) to Dean is not a false statement. The ACC itself alleges that the Leo's Loo product was "available outside the United States" and that "Smarty Pear made modifications to that existing [Chinese] product" before selling it as a "lower priced alternative" in the United States. (ACC ¶¶ 21, 22.) Statement (3) to Dean is a statement of opinion, not fact and, in any event, it is unclear what "would not be able to support its products" means. Statement (4) is silly; the ACC contains no allegations explaining how this alleged statement has a "tendency to injure" Defendants. *Smith v. Maldonado*, 72 Cal. App. 4th

---

[6] These are (1) statements to Chewy that Smarty Pear would be out of business, (2) a "disparaging email to all influencers" about working with Smarty Pear, and (3) false product reviews, and "derogatory public comments" about Defendants by Whisker's Director and Plant Manager on social media. (ACC ¶¶ 128, 132, addressed in Mot. at 13–14).

637, 645–46 (1999).  Statements (2) and (5) are allegations in the lawsuit protected under *Noerr-Pennington* and litigation privilege.  *See infa* § D.

Critically, the ACC fails to allege the context in which these statements were allegedly made or that Defendants were injured by these statements. "When evaluating the threshold question of whether a statement is reasonably capable of sustaining a defamatory meaning, [courts] must…judg[e] the statement not in isolation, but within the context in which it is made." *Knievel v. ESPN*, 393 F.3d 1068, 1074 (9th Cir. 2005) (citation omitted).  Context especially matters here, where Defendants have alleged that Dean had an existing "close relationship" with Whisker (ACC ¶ 37) and that the statements made to Candelino were allegedly made while Radio Systems was considering a business transaction with Whisker (*id.* ¶ 62).  There are no allegations that Defendants sought a business relationship with Dean or that Dean's impression of Defendants was impacted in any way.  Similarly, if somebody described Whisker's lawsuit and the allegations therein to Radio Systems in the context of pursuing a business transaction, that does not constitute defamation.

### D. Defendants Fail to Address *Noerr-Pennington* and the Litigation Privilege

Defendants do not even attempt to address the applicability of these defenses to the asserted speech.[7]  Defendants focus their defamation arguments primarily on their allegation that Whisker "has spread the false narrative that Madeiras stole company secrets from Whisker and used those secrets to launch Smarty Pear." (Opp. at 6.)  This "narrative" tracks the allegations in Whisker's original and amended complaints. (*See*, *e.g.*, Dkt. 1 at ¶¶ 30, 31; TAC at ¶¶ 27, 28.)   Thus, Defendants seek to impose liability on Whisker for the statements it has made in the course of this litigation, which is precisely the type of activity *Noerr-Pennington* and the litigation privilege immunize. (*See* Mot. at 14–15 (citing cases, all unaddressed by Defendants).)  Moreover, as to the "statements" to Candelino, Radio Systems possesses a "substantial interest in the outcome of th[e] litigation" based on its alleged prospective business relationship with Smarty Pear, further warranting application of the litigation privilege.  *See Weiland Sliding Doors and Windows, Inc. v.*

---

[7] In a footnote, Defendants cite to *Maponics, LLC v. Wahl* for its conclusion that statements that the counterclaimants stole the counterdefendant's data and infringed its copyright implied a false assertion of fact.  2008 WL 2788282, at *3-4 (N.D. Cal. July 18, 2008).  Unlike here, there is no indication in *Maponics* that the accused statements tracked the allegations in the plaintiff's complaint.

*Panda Windows and Doors, LLC*, 814 F. Supp. 2d 1033, 1041 (S.D. Cal. 2011). The *Noerr-Pennington* doctrine and litigation privilege thus bar Defendants' defamation claims.

### E. The ACC Fails to Adequately Plead A UCL Claim (Count 2).

Defendants argue they have asserted counterclaims under all three prongs of the UCL, but only discuss the "unlawful" prong, conceding they have not stated a claim as to the "unfair" or "fraudulent" prongs. (Opp. at 14–15.) According to the Opposition, Defendants "unlawful" UCL claim is based on their defamation and false advertising claims. A UCL claim based on the "unlawful" prong "cannot survive" if predicated on defective claims. *Mohanna v. Carrington Mortg. Servs. LLC*, 2018 WL 3730419, at *8 (N.D. Cal. Aug. 6, 2018) (dismissing UCL claim as all predicate claims were dismissed). As discussed in this Reply and the Motion, both Defendants' defamation and false advertising counterclaims fail, warranting dismissal of the UCL claim.

### F. The Non-Infringement Declaratory Judgment Counterclaim Fails (Count 7).

Defendants argue that, by identifying the product alleged not to infringe (Leo's Loo Too), Defendants have adequately pled a non-infringement declaratory judgment counterclaim. (Opp. at 5–6.) However, Defendants allegations pertaining to this claim in the ACC are identical to those in the CC, which Judge Chhabria dismissed. (*Compare* CC ¶¶ 74–80 *with* ACC ¶¶ 113–19.) By failing to amend this claim whatsoever, Defendants ignored the Court's directive to "back up" their allegations. (Dkt. 112-2 at 11.) Courts in this district have held that mere conclusory allegations warrant dismissal of declaratory judgment claims for non-infringement. *See*, *e.g.*, "Order Granting Motion to Dismiss Counterclaims and Striking Affirmative Defenses" (Dkt. 34), *J & K IP Assets, LLC v. Armaspec, Inc.*, 2018 WL 3428757 (N.D. Cal. July 16, 2018) (dismissing similar counterclaim based on conclusory allegations). Thus, this claim must be dismissed.

### III. CONCLUSION

Defendants were given the opportunity to cure the deficiencies in their original CC and once again came up short. Defendants do not even attempt to argue for another chance to amend, and any such attempt would be futile. For these reasons and those stated in the Motion, the Court should dismiss Defendants' Counterclaims 1–7, 9, and 10 with prejudice.

| | | |
|---|---|---|
| 1 | Dated: September 12, 2023 | COOLEY LLP |
| 2 | | |
| 3 | | By: */s/ Bobby A. Ghajar* |
| | |     Bobby A. Ghajar |
| 4 | |     Matthew Brigham |
| | |     Colette Ghazarian |
| 5 | | |
| | | *Attorneys for Plaintiff / Counterclaim-Defendant* |
| 6 | | Automated Pet Care Products, LLC d/b/a Whisker |
| 7 | *[Full Counsel List]* | |
| 8 | STEPHEN SMITH *[Pro hac vice]* | |
| | (Stephen.smith@cooley.com) | |
| 9 | 1299 Pennsylvania Avenue, NW, Suite 700 | |
| | Washington, DC 20004 | |
| 10 | Telephone:  (202) 728-7148 | |
| | Facsimile:  (202) 842-7899 | |
| 11 | | |
| | *Attorneys for Plaintiff and Counter-Defendant* | |
| 12 | Automated Pet Care Products, LLC d/b/a Whisker | |