United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AUTOMATED PET CARE PRODUCTS, LLC, | Case No. 22-cv-04261-PCP |
| Plaintiff, | |
| v. | **ORDER DENYING MOTION FOR JUDGMENT ON THE PLEADINGS AND GRANTING MOTION TO DISMISS AMENDED COUNTERCLAIMS** |
| PURLIFE BRANDS, INC. D/B/A SMARTY PEAR, A DELAWARE CORPORATION, et al., | Dkt. Nos. 109, 112 |
| Defendants. | |

Before the Court are a motion for judgment on the pleadings by defendant PurLife Brands, Inc. (Smarty Pear) and a motion to dismiss Smarty Pear's amended counterclaims by plaintiff Automated Pet Care Products, LLC (Whisker). For the reasons that follow, the Court will deny Smarty Pear's motion and grant Whisker's motion.

## BACKGROUND

In this lawsuit, Whisker alleges, among other claims, that Smarty Pear has infringed Whisker's U.S. Patent No. 11,399,502 ('502 patent) in violation of 35 U.S.C. § 271(a). The '502 patent is entitled "System for Monitoring and Controlling an Automated Litter Device" and proposes to overcome the drawbacks of prior automated litter devices by allowing users to remotely monitor and control their device without being near it. Smarty Pear moves for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), arguing that the '502 patent covers subject matter that is ineligible to be patented under 35 U.S.C. § 101. Specifically, Smarty Pear contends that the '502 patent claims abstract ideas and fails to contain an inventive concept.

In response to Whisker's complaint, Smarty Pear separately asserts various amended counterclaims against Whisker including: (1) unfair competition and false advertising under the

1    Lanham Act; (2) violation of California's Unfair Competition Law (UCL); (3) false advertising

2    under California law; (4) common law unfair competition; (5) tortious interference with contract;

3    (6) intentional interference with prospective economic relations or advantage; (7) a request for a

4    declaratory judgment as to Smarty Pear's non-infringement of the '502 patent; (8) a request for a

5    declaratory judgment as to the invalidity of the '502 patent; (9) slander under California law; and

6    (10) libel under California law. Whisker moves to dismiss Smarty Pear's amended counterclaims

7    1–7, 9, and 10 under Federal Rules of Civil Procedure 12(b)(6) and 9(b).

8                                      **STANDARD OF REVIEW**

9          "Judgment on the pleadings is proper when the moving party clearly establishes on the

10   face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to

11   judgment as a matter of law." *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d

12   1542, 1550 (9th Cir. 1990). A motion for judgment on the pleadings under Rule 12(c) is subject to

13   the same standard as a Rule 12(b)(6) motion to dismiss. *Dworkin v. Hustler Mag., Inc.*, 867 F.2d

14   1188, 1192 (9th Cir. 1989). This means that the Court will view the facts and inferences drawn

15   from the pleadings in the light most favorable to the non-moving party. *Manzarek v. St. Paul Fire

16   & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Because every patent is presumed to be

17   issued properly, a party challenging patent eligibility under Rule 12(c) must provide clear and

18   convincing evidence that the patent covers a patent-ineligible subject matter. *Microsoft Corp. v. i4i

19   Ltd. P'ship*, 564 U.S. 91 (2011).

20         The Federal Rules generally require a complaint or countercomplaint to include only a

21   "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ.

22   P. 8(a)(2). In considering a Rule 12(b)(6) motion contending that a countercomplaint fails to state

23   a claim, the Court must "accept all factual allegations in the [counter]complaint as true and

24   construe the pleadings in the light most favorable" to the non-moving party. *Rowe v. Educ. Credit

25   Mgmt. Corp.*, 559 F.3d 1028, 1029–30 (9th Cir. 2009). Dismissal is required if the counterplaintiff

26   fails to allege facts allowing the Court to "draw the reasonable inference that the defendant is

27   liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). While legal

28   conclusions "can provide the [counter]complaint's framework," the Court will not assume they are

United States District Court
Northern District of California

2

1    correct unless adequately "supported by factual allegations." *Id.* at 664.

2         Fraud-based counterclaims are subject to the heightened pleading requirements established

3    by Federal Rule of Civil Procedure 9(b) instead of the more lenient Rule 8 standard. When

4    "alleging fraud or mistake, a party must state with particularity the circumstances constituting

5    fraud or mistake." Fed. R. Civ. P. 9(b). The pleading of fraud must be "specific enough to give

6    defendants notice of the particular misconduct … so that they can defend against the charge and

7    not just deny that they have done anything wrong." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d

8    1097, 1106 (9th Cir. 2003). Malice, intent, and knowledge may be alleged generally, however.

9    Fed. R. Civ. P. 9(b).

## ANALYSIS

11        The Court will first address Smarty Pear's argument that the '502 patent is invalid because

12   it claims only an abstract idea, and then consider Whisker's motion to dismiss Smarty Pear's

13   amended counterclaims.

### I.    Whisker's '502 Patent Does Not Claim Ineligible Subject Matter.

15        To be eligible for patenting, a claimed invention must involve a "new and useful process,

16   machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35

17   U.S.C. § 101. The Supreme Court recognizes three well-known exceptions to patent eligibility:

18   "laws of nature, physical phenomena, and abstract ideas." *Bilski v. Kappos*, 561 U.S. 593, 601

19   (2010). The presence of an abstract concept in a patent application does not necessarily make the

20   invention patent ineligible; rather, the invention will be patent eligible if it applies that abstract

21   concept to "a new and useful end" to "integrate the building blocks [of human ingenuity] into

22   something more." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 217 (2014).

23        To determine whether an invention is patent eligible under 35 U.S.C. § 101, courts engage

24   in a two-step process. *Alice*, 573 U.S. at 217–18. Courts first determine "whether the claims at

25   issue are directed to one of the patent-ineligible concepts." *Id.* Under this step, courts must

26   consider whether the patent claims "as a whole" are directed to a patent-ineligible concept like an

27   abstract idea. *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016). If the claims

28   are directed to a patent-ineligible concept, courts then consider whether there is an "inventive

United States District Court
Northern District of California

1    concept" in the claims such that the patent's "additional elements" make the concept patent-

2    eligible. *Alice*, 573 U.S. at 217.

3          Smarty Pear argues that the '502 patent is directed to an abstract idea because it "merely

4    uses conventional technologies to implement the abstract idea of remotely monitoring and

5    controlling a known automated litter box device." Dkt. No. 109, at 12. Specifically, Smarty Pear

6    contends that Whisker's '502 patent is directed to the well-established abstract ideas of

7    mathematical algorithms, data storage, and information collection and simply protects the use of

8    conventional computing devices to monitor and control an automated litter device. *Id.* at 13.

9          Smarty Pear's argument fails because the '502 patent represents a clear technological

10   improvement over the existing automated litter device, which is not itself an abstract idea. *See*

11   *Adasa Inc. v. Avery Dennison Corp.*, 55 F.4th 900, 908 (Fed. Cir. 2022) ("If the focus of the claim

12   is a specific and concrete technological advance, for example an improvement to a technological

13   process or in the underlying operation of a machine, our inquiry ends and the claim is eligible.").

14   In *EcoServices LLC v. Certified Aviation Services, LLC*, 830 F.App'x 634, 642 (Fed. Cir. 2016),

15   for example, the Federal Circuit found eligible a patent directed to automating a jet washing

16   system through remote operation, holding that it was a technological improvement "over the prior

17   art" that minimized "the human factor." The *EcoServices* Court explicitly noted that "automation

18   alone is not necessarily abstract." *Id.* at 645. Whisker's innovation here similarly minimizes "the

19   human factor" through remote control and monitoring of the automated litter device. As Whisker

20   notes in its briefing, the remote monitoring system allows users to send instruction signals to the

21   device in real time (e.g., start cleaning cycle, enter light mode, enter sleep mode) and to remain

22   aware of the device's conditions through various sensors (e.g., waste level, light, pet presence).

23   Dkt. No. 117, at 12. These specifications are explicitly embodied in claims 5 and 7 of the '502

24   patent, and represent a concrete improvement (through remote control) over the existing

25   automated litter device.[1]

26

27   ─────────────────────
     [1] Claim 5 reads: A device "wherein the user interface is configured to allow a user to instruct the
28   device to perform one or more operations resulting in the one or more instruction signals being
     transmitted to the controller via the communication module and the controller is configured to
     initiate one or more operations of the device." Dkt. No. 58-2, at 30. Claim 7 reads: A device

United States District Court
Northern District of California

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

Smarty Pear argues that standalone automated litter boxes are already embodied in the prior art, and thus Whisker's remote monitoring and control claims in the '502 patent are directed only to abstract ideas. But Smarty Pear misunderstands the relevant standard under Step One of *Alice*. Even if the structural components of the claims in the '502 patent are found in the prior art, an "advance over the prior art" is patent eligible if it represents a technological improvement over a non-abstract idea. *Genetic Techs. Ltd. v. Merial LLC*, 818 F.3d 1369, 1375 (Fed. Cir. 2016). While Smarty Pear's argument might support an obviousness challenge under 35 U.S.C. § 103, similarity to the prior art alone is not grounds to invalidate a patent under 35 U.S.C. § 101.

9

10

11

12

13

14

15

16

17

18

19

Smarty Pear also cites *Vehicle Intelligence & Safety LLC v. Mercedes-Benz USA, LLC*, 635 Fed.App'x 914 (Fed. Cir. 2015) to support its argument, but that decision does not help its position. In that case, the Federal Circuit invalidated a patent for a system designed to screen a vehicle for equipment impairments and control the vehicle in response. The court held that "[n]one of the claims at issue are limited to a particular kind of impairment, explain how to perform either screening or testing for any impairment, specify how to program [the system] to perform any screening or testing, or explain the nature of control to be exercised on the vehicle in response to the test results." *Id.* at 917. The claims at issue in the '502 patent are readily distinguishable from those in *Vehicle Intelligence & Safety*; they expressly discuss the various instructions that users can provide the device to perform certain functions and describe in detail the "nature of control to be exercised" over the automated litter device.

20

21

22

In short, the '502 patent is not directed to an abstract idea ineligible for patenting under 35 U.S.C. § 101. Accordingly, the Court need not determine whether there is an "inventive concept" under Step Two of *Alice*. Smarty Pear's motion for judgment on the pleadings is denied.

23

**II.     Smarty Pear's Amended Counterclaims Are Dismissed.**

24

25

The Court previously dismissed Smarty Pear's original counterclaims as lacking adequate specificity. Dkt. No. 95. Smarty Pear thereafter filed amended counterclaims, Dkt. No. 105, and

26

27

28

---

"wherein one or more sensors include one or more waste drawer sensors and the one or more signals include one or more waste level signals from the one or more waste drawer sensors to the controller." *Id.*

Whisker now moves to dismiss amended counterclaims 1–7, 9, and 10, Dkt. No. 112. Smarty Pear's amended counterclaims remain legally insufficient.

**A.  Smarty Pear Fails To Adequately Plead False Advertising (Counts 1 & 3).**

Smarty Pear asserts false advertising claims under the federal Lanham Act (Count 1) and under California law (Count 3), contending that Whisker "made numerous false and misleading statements" which have "deceived and confused" consumers. Dkt. No. 105, at 21.

To assert a false advertising claim under the Lanham Act, a plaintiff must allege five elements: (1) a false statement of fact in a commercial advertisement about its own or another's product that (2) actually deceived or tended to deceive a substantial segment of its audience, (3) was material to purchasing decisions, (4) entered interstate commerce, and (5) injured or is likely to injure the plaintiff, either by direct diversion of sales from it to the defendant or by a lessening of the goodwill associated with its products. *Skydive Arizona, Inc. v. Quattrocchi*, 673 F.3d 1105, 1110 (9th Cir. 2012). A false statement under the Lanham Act may consist of a statement that is literally false or a statement that is "literally true but likely to mislead or confuse consumers." *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997).

Smarty Pear's Lanham Act claim is premised in the first instance on its allegation that Whisker posted fake customer reviews on Amazon.com and Chewy.com (an online marketplace that offers Smarty Pear's automated litter device to Chewy customers) to boost its product ratings. Smarty Pear does not contend that it has direct evidence of such fake reviews. Instead, Smarty Pear cites an "unprecedented spike in 5-star reviews [that] defies statistical possibility," Dkt. No. 127, at 15, and notes that Amazon removed about one third of the total reviews that Whisker's automated litter device had received on the platform in the week of February 26, 2023, Dkt. No. 105, at 19. While making these generalized claims, Smarty Pear fails to identify any specific purportedly fake review posted by Whisker. Without any allegations concerning the specific content of any allegedly fake review, this Court cannot determine if any of the reviews at issue are false or otherwise misleading under the Lanham Act.[2] The Court therefore dismisses Smarty

---

[2] At the hearing on Whisker's motion to dismiss the original counterclaims, the Court stated that Smarty Pear would be required identify the specific reviews that were allegedly fake if it wanted

United States District Court
Northern District of California

1    Pear's Lanham Act claim to the extent that it is premised on allegedly fake reviews. *See*

2    *LegalForce RAPC Worldwide P.C. v. Swyers*, 2018 WL 3439371, at *6 (N.D. Cal. July 17, 2018)

3    (dismissing false advertising allegations that "fail[ed] to identify who made the challenged

4    statement, fail[ed] to identify the nature of the 'ad copy' in which the statement is assertedly

5    found, and fail[ed] to state when such advertisement was broadcast or otherwise made available to

6    the public").

7         Smarty Pear also alleges that Whisker unlawfully spread false information about Smarty

8    Pear's product (e.g., that Smarty Pear's product was a cheap knock-off and that Smarty Pear's

9    CEO stole corporate secrets from Whisker) to various online influencers, including Mallory Crusta

10   and Jennifer Dean. Dkt. No. 105, at 17–18. Again, Smarty Pear fails to assert a valid Lanham Act

11   claim. Regarding Mallory Crusta's YouTube video that rated various automated litter devices,

12   Smarty Pear's product was never mentioned by name during the video. Dkt. No. 105, at 12. Since

13   no statement, let alone a false one, was made about Smarty Pear's product, the video cannot

14   support Smarty Pear's false advertising claims. Similarly, with respect to Jennifer Dean's cat blog

15   reviewing such litter devices, Smarty Pear fails to allege that Dean ever wrote a review about

16   Smarty Pear's product. In a Lanham Act false advertising suit, "a plaintiff establishes Article III

17   injury if some consumers who bought the defendant's product under a mistaken belief fostered by

18   the defendant would have otherwise bought the plaintiff's product." *TrafficSchool.com, Inc. v.*

19   *Edriver, Inc.*, 653 F.3d 820, 825 (9th Cir. 2011). By failing to allege any statements, let alone any

20   false ones, that were made about Smarty Pear's product by Crusta and Dean, Smarty Pear fails to

21   establish any injury resulting from Whisker's allegedly false statements to influencers.

22        Because Smarty Pear's amended countercomplaint, like its original one, fails to identify

23   any specific false advertisements by Whisker that caused Smarty Pear injury, the Court grants

24   Whisker's motion to dismiss Count 1.[3] For the same reasons, its California state law false

25

26   _____

     to continue pursuing claims premised on such reviews, Dkt. No. 112-2, at 4, but Smarty Pear
27   nonetheless failed to do so in its amended countercomplaint.
     [3] The parties contest whether Rule 8 or Rule 9(b) applies to the false advertising claims. Since the
28   Court finds that the claims fail to meet the pleading standard even under Rule 8, it need not decide
     whether the heightened pleading standard under Rule 9(b) applies.

United States District Court
Northern District of California

advertising claim fails. *See L.A. Taxi Coop., Inc. v. Uber Techs., Inc.*, 114 F.Supp.3d 852, 860 (N.D. Cal. 2015) (recognizing that claims under California's false advertising law are "substantially congruent to claims made under the Lanham Act"). The Court therefore grants Whisker's motion to dismiss Count 3 as well.

**B. Smarty Pear Fails To Adequately Plead Defamation (Counts 9 & 10).**

Smarty Pear asserts slander (Count 9) and libel (Count 10) claims against Whisker for allegedly false statements and publications that resulted in reduced profits for Smarty Pear. In Count 9, Smarty Pear relies upon Whisker's alleged statements to Brian Choi at Chewy that Smarty Pear would be out of business soon and to influencer Jennifer Dean and Radio Systems CEO Robert Candelino that Smarty Pear stole trade secrets from Whisker. Dkt. No. 105, at 27–28. In Count 10, Smarty Pear alleges that Whisker sent disparaging emails to influencers and published derogatory reviews online that included similar negative statements about Smarty Pear and its product. *Id.* at 28–29.

Smarty Pear fails to state a valid claim for slander or libel based on the alleged statements by Whisker. "[S]tatements of opinion are protected by the First Amendment unless they imply a false assertion of fact." *Standing Comm. on Discipline of U.S. Dist. Ct. for Cent. Dist. of Calif. v. Yagman*, 55 F.3d 1430, 1438 (9th Cir. 1995). The statement made to Choi that Smarty Pear would be out of business soon is just such a statement of opinion that is not actionable as defamation. Similarly, because the subject matter of this entire litigation is whether Smarty Pear infringed Whisker's patents, Smarty Pear fails to plead sufficient facts to establish that statements suggesting that Smarty Pear stole Whisker's intellectual property were verifiably false. Such a statement by Whisker would constitute a legal opinion rather than a statement of fact.

Moreover, under the litigation privilege, statements with "some connection or logical relation to the action" are protected, including communications to a defendant's business partners who possess a "substantial interest in the outcome of the litigation." *Sharper Image Corp. v. Target Corp.*, 425 F.Supp.2d 1056, 1079 (N.D. Cal. 2006). Here, Smarty Pear alleges that purportedly defamatory statements were made to Brian Choi at Chewy, Robert Candelino at Radio Systems, and influencer Jennifer Dean. By Smarty Pear's own admissions, all three individuals

had existing or prospective business relationships with Smarty Pear, and therefore were likely to have a substantial interest in the outcome of this litigation—which could result in a determination that Smarty Pear had infringed upon Whisker's intellectual property rights or lead to Smarty Pear's demise. Because the statements allegedly made by Whisker related to the subject of this litigation and were made to individuals with a substantial interest in its outcome, the statements were almost certainly protected under the litigation privilege and thus are inadequate to support claims for slander or libel.[4]

**C.  Smarty Pear Fails To Adequately Plead Unfair Competition (Counts 2 & 4).**

Smarty Pear also asserts claims of unfair competition under California's Unfair Competition Law (UCL) (Count 2) and under the common law (Count 4). Neither claim has been adequately pleaded.

Smarty Pear's common law unfair competition claim (Count 4) fails because the "common law tort of unfair competition is generally thought to be synonymous with the act of 'passing off' one's goods as those of another." *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1153 (9th Cir. 2008). The amended counterclaims do not allege that Whisker attempted to pass off its products as Smarty Pear's. Accordingly, the Court grants Whisker's motion to dismiss Count 4.

Smarty Pear's statutory claim (Count 2) arises under the UCL. That California law prohibits business practices that are unlawful, fraudulent, or unfair. A violation of any one of these three prongs is sufficient, and Smarty Pears asserts all three. Dkt. No. 127, at 19. The unlawful prong typically requires a predicate legal violation (e.g., a Lanham Act violation), the fraudulent prong requires the defendant to have engaged in a fraudulent omission or misrepresentation, and the unfair prong requires a showing of substantial injury not outweighed by countervailing benefits to consumers or competition. *See MacDonald v. Ford Motor Co.*, 37 F.Supp.3d 1087,

---

[4] Smarty Pear's allegations regarding the statements purportedly made by Whisker and its agents are vague and overly general, so it would be theoretically possible for the Court to construe them as encompassing assertions of fact not protected by Whisker's litigation privilege. *Iqbal*, however, requires this Court to consider what is *plausible*, not merely what is possible. 556 U.S. at 678. When Smarty Pear's amended counterclaims are considered as a whole, it is not plausible that the statements identified by Smarty Pear included assertions of fact (rather than opinion) that also fell outside the scope of Whisker's litigation privilege.

<div style="writing-mode: vertical-rl"></div>

United States District Court
Northern District of California

1098 (N.D. Cal. 2014). "[A] claim that sufficiently pleads any of these prongs survives a motion

to dismiss." *Id.* at 1097. The Ninth Circuit subjects fraud-based UCL claims to the heightened

pleading standard of Rule 9(b). *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009)

("[I]f the [UCL] claim is said to be grounded in fraud … the pleading of that claim as a *whole*

must satisfy the particularity requirement of Rule 9(b).") (cleaned up).

     With respect to the unlawful prong, Smarty Pear alleges a predicate Lanham Act violation

and a predicate defamation violation. Because the Court finds that Smarty Pear fails to adequately

plead either predicate violation, Smarty Pear fails to assert a UCL claim under the unlawful prong.

     With respect to the fraudulent and unfair prongs, Smarty Pear appears to allege that

Whisker engages in fraudulent and unfair competition through its relationships with various

content creators (Smarty Pear terms them "deplorable sponsors") who agree to damage Smarty

Pear's brand while promoting Whisker's through false or misleading information. For example,

Smarty Pear claims that its CEO Chris Madeiras received a threatening note from an individual

named Sean Awdish to stop copying Whisker's products. Dkt. No. 105, at 16. Smarty Pear alleges

that a "review of social media accounts indicates that Mr. Awdish is a close friend of [Whisker

CEO Jacob] Zuppke," and that "there is sufficient evidence to suggest that Whisker uses

'deplorable sponsors' such as Awdish to manipulate online reviews of Whisker's products and

Smarty Pear's products." *Id.* at 17.

     These allegations do not satisfy Rule 9(b)'s heightened pleading standard because they do

not "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).[5]

Beyond the bare allegation of friendship between Awdish and Zuppke, there is no allegation that

Whisker encouraged Awdish to threaten Madeiras or demote Smarty Pear's product. Similarly,

Smarty Pear fails to plead any *specific* facts demonstrating that Whisker intended to deceive

consumers through misrepresentations on the internet or via online influencers. Smarty Pear's

---

[5] Allegations supporting a claim under the unfair prong of the UCL are not always subject to the heightened standard for pleadings of fraud established by Rule 9(b), but because Smarty Pear alleges a "unified course of fraudulent conduct" by Whisker—purportedly posting fake reviews and spreading misinformation through "deplorable sponsors"—Smarty Pear's "unfair" practice claim is "grounded in fraud" and "must therefore be pleaded with particularity." *Kearns*, 567 F.3d at 1127.

United States District Court
Northern District of California

1   amended counterclaims lack concrete allegations supporting the claimed connection between

2   Whisker and the "deplorable sponsors" and fail to identify any specific misstatements by Whisker

3   or its alleged allies that constituted fraudulent conduct or unfair competition.

4       Because Smarty Pear fails to plead a violation of any of the UCL's three prongs, the Court

5   grants Whisker's motion to dismiss Count 2.

6       **D.  Smarty Pear Fails To Adequately Plead Tortious Interference (Counts 5 & 6).**

7       Smarty Pear also asserts claims for tortious interference with contract (Count 5) and

8   intentional interference with prospective economic relations or advantage (Count 6). Tortious

9   interference with contract requires: (1) a valid contract between the plaintiff and a third party, (2)

10   the defendant's knowledge of this contract, (3) the defendant's intentional acts designed to induce

11   a breach or disruption, (4) actual breach or disruption, and (5) resulting damage. *See Honey Bum,*

12   *LLC v. Fashion Nova, Inc.*, 63 F.4th 813, 824–25 (9th Cir. 2023). The elements of intentional

13   interference with prospective economic relations are similar. Instead of a valid contract, however,

14   there must be an economic relationship between the plaintiff and a third party and the probability

15   of future economic benefit to the plaintiff. *Id.* at 824.

16       In Count 5, Smarty Pear first alleges that Whisker interfered with its contractual

17   relationship with Chewy.com. Dkt. No. 105, at 8. Smarty Pear alleges that Chewy's prior

18   Associate Director of Pet Technology Erick Goihman "deliberately delayed the launch" of Smarty

19   Pear's product, and that "Goihman's wife is friends with Zuppke and went to the same college at

20   the same time as the CEO of Whisker." *Id.* at 9. Goihman purportedly told Smarty Pear CEO

21   Madeiras that he had get-togethers with Whisker CEO Zuppke on several occasions and that the

22   two are connected on social media. *Id.* Smarty Pear concedes that it could not "substantiate its

23   suspicions and belief that Whisker through Zuppke had directly interfered with Smarty Pear's

24   relationship with Chewy," but nonetheless alleges that Goihman's successor Brian Choi told

25   Madeiras that Whisker representatives had said Smarty Pear would not be in business much

26   longer. *Id.* These conversations apparently caused Choi to "pull back his support" of Smarty

27   Pear's product at Chewy. *Id.*

28       In a second incident cited by Smarty Pear in support of Count 5, Smarty Pear alleges that

United States District Court
Northern District of California

11

1   Zuppke demanded that Great Pet Media—a paid advertiser with which Smarty Pear had

2   contracted—remove advertising for Smarty Pear's product, based on a relationship between

3   Whisker and a company affiliated with Great Pet Media. *Id.* at 12. After this incident, Smarty Pear

4   alleges that Great Pet Media said that it would pull its advertising campaign for Smarty Pear's

5   product. *Id.* at 13.

6        Once again, Smarty Pear's allegations fail to state a valid claim. First, Smarty Pear does

7   not provide the terms of any contract it claims to have had with either Chewy or Great Pet Media.

8   Without those contracts, the Court cannot determine whether Whisker's alleged behavior led to a

9   breach or disruption thereof. Second, the allegations in the complaint are vague and fail to state a

10  claim for relief because they do not establish that conduct by Whisker resulted in any injury to

11  Smarty Pear. Regarding the alleged incident with Chewy, Smarty Pear's allegations suffer from a

12  causation problem: Even if Zuppke had an improper relationship with Goihman at Chewy (which

13  Smarty Pear concedes is not substantiated), it was Choi, not Goihman, who allegedly "pulled

14  back" Chewy's support for Smarty Pear's product. Further, it is unclear what "pulling back

15  support" precisely means, given that Smarty Pear does not allege that its product is no longer

16  being sold on the Chewy marketplace. Similarly, while Smarty Pear alleges in a conclusory

17  fashion that Whisker "directly interfered with an existing contract between Smarty Pear and Great

18  Pet Media, causing Smarty Pear harm," Dkt. No. 105, at 13, it does not plead facts demonstrating

19  what the exact harm was. Great Pet Media purportedly said it "was pulling the advertising

20  campaign" of Smarty Pear's product, *id.*, but it is not apparent whether or when this occurred and

21  what the consequences were, especially since the contract terms are unknown.

22       Because Smarty Pear fails to plead any facts supporting a claim for tortious interference

23  with contract, the Court grants Whisker's motion to dismiss Count 5.[6]

24       Smarty Pear's intentional interference with prospective economic relations claim (Count 6)

25  is premised on its allegation that Whisker CEO Jacob Zuppke interfered with Smarty Pear's

26

27  ─────────────────────

28  [6] The parties contest whether Rule 8 or Rule 9(b) applies to the tortious interference claims. Since
    the Court finds that the claims fail to meet the pleading standard even under Rule 8, it need not
    resolve whether the heightened pleading standard under Rule 9(b) applies.

United States District Court
Northern District of California

potential acquisition by Radio Systems. The relevant facts alleged by Smarty Pear are as follows: Smarty Pear CEO Chris Madeiras had an initial conversation with the CEO of Radio Systems, Robert Candelino, who was very impressed with Smarty Pear and said that he was interested in purchasing the company. Dkt. No. 105, at 13–14. After Candelino told Madeiras that Radio Systems was considering a transaction or business relationship with Whisker, however, Smarty Pear refused to share any confidential company information with Candelino. *Id.* at 15. A few weeks later, Candelino told Madeiras that he was "99.9%" certain that he would not be pursuing a transaction or business relationship with Whisker, and Smarty Pear thereafter sent Candelino its confidential strategic company presentation. *Id*. A few weeks after receiving the presentation, Candelino told Madeiras that he was "no longer interested in pursuing a transaction or business relationship with Smarty Pear." *Id.* at 16. Smarty Pear attributes Candelino's decision to a comment Whisker CEO Zuppke allegedly made to Candelino just after Candelino's initial meeting with Smarty Pear. Specifically, Smarty Pear alleges that Zuppke told Candelino just after the initial meeting that Smarty Pear was a company "based on confidential information that Christopher Madeiras had stolen from Whisker." *Id.* at 14.

These factual allegations fail to state a plausible claim against Whisker for intentional interference with prospective economic relations. Smarty Pear does not explain how Zuppke's purported statement to Candelino—as opposed to the strategic company presentation that it sent to Candelino *after* the statement was allegedly made—plausibly caused Candelino to pull out of the transaction. To the contrary, a number of Smarty Pear's other allegations make that conclusion entirely implausible. Most notably, the negotiations between Smarty Pear and Candelino continued for approximately two months after Zuppke's alleged statement, breaking any chain of causation. Given this substantial break in time between Zuppke's statement and the termination of negotiations, it is far more likely that Candelino's evaluation of Smarty Pear's business and review of the company's strategic presentation caused him not to move forward. Further, for the reasons discussed above, Zuppke's purported statement was protected by the litigation privilege to the extent it involved the issues in this lawsuit. Taken as a whole, Smarty Pear's allegations do not support the plausible conclusion that Zuppke intentionally disrupted Smarty Pear's prospective

business relationship with Candelino through an unprotected statement.

For that reason, the Court grants Whisker's motion to dismiss Count 6.

**E.  Smart Pear Fails To Adequately Plead Non-Infringement (Count 7).**

Finally, Smarty Pear requests a declaration regarding its non-infringement of the '502 patent. Smarty Pear's claim is entirely conclusory: It asserts that "[d]efendants have not and are not now infringing, inducing the infringement of, or contributing to the infringement of any valid and enforceable claim of the '502 Patent with [Smarty Pear's] products." Dkt. No. 105, at 25. Nowhere in its amended counterclaims does Smarty Pear allege the facts necessary to support this legal conclusion. The Court therefore grants Whisker's motion to dismiss this amended counterclaim.

## CONCLUSION

For the reasons discussed above, the Court denies Smarty Pear's motion for judgment on the pleadings and grants Whisker's motion to dismiss Smarty Pear's amended counterclaims. Because Smarty Pear has already had one opportunity to address the insufficiency of its allegations but has failed to do so, the dismissal of Smarty Pear's counterclaims is without leave to amend.

**IT IS SO ORDERED.**

Dated: November 21, 2023

P. Casey Pitts
United States District Judge